# Exhibit A

TO PLAINTIFF'S ATTORNEY:  PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ............... , ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 1581CV 06710



Integrated Communications &
Technologies, Inc. et al. , Plaintiff(s)

v.

Hewlett-Packard Financial
Services Companies
et al. , Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant: Hewlett-Packard Financial Services

You are hereby summoned and required to serve upon Luke E. Riordan III ................................ plaintiff's attorney, whose address is 12 Pond Lane Suite ES-10, Concord, MA 01742, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Middlesex Superior, Woburn, Massachusetts either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse,** Esquire, at .....................................................................................
the ........................................................... day of ...........................................................
........................, in the year of our Lord ...........................................

.............................................
Clerk

**NOTES.**
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001



A true copy Attest:

Deputy Sheriff Suffolk County

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ...............................................................................................
20.........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

.........................................................................................................................................................
.........................................................................................................................................................
.........................................................................................................................................................

.....................................................................................................

Dated: ...................................................................................................................., 20.............


**N.B.  TO PROCESS SERVER:**
> **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
> ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( ........................................., 20.........)

( _____ )


**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX......, ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 1581CV00710

Integrated Communications &
Technologies, Inc. et al. ........, Plff.

v.

Hewlett-Packard Financial
Services Company, et al. ..., Deft.

**SUMMONS**
(Mass. R. Civ. P. 4)

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1581CV06710 | Trial Court of Massachusetts The Superior Court |
|---|---|---|



| CASE NAME: Integrated Communications & Technologies,Inc. et al vs. Hewlett-Packard Financial Services Company et al | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|
| TO: Lester E. Riordan, III, Esq. 12 Pond Lane Suite EB-1N Concord, MA 01742 | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 03/08/2016 | |
| Response to the complaint filed (also see MRCP 12) | | 04/07/2016 | |
| All motions under MRCP 12, 19, and 20 | 04/07/2016 | 05/09/2016 | 06/06/2016 |
| All motions under MRCP 15 | 04/07/2016 | 05/09/2016 | 06/06/2016 |
| All discovery requests and depositions served and non-expert despositions completed | 10/04/2016 | | |
| All motions under MRCP 56 | 11/03/2016 | 12/05/2016 | |
| Final pre-trial conference held and/or firm trial date set | | | 04/03/2017 |
| Case shall be resolved and judgment shall issue by | | | 12/08/2017 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 12/09/2015 | ASSISTANT CLERK | PHONE (781)939-2781 |
|---|---|---|

Date/Time Printed: 12-09-2015 14:29:44

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| | |
|---|---|
| PLAINTIFF(S): INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE | COUNTY |
| ADDRESS: CHENG, JASON YU AND CATHY YU  AND JASON YU YF LP | Middlesex |
| | DEFENDANT(S): HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, |
| 239 Commercial Street, Malden, MA | HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED |
| ATTORNEY: Lester E. Riordan III | |
| ADDRESS: 12 Pond Lane, Suite EB-1N | ADDRESS: 165 Dascomb Rd, Andover, Massachusetts |
| Concord, Massachusetts 01742 | |
| | 3rd Floor, Calcot House, 8/10 M P Shetty Marg, Tamarind Street Fort, Mumbai, India |
| BBO: 633725 | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A02 | Contract/Goods | F | ☒ YES     ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................................................................................. $ _____
2. Total doctor expenses ................................................................................................................. $ _____
3. Total chiropractic expenses ................................................................................................................. $ _____
4. Total physical therapy expenses ................................................................................................................. $ _____
5. Total other expenses (describe below) ................................................................................................................. $ _____
Subtotal (A): $ _____

B. Documented lost wages and compensation to date ................................................................................................................. $ _____
C. Documented property damages to dated ................................................................................................................. $ _____
D. Reasonably anticipated future medical and hospital expenses ................................................................................................................. $ _____
E. Reasonably anticipated lost wages ................................................................................................................. $ _____
F. Other documented items of damages (describe below) ................................................................................................................. $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Mixed complaint containing false imprisonment claims, damages are in excess of Sup. Ct. Jurisdictional amount, but are

unliquidated and unknown at this time
TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
Defective goods with damages in excess of $250,000
TOTAL: $   $280,000 (in exp...)

Signature of Attorney/Pro Se Plaintiff: X _____     Date: 12/9/2015

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____     Date: 12/9/15

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

| | |
|---|---|
| AA1 Contract Action Involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action Involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action Involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action Involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action Involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action Involving an Incarcerated Party | (A) |
| PB1 Tortious Action Involving an Incarcerated Party | (A) |
| PC1 Real Property Action Involving an Incarcerated Party | (F) |
| PD1 Equity Action Involving an Incarcerated Party | (F) |
| PE1 Administrative Action Involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical / Wrongful Death | (A) |
| B07-Malpractice - Other | (A) |
| B08 Wrongful Death, G.L. c.229 §2A | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10 §28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L., c.258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c.249 §4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G. L., c. 93 §9 | (A) |
| E07 Mass Antitrust Act, G. L., c. 93 §8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c.149 §§29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12 §11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123 §9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c265 §56 | (X) |
| E95 Forfeiture, G.L. c.94C §47 | (F) |
| E96 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A §12 | (X) |
| E14 SDP Petition, G.L. c. 123A §9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c 6 §178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112 §12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | [X] YES    [ ] NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.**
**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY**
**MAY RESULT IN DISMISSAL OF THIS ACTION.**

**THE COMMONWEALTH OF MASSACHUSETTS**
**SUPERIOR COURT DEPARTMENT**

Middlesex, ss                Civil Docket No.:_____

                                )
INTEGRATED COMMUNICATIONS &      )
TECHNOLOGIES, INC., JADE CHENG, JASON   )
YUYI AND CATHY YU,                  )
                   Plaintiffs,      )
                                  )
v.                                        )
                                  )
HEWLETT-PACKARD FINANCIAL         )
SERVICES COMPANY, HEWLETT-PACKARD   )
FINANCIAL SERVICES (INDIA) PRIVATE     )
LIMITED,                              )
                                  )
                   Defendants.    )
                                  )

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 0 9 2015

CLERK

## COMPLAINT

Plaintiffs Integrated Communications and Technologies, Inc. ("ICT"), Jade Cheng, Jason

Yuyi and Cathy Yu, for their complaint against Defendants Hewlett-Packard Financial Services

Company ("HPFS") and Hewlett-Packard Financial Services (India) Private Limited ("HPFS

India"), allege as follows:

### Introduction

1.      This lawsuit arises out of Defendants' December 2011 sale of used IT equipment

(the "Equipment") purportedly manufactured by Defendants' affiliate H3C Technologies Co.,

Ltd. ("H3C"), to Plaintiff ICT for the express purposes of remarketing and reselling that

Equipment. Both Defendants, as well as H3C, were at all relevant times wholly-owned

subsidiaries of Hewlett-Packard Company ("HP").

2.      Unbeknownst to Plaintiff ICT at the time, the Equipment sold by Defendants to

ICT was not genuine H3C equipment but counterfeit. Upon information and belief, Defendants

1

knew, or should have known, or were reckless in not knowing, that the Equipment they sold to Plaintiff ICT was counterfeit.

3.  Plaintiff ICT attempted to resell the first installment of the purchased Equipment, which it believed to be genuine H3C equipment based on Defendants' express contractual representations, through its offices in China commencing in February-March 2012. In December 2012, H3C, however, caused Plaintiff's offices to be raided by the local police, the Equipment seized, and ICT's local sales associates Plaintiffs Jade Cheng, Jason Yuyi and Cathy Yu ("Individual Plaintiffs") detained and later arrested based on H3C's allegations that Plaintiff ICT and Individual Plaintiffs were engaged in marketing counterfeit H3C equipment.

4.  Subsequently, Defendants admitted that "the counterfeit H3C equipment seized in China is the same equipment sold by HPFS to ICT." Defendants further admitted that "upon purchasing the equipment from HPFS India and taking into account that both HPFS India and H3C are ultimately owned by HP, ICT was entitled to assume that it was buying genuine equipment."

5.  Solely as a result of Defendants' wrongful actions and through no fault of their own, Individual Plaintiffs each spent 7 months in the extremely harsh conditions of Chinese prison, suffering from loss of freedom, physical pain and mental suffering, as well as from loss of earnings and employment; they also remain in legal jeopardy in China after their release from jail in July 2013 as the criminal cases against them have not been terminated.

6.  Solely as a result of Defendants' wrongful actions and through no fault of its own, Plaintiff ICT lost the unsold part of the first installment of the Equipment as it was seized by the Chinese authorities and remained in their custody; was forced to close its offices in China; and suffered serious financial and reputational injury to its business and property.

2

7.     Defendants' wrongful conduct constitutes fraudulent and/or negligent misrepresentations, breach of contract, breach of warranty, deceptive business practices in violation of MGL 93A, and false arrest and imprisonment, entitling Plaintiffs to, among other relief, compensatory, consequential, statutory treble damages, and attorney's fees and costs incurred in pursuit of this action.

### Parties

8.     Plaintiff ICT is a Massachusetts corporation doing business at 239 Commercial Street, Malden, Massachusetts.  Since its establishment in 1993, ICT has been primary involved in the business of remarketing excess and end-of-life inventory of computer parts and components.

9.     Plaintiff Jade Cheng is a citizen of China and a former independent sales associate of ICT, residing at Yintan Resort, Bldg. 2, Unit 2, Apt. 603, Ruyi Garden, Rushan City, Shandong, China 264505.

10.     Plaintiff Jason Yuyi is a citizen of China and a former independent sales associate of ICT, residing at Wanke Jiari Fengjing Bldg. 43, Apt. 304, Yongda St., Yantai City, Shandong Province, China 265500.

11.     Plaintiff Cathy Yu, who is married to Plaintiff Yuyi, is a citizen of China and a former independent sales associate of ICT, residing at Wanke Jiari Fengjing Bldg. 43, Apt. 304, Yongda St., Yantai City, Shandong Province, China 265500.

12.     Defendant HPFS is a wholly-owned subsidiary of HP, a leading global provider of IT products and technologies.  Defendant HPFS is in the business of providing financing and asset management services with respect to IT hardware and software products from HP and other manufacturers.  Defendant HPFS has a business office at 165 Dascomb Rd, Andover,

3

Massachusetts, and conducts its business through various operating subsidiaries located throughout the world.  Defendant HPFS was directly involved in the negotiations and execution of the relevant contracts with Plaintiff ICT.

13.     Defendant HPFS India is an Indian company with a registered office at 3rd Floor, Calcot House, 8/10 M P Shetty Marg, Tamarind Street Fort, Mumbai, India.  Defendant HPFS India is a wholly-owned subsidiary of Defendant HPFS.

### Background

14.     Defendant HPFS India provides financing and asset management services to HP customers in India.

15.     In 2010, in preparation for the Commonwealth Games in Delhi, India, the Games Organizing Committee retained Tata Consultancy Services Limited ("Tata") to provide certain IT services for the Games.

16.     Tata and HPFS India then entered in a series of lease transactions whereby HPFS India purchased certain new IT networking equipment manufactured by HP/H3C from Inspira Enterprise Private Limited ("Inspira"), an authorized HP distributor in India, and simultaneously leased that equipment to Tata.

17.     After the Games, and upon expiration of the leases, Tata returned the equipment to HPFS India.  Upon information and belief, the process of returning the equipment was handled by TT Global, a company specializing in IT logistics and disposition services, which was retained by and acted on behalf of HPFS India as its agent.

18.     According to Defendant HPFS' standard operating procedures for its EMEA (Europe/Middle East/Africa) Region -- which includes India -- the processing of used equipment returned upon lease expiration included a product-specific test and audit procedure.  Upon

4

information and belief, pursuant to this procedure, TT Global or other persons acting on behalf of HPFS India inspected the returned equipment at that time (the "2011 Inspection"), and HPFS India would have become aware that the equipment was counterfeit as a result of that inspection.

19.     In late summer/fall of 2011, Defendant HPFS contacted ICT and offered it the Equipment for remarketing purposes, and ICT agreed to purchase the Equipment from HPFS. The negotiations and conclusions of the relevant transactional documents took place predominantly in the Commonwealth of Massachusetts where Plaintiff ICT and Defendant HPFS conduct business, and where representatives of Defendant HPFS conducted negotiations on behalf of their subsidiary HPFS India.

20.     The remarketing arrangement between HPFS India and ICT contemplated four shipments of the Equipment, with the initial payment of $250,000 due from ICT for the first installment and a sharing of the net resale proceeds between ICT and HPFS India.

21.     Because HP's internal policy required an Indian buyer for the Equipment held by HPFS India, the remarketing arrangement was documented in two concurrent contracts. First, HPFS India entered into a Referral and Revenue Share Agreement with ICT dated December 6, 2011 ("RRSA"), whereby HPFS India agreed to sell the Equipment "AS IS" to a broker and ICT agreed to acquire the Equipment from the broker for the purposes of reselling that Equipment "without identifying HPFS" as the source of the Equipment, and to share the net proceeds of any such resale with HPFS India.

22.     Second, as contemplated by the RRSA, HPFS India entered into a Wholesale Sale Agreement (the "WSA"), also dated December 6, 2011, with an Indian broker Shinto Creative Elements Private Limited ("Shinto") for the sale of the first installment of the Equipment for $250,000 for the purpose of reselling the Equipment to ICT. The WSA identified the sold

5

Equipment by HP's and H3C's manufacturing model codes. The purchase order issued by Shinto to HPFS India pursuant to the WSA – and executed by a general manager of Defendant HPFS on behalf of Defendant HPFS India – likewise identified the purchased items as HP/H3C-manufactured equipment.

23.     Accordingly, pursuant to the RRSA and WSA, ICT purchased the Equipment represented by HPFS as genuine HP/H3C-manufactured equipment, and had no reason to believe otherwise: ICT contracted with an HP entity; the contracts specifically identified the Equipment as HP/H3C-manufactured equipment; and the Equipment had been inspected by HPFS or its agents upon expiration of the prior leases and return of the Equipment to HPFS prior to the sale to ICT.

24.     In anticipation of reselling the Equipment, ICT used its sales offices in China to arrange prospective customers to purchase the first installment of the Equipment for the total amount of $1.5 million. Pursuant to the RRSA, ICT was to share 50% of the net profit from the resale with HPFS India.

25.     At the end of December 2011, Shinto arranged for exporting the first installment of the Equipment to Hong Kong, from where the Equipment was forwarded to Beijing, China by a local forwarder. That shipment included approximately 3000 transceivers purportedly manufactured by H3C; the remaining part of the Equipment still in India included approximately 5000 transceivers purportedly manufactured by H3C.

26.     Upon receipt of the Equipment in China, ICT representatives realized that the Equipment was in a substandard condition (scrape-grade), with physical damage, rust, scratches and other defects, and not marketable as anticipated. ICT's originally arranged customers, who expected the Equipment in an "AS IS" but relatively new conditions, backed out and refused to

6

buy the Equipment. ICT's sales team in China then started to develop new resale channels, which took longer than originally anticipated and produced lower gross sales receipts and net profits.

27.     In October/November 2012, ICT representatives together with HPFS representatives conducted a joint inspection of the remaining three installments of the Equipment in India (the "2012 Inspection") and agreed that the remaining Equipment was likewise in a substandard scrape-grade condition. The parties then determined not to go through with the remaining installments (HPFS offered the remaining Equipment to ICT at a reduced price but ICT declined).

28.     Neither during the 2012 Inspection nor afterwards did HPFS representatives inform ICT that the Equipment was counterfeit. ICT itself had no knowledge, expertise or technical means to determine whether the Equipment was genuine or counterfeit; indeed, it continued to believe – and had no reason not to believe – that the Equipment was genuine HP/H3C equipment, albeit in a substandard condition.   Upon information and belief, HPFS had the knowledge, expertise and technical means to determine that the Equipment was counterfeit during the 2012 Inspection.

29.     Accordingly, ICT continued to use its best efforts to resell the first installment of the Equipment in China until December 2012, when representatives of H3C lodged a complaint with the local police accusing ICT and its sales representatives in marketing counterfeit H3C products because the transceivers contained a counterfeit H3C trademark. Based solely on H3C representations, Individual Plaintiffs were detained on December 9-10, 2012, and later arrested; ICT offices were raided and the remaining unsold part of the Equipment was seized. This was the first time when ICT learned that the Equipment was counterfeit.

30.     In early February 2013, after its efforts to obtain release of Individual Plaintiffs

from custody proved unsuccessful, ICT brought its concerns to the attention of HPFS India,

requesting its assistance with securing their release. In March 2013, HPFS provided ICT with a

draft submission to the Chinese authorities (in English translation). After laying out the relevant

facts, HPFS stated in its submission:

> Based on the available evidence HPFS India believes that the counterfeit
> H3C equipment seized in China is the same equipment sold by HPFS to
> ICT (through Shinto). . . . In these circumstances, notwithstanding that the
> seized equipment is counterfeit, HPFS India does not believe that ICT or
> its representatives should reasonably be held responsible for selling
> counterfeit equipment. Upon purchasing the equipment from HPFS India
> and taking into account that both HPFS India and H3C are ultimately
> owned by HP, ICT was entitled to assume that it was buying genuine
> equipment. Based on the available evidence it would appear that the
> relevant counterfeiting activities occurred at some point in time prior to
> the return of the Sold Equipment to HPFS India upon the expiration of the
> Leases. HP is reviewing the initial sale to try to determine how the
> counterfeit equipment was produced and who produced it.

31.     Upon receipt of the draft submission, ICT proposed certain revisions to the draft,

which HPFS refused. In April 2013, HPFS India sent a Chinese version of the submission to the

Chinese police, copying ICT. In response to an inquiry by ICT's outside counsel whether the

HPFS' submission as sent to the Chinese police (in Chinese) was substantially the same as the

English draft shared by HPFS with ICT, HPFS represented that "the letter is substantively the

same as the last English version you saw. There were some minor amendments but nothing

changed the description of the relevant sequence of events between HPFS India and ICT."

32.     In fact, contrary to HPFS' representation, the final Chinese version of the

submission differed considerably from the English draft that HPFS shared with ICT, with the key

statements cited above softened and qualified in HPFS' favor. For example, the phrase "HPFS

India believes that the counterfeit H3C equipment seized in China is the same equipment sold by

8

HPFS to ICT" became "HPFS India suspects that the seized equipment might be the same equipment sold by HPFS to ICT." HPFS also added several self-serving statements not present in the original draft, such as that "some of the sold equipment provided by Inspira was not sourced from HP Company" and that "HPFS India was informed about the accusations against ICT employees only after February 1, 2013, and previously did not know anything about the allegedly counterfeit equipment it handled." These revisions clearly reflected HPFS' attempt to avoid responsibility for selling counterfeit Equipment to ICT.

33.   Individual Plaintiffs remained in jail for several more months and were not released until July 2013, having endured more than 7 months in the harsh conditions of the Chinese prison. Upon release and until now, they have remained in legal jeopardy in China as the criminal cases against them have not been closed. Despite the repeated requests by ICT, HPFS flatly refused to provide any further assistance to clear the Individual Plaintiffs' names or to provide any compensation for their loss of freedom, lost earnings, physical pain and mental anguish caused by HPFS' own conduct.

34.   Likewise, HPFS refused to compensate ICT for its reputational and business losses (loss of inventory, loss of its Chinese business, and loss of profits) caused by HPFS' conduct. Moreover, HPFS refused to refund the initial payment of $250,000 made by ICT to HPFS with respect to the first installment of the Equipment. HPFS also flatly refused to share with ICT the results of its investigations into the relevant counterfeiting activities, despite ICT's numerous requests for that information needed in order to exonerate Individual Plaintiffs.

## CLAIMS FOR RELIEF

### COUNT I
**(For Fraudulent Misrepresentation on behalf of Plaintiff ICT)**

9

35.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 34 of this Complaint as if set forth in full.

36.     Defendants represented to ICT that the Equipment they sold to ICT pursuant to the WSA and RRSA for the express purpose of reselling was genuine HP equipment manufactured by HP's wholly-owned Chinese manufacturer H3C. Those representations were included as the terms of the WSA, which expressly identified the sold Equipment as manufactured by HP/H3C. Those representations went to the heart of Defendants' contractual arrangements with ICT and constituted material terms of those arrangements.

37.     Defendants knew that ICT would rely on those representations in its efforts to resell the Equipment, and ICT was entitled to rely and did in fact rely on those representations to its severe detriment.

38.     Those representations were in fact false, as the sold Equipment was not genuine but counterfeit. ICT did not know and had no reasons to know that the sold Equipment was not genuine as represented by Defendants.

39.     Defendants made those representations with the knowledge of their falsity, or with a complete disregard for the truth. Defendants knew, or were reckless in not knowing, that the Equipment was counterfeit as a result of the 2011 Inspection of the Equipment conducted by them or their duly authorized agents prior to the sale of the Equipment to ICT, but concealed that knowledge from ICT. Defendants further knew, or were reckless in not knowing, that the transceivers sold to ICT as part of the Equipment were counterfeit as a result of the 2012 Inspection but concealed that knowledge from ICT.

40.     In reliance on those representations, ICT proceeded to remarket the Equipment as genuine, "without identifying HPFS" as the original source of the Equipment as such was the

requirement of its remarketing contract with HPFS, and continued to do so until such time as it was accused of marketing counterfeit equipment by HPFS' affiliate H3C.

41.     HPFS had both motive and opportunity to commit fraud against ICT. Following the 2011 Inspection, Defendants knew, or were reckless in not knowing, that they were in possession of a large inventory of the Equipment which included counterfeit equipment, and which it could not lawfully resell. Without disclosing that knowledge to ICT, HPFS entered into a contract with ICT for the remarketing of that Equipment by ICT, requiring ICT "to use its best efforts to remarket the [Equipment] at the highest possible prices" and "without identifying HPFS" as the source of the Equipment. Moreover, the RRSA contract provided that "ICT will be responsible for complying with all applicable laws and regulations and for obtaining all required export and import authorizations."

42.     The RRSA also required ICT to share the proceeds from the resale of the Equipment with HPFS. Accordingly, HPFS would have benefitted from the resale of the Equipment while shifting any potential liability for selling the counterfeit Equipment onto ICT – which was exactly what had transpired as ICT's business in China was ruined (and its independent sales associates arrested) because of the counterfeiting accusations while HPFS retained the $250,000 paid by ICT for the first installment of the Equipment, and refused to refund that payment, let alone to provide any other compensation to Plaintiffs.

43.     As a direct and proximate cause of HPFS' misrepresentations, ICT was damaged and has suffered significant injury to its business and reputation. Defendants are jointly and severally liable to ICT for its damages in an amount to be determined at trial.

## COUNT II
### (For Negligent Misrepresentation on behalf of Plaintiff ICT)

11

44.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 43 of this Complaint as if set forth in full.

45.     By virtue of their superior knowledge and expertise regarding HP/H3C-manufactured equipment and trademarks, Defendants ought to have been aware that their representations as to the genuine nature of the Equipment sold to ICT were false. Unlike ICT, Defendants had ample opportunities to discover that the Equipment was counterfeit, including through the 2011 Inspection and the 2012 Inspection.

46.     Defendants were negligent in not discovering that the Equipment was counterfeit prior to the sale of that Equipment to ICT in 2011 and in the course of ICT's remarketing efforts in 2012, and/or in failing to inform ICT that the Equipment was counterfeit.

47.     Defendants' breach of their duty of care was the direct and proximate cause of Plaintiff's injury.

48.     There was no contributory negligence on the part of Plaintiff ICT. Plaintiff had no expertise or technical knowledge to determine whether the Equipment was counterfeit and was entitled to rely on Defendants' representations that the Equipment was genuine pursuant to its contractual arrangements with Defendants. Nor was Plaintiff ICT under any duty, contractual or otherwise, to inspect the Equipment to determine whether it was genuine.

49.     As a direct and proximate cause of HPFS' misrepresentations, ICT was damaged and has suffered significant injury to its business and reputation. Defendants are jointly and severally liable to Plaintiff ICT for its damages in an amount to be determined at trial.

## COUNT III
### (For Breach of Contract on behalf of Plaintiff ICT)

50.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 48 of this Complaint as if set forth in full.

12

51.   Defendant HPFS India and Plaintiff ICT are parties to the RRSA contract for the remarketing of the Equipment.  Plaintiff ICT is also a direct and intended beneficiary of the related WSA contract between Defendant HPFS India and Shinto.

52.   Plaintiff ICT duly complied with the terms and conditions of the RRSA and WSA contracts.

53.   Defendant HPFS breached the RRSA and WSA contracts by selling counterfeit Equipment to ICT instead of genuine Equipment as provided for by the aforementioned contracts.

54.   As a direct and proximate cause of HPFS' breach, ICT was damaged and has suffered significant injury to its business and reputation.  Defendant HPFS India is liable to Plaintiff for damages in an amount to be determined at trial.

## COUNT IV
### (For Breach of Warranty on behalf of All Plaintiffs)

55.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 54 of this Complaint as if set forth in full.

56.   By entering in agreement with Plaintiff ICT for remarketing of the Equipment identified by Defendants as HP/H3C-manufactured Equipment, Defendants warranted that the Equipment was genuine equipment manufactured by HP/H3C, bearing genuine HP/H3C trademarks.

57.   Defendants breached that warranty by selling to Plaintiff ICT counterfeit equipment instead, as a result of which breach of warranty Plaintiff ICT and Individual Plaintiffs suffered injury.

13

58.     As a direct and proximate cause of HPFS' breach of warranty, all Plaintiffs were damaged. Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

**COUNT V**
**(For Breach of MGL 93A on behalf of all Plaintiffs)**

59.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 58 of this Complaint as if set forth in full.

60.     Defendants are corporations engaged in the conduct of trade or commerce.

61.     Plaintiff ICT is a person engaged in the conduct of trade or commerce who suffered loss of money and property as a result of Defendants' unfair and deceptive acts or practices within the meaning of Section 11 of MGL 93A.

62.     Individual Plaintiffs are persons engaged in the conduct of trade or commerce who suffered loss of money and property as a result of Defendants' unfair and deceptive acts or practices within the meaning of Section 11 of MGL 93A.

63.     All Plaintiffs are in direct or indirect privity with the Defendants herein and/or substantially connected to the business transaction between ICT and the Defendants such that these Defendants knew or should have known that all Plaintiffs herein would receive goods which the Defendants knew or should have known were counterfeit, the receipt and resale of which would expose Plaintiffs to harm, including the harm that occurred as described herein.

64.     Defendants committed their unfair and deceptive acts or practices willfully or knowingly, entitling Plaintiff to up to three, but no less than two, times of the amount of its actual damages (to be determined at trial) suffered as a result of Defendants' violation of MGL 93A, as well as attorneys' fees and costs incurred in pursuit of this action.

14

65.     Defendants' conduct constitutes unfair and deceptive trade practices within the meaning of Section 2 of MGL 93A.

66.     Defendants' unfair and deceptive acts or practices occurred primarily and substantially within the Commonwealth where the negotiations and execution of the relevant agreements took place and the complained-of misrepresentations were made.

67.     As a direct and proximate cause of HPFS' unfair and deceptive practices, Plaintiffs were injured and suffered damages. Defendants are jointly and severally liable to Plaintiffs for damages incurred as a result of Defendants' violation of MGL 93A.

## COUNT VI
### (For False Arrest/False Imprisonment on behalf of Individual Plaintiffs)

68.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 35 of this Complaint as if set forth in full.

69.     Due to Defendants' wrongful actions and through no fault of their own, Individual Plaintiffs were falsely detained, arrested and imprisoned for 7 months in the extremely harsh conditions of the Chinese prison.

70.     In the course of their prolonged imprisonment, Individual Plaintiffs suffered from loss of freedom, physical pain and mental anguish, loss of earnings, and loss of employment.

71.     Upon their release from prison, Individual Plaintiffs have remained in legal jeopardy in China as the criminal cases against them remain open. They continue to suffer from the stigma of their unfair imprisonment and unjust accusations, and from their inability to find gainful employment (as the ICT office in China that had employed them before the arrest was closed after the police raid).

72.     Defendants are jointly and severally liable to Individual Plaintiffs for their injury, in an amount of damages to be determined at trial.

15

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

A. Compensatory and consequential damages in an amount to be determined at trial for losses incurred by Plaintiffs, which upon information and belief are contractual damages in excess of $250,000 and other monetary damages in an amount to be determined at trial;

B. Treble damages for willful or intentional violation of Section 11 of MGL 93A;

C. Interest on those damages;

D. Reasonable attorneys' fees and costs incurred by Plaintiffs in pursuit of this action; and

E. Such other relief as is just, fair and equitable.

December 9, 2015

Respectfully Submitted,

Lester E. Riordan III
Damonmill Square
12 Pond Lane, Suite EB-1N
Concord, Massachusetts 01742
BBO No. 633725
Telephone: 978-341-0404
Facsimile: 978-341-0405
Riordanlaw@comcast.net

16

**JURY REQUEST**

Plaintiffs request a Jury Trial on all counts.

Respectfully Submitted,

Lester L. Riordan III
Damonmill Square
12 Pond Lane, Suite EB-1N
Concord, Massachusetts 01742
BBO No. 633725
Telephone: 978-341-0404
Facsimile: 978-341-0405
Riordanlaw@comcast.net

17