**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Civil Action No. 1:16-CV-10386 (LTS)

INTEGRATED COMMUNICATIONS &
TECHNOLOGIES, INC., JADE CHENG, JASON
YUYI AND CATHY YU

Plaintiffs,

vs.

HEWLETT-PACKARD FINANCIAL SERVICES
COMPANY, HEWLETT-PACKARD
FINANCIAL SERVICES (INDIA) PRIVATE
LIMITED

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**HEWLETT-PACKARD FINANCIAL SERVICES COMPANY'S**
**MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .................................................................................... 1

LEGAL ARGUMENT ......................................................................................... 3

    A.    The Act Of State Doctrine Mandates Dismissal ....................................... 3

          1.    Whether The Equipment Was Counterfeit Has Yet To Be Determined ............................................................................. 3

          2.    Chinese Authorities Must Be Allowed To Enforce China's Laws ............. 4

          3.    Alternatively, the Court should Stay this Proceeding ................................ 7

    B.    The Relevant Motion To Dismiss Standard ............................................ 8

          1.    Plaintiffs Have Not Stated A Cognizable Fraud Claim Against HPFS ............................................................................... 9

          2.    No Negligent Misrepresentation Has Been Stated Against HPFS ............ 11

          3.    ICT Has Not Alleged Breach Of Contract ............................................... 12

          4.    Equipment Was Sold "As Is With Defects" And Without Warranty ....... 15

          5.    Plaintiffs Are Precluded From Relief On Their Chapter 93A Claims .............................................................................. 16

          6.    The False Arrest/False Imprisonment Claims Must Fail ......................... 19

CONCLUSION ............................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,
  267 F.3d 30 (1st Cir. 2001)....................................................................................................2

Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,
  374 F.3d 23 (1st Cir. 2004)....................................................................................................9

Anastasi Bros. Corp. v. Massachusetts Convention Ctr. Auth.,
  1993 Mass. Super. LEXIS 107 (Mass. Super. Ct. Nov. 1, 1993) ...........................................13

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..........................................................................................................8, 12

Banco Nacional de Cuba v. Sabbatino,
  376 U.S. 398 (1964)...............................................................................................................4

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)..........................................................................................................8, 12

Bergstresser v. Cooke,
  12 Mass. L. Rep. 466 (Mass. Super. Ct. 2000).......................................................................15

Braunstein v. McCabe,
  571 F.3d 108 (1st Cir. 2009)................................................................................................11

Corcoran v. Healey,
  1981 Mass. App. Div. 83 (1981)............................................................................................13

CUMIS Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,
  23 Mass. L. Rep. 550 (Mass. Super. Ct. 2005).......................................................................13

Eureka Broadband Corp. v. Wentworth Leasing Corp.,
  400 F.3d 62 (1st Cir. 2005)....................................................................................................9

Evergreen Partnering Group, Inc. v. Pactiv Corp.,
  2014 U.S. Dist. LEXIS 10218 (D. Mass. Jan. 28, 2014).......................................................19

Fishman Transducers, Inc. v. Paul,
  684 F.3d 187 (1st Cir. 2012)................................................................................................19

United States ex rel. Ge v. Takeda Pharm. Co.,
  737 F.3d 116 (1st Cir. 2013)..............................................................................................9, 11

Goldhammer v. Dunkin' Donuts, Inc.,
  59 F. Supp. 2d 248 (D. Mass. 1999)....................................................................................7, 8

United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,
  360 F.3d 220 (1st Cir. 2004) ............................................................................9, 10

Kelly v. Dimeo, Inc.,
  581 N.E.2d 1316 (Mass. App. Ct. 1991) ..................................................................14

Kenda Corp. v. Pot O'Gold Money Leagues, Inc.,
  329 F.3d 216 (1st Cir. 2003) ....................................................................................16

Kozikowski v. Toll Bros., Inc.,
  246 F. Supp. 2d 93 (D. Mass. 2003) ........................................................................19

Kuwaiti Danish Computer Co. v. Digital Equip. Corp.,
  781 N.E.2d 787 (Mass. 2003) ............................................................................17, 18

Laiho v. CONRAIL,
  4 F. Supp. 2d 45 (D. Mass. 1998) ............................................................................14

Licata v. GGNSC Malden Dexter LLC,
  2 N.E.3d 840, 848 (2014) .........................................................................................14

McLaughlin v. Intoccia,
  26 N.E.3d 752, 752 (Mass. App. Ct. 2015) .......................................................16, 17

N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale,
  567 F.3d 8 (1st Cir. 2009) ........................................................................................12

Nocula v. UGS Corp.,
  520 F.3d 719 (7th Cir. 2008) ..................................................................................5, 6

Noel v. Town of Plymouth,
  895 F. Supp. 346 (D. Mass. 1995) ...........................................................................19

Ruiz Rivera v. Pfizer Pharms., LLC,
  521 F.3d 76 (1st Cir. 2008) ........................................................................................9

Sarvis v. Boston Safe Deposit & Trust Co.,
  711 N.E.2d 911 (Mass. App. Ct. 1999) ..............................................................19, 20

Softub, Inc. v. Mundial, Inc.,
  53 F. Supp. 3d 235, 258 (D. Mass. 2014) ..........................................................17, 19

Timberlane Lumber Co. v. Bank of Am.,
  549 F.2d 597 (9th Cir. 1977) .....................................................................................4

W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.,
  493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990) .........................................4, 5

Watterson v. Page,
  987 F.2d 1 (1st Cir. 1993) ...........................................................................................2

Yankee Microwave, Inc. v. Petricca Communs. Sys.,
    760 N.E.2d 739 (Mass. App. Ct. 2002) .................................................................14

**Statutes**

Mass. Gen. Laws ch. 93A, § 2(a).............................................................................16

Mass. Gen. Laws ch. 106, § 2A-214...................................................................15, 16

Mass. Gen. Laws Ch. 93A, § 11 .......................................................................16, 17

**Other Authorities**

Federal Rule of Civil Procedure 9(b)............................................................9, 10, 11, 12

Federal Rule of Civil Procedure Rule 12(b)(6)..................................................................2

Restatement (Second) of Contracts (1981)...........................................................13, 14

Restatement (Second) of Torts (1965)........................................................................19

## PRELIMINARY STATEMENT

Plaintiffs, a U.S. corporation and its independent Chinese sales representatives, allege foreign events and transactions to which this movant, a U.S. company, was neither party nor privy.  Centered in Asia, the saga involves used computer equipment currently impounded by the Chinese authorities as part of an ongoing criminal proceeding which, perforce, will ascertain whether the equipment is counterfeit.  Only after it is found to be counterfeit could plaintiffs be aggrieved.  But that adjudication is not one this Court should make.  The Act of State Doctrine mandates that it be made in China, by China, in the context of China enforcing its own laws.

Moreover, as to this defendant, the Complaint fails to satisfy heightened pleading requirements; fails to state essential elements of the counts alleged; fails to allege the factual underpinnings necessary to sustain the counts; and falls foul of relevant statutes of limitation. Lacking in privity or standing to sue this defendant, the Chinese nationals have no claim whatsoever, and the corporate plaintiff has failed to state any claims cognizable under Massachusetts or federal law.

## STATEMENT OF FACTS

Plaintiff Integrated Communications & Technologies, Inc. ("**ICT**") alleges that moving defendant, Hewlett-Packard Financial Services Company ("**HPFS**"), and co-defendant Hewlett-Packard Financial Services (India) Private Limited ("**HPFS (India)**") sold ICT counterfeit equipment after fraudulently representing that it was genuine.  Complaint ¶¶ 2-3.  The individual plaintiffs -- each of whom is a Chinese citizen and resident, allege that they were arrested in China and charged with marketing counterfeit equipment (which was impounded by the Chinese authorities), a criminal prosecution that is ongoing.  Complaint ¶¶ 3, 9-11.

The case is rooted in two agreements,[1] both dated December 6, 2011: (a) a Wholesale Sale Agreement ("**WSA**") between ICT's Indian broker[2] and HPFS (India); and (b) a Referral and Revenue Share Agreement ("**RRSA**") between ICT itself and HPFS (India).

Pursuant to the WSA, Shinto was to purchase used computer equipment in Mumbai, India, with title transferring to Shinto on delivery.  Callaghan Decl., Ex. A, at §2.  The equipment was to be "*sold 'AS IS WITH DEFECTS'*", and HPFS (India) made "*no warranty, express or implied, as to any matter whatsoever*[.]"  Id. at §6 (emphasis added).  Through its merger clause, the WSA expressly superseded "all prior agreements and understandings, both written and oral," and Indian law governed the transaction.  Id. at §10.  HPFS was not a party to the WSA.

Under the RRSA, ICT was permitted to acquire the used computer equipment from Shinto and resell it anywhere in the world.  Callaghan Dec., Ex. B at §§2.1 - 2.3.  As consideration for that exclusive right, ICT would pay a portion of the resale profits to HPFS (India).  Like the WSA, the RRSA also disclaimed all warranties "[t]o the maximum extent permitted by applicable law" (Id. at §10.2); and HPFS (India)'s liability was narrowly limited.  Id. at §10.3.  Significantly, ICT undertook to indemnify HPFS (India) *and its affiliates* from any claims or losses related to ICT's handling, transportation or re-sale if the equipment.  Id. at §10.4.[3]  Thus, while it was not a party to the RRSA, because Plaintiffs themselves acknowledge

---

[1] The Court may properly consider both agreements when considering a Rule 12(b)(6) motion to dismiss, without converting the motion to one for summary judgment.  See, e.g. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001).

The agreements are attached as true and accurate copies to the Declaration of Anthony Callaghan, which is being submitted contemporaneously with this motion.

[2] ICT's Indian broker, which purchased the equipment from HPFS (India), was Shinto Creative Elements Private Limited ("**Shinto**").  See Declaration of Anthony Callaghan ("Callaghan Dec.") Exhibit A.

[3] Like the WSA, the RRSA also contained an expansive merger clause.  See Callaghan Dec. Ex. B, at §10.5.

its *affiliation* with HPFS (India), movant HPFS enjoys the protections of that indemnification provision. See, e.g., Complaint at ¶¶ 1, 12 & 13.

Plaintiffs allege that Shinto, the ICT broker which purchased the computer equipment, shipped it to China, where it was found to be unmarketable. Complaint ¶26. HPFS (India) allegedly failed to disclose that the equipment was counterfeit, so ICT presumed it was genuine. Complaint ¶ 28. However, in December of 2012, allegedly acting on a tip from non-party H3C (a Hewlett Packard entity that plaintiffs assumed originally manufactured the equipment), the Chinese police arrested the individual Chinese plaintiffs for marketing counterfeit equipment, and the equipment was seized. Complaint ¶ 29. While HPFS (India) attempted to intervene with the Chinese authorities on behalf of the detained Chinese plaintiffs, they remained in jail for several months and the criminal charges against them are still active. Complaint ¶¶ 29-33. The subject equipment remains in the custody of the Chinese authorities. Plaintiffs do not allege that the Chinese authorities have adjudicated the equipment to be actually counterfeit; instead, they ask this Court to make that finding before the Chinese authorities conclude their investigation.

## LEGAL ARGUMENT

**A.**     **The Act Of State Doctrine Mandates Dismissal**

      1.     **Whether The Equipment Was Counterfeit Has Yet To Be Determined**

Plaintiffs' case is that they were wronged when they unwittingly marketed counterfeit goods in China. Significantly, there has been no adjudication that the equipment in question was, in fact, counterfeit.

Plaintiffs allege that the goods they marketed in China were the same goods purchased by ICT's broker in India from co-defendant HPFS (India); that those goods were counterfeit *ab initio*; that HPFS knew they were counterfeit; and that HPFS improperly concealed that knowledge from plaintiffs. However, there has yet been no finding whatsoever by the Chinese

authorities that the equipment at issue is anything other than genuine, and plaintiffs offer no showing or proof to the contrary.

The fact that the criminal proceeding in China remains ongoing (Complaint at ¶33) leaves the entire premise of this lawsuit in doubt. Plaintiffs' case hinges on one question -- were the goods counterfeit? If, and only if, they were, could this lawsuit proceed on the theories asserted. Until that question is answered *by the Chinese authorities enforcing China's laws in China*, this Court cannot ascertain fault among various parties spanning several jurisdictions, time zones and across continents -- least of all to HPFS, a United States entity that never owned, sold, warranted, or otherwise came into contact with the goods, and did not impugn their provenance or genuineness in any way.

2.      **Chinese Authorities Must Be Allowed To Enforce China's Laws**

The Complaint alleges that, on December 9-10, 2012, the Chinese plaintiffs were detained and arrested by "the local police" in China for "marketing counterfeit H3C products" and that all unsold equipment was seized. Complaint at ¶29. Because plaintiffs' claims are premised upon China's enforcement of Chinese laws in China, they must perish under the "Act of State Doctrine" long recognized and enforced in the courts of the United States.

The Act of State Doctrine prevents courts from inquiring into the validity of a recognized sovereign power's public acts committed within its own territory. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964); Timberlane Lumber Co. v. Bank of Am., 549 F.2d 597, 605-07 (9th Cir. 1977)). The doctrine arises from the separation of powers between the branches of government in the United States and the danger that, if the Judiciary were to pass judgment on the validity of foreign acts, it might hinder the Executive's exclusive function in conducting foreign affairs. W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., 493 U.S. 400, 404, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). The doctrine can bar an action where "(1) there is an official act

of a foreign sovereign performed within its own territory; and (2) the relief sought or the defense interposed in the action would require a court in the United States to declare invalid the foreign sovereign's official act." Id. at 405. Here, the Court is effectively being asked to deem invalid the Chinese authorities' arrest of Chinese citizens and the seizure of equipment. Only if such acts were improper could actionable harm have befallen ICT and the Chinese plaintiffs.

A recent case from the Seventh Circuit illustrates why the Court should dismiss this matter under the Act of State Doctrine. In Nocula v. UGS Corp., 520 F.3d 719, 722 (7th Cir. 2008), the circuit court reviewed a lawsuit filed by a U.S. company and its sole shareholder against a Polish company and its U.S. affiliate that had previously accused the plaintiffs of criminal conduct in Poland. Acting on the alleged theft of intellectual property, the Polish police had seized the plaintiffs' property in Poland, initiated a criminal prosecution, and effectively shut down plaintiffs' Polish operations. After acquittal of the criminal charges, the plaintiffs brought an action in the United States for fraudulent inducement, malicious prosecution, breach of contract, and other claims similar to those plaintiffs here allege against HPFS. Id. at 722-23.

The district court dismissed the Nocula complaint because, "for any claims touching upon the Polish criminal prosecution, . . . the injuries are 'all alleged to stem from the Polish police seizure' of computers, and . . . any attempt to recover would require a showing that the seizure was improper and thus would run afoul of the act-of-state doctrine." Id. at 722. For practical purposes, Nocula equates squarely with the instant dispute, and the reasoning on appeal is instructive:

> The act-of-state doctrine is a judicial rule that "generally forbids an American court to question the act of a foreign sovereign that is lawful under that sovereign's laws." F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co., 882 F.2d 281, 283 (7th Cir. 1989); First Nat'l City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 769, 92 S. Ct. 1808, 32 L. Ed. 2d

466 (1972) []; <u>Underhill v. Hernandez</u>, 168 U.S. 250, 18 S. Ct. 83, 42 L. Ed. 456 (1897); <u>see</u> <u>also</u> <u>Sarei v. Rio Tinto, PLC</u>, 456 F.3d 1069, 1084-85 (9th Cir. 2006); <u>Gross v. German Found. Indus. Initiative</u>, 456 F.3d 363, 391-92 (3d Cir. 2006). *Kin to the doctrine of sovereign immunity, the act-of-state doctrine arises from the presumption of validity accorded to the official public acts of a foreign country*, <u>see</u> <u>Underhill</u>, 168 U.S. at 252; <u>Farman-Farmaian</u>, 882 F.2d at 283, and the concern that "application of customary principles of law to judge the acts of a foreign sovereign might frustrate the conduct of foreign relations by the political branches of the government," <u>First Nat'l City Bank</u>, 406 U.S. at 767-68.

<u>Nocula</u>, 520 F.3d at 727-28 (internal quotations omitted).

The Seventh Circuit recognized that a "decision of a foreign sovereign to exercise its police power through the enforcement of its criminal laws plainly qualifies as an act of state." <u>Id.</u>  As such, the circuit court found that the Polish authorities' prosecution of plaintiffs and the seizure of their computer equipment were "part and parcel of the criminal prosecution" under the act of state doctrine.   The court would not inquire whether the arrest and seizure were "wrongful" as long as they were carried out by Polish police as part of a criminal prosecution. <u>Id.</u>[4]

Equally, in the instant case, all plaintiffs' injuries stem from China's enforcement of its domestic laws in China regarding the suspected marketing of counterfeit equipment.   To the extent plaintiffs allege that HPFS knew/should have known the goods were counterfeit -- as they do in Counts I through V[5] -- any assessment of that issue goes to the heart of a criminal proceeding begun by the Chinese police in China: was the equipment counterfeit?  If it was not, HPFS cannot have acted improperly.   But that question ought not be entertained by this Court

---

[4] The court further reasoned that "[t]o the extent the subsequent loss of the computers was wrongful (i.e., negligent), the loss is attributable to the Polish government, not UGS.   Accordingly, any personal claim by [plaintiff] seeking to hold [defendant] liable for the wrongful loss of the computers would necessarily call for an inquiry into the acts of a foreign sovereign and is barred by the act-of-state doctrine." <u>Id.</u>

[5] Count I alleges fraudulent misrepresentation; Count II alleges negligent misrepresentation; Count III alleges breach of contract; Count IV alleges breach of warranty; and Count V is premised on MGL 93A.

because the criminal proceeding remains extant.   For the same reason, Count VI (false arrest/imprisonment of the Chinese nationals) is equally non-adjudicable.

Simply put, for this Court to plumb the depths of plaintiffs' claims, it would have to determine whether or not the equipment in China is counterfeit and, if so, who bears responsibility.  Those questions have yet to be adjudicated by Chinese authorities in an ongoing criminal matter, and any attempt to end-run or second-guess that process is barred by the Act of State Doctrine.  The Complaint should be dismissed.

3.      **Alternatively, the Court should Stay this Proceeding**

In the event the Court does not dismiss the case pursuant to the Act of State Doctrine, at a minimum, it should be stayed pending the outcome of the criminal proceeding in China.

Federal courts "have the inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction," particularly when issuing a stay allays concerns about comity and serves "the interests of judicial economy and international relations." Goldhammer v. Dunkin' Donuts, Inc., 59 F. Supp. 2d 248, 251-52 (D. Mass. 1999) (citing Boushel v. Toro Co., 985 F.2d 406, 409-10 (8th Cir. 1993); Efco Corp. v. Aluma Sys., USA, Inc., 983 F. Supp. 816, 824 (S.D. Iowa 1997); Landis v. North Amer. Co., 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936)).

The Goldhammer court reasoned that "'in some private international disputes the prudent and just action is to abstain from the exercise of jurisdiction'" and that "'[i]n the interests of judicial economy and international relations, a federal court may stay an action in favor of pending foreign litigation.'"  Id. (internal citations omitted).  Goldhammer recognized the importance of abstention doctrines and the concept of international comity ("voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international

law."). Id. (quoting United States v. Nippon Paper Indus. Co., Ltd., 109 F.3d 1, 8 (1st Cir. 1997)) (additional citations omitted).[6]

In light of page constraints, but with reference to Act of State Doctrine considerations, supra, HPFS asks that the Court stay this matter pending the outcome of the ongoing criminal proceeding in China. There, the Chinese authorities are enforcing Chinese law within their own territory and will adjudicate an essential issue before this Court. That proceeding, unless this matter is stayed, might well result in inconsistent rulings on the nature of the subject equipment, the conduct of the parties, and their respective rights and entitlements. As such, the Court should exercise its inherent power to stay this proceeding during the pendency of the Chinese criminal matter.

**B.        The Relevant Motion To Dismiss Standard**

Plaintiffs fail completely to plead their case with the requisite specificity in a federal lawsuit, and in particular, one premised on fraud. As such, the Complaint should be dismissed.

Pursuant to Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), for a complaint to survive a motion to dismiss, it must "state a claim that is plausible on its face." Id. at 570. Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. A claim for relief is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As here, a claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct." Iqbal, 556 U.S. at 678. In other words, the complaint must be dismissed if a plaintiff's well-pleaded facts do not "possess

---

[6] While the Goldhammer court set forth some of the factors to be considered in determining whether to grant a stay in the interests of comity, respectfully, those interests should be deemed secondary in an Act of State Doctrine matter such as is currently before the court. See Goldhammer, 59 F.Supp.2d at 252-3.

enough heft to show that [the] plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted).  As will be shown herein, in addition to the flagrant lack of requisite specificity in the fraud claim, all of the plaintiffs' other claims also fail to meet the Twombly/Iqbal test.

    1.    **Plaintiffs Have Not Stated A Cognizable Fraud Claim Against HPFS**

The Complaint provides no details or specifics that could properly form the basis for a fraudulent misrepresentation claim under Massachusetts law against Defendant HPFS, a non-party to the transactions and a non-participant in the events that are the subject of the litigation. "To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005) (citation omitted).

Moreover, for a fraud claim in federal court, the allegations must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires "the circumstances constituting fraud or mistake [to] be stated with particularity."  In the First Circuit, pleading fraud with particularity requires the plaintiff to "specify the time, place, and content of the alleged false or fraudulent representations." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004).  In other words, Rule 9(b) requires "the who, what, when, where, and how" to be laid out. United States ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 123 (1st Cir. 2013); see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).  The purpose of this requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during

discovery." Karvelas, 360 F.3d at 226 (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)).

The allegations in the Complaint fall fatally short of the Massachusetts and the heightened Rule 9(b) standards.  The plaintiffs make only vague, general, and conclusory references to conduct that might imply fraud as against HPFS, primarily:  "*Defendants* represented to ICT that the Equipment *they sold* to ICT pursuant to the WSA and RRSA for the express purpose of reselling was genuine HP equipment manufactured by HP's wholly-owned Chinese manufacturer H3C.  Those representations were *included as the terms of the WSA*, which expressly identified the sold Equipment as manufactured by HP/H3C."  See Complaint, ¶ 36 (emphasis added).  However, HPFS did not sell equipment to ICT, nor was it a party to the WSA.  HPFS is not identified as having made the alleged representation.  In fact, plaintiffs do not specify who made it.  The Complaint lacks all detail as to the actor, action, representation, date, time, location or content of any communication that would serve as a basis for the fraud allegation.  As such, Count I is woefully deficient of the Rule 9(b) requirement of particularity; especially so as against HPFS, which is not even identified as a "speaker" uttering the alleged non-specific representations.

Conveniently, throughout the Complaint, and in the fraud and negligence allegations in particular, plaintiffs improperly conflate HPFS and co-defendant HPFS (India).  The fraud count frequently refers to alleged representations made by *Defendants*, (id. at ¶¶ 37-40), and even the sole factual reference to HPFS's role in the saga is itself vague and illusory:  "Defendant HPFS was directly involved in the negotiations and execution of the relevant contracts with plaintiff ICT."  Id. at ¶ 12.  Apart from not identifying the "relevant contracts" (HPFS was not party to

*any* relevant contract), this allegation does not remotely approach the requisite detail to state a claim for fraud against HPFS (an entity distinct from co-defendant HPFS (India)).

Simply put, the Complaint does not plead the required "who, what, when, where, and how" necessary to give form to allegations of fraudulent misrepresentation.  Takeda Pharm. Co., 737 F.3d at 123.  Vague references to "those representations" -- namely, that the equipment at issue was genuine -- do not suffice.  Vis-à-vis HPFS, there is no indication that *it* -- as opposed to others -- made "those representations," where or when they were made, or how they were communicated (whether oral or written).   Indeed, the sole specific reference regarding "those representations" is that the WSA "expressly identified the sold Equipment as manufactured by HP/H3C."  See id. at ¶ 36.  Even if the WSA contained such a representation, however, neither the plaintiffs nor HPFS were parties to the WSA.  Only HPFS (India) and Shinto were.

Plaintiffs have not met Rule 9(b)'s heightened pleading standard, and have failed to properly allege the elements of a fraud claim under Massachusetts law.  Consequently, the Court should dismiss Count I as against HPFS.

### 2.     No Negligent Misrepresentation Has Been Stated Against HPFS

The Complaint similarly suffers from a lack of specifics to support a negligent misrepresentation claim under Massachusetts law -- which requires allegations that the defendant: "(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information."  Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009) (citation and internal quotations omitted).  Notably, negligent misrepresentation claims "where the core allegations effectively charge fraud" are also subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15

(1st Cir. 2009) (citing <u>Hayduk v. Lanna</u>, 775 F.2d 441, 443 (1st Cir. 1985)).   Additionally, "[j]ustifiable reliance is integral to a claim for negligent misrepresentation," <u>Marram</u>, 442 Mass. at 59, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim that survives a motion to dismiss.  <u>Iqbal</u>, 556 U.S. at 678.

Here, plaintiffs' negligent misrepresentation claim fails to satisfy the heightened pleading standard under Rule 9(b) (since the core allegation is effectively fraud), but they likewise fail to meet even the most basic pleading requirements set forth in <u>Twombly</u>, 550 U.S. at 555 and <u>Iqbal</u>, 556 U.S. at 678.  The Complaint is devoid of any specifics as to any alleged representations at all by HPFS (as an entity distinct from HPFS (India)).   The sole example of a negligent misrepresentation given is a non-specific reference to the sale of the equipment, presumably the WSA -- a contract to which neither ICT nor HPFS was party.

It is not alleged, nor can it be shown, that HPFS had knowledge of or could have known information to which HPFS (India) *may* have been privy.  HPFS had no opportunity to ascertain the provenance of the equipment, nor would it have any reason to do so as a non-party to the transaction.   Instead, ICT's broker had opportunity to examine the equipment and apparently failed to do so.  The Complaint is conveniently silent as to whether such failure to inspect was reasonable, even though "[j]ustifiable reliance is integral to a claim for negligent misrepresentation," <u>Marram</u>, 442 Mass. at 59.  Thus, ICT's negligent misrepresentation claim should be dismissed because it fails to identify when or how HPFS induced ICT's unjustifiable reliance on an unidentified statement in a contract to which HPFS was not a signatory or a party.

### 3.    **ICT Has Not Alleged Breach Of Contract**

The entire premise of ICT's breach of contract claims is that, because the equipment was allegedly counterfeit, both HPFS and HPFS (India) breached the RRSA and WSA.  <u>Complaint</u>, Count III & ¶ 53.  ICT has failed, however, to demonstrate how either the WSA or the RRSA creates any contractual relationship or privity with movant HPFS.  Ignoring the fact that *ICT*

*itself* was not a party to the WSA, the Complaint fails to identify a contractual provision that could have actually been breached by HPFS -- a non-promissor under either agreement.[7]

### a.    There Is No Privity of Contract Between ICT and HPFS

ICT cannot assert a breach of contract claim against HPFS under either the WSA or RRSA because HPFS is not a party to either agreement.   In order to bring suit for breach of contract, there must be privity -- namely, "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so."   BLACK'S LAW DICTIONARY 1320 (9th ed. 2009); see also Corcoran v. Healey, 1981 Mass. App. Div. 83, 86 (1981) (implicitly noting that privity of contract is "essential" in "an action for breach of contract under traditional contract theory"); Anastasi Bros. Corp. v. Massachusetts Convention Ctr. Auth., 1993 Mass. Super. LEXIS 107 (Mass. Super. Ct. Nov. 1, 1993) ("In the absence of privity of contract, ABC cannot prevail on its breach of contract claims in Counts I, II, and VI.").

While, in certain circumstances, third parties can be considered in privity of contract if they are intended beneficiaries, see, e.g., CUMIS Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 23 Mass. L. Rep. 550 (Mass. Super. Ct. 2005) (citing Markel Service Insurance Agency, Inc. v. Tifco, Inc., 530 N.E.2d 340 (1988)), that theory at most might allow a third-party beneficiary such as ICT to sue *a party to* the WSA -- in this case, HPFS (India).   The intended beneficiary rule does not allow the beneficiary to sue *a non-party to* the contract -- simply because only the promisor has a duty to perform under the contract.   See, e.g., Restatement (Second) of Contracts § 304 ("A promise in a contract creates a duty **in the promisor** to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.") (emphasis added); Licata v. GGNSC Malden Dexter LLC, 2 N.E.3d 840, 848 (2014) (noting that Massachusetts has

---

[7] Even assuming ICT could demonstrate some contractual relationship with HPFS, both the RRSA and the WSA contain indemnity and hold harmless provisions that bar claims against affiliates of HPFS (India) -- of which HPFS is one. See infra.

"adopted the rules concerning third-party beneficiaries set forth in the Restatement (Second) of Contracts (1981) (Restatement)").

Due to the utter lack of connectedness of HPFS to these allegations, its lack of privity or promise, and the lack of any alternative means of seeking contractual redress against it,[8] ICT's contract claims should be dismissed as against HPFS.

### b.  Indemnification Clause Bars ICT's Claims Against HPFS

The RRSA mandates that ICT must indemnify all affiliates of HPFS (India) as against all claims related to the subject equipment.[9]  As plaintiffs themselves concede in their Complaint, HPFS is such a protected affiliate.  See, e.g., Complaint at ¶¶ 1, 12 & 13.

Under Massachusetts law, contractual agreements to indemnify are wholly enforceable and are subject to the same general rules of construction as other contract provisions.  Laiho v. CONRAIL, 4 F. Supp. 2d 45, 50 (D. Mass. 1998).  This is especially true when the contracting parties are commercial entities.  Kelly v. Dimeo, Inc., 581 N.E.2d 1316, 1318-19 (Mass. App. Ct. 1991).

The claims ICT makes against HPFS clearly "arise from ICT's . . . handling, storage . . . [or] re-sale . . . of any Active Equipment" (Callaghan Dec., Ex. B, at Section 10.4), and are

---

[8] The only conceivable manner in which ICT might be able to bring a breach of contract action against HPFS would be through piercing HPFS (India)'s corporate veil.  That it cannot do.  A substantial hurdle for any plaintiff to surpass in any jurisdiction, the 'piercing the corporate veil' bar is set even higher in Massachusetts.  See Yankee Microwave, Inc. v. Petricca Communs. Sys., 760 N.E.2d 739, 758 (Mass. App. Ct. 2002) ("Massachusetts has been somewhat more 'strict' than other jurisdictions in respecting the separate entities of different corporations.") (citing My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748 (1968)).  In any event, the Complaint makes no attempt to allege that HPFS (India)'s corporate veil should be pierced.

[9] The RRSA provides:

> ICT will indemnify HPFS [India] and *its affiliates*, officers, directors, agents and employees harmless from and against any and all claims, actions, proceedings, losses, expenses (including reasonable attorneys' fees), demands or judgments which result or arise from the [sic] ICT's use, operation, handling, storage, disposal, transportation, recycling, re-sale or destruction of any Active Equipment.  This Section 10.4 will survive the termination of this Agreement.

See Callaghan Dec., Ex. B, at Section 10.4 (emphasis added).

covered by ICT's broad indemnification obligation thereunder.  For this reason alone, all of ICT's claims, not least its breach of contract claims, should be dismissed as against HPFS.

    4.    **Equipment Was Sold "As Is With Defects" And Without Warranty**

Like the breach of contract claims, the breach of warranty claim stems from the allegation that the Equipment was allegedly counterfeit.  <u>Complaint</u>, Count IV & ¶ 56. Massachusetts law plainly precludes this claim because HPFS made no warranties.  In fact, the equipment was sold "as is" and all warranties were expressly disclaimed.

Mass. Gen. Laws ch. 106, § 2A-214 permits contractual exclusion of warranties -- both express and implied -- so long as the disclaimer is sufficiently clear.  <u>See</u> Mass Gen. Laws ch. 106, § 2A-214 ("Under § 2A-214(3), 'all implied warranties are excluded by expressions like 'as is', or 'with all faults', or by other language that in common understanding calls the lessee's attention to the exclusion of warranties and makes plain that there is no implied warranty, if in writing and conspicuous.").  <u>See</u> <u>generally</u> <u>Bergstresser v. Cooke</u>, 12 Mass. L. Rep. 466 (Mass. Super. Ct. 2000).

In the WSA, HPFS (India)'s contract for sale of equipment to Shinto, the relevant warranty disclaimer is in writing, conspicuous, and abundantly clear; and a similar warranty disclaimer was expressly set forth in the RRSA.[10]  As these were contracts negotiated at arms' length between sophisticated commercial parties, Mass. Gen. Laws ch. 106, § 2A-214 precludes

---

[10] The relevant sections provide:
> The Equipment is sold "AS IS WITH DEFECTS" and, to the fullest extent permitted by law, Seller makes no warranty, express or implied, as to any matter whatsoever, including but not limited to the Equipment design, workmanship or materials, or the implied warranties of merchantability or fitness for a particular purpose . . . .

Callaghan Dec., Ex. A, at Section 6.

> "<u>HPFS Warranties</u> - To the maximum extent permitted by applicable law, HPFS makes no warranty whatsoever concerning the Active Equipment and no such warranty will be implied."

Callaghan Dec., Ex. B, at Section 10.3.

any breach of warranty claim.  Moreover, there is simply no showing or suggestion why or how the Chinese plaintiffs -- who lack any privity or nexus whatsoever to the relevant agreements or the defendants -- could allege breach of warranty, as they purport to do.  At a minimum, their warranty claim ought to be dismissed.

5.    **Plaintiffs Are Precluded From Relief On Their Chapter 93A Claims**

Count V of the Complaint alleges that HPFS violated the Massachusetts Deceptive Trade Practices and Consumer Protection Act as against HPFS, Mass. Gen. Laws Ch. 93A, § 11.  <u>See</u> Complaint at ¶¶ 59-67.

a.    **Chapter 93A Allegations Are Conclusory and Bereft of Detail**

Chapter 93A states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2(a).[11]  However, no Chapter 93A claim can survive where the allegations pled are conclusory in nature, based on a rote recital of the elements of the cause of action, lack sufficient detail, or are based on speculation.  <u>McLaughlin v. Intoccia</u>, 26 N.E.3d 752, 752 (Mass. App. Ct. 2015) ("While the plaintiffs asserted in their complaint that Norwood knew, or recklessly disregarded, that Intoccia was engaged in a multi-million dollar check-kiting scheme, they allege no facts other than mere speculation to support their claim.").

Here, as in <u>McLaughlin</u>, plaintiffs baldly assert that "Defendants committed their unfair and deceptive acts or practices willfully or knowingly," Complaint at ¶ 63, while providing no facts or details whatsoever to support this allegation as against HPFS.

---

[11] "The statute does not specifically define unfair or deceptive, but Massachusetts courts have recognized that [a] practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." <u>Kenda Corp. v. Pot O'Gold Money Leagues, Inc.</u>, 329 F.3d 216, 234 (1st Cir. 2003) (citing <u>Linkage Corp. v. Trustees of Boston Univ.</u>, 679 N.E.2d 191, 209 (Mass. 1997) (internal quotations omitted)).

b.      **Alleged Acts Occurred Outside Massachusetts**

A Chapter 93A, Section 11 claim can only stand if the alleged unfair actions "occurred primarily and substantially" inside Massachusetts. See Mass. Gen. Laws Ch. 93A, §11. When determining where the alleged unfair acts "primarily and substantially" occurred, the First Circuit has traditionally utilized a three-part test that "looks to (1) where the defendant commits the unfair or deceptive act or practice; (2) where the plaintiff receives or acts on the wrongful conduct; and (3) where the plaintiff sustained the losses caused by the wrongful conduct." Softub, Inc. v. Mundial, Inc., 53 F. Supp. 3d 235, 258 (D. Mass. 2014) (citing Play Time, Inc. v. LDDS Metromedia Communications, Inc., 123 F.3d 23, 33 (1st Cir. 1997)).[12]   Massachusetts courts do not focus on any individual factor, but instead examine "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Kuwaiti Danish Computer Corp., 781 N.E.2d at 799.   While fact intensive, this analysis includes "looking at the place of conduct and the situs of loss." Auto Shine Car Wash Sys. v. Nice 'n Clean Car Wash, Inc., 792 N.E.2d 682, 685 (Mass. App. Ct. 2003) (citing Kuwaiti, 781 N.E. 2d at 798 n.13) (internal quotation omitted).

Here, although the Complaint makes the conclusory allegation that "Defendants' unfair and deceptive acts or practices occurred primarily and substantially within the Commonwealth" (Complaint at ¶ 66), the sole factual support for this is the allegation that Massachusetts was where "the negotiations and execution of the relevant agreements took place and the complained-of misrepresentations were made." Id.  Plaintiffs' allegations, however, reveal that:

- Computer equipment was leased and returned to HPFS (India) *in India*. Id at ¶¶ 16-18.

- HP's internal policy required *an Indian buyer* for the computer equipment, thus HPFS (India) first sold the equipment to Shinto, *an Indian broker*. Id. at ¶¶ 21-22.

---

[12] There is no legislative history pertaining to the construction of "primarily and substantially." Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 781 N.E.2d 787, 798 n.12 (Mass. 2003) (citing Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 672 n.11 (1985)).

- "ICT used its sales offices *in China* to arrange prospective customers to purchase the first installment of the Equipment. . . ." Id. at ¶ 24 (emphasis added).

- Shinto then exported the first installment of the computer equipment *to China*, where it was forwarded to ICT's sales offices *in China*. Id. at ¶ 25.

- Upon receiving the computer equipment *in China*, ICT representatives determined the equipment was substandard not marketable. Id. at ¶ 26.

- The parties' representatives[13] inspected equipment together *in India*. Id. at ¶ 27.

- H3C lodged a complaint *with the Chinese authorities*, which led to ICT's *offices in China* being raided by the local police, and the Chinese plaintiffs were detained and arrested. Id.

- Equipment was seized *in China* and is in *custody of Chinese authorities*. Id. at ¶¶ 6, 29.

- ICT lost *its Chinese business*, and closed *its offices in China*. Id. at ¶¶ 6, 34.

- The individual plaintiffs are Chinese nationals and *reside in China*. Id. at ¶¶ 9-11.

- Criminal charges against the individual plaintiffs remain open *in China*. Id. at ¶ 33.

The Complaint itself, therefore, confirms that, not only did the entirety of plaintiffs' losses occur in China, but all of the events, transactions, and actions taken in furtherance of the RRSA and/or WSA occurred outside of Massachusetts; namely in India and China.

Given the pronounced importance of China and India in this saga, "the significant contacts of the[se] competing jurisdictions are approximately in the balance," and the conduct at issue here cannot be said to have occurred primarily and substantially in Massachusetts. See, e.g., Fishman Transducers, Inc. v. Paul, 684 F.3d 187, 197 (1st Cir. 2012). Consequently, Count V should be dismissed.

### c.   Statute Of Limitations Mandates The Dismissal Of Count V

The statute of limitations period for Chapter 93A claims is four years from the date the action accrues. See Kozikowski v. Toll Bros., Inc., 246 F. Supp. 2d 93, 98 (D. Mass. 2003)

---

[13] At paragraph 27 of the Complaint, as in other places, Plaintiffs make general reference to "HPFS" (as opposed to HPFS (India)) representatives being involved in an inspection of equipment in India. No specifics are provided. Here, again, Plaintiffs self-servingly lump together and conflate HPFS and HPFS (India) in order to misidentify the two separate entities as one.

(citing Mass. Gen. Laws ch. 260, § 5A).  Here, since the Complaint was filed on December 9, 2015, only acts which occurred after December 9, 2011 are relevant to the Chapter 93A claim. See, e.g., Evergreen Partnering Group, Inc. v. Pactiv Corp., 2014 U.S. Dist. LEXIS 10218 at * 5 n.13 (D. Mass. Jan. 28, 2014); Softub, Inc., 53 F. Supp. 3d at 258 (action filed on April 6, 2012, so the court refused to consider acts predating April 6, 2008).

The only Massachusetts-related deceptive acts alleged -- negotiation and execution of the WSA and the RRSA (both dated December 6, 2011) -- perforce fall outside the limitations period in that they predated December 9, 2011.  Since "negotiation and execution of the relevant contracts" (Complaint at ¶12) is the only specific act in which HPFS is implicated, the four-year statute of limitations precludes plaintiffs' Chapter 93A claim against HPFS.

### 6.     The False Arrest/False Imprisonment Claims Must Fail

Count VI, alleging "False Arrest/False Imprisonment" on behalf of the individual Chinese plaintiffs, fails to state a claim.

In Massachusetts, the tort of false imprisonment consists of the "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement."  Noel v. Town of Plymouth, 895 F. Supp. 346, 354 (D. Mass. 1995); Restatement (Second), Torts § 35 (1965); see also Sarvis v. Boston Safe Deposit & Trust Co., 711 N.E.2d 911, 921 (Mass. App. Ct. 1999).

Here, the Complaint contains no factual allegations against HPFS that, if true, could establish a single element of a false imprisonment or false arrest claim.  Nothing in the Complaint even hints that HPFS directly or indirectly caused the Chinese plaintiffs to be arrested.  In fact, the Complaint alleges the opposite.  It alleges only that a non-party -- an entity separate and distinct from HPFS -- provided the information to the Chinese police which caused the arrest of the individual plaintiffs.  See Complaint ¶ 29 (the third party "lodged a complaint

with the local [Chinese] police . . . [and] Individual Plaintiffs were detained on December 9-10, 2012, and later arrested.") (emphasis added).[14]   With this deficiency, Count VI must be dismissed as against HPFS.

## **CONCLUSION**

Based on the foregoing, HPFS respectfully requests that this Court dismiss plaintiffs' Complaint in its entirety as against HPFS, along with such other and further relief as this Court deems just and proper.

---

[14] While the Complaint later alleges insufficient efforts to secure the release of the Chinese plaintiffs (where HPFS and HPFS (India) are again improperly conflated) (see Complaint ¶¶ 30-33), these allegations pertain to a period months after the arrests.  See Complaint at ¶29 (alleging ICT brought its concerns to HPFS (India) in February 2013).  Those factual allegations are irrelevant to the false arrest/imprisonment claim, which considers the defendant's behavior *leading up to and causing* the alleged false imprisonment.  See, e.g., Sarvis, 711 N.E.2d at 921.

Respectfully submitted,

Dated: March 31, 2016                By: /s/ Michael R. Dube

Michael R. Dube (BBO # 654748)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 502-4077

Anthony P. Callaghan (admitted *pro hac vice*)
GIBBONS P.C
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Telephone:  (212) 613-2000
Facsimile:  (212) 290-2018

*Attorneys for Defendant Hewlett-Packard Financial
Services Company*

## CERTIFICATE OF SERVICE

I, Michael R. Dube, hereby certify that on this 31st day of March, 2016, I caused a copy of the foregoing document to be sent electronically to the registered participants in this case through the ECF system.

/s/ Michael R. Dube

21

7378886v1