# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU,<br><br>                    Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED,<br><br>                    Defendants. | **Civil Action No. 1:16-CV-10386 (LTS)** |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HEWLETT-PACKARD FINANCIAL SERVICES COMPANY'S MOTION TO DISMISS

Lester E. Riordan III
Damonmill Square
12 Pond Lane, Suite EB-1N
Concord, Massachusetts 01742
BBO No. 633725
Telephone: 978-341-0404
Email: riordanlaw@comcast.net

Dimitry Joffe (admitted *pro hac vice*)
Salisbury & Ryan LLP
1325 Avenue of the Americas
New York, NY 10019
Tel: (212) 977-4660
Email: dj@salisburyryan.com

*Counsel for the Plaintiffs*

April 14, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

Preliminary Statement ................................................................................................... 1

Factual Background ....................................................................................................... 3

Legal Argument .............................................................................................................. 7

    I.    The Act of State doctrine is inapplicable. ............................................ 7

    II.   Defendant HPFS improperly substitutes Plaintiffs' allegations with its own factually misleading account ........................................................ 10

    III.  The Complaint properly alleges all pleaded causes of action. ............. 12

        A.    The misrepresentation claims are stated with the requisite particularity. ................................................................................ 12

        B.    The breach of contract claim is properly stated against Defendant HPFS India. .................................................................. 13

        C.    The breach of warranty claim is properly stated ...................... 14

        D.    The Section 93A claim is not barred ........................................ 16

        E.    The false imprisonment claim properly focuses on Defendant's behavior "leading up to and causing" Individual Plaintiffs' injury. ......... 18

Conclusion ...................................................................................................................... 20

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                <u>Page</u>

Bates v. Southgate,
    31 N.E.2d 551 (1941) ............................................................................... 15, 20

Cumis Insurance Society Inc. v.
    BJ's Wholesale Club,
    2005 WL 6075375 (Mass. Sup. Ct. 2005) ........................................................ 17

Evergreen Partnering Group, Inc. v. Pactiv Corp.,
    2014 U.S. Dist. LEXIS 10218  (D. Mass. Jan. 28, 2014) ............................. 17, 18

Foley v. Wells Fargo Bank,
    772 F.3d 63 (1st Cir. 2014) ............................................................................. 7

Franklin v. Albert,
    411 N.E.2d 458 (Mass. 1980) ......................................................................... 18

In re Lernout & Hauspie Sec. Litig.,
    208 F.Supp.2d 74 (D. Mass. 2002) ................................................................. 7

Kilroy v. Barron,
    326 Mass. 464 (Mass. Sup. Ct. 1950) ............................................................. 12

Levin v. Berley,
    728 F.2d 551 (1st Cir. 1984) ...................................................................... 18, 20

Nocula v. UGS Corp.,
    520 F.3d 719 (7th Cir. 2008) .......................................................................... 9

Nycal Corp. v. KPMG Peat Marwick, LLP,
    426 Mass. 491 (Mass. 1998) ........................................................................... 12

Sarvis v. Boston Safe Deposit & Trust Co.,
    711 N.E.2d 911 (Mass. App. Ct. 1999) .......................................................... 19

Sharon v. Time, Inc.,
    599 F. Supp. 538 (S.D.N.Y. 1984) ................................................................. 9

United States ex rel. Karvelas v.
    Melrose-Wakefield Hosp.,
    360 F.3d 220 (1st Cir. 2004) ........................................................................... 12

V.S.H. Realty, Inc. v. Texaco, Inc.,
    757 F.2d 411 (1st Cir. 1985) ...................................................................... 15, 20

W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.,
    492 U.S. 400 (1990) ......................................................................... 2, 7, 8, 9, 20

Watterson v. Page,
    987 F.2d 1, 3-4 (1st Cir. 1993) ........................................................... 6, 7

**Statutes**

Mass. Gen. Laws ch. 106, § 2-312................................................... 14, 20

Mass. Gen. Laws ch. 106, § 2-312(2) ................................................... 14

Mass. Gen. Laws ch. 106, § 2-313(1)(b) ................................................ 15

Mass. Gen. Laws ch. 106, § 2-318................................................... 16, 20

Mass. Gen. Laws ch. 106, § 2A-214 ..................................................... 14

Mass. Gen. Laws ch. 260, § 12 ..................................................... 18, 20

Mass. Gen. Laws ch. 93A ........................................................... 16, 17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .............................................. 2, 10

Federal Rule of Civil Procedure 9(b)...................................................... 12

Restatement (Second) of Torts, § 552.................................................... 12

## **Preliminary Statement**

Plaintiffs respectfully submit this memorandum of law in opposition to Defendant Hewlett-Packard Financial Services Company's ("HPFS") motion to dismiss the complaint (the "Complaint"). The Complaint alleges tort, contract and statutory claims against Defendant HPFS and/or its wholly-owned subsidiary Defendant HPFS India arising from Defendants' sale of certain IT equipment (the "Equipment") to Plaintiff Integrated Communications & Technologies, Inc. ("ICT") in December 2011 for the express purpose of reselling it. Defendants represented the Equipment as genuine HP equipment manufactured by their affiliate H3C Technologies Co., Ltd. ("H3C"), which representation was false because the Equipment was in fact counterfeit.

When Plaintiff ICT and its sales associates (the "Individual Plaintiffs"), unaware of the counterfeit nature of the Equipment, attempted to resell the Equipment in China in 2012, H3C complained to the police that the Equipment was counterfeit, leading to the raid on ICT's office, seizure of the Equipment and the arrest and prolonged 7-month detention of the Individual Plaintiffs. Several months after the raid, with the Individual Plaintiffs still in custody, Defendant HPFS made a written submission to the Chinese authorities stating that the Equipment was indeed counterfeit but that the counterfeiting happened before the sale of the Equipment to ICT, and that ICT was entitled to assume that the Equipment was genuine and should not be held responsible for reselling counterfeit equipment.

On December 9, 2015, Plaintiffs filed the Complaint in the Superior Court of Massachusetts, seeking compensation for the injuries to their business, property and/or persons caused by Defendants' actions. Defendant HPFS, a corporation doing business in Massachusetts, was properly served with the Complaint, removed it to the U.S. District Court based on diversity jurisdiction, and now moves to dismiss it as precluded by the Act of State

doctrine and for failure to state a claim under Rule 12(b)(6), while Defendant HPFS India is still in the process of being served pursuant to the Hague Convention.

Defendant HPFS' motion to dismiss the Complaint should be denied as it rests on legal arguments not warranted by existing law, and on factual assertions that improperly contradict allegations of the Complaint and are demonstrably misleading.

*First*, HPFS' threshold argument that the Complaint should be dismissed or stayed pursuant to the Act of State doctrine is invalid as it flies in the face of the controlling authority of W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., 492 U.S. 400 (1990). The Supreme Court unanimously held in Kirkpatrick that "act of state issues only arise when a court *must decide* – that is, when the outcome of the case turns upon – the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine." 492 U.S. at 406 (emphasis original). Here, the Complaint does not allege -- and the outcome of the case does not turn upon -- the legality *vel non* of the Chinese authorities' actions, and the doctrine has no application in this case. See Part I below.

*Second*, Defendant HPFS improperly substitutes key factual allegations of the Complaint with its own version of events. Thus, Defendant HPFS casts doubt on the fact that the Equipment was counterfeit, which is directly contrary to the Complaint's allegations and HPFS' own contemporaneous admissions. Defendant HPFS also asserts that it was "a non-participant in the events that are the subject of the litigation" (Moving Br. at 9), which assertion not only flatly contradicts numerous factual allegations of the Complaint, which are presumed true for the purposes of the motion, but is also demonstrably misleading. See Part II below.

*Third*, the particular legal grounds upon which HPFS seeks to dismiss Plaintiffs' claims are likewise without merit, and the key legal arguments HPFS makes in support thereof are not

warranted by existing law.  For instance, HPFS' arguments that the "AS IS" disclaimer bars

Plaintiffs' breach of warranty claims, and that statute of limitations bars Plaintiffs' Section 93A

claim are directly contrary to the controlling First Circuit and Supreme Judicial Court of

Massachusetts authorities.  Accordingly, for these and other reasons set forth in Part III below,

HPFS' grounds for challenging the Complaint are invalid, and its motion should be dismissed.[1]

### Factual Background

The Complaint alleges that the moving Defendant HPFS has played the central role in

this case and is the party most responsible for the Plaintiffs' injuries.  Thus, "in late summer/fall

of 2011, Defendant HPFS contacted ICT and offered it the Equipment for remarketing purposes,

and ICT agreed to purchase the Equipment from HPFS."  Complt. ¶ 19. The Equipment at issue

is alleged to have been certain IT networking equipment manufactured by HP/H3C that had been

previously leased by Defendant HPFS' wholly-owned Indian subsidiary, Defendant HPFS India,

to Tata Consultancy for the 2010 Commonwealth Games in Delhi, and was returned to it after

the Games and upon expiration of the leases.  Id. ¶¶ 15-17.

"The negotiations and conclusions of the relevant transactional documents took place

predominantly in the Commonwealth of Massachusetts where Plaintiff ICT and Defendant HPFS

conduct business, and where representatives of Defendant HPFS conducted negotiations on

behalf of their subsidiary HPFS India." Complt. ¶ 19.

The Wholesale Sale Agreement ("WSA"), one of the two relevant contracts concluded in

December 2011, "identified the sold Equipment by HP's and H3C's manufacturing model

codes."  Id. at ¶ 22.  The purchase order issued pursuant to the WSA and made part thereof was

---

[1]  Should the Court disagree with Plaintiffs and decide to grant HPFS' motion and dismiss the Complaint, Plaintiffs respectfully seek the Court's leave to amend their pleadings.

"executed by a general manager of Defendant HPFS on behalf of Defendant HPFS India" and "likewise identified the purchased items as HP/H3C-manufactured equipment." Id.[2]

Accordingly, "ICT purchased the Equipment represented by HPFS as genuine HP/H3C-manufactured equipment, and had no reason to believe otherwise:  ICT contracted with an HP entity [and] the contracts specifically identified the Equipment as HP/H3C-manufactured equipment." Id. at ¶ 23.

Moreover, "Defendants warranted that the Equipment was genuine equipment manufactured by HP/H3C, bearing genuine HP/H3C trademarks." Id. at ¶ 56.  The WSA states in Clauses 2 and 6 that "Seller warrants that . . . (i) Seller is the lawful owner of the Equipment and (ii) the Equipment will be free and clear of all liens and encumbrances whatsoever," and "the title and legal and beneficial ownership of the Equipment shall be transferred to the Buyer." Callaghan Decl. Exh. A.

Upon receipt of the first installment of the Equipment in China in 2012, Plaintiffs realized that "the Equipment was in a substandard condition (scrap-grade), with physical damage, rust, scratches and other defects, and not marketable as anticipated." Complt. ¶ 26.

What Plaintiffs still did not know at the time was that the Equipment they received was not merely in a substandard condition, but that it was altogether not the same Equipment as represented by the Defendants – it was a counterfeited substitute.  The Complaint alleges that Defendants knew or were reckless or negligent in not knowing that the Equipment was counterfeit.  Thus, pursuant to Defendant HPFS' standard operating procedures, the processing

---

[2]    Defendant HPFS has submitted true and correct copies of the relevant contracts as exhibits to the March 31, 2016 declaration by Anthony Callaghan (the "Callaghan Decl.") accompanying its motion.  Exhibit A to that declaration is a copy of the WSA, which shows that the purchase order describing the H3C-manufactured Equipment is executed by James O'Grady, whom the Complaint refers to as a "general manager of Defendant HPFS."  Exhibit B to the Callaghan Declaration is a copy of the Referral and Revenue Sharing Agreement ("RRSA"), executed by Javlin Lim, whose title is stated as "APJ Delivery Team Lead."  Upon information and belief, "APJ" stands for the "Asia Pacific and Japan" Region, a business segment of Defendant HPFS; in any event, it is not HPFS India.

of used equipment upon lease expiration included a product-specific test and audit procedure, which upon information and belief was conducted in 2011 prior to the sale of the Equipment to ICT.  Id. ¶ 18.  In 2012, when the first installment of the Equipment shipped to China was discovered by Plaintiffs to be in a substandard condition, the remaining Equipment in India was also inspected by representatives of ICT and Defendant HPFS.  Complt. ¶ 27.  "By virtue of their superior knowledge and expertise regarding HP/H3C-manufactured equipment and trademarks, Defendants ought to have been aware that their representations as to the genuine nature of the Equipment sold to ICT were false."  Complt. ¶ 45.  Plaintiffs, on the other hand, "had no expertise or technical knowledge to determine whether the Equipment was counterfeit and was entitled to rely on Defendants' representations that the Equipment was genuine pursuant to its contractual arrangements with Defendants.  Nor was Plaintiff ICT under any duty, contractual or otherwise, to inspect the Equipment to determine whether it was genuine."  Complt. ¶ 48.

Plaintiffs then proceeded to resell the Equipment through their offices in China and did so until December 2012, "when representatives of H3C lodged a complaint with the local police accusing ICT and its sales representatives in marketing counterfeit H3C products."  Id. at 29.  This was the first time when Plaintiffs learned that the Equipment was counterfeit, and that Defendant HPFS' representations made a year earlier were false.  Id.

Critically, Defendant HPFS itself admitted in a March 2013 draft submission to the Chinese authorities, the English-language version of which HPFS shared with ICT, that "the counterfeit H3C equipment seized in China is the same equipment sold by HPFS to ICT"; that "[b]ased on the available evidence it would appear that the relevant counterfeiting activities occurred at some point in time prior to the return of the Sold Equipment to HPFS India upon the

expiration of the Leases"; and "taking into account that both HPFS India and H3C are ultimately owned by HP, ICT was entitled to assume that it was buying genuine equipment." Id. at ¶ 30.

The submission was drafted on behalf of Defendant HPFS India but was authored (and the final version signed) by David Gill, Assistant Secretary of Defendant HPFS, according to Defendant HPFS' public corporate records.[3]  The submission also stated that "HP [the parent company of the Defendants and H3C] is reviewing the initial sale to try to determine how the counterfeit equipment was produced and who produced it." Complt. ¶ 30.

Defendant HPFS submitted the final version of the letter (in Chinese) to the Chinese authorities in April 2013, assuring Plaintiff ICT that "the letter is substantively the same as the last English version you saw." Id. at 31.  In fact, contrary to HPFS' assurances, the final Chinese version of the letter, while confirming HPFS' admissions regarding counterfeiting, softened and qualified those admissions in HPFS' favor, reflecting HPFS' attempts to avoid responsibility for selling counterfeit equipment to ICT. Id. at ¶ 32.[4]

The Individual Plaintiffs remained incarcerated for three more months after HPFS' submission.  Upon their release from jail in July 2013, they remained in legal jeopardy in China as the criminal cases against them had not been closed.  Defendant HPFS flatly refused to provide any further assistance to clear the Individual Plaintiffs' names or to share with ICT the results of its investigation about "how the counterfeit equipment was produced and who

---

[3]  On a motion to dismiss, the Court may consider documents referred to in the Complaint, such as the draft submission attached as Exhibit A to the accompanying Declaration of Dimitry Joffe dated April 14, 2016 ("Joffe Decl."), as well as official public records such as Defendant HPFS' Annual Report filed with the Secretary of the Commonwealth and publicly available on its website, attached as Exhibit B to the Joffe Decl.  See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

[4]  A true and correct copy of the Chinese version of the letter, accompanied by English translation, is attached as Exhibit C to the Joffe Decl.

produced it" despite ICT's repeated requests for that information needed to exonerate the Individual Plaintiffs. Id. at 33-34.[5]

Finally, the Complaint alleges that the injuries suffered by Plaintiffs occurred "solely as a result of Defendants' wrongful actions." Id. at ¶¶ 5-6. Nowhere does the Complaint allege that the Chinese police actions were invalid or illegal, and nothing in the Complaint would require the Court to question those sovereign actions.

## Legal Argument

"In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson, 987 F.2d at 3. Conversely, the Court may not consider defendant's factual statements that are contrary to the allegations in the complaint. See In re Lernout & Hauspie Sec. Litig., 208 F.Supp.2d 74, 86 (D. Mass. 2002) ("This Court may not, on a motion to dismiss, credit defendants' assertions that they were uninvolved with the preparation of financial statements in light of the Complaint's numerous allegations to the contrary."). The motion should be denied unless the complaint fails to "set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, 772 F.3d 63, 71 (1st Cir. 2014).

### I.    The Act of State doctrine is inapplicable.

In Kirkpatrick, 493 U.S. 400, the Supreme Court had to decide "whether the act of state doctrine bars a court in the United States from entertaining a cause of action that does not rest upon the asserted invalidity of an official act of a foreign sovereign" (id. at 401) – and unanimously ruled that it did not. This ruling squarely precludes HPFS' Act of State argument.

---

[5] After the filing of this Complaint, one of the Individual Plaintiffs received an exonerating letter from the Chinese police, and the others anticipate receiving them as well. To the best of Individual Plaintiffs' knowledge and belief, after preliminarily concluding that the Equipment was counterfeit based on H3C's initial representations and HPFS' subsequent confirmation, the Chinese authorities closed the case without final adjudication of that issue.

In that case, an unsuccessful bidder for a Nigerian government contract sued defendants who obtained that contract by bribery.  The Supreme Court held that "the factual predicate for application of the act of state doctrine does not exist.  Nothing in the present suit requires the court to declare invalid, and thus ineffective as 'a rule of decision for the courts of this country,' the official act of a foreign sovereign."  Id. at 405 (internal citation omitted).  The Supreme Court also rejected defendants' argument that "the facts necessary to establish respondent's claim will also establish that the contract was unlawful" as a predicate for the application of the Act of State doctrine.  Id. at 406.  The Court held that "assuming that to be true, it still does not suffice" (id.):

> Act of state issues only arise when a court *must decide* – that is, when the outcome of the case turns upon – the effect of official action by a foreign sovereign.  When that question is not in the case, neither is the act of state doctrine.  That is the situation here. Regardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires.

The Supreme Court concluded:  "The short of the matter is this:  Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them.  The act of state doctrine . . . has no application to the present case, because the validity of no foreign sovereign act is at issue."  Id. at 409-10 (emphasis added).

Here, too, the Act of State doctrine has no application because the validity of the Chinese authorities' actions is not at issue.  To the contrary, the Complaint alleges that the Chinese authorities merely acted upon the revelation of the counterfeit nature of the Equipment, but that the wrongful act itself was the Defendants' initial concealment of that fact.

A helpful analogy is provided by a typical securities fraud scenario, where stock trades at inflated prices due to accounting fraud, and when a corrective disclosure is made – frequently in the form of an announced SEC inquiry or enforcement action -- stock price drops and innocent

8

shareholders suffer damages caused by the original fraud, not the corrective disclosure or the SEC act itself, the validity of which is not at issue.  So too is here:  Plaintiffs were selling the Equipment falsely represented by Defendants to be genuine, and when H3C revealed the truth about counterfeiting to the police and the police acted upon it, Plaintiffs suffered damages – caused not by the police action prompted by H3C's revelations, but by the initial misrepresentations made by the Defendants.  Cf. Kirkpatrick, 493 U.S. at 406 ("The issue in this litigation is not whether [the alleged state] acts are valid, but whether they occurred.") (quoting Sharon v. Time, Inc., 599 F. Supp. 538, 546 (S.D.N.Y. 1984)).

This is the critical distinction between this case and the Seventh Circuit's decision in Nocula v. UGS Corp., 520 F.3d 719 (7th Cir. 2008), relied upon by Defendant HPFS.  In Nocula, plaintiff complained about defendant's criminal and civil actions in Poland; the District Court dismissed the complaint based on the act of state doctrine, and the Seventh Circuit upheld that judgment, stating that plaintiff's claim "would necessarily call for an inquiry into the acts of a foreign sovereign and is barred by the act-of-state doctrine." Id. at 728.

The present case, despite superficial similarities with Nocula, is critically different for purposes of the Act of State doctrine because nothing here requires the Court to question the validity of the state acts.  Unlike in Nocula, the Complaint is not about the validity of the foreign state's actions, which are not impugned – it is about Defendants' own misrepresentations, which misrepresentations directly and proximately caused Plaintiffs' injuries when the truth was eventually revealed.  Accordingly, as in Kirkpatrick, "[the act of state] doctrine has no application to the present case, because the validity of no foreign sovereign act is at issue."

9

## II.  Defendant HPFS improperly substitutes Plaintiffs' allegations with its own factually misleading account.

In its efforts to dismiss plaintiffs' claims, Defendant HPFS ignores the Rule 12(b)(6) standard that the allegations are accepted as true and the Complaint is tested for legal sufficiency based on its allegations, and improperly substitutes those allegations with its own, factually misleading version of events.

*First*, Defendant HPFS argues that "whether the Equipment was counterfeit has yet to be determined" (Moving Br. at 3) and claims that "Plaintiffs' case hinges on one question – were the goods counterfeit?  If, and only if, they were, could this lawsuit proceed on the theories asserted." Id. at 4.  However, this is not a proper question for the motion to dismiss:  according to the Complaint's allegations, both the manufacturer of the Equipment H3C and its sellers Defendants HPFS and HPFS India expressly admitted that the Equipment was counterfeit, and stated so to the Chinese authorities, and the Defendants further stated that their parent HP was "reviewing the initial sale to try to determine how the counterfeit equipment was produced and who produced it."  Complt. ¶ 30.  These allegations must be accepted as true on the motion to dismiss, meaning that the Complaint could "proceed on the theories asserted."[6]

*Second*, the key factual premise underlying Defendant HPFS's motion is that it was "a non-participant in the events that are the subject of the litigation."  Moving Br. at 9.  This premise directly contradicts the factual allegations of the Complaint, which show the central role

---

[6] Defendant HPFS' surprising contention that the Equipment might have been genuine all along, and that by implication its own contrary statements to the police, as well as those of its affiliates, might have been false, is not only improper on the motion to dismiss, but it would hardly immunize Defendants from liability for the harm caused to Plaintiffs, albeit under different legal theories.  If subsequent discovery in this case indeed demonstrates that HPFS and H3C had lied to the police, Plaintiffs will seek leave of the Court to amend its pleadings accordingly. Had HPFS known that the Equipment was indeed genuine, it would have been incumbent upon it to share that information with the police and Plaintiffs forthwith, and to compensate Plaintiffs for their losses, which it also flatly refused to do.  Complt. ¶¶ 33-34.  Nor can HPFS pass the buck on the counterfeiting issue to the Chinese police – it is the manufacturer of the Equipment H3C and its HPFS affiliates, all subsidiaries of HP at the time, who are the ultimate experts on whether the HP/H3C Equipment in question was manufactured by them or not.

played by Defendant HPFS in this saga.  In particular, these allegations show that <u>Defendant HPFS itself</u>:  (a) "contacted ICT and offered it the Equipment for remarketing purposes" and "conducted negotiations on behalf of their subsidiary HPFS India" (Complt. ¶ 19); (b) "was directly involved in the negotiations and execution of the relevant contracts with Plaintiff ICT" (<u>id.</u> at ¶ 12); (c) executed contractual documents identifying the equipment as HP/H3C-manufactured equipment on behalf of its subsidiary HPFS India (<u>id.</u> at ¶ 22); (d) inspected the Equipment in 2012 before the police raid (<u>id.</u> at ¶ 27); and (e) after the raid, made a submission to the Chinese authorities, stating that "the counterfeit H3C equipment seized in China is the same equipment sold by HPFS to ICT." <u>Id.</u> at ¶ 30.  So much for the purported non-participation!

Moreover, Defendant HPFS' "non-participation" claim is also factually misleading, as is clearly demonstrated even by the very limited number of documents that could be considered on the motion to dismiss.  As shown above, the key documents referenced in the pleading – the 2011 contracts documenting the sale of the Equipment as genuine to ICT and the 2013 submission to the Chinese authorities admitting that the Equipment was counterfeit – all have Defendant HPFS' fingerprints on them, and put a lie to its "non-participation" claim.

*Third*, Defendant HPFS contends that "HPFS had no opportunity to ascertain the provenance of the equipment, nor would it have any reason to do so as a non-party to the transaction.  Instead, ICT's broker had opportunity to examine the equipment and apparently failed to do so."  Moving Br. at 12.  Again, this directly contradicts the Complaint's allegations (pp. 5-6 above), including Defendant HPFS' own admission that "ICT was entitled to assume that it was buying genuine equipment." Complt. ¶ 30.

As shown below, tested against its own allegations, not Defendant's strawman, the Complaint properly alleges all pleaded causes of action against Defendant HPFS.

11

### III.     The Complaint properly alleges all pleaded causes of action.

#### A.     The misrepresentation claims are stated with the requisite particularity.

In order to prevail on a fraudulent misrepresentation claim under Massachusetts law, the plaintiff must demonstrate that the defendant falsely represented a material fact for the purpose of inducing the plaintiff to act and the plaintiff detrimentally relied on the representation.  Kilroy v. Barron, 326 Mass. 464, 465 (Mass. Sup. Ct. 1950).  With regard to the negligent misrepresentation claim, the Supreme Judicial Court of Massachusetts has adopted the test articulated in the Restatement (Second) of Torts § 552, which provides that "one who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."  Nycal Corp. v. KPMG Peat Marwick, LLP, 426 Mass. 491, 495-96 (Mass. 1998).

Plaintiffs' claims for fraudulent or negligent misrepresentations against Defendant HPFS plead all these *prima facie* elements with the requisite particularity under Rule 9(b), including "the time, place and content of the alleged false or fraudulent representations," United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004), as well as Plaintiffs' justifiable reliance thereupon to their detriment, and scienter (or negligence for the negligent misrepresentation claims).

As shown above at pp. 3-4, the Complaint does plead the required "who, what, when and how" of the alleged misrepresentations with respect to Defendant HPFS.  Briefly, the alleged misrepresentation of material fact was that the Equipment sold to ICT was genuine HP/H3C-

manufactured equipment. Defendant HPFS is alleged to have made that misrepresentation when it offered the Equipment for sale to Plaintiff ICT in late summer/fall of 2011 and then proceeded to negotiate the relevant contracts, executed on or about December 6, 2011, which also identified the Equipment as HP/H3C-manufactured equipment. The misrepresentations took place in Massachusetts where ICT's and Defendant HPFS' offices are located and where the negotiations were conducted. The purchase order annexed to the WSA contains the same misrepresentations and is alleged to have been executed by a general manager of Defendant HPFS on behalf of its subsidiary HPFS India.

Finally, the Complaint alleges justifiable reliance by plaintiffs and their resulting damages. Indeed, Defendant HPFS itself stated in its own submission to the Chinese authorities executed by its Assistant Secretary David Gill that "[u]pon purchasing the equipment from HPFS India and taking into account that both HPFS India and H3C are ultimately owned by HP, ICT was entitled to assume that it was buying genuine equipment." Complt. ¶ 30.[7]

Accordingly, the Complaint properly alleges all the elements of fraudulent or negligent misrepresentation, and Defendant's motion to dismiss these claims should be denied.

### B. The breach of contract claim is properly stated against Defendant HPFS India.

Defendant HPFS misdirected its motion against the breach of contract claim as that claim is not pleaded against Defendant HPFS but only against Defendant HPFS India. Compare Count III, Complt. ¶ 54 ("Defendant HPFS India is liable to Plaintiff [ICT] for damages in an amount to

---

[7] Notably, Defendant HPFS does not challenge the sufficiency of the Complaint's allegations of scienter, which state that Defendant HPFS made those misrepresentations with the knowledge of their falsity or with a complete disregard for the truth (for the fraudulent misrepresentation claim) or negligently (for the negligent misrepresentation claim), because it was aware or should have been aware of the counterfeit nature of the Equipment, including as a result of the 2011 Inspection and/or the 2012 Inspection. The Complaint also alleges Defendant HPFS' motive and opportunity to commit fraud (Complt. ¶¶ 41-42).

be determined at trial.") with the remaining Counts alleging "joint and several" liability of both Defendants, Complt. ¶¶ 43, 49, 58, 67, 72.

**C.**   **The breach of warranty claim is properly stated.**

Defendant HPFS argues that "the equipment was sold 'as is' and all warranties were expressly disclaimed." Moving Br. at 15. Defendant also argues that "Mass. Gen. Laws ch. 106, § 2A-214 precludes any breach of warranty claim." Id. at 15-16. Once again, Defendant HPFS' arguments are not warranted by existing law and are based on misleading factual contentions.

*First*, not "all warranties were expressly disclaimed" in the contracts -- the warranty of title for the Equipment was expressly stated and preserved notwithstanding the "AS IS" disclaimer. See WSA, Clauses 2 and 6 (Callaghan Decl. Exh. A). Because the Equipment was in fact counterfeit and Defendants "could not lawfully resell" it (Complt. ¶ 41), they could not have transferred "the title and legal and beneficial ownership of the Equipment" as warranted, and are liable for breach of that warranty of title.

*Second*, the "AS IS" disclaimer is not capable of waiving the warranty of title even if that warranty was implied and not expressly stated in the contract as here. MGL 106 § 2-312(2) states that "a warranty [of title] under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have." The "AS IS with defects" disclaimer that Defendant HPFS relies upon clearly does not constitute such "specific language" and does not waive the warranty of title, particularly where, as here, that warranty was expressly preserved in the contract.

*Third*, Section 2A of MGL ch. 106 relied upon by Defendant (Moving Br. pp. 15-16) by its terms applies to the lease transactions only, not sales, which are governed instead by Section 2 of MGL ch. 106, and which article 312 cited above precludes Defendant's argument here.

14

*Fourth*, while the contracts at issue indeed specified that the Equipment was sold "AS IS with defects," the very same contracts identified it as HP/H3C-manufactured Equipment, and Defendant HPFS made the same representations to ICT during the sale negotiations. According to M.G.L. ch. 106, § 2-313(1)(b), "any description of the goods which is made part of the basis of the bargain creates <u>an express warranty that the goods shall conform to the description</u>" (emphasis added). Defendant HPFS' description of the Equipment as manufactured by HP/H3C was made part of the basis of the bargain as it "went to the heart of Defendants' contractual arrangements with ICT and constituted material terms of those arrangements" (Complt. ¶ 36) and thus created the express warranty that the Equipment was genuine.

*Fifth*, "Massachusetts case law unequivocally rejects assertion of an 'as is' clause as an automatic defense against allegations of fraud." <u>V.S.H. Realty, Inc. v. Texaco, Inc.</u>, 757 F.2d 411, 418 (1st Cir. 1985). The First Circuit Court in that case quoted "the controlling precedent on this issue in Massachusetts," <u>Bates v. Southgate</u>, 31 N.E.2d 551 (1941), as follows: "The same public policy that in general sanctions the avoidance of a promise obtained by deceit <u>strikes down all attempts to circumvent the policy by means of contractual devices</u>. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement." <u>V.H.S. Realty</u>, 757 F.2d at 418 (emphasis added). In <u>Bates</u>, the Supreme Judicial Court of Massachusetts held that "clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown, whether that fraud was 'antecedent' to the contract or 'entered into the making of it.' <u>Attempts under the form of</u>

contract to secure total or partial immunity from liability for fraud are all under the ban of the law.'" 31 N.E.2d at 182-83 (internal citations omitted, emphasis added).[8]

*Finally*, Defendant HPFS' argument that the Individual Plaintiffs could not allege breach of warranty because they "lack any privity or nexus whatsoever to the relevant agreements or the defendants" (Moving Br. at 16) is precluded by MGL ch. 106, Section 2-318, which states: "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods." Here, the Equipment was sold with the specific purpose of resale, and the Defendant might have reasonably expected that the persons reselling the Equipment (the Individual Plaintiffs) would "be affected by" it within the meaning of the statute.

### D.    The Section 93A claim is not barred.

Defendant HPFS' objections to the Section 93A claims – that the claim is "bereft of detail," that the alleged acts occurred outside Massachusetts, and that the statute of limitation mandates dismissal – are equally unavailing, and the statute of limitations argument is also not warranted by existing law.

*First*, Plaintiffs do not merely assert the Section 93A elements "while providing no facts or details whatsoever to support this allegation as against HPFS," as Defendant claims (Moving Br. at 16). The Complaint's Count V for breach of Section 93A by its terms "re-alleges and reincorporates" all factual allegations of the Complaint, which are summarized above and which

---

[8] This principle also disposes of Defendant HPFS' indemnification argument (Moving Br. at 14), which is invalid in any event because Plaintiffs claims do not arise from their "handling, storage or re-sale" of the Equipment but rather from Defendants' own false representations about its genuine nature during the initial sale to ICT.

show that Defendant HPFS, knowingly or with reckless disregard for the truth, engaged in deceptive acts of misrepresenting counterfeit Equipment as genuine, and that Plaintiffs suffered damages as a result.

*Second*, the complained-of "deceptive acts" within the meaning of Section 93A are the misrepresentations made in the course of the sale negotiations alleged to have taken place from late summer/fall of 2011 until December 2011 "predominantly in the Commonwealth of Massachusetts where Plaintiff ICT and Defendant HPFS conduct business, and where representatives of Defendant HPFS conducted negotiations on behalf of their subsidiary HPFS India."  Complt. ¶ 19.  The Complaint alleges that Defendant HPFS conducted negotiations from its business offices located in Andover, Massachusetts, and that Plaintiff ICT is incorporated in Massachusetts and conducts business from its offices in Malden, Massachusetts, where the misrepresentations were received and relied upon.  See Cumis Insurance Society Inc. v. BJ's Wholesale Club, 2005 WL 6075375 at *5 (Mass. Sup. Ct. 2005) ("In this case, the complaint alleges a G.L.c. 93A claim against a corporation incorporated in Massachusetts (BJ's Wholesale) and an insurance company (CUMIS) which is engaged in trade or commerce in Massachusetts. Accepting the allegations in the complaint as true, there is sufficient basis for considering that the claim arose out of an activity 'primarily and substantially within the commonwealth.") (cited in Moving Br. at 13).[9]

*Third*, the four-year statute of limitation under Section 93A does not bar plaintiffs' claim because that period starts to run "from the date the action accrues" (Moving Br. p. 18), and "the

---

[9]  The long bullet-point list of the events that took place in India and China proffered by Defendant HPFS (Moving Br. 17-18) is wholly irrelevant for purposes of Plaintiffs' Section 93A claim as those events all occurred after the alleged deception prohibited by Section 93A had already been committed by Defendant HPFS in Massachusetts and relied upon by ICT, also in Massachusetts.  Therefore, Defendant HPFS failed to carry out its burden of showing that the bulk of its alleged transgressions – i.e., misrepresentations as to the genuine nature of the Equipment – occurred primarily outside of Massachusetts.  See Evergreen Partnering Group, Inc. v. Pactiv Corp., 2014 U.S. Dist. LEXIS 10218 at *4 (D. Mass. Jan. 28, 2014) (defendant bears the burden of showing that the allegedly deceptive acts occurred outside of Massachusetts in order to defeat the Chapter 93A jurisdictional predicate).

Supreme Judicial Court of Massachusetts has held that a cause of action 'accrues' when a plaintiff knows or reasonably should know of the harm caused by a defendant's conduct." Levin v. Berley, 728 F.2d 551, 556 (1984) (citing Franklin v. Albert, 411 N.E.2d 458, 463 (1980)). Here, while the breach of legal duty for which Section 93A provides redress was completed in December 2011 upon Defendants' sale of the counterfeit Equipment, Plaintiffs did not know or reasonably should have known of the harm until the truth was revealed a year later.

Moreover, M.G.L ch. 260, § 12 states: "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." The Complaint alleges that due to Defendant's concealment of the counterfeit nature of the Equipment, Plaintiffs discovered the harm caused by Defendant's conduct only in December 2012 (Complt. ¶ 29), and had no reason to discover it earlier. Thus, the four-year statute of limitation here runs from December 2012 and does not bar Plaintiffs' claims filed in December 2015.[10]

### E.   The false imprisonment claim properly focuses on Defendant's behavior "leading up to and causing" Individual Plaintiffs' injury.

Defendant HPFS seeks to dismiss the false imprisonment claim by the Individual Plaintiffs on the ground that the Complaint does not "establish a single element of a false imprisonment or false arrest claim," which HPFS identifies as "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." Moving Br. at 19.

---

[10] The cases of Softub and Evergreen cited by Defendant do not lead to a different conclusion. In Softub, the Court found that the discovery rule did not apply because plaintiff "clearly had reasons to believe from early on in its relationship with [defendant] that [defendant's] representations about the quality of its product and its suitability for [plaintiff's] purposes were not to be trusted." 53 F. Supp. 3d at 257. In Evergreen, 2014 U.S. Dist. LEXIS 10218, plaintiff claimed antitrust violations, did not allege that defendant concealed the cause of action, and the Court accordingly had no occasion to consider, and did not discuss, the discovery rule.

There is no question that the Complaint clearly establishes the elements of "unjustified" "confinement" of the Individual Plaintiffs, of which they were "conscious" and by which they were "harmed." The Complaint also alleges the "intent" element of the claim, in that Defendant HPFS knew (indeed, such knowledge is commonplace) that selling counterfeit goods was unlawful and would expose the seller (the Individual Plaintiffs here) to a substantially certain risk of imprisonment. See Complt. ¶ 63.

Thus, Defendant HPFS' objection to the claim boils down to its contention that "nothing in the Complaint even hints that HPFS directly or indirectly caused the Chinese plaintiffs to be arrested." Moving Br. at 19 (emphasis added). However, as Defendant itself concedes, "the false imprisonment claim . . . considers the defendant's behavior *leading up to and causing* the alleged false imprisonment. See, e.g., Sarvis, 711 N.E.2d at 921." The Court in that case stated that "[a] person may be liable for false imprisonment not only when the person's own acts directly impose a restraint upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed." Sarvis v. Boston Safe Deposit & Trust Co., 711 N.E.2d 911, 921 (Mass. App. Ct. 1999) (emphasis added). The Court held that "[t]he defendants, by requesting that the plaintiffs be arrested for trespassing if seen on the property, knowing that there was no lawful basis for the request, were liable for their consequent confinement." Id.

Here, the Complaint alleges that Defendant HPFS provided false information concealing the counterfeit nature of the Equipment to Plaintiffs for the express purpose of Plaintiffs' reselling that Equipment "without identifying HPFS" itself as the source. Complt. ¶ 41. In these circumstances, Defendant HPFS knew or was reckless in not knowing that its conduct would carry significant risk of imprisonment for the Individual Plaintiffs, and it was HPFS' own false statements which ultimately caused that imprisonment.

19

Moreover, the Complaint alleges that when Defendant HPFS became aware of the Individual Plaintiffs' imprisonment, it did not make full disclosure of the relevant true facts to the Chinese authorities, but instead sent a watered-down submission that "reflected HPFS' attempt to avoid responsibility for selling counterfeit Equipment to ICT." Complt. 32. Thus, HPFS failed to take sufficient actions to prevent continuing unjustified imprisonment of the Individual Plaintiffs, who remained in jail for several more months after HPFS' submission.

## Conclusion

In a bid to deny Plaintiffs their day in court, Defendant HPFS makes legal arguments not warranted by existing law, as shown above with respect to its Act of State argument precluded by the Supreme Court's decision in Kirkpatrick; the warranty waiver and indemnification arguments, by the First Circuit and the Supreme Judicial Court of Massachusetts authorities in V.S.H. Realty and Bates, and by MGL ch. 106 § 2-312 and 313; the lack of privity argument, by MGL ch. 106 § 2-318; and the Section 93A statute of limitations argument by the First Circuit decision in Levin and by MGL ch. 260 § 12. Defendant HPFS also improperly argues with the Complaint's factual allegations, putting forth instead its own version of events which it knows to be misleading, as shown with respect to HPFS' claims of "non-participation" and its freshly professed agnosticism about the counterfeit nature of the Equipment, which is contrary to its own contemporaneous admissions. For these reasons, Defendant's motion should be denied.

Lester E. Riordan III
Damonmill Square
12 Pond Lane, Suite EB-1N
Concord, Massachusetts 01742
BBO No. 633725
Telephone: 978-341-0404
Email: riordanlaw@comcast.net

*Counsel for the Plaintiffs*

Respectfully Submitted,

Dimitry Joffe (admitted *pro hac vice*)
Salisbury & Ryan LLP
1325 Avenue of the Americas
New York, NY 10019
Tel: (212) 977-4660
Email: dj@salisburyryan.com

20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

INTEGRATED COMMUNICATIONS &amp; )
TECHNOLOGIES, INC., JADE CHENG, JASON )
YUYI AND CATHY YU, )
                      Plaintiffs, )
 )
v. )    **Civil Action No. 1:16-CV-10386 (LTS)**
 )
HEWLETT-PACKARD FINANCIAL )
SERVICES COMPANY, HEWLETT-PACKARD )
FINANCIAL SERVICES (INDIA) PRIVATE )
LIMITED, )
 )
                      Defendants. )

---

## CERTIFICATE OF SERVICE

I, Dimitry Joffe, hereby certify that on this 14th day of April, 2016, I caused copies of (a)

Plaintiffs' Memorandum of Law in Opposition to Defendant Hewlett-Packard Financial Services

Company's Motion to Dismiss, (b) Declaration of Dimitry Joffe executed on April 14, 2016 with

accompanying exhibits, and (c) Plaintiff Integrated Communications &amp; Technologies, Inc.'s

Corporate Disclosure Statement Pursuant to Local Rule 7.3 to be sent electronically to the

registered participants in this action through the ECF system.

*Dimitry Joffe*

Dimitry Joffe (admitted *pro hac vice*)
Salisbury &amp; Ryan LLP
1325 Avenue of the Americas
New York, NY 10019
Tel: (212) 977-4660
Email: dj@salisburyryan.com