**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU<br><br>Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED<br><br>Defendants. | Civil Action No. 1:16-CV-10386 (LTS)<br><br><br><br><br><br>**LEAVE TO FILE GRANTED ON APRIL 20, 2016** |

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANT HEWLETT-PACKARD
FINANCIAL SERVICES COMPANY'S MOTION TO DISMISS**

I.      **PRELIMINARY STATEMENT**

In their opposition brief, Plaintiffs argue that the Act of State doctrine does not apply because the validity of the seizure and arrests by the Chinese authorities are not in issue. They try to concede the validity of the seizure and arrests, yet still claim redress for the resultant injuries on the premise that HPFS caused them. That is a straw man. As pled, all of Plaintiffs' alleged damages flow from the Chinese authorities' seizure of goods deemed to be contraband, and the arrest and detention of three Chinese citizens.

In taking these acts to enforce its criminal laws, China exercised its sovereign powers and thereby put Plaintiffs' prayer for relief beyond the purview of this Court. Supreme Court precedent dictates that the seizure was *de facto* and *de jure* valid; the arrests and detention were *de facto* and *de jure* valid; and individual plaintiffs remain validly subject to criminal sanction in China. For Plaintiffs to succeed in an American court of law, the validity of these events would have to be undermined. Under the Act of State doctrine, that cannot happen.

II.     **THE ACT OF STATE DOCTRINE MANDATES DISMISSAL**

Plaintiffs' brief relies largely on W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l, 493 U.S. 400, 402 (U.S. 1990), where the late Justice Scalia drew a distinction between the unchallenged acts of a foreign sovereign on the one hand, and the discredited motivations of foreign officials on the other. He concluded that "the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." Id. at 409. Applying that rationale here, the arrests and seizure at issue -- acts of a foreign sovereign applying its laws -- must be deemed valid, and Plaintiffs cannot be heard to complain. To find otherwise would require assessment of Plaintiffs' defense to the seizure and criminal charges: *i.e.*, that they were victims of fraud or negligence. Respectfully, this Court cannot make that assessment. It was or will be made by the Chinese authorities under China's laws, and is not open to review.

Justice Scalia identified several cases properly applying the Act of State doctrine, noting that in each, "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." W. S. Kirkpatrick & Co., 493 at 406 (internal citations omitted). Contrasting those cases, Justice Scalia recognized that the matter before the Court did not require a determination that the sovereign's contract was legal; the question was whether Nigerian officials took bribes in awarding the contract. Id. ("Regardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit[.]"). Notably, Kirkpatrick quoted with favor a district court case where the issue had not been "whether [the alleged] acts are valid, but whether they occurred[.]" Id. (quoting Sharon v. Time, Inc., 599 F.Supp. 538, 546 (SDNY 1984)). In sum, in Kirkpatrick, the validity of the foreign sovereign's acts was not in question.[1]

In the matter *sub judice*, the entire case and prayer for relief turn on the enforcement of China's laws in China. It is established that "[t]he decision of a foreign sovereign to exercise its police power through the enforcement of its criminal laws plainly qualifies as an act of state." Nocula v. UGS Corp., 520 F.3d 719, 728 (7th Cir. 2008). The event that injured ICT was the seizure of its goods as contraband; and the harm that befell the Individual Plaintiffs was their arrest, detention, and continuing criminal peril. Valid under Kirkpatrick, these sovereign acts by Chinese authorities cannot permit recovery of damages in an American court. Indisputably, it was valid for China to act as it did. Because all Plaintiffs were thus subjected to the enforcement

---

[1] Tellingly, outside the narrow confines of Kirkpatrick's application where sovereign validity is not challenged, the Act of State doctrine remains alive and well. See, e.g., Konowaloff v. Metro. Museum of Art, 702 F.3d 140, 145 (2d Cir. 2012) ("the courts of the United States … will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles.") (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964)). See also Nocula v. UGS Corp., 520 F.3d 719 (7th Cir. 2008), discussed at length in HPFS's moving brief.

2

of China's laws in China, respectfully, this Court cannot compensate a resultant injury without calling into question the validity of that enforcement of laws by a foreign sovereign.

In each of the cases deemed by Justice Scalia to properly apply the Act of State doctrine (see Kirkpatrick & Co., 493 at 406), the detention and seizure had been carried out by a foreign sovereign, and affording relief would have impugned the foreign sovereign's enforcement of its laws. The same result must issue here. China determined that its laws were violated, and it acted accordingly. No American court can afford Plaintiffs redress without reviewing and undermining the validity of those sovereign acts -- something the Act of State doctrine precludes.

Attempting to evade the doctrine, Plaintiffs mischaracterize their Complaint, contending that it was Defendants' alleged fraud and negligence that harmed them. Plaintiffs would, therefore, divorce the injury from its cause -- on the fictitious premise that the Chinese authorities had no part in causing their losses. But Plaintiffs' entire damages case is rooted in the seizure of ICT's goods and the arrest of the individuals. Had China not acted as it did, no loss would ensue. Should the Chinese authorities have acted differently? Were their actions justified? Should they have investigated the matter more fully before seizing the goods? Should they have enquired as to ICT's title/chain of custody? Were the arrests heavy-handed? Was the detention excessive? Should they have done more? Or less? Or nothing? All of these questions are essential to the adjudication of the claims and the alleged injuries.

But these questions cannot be asked. Answering them would call into question the foreign sovereign's enforcement of its laws. Unlike Kirkpatrick, this Court is not asked to merely consider the motivation of state actors; it is asked to absolve Plaintiffs of conduct that China deemed a transgression of its laws. Plaintiffs ask to be made whole for the results of their transgression. That cannot be done without assessing on the validity of China's enforcement of

its own laws -- without which Plaintiffs would have suffered no damages.[2]  Like <u>Nocula</u>, <u>supra</u>, that would run afoul of the Act of State doctrine, and the Complaint should be dismissed.

### III.   ALTERNATIVELY, THE COURT SHOULD STAY THIS PROCEEDING

If the Court elects not to dismiss the case under the Act of State doctrine, it should stay the matter pending the outcome of the criminal proceedings in China.  Plaintiffs contend that one of the Individual Plaintiffs has been exonerated.  <u>See</u> footnote 2, <u>supra</u>.  This new development confirms that China remains actively engaged in the ongoing criminal matter.  The Act of State doctrine and principles of comity/deference to ongoing criminal proceedings dictate that, at a minimum, this action should be stayed pending conclusion of the criminal matter in China.

### IV.   PLAINTIFFS MUST DISTINGUISH ALLEGATIONS LEVIED AGAINST HPFS AND HPFS (INDIA)

Although they artfully re-craft their pleading in the opposition brief, Plaintiffs succumb to the same vague and confusing references they employed in their Complaint to conflate HPFS and HPFS (India).  Plaintiffs continue to use vague allusory language, often making no distinction between the two separate entities.  As a result, it is difficult if not impossible to discern which allegations are specific to HPFS, as opposed to HPFS (India).  For instance, despite making no allegations to justify piercing the corporate veil between two independent entities, Plaintiffs continually cite ***Defendants'*** (plural) sale of equipment to ICT.  As is evident from the relevant contracts, however, HPFS did not sell equipment to ICT; co-Defendant HPFS (India) did.  This distinction is important, and clouding it is improper.

---

[2] In a footnote to their brief, Plaintiffs reveal that one of the individual Plaintiffs received an "exonerating letter from the Chinese police." (Opp. Br. at 7 n.5)  That development is of no moment.  The injury was already inflicted and the complained-of loss incurred when the sovereign acted.  Exoneration counts for naught.  By way of illustration, for the case to proceed, the Defendants must assert defenses, among which would be bad acts by Plaintiffs.  In light of the exoneration letter, this Court could not entertain such a defense without exposing the exoneration to scrutiny -- in the same way that it could not re-evaluate an adjudication of guilt.  To do so would call into question the validity of an act undertaken by the foreign sovereign in the enforcement of its laws in its own territory.

Additionally, Plaintiffs self-servingly and selectively cite two separate versions of a letter aimed at securing the release of the jailed Individual Plaintiffs.  Both versions of the letter (the first of which is *an unsigned draft*, emblazoned "**DRAFT FOR DISCUSSION PURPOSES ONLY**") *are on co-Defendant HPFS (India)'s letterhead*, with the *signatory identified as a "Director – HPFS India*."  Each letter also bears the emboldened qualifier "**For and on behalf of Hewlett-Packard Financial Services (India) Private Limited**," and refers only to HPFS (India), not this Defendant.  In the signed version of the letter, HPFS (India) describes its sale of equipment and, relying on representations given by ICT and H3C, states: "Based on the available evidence, HPFS (India) suspects that the part of the seized equipment, the information on which was obtained from the police, might be" the equipment it sold to ICT.  See Joffe Decl., Ex. C.  This is not an admission; and cannot be deemed an admission by HPFS, as Plaintiffs claim.

Additionally, Plaintiffs' opposition asserts facts not pled.  They draw inferences from a *draft* letter that they concede differs from the one submitted to the Chinese authorities (Opp. Br. at 5-6).  And the Complaint has been overtaken by events (an unidentified Individual Plaintiff has been exonerated).  Thus, in addition to being replete with vague, non-specific allegations (as discussed at length in HPFS's moving brief), the Complaint is non-current and inaccurate.

Consequently, if the Court does not dismiss the case under the Act of State doctrine or for the various fatal deficiencies raised in HPFS's moving brief, or stay the matter pending criminal proceedings in China, Plaintiffs should be compelled to update and amend the Complaint to distinguish between allegations aimed at HPFS and co-Defendant HPFS (India).

## V.  CONCLUSION

Based on the foregoing, HPFS respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety as against HPFS, stay the case, or compel Plaintiffs to amend their pleading.

Respectfully submitted,

Dated: April 26, 2016                    By:  /s/ Michael R. Dube

Michael R. Dube (BBO # 654748)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 502-4077

Anthony P. Callaghan (admitted *pro hac vice*)
GIBBONS P.C
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Telephone:  (212) 613-2000
Facsimile:  (212) 290-2018

*Attorneys for Defendant Hewlett-Packard Financial Services Company*

## CERTIFICATE OF SERVICE

I, Michael R. Dube, hereby certify that on this 26th day of April, 2016, I caused a copy of the foregoing document to be sent electronically to the registered participants in this case through the ECF system.

/s/ Michael R. Dube

7526321v1