# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU<br><br><div align="center">Plaintiffs,</div><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED<br><br><div align="center">Defendants.</div> | Civil Action No. 1:16-CV-10386 (LTS) |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HEWLETT-PACKARD FINANCIAL SERVICES COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

2489263.5  108164-84842

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................II

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

LEGAL ARGUMENT ............................................................................................ 4

    A.    HPFS Incorporates the Arguments Previously Made ............................. 4

    B.    The Act Of State Doctrine Mandates Dismissal .................................... 4

    C.    The Claims Asserted On Behalf Of The Individual Plaintiffs Must Be Dismissed For Failure To State A Claim ................................................. 6

        1.    The Amended Complaint Does Not State a Claim for False Imprisonment ............................................................................... 6

        2.    The Individual Plaintiffs' Fraudulent And Negligent Misrepresentation Claims Should Be Dismissed ....................... 9

        3.    The Amended Complaint Lacks Sufficient Specificity ........... 11

        4.    Plaintiffs Identify No Legal Duty HPFS Owed Them ............ 13

        5.    The Individual Plaintiffs Can Only Recover Damages For Their Confinement Through A Claim For Malicious Prosecution ..... 15

        6.    Consequential Damages Cannot be Awarded on Plaintiffs' Breach of Warranty Claim ..................................................... 16

    CONCLUSION ............................................................................................. 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Aetna Cas. Sur. Co. v. P & B Autobody</u>,
　　43 F.3d 1546 (1st Cir. 1994) ................................................................................12

<u>Agri–Mark, Inc. v. Niro</u>,
　　233 F.Supp. 200 (D.Mass.2002) ......................................................................17, 18

<u>Ashcroft v. Iqbal</u>,
　　556 U.S. 662 (2009) ................................................................................9, 10, 11, 14

<u>Bell Atl. Corp. v. Twombly</u>,
　　550 U.S. 544 (2007) ....................................................................................10, 14

<u>Bezdek v. Vibram USA Inc.</u>,
　　No. CIV.A. 12-10513-DPW, 2013 WL 639145 (D. Mass. Feb. 20, 2013) ............................12

<u>Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.</u>,
　　767 F. Supp. 363 (D. Mass. 1991) ........................................................................17

<u>Braunstein v. McCabe</u>,
　　571 F.3d 108 (1st Cir. 2009) ................................................................................9

<u>Carrier v. Riddell, Inc.</u>,
　　721 F.2d 867 (1st Cir.1983) ................................................................................14

<u>Cracchiolo v. Eastern Fisheries, Inc.</u>,
　　740 F.3d 64 (1st Cir. 2014) ................................................................................13

<u>Deerskin Trading Post, Inc. v. Spencer Press, Inc.</u>,
　　495 N.E.2d 303 (Mass. 1986) ..............................................................................17

<u>Eureka Broadband Corp. v. Wentworth Leasing Corp.</u>,
　　400 F.3d 62 (1st Cir. 2005) ................................................................................9

<u>United States ex rel. Ge v. Takeda Pharm. Co.</u>,
　　737 F.3d 116 (1st Cir. 2013) ................................................................................12

<u>Gorfinkle v. U.S. Airways, Inc.</u>,
　　431 F.3d 19 (1st Cir. 2005) ................................................................................13

<u>Harrington v. City of Nashua</u>,
　　610 F.3d 24 (1st Cir. 2010) ................................................................................8, 9

2489263.5   108164-84842

Hasenfus v. LaJeunesse,
   175 F.3d 68 (1st Cir. 1999) ..........................................................................14

Hayduk v. Lanna,
   775 F.2d 441 (1st Cir. 1985) ........................................................................12

Heck v. Humphrey,
   512 U.S. 477 (1994) ..............................................................................15, 16

Heinrich ex rel. Heinrich v. Sweet,
   49 F. Supp. 2d 27 (D. Mass. 1999) ..............................................................12

Hernandez-Cuevas v. Taylor,
   723 F.3d 91 (1st Cir. 2013) ..........................................................................16

Holmes v. Laird,
   459 F.2d 1211 (D.C. Cir. 1972) .................................................................5, 6

United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,
   360 F.3d 220 (1st Cir. 2004) ........................................................................11

Kenda Corp. v. Pot O'Gold Money Leagues, Inc.,
   329 F.3d 216 (1st Cir. 2003) ........................................................................12

Linkage Corp. v. Trustees of Boston Univ.,
   679 N.E.2d 191 (Mass. 1997) ......................................................................12

Logan Equip. Corp. v. Simon Aerials, Inc.,
   736 F.Supp. 1188 (D.Mass.1990) ................................................................17

McGonagle v. United States,
   No. 15-12003-FDS, 2016 WL 54187 (D. Mass. 2016) ................................14

N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale,
   567 F.3d 8 (1st Cir. 2009) ............................................................................12

New England Foundation Co. v. Reed,
   209 Mass. 556 (1911) ..................................................................................12

Noel v. Town of Plymouth,
   895 F. Supp. 346 (D. Mass. 1995) .................................................................6

O'Sullivan v. Shaw,
   726 N.E.2d 951 (Mass. 2000) ......................................................................14

Shaw v. Digital Equip. Corp.,
   82 F.3d 1194 (1st Cir.1996) .........................................................................12

2489263.5  108164-84842

Trans–Spec Truck Serv. Inc. v. Caterpillar Inc.,
    524 F.3d 315 (1st Cir. 2008) ................................................................................................17

Underhill v. Hernandez,
    168 U.S. 250 (1897) ...............................................................................................................5

W.R. Constr. & Consulting, Inc. v. Jeld–Wen, Inc.,
    2002 WL 31194870 (D. Mass. Sep. 20, 2002) .....................................................................18

Wallace v. Kato,
    549 U.S. 384 (2007) ...............................................................................................................8

**Statutes**

42 U.S.C. § 1983 ...........................................................................................................................15

**Other Authorities**

Restatement (Second) of Torts § 35, cmt. subsection 1 (1965) ....................................................15

Restatement (Second) of Torts § 314 & cmt. a (1965) .................................................................14

**Rules**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................10

Federal Rules of Civil Procedure Rule 9(b) ......................................................................11, 12, 13

Rule 8 ............................................................................................................................................10

2489263.5   108164-84842

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint does little to cure the defects in the original Complaint. Individuals and dates are added to the narrative, but the generalities and confusion as between the defendants' alleged roles persist.  Plaintiffs fully acknowledge that the individual actors named in the Amended Complaint *acted on HPFS (India)'s behalf* — and every piece of documentary evidence indicates that ICT and its broker contracted solely with HPFS (India) — yet claims remain asserted against HPFS solely on the grounds that the identified negotiators were HPFS personnel.  That fact alone is insufficient to sustain the Plaintiffs' claims against HPFS, a separate legal entity from HPFS (India).

Moreover, it is apparent from the Amended Complaint that the Individual Plaintiffs have no recourse in a United States court.  First, the allegations fail to state a claim for relief against HPFS.  Nowhere in the factual allegations in the body of the Amended Complaint do the Individual Plaintiffs allege that they *relied* on any representation made by HPFS.  This alone is fatal to their claims.  More importantly, the damages sought by the Individual Plaintiffs on each of their counts relate entirely to their allegedly "unjustified" arrest and imprisonment by the Chinese authorities.  Such damages are only recoverable upon a finding that their confinement was unjustified.  However, the Act of State doctrine bars a U.S. court from reaching such a conclusion, or even making such an inquiry into China's enforcement of its laws.  Indeed, if the confinement had occurred domestically, such damages could only be recovered pursuant to a malicious prosecution theory.  Such a theory would be futile against HPFS, as it is undisputed that HPFS did not commence or continue the criminal prosecution against the Individual Plaintiffs.  Thus, the Amended Complaint remains defective as a matter of law and should be dismissed.

2489263.5   108164-84842

## STATEMENT OF FACTS

In this action, Plaintiff Integrated Communications & Technologies, Inc. ("**ICT**") alleges that moving defendant, Hewlett-Packard Financial Services Company ("**HPFS**"), and co-defendant Hewlett-Packard Financial Services (India) Private Limited ("**HPFS (India)**") sold ICT counterfeit equipment after fraudulently representing that it was genuine.   Amended Complaint ¶¶ 2-3.   The Individual Plaintiffs, each of whom is a Chinese citizen and resident, allege that they were arrested by the Chinese authorities and charged with marketing that equipment (impounded by the authorities), remaining "in legal jeopardy in China" until they ultimately received "no criminal record" letters from the Chinese authorities in late 2015-early 2016.  Amended Complaint ¶¶ 3, 5 9-11.

On March 31, 2016, HPFS filed a motion to dismiss the original Complaint. (ECF Doc. No. 19).   On July 8, 2016, this Court held a hearing on HPFS's motion and, after lengthy argument, granted Plaintiffs' oral motion to amend their Complaint.  On July 18, 2016, Plaintiffs filed the Amended Complaint. (ECF Doc. No. 41).[1]

Crucially, from an Act of State Doctrine perspective, the damages sought by the Individual Plaintiffs on each of their counts relate entirely to their allegedly "unjustified" arrest and imprisonment by the Chinese authorities.  Each of their counts in the Amended Complaint contains the same statement of damages (or a slight variation thereof): that they "spent 7 months

---

[1] To avoid redundant briefing, and on the Court's instruction, HPFS hereby incorporates and repeats the statement of facts and arguments set forth in its briefs on the prior motion to dismiss (ECF Doc. No. 20) ("HPFS Original Brief"), and herein addresses only those new allegations raised in the Amended Complaint.

The Amended Complaint introduces three new causes of action: fraudulent inducement (Count IV), negligence (incorrectly listed as Count VII), and civil conspiracy (incorrectly listed as Count VIII).  Because it contains two causes of action both listed as Count V — Breach of Warranty and Breach of M.G.L. 93A — negligence is actually the Amended Complaint's eighth cause of action and M.G.L. 93A its ninth.

Additionally, the Amended Complaint adds the individual plaintiffs as parties to Count I (fraudulent misrepresentation) and Count II (negligent misrepresentation).

in the extremely harsh conditions of Chinese prison and suffered from loss of freedom, physical pain and sickness, mental suffering, loss of consortium, loss of earnings and employment, and the stigma of a criminal prosecution." <u>See</u> Amended Complaint ¶¶ 87, 94, 113, 122, 129, 135, 145.  And, notably, nowhere in the factual allegations in the body of the Amended Complaint do the Individual Plaintiffs allege that they *relied* on any representation made by HPFS.  To the extent that they mention reliance at all, it is done only by switching the original reference to **ICT** and replacing it with amended reference to **Plaintiffs** -- conclusory allegations tossed in to Counts I and II to fill out the elements of the causes of action asserted.

The Individual Plaintiffs continue to allege that "Defendants' wrongful actions" caused their imprisonment, despite expressly acknowledging that a third party -- H3C Technologies Co., Ltd. ("**H3C**") -- precipitated the arrest and seizure.  <u>See</u> Amended Complaint ¶¶ 1, 40-41, 42, 126.  They allege further misconduct by "Defendants" *after the Individual Plaintiffs were arrested* (such as an allegedly misleading letter submitted to the Chinese authorities, and the failure to provide other assistance in securing their release), presumably to buttress the false imprisonment count.

From a specificity perspective, the Amended Complaint purports to expand the allegations raised in the prior pleading, identifying certain personnel who negotiated and executed documents on co-defendant HPFS (India)'s behalf.  While acknowledging that HPFS (India) was: (a) the owner and seller of the goods in question, (b) the counterparty to the two signed contracts at issue, and (c) the drafter and signatory of the letter submitted to the Chinese authorities in an attempt to secure the release of the Individual Plaintiffs, and conceding that (d) the individual actors named in the Amended Complaint *acted on HPFS (India)'s behalf*, Plaintiffs continue to implicate this defendant -- HPFS -- on the theory that negotiators and other

3

actors were employees of HPFS at all relevant times.  In sum, Plaintiffs amended their pleading to identify several of HPFS personnel who were involved in the negotiations on HPFS (India)'s behalf, claiming that no representatives of HPFS (India) itself were directly involved in the sale negotiations.  Id. at ¶ 13.  Nonetheless, the Amended Complaint acknowledges that "[t]he relevant contractual documents were executed on behalf of HPFS India," and makes no allegation that ICT ever had any misapprehension as to the actual party with which it was contracting.  Id. at ¶¶ 13, 17, 33.

## LEGAL ARGUMENT

**A.    HPFS Incorporates the Arguments Previously Made**

Per the Court's instruction, HPFS hereby incorporates the arguments previously made as to all counts asserted by all Plaintiffs, and reiterates ICT's obligation to indemnify HPFS.  See HPFS Original Brief.

Additionally, while the Indemnification Clause bars many of ICT's claims against HPFS, it equally compels ICT to indemnify and hold harmless HPFS against most if not all the claims asserted by the Individual Plaintiffs.  See HPFS Original Brief, pp. 14-15.  Consequently, at a minimum, the indemnification obligation creates an incurable conflict of interest as between the ICT and the Individual Plaintiffs.

**B.    The Act Of State Doctrine Mandates Dismissal**

As per the Court's directions at the July 8, 2016 hearing on HPFS's motion to dismiss, HPFS hereby incorporates and repeats the Act of State doctrine arguments previously made in support of the prior motion to dismiss (ECF Doc. No. 20), including the relevant standard of review.  See HPFS Original Brief.  These arguments apply equally to all claims in the Amended Complaint, and warrant its dismissal in its entirety.

4

Should the Court continue in its view that the Act of State Doctrine is premature in terms of ICT's claims, it should nonetheless apply the Doctrine to dismiss all claims asserted by the Individual Plaintiffs.  Despite attempting to color their claim for relief as one based on a contrived chain of events set in motion by the Defendants, the Individual Plaintiffs' entire case is that they were *unjustifiably* arrested and imprisoned by the Chinese authorities.  See Amended Complaint ¶ 41.  The recovery they seek on all counts is for damages resulting from their "loss of freedom, physical pain and sickness, mental suffering, loss of consortium, loss of earnings and employment, and the stigma of a criminal prosecution."  See Amended Complaint ¶¶ 87, 94, 113, 122, 129, 135, 145.

As detailed at length in the prior briefing and during the July 8th hearing, the Act of State Doctrine forbids United States courts from second-guessing a foreign sovereign's enforcement of its own laws within its borders.  To permit relief on the theory that the arrest or detention of the Individual Plaintiffs by the Chinese authorities was "unjustified" would fly in the face of that Doctrine.  The very act complained of by the Individual Plaintiffs -- the start, middle and end of the damages sought -- was their arrest, detention, and remaining in peril of criminal conviction. That arrest, detention, and criminal peril befell the Individual Plaintiffs while in the custody and at the hands of the Chinese authorities in the course of enforcing Chinese laws in China.

In Underhill v. Hernandez, 168 U.S. 250 (1897), the case establishing the Act of State doctrine, the United States Supreme Court dismissed a suit for wrongful detention against the revolutionary government of Venezuela, stating, "the courts of one country will not sit in judgment on the acts of another done within its own territory."  Id. at 252.  Similarly, in Holmes v. Laird, 459 F.2d 1211, 1214 (D.C. Cir. 1972), the doctrine barred consideration of the claims stemming from the arrest and conviction of U.S. servicemen stationed abroad in West Germany.

5

As the <u>Holmes</u> court explained: "Here we deal, not with an American prosecution in an American tribunal at home or abroad, but with a West German trial in a West German court–a trial for offenses under West German law allegedly committed in West Germany against a West German citizen." <u>Id.</u> at 1217-18.  The cases, as previously briefed, are legion.

Here, the specific relief the Individual Plaintiffs are seeking on all of their claims unavoidably requires an examination of whether China was justified or not when it enforced its own laws in China.  The Act of State Doctrine forbids such an examination.  As such, all of the claims asserted by the Individual Plaintiffs must perish.

**C.     The Claims Asserted On Behalf Of The Individual Plaintiffs Must Be Dismissed For Failure To State A Claim**

**1.     The Amended Complaint Does Not State a Claim for False Imprisonment**

As is true of all their claims pursuant to the Act of State Doctrine, the fatal flaw in the Individual Plaintiffs' false imprisonment claim is that, in order for a jury to find their losses from confinement "unjustified," it would necessarily have to find that the Chinese authorities were not justified in acting as they did to enforce China's laws.[2]

Separately, even if the Doctrine were not so directly applicable as it is here, as the Court noted at the July 8, 2016 hearing, the false imprisonment claim as against HPFS is far too attenuated to survive as a matter of law.  The Amended Complaint unabashedly and repeatedly alleges that the Chinese authorities acted solely on the basis of representations by non-party H3C.  <u>See</u>, <u>e.g.</u>, Amended Complaint ¶ 3 ("In December 2012, however, **H3C caused** Plaintiff's offices to be raided by the local police, the Equipment seized, and ICT's local sales associates Plaintiffs Jade Cheng, Jason Yuyi and Cathy Yu ('Individual Plaintiffs') detained and later

---

[2] In Massachusetts, the tort of false imprisonment consists of the "(1) intentional and (2) *unjustified* (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement."  <u>Noel v. Town of Plymouth</u>, 895 F. Supp. 346, 354 (D. Mass. 1995) (emphasis added).

arrested based on H3C's allegations that Plaintiff ICT and Individual Plaintiffs were engaged in marketing counterfeit H3C equipment."); ¶ 42 ("**Based solely on H3C's representations**, Individual Plaintiffs were detained on December 9-10, 2012, and later arrested; ICT offices were raided and the remaining unsold part of the Equipment was seized.") (emphasis added). Nowhere is it alleged that HPFS had any involvement whatsoever with the Chinese authorities leading up to the confinement of the Individual Plaintiffs.

The Restatement of Torts states that "One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." See Restatement (Second of Torts) § 45A.   There is no suggestion or allegation that HPFS "instigated" the arrest.  H3C did.  "Participation" requires a showing that the defendant "aided and abetted" the alleged illegal arrest.  See id. at cmt. E ("Participation. One who takes part in a false imprisonment, by aiding another to make it, becomes liable as if he had acted by himself."). The Amended Complaint contains no allegation that HPFS aided or abetted H3C in instigating the arrest of the Individual Plaintiffs by the Chinese authorities.

Instead, the Amended Complaint goes to great lengths to allege certain events occurring *after* the Individual Plaintiffs were detained, imputing that conduct, in part, to HPFS.  Those allegations are irrelevant from a false imprisonment perspective.   By that stage, the imprisonment was a *fait accompli*.  As explained by the United States Supreme Court, a false imprisonment claim concerns itself solely with the defendant's behavior leading up to and causing the confinement, not afterwards:

> Reflective of the fact that false imprisonment consists of detention without legal process, **a false imprisonment ends once the victim becomes held pursuant to such process**—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal

process. "If there is a false arrest claim, damages for that claim cover the time of
detention up until issuance of process or arraignment, but not more. From that
point on, any damages recoverable must be based on a malicious prosecution
claim and on the wrongful use of judicial process rather than detention itself."

Wallace v. Kato, 549 U.S. 384, 388–89 (2007) (internal citations omitted) (emphasis added).[3]

Because the Amended Complaint clearly alleges that the Individual Plaintiffs were
detained pursuant to Chinese law (see, e.g., Amended Complaint ¶¶ 40-43), their false
imprisonment claim should be dismissed.  Plaintiffs are not alleging that they were detained in
the absence of legal process -- such as when a suspected shoplifter is detained by security guards
in a mall storeroom awaiting the arrival of the police.  Instead, Plaintiffs detail the steps taken
and illustrate that every aspect of their arrest and detention was effectuated pursuant to process.
See, e.g., Amended Complaint ¶¶ 40-41 (H3C filed a police report with the Chinese authorities
about the plaintiffs' conduct, requesting that they be punished and criminally prosecuted); ¶ 42
(based solely on H3C's report, the Individual Plaintiffs were detained by the Chinese authorities
and arrested); ¶ 43 (shortly after the arrest and detainment of the Individual Plaintiffs, ICT
learned that a criminal trial was to take place); ¶¶ 48-53 (correspondence with the Chinese
authorities in a bid to secure the Individual Plaintiffs' release); ¶ 63 (the Individual Plaintiffs are
released on bail).  *In fact, Plaintiffs go so far as to state that they do not contest the propriety of
their arrest.*  See, e.g., id. at ¶ 128 ("Individual Plaintiffs are entitled to damages from
Defendants regardless of the propriety, validity or legality of the Chinese authorities' actions,
which Plaintiffs do not question.").

Thus, the arrest and detention of the Individual Plaintiffs present a classic example of
"the commencement of a criminal case by the institution of legal process," explained by the First

---

[3] See also Harrington v. City of Nashua, 610 F.3d 24, 29 (1st Cir. 2010) ("It is the latter tort [malicious prosecution],
not the tort of false imprisonment, that 'remedies detention accompanied, not by absence of legal process, but by
wrongful institution of legal process.'  In other words, the commencement of a criminal case by the institution of
legal process marks the dividing line between claims of false imprisonment and claims of malicious prosecution,
making those species of claims legally separate and distinct.") (internal citations omitted).

Circuit in <u>Harrington</u> to be on the malicious prosecution side of the "dividing line" between claims for false imprisonment and malicious prosecution.   <u>Harrington v. City of Nashua</u>, 610 F.3d at 29.   As the First Circuit noted, false imprisonment and malicious prosecution are "legally separate and distinct."   <u>Id.</u>   Because there is no suggestion that the Individual Plaintiffs ever were detained in the absence of legal process, and because HPFS had no part in their arrest and detention in the first place, their false imprisonment claim cannot survive as against this defendant.

### 2.      The Individual Plaintiffs' Fraudulent And Negligent Misrepresentation Claims Should Be Dismissed

Even though they were not listed as claimants in the fraudulent[4] and negligent misrepresentation[5] claims in the original Complaint, with a nifty sleight of hand, the Amended Complaint slips the Individual Plaintiffs in as parties to Counts I and II.   What the revised pleading fails to do, however, is set forth the predicate facts to meet the elements of these causes of action.   Specifically, nowhere in the body of the Amended Complaint do the Individual Plaintiffs allege that they heard, relied on, or were justified in relying on any representations made by HPFS.   Indeed, the concept of reliance by the Individual Plaintiffs is entirely absent

---

[4] To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" <u>Eureka Broadband Corp. v. Wentworth Leasing Corp.</u>, 400 F.3d 62, 68 (1st Cir. 2005) (citation omitted).

[5] Under Massachusetts law, a claim of negligent misrepresentation requires allegations that the defendant: "(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information."   <u>Braunstein v. McCabe</u>, 571 F.3d 108, 126 (1st Cir. 2009) (citation and internal quotations omitted). Additionally, "[j]ustifiable reliance is integral to a claim for negligent misrepresentation," <u>Marram</u>, 442 Mass. at 59, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim that survives a motion to dismiss. <u>Iqbal</u>, 556 U.S. at 678.

from the eleven pages and thirty-three paragraphs of the Amended Complaint devoted to their Dickensian plight.  Only when it comes to the incantation of the elements of the cause of action for Counts I and II does the concept of reliance by the Individual Plaintiffs conveniently appear.  As such, the Amended Complaint's references to reliance throw into high relief the Supreme Court's admonitions in <u>Iqbal</u> and <u>Twombly</u>.

Pursuant to <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), for a complaint to survive a motion to dismiss, a plaintiff's obligation to provide the "'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> at 555 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).  "As the Court held in <u>Twombly</u>, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation, or more than a sheer possibility that a defendant has acted unlawfully."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal citations omitted).  It is insufficient for a complaint to merely contain "naked assertion[s]" devoid of "further factual enhancement."  <u>Id.</u>

Here, Plaintiffs do not provide **any** "factual enhancement" for their naked assertion that "Plaintiffs were entitled to rely and did in fact rely on those representations to their severe detriment," insofar as that bare allegation purports to include the Individual Plaintiffs.  Amended Complaint ¶ 76.  Nowhere in the factual statement of the Amended Complaint do the Individual Plaintiffs allege they relied upon HPFS representations, a core element of their fraud claim (Count I) and of the negligent misrepresentation claim (Count II).  In fact, the Amended Complaint does not even allege that the Individual Plaintiffs ever heard or saw the representations, let alone relied upon them to their detriment.

<div align="center">10</div>

Self-servingly and conveniently, the Individual Plaintiffs were able to conjure up reliance at the last minute as need for the elements the fraud causes of action.  For example, in Count I, they simply switched the wording of the opening line of paragraph 40 of the original Complaint from *"In reliance on those representations, **ICT proceeded** to remarket the Equipment ..."* to *"In reliance on Defendants' representations, **Plaintiffs proceeded** to use their best efforts to remarket the Equipment ..."* Compare Complaint ¶ 40 with Amended Complaint ¶ 82 (emphasis added) (see also ¶ 76).  Not one factual predicate exists anywhere to justify this bald assertion.  Exactly the type of conclusory statement the Iqbal Court deplores.  But even less effort was taken to include the Individual Plaintiffs in the negligent misrepresentation claim: the words "***was entitled to rely***" merely had to become "***were entitled to rely***" and the deed was done.  Compare Complaint ¶ 48 with Amended Complaint ¶ 93.  Or the deed might have been done if they had claimed anywhere in the Amended Complaint (let alone in Count II itself) that they *actually* relied on the representations as opposed to simply alleging that they were "*entitled*" to do so.  The entitlement to rely matters in a negligent misrepresentation case only if the plaintiff did, in fact, rely.

Based on their failure to plead reliance, a necessary element of the causes of action asserted, the Individual Plaintiffs' Counts I and II should be dismissed.

### 3.    The Amended Complaint Lacks Sufficient Specificity

Fraud-based claims must comply with Rule 9(b) of the Federal Rules of Civil Procedure, requiring "the circumstances constituting fraud or mistake [to] be stated with particularity." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004). In the First Circuit, pleading fraud with particularity requires the plaintiff to "specify the time, place, and content of the alleged false or fraudulent representations." Id.  In other words, Rule

11

9(b) requires "the who, what, when, where, and how" to be laid out.  United States ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 123 (1st Cir. 2013).

Claims that "sound" in fraud are also subject to Rule 9(b)'s heightened pleading requirements.  Thus, Chapter 93A[6] claims that "sound in fraud" trigger the requirements of Rule 9(b) when fraud lies at the "core of the action."  Bezdek v. Vibram USA Inc., No. CIV.A. 12-10513-DPW, 2013 WL 639145, at *3 n.3 (D. Mass. Feb. 20, 2013) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1223 (1st Cir.1996)).  Similarly, "[t]o set forth a civil conspiracy theory[7] of liability, the Plaintiffs must present sufficient facts such that 'the circumstances of fraud or mistake shall be stated with particularity.'"  Heinrich ex rel. Heinrich v. Sweet, 49 F. Supp. 2d 27, 44 (D. Mass. 1999) (citing Fed. R. Civ. P. 9(b)).  Moreover, negligent misrepresentation claims "where the core allegations effectively charge fraud" (as is the case here), are also subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (citing Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985)).

Here, despite adding allegations about the negotiations that led to the signing of the relevant contracts in this case, the new allegations make no attempt to plead with any specificity

---

[6] Chapter 93A states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2(a). "The statute does not specifically define unfair or deceptive, but Massachusetts courts have recognized that [a] practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 234 (1st Cir. 2003) (citing Linkage Corp. v. Trustees of Boston Univ., 679 N.E.2d 191, 209 (Mass. 1997) (internal quotations omitted)).

[7] Civil conspiracy is "invoked [under Massachusetts law] to support liability of one person for a tort committed by another." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994).  "For liability to attach on this basis, there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement. Where two or more persons act in concert, each will be jointly and severally liable for the tort." Id.; see also New England Foundation Co. v. Reed, 209 Mass. 556, 560 (1911) ("The gist of a civil action of this sort is not the conspiracy, but the deceit or fraud causing damage to the plaintiff, the combination being charged merely for the purpose of fixing joint liability on the defendants.").

2489263.5   108164-84842

reasonable reliance on the part of the Individual Plaintiffs. Nowhere is it stated that any alleged fraudulent representations (whether made in documents or oral negotiations) were ever communicated to the Individual Plaintiffs. And nowhere in the revised pleading does it say that these plaintiffs were privy to oral negotiations, viewed any documents, or that they otherwise even heard of the alleged representations. Far from containing the specificity required by Rule 9(b), as shown above, the Amended Complaint fails to allege that any of the Individual Plaintiffs ever knew or heard of the representations; so how could they have relied on them to their detriment?

Thus, the Individual Plaintiffs have not met Rule 9(b)'s heightened pleading standard, and have failed to properly allege the elements of claims which sound in fraud as against HPFS. Consequently, the Individual Plaintiffs' Counts I,[8] II,[9] the second Count V,[10] and VIII[11] should be dismissed for failure to state a claim.

### 4. Plaintiffs Identify No Legal Duty HPFS Owed Them

Negligence is the failure to exercise the degree of care which a reasonable person would exercise in the circumstances. "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Cracchiolo v. Eastern Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014) (internal quotation and citation omitted). Thus, a claim for negligence may not be sustained without a showing that the defendant owed a legal duty to the plaintiff. Gorfinkle v. U.S. Airways, Inc.,

---

[8] Fraudulent misrepresentation.

[9] Negligent misrepresentation.

[10] Breach of M.G.L. 93A.

[11] Civil conspiracy.

2489263.5   108164-84842

431 F.3d 19, 23 (1st Cir. 2005).  Whether or not a duty of care existed is a question of law for the court.  O'Sullivan v. Shaw, 726 N.E.2d 951, 954 (Mass. 2000).

The Amended Complaint fails to state a plausible negligence claim against HPFS, falling short of the pleading standards set in Iqbal and Twombly.  Iqbal, 556 U.S. 662; Twombly, 550 U.S. 544.  It offers absolutely no allegations to support the conclusory assertion that HPFS was under a legal duty "to make a prompt and complete disclosure of true facts to the police to secure [the Individual Plaintiffs'] release."  Amended Complaint ¶¶ 132, 136.  Indeed, HPFS was not under any legal obligation or duty to intervene or interfere with the Chinese authorities' enforcement of China's laws in China, and plaintiffs can cite to no legal, contractual, or other basis for such a duty.  As a general matter, "[u]nder common law, inaction rarely gives rise to liability unless some special duty of care exists."  Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir. 1999) (citing Restatement (Second) of Torts § 314 & cmt. a (1965)).  "A passerby seeing a man drown in a pond may have a moral obligation to extend a helping hand, but he does not necessarily have a legal obligation to do so."  McGonagle v. United States, No. 15-12003-FDS, 2016 WL 54187 at *3 (D. Mass. 2016) (citing Carrier v. Riddell, Inc., 721 F.2d 867, 869 (1st Cir.1983) (applying Massachusetts law)).

Here, HPFS did not instigate, aid, abet, or otherwise cause the Chinese authorities to take criminal action against the Individual Plaintiffs.  Any after-the-fact assistance provided to them in furtherance of their release was simply gratuitous.  Nonetheless, any such assistance referenced in the Amended Complaint was indisputably rendered by and on behalf of co-defendant HPFS (India), not this defendant.  Similarly, HPFS owed no duty or obligation -- contractual or otherwise -- to ICT.

Consequently, Count VIII of the Amended Complaint should be dismissed for failure to state a claim.

> 5.     **The Individual Plaintiffs Can Only Recover Damages For Their Confinement Through A Claim For Malicious Prosecution**

All of the losses itemized by the Individual Plaintiffs in each of their claims arise out of their "unjustified" arrest and imprisonment.  Each of their counts in the Amended Complaint contains the same itemized list of damages (or a variation thereof): "loss of freedom, physical pain and sickness, mental suffering, loss of consortium, loss of earnings and employment, and the stigma of a criminal prosecution."  <u>See</u> Amended Complaint ¶¶ 87, 94, 113, 122, 129, 135, 145.  As shown, relief for such damages is precluded by application of the Act of State Doctrine.  Even if the Doctrine did not bar their claims, however, the only cause of action available to these plaintiffs would be an action for malicious prosecution, which they have not brought here.

Because all of the Individual Plaintiffs' damage claims are inexorably linked to their confinement pursuant to legal process (<u>see</u> discussion of false imprisonment, <u>supra</u> at Section B(1)), the only way those damages would be recoverable is through a malicious prosecution claim, a cause of action not pled of the Amended Complaint.  The Restatement instructs:

> At common law, the appropriate form of action for imposing a confinement was trespass for false imprisonment except where the confinement was by arrest under a valid process issued by a court having jurisdiction, **in which case the damages for the confinement were recoverable, <u>if at all</u>, as part of the damages in an action of trespass on the case for malicious prosecution or abuse of process**.

Restatement (Second) of Torts § 35, cmt. subsection 1 (1965) (emphasis added).

The same restriction has been noted by the United States Supreme Court.  In <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994), a case involving a claim for damages under 42 U.S.C. § 1983, the Court noted that "[t]he common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of

<div align="center">15</div>

action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Id. at 484.

Plaintiffs' failure to plead malicious prosecution as against HPFS here was no oversight. Such a claim would simply not be tenable. "The elements of a common law malicious prosecution claim vary slightly from state to state, but in general they are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 99 n.8 (1st Cir. 2013) (internal quotations and citations omitted). Here, the Individual Plaintiffs cannot allege that HPFS commenced or continued the criminal proceeding against them. Aside from the Chinese authorities, the only entity allegedly involved in the commencement of the criminal proceeding was H3C, not HPFS.

In sum, all the damages the Individual Plaintiffs seek stem exclusively from their confinement pursuant to Chinese legal process. Such damages are only recoverable in a malicious prosecution action. No such cause of action has been asserted, nor can one be, as against HPFS. Consequently, the Individual Plaintiffs' claims should be dismissed in their entirety.

**6.     Consequential Damages Cannot be Awarded on Plaintiffs' Breach of Warranty Claim**

Like the other claims in the Amended Complaint, the bulk of Plaintiffs' claimed losses from Defendants' alleged breach of warranty qualify as consequential damages as opposed to actual damages. See Complaint, Count V and ¶ 113. For instance, the entirety of the Individual Plaintiffs' claimed damages stem from their alleged unjustified confinement (see supra, Section B(5)) and, apart from its out of pocket losses, all of the damages claimed by ICT are

16

consequential.  Id. at ¶ 113 ("Plaintiff ICT was damaged and suffered out of pocket losses, loss of profits, loss of its Chinese business, and a serious injury to its business and reputation."). These damages are not recoverable in light of the contractual provisions expressly excluding such damages.

The RRSA provides: "In no event will HPFS be liable to ICT for incidental, indirect, exemplary or consequential damages or for any loss of profits, revenue, interest or goodwill arising in connection with this Agreement."  See Callaghan Declar., Ex. B (ECF Doc. No. 21-1), at Section 10.3.  Similarly, the WSA states: "In no event shall Seller be responsible to Buyer for incidental, indirect, exemplary or consequential damages or for any loss of profits, revenue, interest, goodwill, loss or corruption of data or for any loss of or interruption to Buyer's business, arising under or in any way connected with this Agreement." See id., Ex. A, at Section 6.

M.G.L. ch. 106, § 2-719(3) permits contracting parties to limit or exclude consequential damages.  It provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."  Id.; see also Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F. Supp. 363, 377 (D. Mass. 1991) ("Section 2–719(3) permits parties to limit or exclude consequential damages unless the limitation or exclusion is unconscionable.").  This is well-settled law in Massachusetts.[12]

---

[12]  See, e.g., Deerskin Trading Post, Inc. v. Spencer Press, Inc., 495 N.E.2d 303 (Mass. 1986) (damages for negligence excluded); Trans–Spec Truck Serv. Inc. v. Caterpillar Inc., 524 F.3d 315 (1st Cir. 2008) (same); Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F.Supp. 363 (D.Mass.1991) (consequential damages based on breach of contract, negligence and breach of warranty barred by contract exclusion on consequential damages); Agri–Mark, Inc. v. Niro, 233 F.Supp. 200, 209 (D.Mass.2002) (damage limitation clause excluding contract, tort and negligence claims barred plaintiffs' claims for negligence, breach of contract and breach of warranty claims); Logan Equip. Corp. v. Simon Aerials, Inc., 736 F.Supp. 1188 (D.Mass.1990) (limitation of liability provision barred consequential damages and breach of warranty claim).

The same is true when the breach of warranty claims sound in tort.  In <u>Agri-Mark</u>, the court explained that "Massachusetts law recognizes two different breach of warranty theories—one that derives from contract law, the other from strict liability in tort."  <u>Agri–Mark, Inc.</u>, 233 F.Supp. 200, 209 (citing <u>W.R. Constr. & Consulting, Inc. v. Jeld–Wen, Inc.</u>, 2002 WL 31194870, at *6 (D. Mass. Sep. 20, 2002)).  The <u>Agri-Mark</u> court concluded that, "either way," the breach of warranty count was governed by a clause in the parties' contract which barred consequential damages.  <u>See Agri-Mark, Inc.</u>, 233 F. Supp. 2d at 210.

Similarly, here, the limitation of liability provisions contained in the RRSA and WSA operate to bar all consequential damages arising out of Defendants' alleged breach of warranty. As such, the prayer for damages in Plaintiffs' breach of warranty count (the first Count V) should be stricken to the extent it seeks consequential damages.

## CONCLUSION

Based on the foregoing, HPFS respectfully requests that this Court dismiss plaintiffs' Amended Complaint in its entirety as against HPFS, along with such other and further relief as this Court deems just and proper.

<div align="right">

Respectfully submitted,

</div>

Dated: August 18, 2016

By: */s/ Stuart M. Glass*
Stuart M. Glass (BBO # 641466)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 502-4077

2489263.5   108164-84842

Anthony P. Callaghan (admitted *pro hac vice*)
GIBBONS P.C
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Telephone:  (212) 613-2000
Facsimile:  (212) 290-2018

*Attorneys for Defendant Hewlett-Packard Financial Services Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated:  August 18, 2016                    _/s/ Stuart M. Glass_____

Stuart M. Glass (BBO # 641466)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 502-4077

2489263.5   108164-84842