UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU<br><br>       Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED,<br><br>       Defendants. | Civil Action No. 1:16-CV-10386 LTS |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT HPFS' MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of Authorities..................................................................................................ii

Introduction...............................................................................................................1

A. The Individual Plaintiffs' false imprisonment claim is properly alleged........................2

    1. The Act of State doctrine is inapplicable under *W.S.Kirkpatrick*............................3

    2. The Amended Complaint states all the elements of the
false imprisonment claim under Massachusetts law...............................................5

    3. Malicious prosecution claim is not a proper alternative to the
false imprisonment claim on the facts alleged in the Amended Complaint..................8

B. The Amended Complaint properly alleges misrepresentation
claims on behalf of the Individual Plaintiffs...........................................................10

C. The Amended Complaint properly alleges a cognizable
negligence claim against HPFS.............................................................................12

D. Arguments based on the contractual indemnity
and damages limitation clauses are irrelevant and invalid........................................13

# TABLE OF AUTHORITIES

**Cases**

Adickes v. Kress & Co., 398 U.S. 144 (1970)……………………………………………..4

Agri-Mark, Inc. v. Niro, 233 F. Supp. 200 (D. Mass. 2002)……………………………...…14

Bates v. Southgate, 31 N.E.2d 551 (1941)……………………………………………….14

Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F. Supp. 363 (D. Mass. 1991)…14

Crown v. Kobrick Offshore Fund, Ltd., 8 N.E.3d 281 (Mass. App. Ct. 2014)………………….15

Holmes v. Laird, 459 F.2d 1211 (D.C. Cir. 1972)………………………………………….5

Sarvis v. Boston Safe Deposit & Trust, 711 N.E.2d 911 (Mass. App. Ct. 1999)…………….1,3,6

United States v. Sisal Sales Corp., 274 U.S. 268 (1927)……………………………………4

W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., 492 U.S. 400 (1990)…………..3,4,5

Wallace v. Kato, 549 U.S. 384 (2007)…………………………………………………...10

Weisman v. Le Landis, 532 F.2d 308 (2d Cir. 1976)………………………………………4

**Other authorities**

Restatement (Second) or Torts, § 35……………………………………………………..7

Restatement (Second) or Torts, § 37……………………………………………………..7

Restatement (Second) or Torts, § 45……………………………………………………..8

Restatement (Second) or Torts, § 45A…………………………………………………...6

Restatement (Second) or Torts, § 314…………………………………………………...12

## Introduction

Plaintiffs respectfully submit this memorandum of law in opposition to Defendant Hewlett-Packard Financial Services Company's ("HPFS") motion to dismiss their Amended Complaint ("Am. Complt."). Pursuant to the instructions issued by this Court at the July 8th, 2016 hearing of HPFS' motion to dismiss the original complaint in this Action (the "Hearing"), Plaintiffs incorporate and repeat their arguments and authorities set out in their papers submitted in opposition to HPFS' original motion, and further state as follows.

At the Hearing, the Court rejected HPFS' general Act of State argument while reserving the question of its potential application to the Individual Plaintiffs' false imprisonment claim only. The Court also reserved the question of whether the false imprisonment claim as pleaded in the original complaint was too attenuated to fall within the Massachusetts rule that "a person may be liable for false imprisonment not only when the person's own acts directly impose a restrain upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed." Sarvis v. Boston Safe Deposit & Trust, 711 N.E.2d 911, 921 (Mass. App. Ct. 1999).

Furthermore, the Court has determined that Plaintiffs' original complaint sufficiently alleged "*a fraudulent statement*" whereby the counterfeit Equipment was misrepresented as genuine in the contracts themselves -- stating that "I don't think there is any doubt about that" and "it's not really any question as to whether it is sufficiently alleged in the Complaint" (Tr. 56/5-13) – and granted Plaintiffs' oral motion to augment their complaint by alleging the same fraudulent statements made by HPFS during the contract negotiations. The Court also instructed the Plaintiffs to address the potential Act of State and attenuation issues raised by the false imprisonment claim.

On July 18, 2016, Plaintiffs filed their Amended Complaint, which added new paragraphs (19 through 27) alleging the particulars of the fraudulent statements made by Defendant HPFS during contract negotiations; expanded the original 17-page complaint to 42 pages with additional factual allegations and new causes of action; and re-pled the Individual Plaintiffs' false imprisonment claim to address the Court's reservations.

Defendant HPFS now moves to dismiss the Amended Complaint while ignoring all these amendments, and its present motion should be dismissed *a fortiori* for the same reasons that their prior motion to dismiss the much less developed original complaint was.

### A. The Individual Plaintiffs' false imprisonment claim is properly alleged.

The false imprisonment count of the Amended Complaint alleges that HPFS' affiliate in China, H3C, made a false report to the Chinese police requesting criminal prosecution of the Plaintiffs because, while revealing the counterfeit nature of the Equipment, H3C did not disclose that the Equipment was sold to the Plaintiffs by the Defendants as genuine H3C equipment for remarketing purposes, and was remarketed by the Plaintiffs as such without any knowledge of its counterfeit nature. Am. Compl. ¶ 126. The Amended Complaint further alleges that Defendants' own submission to the Chinese police was also *false and misleading* as Defendants deliberately mischaracterized and omitted their own findings and conclusions which, if disclosed, would have led to the release of the Individual Plaintiffs. Id. ¶ 127. The claim further alleges that the imprisonment of the Individual Plaintiffs was "unjustified" due to Defendants' own actions and omissions, regardless of the propriety, validity or legality of the Chinese authorities' actions, which the Plaintiffs do not question. Id. ¶ 128.

Accordingly, the false imprisonment count as pleaded in the Amended Complaint is not barred by the Act of State doctrine, and properly states a cognizable claim for relief under Massachusetts law.

### 1. The Act of State doctrine is inapplicable under *W.S. Kirkpatrick*.

The Individual Plaintiffs seek to hold Defendants responsible for Plaintiffs' harrowing imprisonment – their "Dickensian plight," in Defendants' own words (Moving. Br. at p. 10), and of Defendants' own making -- because (a) Defendants fraudulently misrepresented the Equipment as genuine and thereby exposed the Individual Plaintiffs to a substantial certain risk of imprisonment (Am. Complt. ¶ 86), and (b) when that risk materialized and the Individual Plaintiffs were imprisoned, instead of revealing the truth to the Chinese police that would have led to the release of the Individual Plaintiffs, Defendants made a belated, false and misleading submission to the Chinese police that instead prolonged the Plaintiffs' suffering in jail. The Individual Plaintiffs here, like in W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., 492 U.S. 400, 407 (1990), are "***not trying to undo or disregard the government action, but only to obtain damages from private parties who had procured it***." (emphasis added throughout unless indicated otherwise). Indeed, the Amended Complaint expressly alleges that the Plaintiffs do not question "the propriety, validity or legality of the Chinese authorities' actions."

HPFS nevertheless argues that the Act of State bars the false imprisonment claim because "in order for the jury to find [Plaintiffs'] losses from confinement 'injustified,' ***it would necessarily have to find*** that the Chinese authorities were not justified in acting as they did to enforce China's laws." Moving Br. at p. 6.

This premise is false, however, because under Massachusetts law, a person may be liable to another for false imprisonment regardless of the lawfulness of the police conduct. See Sarvis

3

v. Boston Safe Deposit & Trust Co., 711 N.E.2d 911, 921 (Mass. App. Ct. 1999) ("A person may be liable for false imprisonment . . . when that person, by providing false information, causes such restraint to be imposed."); see also Adickes v. Kress & Co., 398 U.S. 144, 152 (1970) (holding in a §1983 action that private parties responsible for false arrest may be subject to tort liability whether or not the police conduct was lawful or authorized); Weisman v. Le Landis, 532 F.2d 308, 311 (2d Cir. 1976) (same).

As the Supreme Court unanimously held in W.S. Kirkpatrick, 492 U.S. at 406, the "act of state issues only arise when a court *must decide* – that is, when the outcome of the case turns upon – the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine" (emphasis original). Here, the Court's (or jury's) finding that Defendants are liable for the Individual Plaintiffs' "unjustified" false arrest would not, whether as a matter of law or logic, impugn or undermine any Chinese government's action.

Indeed, as HPFS itself conceded in its original motion to dismiss (which it incorporates in its current motion), "the false imprisonment claim . . . considers ***the defendant's behavior*** leading up to and causing the alleged false imprisonment." (Original Moving Br. at 19). It is the Defendants' own wrongful actions – first in exposing the Individual Plaintiffs to the substantially certain risk of imprisonment by selling them the counterfeit Equipment for resale purposes, and then in making false submission to the Chinese authorities that prolonged their imprisonment – that supplies the necessary "unjustified" element of the Individual Plaintiffs' false imprisonment claim, not any action by the Chinese authorities themselves. See, e.g., United States v. Sisal Sales Corp., 274 U.S. 268 (1927) (holding that defendant's conduct in procuring foreign

sovereign's action could properly form the basis of plaintiff's claim without implicating the Act of State doctrine) (cited with approval in W.S. Kirkpatrick).[1]

The only new authority cited by HPFS on this issue – Holmes v. Laird, 459 F.2d 1211 (D.C. Cir. 1972) – is inapposite as it falls squarely within the type of cases that the Supreme Court itself distinguished in its W.S. Kirkpatrick opinion: "In every case in which we have held the act of state doctrine applicable, the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." 493 U.S. at 405. In Holmes too, plaintiffs – U.S. soldiers stationed in Germany under the NATO Status of Forces Agreement – where criminally convicted in the German court for an attempted rape and brought the action in the U.S. challenging the fairness of the German trial and asking an American court "to review the proceedings at a foreign trial for the purpose of ascertaining whether it has discharged its responsibilities." Here, by contrast, the Individual Plaintiffs are asking the Court to review Defendants' own actions causing and prolonging their imprisonment, not those of the foreign state, making the Act of State doctrine just as inapplicable to their false imprisonment claim as it was found by this Court to be inapplicable to all the other causes of actions alleged by the Plaintiffs.

### 2. The Amended Complaint states all the elements of the false imprisonment claim under Massachusetts law.

Aside from their Act of State argument, HPFS refers to the Court's concern expressed at the Hearing that the false imprisonment claim as pled in the original complaint might have been too attenuated under Massachusetts law. Moving Br. at 6. This attenuation concern has arisen from the fact that, while under Massachusetts law the person who procures another's arrest by

---

[1] Indeed, even if – hypothetically and contrary to the Amended Complaint's allegations -- the facts necessary to establish the Individual Plaintiffs' false imprisonment claim will somehow also establish that the Chinese police's own actions were unjustified, "it still does not suffice" as a predicate for the application of the Act of State doctrine under W.S. Kirkpatrick, 493 U.S. at 406.

5

making false statement to the police could be liable for false imprisonment, see Sarvis, 711 N.E.2d at 921, the original complaint was predicated on HPFS' false statements made to the Plaintiffs regarding the genuine nature of the Equipment, which false statements exposed the Plaintiffs to a substantially certain risk of imprisonment and eventually caused it.

The Amended Complaint, however, alleges that in addition to making the false statement to the Plaintiffs, Defendants and their Chinese affiliate H3C made false statements to the police as well, which false statements caused Plaintiffs' prolonged imprisonment. See Am. Complt. ¶¶ 124-28. As such, the claim here is analogous to that in Sarvis and is even less attenuated than in that case, where – unlike here – plaintiffs only allege defendants' false statements to the police causing their arrest, and did not allege any underlying fraud by defendants placing plaintiffs in a situation substantially certain to result in imprisonment.

Defendant's reliance on the Restatement (Second) of Torts is likewise misplaced. Massachusetts courts do follow the Restatement in false imprisonment cases, see, e.g., Sarvis, 711 N.E.2d at 921 (citing Restatement (Second) of Torts § 37); however, nothing in the Restatement provisions relied upon and cited by HPFS (Moving Br. at 7) supports its attenuation argument. To the contrary, these and other Restatement provisions squarely support the Plaintiffs' false imprisonment claim here:

- Restatement § 45A states that "one who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment"; Comment (e) in turn provides: "Participation. One who takes part in a false imprisonment, by aiding another to make it, becomes liable as if he had acted by himself." Here, HPFS without doubt "participated" in false imprisonment, first in creating a substantially certain risk of imprisonment by selling counterfeit Equipment

to the Plaintiffs for resale purposes and contractually obligating them to use their best efforts to resell it, and then by making a false submission to the Chinese police that kept the Individual Plaintiffs imprisoned.

- Restatement § 35, comment (d) states: "The actor is liable [for false imprisonment] if his act was done for the purpose of imposing confinement upon the other or *with knowledge that such confinement would, to a substantial certainty, result from it*." As the Amended Complaint alleges, HPFS fraudulently misrepresented the Equipment as genuine with knowledge "that reselling counterfeit equipment would expose the persons reselling it – Plaintiff ICT and its sales force, Individual Plaintiffs -- to a substantially certain risk of imprisonment." Am. Complt. ¶ 86; see also id. at ¶ 112 ("Defendants should have reasonably expected the Individual Plaintiffs to be exposed to an unreasonable and substantially certain risk of imprisonment for reselling the Equipment that was counterfeit and not genuine as warranted.").

- HPFS also knew that its submission to the Chinese police "needs to be as clear as possible to be effective" in securing the release of the Individual Plaintiffs -- but deliberately omitted and mischaracterized its own key findings, making the submission anything but clear or effective and thereby prolonging the Individual Plaintiffs' confinement and suffering. Am. Complt. ¶ 55.

- Restatement § 37 states: "If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement." Comment (a) in turn explains that "the directness or indirectness of the causal sequence has lost its importance with the disappearance of the old forms of action for trespass and case."

- Restatement § 45 states: "If the actor is under a duty to release the other from confinement, or to aid in such release by providing a means of escape, his refusal to do so with the intention of confining the other is a sufficient act of confinement to make him subject to liability." Comment (b) states that "it is not within the scope of this Restatement to state when the duty to aid another in release from confinement may arise. Factors to be taken into account are the degree of inconvenience, effort, and expense necessary to make such aid effective . . . ." Here, the Defendants were clearly under a legally cognizable duty to aid the Individual Plaintiffs' release (see Point C below). Moreover, all the Defendants had to do to carry out that duty was merely to tell the truth (as stated in their March Letter) -- but they have deliberately obfuscated and omitted that truth from their eventual submission to the Chinese police and have thus knowingly failed to aid in the release of the Individual Plaintiffs, which in itself constitutes "a sufficient act of confinement to make [Defendants] subject to liability."

### 3. Malicious prosecution claim is not a proper alternative to the false imprisonment claim on the facts alleged in the Amended Complaint.

Finally, HPFS gamely suggests that "the Individual Plaintiffs can only recover damages for their confinement through a claim for malicious prosecution" -- while also arguing that "such a claim would simply not be tenable." Moving Br. at 15-16. Both parts of this argument are without any merit.

*First*, HPFS presumes that "all of the Individual Plaintiffs' damages claims are inexorably linked to their confinement *pursuant to legal process*" and rests the first part of its argument solely on that presumption. However, there is nothing in the Amended Complaint that even remotely supports it: the Amended Complaint alleges only that (i) the Individual Plaintiffs

8

were arrested and detained by the Chinese police on December 9, 2012 based solely upon H3C's same-day report of counterfeiting activities to the police (Am. Complt. ¶¶ 40-42); (ii) after a lengthy police investigation, in July 2013 the Chinese prosecutor returned the case to the police "for additional investigation" without bringing any charges (Am. Complt. ¶ 62); (iii) the prosecutor eventually did *not* bring any charges and in fact personally apologized to the Individual Plaintiffs (Am. Complt. ¶ 71); and (iv) the police, too, eventually issued letters to the Individual Plaintiffs stating that they had no criminal records while in China. Id.

Indeed, there are no allegations in the Amended Complaint that the Individual Plaintiffs were ever "bound over by a magistrate or arraigned on charges" (Moving Br. at 7) or arrested "under a valid process issued by a court having jurisdiction" (Moving Br. at 15) – the necessary predicates for the malicious prosecution claim. Indeed, there are no allegations of any court involvement in the Individual Plaintiffs' confinement whatsoever, and no allegations that the Chinese prosecutors ever issued any indictments or other charging documents in their case. Accordingly, HPFS' malicious prosecution theory is a pure speculation at this point, untethered to the factual allegations of the Amended Complaint.

*Second*, even if the argument were valid -- which it is not -- it does not dispose of the Individual Plaintiffs' false imprisonment claim but may merely move "the dividing line between claims for false imprisonment and malicious prosecution" (Moving Br. at 9), thereby cutting off the time period for which the Individual Plaintiffs could recover damages on the false imprisonment claim, the remaining damages period presumably falling under the malicious prosecution claim. As HPFS itself quotes in its brief, "[i]f there is a false arrest claim, damages for that claim cover the time period of detention up until issuance of process or arraignment, but no more. From that point on, any damages recoverable must be based on a malicious

9

prosecution claim and on the wrongful use of judicial process rather than detention itself." Moving Br. at 8 (quoting Wallace v. Kato, 549 U.S. 384, 388-89 (2007)). But any potential limitation on recoverable damages does not render the claim itself insufficient for purposes of this motion to dismiss.

*Finally*, if the discovery in this action produces evidence demonstrating the Individual Plaintiffs' arraignment or indictment at some point, and HPFS' actual malice, the Individual Plaintiffs fully reserve their right to amend the complaint to confirm to the evidence pursuant to Rule 15 of the Federal Rules of Civil Procedure. For purposes of this motion to dismiss, however, the factual allegations of the Amended Complaint should be accepted as true and all reasonable inferences therefrom drawn in favor of the Individual Plaintiffs, meaning that the Amended Complaint properly states all the *prima facia* elements of the pleaded false imprisonment claim, and HPFS' motion should be denied.

### B. The Amended Complaint properly alleges misrepresentation claims on behalf of the Individual Plaintiffs.

HPFS' principal objection to the Individual Plaintiffs' misrepresentation claims is that "nowhere in the factual allegations in the body of the Amended Complaint do the Individual Plaintiffs allege that they relied on any representation made by HPFS." Moving Br. at p.1; see also id. at p. 3 (same). HPFS goes as far as to assert that "the concept of reliance by the Individual Plaintiffs is *entirely absent* from the eleven pages and thirty-three paragraphs of the Amended Complaint devoted to their Dickensian plight." Moving Br. at 10. These assertions are simply false, and HPFS' artful self-imposed limitations to "the body of the Amended Complaint," "the eleven pages" and "thirty-three paragraphs" – whatever that means -- do not salvage HPFS' wholly meritless argument.

The Amended Complaint, read in its entirety and not dissected as HPFS would have it, in fact expressly alleges that: (a) as early as in the summer of 2011, ICT "forwarded the list [which was provided to ICT by HPFS and which falsely identified the Equipment as H3C-manufactured equipment] to its office in China to determine the Equipment's market value and liquidity there, because H3C was a China-based brand, and China presented the best resale market for the H3C Equipment" (¶ 20); (c) it was the Individual Plaintiffs who tested the Chinese market demand for that Equipment prior to resale: "in anticipation of reselling it, Plaintiffs used their sales offices in China to arrange prospective customers to purchase the first installment of the Equipment for the total of $1.5 million" (¶ 34); (d) "Defendants knew that Plaintiff ICT and its sales force, Individual Plaintiffs, would rely on those representations in their efforts to resell the Equipment, and *Plaintiffs were entitled to rely and did in fact rely on those representations to their severe detriment*" (¶ 76); (e) "Plaintiffs did not know and had no reasons to know that the sold Equipment was not genuine as represented by Defendants, and were entitled to rely and *did justifiably rely on Defendants' representations*" (¶ 77); (f) "*in reliance on Defendants' representations*, Plaintiffs proceeded to use their best efforts to remarket the Equipment as genuine" (¶ 82); (g) "Plaintiffs attempted to resell the first installment of the purchased Equipment, *which they believed to be genuine H3C equipment based on Defendants' express contractual representations*" (¶ 3); (h) "Defendants knew that Plaintiffs would rely on their representations regarding the genuine nature of the Equipment in their remarketing efforts" (¶ 86); (i) "had the Defendants told the truth . . . *the Individual Plaintiffs would not have attempted to resell the Equipment*" (¶ 33); (j) "Plaintiffs had no expertise or technical knowledge to determine whether the Equipment was counterfeit and were entitled to rely on Defendants' representations that the Equipment was genuine" (¶93); and (l) "Defendants failed to disclose to

11

Plaintiffs the fact that the Equipment was counterfeit, which disclosure would have caused Plaintiffs not to enter into the resale transaction and/or not to undertake any attempts to resell the Equipment" (¶ 120). And it goes without saying that the Individual Plaintiffs were reselling the Equipment as genuine in reliance on the very same "H3C" logos affixed to it, which HPFS later conceded were fake.

Furthermore, the only reasonable inference to be drawn from these factual allegations is that the Individual Plaintiffs indeed relied on HPFS' misrepresentations to their severe detriment.

In sum, the numerous allegations of the Individual Plaintiffs' justifiable reliance expressly made in the Amended Complaint, and the reasonable inferences drawn therefrom, put a lie to HPFS' bald assertion that "the concept of reliance by the Individual Defendants is entirely absent" from the Amended Complaint, and make its argument entirely frivolous.[2]

### C. The Amended Complaint properly alleges a cognizable negligence claim against HPFS.

HPFS claims that the Amended Complaint "offers absolutely no allegations to support the conclusory assertion that HPFS was under a legal duty 'to make a prompt and complete disclosure of true facts to the police to secure [the Individual Plaintiffs'] release'" and "[a]ny after-the-fact assistance provided to them in furtherance of their release was simply gratuitous." (Moving Br. at p. 14).

There are, however, important and well-known exceptions to the general "no duty to aid" rule, both of which squarely apply here: (1) when defendant creates the very peril that requires rescue, and (2) when defendant undertakes the rescue, even if gratuitously. See Restatement (Second) of Torts § 314, Comment (a) ("The actor's prior conduct, whether tortious or innocent,

---

[2] Equally frivolous is HPFS' argument that the Amended Complaint fell short of Rule 9(b) requirements. The Amended Complaint in fact alleges in paragraphs 19 through 27 the requisite particulars of the numerous false pre-contractual statements made orally and in writing by HPFS' own senior executives and managers Messrs. O'Grady, Gill, Silvestri and Harris (without any mention of India).

may have created a situation of peril to the other, as a result of which the actor is under a duty to act to prevent harm, as stated in §§ 321 and 322. The actor may have committed himself to the performance of an undertaking, gratuitously or under contract, and so may have assumed a duty of reasonable care for the protection of the other, or even of a third person, as stated in §§ 323, 324 and 324A.").

By selling the counterfeit Equipment to Plaintiffs for resale purposes, Defendants created the very peril – the Individual Plaintiffs' imprisonment – that imposed upon them a duty to aid in the Individual Plaintiffs' release. Moreover, it is undisputed that Defendants have undertaken to aid the Individual Plaintiffs – or at least pretended to do so – and were thus under a duty to act reasonably in carrying out that undertaking. In short, this is not a case of a "passerby seeing a man drown in a pond" (Moving Br. at 14) – this is a case of a person throwing a man in the pond and then pretending to be rescuing him (while in fact keeping him underwater), both acts placing that person under a duty of care to the drowning man and making him liable for its breach.

The duty thus shown, the breach of that duty is a question of fact for the jury, not for the Court of a motion to dismiss.[3]

### D. Contractual clauses on consequential damages and indemnity are irrelevant.

Finally, HPFS argues, in one paragraph and without any support, that the contractual indemnification clause somehow bars the Plaintiffs' claims (Moving Br. at 4). HPFS also argues that the contractual damages limitation clause bars "all consequential damages arising out of Defendants' alleged breach of warranty." Moving Br. at 16-18.

---

[3] Furthermore, pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Plaintiffs intend to file a Second Amended Complaint, which would allege that the post-arrest actions of the Defendants, as well as those of certain additional parties to be joined as defendants, constitute not merely negligence but an intentional fraudulent cover-up. Due to the gravity of the charges that the Plaintiffs intend to bring and the identities of the additional defendants, the Plaintiffs plan to substantiate their forthcoming Second Amended Complaint with significant documentary and witness evidence, and will seek leave of the Court or consent of the Defendants to file it as soon as practicable upon its completion.

13

The short answer to this argument is that, even if valid, it has no bearing on the question of the legal sufficiency of the pleadings, which is the relevant question on this motion to dismiss. If the Amended Complaint properly alleges all *prima facie* elements of the pleaded causes of action – which the Plaintiffs respectfully submit it does – then HPFS' motion to dismiss should fail regardless of any potential limitations on recoverable damages or any potential indemnity obligations of the Plaintiffs, which should be properly raised by way of affirmative defenses, counterclaims, or on the summary judgment, and which are in any event denied.

The longer answer is that the argument is invalid for several reasons, which the Plaintiffs briefly address below, reserving all their rights to respond to them more fully at the proper time.

*First and foremost*, the Amended Complaint sounds predominantly in fraud, and **"attempts under the form of contract to secure total or partial immunity from liability for fraud are all under the ban of the law.**" Bates v. Southgate, 31 N.E.2d 551, 558 (1941). Notably, the cases relied upon by HPFS – Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F. Supp. 363 (D. Mass. 1991) and Agri-Mark, Inc. v. Niro, 233 F. Supp. 200 (D. Mass. 2002) – do not involve fraud and are therefore clearly distinguishable.

*Second*, the indemnity provision by its terms does not apply to the Plaintiffs' claims as they all arise from the counterfeit nature of the Equipment sold by Defendants to Plaintiffs, rather than from Plaintiffs' subsequent "use, operation, handling, treatment, storage, disposal, transportation, recycling, re-sale or destruction of" that Equipment, as provided in the indemnification clause of the RRSA.

*Finally*, the limitation on consequential damages is subject to the unconscionability exception, see Boston Helicopter Charter, Inc., 767 F. Supp. at 377. The indemnification clauses that require plaintiffs to pay defendants even if plaintiffs prevail on their claims, and thereby

14

"lose by winning," have also been held unenforceable by Massachusetts courts as against public policy in certain cases. See, e.g., Crown v. Kobrick Offshore Fund, Ltd., 8 N.E.3d 281 (Mass. App. Ct. 2014).

In sum, HPFS' arguments based on the contractual indemnity and damages clauses are irrelevant for purposes of this motion and are in any event inapplicable to the egregious facts of this case.

Dated:  September 1, 2016                    Respectfully Submitted

/s/ Dimitry Joffe
Dimitry Joffe
(admitted *pro hac vice*)
Law Office of Dimitry Joffe
230 Park Avenue, 10th Fl.
New York, NY 10169
Tel: (212) 309-8711
Email: dimitry@joffe.law

*Counsel for the Plaintiffs*

15

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU<br><br>Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED,<br><br>Defendants. | Civil Action No. 1:16-CV-10386 LTS |

## **CERTIFICATE OF SERVICE**

I, Dimitry Joffe, hereby certify that on this 1st day of September 2016, I caused a copy of the Memorandum of Law in Opposition to Defendant Hewlett-Packard Financial Services Company's Motion to Dismiss Plaintiffs' Amended Complaint to be sent electronically to the registered participants in this case through the ECF system.

*[signature]*
Dimitry Joffe

16