# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU<br><br>      Plaintiffs,<br><br> vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED<br><br>      Defendants. | Civil Action No. 1:16-CV-10386 (LTS)<br><br><br><br>Leave to file granted on September 6, 2016 |

---

## MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT HEWLETT-PACKARD FINANCIAL SERVICES COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

2494053.3   108164-84842

## PRELIMINARY STATEMENT

At the hearing on HPFS's motion to dismiss the original complaint, the Court determined that the allegations as against HPFS were not sufficient to pass Rule 9(b) muster, but permitted Plaintiffs to amend their pleading to attempt to correct that defect.  See generally Transcript, pp. 65-66.[1]  With regard to the Individual Plaintiffs' fraud-based causes of action as against HPFS, the Amended Complaint fails to scale the heights required by Rule 9(b), and the remainder of their claims fail the Twombly/Iqbal standard.  HPFS addressed the entirety of the revised pleading in its motion, and challenged Plaintiffs to show any utterance or writing by or on behalf of HPFS that was a misrepresentation communicated to the Individual Plaintiffs in expectation that they would rely on same, and that they did reasonably rely on it.  They fail to point to any well pleaded allegation meeting these essential elements, but instead rely on the formulaic recitation of conclusory generalizations pled in an attempt to make them plausible as litigants.

Moreover, the Individual Plaintiffs have failed to overcome the clear defects in their false imprisonment claim -- both from an attenuation standpoint and pursuant to the Act of State Doctrine.  They discount the proper applicability of a malicious prosecution theory (which they have not pled); conjure Restatement duties not imposed under Massachusetts law; and even threaten to further amend to include new parties and new claims.  Respectfully, the time has come to cull this matter and let it proceed, if at all, as a commercial dispute over equipment.

## LEGAL ARGUMENT
A.  **The Individual Plaintiffs Must Be Dismissed For Failure To State A Claim**
    1.  **The Act Of State Doctrine Mandates Dismissal**

On the false imprisonment claim, in addressing the Act of State Doctrine, Plaintiffs rehash Kirkpatrick and cite two inapposite cases involving arrests/imprisonments within the United States.  See Opp. Brief at pp. 3-4.  Respectfully, the Court is well versed on the Doctrine and can separate the wheat from the chaff without further briefing.  What led to the subject

---

[1] Plaintiffs' grandiose claim in the third full paragraph of their brief notwithstanding.

detention and any subsequent overtures to undo it have no bearing on the Act of State Doctrine here.  The fact of the imprisonment and the requirement (on all of the Individual Plaintiffs' claims) that it be shown to be "unjustified" in this context render it non-reviewable in this forum.

**2.      False Imprisonment Allegations Remain Too Attenuated To Survive**

Plaintiffs fail to substantively address this Court's concern that the false imprisonment allegations are too attenuated.  They do not show how HPFS might be held responsible for the actions of non-party H3C Technologies Co., Ltd. ("H3C").  They unequivocally allege that the Chinese authorities acted solely on the basis of H3C's representations.  See Moving Brief at pp. 6-7.  And they rest their case on the theory that H3C is "HPFS' affiliate in China."  Id. at p. 2.

Plaintiffs cite no relevant legal authority for such imputed liability, because it has no basis in fact or law.  To the contrary: "Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate." United States v. Bestfoods, 524 U.S. 51, 61 (1998) (quoting from 1 W. Fletcher, Cyclopedia of Law of Private Corporations § 33, p. 568 (rev. ed. 1990)).  Thus, any alleged actions taken by H3C -- triggering action by the Chinese authorities or otherwise -- cannot be imputed to HPFS, and are irrelevant to the analysis of a false imprisonment claim against HPFS.

Likewise, the cited Restatement provisions are entirely inapplicable to the present facts. Plaintiffs cite to comment (d) of Restatement § 35, which, by its terms, is itself a comment on clause (a) of subsection (1), which reads:

> An actor is subject to liability to another for false imprisonment if
> (a) **he acts intending to confine the other or a third person within boundaries fixed by the actor**, and
> (b) his act directly or indirectly results in such a confinement of the other, and
> (c) the other is conscious of the confinement or is harmed by it.

Restatement (Second) of Torts § 35(1) (emphasis added).

For the cited provisions to apply, Plaintiffs must allege that (1) HPFS intentionally acted in order to (2) confine Plaintiffs within boundaries fixed by HPFS.  They make no such allegations.  The closest they come is the contention that HPFS knew that selling counterfeit equipment to ICT would expose the Individual Plaintiffs to a "substantially certain risk of imprisonment."  See, e.g., Opp. Brief at pp. 2-3 (emphasis added).  At most, the allegation pled refers to an abstract risk of confinement without any reference to boundaries fixed by HPFS -- well short of the referenced Restatement's requirement.[2]

Similarly, the Massachusetts cases referenced in Plaintiffs' brief do not involve attenuated risks of imprisonment created by geographically and temporally removed events. Instead, they involve fact patterns where it was self-evident that a defendant directly and almost immediately caused the plaintiff's confinement.  See, e.g., Sarvis v. Boston Safe Deposit & Trust Co., 711 N.E.2d 911, 921 (Mass. App. Ct. 1999) (discussed by the Court at the hearing on the prior motion).  There is no relevant precedent for a geographically and temporally removed defendant being found liable for indirectly contributing to a plaintiff's confinement in another country, in the manner alleged here.  The fact pattern is simply too attenuated.

### 3. The Individual Plaintiffs Can Only Recover Damages For Their Confinement Through A Claim For Malicious Prosecution

In its brief, HPFS illustrated that malicious prosecution would be the proper claim to assert, albeit not as against this defendant.  The Individual Plaintiffs protest at length by contending that their seven month imprisonment occurred in the absence of *any* Chinese legal process.  See Opp. Brief at pp. 8-10.

---

[2]  This deficiency is further confirmed by the illustration at Restatement § 35, comment (d), which Plaintiffs omitted from their brief: "A, knowing that B, a customer, is in his shop, locks its only door in order to prevent a third person from entering. This is a confinement of B, and A is subject to liability to him unless, under the circumstances, he is privileged." See Restatement (Second) of Torts § 35, cmt. d, illustration 1.

Had HPFS physically confined the Individual Plaintiffs into premises it owned, the situation would be markedly different from the non-specific allegation that HPFS indirectly participated in an unpredictable chain of events that resulted in their confinement by the police in China, **more than one year after the events were set in motion**.

3

Despite clearly alleging that a criminal proceeding was commenced against them, the necessary predicate to a malicious prosecution claim,[3] the Individual Plaintiffs brazenly argue that the Amended Complaint does not "even remotely support" the notion that their confinement was imposed pursuant to Chinese legal process.[4]  On the contrary, they allege that: (a) H3C filed a police report with the Chinese authorities about their conduct, requesting that they be punished and criminally prosecuted; (b) they were detained by the Chinese authorities and arrested based solely on this report, and (c) shortly thereafter, ICT learned that a criminal trial was to take place. See Amended Complaint ¶¶ 40-43.[5]  These allegations amount to a criminal proceeding being commenced.  Any suggestion to the contrary flies in the face of the Individual Plaintiffs' alleged seven month confinement, during which the Chinese legal system allegedly ignored ICT's ongoing efforts to secure release.  See id. at ¶¶ 44, 60-61.

The Amended Complaint itself, therefore, demonstrates that all of the Individual Plaintiffs' damages claims are inexorably linked to their confinement pursuant to Chinese legal process; i.e., a criminal proceeding allegedly triggered by H3C and conducted by China pursuant its laws.  As more fully discussed in HPFS's moving papers, if not barred by the Act of State Doctrine, such damages are only recoverable in a malicious prosecution action.  However, no

---

[3] The first element of a malicious prosecution claim is "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff." See Moving Brief at p. 16 (quoting Hernandez-Cuevas v. Taylor, 723 F.3d 91, 99 n.8 (1st Cir. 2013)).

[4] On peril of flogging a dead horse, this contention further underpins the applicability of the Act of State Doctrine.

[5] The Amended Complaint also makes repeated references to the "criminal cases" and "criminal proceedings" that had been opened against the Individual Plaintiffs.  See Amended Complaint ¶ 64 ("the criminal cases against [the Individual Plaintiffs] had not been closed" until receipt of "no criminal record letters" from the Chinese authorities); ¶ 135 (the Individual Plaintiffs remained in legal jeopardy in China even after their release "as the criminal case against them had not been closed"); id. ("Defendants were aware of the continuing criminal case against [the Individual Plaintiffs] but took no further actions in order to assist the Individual Plaintiffs to clear their names and terminate the criminal proceedings against them") (emphasis added).

4

such cause of action has been asserted as against HPFS (nor can it be), and the Individual Plaintiffs' claims should be dismissed in their entirety as against HPFS.

### 4.    The Individual Plaintiffs Have Failed To Plead a Fraud Claim

In <u>Twombly</u>,[6] the Supreme Court replaced the traditional "no set of facts" test[7] with the more onerous review of pleadings aimed at (a) identifying "merely legal conclusions resting on prior (factual) allegations" and (b) then assessing whether the overall facts alleged combine to "nudge [the legal conclusions] across the line from conceivable to plausible."[8]  In <u>Iqbal</u>,[9] the Court further admonished against "formulaic recitation of the elements" of a cause of action that are conclusory and not supported by "well-pleaded factual allegations."[10]

In their Amended Complaint, as illustrated in their Brief, the Individual Plaintiffs' recitation of the elements of their fraud claim is entirely formulaic, and entirely devoid of well pleaded allegations.  Without once suggesting that they heard, knew, saw, read or otherwise had any awareness of any representations by HPFS, they conclude that HPFS should have foreseen that they -- unknown foreign nationals -- would rely on non-specified representations that are vaguely alleged; that such reliance actually occurred; and that it was reasonable.  <u>See</u> Opp. Brief at pp. 11-12.  The allegations cited and quoted are exactly the type of conclusory, unsupported allegations <u>Twombly</u> and <u>Iqbal</u> warn against.  In other words, there is no well-pleaded factual allegation that HPFS ever knew the Individual Plaintiffs existed, let alone that they might rely on some vague unspecified representation that the "Defendants" made.  Equally, there is no well-pleaded factual allegation that the Individual Plaintiffs knew HPFS existed, let alone that it may have made a representation.  **Having already improperly conflated HPFS and HPFS (India),**

---

[6] <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).
[7] <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).
[8] <u>Twombly</u>, 550 U.S. at 570.
[9] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).
[10] <u>Id.</u> at 679.

5

the pleading also conveniently conflates all *"Plaintiffs."*   In fact, long after the event, the Amended Complaint would now insert these individuals (who were thousands of miles and a language barrier removed from the United States (and India)) into negotiations where someone made unidentified nonspecific misrepresentations.   And having made this leap, they then attribute such representations to HPFS without a well pleaded factual basis.

Plaintiffs twice contend that HPFS is "frivolous" for flagging the elemental defects in their pleading.   Nonetheless, they acknowledge repeatedly that *HPFS personnel negotiated on behalf of HPFS (India)*, and fail to refute the charge that ICT (or the Individual Plaintiffs) never "had any misapprehension of the actual party with which [ICT] was contracting."   <u>See</u> Moving Brief at p.4.   In sum, the Individual Plaintiffs have failed to allege a well-pleaded factual predicate for the conclusory allegation that they foreseeably and justifiably *relied on representations made by HPFS*.   Consequently, they fail to satisfy the elements of any representation-based cause of action under <u>Twombly</u> and <u>Iqbal</u>, and they fail entirely to satisfy the heightened pleadings required for fraud under Rule 9(b).

### 5.    HPFS Owed No Legal Duties to the Individual Plaintiffs

Plaintiffs' brief, sans case law, summarily asserts that HPFS "clearly" owed a legal duty to Plaintiffs to rescue them on the theory that HPFS created the peril of imprisonment by selling ICT allegedly counterfeit equipment.   <u>See</u>, <u>e.g.</u>, Opp. Brief at pp. 8, 12-13.   This entirely conclusory claim (remember, HPFS (India) *sold* the goods), premised as it is on circular logic, does not salvage the attenuated false imprisonment cause of action, nor does it create a cognizable duty for purposes of the negligence or related causes of action.

First, the sole authority Plaintiffs cite to support the claim stems from a "duty to act to prevent harm" stated in Restatement sections 321 and 322.   <u>See</u>, <u>e.g.</u>, Opp. Brief at p. 12-13.

6

Section 321 imposes a duty to act when prior conduct was found to be "dangerous" and "has created an unreasonable risk of causing physical harm to another."  Restatement (Second) of Torts § 321.  This clearly was not the case here and Plaintiffs do not appear to argue to the contrary.  See also id. at cmt. a, illustration 3 (if A parks his car on the highway and does not warn approaching vehicles of the blocked highway, he is liable to those who strike the vehicle).[11]

Although Plaintiffs claim that Restatement exceptions to the general "no duty to aid" rule are "important," and "well-known" (see Opp. Brief at p. 12-13), Massachusetts courts do not concur.[12]  In any event, the allegations of the Amended Complaint are insufficient to trigger any duty implied by the Restatement because, as previously explained -- and as this Court observed -- they are too attenuated.  The pleading alleges that HPFS set in motion events that resulted in confinement in a distant country, *over one year later*, even though it had no hand in that confinement, and did not even learn about it until months after the fact.[13]  This is an insufficient basis on which to charge HPFS with the legal duty to rescue, especially when the underlying peril (false imprisonment) concerns itself solely with a party's behavior leading up to and causing the confinement, not afterwards.  Wallace v. Kato, 549 U.S. 384 (2007).

Finally, contrary to Plaintiffs' representations, it is not specifically alleged that *HPFS* undertook any efforts whatsoever to "rescue" the Individual Plaintiffs.  The only party that is

---

[11] Section 322 provides that
> "If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm."

Restatement (Second) of Torts § 322.

[12] See Panagakos v. Walsh, 434 Mass. 353, 356 (2001) ("To date, we have not recognized the duties imposed by either § 321 or § 322, and we need not decide today whether to adopt the legal principles set forth in either or both of those Restatement sections.").

[13] See Amended Complaint ¶¶28, 42-44 (contracts were executed on December of 2011; Individual Plaintiffs detained on December of 2012, but ICT did not request assistance in securing their release until "early February 2013).

alleged to have taken any action in this regard was HPFS (India).[14]  This defendant -- qua HPFS, an entity distinct from its affiliates or (as noted by the Court) its employees when they act on behalf of an affiliate -- is not expressly alleged to have undertaken rescue efforts.  To the extent any such efforts are alleged, they were solely undertaken by and on behalf of HPFS (India).

Respectfully submitted,

Dated: September 13, 2016

By: /s/ Stuart M. Glass
Stuart M. Glass (BBO # 641466)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 502-4077

Anthony P. Callaghan (admitted *pro hac vice*)
GIBBONS P.C
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Telephone:  (212) 613-2000
Facsimile:  (212) 290-2018

*Attorneys for Defendant Hewlett-Packard Financial Services Company*

---

[14] Specifically, the "DRAFT" March 2013 letter to the Chinese authorities was prepared "on behalf of Defendant HPFS India" (Amended Complaint, ¶ 48), and the final April 2013 letter eventually submitted to the Chinese authorities on HPFS (India) letterhead was "executed on behalf of HPFS India." (Amended Complaint, ¶ 54)).

2494053.3   108164-84842

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated:  September 13, 2016                    */s/ Stuart M. Glass*
                                               Stuart M. Glass (BBO # 641466)
                                              CHOATE HALL & STEWART LLP
                                              Two International Place
                                              Boston, Massachusetts 02110
                                              Telephone: (617) 248-5000
                                              Facsimile: (617) 502-4077

2494053.3   108164-84842