UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU<br><br>                Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED,      Defendants. | Civil Action No. 1:16-CV-10386 LTS<br><br>**Leave to file granted on 9/15/2016** |

**PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HPFS' MOTION TO DISMISS THE AMENDED COMPLAINT**

The Amended Complaint alleges that Defendant HPFS misrepresented counterfeit Equipment as genuine and sold it to Plaintiffs for resale purposes, exposing them to a substantially certain risk of imprisonment; when that risk materialized, HPFS made a deliberately false submission to the police prolonging the Plaintiffs' horrifying confinement; and exhibited nothing but callous disregard for their admittedly "Dickensian plight" ever since.

HPFS now invites this Court to join it in disregarding Plaintiffs' plight, and urges the Court "to cull this matter and let it proceed, if at all, *as a commercial dispute over equipment*." (Reply Br. at 1) (emphasis added throughout). HPFS' desperate entreaties should be rejected: HPFS stands accused of serious fraud that severely injured the innocent Plaintiffs, and no fair reading of the complaint can convert it into a mere "commercial dispute over equipment." Moreover, HPFS has gone so far in its long quest to deny the Plaintiffs their day in court as to submit a misleading Reply Brief, which fails to cite the controlling legal authorities putting a lie to HPFS' contention that Plaintiffs "conjure Restatement duties not imposed under Massachusetts law." Id.

## I.  HPFS' remaining Act of State argument is chaff.

Plaintiffs agree that "the Court is well versed on the [Act of State] Doctrine and can separate the wheat from the chaff without further briefing" (Reply Br. at 1) -- indeed, the Court has already rejected most of HPFS' Act of State arguments as chaff, leaving it with just one tentative kernel -- the "unjustified" element of the false imprisonment claim -- upon which HPFS now rests its remaining argument. This argument, however, hinges on the false premise that "for the jury to find [Plaintiffs'] losses from confinement unjustified, *it would necessarily have to find* that the Chinese authorities were not justified in acting as they did to enforce China's laws." Moving Br. at 6. This premise is false because private parties could be liable for false arrest

*irrespective* of the lawfulness of the police's own actions. See Sarvis v. Boston Safe Deposit, 47 Mass. App. Ct. 86, 94 (Mass. App. Ct. 1999) (defendants who "enlisted the unwitting aid of the police by giving them false information" liable for false imprisonment); Adickes v. Kress & Co., 398 U.S. 144 (1970) (person may be liable for false arrest whether or not the police conduct was lawful).[1]

## II. The Amended Complaint has addressed the Court's attenuation concern.

At the Hearing, the Court expressed a concern whether HPFS' provision of false information to the Plaintiffs leading to their arrest might be too attenuated to fall within the Massachusetts rule that a person could be liable for procuring another's arrest by false statements to the police. The Amended Complaint has addressed that concern by alleging that HPFS has not only made false statements to the Plaintiffs, thus creating a substantially certain risk of imprisonment in the first place, but has also made deliberately false statements to the police, unjustifiably prolonging that imprisonment. In their Opposition Brief (pp. 6-8), Plaintiffs relied on several provisions of the Restatement (Second) of Torts, including that "the actor is liable [for false imprisonment] if his act is done . . . with ***knowledge that such confinement would, to a substantial certainty, result from it***" (Restatement § 35 comm. (d)), and that "if the actor is under a duty to release the other from confinement, or to aid in such release . . . ***his refusal to do so with the intention of confining the other is a sufficient act of confinement to make him subject to liability***" (Restatement § 45).

In response, HPFS advances three arguments that have nothing to do with the attenuation issue raised by the Court and are in any event meritless. *First*, HPFS claims that the Individual Plaintiffs attempt to impute to HPFS the actions taken by H3C (Reply Br. at 2), when in fact

---

[1] These cases do involve arrests in the United States, but the relevant proposition that they stand for – i.e., that finding a defendant liable for procuring "unjustified" arrest does *not* necessarily impugn the police's own actions – applies with full force to negate HPFS' key premise here and thereby preclude its remaining Act of State argument.

2

there is not a single allegation in the Amended Complaint that seeks to hold HPFS responsible for H3C's – as opposed to its own -- actions.  Likewise untrue is HPFS' statement that Plaintiffs "rest their case on the theory that H3C is 'HPFS' affiliate in China'" (id.) – had H3C been an independent company, the theory of HPFS' liability would not have changed at all.

*Second*, HPFS takes the Court's attenuation concern and runs wild with it, claiming that such factors as "a geographically and temporally removed defendant," and even the lack of ownership of the place of confinement (Reply Br. at p. 3 & fn.2), make Plaintiffs' claim too attenuated.  These contentions are simply *ipse dixit* of HPFS' counsel, with no relevance either to the attenuation issue raised by the Court or to the legal sufficiency of the claim in general.

*Finally*, HPFS rehashes its malicious prosecution theory, claiming that "the Individual Plaintiffs' damages claims are inexorably linked to their confinement pursuant to Chinese legal process."  Reply Br. at p. 4.  HPFS' theory is divorced from the factual allegations of the Amended Complaint, which nowhere refers to any court's involvement in the Individual Defendants' imprisonment, or any charges or indictments brought by the prosecutors.  Cf. Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010) ("In the typical situation, the requisite legal process 'comes either in the form of an arrest warrant . . . or a subsequent charging documents.").[2]

### III.   The Individual Plaintiffs' fraud claim is properly stated.

HPFS claims that the Individual Plaintiffs' allegations of reliance are "entirely formulaic, and entirely devoid of well pleaded allegations."  Reply Br. at pp. 5-6.  Contrary to HPFS' contention, the Amended Complaint alleges every factual element of the Individual Plaintiffs' justifiable reliance, to wit: (a) in the summer of 2011, Plaintiff ICT received the list of equipment

---

[2] Moreover, at most HPFS' argument may move the dividing line between the damages recoverable for false imprisonment and those for malicious prosecution – but does not prove that the claim is insufficiently pled.  See Opp. Br. at pp. 9-10.

3

falsely identified as genuine H3C equipment from HPFS' representatives and forwarded that list to its offices in China, where the Individual Plaintiffs tested the local market and arranged prospective customers for that very H3C Equipment (Am. Compl. ¶¶ 20, 34); (b) upon receiving the first shipment of the Equipment, the Individual Plaintiffs proceeded to use their best efforts to remarket the Equipment as genuine H3C equipment "in reliance on Defendants' representations" (Am. Complt. ¶ 82), and based on the H3C trademark logos attached to it, which HPFS later admitted were fake; and (c) Defendants themselves admitted that "ICT or its representatives should [not] reasonably be held responsible for selling counterfeit equipment. Upon purchasing the equipment from HPFS India and taking into account that both HPFS and H3C are ultimately owned by HP, ICT was entitled to assume that it was buying genuine equipment." Accordingly, HPFS' argument that the allegations of justifiable reliance are "entirely formulaic, and entirely devoid of well pleaded allegations" is itself entirely frivolous.

### IV. The Restatement duties recognized in Massachusetts law

HPFS' contentions that Plaintiffs purportedly "conjure Restatement duties not imposed under Massachusetts law" (Reply Br. at 1), and that "Massachusetts courts do not concur" with the Restatement's Sections 321 and 322 (id. at 7), are thoroughly misleading as HPFS has failed to bring to the Court's attention the Massachusetts and First Circuit authorities that do just that.

Thus, HPFS relies in its argument on Panagakos v. Walsh, 434 Mass. 353, 356 (Mass. 2001), where the Court observed that "to date, we have not recognized the duties imposed by either § 321 or § 322, and we need not decide today whether to adopt the legal principles set forth in either or both of those Restatement sections."[3] However, in the case of Commonwealth v. Levesque, 436 Mass. 443 (Mass. 2002), decided next year, the same Court held: "Although we

---

[3] The Court explained that "the application of such principles to the facts of the present case would effectively overrule" judicial precedents governing that particular dispute (which concerned a social host's duty to prevent a drinker from suffering the consequences of any resulting intoxication).

4

have yet to recognize explicitly § 321 as a basis for civil negligence, see Panagakos v. Walsh, 434 Mass. 353, 356, 749 N.E.2d 670 (2001), *we have expressed agreement with its underlying principle*."[4] Moreover, in its 2009 decision in Limone v. U.S., 579 F.3d 79, 98-99 (1st Cir. 2009), the First Circuit cited both the Levesque decision and Restatement § 321 for the same principle of Massachusetts law: "The evidence supports the district court's finding that a coverup occurred. Despite contemporaneous requests by state officials for information bearing upon the scapegoats' petitions for post-conviction relief, the FBI remained mute – and worse. That recalcitrance is especially damning in the circumstances of this case – a case in which the FBI's deliberate misconduct had placed the scapegoats in harm's way. *See Commonwealth v. Levesque*, 436 Mass. 443, 766 N.E.2d 50, 56 (2002) (explaining that '*a duty to prevent harm to others arises when one creates a dangerous situation, whether that situation was created intentionally or negligently*'); *Restatement (Second) of Torts § 321 (1965) (similar)*."[5] HPFS has failed to cite these controlling authorities that squarely preclude its argument here.

---

[4] The court stated in that case: "We are not faced with the situation of a mere passerby who observes a fire and fails to alert authorities; the defendants started the fire and then increased the risk of harm from that fire by allowing it to burn without taking adequate steps either to control it or to report it to the proper authorities." Id. Cf. Opp. Br. at 13.

[5] In Limone, the First Circuit upheld the district court's judgment for plaintiffs in the case where "the FBI had participated willingly in framing the scapegoats, and then scrambled to cover up the frame job by obstructing the scapegoats' efforts to clear their names. The court found this conduct 'intentional,' 'outrageous,' 'beyond all bounds of decency,' and to have 'no place in a civilized community.'" 579 F.3d at 94.

5

Dated: September 21, 2016							Respectfully Submitted,

									*[signature: Dimitry Joffe]*

									Dimitry Joffe
									(admitted *pro hac vice*)
									Law Office of Dimitry Joffe
									230 Park Avenue, 10 Fl.
									New York, NY 10169
									Tel: (212) 309-8711
									Email: dimitry@joffe.law

									*Counsel for the Plaintiffs*

6

## CERTIFICATE OF SERVICE

I, Dimitry Joffe, hereby certify that on this 21st day of September 2016, I caused a copy of Plaintiffs' Sur-Reply Memorandum of Law in Opposition to Defendant HPFS' Motion to Dismiss the Amended Complaint to be sent electronically to the registered participants in this case through the ECF system.

*/s/ Dimitry Joffe*
Dimitry Joffe
