**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI AND CATHY YU<br><br>                    Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED<br><br>                    Defendants. | Civil Action No. 1:16-CV-10386 (LTS)<br><br>Leave to file sur-reply brief granted on March 9, 2017 |

**DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**LEGAL ARGUMENT**

A. **The Claims In the Proposed Amendment Are Time-Barred**

The HPFS Defendants' opposition brief established that the claims in the SAC do not relate back to the date of the original complaint. Plaintiffs cite Krupski v. Costa Crociera S.p.A., 560 U.S. 539, 549 (2010) for the proposition that a mistaken or unknown party can be substituted into an action. But here, all new Plaintiffs and all new Defendants were known to Plaintiffs all along, and substitution is not at issue. The new parties were simply left out previously; and Plaintiffs cannot refute the position that the SAC does not relate back to the original pleading.

Plaintiffs also fail to meet their burden of establishing that every claim asserted by or against the newly added parties falls within the relevant statute of limitations. See O'Rourke v. Jason Inc., 978 F. Supp. 41, 46–47 (D. Mass. 1997). The statute of limitations has expired on all claims asserted by and against the newly added parties, because it began to run no later than December 9, 2012;[1] a point previously conceded by Plaintiffs' counsel: "*The Plaintiffs filed this action on December 9, 2015 just prior to the statute of limitations on some of the claims therein*." See Stueben Decl. Exhibit A, ¶ 2 [ECF Doc. No. 86-1] (emphasis added).

Plaintiffs also fail to meet their burden in invoking the discovery rule[2] (preemptively addressed in the HPFS Defendants' opposition brief), which measures whether a reasonable person in the plaintiff's position would have actual or constructive knowledge of the facts giving rise to his or her cause of action. See, e.g., O'Rourke, 978 F. Supp. at 52 ("The important point is that a statute of limitations starts to run when an event has occurred which was reasonably

---

[1] Separately, the false imprisonment claim accrued no later than July 17, 2013. See Opposition Brief, p. 29 [ECF Doc. No. 85].

[2] At footnote 6 of their reply brief, Plaintiffs claim that they previously invoked the Massachusetts discovery rule in an earlier motion to dismiss. Reply Brief at p. 14. But eight of the would-be Plaintiffs were not in the case at that time, and had no part in that motion. The HPFS Defendants' opposition brief dealt with Plaintiffs' "unravelling" excuse for the delay in making the claims in the proposed SAC. In sum, the length of time taken to parse one's causes of action has no impact on when those causes of action accrue.

likely to put a plaintiff on notice that **someone** may have caused his injury.") (emphasis added) (internal citations omitted); see also Pagliuca v. City of Boston, 626 N.E.2d 625, 628 (Mass. Ct. App. 1994).

Here, it is undeniable that Plaintiffs had actual knowledge of the facts giving rise to their claims no later than December 9, 2012. Suggesting that the density/depth of legal theories and available causes of action only became evident years later has no impact on the accrual of the claims. "Unravelling" should have commenced when the injury occurred -- i.e., when the claims accrued. See Pagliuca, 626 N.E.2d at 628. Thus, even if the discovery rule was applicable at some earlier point, Plaintiffs' claims began accruing on December 9, 2012 at the latest, meaning every claim in the SAC asserted by and against the newly added parties is time-barred.

### B. The SAC Fails to State A Claim By or Against the New Parties

Plaintiffs' reply brief makes no attempt to justify or excuse their conclusory fraud allegations involving the newly added parties. Instead, Plaintiffs adopt even more conclusory phrases such as "leaves no doubt," "undoubtedly involved," "without any doubt," and "it is the Plaintiffs' firm and good-faith belief" as substitutes for the specific and particular factual allegations required by Rule 9(b). See, e.g., Reply Brief at pp. 3, 4, 6 7. Conclusory allegations become no less conclusory with repetition.

In the opposition brief, the HPFS Defendants explained at length the lack of particularity of the fraud allegations against newly added Defendants. Plaintiffs' reply brief does not substantively rebut these arguments; instead, it repeats the same vague and generalized allegations that the SAC makes against the new Defendants. But conclusory rhetoric (even if

repeated) does not cure lack of specificity and failure to plead fraud with particularity under Rule 9(b), and the fraud claims in the proposed SAC are futile in that regard.[3]

## C. The Absolute Litigation Privilege Applies

Attacking the absolute litigation privilege, Plaintiffs selectively quote from Attorney Lester E. Riordan's August 8, 2013 letter ("**the Riordan letter**"), claiming that it "is crystal clear" and "emphatically" does not threaten "a judicial action or anything else of the kind." Plaintiffs posit that there is nothing in the letter "that could be reasonably interpreted as 'preliminary to litigation' or 'proposed litigation.'" Reply Brief at 11. For context, Defendants attach the Riordan letter for the Court's review, along with Mr. McCarthy's August 26, 2013 response.[4] See Declaration of Christian Stueben, Esq., Exhibits A and B. A review of each establishes that the Riordan letter can be reasonably interpreted as threatening legal action, and that Mr. McCarthy's letter can only be interpreted as a response to threatened litigation.

The Riordan letter -- which the proposed SAC describes as "*a last-ditch effort to resolve the issue*" (SAC ¶ 228) (emphasis added) -- was contentious, litigious, and rife with allegations. For instance, the letter contains an accusatory paragraph that continually repeats the phrase "The bottom line is …" followed by a litany of alleged actionable conduct on the part of the HPFS Defendants. See Stueben Decl., Exhibit A, p.3. In keeping with that theme, the paragraph ends with: "The bottom line is that your last electronic mail is **so unacceptable as to force me to act to protect ICT**." Id. (emphasis added). Immediately thereafter, the letter makes a list of

---

[3] Plaintiffs focus on the fact that the fraud claims against newly added Defendant David Gill were not addressed in the Rule 9(b) section of Defendants' opposition brief, mistakenly inferring that their claims against Mr. Gill have merit. It has been shown that the statute of limitations has passed on every claim by and against the new parties to the SAC (including Mr. Gill), and that they do not relate back to the initial complaint. Since Mr. Gill was well known to Plaintiffs all along, claims against him now are too late, futile, and should not be permitted.

[4] Both letters are referenced and quoted in the SAC. See, e.g., SAC ¶¶ 228-29, 239-40.

3

demands (id.) and states that, if the HPFS Defendants do not meet those demands within one week, Mr. Riordan will "contact a short list of U.S. based individuals at HP in an attempt to resolve the matter."  Id.  Crucially however -- and completely omitted by Plaintiffs from the proposed SAC or their briefs -- the next sentence states: "If that effort is unsuccessful, **we will consider our options under the contract and profit sharing partnership.**"  Id. (emphasis added).  Finally, the letter ends with the threat that "**action will follow**" if the HPFS Defendants are uninterested in a resolution.  Id. (emphasis added).

Plaintiffs contend that the phrase "action will follow" can only refer to Mr. Riordan's threat to contact individuals at HP, and they conveniently ignore that he feels forced to "act to protect ICT" and that he will "consider our options under the contract and profit sharing partnership."  Respectfully, these phrases *can only* be interpreted (or, at a minimum, *can reasonably* be interpreted) as threatening that legal "action will follow."

In terms of contacting "individuals at HP," ICT had already made contact with Ms. Whitman and Mr. Schultz;[5] so it is unclear who else at HP the Riordan letter was referring to; and *there is no showing in the proposed SAC that Mr. Riordan contacted anyone else at HP* when the deadline passed.  Viewed from an objective perspective, a reasonable business person or attorney could certainly interpret the Riordan letter's strident tone, its list of demands, its threat to "protect ICT" and consider "options under the contract and profit sharing partnership," and its conclusion that "action will follow" as a real threat of legal action.

That interpretation is evident in Mr. McCarthy's August 26, 2013 response. See Stueben Decl. Exhibit B.  The response reveals that Mr. McCarthy and his clients saw the need to respond to Mr. Riordan's "incorrect allegations" and to ICT's "attempt to shift the blame to HP for

---

[5] See SAC ¶¶ 209-10.

4

problems" of its own making.  See id. at 1.  Much of the response continues in this vein, setting forth the HPFS Defendants' version of events, and rebutting the many accusations made by Mr. Riordan.  Finally, it concludes with preliminary overtures towards a potential settlement:

> While my clients are prepared to try and *resolve these matters in an amicable fashion*, because of the nature of the issues and many unfounded allegations advanced by ICT, it is *highly likely that a resolution of these matters cannot be had unless the parties enter into a **mutually acceptable and comprehensive Settlement Agreement and Release***.

Id. at p. 3 (emphasis added).  Clearly, Mr. McCarthy's response to the Riordan letter was a communication preliminary to anticipated litigation.  See Doe v. Nutter, McClennen & Fish, 668 N.E.2d 1329, 1334 (Mass. App. Ct. 1996) (absolute litigation privilege attaches to "statements made by an attorney preliminary and pertinent to anticipated litigation") (emphasis added).

Plaintiffs' heavy reliance on Meltzer v. Grant, 193 F. Supp. 2d 373 (D. Mass. 2002) is misplaced.  Meltzer concerned the application of the absolute litigation privilege to the *sender of a demand letter*, *not its recipient*, examining whether the demand letter was related to a proceeding "which [was] contemplated in good faith and which is under serious consideration." Id. at 378, 381 (the sender had threatened criminal prosecution, but never followed through with the threat).  That aspect of Meltzer has no relevance here, where Mr. McCarthy's letter was sent *in response to a demand letter*.  See Nutter, 668 N.E.2d at 1334; see also Kimmel & Silverman, P.C. v. Porro, 53 F. Supp. 3d 325, 342 (D. Mass. 2014) ("statements are absolutely privileged where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation **or in conferences and other communications preliminary to litigation**.") (internal quotations and citations omitted) (emphasis added).

Equally, Plaintiff's reliance on Sriberg v. Raymond, 345 N.E.2d 882 (Mass. 1976), is misplaced because that case also involved an examination of whether *a letter threatening legal action* was privileged, *not whether the response to the threat* was privileged. Nonetheless, even if examined by the Meltzer and Sriberg "under serious consideration" yardstick, it is clear that the Riordan letter was sent at a time when legal action was being contemplated by Plaintiffs.[6] The proposed SAC describes the Riordan letter as the "**last-ditch effort** to resolve the issue" of monies in dispute. As such, the Riordan letter was the final attempt at resolution, and was replete with *'or else'* ultimatums that legal recourse would follow (or that it was, at least, being considered). The ultimatum-ridden language of the letter itself reveals clear litigious intent (e.g., "the bottom line is ... ," "*force me to act to protect ICT*," "we will *consider our options*," and "action will follow"). Consequently, the Riordan letter triggered a response that was "preliminary and pertinent to anticipated litigation" "under serious consideration" by Plaintiffs. See Nutter, 668 N.E.2d at 1334; Sriberg, 345, N.E.2d at 884.

Despite protestations that "ICT [had] never threatened a lawsuit or claim" (SAC ¶258), in response to Mr. McCarthy's August 26, 2013 letter, the Chinese Individual Plaintiffs made a settlement demand: they "would be willing to settle their claim ... for a very modest amount of $1.5 million for all three at the time" (SAC ¶ 259) -- a classic case of having one's cake and eating it too. Under both Meltzer and Sriberg, Plaintiffs were objectively contemplating and seriously considering legal "action [to] follow" their "last-ditch effort" to resolve issues, and Mr. McCarthy's response was absolutely privileged as a communication preliminary to litigation.[7]

---

[6] The proposed SAC reveals that Plaintiffs were considering their legal rights and the HPFS Defendants' legal exposure as early as March of 2013. See Opposition Brief, p. 16, fn. 9 [ECF Doc. No. 85].

[7] Equally, the "business matters" exception (Sullivan v. Birmingham, 416 N.E.2d 528 (Mass. 1981)) does not apply here since Mr. McCarthy's response to the Riordan letter invited ICT to enter into a "Settlement Agreement and

2530521.2 108164-84842

The fact that Mr. Riordan waited a further two years to follow through on his threat that "action will follow" by actually filing a complaint is irrelevant to whether the absolute litigation privilege attaches. Indeed, when confronted with Mr. McCarthy's response to the threat of action, Mr. Riordan wrote back with a settlement demand in November of 2013. SAC ¶ 259. Plaintiffs, as masters of their claims, were free to wait until the eleventh hour to bring their action. Mr. McCarthy had no way of knowing when "action [would] follow" or that Plaintiffs would sit on their rights for two years (changing tack from time to time in the interim). The threat existed, and for all anyone knew, litigation was imminent. Hence, Mr. McCarthy attempted to allay that very threat when he invited a Settlement Agreement and Release. The absolute litigation privilege applies to shield Mr. McCarthy and Gibbons from the proposed SAC.

D.  **The SAC Fails To State A Claim For False Imprisonment Or Negligence**

Plaintiffs fail to substantively respond to the HPFS Defendants' arguments showing why the SAC fails to state a false imprisonment claim, as the Court already found with regard to the Amended Complaint. Instead, with regard to negligence, they misstate the record, claiming that the Court "necessarily reject[ed]" Defendant HPFS's argument that it did not owe a legal duty to the Individual Plaintiffs. Reply Brief at pp. 12-13. In fact, the Court did not address that argument in its January 24, 2017 Order (disposing of several pending motions to dismiss); and the "no duty of care" argument is one that Defendant HPFS was free to renew had Plaintiffs chosen not to seek leave to amend. See January 24, 2017 Order, p. 16 [ECF Doc. No. 69].[8]

---

Release" (SAC ¶ 256). That response is not the stuff of "counselling and assisting [] clients in business matters generally." See Meltzer, 193 F.Supp.2d at 378 (quoting Kurker v. Hill, 44 Mass.App.Ct. 284, 192 (1998)).

[8] Once again, Plaintiffs suggest that HPFS (India)'s non-adoption of HPFS's "no duty of care" argument represents a disavowal of that position entirely. See Reply Brief at p. 13. This false claim was already debunked in HPFS

7

### E. The SAC Fails The Foman Factors

The HPFS Defendants' additional arguments of undue delay,[9] uncured deficiencies, bad faith, and improper purpose remain controlling. Plaintiffs offer no justification for utterly disregarding the deficiencies in their pleading pointed out by the Court in its January 13, 2017 *sua sponte* order dismissing the prior motion. Instead, they submit the exact same proposed SAC (previously rejected) with the instant motion, and they continue to withhold expert affidavits which purportedly justify their implausible "zugzwang" theory.

### CONCLUSION

Defendants respectfully request that the Court deny the Motion for Leave to file a Second Amended Complaint.

Dated: March 9, 2017

Respectfully submitted,

By: /s/ Stuart M. Glass
Stuart M. Glass (BBO # 641466)
CHOATE HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 502-4077

Anthony P. Callaghan (admitted *pro hac vice*)
Christian A. Stueben (admitted *pro hac vice*)
GIBBONS P.C

---

(India)'s reply brief in support of its motion to dismiss, pages 2-3. [ECF Doc. No. 63]. Distinct parties can have distinct and differing duties of care.

[9] Motions to amend that were much more timely than Plaintiffs' have been denied for undue delay in the First Circuit. See, e.g., Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14 (1st Cir. 2013) (second amended complaint "was not filed until **nearly a year after commencement of the action** and many months after the fully briefed motions to dismiss had been taken under advisement.") (emphasis added); Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (**four month** delay found undue, when plaintiff "offered no justification for his delayed attempt" to add new parties and waited "too long to alter the nature of the proceedings," where the plaintiff "was well aware of the facts underlying his claim and the involvement of [the proposed newly added defendants] before he filed suit").

One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Telephone:  (212) 613-2000
Facsimile:  (212) 290-2018

*Attorneys for Defendants Hewlett-Packard*
*Financial Services Company and Hewlett-Packard*
*Financial Services (India) Private Limited*