UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-cv-10386-LTS |
| HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

---

ORDER ON MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (DOC. 79)

July 28, 2017

SOROKIN, D.J.

Presently, the First Amended Complaint (Doc. 41), as modified by the Court's ruling
(Doc. 69) on a prior motion to dismiss, constitutes the operative complaint in this action.
Pending before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint
(Doc. 79).  The Motion is ALLOWED IN PART and DENIED IN PART.  Plaintiffs have seven
days from the date of this Order to file a Second Amended Complaint conforming to this Order.[1]
Defendants must file their Answer by fourteen days thereafter.  The Court will convene a Rule
16 scheduling conference in this case on September 25, 2017 at 3:30 p.m.  All lawyers, including
Plaintiffs' local and pro hac vice counsel, must appear in person.

---

[1] The Court notifies Plaintiffs that if they file a Second Amended Complaint that fails to conform to the Court's
Order, it will consider dismissing this action under Federal Rule of Civil Procedure (hereinafter, "Rule") 41(b).  See
Torres-Alamo v. Puerto Rico, 502 F.3d 20, 25 (1st Cir. 2007).

I.    BACKGROUND

The First Amended Complaint ("FAC") (Doc. 41) was 42 pages, whereas the proposed

Second Amended Complaint (hereinafter, "SAC"; Doc. 79-2) is 119 pages, with a prolix

elaboration of allegations in the FAC, along with new factual allegations, new Plaintiffs and

Defendants, new legal claims, and multiple references to a vague and massive "cover-up."[2]  For

the sake of efficiency, the Court incorporates the procedural history and recitation of Plaintiffs'

allegations in its Order on Defendants' motion to dismiss the FAC, along with any shorthand

terms for referring to the parties.  See Doc. 69 at 2-9.  The Court will explain new allegations and

claims as they become relevant to the instant Motion.

Defendants oppose the instant Motion on various grounds:  (1) the SAC does not relate

back to the original pleading, and thus any new claims are barred and any new defendants are

immune under the applicable statutes of limitations; (2) the SAC's fraud claims are implausible

and insufficiently pleaded under Rule 9(b); (3) the claims against new Defendants Margaret

Cushing "Meg" Whitman, John Schultz, HP Inc. ("HPI"), and Hewlett Packard Enterprise

Company ("HPE") are insufficiently pleaded; (4) the claims against new Defendants G. Daniel

McCarthy and Gibbons P.C. are insufficiently pleaded and are barred by Massachusetts' absolute

litigation privilege; (5) the SAC fails to state a claim for false imprisonment; and (6) Plaintiffs

---

[2] Portions of the SAC are subject to strike under Rule 12(f) and/or violate Rule 8.  The SAC is verbose and argumentative to the point of being unprofessional.  On the first page, it contains an unnecessary quote by Sir Walter Scott and refers to proposed Defendant Meg Whitman as a "celebrity CEO."  Doc. 79-2 at 1.  On another page chosen at random, it states that correspondence from two proposed Defendants is "better read on an empty stomach."  Id. at 68.  Perhaps most strangely and superfluously, the SAC contains an explanation of chess strategy. Id. at 9.   Plaintiffs must delete any insulting, argumentative, or superfluous passages before they file the revised Second Amended Complaint, including but not limited to:  the first sentence on page 1; the first paragraph on page 2; the table of contents on pages 2-3 (notably missing any page citations either of the two times Plaintiffs' counsel submitted the SAC); the summary set forth in paragraphs 1-31; paragraph 82, as it refers to an "accompanying" document that is not attached; paragraph 216; paragraph 240; paragraph 271's characterization of a letter as "the same repulsive mix of lies and conceit"; paragraphs 282-288; and paragraphs 294 and 296.  The Court's identification of certain offending paragraphs or statements does not relieve counsel for the Plaintiffs of the obligation to file a revised Second Amended Complaint conforming to Rules 8 and 12.

are guilty of undue delay and bad faith.[3]  Doc. 85 at 2-3.  The Court will address each of these

arguments in turn.


II.     <u>LEGAL STANDARD</u>

Rule 15 "instructs courts to 'freely give leave' to amend" pleadings in the absence of a

reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of amendment, etc." <u>Klunder v. Brown</u>

<u>Univ.</u>, 778 F.3d 24, 34 (1st Cir. 2015) (citations and internal quotation marks omitted).  A district

court's denial of a Rule 15 motion "will be upheld so long as the record evinces an arguably

adequate basis for the court's decision." <u>Maine State Bldg. & Const. Trades Council v. U.S.</u>

<u>Dept. of Labor</u>, 359 F.3d 14, 18 (1st Cir. 2004) (citation and internal quotation marks omitted).

In Defendants' view, the first five grounds they argue for denying leave support a finding

that amendment would be futile.  <u>See</u> <u>supra</u> n.3.  Accordingly, the Court analyzes those grounds

using the same criteria it would use in analyzing a motion to dismiss under Rule 12(b)(6).  <u>In re</u>

<u>Curran</u>, 855 F.3d 19, 28 (1st Cir. 2017).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (citation and internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citation omitted).  "Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

---

[3] Defendants argue that all of these grounds, except for the last one, support a finding that "leave to amend should be denied for futility." Doc. 85 at 2.

requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

For any claims alleging fraud, a higher pleading standard applies under Rule 9(b), and Plaintiffs are "required to set forth with particularity the who, what, when, where, and how of the alleged fraud." Lawton ex rel. United States v. Takeda Pharm. Co., Ltd., 842 F.3d 125, 130 (1st Cir. 2016) (citations and internal quotation marks omitted).


III.   WHETHER THE SAC RELATES BACK TO THE ORIGINAL COMPLAINT

Defendants argue that the SAC "does not relate back to the original pleading," and thus that "all claims" against new Defendants "fall outside the relevant limitations period." Doc. 85 at 29, 33. This argument is unavailing. Under Rule 15(c)(1), amendment of a pleading relates back to the date of the original pleading when the law that provides the applicable statute of limitations – here, Massachusetts law, since Plaintiffs' claims all arise under state law – allows relation back. One Beacon Ins. Co. v. Electrolux, 223 F.R.D. 21, 24 (D. Mass. 2004). Massachusetts Rule of Civil Procedure 15(c) states that a claim asserted in an amended pleading relates back to the original pleading so long as the claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." This "liberal" relation-back rule applies to the addition of both claims and defendants. Id. at 25 (citations omitted). The Court finds the SAC arises out of the conduct set forth or attempted to be set forth in the original Complaint, and therefore relates back to that pleading. Thus, the new claims in the SAC are not time-barred.

IV.     WHETHER THE "INTENT-BASED" CLAIMS ARE SUFFICIENTLY PLEADED

Defendants argue that Plaintiffs' "intent-based causes of action" – for fraud, violation of Chapter 93A, false imprisonment, civil conspiracy, and intentional infliction of emotional distress – are based on an implausible theory and should be dismissed under Iqbal.  Doc. 85 at 27.

Plaintiffs allege the HPFS Defendants[4] knew that the equipment was counterfeit before it was delivered to Integrated, knew the Plaintiffs were unaware they were counterfeit, and nonetheless misrepresented the equipment as authentic.  Doc. 79-2 at 26.  In addition, Plaintiffs allege the HPFS Defendants misrepresented to Plaintiffs the content of the actual letter sent to the Chinese authorities by intentionally changing language in the March 2013 draft letter, without telling Plaintiffs, before sending it to Chinese authorities in April 2013, because the HPFS Defendants did not want to admit the equipment was counterfeit, as doing so would open them up to civil and criminal liability.  Id. at 8-9.  Plaintiffs suggest the HPFS Defendants aimed to delay the Individual Plaintiffs' release from jail in Chinese to pressure Plaintiffs to release the HPFS Defendants from all civil liability arising from the delivery of counterfeit goods.  See id. at 8-9, 85-86.

Plaintiffs' allegations regarding the April 2013 letter are not merely "legal conclusions couched as fact" or "threadbare recitals of the elements of a cause action."  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citations, internal quotation marks, and alterations omitted).  Thus, the allegations "must . . . be treated as true, even if seemingly incredible."  Id. (citations omitted); see also id. at 13 ("'[A] well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely.'") (quoting Bell Atl. Corp. v. Twombly, 550

---

[4] The HPFS Defendants are HPFS and HPFS India.  See Doc. 79-2 at 1.

U.S. 544, 556 (2007)).  Taking the allegations as true and drawing all reasonable inferences in

Plaintiffs' favor, the Court finds Plaintiffs have pleaded with sufficient particularity that the

HPFS Defendants fraudulently sold counterfeit equipment to Plaintiffs and later, with the aid of

HP, see infra Section V.B, misled Chinese authorities to avoid liability for doing so.  Thus, the

Court ALLOWS the instant Motion with respect to the intent-based causes of action.

Counts VII (fraud) and Count VIII (93A) both arise out of the same alleged course of

conduct.  The fraud claim, despite spanning nearly eight pages and twenty paragraphs, alleges a

fraud arising out of only two properly pled statements, the first being the assertion made to some

Plaintiffs that the April 2013 letter was substantively the same as the March 2013 draft letter, and

the second being that the April 2013 letter was appropriately "filed."  Doc. 79-2 at 103.  Per Rule

9(b), Plaintiffs have sufficiently pleaded "the time, place, and content of the[se] alleged false

representations."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 279 (1st Cir. 2013)

(citations and internal quotation marks omitted).  These allegations will, of course, guide

discovery.  See Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir.

2009).


V.     NEW DEFENDANTS WHITMAN, SCHULTZ, HPI, AND HPE

Defendants argue the "SAC is futile in that it is entirely bereft of substantive allegations

against" Whitman, Schultz, HPI, and HPE.  Doc. 85 at 19.  With respect to fraud claims against

them, Defendants argue that the SAC is "completely devoid of the requisite specificity for the

causes of action pled."  Id.

A.    Whitman and Schultz

Whitman was "President and Chairman of HP" until HP split in 2015 to become HPI and HPE, and she is now the CEO and President of HPI and the Chairperson of HPE.  Doc. 79-2 at 18.  Schultz was General Counsel of HP during the relevant time period in this case.  Id. at 19. Plaintiffs allege that on June 12, 2013, Alex Styller, Integrated's CEO, sent a letter to Whitman, copying Schultz, making a "personal" appeal to Whitman to "use [her] influence to see that the charges" against the Individual Plaintiffs "are withdrawn."  Id. at 10; see also id. at 105 ("Defendants Whitman and Schultz knew about the matter since *at least* June 12, 2013 . . . .") (italics in original).  In addition, on the same day, Integrated's outside counsel Lester Riordan "made the same appeal to Defendant Schultz personally, of the same tenor but with more detailed facts."  Id. at 61.

Plaintiffs allege Whitman responded to Styller's letter "with a stone-cold-hearted silence."  Id. at 12; see also id. at 106 ("[D]efendant Whitman cold-heartedly ignored Plaintiff Styller's desperate plea.").  "Defendant Schultz, however, responded by calling Mr. Riordan's office on June 14, 2013, and leaving a voicemail message:  'Sorry for not getting back to you.  I will have someone on my team look into it and get right back to you.'"  Id. at 61.  Plaintiffs allege Schultz later "retain[ed] Defendants Gibbons P.C. and McCarthy to conduct, on behalf of the trio of HP itself and its subsidiaries H3C and HPFS India, the ensuing cover-up campaign of naked lies, threats, extortion and sheer intimidation against the innocent Plaintiffs."  Id. at 12. Plaintiffs sue Whitman and Schultz for fraud, violation of Chapter 93A, false imprisonment, negligence, civil conspiracy, intentional infliction of emotional distress, and loss of consortium. See id. at 102-117.

Despite the length of the SAC, it does not contain sufficient factual allegations to state a plausible claim against Whitman and Schultz, under either Rule 8 or Rule 9(b).  The SAC's allegations of wrongdoing against Whitman are bare (essentially, she failed to act upon a letter that she might have never read) and the allegations against Schultz are wholly conclusory (essentially, he retained a law firm to engage in a "cover-up campaign of naked lies").  With respect to Whitman, specifically, the Court declines Plaintiffs' implicit invitation to find the CEO of a large company liable simply because she failed to personally try to fix a problem related to one of the company's subsidiaries on another continent.  See Abdallah v. Bain Capital LLC, 752 F.3d 114, 121 (1st Cir. 2014) ("[A]llegations that a parent directs or controls particular actions by a subsidiary are generally not enough to render the parent liable for all torts related to those actions.") (citations omitted).  Accordingly, the Motion to Amend as it pertains to Whitman and Schultz is DENIED.

B.     HPE and HPI

HPE and HPI are companies that "result[ed] from the split of the legacy company HP," which "became effective on November 2, 2015."  Doc. 79-2 at 18.  "[I]n November 2015, Defendant HPFS became a wholly-owned subsidiary of Defendant HP."  Id. at 17.  Defendants do not argue that HPE and HPI should be dismissed as Defendants by virtue of the fact that, in Massachusetts, successor corporations are traditionally not considered liable for the predecessor's torts, with various exceptions.[5]  See DeJesus v. Bertsch, Inc., 898 F. Supp. 2d 353, 358 (D. Mass. 2012).  Rather, Defendants claim that "HP and its successor entities are not specifically alleged to have done anything."  Doc. 85 at 19.  They acknowledge that the "term

---

[5] In any event, the Court does not have sufficient information to determine whether this traditional rule or any of its exceptions applies.

'HP' appears repeatedly in alleged correspondence and communications," but claim the term is merely "short-hand for either HPFS and/or HPFS (India), or some other Hewlett-Packard Entity." Id. at 21 n.8.

At this stage, the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in Plaintiffs' favor. See Iqbal, 556 U.S. at 678-79. Thus, the Court cannot assume references to "HP" in communications relating to the allegedly tortious events are actually references to some entity *other* than HP. Furthermore, these allegations, when fairly read under the applicable standard, refer to HP rather the HPFS defendants. See Doc. 79-2 at 45 (alleging letters from employees of the HPFS defendants describe conduct by "HP legal team," "HP local legal teams," and "the HP legal and security teams in China" concerning efforts to obtain the release of Integrated's employees) Finally, drawing all reasonable inferences in Plaintiffs' favor, the SAC alleges that "HP colleagues" told HPFS counsel David Gill to omit exonerating information about the counterfeit nature of the equipment from the March 2013 draft letter before he submitted it to Chinese authorities in April 2013. Id. at 52; see also id. at 45 (stating that HP "decision-makers above Defendant Gill's pay-grade" were "reviewing the issue"). Accordingly, the Court rejects Plaintiffs' bald assertion that the SAC does not allege HP did anything wrong. Because that assertion is the only one that purportedly supports Defendants' argument for dismissing HPI and HPE as Defendants, the Court rejects the argument and ALLOWS the instant Motion with respect to adding those Defendants.

VI.    NEW DEFENDANTS McCARTHY AND GIBBONS, P.C.

The allegations of wrongdoing against McCarthy and Gibbons P.C. ("Gibbons") in the SAC are largely tied to a letter McCarthy sent, in his capacity as a lawyer at Gibbons, to Plaintiffs' former lawyer on August 8, 2013.  Plaintiffs claim that letter was "a noxious mix of lies, threats, intimidation and conceit, without an iota of empathy or concern for the Plaintiffs' admittedly 'Dickensian plight.'"  Doc. 79-2 at 68; see also id. at 69-72 (describing the letter).  At the end of the letter, Plaintiffs allege, McCarthy and Gibbons "attempt[ed] to bully ICT into global settlement and release of all claims."  Id. at 73.  Plaintiffs also take issue with another, similar letter that McCarthy wrote in his capacity as a lawyer at Gibbons.  See id. at 78.

These letters do not provide sufficient basis for any claims against McCarthy or Gibbons. It is vague, at best, how the letters harmed Plaintiffs and, in any event, the statements in the letters are protected by Massachusetts' absolute litigation privilege.  See Bartle v. Berry, 80 Mass. App. Ct. 372, 378 (2011)  Indeed, the fact that McCarthy sought a settlement and release of claims is clear evidence that his letters were "communications preliminary to litigation," and thus protected by the privilege.  Id. (citation and internal quotation marks omitted).  Thus, the Motion to Amend is DENIED as to McCarthy and Gibbons.


VII.   WHETHER THE SAC STATES A CLAIM FOR FALSE IMPRISONMENT

The Amended Complaint alleged a claim of false imprisonment against the HPFS Defendants.  Doc. 41 at 37.  The Court dismissed this claim in its January 24, 2017 Order.  Doc. 69 at 14-15.  Nevertheless, Plaintiffs seek leave to allege false imprisonment against the HPFS Defendants again and, for the first time, against the two HP Defendants.[6]  Doc. 79-2 at 110.

---

[6] The SAC also seeks leave to allege the claim against defendants who have been dismissed in their entirety for reasons discussed elsewhere in this Order.

Although the Court considers the claim in light of its earlier ruling, the Court considers the claim anew because the parties' additional briefing has brought the issues presented into sharper focus and the claim now proposed arises out of the SAC's factual allegations rather than the FAC's.

The SAC alleges HPFS and HPFS India are liable for false imprisonment for two reasons. First, their "fraudulent sale of counterfeit Equipment to Plaintiffs in 2011, for the express purposes of resale, unreasonably exposed Plaintiffs reselling it to a substantially certain risk of arrest and imprisonment." Doc. 79-2 at 110. Second, "Defendants' own, belated April 22, 2013 submission to the police" deliberately "withheld the exonerating evidence" in their March 2013 draft letter, which "prolonged the Individual Plaintiffs' imprisonment." Id. at 111; see also Doc. 69 at 7-8 (providing additional factual background related to this claim). Plaintiffs claim each of these two acts satisfies the "intent to confine" element of false imprisonment because the HPFS Defendants knew, to a substantial certainty, their acts would result in the Individual Plaintiffs' unjustified confinement. See Doc. 79-2 at 110-11.

Defendants argue that the "intent to confine" element cannot be satisfied by allegations of such knowledge "to a substantial certainty" that confinement of another will result.[7] Doc. 85 at 25. "As a federal court sitting in diversity, it is, of course, [the Court's] task to interpret and apply as best [it] can the state rules of decision." Catex Vitol Gas, Inc. v. Wolfe, 178 F.3d 572, 576 (1st Cir. 1999) (citation omitted). Massachusetts courts have not squarely addressed Defendants' argument. However, its Supreme Judicial Court and lower courts have cited the Restatement (Second) of Torts in explaining the elements of false imprisonment. E.g., Foley v. Polaroid Corp., 400 Mass. 82, 91 (1987); Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass.

---

[7] Defendants do not argue in the alternative that, if "knowledge to a substantial certainty" satisfies the intent element of false imprisonment, the SAC's factual allegations do not sufficiently plead such knowledge. In any event, the Court would reject such an argument.

App. Ct. 86, 98 (1999). Thus, the Court "ascertain[s]" that Massachusetts courts "would most likely follow" the Restatement on this issue. Catex Vitol, 178 F.3d at 577 (citation and internal quotation marks omitted). Under the Restatement, an actor is liable for false imprisonment "if his act was done for the purpose of imposing confinement upon the other or with knowledge that such confinement would, to a substantial certainty, result from it." Restatement (Second) of Torts § 35 cmt. d (1965). The SAC sets forth sufficient factual allegations to state a plausible claim that the HPFS defendants knew, to a substantial certainty, that confinement would result from the sale of counterfeit goods destined for sale in China. However, the SAC does not state such a claim against the HP Defendants, as those Defendants are not alleged to have been involved with the sale.

With respect to the second theory, Defendants contend that there is "no credible support" for Plaintiffs' implicit assertion that intentionally causing someone to *remain* unjustifiably confined constitutes false imprisonment.[8] Doc. 85 at 27. However, support does exist for such a legal theory. See Restatement (Second) of Torts § 45 ("If the actor is under a duty to . . . aid in [the other's] release [from confinement], his refusal to do so with the intention of confining the other is a sufficient act of confinement to make him subject to liability."); see also Sheppard v. United States, 537 F. Supp. 2d 785, 789 (D. Md. 2008). Here, Plaintiffs' SAC pleads factual allegations that state a plausible claim that the HPFS Defendants had such a duty to aid and the requisite intent to confine. While the SAC does not plead factual allegations stating a plausible claim that the HP Defendants had such a duty to aid, it does state a plausible claim, drawing all reasonable inferences in Plaintiffs' favor, that the HP Defendants intentionally caused the HPFS

---

[8] As with their "knowledge to a substantial certainty" argument, supra, Defendants do not argue that, if causing someone to remain unjustly confined with the requisite state of mind can constitute false imprisonment, the SAC's factual allegations do not sufficiently plead that theory.

Defendants to alter the letter to the Chinese authorities to withhold exonerating information. This alleged interference with the HPFS Defendants' discharge of their duty suffices at the present stage of the pleadings.

Accordingly, the Court ALLOWS the Motion to Amend with respect to the false imprisonment claim against the Defendants who have not been dismissed in their entirety for other reasons.

VIII.   WHETHER THE SAC STATES A CLAIM OF NEGLIGENCE

Count Ten of the SAC claims negligence against all Defendants arising out of the alleged failure to engage in sufficient acts to obtain the release of the Individual Plaintiffs.  The claim survives against the HPFS defendants but fails to state a claim against any other defendant, for Plaintiffs have not shown that any other defendant had a duty to act.  See United States v. Bestfoods, 524 U.S. 51, 61 (1998).  Thus, the Motion to Amend is ALLOWED IN PART to permit the negligence claim to proceed against the HPFS defendants only, but OTHERWISE DENIED.

IX.   DEFENDANT DAVID GILL

No separate argument has been advanced on behalf of Defendant David Gill.  The Court has considered the general arguments made on behalf of all defendants as made on behalf of Defendant Gill.  Any claims against Defendant Gill that survive may proceed against him.

X.   WHETHER THERE HAS BEEN UNDUE DELAY OR BAD FAITH

Defendants argue that the instant Motion and the SAC were filed with undue delay, in bad faith, for improper purpose, and despite failure to cure deficiencies in prior pleadings.  Doc.

85 at 37-41.  Plaintiffs state this argument "border[s] on frivolous."  Doc. 89 at 15.  It does not.

On January 13, 2017, in denying Plaintiffs' then-pending motion to file a second amended

complaint, the Court noted its concerns about, *inter alia*, the accompanying proposed

complaint's compliance with Rule 8.  Doc. 67.  The Court also warned that any party bringing

fraud claims that patently fail to comply with Rule 9(b) risked sanction under Rule 11.  Id.  Five

days later, Plaintiffs promptly sought reconsideration.  In denying reconsideration, as well as

ruling on several other motions, the Court permitted Plaintiffs a further opportunity to seek leave

to file an amended complaint, and reiterated its warning to Plaintiffs to comply with Rule 8.

Doc. 69 at 16 n.8.  Plaintiffs timely filed the instant Motion.  The instant SAC is identical to the

prior version that the Court addressed twice in January 2017.  Compare Doc. 64-1 with Doc. 79-

2.  Plaintiffs failed to make any effort whatsoever to cure any, let alone all, of the violations of

Rule 8.  The SAC now, as before, also contains the same typographical errors and the same

missing citations to earlier paragraphs of the SAC.  Nonetheless, considering "the preference

expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for

resolving disputes on their merits," as well as Rule 1's admonition to apply the rules "to secure

the just" determination of every action, the Court, with its "significant latitude" on this issue,

finds these arguments insufficient to deny the instant Motion.  Krupski v. Costa Crociere S.p.A.,

560 U.S. 538, 550 (2010) (citation omitted); ACA Fin. Guaranty Corp. v. Advest, Inc., 512 F.3d

46, 55 (1st Cir. 2008) (citations omitted).


XI.     CONCLUSION

        For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART the

instant Motion (Doc. 79), as described in this Order.  Plaintiffs shall file a conforming second

amended complaint within seven days.  Defendants shall answer within fourteen days thereafter.

The Court will convene a Rule 16 scheduling conference in this case on September 25, 2017 at 3:30 p.m.  All counsel shall appear in person.

On July 25, 2017, Plaintiffs' counsel filed a letter to the Court on ECF addressing substantive matters, specifically requesting that the Court permit discovery to commence in advance of the Court's ruling on the instant Motion.  The next day, defense counsel responded with their own letter filed on ECF opposing the request.  All filings in the future shall be by way of motion or other pleading, conforming to all of the requirements applicable to such filings, rather than letters.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge