# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI,

Plaintiffs,

vs.

HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL

Defendants.

Civil Action No. 1:16-CV-10386 (LTS)

## JOINT REPORT

WHEREAS, on May 25, 2018, the parties in this action (the "ICT Action") filed a Joint Report to the Court Regarding Mediation [Styller ECF 154], expressing their interest in mediating all issues in dispute before a Magistrate Judge of this Court, and requesting that "all other procedural and administrative aspects of the matter be stayed *sine die* until the conclusion of mediation, with the understanding that the current Scheduling Order will be amended accordingly in the event that the mediation does not resolve all issues in the case";

WHEREAS, on May 29, 2018, the Court entered an electronic order referring the ICT Action to Judge Dein for alternative dispute resolution [Styller ECF 157];

WHEREAS, on August 7, 2018, Judge Dein conducted a mediation with the parties to the ICT Action, but such mediation was unsuccessful;

WHEREAS, Ryan Quinn and his wife have filed a related action against the same defendants as are named in the ICT Action, in a case captioned: *Quinn v. Hewlett-Packard Financial Services Company* (D. Mass. 1:18-cv-10705) (the "Quinn Action");

WHEREAS, on August 9, 2018, almost immediately following the unsuccessful mediation in the ICT Action, defendants filed a Motion to Dismiss the Amended Complaint in the Quinn Action for Failure to State a Cause of Action (the "Quinn MTD") [Quinn ECF 12-13];

WHEREAS, as of September 26, 2018, the Quinn MTD was fully briefed and submitted to the Court for adjudication, with the parties thereto having filed their opposition, reply and sur-reply in connection with the Quinn MTD [Quinn ECF 26, 33, 36];

WHEREAS, on November 8, 2018, plaintiffs in the ICT Action filed a Motion to Restore Case to Trial Calendar and Amend Scheduling Order (the "Motion") [Styller ECF 168];

WHEREAS, on November 9, 2018, defendants filed a Response to the Motion [Styller ECF 169];

WHEREAS, the Styller plaintiffs and defendants hereby refer to and incorporate their prior submissions with respect to the Motion [Styller ECF 168-69];

WHEREAS, on November 13, 2018, the Court entered electronic orders in both the Styller and Quinn Actions (the "November 13 Orders") [Styller ECF 170-71, Quinn ECF 38], stating that the Court is persuaded that discovery in both Actions "should proceed on the same track," and ordering (1) that discovery in both Actions be temporarily stayed and (2) that the parties in both Actions file a joint status report in the ICT Action "stating whether all discovery in both actions should proceed now while the Quinn motion remains under advisement or await resolution of the Quinn motion"; and

2641101.1 108164-84842

WHEREAS, the parties have conferred in good faith, but have been unable to resolve their differences;

THE PARTIES HEREBY submit, pursuant to the November 13 Orders, their respective positions with respect to the continuation of discovery in the Styller and Quinn Actions during the pendency of the Quinn MTD:

### Styller & Quinn Plaintiffs' Position

Plaintiffs respectfully submit their joint position that discovery should resume in the ICT case, which had commenced but was then temporary stayed in favor of Defendants' proposed mediation. The parties then agreed to stay discovery "until the conclusion of mediation, with the understanding that the current Scheduling Order will be amended accordingly in the event that the mediation does not resolve all issues in the case." ECF No. 154.

Mediation having now concluded without resolving the matter, the scheduling order should be amended and discovery should resume as the parties had agreed prior to mediation. Defendants' motions to dismiss the Quinn case filed in in the interim should not affect discovery in the ICT case: even if the Court grants Defendants' motions, discovery in the ICT case would proceed.

It is also Plaintiffs' joint position that discovery should commence in the Quinn case in parallel with the ICT case. There is no stay of discovery in that case (except for the temporary stay pursuant to the November 13 Orders), and the pendency of a motion to dismiss does not automatically stay discovery, so there are no procedural impediments to commencing discovery there. Furthermore, as a practical matter, the Quinn case discovery will to a significant extent mirror the ICT case discovery and could proceed in parallel, avoiding duplicative discovery requests.

2641101.1 108164-84842

"A court may grant a stay of discovery for 'good cause shown,' Fed. R.Civ.P. 26(c)." NPS LLC v. Ambac Assur. Corp., 706 F.Supp.2d 162, 167 (D. Mass. 2010). The moving party bears the burden of showing good cause and reasonableness for a stay of discovery, which is akin to a protective order under Fed. R. Civ. P. 26(c)(1). See Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 789 (1st Cir. 1988). "To establish 'good cause' for a protective order under [Federal Rule of Civil Procedure] 26 (c), '[t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'") Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 (1981) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, p. 265 (1970)). Defendants have not demonstrated any "particular and specific" reasons why discovery should be further stayed in the ICT case, which has been pending since December 2015, or why discovery should be stayed in the Quinn case.

**Defendants' Position**

As set forth in the Motion, the Styller plaintiffs concede that the Quinn Action is a "related action" to the ICT Action and that the complaint filed by the Quinn plaintiffs is "based in large part on [the Styller] Plaintiffs' own complaint." [ECF 168 at 2]. For that reason, defendants advised the Court of their view that any discovery that may be required in the Quinn Action (should some part of it survive the MTD) ought to be aligned and coordinated with the discovery in the ICT Action.

In the November 13 Orders, the Court advised that it was "persuade[d] ... that the discovery in [the Styller] matter should proceed on the same track as [the Quinn Action] as well as provide for an opportunity for the Quinn plaintiffs to 'catch up.'" [ECF 170]. The question

2641101.1 108164-84842

now posed to the parties is whether any such coordinated discovery should proceed during the pendency of the Quinn MTD.[1] Defendants believe that it should not.

Discovery ought not to proceed for several reasons. First, discovery is generally not permitted during the pendency of a motion to dismiss, and neither the Styller nor the Quinn plaintiffs have demonstrated (nor can they) good cause that it should, or that some threat of irreparable harm might justify expedited discovery in the Quinn Action. Second, respectfully, the Quinn Amended Complaint is not likely to survive application of the relevant statutes of limitations, thereby obviating *any* need for discovery in that case. Finally, defendants have not yet joined issue in the Quinn Action. Answers, counterclaims, and third party claims (not to mention initial disclosures) have not yet been filed or exchanged in that matter. As such, permitting discovery to proceed in Quinn would require the parties to conjure up discovery about defenses, counterclaims, and third party claims that are, as yet, speculative and hypothetical. Conducting such blind (and, perhaps, ultimately unnecessary) discovery would be inefficient and would not serve the interests of the parties, the Court, or the Federal Rules—not to mention unnecessarily triggering the inevitable discovery disputes the Court would, no doubt, be asked to adjudicate in the interim.

First, deferral of discovery during the pendency of a motion to dismiss is the prevailing norm in federal court. *See Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018) ("This court, like others, would ordinarily defer discovery while a motion to dismiss is pending.") "It is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2005) (internal quotation

---

[1] The Quinn MTD was fully submitted to the Court on September 26, 2018 and defendants are available, in the event the Court so requires, for oral argument. Upon resolution of the Quinn MTD, defendants are prepared to expeditiously work to align both the Styller and Quinn Actions so that discovery may proceed on the same track.

2641101.1 108164-84842

omitted) (holding that a "stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources" and collecting cases). To overcome the presumption that discovery await resolution of a motion to dismiss, a litigant should seek leave for expedited discovery. *Jimenez*, 326 F.R.D. at 361. To "obtain expedited discovery, a party must show good cause. … Good cause exists if the request for expedited discovery is reasonable in light of all the surrounding circumstances, including the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity. … Therefore, without a risk of irreparable harm, expedited discovery is unwarranted." *Id.* (internal quotations omitted) (permitting expedited, albeit limited, discovery in an action to enjoin the U.S. Immigration and Customs Enforcement from detaining petitioners without due process, based on a finding that there was a threat of irreparable harm absent the requested discovery). Neither the Styller nor Quinn plaintiffs can suggest, let alone demonstrate, that any irreparable harm would result from awaiting the resolution of the Quinn MTD before proceeding with discovery in the normal course.

Second, the clear merit and dispositive nature of the Quinn MTD weighs in favor of not allowing discovery in the Quinn Action until resolution of that motion. The Quinn MTD calls for a straightforward application of the Massachusetts statutes of limitations which bar all of the claims in that action. Additionally, and in the alternative, the MTD illustrates that the Quinn Plaintiffs have not stated claims upon which relief can be granted because, for example, (a) they assert claims for breach of a contract to which they were not parties, (b) they fail to specifically identify a single fraudulent statement upon which their fraudulent misrepresentation claims could

2641101.1 108164-84842

potentially rest, and (c) they ask the Court to make a first-of-its-kind ruling that harm to one's co-worker is sufficient to give rise to a claim for negligent infliction of emotional distress. Under these circumstances, where the Quinn claims are defective on their face and they cannot demonstrate a likelihood of surviving the Quinn MTD, the most efficient approach would be to await resolution of that motion.

Moreover, because the Court is persuaded that the Quinn plaintiffs (should their case survive in any form) ought to be provided an opportunity to "catch up" to the ICT Action, permitting discovery to move forward now would, at the outset, be disproportionately weighted towards the Quinn Action because:

- the defendants would be required to prematurely file an answer, along with any counterclaims and third party claims they have;
- the Quinn plaintiffs (and third parties) would be required to file responsive pleadings;
- all parties in the Quinn Action would have to exchange Initial Disclosures; and
- all parties in the Quinn Action would then need to serve, object to, and respond to discovery.

All of these Quinn-centric steps would have to be taken before the Quinn plaintiffs could be deemed to have "caught up," and before discovery in the ICT Action could be re-instigated. And it would all be for naught if the Court were to grant the Quinn MTD, as it should. Either way, the obvious weakness of the Quinn claims, coupled with the disproportionate and immediate costs necessitated by proceeding with discovery in that case (as distinct from the ICT Action), confirms that the most prudent and efficient approach would be to await resolution of the Quinn MTD. Only then will it become clear if *any* Quinn-related costs might be warranted.

Third, in fairness, to require the Quinn plaintiffs to proceed with discovery at this juncture would require them to serve discovery requests and seek evidence concerning

7

affirmative defenses, counterclaims, and third party claims[2] not yet asserted. For example, in the ICT Action, both sides have issued Document Requests and Interrogatories focused on the other side's answers/counterclaims, and on the contents of their respective Initial Disclosures (*e.g.*, Styller Document Requests 5, 8-9, 31-32; Interrogatories 9-12). No equivalent pleadings or disclosures have yet been filed or exchanged in the Quinn Action.

Indeed, it is not only the parties to the Quinn Action that would be affected. In the event that the Quinn Action were not dismissed in its entirety (which it should be), defendants may seek leave to amend their Counterclaims in the ICT Action to include Ryan Quinn as a third-party counterclaim defendant. As the Court is aware, defendants have asserted counterclaims for contribution against Jade Cheng, Jason Yuyi, Cathy Yu, Alexander Styller and ICT (collectively, the "Styller Counterclaim Defendants") in the ICT Action.[3] Defendants allege that the conduct of each of the Styller Counterclaim Defendants contributed to the injury alleged by the others and their family members. In other words, not only is each of the Styller Counterclaim Defendants likely to be named as a third-party counterclaim defendant in the Quinn Action (if answers need be filed), but defendants may also seek to amend their Counterclaims in the ICT Action and/or to add Ryan Quinn as a third party in that action. It is not unreasonable to expect that, if the parties are compelled to initiate discovery prior to all claims being asserted, they will

---

[2] As an example, and as previously asserted in defendants' answers in the ICT Case, Integrated Communications & Technologies, Inc. ("ICT") contractually agreed, pursuant to the Referral and Revenue Share Agreement § 10.4, to indemnify Hewlett-Packard Financial Services (India) Private Limited ("HPFS India") and its affiliates, officers, directors, agents and employees. This contractual indemnity provision is applicable to the Quinn claims and defendants are likely to assert a third-party claim against ICT to indemnify them against each of the causes of action in the Quinn Action.

[3] The results of the 2018 inspection performed on the equipment seized by the Chinese authorities, which the Court ordered take place earlier this year, indicate all seized equipment traceable to the sale between HPFS India and ICT is genuine and not counterfeit. Some of the devices seized in China could not be authenticated as genuine; however, none of those devices was sold by HPFS India. Accordingly, devices which cannot be authenticated were obtained from some other source and one or more of the Styller Counterclaim Defendants and/or Quinn may be liable for the alleged damages suffered by one or more of the others and their family members—for having participated in the procurement or sale of this counterfeit equipment.

2641101.1 108164-84842

later seek to expand that discovery (and electronic searches) after learning the causes of action asserted against them and their available defenses. Such re-visitation of discovery and duplication of effort, plus attendant costs, would conflict with the dictates that the Court and parties "secure the just, speedy, and inexpensive determination of every action and proceeding" and that discovery ought to be "proportional to the needs of the case." Fed. R. Civ. P. 1 and 26(b)(1).

Contrary to the prejudice that all parties would experience if they were required to engage in costly 'double-blind' discovery involving claims not yet asserted, a brief pause pending resolution of the Quinn MTD would prejudice no party to these proceedings. That fact is underscored by plaintiffs' having forgone pursuit of any discovery for approximately two and a half months after the unsuccessful conclusion of mediation in the ICT Action.

\* \* \*

Accordingly, defendants propose that the Court enter an order staying all discovery in both the Styller and Quinn Actions pending resolution of the Quinn MTD.

Thereafter, defendants propose that, to the extent the Quinn MTD is granted in its entirety, the Court should order the parties in the ICT Action to meet and confer and, within ten (10) days, submit a Joint Report proposing an amended Case Scheduling Order.

In the event some portion of the Quinn Action survives the MTD, defendants propose that the Court order the parties in both the Styller and Quinn Actions to meet and confer and, within ten (10) days, submit a Joint Report proposing a joint Scheduling Order that will not only re-set the deadlines in the Styller Case Scheduling Order, but also allow all parties in the Quinn Action to "catch up," including but not limited to setting deadlines for answers, counterclaims,

9

third-party claims, and replies thereto, in addition to initial disclosures, initial discovery requests, and objections and responses thereto.

## CONCLUSION

The parties respectfully submit the above Joint Report for the Court's consideration.

**JOFFE LAW P.C.**
230 Park Avenue, 10th Floor
New York, New York 10169
(212) 309-8711
Attorneys for Styller Plaintiffs

By: *Dimitry Joffe*
    Dimitry Joffe

**CHOATE HALL & STEWART LLP**
Two International Place
Boston, Massachusetts 02110
(617) 248-5000
Attorneys for Defendants

By: *Michael H. Bunis*
    Michael H. Bunis

**STOPA & ASSOCIATES, LLC**
132 Central Street, Suite 209
Foxborough, Massachusetts 02035-2073
(508) 543-0600
Attorneys for Quinn Plaintiffs

By: *Mark T. Stopa*
    Mark T. Stopa