**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI,<br><br>                    Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL<br><br>                    Defendants. | Civil Action No. 1:16-CV-10386 (LTS)<br><br>**STIPULATION REGARDING ELECTRONIC DISCOVERY PROTOCOL** |

WHEREAS Alexander Styller, Integrated Communications & Technologies, Inc. ("ICT"), Jade Cheng, Jason Yuyi, Cathy Yu, Caroline Marafao Cheng, Pushun Cheng, Changzhen Ni, Junfang Yu, Meixiang Cheng, Fangshou Yu and Changhua Ni (collectively, "Plaintiffs") and Hewlett-Packard Financial Services Company ("HPFS"), Hewlett-Packard Financial Services (India) Private Limited ("HPFS (India)"), HP Inc. ("HP"), Hewlett Packard Enterprise Company ("HPE") (collectively, the "Corporate Defendants") and David Gill (with the Corporate Defendants, collectively, "Defendants") have agreed that it is necessary to enter into a stipulation setting forth an electronic discovery protocol for the production of electronically-stored information ("ESI"); and

WHEREAS a Preliminary Conference was held on October 20, 2017; and

WHEREAS the Court ordered the parties to meet and confer concerning an electronic discovery protocol;

WHEREAS the Court held a status conference on April 24, 2018, at which an ESI Protocol was discussed;

WHEREAS, on November 29, 2018 (the "November 29 Order"), the Court ordered that the parties submit a final ESI Protocol by no later than December 21, 2018;

WHEREAS the parties have met and conferred about an appropriate ESI Protocol and have reached agreement concerning certain terms of such a Protocol, but have been unable to reach agreement on other terms,

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned attorneys for Plaintiffs and Defendants that the parties shall adhere to the following electronic discovery protocol to the extent agreed to below, subject to Defendants' request for a discovery conference before this Court concerning outstanding discovery issues, as more fully described below.

I.   **Identification of Location of Potentially Relevant ESI, and Automatic Deletion Processes**:

   A.   **Plaintiffs:**

   1.   **Plaintiffs ICT and Styller**: Prior to 2014, ICT Company email was hosted on ICT Company virtual servers using Microsoft Exchange. Due to the small size of the environment, backups of the Microsoft Exchange mail data were maintained on locally attached USB drives and network attached storage devices.

   In 2014, ICT Company email was migrated to Microsoft Office 365 in 2014 for all current employees at that time. As of the time of the migration, the Individual Plaintiffs (Jade Cheng, Jason Yuyi, and Cathy Yu) were no longer employees of ICT, and their email was not migrated.  The only relevant custodian for whom email was migrated to Office 365 was Alex

Styller. Following the successful migration, the on-premise Microsoft Exchange Server was decommissioned and the storage devices used for backing up Exchange Server mailbox data were repurposed and overwritten. Plaintiffs have collected emails for Alex Syller fromthe files on Microsoft Office 365.  Plaintiffs will also search for relevant ESI in PST files, to the extent any exist, on available computer hard drives.  In addition, Styller has agreed to search his personal email account for relevant ESI, and to search his social media accounts using the methodology requested by Defendants.

For non-email data, ICT does not and has not previously provided centralized file server resources for user document data or shared data. Users maintain their own document data related to ICT Company business on one or more of the following: local computer hard drives, cloud data storage/sharing services such as Dropbox, or USB removeable hard drive or thumb drive. Plaintiffs will search for relevant ESI on relevant custodians' computer hard drives, USB attached hard drives, and cloud data storage/sharing services.

2.     **The Individual Plaintiffs (Cheng, Yuyi and Yu)**: Prior to the 2012 arrest and seizure, Individual Plaintiffs used ICT mailboxes (cheng@ictcompany.com, jade@ictcompany.com, cathy@ictcompany.com and jason@ictcompany.com) and communicated business information and documents using those email addresses. Their computers were seized by the Chinese police at the time their arrest, damaged, not used by the Individual Plaintiffs after their release, and disposed of through sale to a computer repair company in China. Plaintiffs will search for relevant ESI in these custodians' files in PST files, to the extent that any reside on available hard drives or USB drives.  Some emails from Jade Cheng have already been collected in this fashion.  ICT has located several drives containing additional computer images and backup files for unknown custodians, and will search those

images for relevant ESI to the extent that they are for relevant custodians.  In addition, all three Individual Plaintiffs have agreed to search their personal email accounts for responsive ESI, and to search their social media accounts using the methodology requested by Defendants.

      3.      The Individual Plaintiffs also used the "QQ" chat application to communicate with customers in China. QQ is a Chinese, web-based chat program.  Plaintiffs will search for relevant ESI in their QQ accounts, although it is not known at this time how long QQ chats are stored by the program and whether any relevant messages can still be retrieved

      4.      **The Family Plaintiffs** (except Caroline Marafao Cheng) did not have or use computers and have no ESI to search.

      5.      **Plaintiff Marafao Cheng** used her old computer to communicate during the relevant period by email carol-cheng@live.hk. She left that computer in China but all her communications are retained on the live.hk server. Plaintiffs will search for relevant ESI on that server.

      **6.**      **Call Logs:**  Plaintiffs have agreed to contact their cell phone carriers to obtain call logs for the relevant time period, although they anticipate that it may be impossible to obtain such records from Chinese cell phone providers.  Alex Styller is the only plaintiff who was in the United States during the relevant time period; his coverage was provided by AT&T and, later, Verizon Wireless.

      B.      **Defendants:**

      1.      Email

-<u>From 2009 until approximately March 2015</u>, leading up to the corporate split, HP hosted Microsoft Exchange user accounts for all of the Corporate Defendants using the "@hp.com" email domain ("Exchange Accounts").

      -During this timeframe, HP utilized three separate groups of servers to host the Exchange Accounts.  Each server group was an identical, current copy of the other servers, meaning an Exchange Account on the server existed live in three

4

places at any given point in time. Therefore, at any given point in time, any one user with a "@hp.com" account could access and retrieve his or her account because it existed in triplicate on three separate servers. As such, HP did not need to back-up Exchange Accounts, and indeed did not back-up Exchange Accounts or Exchange Account data.

-In order to host such a large volume of data, HP limited Exchange Accounts to a maximum capacity of 2GB of data per account. If an Exchange Account reached the 2GB storage limit, the user would no longer be able to send or receive emails. Users were individually responsible for maintaining sufficient storage space in their Exchange Accounts, which could be done by deleting emails or archiving emails to a local PST file. Unless a litigation hold was placed on the user's account, HP did not automatically retain the user Exchange Account data, nor did HP automatically delete user Exchange Account data, and HP did not provide server space for user PST files. As such, users would save PST files to local storage.

-From approximately March 2015 through November 2015, in anticipation of HP's corporate split, HP began migrating users from Exchange Accounts to Microsoft Office 365 ("365 Accounts"). 365 Accounts had 50GB storage limits. However, like Exchange Accounts, users remained individually responsible for maintaining sufficient storage space in their 365 Accounts, which could be done by deleting emails or archiving emails to a local PST file. Unless a litigation hold was placed on the user's account, HP did not automatically retain the emails, nor did it delete an active user 365 Account data and it did not provide server space for user PST files.

-Thereafter: Employees' exchange accounts are in the O365 environment, meaning that they are in the cloud.

The Corporate Defendants will search for relevant ESI in the relevant custodians' files existing on servers or in PST files, to the extent any exist, on their local drives.

2. Non-Email Data

The Corporate Defendants have not, during the relevant time period, maintained any central document management system. If non-email files (e.g., Word, pdfs, spreadsheets) were shared between employees, they were sent via email or a share drive.

The Corporate Defendants will search for relevant ESI on any share drives, to the extent any exist. The Corporate Defendants will also search the local company-issued hard drives of the relevant custodians for ESI that was not shared between employees.

**Defendants' Request for Discovery Concerning the Location, Sources and Preservation of Plaintiffs' ESI**

**Defendants' Position**

At the April 24, 2018 conference, the Court encouraged Plaintiffs to cooperate with Defendants in identifying the location, sources and preservation of Plaintiffs' ESI because Plaintiffs had not yet provided all of the information requested for inclusion in Section I of this ESI Protocol prior to that conference and because Defendants had raised concerns that significant ESI may have been spoliated by Plaintiffs. The Court indicated that Defendants had posed "fair questions" about ESI and that Plaintiffs could choose to answer them "the easy way or the hard way," either by further conferring with Defendants concerning the contents of an ESI Protocol or being the subject of discovery concerning these issues. (Tr. at 5.)

Shortly after the April 24, 2018 conference, the parties agreed to participate in alternative dispute resolution with Magistrate Judge Dein and not engage in costly electronic discovery during that time period.

The November 29 Order requires that the parties submit an ESI Protocol by no later than December 21, 2018. On December 10, 2018, Defendants sent Plaintiffs a letter setting forth the open issues concerning Plaintiffs' ESI (a copy of which is attached hereto as Exhibit 2). In sum, Defendants have posed questions concerning, among other things, (1) ICT's migration of email servers in 2014 which may have resulted in the destruction of all but plaintiff Styller's corporate emails, (2) Plaintiffs' discovery of USB drives that may contain email or other ESI, (3) Plaintiffs' use and preservation of non-email "chats," (4) the disposal of computers that were returned by the Chinese authorities to the Individual Plaintiffs, in addition to the Equipment, (5) the Individual Plaintiffs' use of personal, in addition to corporate-ICT, email addresses, (6) the Family Plaintiffs' use of email, computers, cell phones or other electronic devices, (7) search parameters for Plaintiffs' social media, (8) production of Alexander Styller and Jade Cheng's call logs, (9) the search of Plaintiffs' personal electronic devices, and (10) modifications to certain search terms.

Plaintiffs first provided substantive responses to the above on December 19, 2018, but have not provided sufficient answers concerning the above topics.

The November 29 Order sets deadlines for the parties to search for, review and produce documents, including ESI, but does not yet permit the parties to take depositions. The Joint Report submitted on November 28, 2018 anticipated that depositions would commence after the parties had completed their document productions. In light of Plaintiffs' failure to voluntarily provide information concerning the above topics and others addressed in the December 10 letter, Defendants respectfully request that they be permitted to serve discovery requests concerning these ESI-related topics, including (a) interrogatories to the non-corporate plaintiffs and (b) a notice of deposition, pursuant to Fed. R. Civ. P. 30(b)(6), to ICT.

Even careless or negligent destruction of evidence may warrant severe sanctions. *See Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 447 (1st Cir. 1997); *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996). Plaintiffs' bad faith is not required. *Id*. Here, it appears that plaintiffs may have destroyed significant sources of relevant ESI, including potentially the entirety of the Individual Plaintiffs' work emails and the computers that they used while selling the Equipment in China. Defendants simply request the ability to obtain detailed information about what sources and locations of plaintiffs' ESI still exist and the timing, method and manner of what was destroyed so that, if warranted, they may move for appropriate sanctions.

**Plaintiffs' Position**

Plaintiffs have been working diligently to provide the detailed information that Defendants seek, and have not refused to answer any question posed by Defendants. Nothing prevents Defendants from serving interrogatories concerning ESI-related topics.[1] Defendants have not identified any specific categories of information that Plaintiffs have failed to provide about sources of ESI or the timing, method, and manner of material that has been destroyed. There is no basis for the requested depositions at this time.

**Defendants' Request that Plaintiffs Search Their Personal Email Accounts**

**Defendants' Position**

Defendants have asked plaintiffs to identify their personal email addresses and the time periods they were active, and then search those accounts for relevant ESI. Plaintiffs have not agreed "because they did not use such accounts for ICT business."

Plaintiffs have alleged injuries of a personal medical, physical and psychological nature. Their personal email accounts are likely locations of ESI in which they may discuss any injuries that they have allegedly suffered, either among themselves, with family or friends or with healthcare providers.

Further, it presently appears—although not yet confirmed by plaintiffs—that ICT's 2014 email server migration destroyed all work emails except for those of plaintiff Styller. All of the emails of ICT's employees in China at the time of the Individual Plaintiffs' detention may be lost, making their personal email accounts the best (and perhaps only) email evidence available.

**Plaintiffs' Position**

Plaintiffs have agreed to search their personal email accounts for relevant ESI.

**Defendants' Request for Plaintiffs' Social Media**

**Defendants' Position**

Defendants have requested that plaintiffs produce the entirety of their social media posts and private messages, except that those plaintiffs that are not asserting a loss of consortium claim can withhold any posts or messages that are of an intimately romantic or sexual nature.

As examples, plaintiff Jade Cheng claims, in response to Interrogatories, that he "feels afraid to go out and interact with people and would rather hide at home. He has difficulty enjoying life and feels a sense of hopelessness. He no longer has any interest in having children, making money, making food and eating, celebrating holidays, and visiting relatives and friends.

---

[1] Plaintiffs note that, in response to an ESI-related interrogatory that Plaintiffs served on HP, Defendants objected on the grounds that such information would be provided by both parties in the ESI protocol. Plaintiffs have attempted in good faith to provide all of the information requested by Defendants at this time.

He is afraid to listen to calls, has suffered from decreased libido, and feels cold and unfamiliar with people. He has lost interest in making plans for the future, including in regards to his career and family." Likewise, plaintiff Styller claims, in response to Interrogatories that he "had a hard time working and communicating with others, and experienced other depression-like symptoms, such as apathy." Evidence concerning plaintiffs' interactions with others, making food and eating, celebration of holidays, time with family and friends and ability to communicate with others is highly likely to be found in their social media. Indeed, the above is a veritable list of the most popular reasons why people use social media. Given plaintiffs' allegations that they have difficulty communicating with others, the mere frequency of their posts and messages are highly relevant, in addition to the substance. The only data that should be shielded from discovery is intimate romantic or sexual content and, even then, those posts and messages are relevant for those plaintiffs asserting a loss of consortium claim.

**Plaintiffs' Position**

Plaintiffs have agreed to search their social media accounts using this methodology.

### C.     Relevant Time Frame

For Defendants, the relevant timeframe extends from January 1, 2010 to December 31, 2014.

For Plaintiffs, the relevant timeframe extends from January 1, 2010 to present.

## II.     Identification of Potentially Relevant Types and Sources of ESI and Whether the ESI is Reasonably Accessible.

### A.     **Reasonably Accessible Sources of ESI**. 

The parties agree reasonably accessible sources of ESI include active and archived e-mail accounts, shared network drives, text messages, document management and storage systems, workstation and laptop hard drives, PDAs, external hard drives, and all other electronic storage devices and media, including all on-site, off-site, and cloud computing storage devices and media and flash drives. Each party will conduct a diligent search of those reasonably accessible sources in which it has reason to believe relevant ESI responsive to the opposing party's discovery requests will be found.

B. **Inaccessible ESI**. The parties agree that the following ESI is not reasonably accessible:

1. Backup tapes and systems created for the sole purpose of disaster recovery; provided, however that this provision shall only apply to the extent that there are other avenues to search for, and produce, relevant ESI;

2. Voicemail, except for voicemail that is converted to text and forwarded to the recipient's email account, if any;

3. Instant Messaging, except for instant messaging that has been logged in the ordinary course of business, if any, and social networking data.

4. Residual, deleted, fragmented, damaged, or temporary data (e.g., data stored in a computer's RAM); and

5. Encrypted data/password protected files, where the key or password cannot be ascertained after reasonable efforts.

III. **Implementation of a Preservation Plan for Potentially Relevant ESI.** The Parties, understanding the necessity of preserving and capturing all relevant data and information on the hard drives or other physical media using forensic methods, agree to use reasonable best efforts securely maintain, and not destroy or delete electronic data, including email, whether on back-up tapes, computer hard drives, servers, or other physical media to the extent that they currently exist and may contain potentially discoverable information. The parties represent that they have put in place an appropriate litigation hold notifying personnel with custody of potentially discoverable documents and/or ESI to suspend any disposal or deletion of documents and/or ESI pursuant to existing document retention policies and shall send regular retention notice reminders to those employees of their continuing obligation to preserve such information.

IV. **The Scope, Extent, Order and Form of Production.**

A. **Paper**. Paper documents will be produced as images. The images will be in black-and-white, single page, 300 DPI, Group IV TIFF images. Each party will accommodate reasonable requests for production of images in color. At the option of the producing party, images of paper documents may be organized according to the manner in which they were maintained in the ordinary course of business, including, where available, copies of file folders, envelopes, or labels or other identifying marks on the containers in which the documents were maintained, or they may be organized and labeled to correspond to the categories in the document requests. The parties also agree to perform OCR on their paper documents, and to produce images with accompanying full text as a .txt file.

B. **ESI**.

1. Except as noted below, each party will produce all ESI in image format only, adhering to the specifications noted above for paper documents (i.e., as black-and-white, single page, 300 DPI, Group IV TIFF images). In the case of email that is a parent document within a user's mailbox (i.e., contains attachments such as other documents or emails), the email and attachments shall not be separated. Emails and attachments containing privileged information shall be produced with the privileged information redacted and logged as discussed below (Section 3).

2. To the extent practicable, each document produced that is derived from ESI shall be accompanied by a corresponding document level text (.txt) file with full text that is extracted from the electronic file. When extracted text is not

available or where a document is partially redacted, OCR, rather than a text (.txt) file will be provided. In the case of email, the corresponding text file shall include header information including: (1) the individual to whom the communication was directed (TO); (2) the author of the communication (FROM); (3) who was copied and blind copied on such email (CC and BCC); and (4) the subject line of the email (RE or SUBJECT). For redacted documents derived from ESI, OCR text will be produced in order to maintain the redaction.

3. The parties agree that ESI shall be produced with images accompanied by a separate cross-reference listing as a text (.txt) file that identifies the document custodian for each production set by a single production Bates Range per source, or by a load file designating the custodian for each document. The parties also agree that ESI produced as described herein is reasonably usable and is an acceptable alternative to organizing the images according to the categories in the document requests or as they were kept in the ordinary course of business.

4. Spreadsheets. Excel and other types of spreadsheets will be produced in native format. To the extent that print-outs or images of all or part of a spreadsheet were also maintained in static form (e.g., as a pdf attachment, a hard copy in a file, or as a .csv file), those documents will be produced as static images consistent with the specifications for production of paper. The file name of any file produced in native format will include an identifying Bates number.

5. Conversion Not Practicable. Due to the nature or complexity of storage of some ESI (e.g., ESI in proprietary applications), conversion to image

may be overly burdensome. The parties reserve the right to provide this ESI in a reasonable format.

6. Where TIFF images of certain documents (for example, PowerPoint files, or drawings) are not readable due to processing constraints, the parties may request their production in native or other appropriate format.

7. Metadata. The parties will not produce metadata absent a showing of the need for and relevance of such data in connection with specific document(s). The sole exception will be electronic mail, which shall be produced with the following metadata fields: to, from, cc/bcc, sent date and time, received date and time, subject, and attachment(s). The parties will preserve all original documents, including the associated metadata, except for data in metadata fields that are frequently updated automatically, such as last-opened dates.

C. **Organization of Production**. Images will be placed on CD, DVD, FTP site, hard drive, or other appropriate storage device and transmitted to counsel. Each image will be assigned a production number and a source index and image cross-reference file in .txt format indicating the begin/end document boundaries as part of each production. The producing party will provide a cross-reference file in Concordance DAT file format.

V. **Identification, Redaction, Labeling, and Logging of Privileged Or Confidential ESI**. Except as provided herein, documents withheld or redacted on grounds of attorney-client privilege, work-product immunity, or any other privilege or immunity will be identified in a privilege log. Documents created after the original complaint was filed, if otherwise privileged, need not be disclosed on a privilege log and the failure to disclose such

documents on a party's privilege log shall not waive the party's claim to, or the protections afforded by, the attorney-client privilege, work product doctrine, or other privilege or immunity.

Documents redacted for any reason not covered by the preceding paragraph (e.g., personal identifying information such as Social Security Numbers) shall be identified on a redaction log and the basis for the redaction shall be set forth in the redaction log.

VI. **Claw-back**. A party's inadvertent disclosure in connection with this action that such party believes constitutes, contains or reflects information otherwise protected by any applicable privilege or immunity from discovery, such as attorney-client privilege and attorney-work product doctrine, shall not constitute a waiver, with respect to such material or generally, or any such privilege or immunity. In the event of such an inadvertent disclosure of privileged material, the producing party at any time may provide notice to the other party directing that all copies of such inadvertently disclosed material be returned to the producing party and barring the receiving party from using the material or any copies thereof, or any information derived therefrom this action or otherwise. The receiving party, upon such notice, must immediately set aside all copies of the material described herein and shall not use such material, or any information derived therefrom, provided, however, that the receiving party, after setting aside the material, may move, on reasonable notice, and on such grounds other than the inadvertent production of such material, for an order challenging the designation of such material as privileged, and may submit for an *in camera* inspection of the material in question.

VII. **Method for Searching and Reviewing ESI**.

    A. **Filtering.** In an effort to control costs and reduce the volume of ESI that is not relevant to the matter, the parties may filter ESI using the following techniques:

        1.     **Search Terms and Custodians.** The parties may use reasonable search terms to filter for relevancy prior to review and production. A list of search terms, list of custodians, and date parameters are attached hereto as Exhibit 1 and expressly incorporated herein. The parties agree that Plaintiffs will provide to Defendants, within three business days of filing of this Protocol, a list of all relevant languages and dialects that are applicable for each Plaintiff. Thereafter, Defendants will provide approved translations of all search terms in each applicable language to be applied to each Plaintiff's ESI.

        2.     **Duplicates.** The parties may remove duplicative ESI to reduce unnecessary cost of reviewing and producing duplicative ESI. A piece of ESI may be removed as duplicative only if it is identical to a piece of ESI that is being produced. For example, for two e-mails to be considered identical, the e-mail bodies and the e-mail attachments must all match. A party may de-dupe all e-mail across custodians. A party may de-dupe electronic documents, other than email, only within custodians.

B.    **Timeframe.**

        1.     **Rolling Production.** The parties will produce documents, including ESI, on a rolling basis, but in any case, shall meet Court ordered deadlines for production.

        2.     **Supplemental Production.** The parties reserve the right to supplement production, as needed.

VIII.    **Designation of Experts**. The parties have not designated experts at this time but will agree to engage reputable electronic discovery vendors to the extent necessary.

Case 1:16-cv-10386-LTS   Document 183   Filed 12/21/18   Page 15 of 15


IX. **Right to Request Additional Information**. The agreements set forth herein are without prejudice to the right of a requesting party to request additional information about ESI and discovery in accordance with the Federal Rules of Civil Procedure.

| JOFFE LAW P.C. | GIBBONS P.C. |
|---|---|
| */s/ Dimitry Joffe* | */s/ Anthony P. Callaghan* |
| Dimitry Joffe | Anthony P. Callaghan |
| 230 Park Avenue, 10th Floor | Paul A. Saso |
| New York, New York 10169 | One Pennsylvania Plaza, 37th Floor |
| T: (212) 309-8711 | New York, New York 10119 |
| *Attorneys for Plaintiffs* | T: (212) 613-2000 |
| | *Attorneys for Defendants* |

15

2598448.5 108164-84842