## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI, | Civil Action No. 1:16-CV-10386 (LTS) |

                                        Plaintiffs,

        vs.

HEWLETT-PACKARD FINANCIAL
SERVICES COMPANY, HEWLETT-
PACKARD FINANCIAL SERVICES (INDIA)
PRIVATE LIMITED, HP INC., HEWLETT
PACKARD ENTERPRISE COMPANY, and
DAVID GILL

                                        Defendants.

## JOINT REPORT

WHEREAS, the case schedule required the parties to produce all documents by April 15, 2019;

WHEREAS, the Court held a status conference on June 10, 2019, during which the Court ordered the parties to (1) make final document productions by no later than June 17, 2019 and (2) exchange privilege logs by no later than June 24, 2019;

WHEREAS, defendants made a final production of documents on June 17, 2019 and served their privilege log upon plaintiffs on June 24, 2019;

WHEREAS, plaintiffs anticipate producing additional documents and have not yet served their privilege log;

WHEREAS, to date, plaintiffs have produced a total of 791,141 pages;

WHEREAS, the Court held a status conference on July 12, 2019 (the "July 12 Conference"), during which the Court ordered the parties to further meet and confer and propose plans to address plaintiffs' production of a large volume of irrelevant and non-responsive materials; ordered plaintiffs to propose deadlines for their final production of documents and for serving their privilege log; and ordered parties to provide deadlines for motions to compel (defendants dispute that the Court invited any modification to the deadline for plaintiffs to file a motion to compel, see July 12, 2019 Tr. at 4 & 43);

WHEREAS, the parties have met and conferred following the July 12, 2019 Conference, and a true and correct copy of their email exchange is attached hereto as <u>Exhibit A</u>;

THE PARTIES HEREBY submit the Joint Report ordered by the Court:

I.   **Proposals Concerning Plaintiffs' Document Productions**

A.   **Plaintiffs' Proposal**

By April 15, Plaintiffs produced two initial sets of responsive documents (ICT001-ICT002), bearing bates numbers ICT0000001-ICT0003688. (By comparison, Defendants' total document production DEF001-DEF004 consists of documents bates numbered DEF0000001-DEF0002884.)

Plaintiffs then produced another eight sets of documents (ICT003-ICT010) bearing bates numbers ICT0003689-ICT0791141, which were, with a very few exceptions, the results of the searches of Plaintiffs' ESI conducted by their vendor Target Litigation using Defendants' search terms (the few exceptions include such additional documents as Plaintiffs' Facebook posts or medical files). The large number of documents responsive to Defendants' search terms made a document-by-document review extremely burdensome and unfeasible, particularly in light of Plaintiffs' limited resources and their being represented by two solo practitioners in this action.

2740690.2 108164-84842

As a result, a large number of irrelevant "spam" emails were admittedly included in Plaintiffs' ESI production, leading the Court during the July 12 Conference to order the parties to provide proposals as to how to better solve this situation. Dkt. 203. Following the July 12 Conference, Plaintiffs have formulated and tested the following proposal, which they believe to be a practical and reasonable solution to address Defendants' concerns.

Plaintiffs have requested their vendor to create a log of all the 227,425 ESI documents (produced in Plaintiffs' document productions ICT003-ICT010) in the form of an excel spreadsheet listing each document by its individual bates numbers and including for each document such information as the subject matter, sender, recipients, and date. Plaintiffs undertake to review the log and code each document as responsive or non-responsive based on this information, and provide the results of such coding to their vendor, which will create a load file electronically tagging each document as responsive or non-responsive based on Plaintiffs' designations. Plaintiffs will then provide the load file to Defendants to apply to Defendants' review platform containing Plaintiffs' produced documents.

Plaintiffs have already started reviewing the log based on the combination of the subject matter, sender, recipient and date, and are confident based on their preliminary review that this approach will eliminate all the "spam" documents included in their ESI production, as well as other types of non-responsive documents such as non-"spam" emails on irrelevant subjects, or emails among ICT employees or between ICT employees and third parties that are unrelated to this litigation, as well attachments to the non-responsive emails. Plaintiffs have also agreed that they would be precluded from relying on documents designated as non-responsive.

2740690.2 108164-84842

Plaintiffs believe that their proposal represents a reasonable and practical solution that would fully address Defendants' concerns. Plaintiffs also believe that each of Defendants' proposals, by contrast, would needlessly increase Plaintiffs' costs.

First, Defendants' proposal that Plaintiff index their produced documents by Document Request is considerably more burdensome than a manual document-by-document review for responsiveness.  Not only would Plaintiffs be required to review each of the 227,425 produced documents, but they would be required to manually cross-reference each responsive document to one or more of Defendants' 87 document requests, many of which requests are overlapping (and with many documents that could be deemed relevant to multiple such requests), and then manually create such an index. Such an indexing would be cost- and time-prohibitive, is not required by the rules, and is not necessary in light of Plaintiffs' alternative proposal.

 Likewise, Plaintiffs' proposal would eliminate the need for Defendants to conduct a TAR review of Plaintiffs' production (with Plaintiffs' bearing the costs of such review as Defendants demand, which Plaintiffs cannot afford) because Plaintiffs' proposed approach would result in a considerably reduced universe of responsive documents.

Finally, because Defendants are already in possession of all responsive documents, their proposal that Plaintiffs re-produce those documents would only serve to saddle Plaintiffs with additional unnecessary expenses of such reproduction. Instead, Plaintiffs propose to produce a load file of responsive documents that Defendants would use in their review platform to electronically tag Plaintiffs' produced documents as responsive or non-responsive.

### B.    Defendants' Proposals

Defendants propose three alternative proposals in an effort to assist the Court with selecting as an appropriate remedial measure to address plaintiffs' over-production of irrelevant, non-responsive (and largely spam/junk) documents (plaintiffs' 791,141 pages of documents,

4

collectively referred to as the "Data Dump"). Those three options are presented below, first, in summary fashion, and then, more fully explained thereafter:

1.    Defendants conduct a technology-assisted review ("TAR") of the Data Dump and plaintiffs are ordered to reimburse defendants for the cost of such review ("Defendants' TAR Proposal");

2.    Plaintiffs are ordered to index their Data Dump, by Bates range, listing documents that are responsive to each of defendants' Document Requests, but excluding First Requests 52, 54-59 & 66 and Third Requests 1-2 (the "Index Proposal"); or

3.    If plaintiffs believe that they are capable of conducting a more efficient and less costly full review of the Data Dump themselves, they conduct such a review (with or without TAR, at their option) and produce only responsive documents with Bates numbering following on from what they have already produced (the "Full Review by Plaintiffs Proposal").

## Defendants' TAR Proposal

Defendants could use the assistance of TAR, and engage contract attorneys to conduct a review of the Data Dump. Defendants have engaged Epiq for this work. As discussed at the July 12, 2019 Conference, TAR does not displace or make human review of a document production completely unnecessary. Rather, TAR makes human review of document productions substantially more efficient, by "elevating" documents likely to be responsive and relevant for a human review, and pushing likely non-responsive, irrelevant documents lower on the queue for human review. This process would enable defendants to identify relevant documents in the Data Dump without conducting a manual review of every document therein because the likelihood of finding responsive material at the end of a human review becomes statistically highly-unlikely, and cost and time inefficient.

Defendants obtained two estimates of a TAR review, based on two different assumptions— (1) 25% of the Data Dump is non-responsive and (2) 50% of the Data Dump is non-responsive. Based on those two assumptions, Epiq estimates that Defendants' TAR Proposal will cost

approximately $106,295 to $150,600.  Of course, further cost savings could be achieved if, under the most inappropriate of circumstances, it turns out that over half of plaintiffs' Data Dump is comprised of spam and otherwise non-responsive material.  The cost of Defendants' TAR Proposal is reasonable because Epiq sets the hourly rate for contract reviewers at $37 per hour, which is significantly less than the hourly rate of junior associates at Gibbons or Choate, and far below the $200 per hour that the Court estimated at the July 12, 2019 Conference.

Defendants propose that plaintiffs be responsible only for the actual cost of this TAR review based on the actual hours billed by Epiq, and not the additional time that will be spent by outside counsel managing the Epiq review or reviewing the relevant documents identified by the TAR review of the Data Dump.

**<u>The Index Proposal</u>**

Alternatively, defendants propose that plaintiffs create a chart that lists each of defendants' Document Requests to plaintiffs and provide a list of all of the documents, by specific Bates range, that are responsive to each Request.  Plaintiffs would not be permitted to provide only a sampling of such responsive documents, because such a sampling would not address the fundamental problem that relevant documents would remain buried and unidentified with the Data Dump.  To help guard against a failure by plaintiffs to identify responsive documents, plaintiffs would be precluded from later relying on documents that are not listed anywhere on the Index.  Ordering this preclusion would not be punitive or inappropriate given that plaintiffs' have agreed that they would forever abandon and be precluded from relying on the documents that they mark as non-responsive in their own alternative Email Subject Line Proposal.  (Ex. A.)

Plaintiffs take the position that the Index Proposal is "unreasonable and disproportionate" and "not required by the rules."  (Ex. A.)  To the contrary, Fed. R. Civ. P. 34(b)(2)(E) specifically

requires parties to "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Thus, the Index Proposal is one option that is available to any producing party and specifically contemplated by the Federal Rules of Civil Procedure. More specifically, courts commonly order a party that has engaged in a document or data dump to index their productions. *See, e.g.*, *Alford v. Aaron Rents, Inc.*, 2010 U.S. Dist. LEXIS 67790, at *65 (S.D. Ill. May 17, 2010); *Williams v. Tasser Int'l., Inc.*, 2006 U.S. Dist. LEXIS 47255, 2006 WL 1835437 (N.D. Ga. 2006); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610-11 (D. Neb. 2001) ("producing large amount of documents in no apparent order does not comply with a party's obligation under Rule 34"); Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) (stating that a party "may not excuse itself from compliance with Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition.").

**The Full Review by Plaintiffs Proposal**

If the Court or plaintiffs believe that plaintiffs are can review the Data Dump faster, more efficiently and/or at lower cost, the Court may also order plaintiffs to review their productions and then re-produce only responsive documents at the end of their current production (e.g., picking up at page 791,142).[1] Defendants anticipate and agree that plaintiffs could also use TAR to assist in their review of the Data Dump so that they too would not be required to review every document in determining what is responsive.

---

[1] Defendants believe that it would be disruptive to require plaintiffs to withdraw their current productions and re-produce all documents with new Bates numbers. To the extent defendants have been able to identify responsive documents in plaintiffs' current production and later wish to reference the same in submissions, depositions, or at trial, it would not be unhelpful if those productions were now withdrawn and renumbered.

**Response to Plaintiffs' Proposal**

Based on the correspondence between the parties following the July 12, 2019 Conference, defendants understand that plaintiffs are proposing that they review the subject line of the emails that they have produced in the Data Dump, and then designate each of the 228,616 documents produced as either responsive or non-responsive in a spreadsheet (the "Email Subject Line Proposal") based solely on such subject line descriptors and, perhaps, the senders and recipients of the emails.[2]

This proposal achieves some time and cost savings, but is a mere half measure and is ultimately not sufficient to remedy the harm caused by the Data Dump for several reasons.

Reviewing only an email's subject line will not always permit a reviewer to determine whether the email is, in fact, responsive. Not surprisingly, ICT's custodians often used generic email subject lines (as do many email users). Example subject lines from the actual Data Dump illustrate this point and demonstrate why plaintiffs' proposal is not adequate:

- "how was today?" (ICT 28619) is responsive; but "Call later today?" (ICT 20904) is not.
- "different option" (ICT 5) is responsive; but "Options" (ICT 242106) is not.
- "quick question" (ICT 21) is responsive; but "Quick question (KMM33949917V76455L0KM)" (ICT 15514) is not.

Further, just looking at the sender/recipient may not help. For instance, "question" (ICT 305990) is sent to a hotmail address, which might lead someone to believe it is spam, but it is about plaintiffs selling HP equipment in China. Of course, the reviewer would also be challenged to make a

---

[2]      Late in the afternoon, plaintiffs were still revising and modifying the contours of this proposal and confirming for the first time they propose to include a load file with their responsive/non-responsive designations that result from their Email Subject Line Proposal. The tardiness of these modifications have made it difficult for defendants to assess whether this proposal offers any time or cost savings whatsoever, but in any event, a cursory and haphazard review of nothing more than an email's subject line is, on its face, not sufficient to appropriately identify responsive material. Although TAR is increasingly being used in large litigations and approved by courts as a time-saving and cost-efficient method of reviewing large volumes of data, reviewing nothing more than an email's subject line still risks the overinclusion of spam and non-responsive materials, as well as the elimination of responsive ESI.

2740690.2 108164-84842

designation with respect to emails that have no description in the subject line and risk making the wrong judgment on emails that may have a subject line description suggestive of a specific topic, but the content of the email discusses a wholly different topic.  Lastly, defendants are unaware of how many documents within the Data Dump are non-email types of ESI or hard copy documents that were imaged and have no email subject line that would be available for review.

Nevertheless, some emails in the Data Dump could undoubtedly be screened out based on their subject lines alone, *e.g.*, "The World's #1 Male Enhancement Solution" (ICT 99997), and "Coke or Pepsi" (ICT 161602).  It is simply unknown at this time, what the volume of the Data Dump would be after the Email Subject Line Review, or to what extent the Data Dump would still contain spam or non-responsive documents even after such a review, for the reasons stated above.[3]

## II.      Discovery Deadlines

### A.      Plaintiffs' Proposed Deadlines

Plaintiffs propose to complete their privilege log and document production by August 9. With respect to the parties' motions to compel, Plaintiffs note that Defendants have not yet responded to Plaintiffs' 10-page letter dated July 12 setting forth numerous deficiencies in Defendants' document production, and propose that the parties' motions to compel be due on August 23, responses on September 6, and replies on September 13.

---

[3]      In the interest of finding common ground, defendants have also offered to plaintiffs (and the Court may so opt) to permit the Email Subject Line Review be conducted as the first phase of a review, to the extent that such an exercise would reduce the remaining volume of the Data Dump that would have to be later screened in a second phase of review.  If plaintiffs can effectively whittle down the Data Dump by conducting the Email Subject Line Review, the Court could then choose among the (1) Defendants' TAR Proposal, (2) Index Proposal, and (3) Full Review by Plaintiffs Proposal, to be applied against the remaining documents then designated as responsive.

2740690.2 108164-84842

## B.     Defendants' Position

Plaintiffs have not complied with the deadlines previously set by the Court.  They did not complete their document productions on April 15, 2019, nor did they comply with the amended deadline of June 17, 2019.  Plaintiffs have not served a privilege log, due June 24, 2019.  Those deficiencies, along with the significant harm caused by plaintiffs' Data Dump prevents defendants from reviewing and fully assessing plaintiffs' compliance with their discovery obligations and prevents defendants from filing a motion to compel on all issues in compliance with the current deadline of July 22, 2019.

Yesterday, plaintiffs proposed that their final document productions and privilege log be due by August 9, 2019.  Defendants do not object to this deadline.  Defendants further propose that the Court enter an order selecting which remedial measure to implement with respect to plaintiffs' Data Dump, and further set a deadline for the parties to submit a Joint Status Report in September to update the Court on the progress of those remedial steps.

Notwithstanding the above, defendants anticipate filing a motion to compel on July 22, 2019, directed to certain discrete issues that are not completely obscured by the Data Dump and are not wholly impacted by plaintiffs' failure to abide by other deadlines (*e.g.*, deficiencies in plaintiffs' Interrogatory Responses and plaintiffs' unequivocal refusal to produce documents in response to certain Document Requests).  Defendants propose to further update the Court on a proposal for a deadline for defendants' subsequent motion to compel directed at plaintiffs' deficiencies, if any, after the Data Dump has been remedied.

Further, plaintiffs yesterday suggested that their deadline for filing a motion to compel should similarly be modified, but defendants can conceive of no reason for why that should be the case, and oppose any such application.  The July 22 deadline was set based on a deadline of June 17 for final document productions and a deadline of June 24 for exchanging privilege logs.

2740690.2 108164-84842

Defendants complied with those deadlines.  Plaintiffs have not sought from this Court any extension of the July 22 motion to compel deadline and none is warranted.

Further still, defendants do not expect, and the Court should not entertain, any motion to compel filed by plaintiffs on July 22 because they have not met their mandatory meet and confer obligations, pursuant to Local Rule 37.1.

Following defendants last production of documents on June 17, plaintiffs lay dormant for nearly another month, until the morning of the next status conference on July 12, 2019.  That day, before 8:00 a.m., plaintiffs sent a letter purporting to set out new discovery deficiencies (*e.g.*, citing emails in defendants' production that cross reference other documents that may not have been produced, and issues with defendants' privilege log).  However, plaintiffs' July 12 letter did not invite resolution of the purported deficiencies and entirely omits the customary, and Local Rule-mandated, request for a meet and confer conference.  As such, defendants were under no obligation under Local Rule 37.1 to convene or attend such a conference.

As of this date, plaintiffs have still not requested, let alone convened or attended, a meet and confer conference with defendants concerning the contents of plaintiffs' July 12 letter. Accordingly, by virtue of their failure to invite the prerequisite meet and confer with defendants, plaintiffs cannot be heard to move on their grievances and should be precluded from making *any* motion to compel pursuant to the case schedule (requiring that such motions be filed on Monday).[4]

---

[4]      Even if the Court were to consider a potential motion by plaintiffs, there would be no basis for such a filing because, to the extent defendants have the specifically delineated non-privileged documents referenced in counsel's July 12 letter, defendants do not object to producing them.  Further, plaintiffs' concerns regarding defendants' privilege log have not been discussed or clarified by either side, and cannot be ripe for a motion until that happens.  It would also be inappropriate to hear plaintiffs' complaints about defendants' privilege log when they have failed to serve any privilege log of their own a full month after they were due.

2740690.2 108164-84842

Plaintiffs are not in compliance with their meet and confer obligations and have not met the predicate requirement to file a motion to compel, pursuant to Local Rule 37.1.

The Court should also not extend the time for plaintiffs to make a motion to compel because their failure to meet the pre-conditions for filing a motion to compel are of their own making. Defendants produced the vast majority of their documents by April 15 (over three months ago) and the remainder pursuant to the Court's order, on June 17.  Defendants served their privilege log on June 24, as the Court ordered.  Plaintiffs have had in their possession everything they need to review, assess, criticize, and meet and confer with defendants about any alleged deficiencies for weeks and, in most circumstances, for months.  A party should not be permitted to wait until the eve of a discovery motion deadline and, only then, *begin* the meet and confer process.  Here, plaintiffs have not even done that much, as they have yet to request a meet and confer conference.

## CONCLUSION

The parties respectfully submit this Joint Report concerning plaintiffs' document production and discovery deadlines for the Court's consideration.

**JOFFE LAW P.C.**
230 Park Avenue, 10th Floor
New York, New York 10169
(212) 309-8711

**THE LAW OFFICE OF JOSH MCGUIRE**
51 Winchester Street, Suite 205
Newton, Massachusetts 02461
(617) 461-6400
Attorneys for Plaintiffs

By: /s/ Dimitry Joffe
    Dimitry Joffe

**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York, 10119
(212) 613-2000

**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, Massachusetts 02110
(617) 248-4000
Attorneys for Defendants

By: /s/ Paul A. Saso
    Paul A. Saso

2740690.2 108164-84842

## <u>CERTIFICATE OF SERVICE</u>

I, Christina T. Lau, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing Joint Report was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on July 19, 2019.

/s/Christina T. Lau
Christina T. Lau

2740690.2 108164-84842