# EXHIBIT B

**GIBBONS**

Paul A. Saso

Gibbons P.C.
One Pennsylvania Plaza
37th Floor
New York, NY 10119-3701
Direct: 212-613-2171 Fax: (212) 290-2018
psaso@gibbonslaw.com

September 27, 2019

**VIA ELECTRONIC MAIL**

Dimitry Joffe, Esq.
Joffe Law P.C.
765 Amsterdam Avenue, 2c
New York, New York 10025

> Re: Styller, et al. v. Hewlett-Packard Fin. Servs. Co., et al.
> (D. Mass.) Civil Action No. 1:16-cv-10386 (LTS)

Dear Dimitry,

I write to memorialize our meet-and-confer telephone conference on September 23, 2019. In those instances where I note below that Defendants will endeavor to produce any responsive documents that are located, we will try to produce them to you as early as possible next week.

### I. Plaintiffs' Allegations With Respect to Document Collection

As an initial matter, the conference lasted a total of approximately two hours, and you spent a substantial portion of it inquiring about purported discovery issues that were not included in your July 12, 2019 letter and which, by order of the Court, you are precluded from raising in any potential renewed motion to compel. *See* ECF No. 239 (limiting meet-and-confer and renewed motion to compel "to the issues in the [July 12, 2019] letter"). Specifically, you asked repeatedly whether Defendants excluded HP Inc. ("HPI") and Hewlett Packard Enterprise Company ("HPE") from their document collection and production on the grounds that 2014 is the cut-off for Defendants' discovery in this matter and HPI and HPE did not exist until 2015. We repeatedly stated that that is not Defendants' position. To the contrary, Defendants collected documents pursuant to the ESI Protocol that was negotiated and agreed to by the parties. The parties agreed to the custodians to be searched, and Defendants searched those custodians' files and produced responsive, non-privileged documents from them, without regard to which company employed them. Accordingly, not only is this issue not the proper subject of a potential renewed motion to compel—since you admitted that it was not addressed in your July 12 letter—but in addition, your characterization of the issue is misguided.

In addition, we confirmed that Defendants' document production includes documents from custodians were employed by HPFS and who acted on behalf of HPFS India.

GIBBONS P.C.

Dimitry Joffe, Esq.
September 27, 2019
Page 2

Furthermore, you inquired as to why Defendants did not search other custodians' ESI. Your July 12 letter, however, does not assert that Defendants should have collected and searched the files of any additional custodians. As we repeatedly informed you during the call, the number and identity of Defendants' custodians was disclosed and negotiated with respect to the ESI Protocol and Plaintiffs agreed, prior to Defendants' collection, review and production of ESI, that it was appropriate to limit the scope of discovery to these custodians.

In any event, we reject your assertion that Defendants' searches of the six custodians were somehow inadequate because other individuals' names appear on Defendants' privilege log and/or on documents produced to Plaintiffs. Defendants reasonably believed at the time—and continue to believe today—that these six custodians are the core individuals with the most relevant personal knowledge about the facts underlying this litigation.

You also inquired about individuals who were disclosed in Defendants' Rule 26(a) as individuals who potentially have knowledge of the claims and defenses in this action, but were not included on Defendants' agreed-to list of ESI custodians, namely Jimmy Kwok and Meng Tao. As we explained, neither was an employee of Defendants.

As we explained to you, the fact that Defendants' production includes some limited emails from individuals not included as custodians in the ESI Protocol does not mean that they were inappropriately excluded. Merely receiving or sending a small number of emails related to this action does not open each of those individuals to a full ESI search of all of their data for multiple years, using the dozens of search terms that the parties negotiated.[1] And you have given us no reason to question the list of people Defendants identified as custodians. For example, nearly half of the 71 people identified in your July 12 letter are attorneys. Searching their documents would not appreciably increase the number of documents Defendants produce; it would likely only lengthen Defendants' privilege log.

Furthermore, you repeatedly suggested during the conference that Defendants only searched the files of four of their six custodians. That is not true. As I explained, the ESI Protocol permits the parties to use de-duplication to prevent the production of the same email that may reside in multiple custodians' files. The two custodians from which Defendants did not produce any *custodial* files are Stuart Patterson and James O'Grady. That does not mean that Defendants did not search and review their files. Rather, their files were de-duplicated against the other four custodians and they either had ESI that was wholly duplicative of the other four custodians or was otherwise withheld as privileged. Both Patterson and O'Grady sent or received dozens of emails

---

[1] Notably, Plaintiffs are similarly situated. There are multiple ICT employees (*e.g.*, an IT manager, warehouse manager, accountant) who sent or received emails that were produced by Plaintiffs, or appear on Plaintiffs' privilege log. Plaintiffs do not take the position that each of them should be added as ESI custodians in this case and all of their emails be searched for responsive documents. Instead, Plaintiffs take the position they identified the core witnesses with substantive knowledge of the claims and defenses in this action.

2753957.1 108164-84842

GIBBONS P.C.

Dimitry Joffe, Esq.
September 27, 2019
Page 3

that were produced to Plaintiffs, even if another individual is listed as the custodian of that ESI. Further, both Patterson and O'Grady are listed on Defendants' privilege log. Defendants fully complied with the ESI Protocol and produced all responsive, *non-duplicative, non-privileged* documents in all six of the custodians' files.

In sum, Defendants have satisfied their discovery obligations by, among other things, fully complying with the ESI Protocol and being fully transparent about which and whose files would be searched. If Plaintiffs wished to challenge the scope of Defendants' ESI searches, the time to do so was during the negotiation of the ESI Protocol.

## II.   Plaintiffs' Allegations of Particular Production Deficiencies

### A.   Origination of Equipment

You asserted that Defendants "have failed to produce the list of the original serial numbers of the equipment imported by Inspira and leased to Tata, the bill of entry, or any documents correlating the serial numbers with the bill of entry." (July 12 Letter ¶ 2(ii).)[2] We responded that, as the produced emails that you reference in the July 12 letter indicate, Defendants requested importation documents from Inspira multiple times in 2011, and Inspira was not responsive to those requests. We also reiterated that because the documents you seek are likely in Inspira's possession, Defendants stand on their objection that they are as accessible to Plaintiffs as they are to Defendants. Nevertheless, we are inquiring further internally to determine whether these documents are in Defendants' possession and will produce them if they are. Defendants do not object to the production of these documents to the extent they are located.

### B.   Return of the Equipment by Tata

You asserted that Defendants have not produced the "results" of purported "auditing" and "testing" that TT Global may have performed of the equipment returned by Tata (July 12 Letter ¶ 2(iv)), although you acknowledged that Defendants have produced inventories of the equipment. We informed you that the inventories likely constitute the "results" of any such "audits." As I noted, the "auditing" and "testing" that you are seeking was performed by a third party who may have knowledge or documents not in Defendants' possession. Furthermore, our understanding is that TT Global did not perform any authentication testing on the equipment.

You also asked whether HPFS or any other Defendant performed any inspection or authentication, and we reminded you that we applied the negotiated and agreed upon search terms to Defendants' custodians' files, and if any such documents exist within those files, Defendants

---

2   Defendants produced the document requested in paragraph 2(i) of the July 12 letter.

2753957.1 108164-84842

GIBBONS P.C.

Dimitry Joffe, Esq.
September 27, 2019
Page 4

produced them. Defendants did not object to the production of these documents. Defendants have simply produced what was yielded by the ESI Protocol.

We also noted that, in Section C.II of Plaintiffs' original motion to compel, Plaintiffs requested documents related to the review of the initial 2011 sale and "available evidence" cited in the draft March 2013 letter. However, the July 12 Letter does not make any reference to these documents and Plaintiffs are precluded from making them the subject of any renewed motion to compel.

### C. 2012 Inspection of the Equipment in India

You demanded that Defendants produce documents regarding Tom Harris's purported "inspection" of the equipment in India in 2012, including any pictures that Mr. Harris sent to other HPFS employees. (July 12 Letter ¶¶ 2(v), (vii) and (viii).) We informed you that we are inquiring further internally to determine whether these documents are in Defendants' possession and, if they are, Defendants will produce them in advance of the deadline for Plaintiffs' potential renewed motion to compel. Defendants do not object to the production of these documents to the extent they are located.

### E. Subsequent Disposition of the Equipment Not Delivered to ICT

You demanded that Defendants produce documents pertaining to (1) the results of H3C's inspection of equipment samples sent to it by TT Global after the Individual Plaintiffs were detained, and (2) the ultimate disposition of the equipment in TT Global's possession. The issue of sample transceivers was not raised in your July 12 letter, and Plaintiffs are precluded from raising the issue in any potential renewed motion to compel.

As to the disposition of the equipment by TT Global, the search terms that Plaintiffs proposed and Defendants agreed to included terms directed to TT Global, and we are confident that these terms would have yielded responsive documents concerning TT Global disposing of any remaining devices. Defendants did not object to the production of these documents. Defendants have simply produced what was yielded by the ESI Protocol.

### F. 2013 Inspection of Equipment Seized in China

You asserted that, other than a spreadsheet listing the limited number of Seized Equipment that were reviewed by Meng Tao in 2013, Defendants have not produced documents reflecting the "results" of his review.[3] We clarified for you that the partial inventory Meng Tao prepared is the

---

[3] This does not appear to have been directly requested in the July 12 letter. However, the letter does make reference to the inspection of the Seized Equipment in connection with Plaintiffs' objections to Defendants' assertions of privilege.

only written report concerning the Seized Equipment. You asked us to confirm that there is no correspondence about Meng Tao's partial inventory, and we informed you that we produced all responsive, non-privileged communications concerning that partial inventory.

You also inquired about documents relating to an "HP counterfeit investigation in China" regarding an independent third party, Shenzen Kingtech Co., Ltd. based on Plaintiffs' assumption that this equipment was from the same batch of equipment that was returned by Tata. We are inquiring further internally as to whether that is the case. If the equipment at issue with Shenzen Kingtech was not sourced from the same batch of equipment that was returned by Tata, Defendants object to producing any further documents on the grounds that it is not likely to lead to the discovery of admissible evidence. If the equipment with Shenzen Kingtech was sourced from the same batch, Defendants will make reasonable efforts to produce additional documents.

### H. Serial Numbers from TT Global

You inquired about the serial numbers from TT Global, referenced in an email from Jim O'Grady to Robert Cozzolina, dated February 5, 2013 (July 12 Letter ¶ 3(iv).) We informed you that we are inquiring further internally to determine whether these documents are in Defendants' possession and, if they are, Defendants will produce them in advance of the deadline for Plaintiffs' potential renewed motion to compel. Defendants do not object to the production of these documents to the extent they are located.

### III. Purported Privilege Issues

It is evident from our conversation during the conference that we have a fundamental difference of opinion as to the law applicable to Defendants' claims of privilege and the application of that law to the facts. Thus, although we were able to share and discuss our respective positions as to the application of the privilege, we were not able to reach any agreement.

First, although it is true that purely factual materials are not privileged, it does not follow that the privilege does not attach to factual information communicated to a lawyer. Rather, the law is clear that, if a witness communicates facts to a lawyer for the purpose of obtaining legal advice, that communication is privileged. Thus, although you would be permitted to question a witness about what they know about the facts, you may not question a witness about what the witness told their lawyer about those facts. Defendants' privilege designations carefully track this distinction. As we noted during the conference, we detached any non-privileged documents from withheld privileged communications and produced those documents while withholding the privileged communications.

Second, we disagree with your contention that Chinese privilege law applies with respect to the communications Defendants withheld as privileged. We inquired about the specific parameters of your claim that Chinese privilege law applies and whether it applies to all

GIBBONS P.C.

Dimitry Joffe, Esq.
September 27, 2019
Page 6

communications to/from China, but you declined to answer. In short, we do not believe that Chinese law applies and you have given us no reason to question that.

Third, contrary to your argument, the privilege applies to Defendants' communications with H3C. Specifically, as we explained during the conference, the specific privilege that applies depends on the particular communication at issue, and either the common interest privilege or joint representation privilege applies to the communications between Defendants and H3C. For example, in certain circumstances, David Gill may have provided legal advice to H3C, which would constitute a joint representation. Separately, Plaintiffs assert that there is no common interest privilege based solely on the fact that H3C was a separate and independent corporate entity. We do not believe the law supports that assertion.

Fourth, your claim that Defendants' privilege was waived because attorneys' communications were disclosed to non-legal personnel is plainly incorrect. It is well-settled that attorneys often must consult with non-legal personnel to obtain information to enable them to provide legal advice, and the non-legal personnel you have identified are exactly the kind of people with whom legal counsel would want to consult. Moreover, the law is clear that in the corporate context, even a communication from one business person to another business person is privileged if the purpose of the communication is to enable the corporation's lawyer to provide legal advice to the corporation. Although you asserted that you are "having trouble" seeing how communications with non-legal personnel are privileged, we stand on our position.

Fifth, we reject entirely your contention that the crime-fraud exception to the privilege applies. You have not met your burden to show that the pertinent legal advice was obtained to enable the commission of a crime or fraud, and the exception does not apply here.

## IV.   Deficiencies in Plaintiffs' Privilege Log

In addition to discussing Plaintiffs' July 12 letter, we also met and conferred concerning the deficiencies in Plaintiffs' privilege log and identified previously in my September 20, 2019 letter.

### A.   Failure to State Whether Communications Sought or Provided Legal Advice

Plaintiffs' privilege log does not state that the communications on the log were made for the purpose of seeking or providing legal advice. You must, however, include this information in your privilege log, and you must do so on a document-by-document basis. You asserted that doing so is unnecessary because you indicated which privilege (*i.e.*, attorney-client or work product) applies to each communication, but that logic is circular. You are asserting your *legal* conclusion first—that the attorney-client privilege applies—and then instructing Defendants to assume that, based on that, the communication must have been made for the purpose of seeking or providing legal advice. Plaintiffs have the analysis backwards. They must provide the *factual* information

2753957.1 108164-84842

GIBBONS P.C.

Dimitry Joffe, Esq.
September 27, 2019
Page 7

on a document-by-document basis first, stating (if true) that the communication was for the purpose of seeking or providing legal advice and that, based on that fact, Plaintiffs have asserted a privilege. Defendants must be given an opportunity to assess whether the privilege actually applies, and we must be given sufficient factual information to do so. Accordingly, we reiterate our demand that you specify whether each communication on your privilege log was made for the purpose of seeking or providing legal advice or was in anticipation of litigation.[4]

### B.   Plaintiffs' Waiver of Privilege

After we questioned your assertion of the privilege as to communications between Frederick Hite, who was Jade Cheng's immigration attorney, and third parties, you asserted that Mr. Hite jointly represented of Mr. Cheng and ICT. In particular, you stated that ICT sponsored Mr. Cheng's immigration application as an employee of ICT. We asked you to provide us with Mr. Hite's retainer agreement, and you have, but the retainer agreement identifies only Mr. Cheng as Mr. Hite's client. Accordingly, we reiterate our position that, by including third parties in their communications, Mr. Cheng and Mr. Hite waived privilege as to those communications. We demand that you produce all such communications.

### C.   Unidentified Individuals on Privilege Log

We asked you to clarify the identity of several people listed on your privilege log to assess whether the privilege was waived with respect to other withheld communications. You clarified that "Carol" Cheng is Caroline Marafao Cheng. You also stated that (1) the email address Hjfl13581924142@139.com belongs to Huang Jian, who was Chinese counsel for Jade Cheng, (2) references to Cheng Yong Guo and guoziyibai@163.com are to Jade Cheng, (3) Jen Tatybekova was formerly an accountant or bookkeeper for ICT, and (4) Marina Vasilyeva was an ICT employee who knew Chinese, and might have assisted Mr. Hite and Jade Cheng with translations. In addition, you stated that Tony Grabo and Tim Saripov are former ICT employees; Mr. Grabo was in IT, and Mr. Saripov was a warehouse manager. You asserted that Messrs. Grabo and Saripov were within the privilege, but you did not explain how.

### D.   Lack of Entries on Privilege Log

We advised you that there were several things lacking in Plaintiffs' privilege log, including communications:

- With Cathy Yu and Jason Yuyi;
- Prior to March 18, 2013;

---

[4]   We note that you confirmed that you are not asking Defendants to add a column to their privilege log identifying which privilege we are claiming with respect to each communication although we offered to do so during our call.

GIBBONS P.C.

Dimitry Joffe, Esq.
September 27, 2019
Page 8

- Concerning the ICT Email Migration, preservation of the Seized Equipment, destruction of the Individual Plaintiffs' seized computers, and preservation or loss of ESI;
- Concerning ICT's authorization to conduct business and employ individuals in Mainland China; and
- Concerning the Return Merchandise Authorization.

For each of the above, you told us that you ran the search terms in the ESI Protocol against ICT's email and logged the privilege documents that were yielded. When we provided you with the same explanation concerning how Defendants conducted their searches, you found it to be an unsatisfactory response. Yet, it is the very same answer that you provided when questioned about the deficiencies in Plaintiffs' privilege log.

### E.   Inadequate Subject Matter Descriptions

We maintain that the descriptions of the subject matter of the documents listed on Plaintiffs' privilege log are inadequate and must be corrected in order for Defendants to be able to assess Plaintiffs' claims of privilege. You agreed to further revise the descriptions in Plaintiffs' privilege log, including but not limited to where Plaintiffs provided a description only that the communication was with U.S. and/or Chinese counsel. You agreed to provide the subject matter that counsel discussed in those withheld communications. Please provide Plaintiffs' revised privilege log by October 4, 2019.

### F.   Absence of Communications with Third-Party Funding Sources

Defendants demanded that Plaintiffs log their communications with third-party funding sources, which communications Plaintiffs have asserted are privileged, but which are not reflected on Plaintiffs' privilege log. You stated during the conference that you disagree with the premise that such communications are relevant in the first place, and you suggested that this issue await the Court's decision on the pending order to show cause concerning Plaintiffs' potential third-party funding source(s). You stated that if the Court were to order that such communications are relevant, you will review them and log any privileged communications.

GIBBONS P.C.

Dimitry Joffe, Esq.
September 27, 2019
Page 9

                    Sincerely,

                    */s/ Paul A. Saso*

                    Paul A. Saso

cc:    Joshua McGuire, Esq.
       Michael Bunis, Esq.
       Mark Edgarton, Esq.

2753957.1 108164-84842