UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC. et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil No. 16-10386-LTS |
| HEWLETT-PACKARD FINANCIAL SERVICES COMPANY et al., | ) ) ) |
| Defendants. | ) ) ) |

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DOC. NO. 249)

November 15, 2019

SOROKIN, J.

Pending before the Court is the plaintiffs' Motion to Compel, Doc. No. 249.  The motion requires some explication of the events preceding its filing and its procedural posture.

I.    BACKGROUND

In January 2013, the Beijing, China police arrested Jade Cheng, Cathy Yu, and Jason Yuyi on suspicion of selling counterfeit computer products in alleged violation of Chinese law.  See generally Amended Complaint, Doc. No. 41.[1]  The Beijing police took these actions allegedly in response to complaints from H3C, which was then apparently a Chinese entity with some sort of relationship with Hewlett-Packard ("HP").  Eventually, the Beijing police released and exonerated Cheng, Yu, and Yuyi, all three of whom were employees of Integrated Communications and Technologies, Inc. ("Integrated").  In the course of the arrest and detention, the Chinese police

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.  Unless otherwise noted, the recitation of facts that follows is taken from the plaintiffs' Amended Complaint (Doc. No. 41).

apparently also had communications with HP China, another entity that then had some sort of relationship with HP.  In December 2015, Integrated, along with these three employees, filed suit in state court against Hewlett-Packard Financial Services Company ("HPFS") and Hewlett-Packard Financial Services (India) Private Limited ("HPFS India"), but did not name H3C, HP China, nor any other HP-related entities or employees in their suit.  See Doc. No. 1-1 at 7.  The defendants promptly removed the case to federal court and moved to dismiss.  Doc. No. 1; Doc. No. 19.  At a July 8, 2016 hearing on the motion to dismiss, counsel for the plaintiffs, Dimitry Joffe, requested the opportunity to amend the complaint.  Doc. No. 40.  The Court allowed this request and denied the motion to dismiss as moot.  Id.

The Amended Complaint filed by Attorney Joffe on behalf of the plaintiffs named only the same two corporate entities as the defendants—HPFS and HPFS India—though it did allege additional claims and set forth more factual allegations, than in the original complaint.  A renewed motion to dismiss followed the filing of the Amended Complaint.  Doc. No. 46.  Six months after the filing of the Amended Complaint and after extensive briefing on the motion to dismiss, but prior to a ruling from the Court on that motion, Attorney Joffe again sought leave to file a further amended complaint on behalf of the plaintiffs.  Doc. No. 64.  As a basis for the ever-expanding number of plaintiffs, defendants, claims, and factual allegations during the one-plus year the action had been pending, Attorney Joffe asserted that the defendants' "deceit" caused the delay in filing.  Id. at 2.  The Court denied this motion, inter alia, for "violation" of Local Rule 7.1(b)(1) and for "fail[are] to explain" the claims or parties they sought to add.  Doc. No. 67.  There was no basis in the record of the case for counsel's assertion of deceit causing a delay in seeking to further amend the complaint.  Nothing had prevented the plaintiffs from making in December 2015 the additional allegations they sought to advance thirteen months later in January 2017.  The Court also noted

concerns that portions of the proposed amended complaint may violate Rules 8 and 11. Id. The Court's denial was without prejudice, provided a renewed motion was timely filed. Id.

Within the time allotted by the Court, the plaintiffs filed a renewed motion to file a proposed amended complaint. Doc. No. 79. The proposed Amended Complaint sought to add as defendants Hewlett-Packard, Inc. ("HPI"), Hewlett-Packard Enterprise ("HPE"),[2] several employees of certain HP entities including the CEO of HPE (who had been the CEO of HP prior to its division into HPI and HPE, see n.2), and an outside law firm. Seven family members of the arrested employees, along with the CEO of Integrated, joined the proposed Amended Complaint as plaintiffs. Doc. No. 79-2. The proposed Amended Complaint contained the same typographical errors, the same missing citations, and the same violations of Rule 8 exhibited by the previously proposed amended complaint that the Court had rejected. Simply put, "Plaintiff failed to make any effort whatsoever to cure any, let alone all, of the violations of Rule 8." Doc. No. 95 at 14; see also id. at 2 n.2. The allegations of the proposed Amended Complaint did make one point clearly and repeatedly, however: the plaintiffs believed that their arrest by the Beijing police resulted from improper allegations of counterfeit sales of goods made by H3C, Doc. No. 79-2 ¶ 2, and their imprisonment was extended due to the improper actions (or the inaction) of various employees of entities related to HPI or HPE, reaching up to the highest levels of these entities, including the CEO. Id. ¶¶ 19–25. Although the Court allowed in part the filing of the Second Amended Complaint, the Court struck portions of it under Rules 8 and 12(f) and denied leave in some other respects under Rule 12(b)(6). Doc. No. 95 at 2 n.2, 8.[3]

---

[2] HPI and HPE resulted from the division of the predecessor legacy entity Hewlett-Packard on November 2, 2015, i.e., after the events in question but prior to the filing of this lawsuit.

[3] The operative complaint ("the Second Amended Complaint") filed after the Court's ruling on the motion for leave contained many of these same allegations, though the CEO no longer appeared as a defendant in light of the Court's ruling. Doc. No. 101.

Thereafter, the parties made initial disclosures, the plaintiffs brought the seized items to the United States for inspection by the defendants (an action ordered by the Court and resisted by the plaintiffs), and discovery commenced under an initial schedule issued by the Court. Doc. No. 144.  Under the then-governing schedule, the parties had until February 16, 2018, to serve requests for documents or interrogatories.  Id. at 2.  During this time, the parties negotiated and submitted to the Court an initial stipulation regarding the discovery of electronically stored information ("ESI") on April 6, 2018 ("the Original ESI Protocol").  Doc. No. 149.  The parties agreed to many, but not all, aspects of the Original ESI Protocol.  The plaintiffs demanded that the defendants designate as ESI custodians for purposes of the electronic search five individuals whom the defendants objected to so designating.  Doc. No. 149-1 at 3–4.  The five disputed individuals were: G. Daniel McCarthy, John Schultz, Meg Whitman, James Kwok, and Meng Tao.  Id.

On April 24, 2018, the Court reviewed various issues with counsel including the disputes over the ESI protocol.  As to proposed ESI custodian McCarthy, the Court observed that, for the time period McCarthy served as general counsel of HPFS, "plaintiff is entitled" to information from him, though the Court made no formal ruling on the dispute.  Doc. No. 272 (Hr'g. Tr.) at 58. As to proposed ESI custodians Schultz (HP's overall general counsel at the relevant time) and Whitman (HP's CEO at the time), the Court observed that the plaintiffs' requests as framed were "wholly unreasonable on the present record and wholly unsupported."  Id. at 69.  However, the Court proceeded to state "that they might have something [and] some targeted look, I leave to all of you to figure out," but the Court made plain that a general search of these two individuals' emails, iPhones, and documents was unwarranted.  Id.  Thereafter, the Court turned to other issues.

Just prior to the conclusion of the hearing, counsel for the plaintiffs raised the dispute about the final two proposed ESI custodians: Kwok and Tao.  Id. at 91.  Both individuals were either HP

China or H3C employees.  <u>Id.</u> at 91–92.  There was no dispute that both had at least some knowledge of events relevant to this lawsuit.  <u>Id.</u>  Defense counsel stated his position clearly and unequivocally:

- "HP China is a separate corporate entity . . ."  <u>Id.</u> at 92;

- "[W]e believe we can do a search of e-mails of those individuals that would be responsive, and we're willing to do so."  <u>Id.</u>;

- "[T]o the extent that there's something on the common system[4] that's responsive, very good; but we're not standing here saying to Your Honor that we're compelling HP China or that we're reaching through the corporate separateness to get HP China folks to be responsive.  That's not how it's going to be done."  <u>Id.</u> at 93;

- Defense counsel understood that the HP entities had a common email server permitting a search of emails of those two persons.  <u>Id.</u>

In light of these statements by counsel, and subject to defense counsel's caveat "if that understanding changes [about the common email server], we will let Mr. Joffe know," the lawyers for the parties reached agreement.  <u>Id.</u>  Defense counsel proceeded to remind the Court and plaintiffs' counsel that (1) the defendants were not agreeing to respond to discovery aimed at HP entities not parties to the action; and (2) that "there was no commonality between the HP e-mails and the H3C e-mails."  <u>Id.</u> at 93–94.  Attorney Joffe stated he was "satisfied."  <u>Id.</u> at 94.  The Court took no further action regarding the dispute over the proposed ESI custodians at that time.

A few weeks later, in May 2018, the parties sought mediation pursuant to the Court's mediation program.  The mediation, held on August 7, 2018, was unsuccessful, and Magistrate

---

[4] The Court then understood defense counsel to be referring to a central email server for all "@hp.com" email addresses, which for purposes of discovery was generally accessible to the entity defendants.

Judge Dein recommended that the case proceed toward trial.  Doc. No. 163.  The Court had entered no formal stay during the mediation.  Doc. No. 156; Doc. No. 170.  After the mediation, no party made any effort (at least none that is apparent to the Court) to move the case forward and apparently no discovery occurred for the remainder of August, all of September, and all of October. On November 9, 2018, the plaintiffs filed a motion to restore the case to the trial calendar and enter a revised schedule.  Doc. No. 168.  Because no stay had entered, this motion was denied as moot, and the Court reminded the parties that the existing schedule governed, though it noted they could file a request to adjust the schedule.  Doc. No. 170.

The parties thereafter proposed, and the Court entered, a revised scheduling order providing for service of final document requests or interrogatories by February 14, 2019, and completion of all paper and electronic discovery by April 15, 2019.  Doc. Nos. 177, 178.[5]  The parties jointly proposed these deadlines without dispute.  When the parties proposed a revised schedule, they also jointly proposed a revised ESI Protocol.  They submitted this proposed protocol ("the Final ESI Protocol") to the Court on December 21, 2018, Doc. No. 183, and the Court adopted it on January 2, 2019, Doc. No. 184.  Significantly, the Final ESI Protocol, like the Original ESI Protocol, referenced an attached exhibit listing the custodians whose ESI the defendants had committed to searching for responsive documents and information.  In contrast to the Original ESI Protocol, the parties agreed on the list of the defendants' custodians in the Final ESI Protocol.  Notably, this list did not include Kwok or Tao, among others.  Doc. No. 183-1 at 8. Neither in the Final ESI protocol nor in any other contemporaneous or subsequent filing with the Court did the plaintiffs object to the clear and unequivocal position taken by the defendants that

---

[5] The Court has made only one change to these discovery deadlines: it extended the time to complete paper and electronic discovery to June 17, 2019, largely to accommodate the plaintiffs' failure to complete their document production in a timely manner.  Doc. No. 196.

they would not search H3C email servers or produce documents (including email) from any HP entities not named in the action.[6]   The plaintiffs' now pending motion to compel cites only the Original ESI Protocol; it never cites, refers to, or even mentions the Final ESI Protocol, perhaps because much of what they now complain about they agreed to in that document, which the Court adopted without objection.[7]

During this course of events and despite the sweeping and sprawling nature of the Second Amended Complaint, the plaintiffs served only one set of document requests and one set of interrogatories on the defendants.   They served these requests on February 16, 2018, to which the defendants served their initial responses on March 16, 2018.   Doc. No. 144.   They have conducted no third-party discovery.

Neither after the parties' pause in the litigation for mediation, nor after the parties continued discovery under the revised schedule and the Final ESI Protocol, did the plaintiffs object to the list or identities of the custodians or entities whose files and information the defendants agreed to search.   To the contrary, the plaintiffs agreed that the defendants should search the ESI of six and only six specific custodians.   Doc. No. 183-1 at 8.   This agreement is especially significant because the plaintiffs previously sought the ESI of additional custodians, including two they seek now— Kwok and Tao—and reached an apparent agreement with the defendants governing production of that information.

---

[6] In the motion papers, the plaintiffs do not cite to raising the custodian issue with the Court at any time.   The Court understands the plaintiffs to have raised it only at the April 24, 2018 status conference.

[7] The plaintiffs do complain that the defendants improperly deduplicated items in contravention of the Original ESI Protocol, Doc. No. 249 at 11 n.6, but that complaint is utterly without merit, as the Final ESI Protocol supersedes the original and sensibly permits exactly what defendants did: dedupe email across custodians, while deduping non-email documents only within custodians.   Doc. No. 183 at 14.   In any event, the Original ESI Protocol permits the very same thing.   Doc. No. 149 at 14.

Though the Court resolved certain objections raised in the Final ESI Protocol filing, the plaintiffs affirmatively agreed to the list of custodians without challenge.  Indeed, all the objections came from the defendants and concerned matters unrelated to the pending motion.  <u>See generally</u> Doc. No. 183.  From the first, the plaintiffs were aware that the events underlying the arrest of Cheng, Yu, and Yuyi in some way touched upon multiple corporate entities across the globe using the HP brand.  The plaintiffs made this a centerpiece of their proposed Second Amended Complaint. Doc. No. 79.  Yet, the governing ESI protocol provides that the "<u>Corporate Defendants</u> [defined to include only the named defendants in the litigation] will search for relevant ESI [<u>only</u>] in the relevant custodians' [email]."  Doc. No. 183 at 5 (emphasis added).

Regarding non-email files, the governing ESI protocol provided that the entity defendants did not have any central document system, and that any sharing of non-email files occurred only when employees sent files "via email or a share drive."  <u>Id.</u>  The entity defendants agreed to search "any share drives, to the extent any exist" and "also [to] search the local company issued hard drives of the relevant custodians for ESI that was not shared between employees."  <u>Id.</u>  Plainly, this Final ESI Protocol did not require the entity defendants to search or produce responsive documents from: (1) the email files of anyone other than the six identified custodians, whether such persons were employed either by an entity defendant or by a non-entity defendant (such as HP China or H3C); or (2) HP China or H3C servers or hard drives.

That the governing ESI protocol so limited the search is unsurprising.  While the plaintiffs' only discovery requests defined "HP Entities" to include more than the defendants named in this lawsuit, Doc. No. 258 ¶ 3, the defendants' response objected to that scope and they offered to produce only from the actual defendants in the lawsuit, <u>id.</u> ¶ 8.  On March 28, 2018, the plaintiffs sent the defendants a letter describing deficiencies with the defendants' document production, but

the letter did not object to the defendants' limitation of the scope of the discovery only to actual defendants.  Doc. No. 258-1.  On April 26, 2018, the parties met and conferred about the issues raised in the plaintiffs' letter.  Doc. No. 258 ¶ 6.  During this meet and confer, the defendants explained that the plaintiffs' "definition of 'HP Entities' included more than just Defendants, and that Defendants could not and would not produce documents from entities (even within the HP corporate family) other than themselves."  Id. ¶ 8.  The plaintiffs did not further object to the defendants' limitation on the scope of discovery during the meet and confer.  Id. ¶ 9.

As noted above, defense counsel plainly and unequivocally repeated this position on the record in court at the April 24, 2018 status conference regarding the Original ESI Protocol.  This occurred just a few weeks after the meet and confer.  The plaintiffs did not object to that position then, other than regarding the inclusion of Kwok and Tao as proposed custodians discussed above, and subsequently never objected about or raised the defendants' limitation of discovery to the named entity defendants with the Court.  To the contrary, they agreed to the Final ESI Protocol, which conformed to the defendants' position, without objection.  While defense counsel had offered to produce emails regarding Kwok and Tao from the common email server based on his then "understanding" of the defendants' email server structure, the parties submitted a different agreement to the Court in the form of the Final ESI Protocol.  When the parties returned to the Court with this revised ESI protocol and a revised schedule in late 2018, the plaintiffs never raised the issue of the revised list of ESI custodians; rather, they joined in urging the Court to adopt the Final ESI Protocol, which excluded HP China and H3C from the scope of the searches and excluded Kwok and Tao from the list of custodians.

Pursuant to the adopted scheduling order, the parties agreed to complete document production by no later than April 15, 2019.  Doc. No. 177 at 3.  The defendants commenced their

document productions, making their first production on January 30, 2019, a second production on March 27, 2019, and a final production on April 15, 2019.  The defendants served their amended responses to the plaintiffs' document requests on March 27, 2019, and their amended responses to the plaintiffs' interrogatories on April 17, 2019.  Doc. No. 194 at 3.  While the defendants made timely document productions, the plaintiffs raised concerns about certain deficiencies they believed were present in those productions.  Id. at 3.  On March 29, 2019, the parties met and conferred to address the plaintiffs' identification of deficiencies in the defendants' objections and responses, to which the defendants' responded by filing amended objections and responses on April 17, 2019.  Id.

The plaintiffs then filed a status report with the Court on June 4, 2019, stating that there were deficiencies with the defendants' document productions; this report does not specifically complain about a failure to search H3C or HP China for documents.  Doc. No. 195.  Then, prior to a status conference before the Court on July 12, 2019, and with a looming July 23, 2019 deadline for filing motions to compel, the plaintiffs sent a letter to the defendants alleging deficiencies in the defendants' document productions.  Doc. No. 242-11.  Though this letter complains about the "paucity" of documents produced, identifies specific documents that ought to be produced, and suggests support for the conclusion that other discoverable material exists, it never expressly requests a search of files held by HP China or H3C.

On August 23, 2019, the plaintiffs filed a motion to compel, Doc. No. 234, which the Court denied without prejudice and with leave to renew subject to: (1) the parties' meeting and conferring; (2) the plaintiffs' compliance with Local Rule 37.1(b); and (3) the restriction that any renewed motion to compel be "limited to the issues in the [July 12, 2019] letter."  Doc. No. 239. In so doing, the Court also denied as moot the defendants' motion to strike the plaintiffs' motion

to compel as untimely.  Id.  The plaintiffs subsequently filed their renewed motion to compel on October 8, 2019.  Doc. No. 249.  That motion is now ripe.

II.   DISCUSSION

The plaintiffs raise three primary complaints.  First, the plaintiffs argue that the defendants should search the files of eight additional custodians.[8]  The time for reopening electronic discovery has long passed.  The defendants disclosed persons with knowledge of the events in question in their initial disclosures.  The plaintiffs, who are not without their own knowledge of the defendants or their employees, agreed to the search of the files of the six employees identified by the defendants in the Final ESI Protocol.  They did not seek to add more custodians despite ample opportunity to do so both at the time and subsequently.  Indeed, they did not even seek discovery from all seven of the persons the defendants initially identified as persons with knowledge. Compare Doc. No. 249-5 at 4–6 with Doc. No. 183-1 at 8.  Nor did they serve supplemental discovery requests.[9]

This request is not the basis for a motion to compel, but for a motion reopen electronic discovery or to extend the expired deadlines for such discovery.[10]  The plaintiffs have not established good cause for either request, especially at this late date, in the face of their agreements to the parameters of electronic discovery governing this case and in light of their general lack of

---

[8] The plaintiffs' motion refers to Robert Cozzolina, Ian Fowlis, Gerri Gold, James Kwok, Richard Olson, Liu Rui, Meng Tao, and Ross West.  Doc. No. 249.

[9] Some of the proposed additional custodians were not identified in the defendants' initial disclosures.  The defendants refer to these individuals as the so-called "Executive Group" and includes Cozzolina, Fowlis, Gold, Olson, and West. Doc. No. 257 at 16.  The plaintiffs have maintained from the outset that the misconduct they allege was committed by various persons and that said misconduct ran all the way up to the CEO.  They made no apparent effort to pursue this in discovery, and they have not established that these additional proposed custodians have substantial discoverable information sufficient to warrant reopening discovery now.

[10] The plaintiffs recognize as much, conceding in a footnote that the "overarching problem" in their view with the defendants' production is the "exclusion as custodians of over a hundred" employees.  Doc. No. 249 at 14 n.9.  This "exclusion" is the direct result of the parties' agreement; in any event, even now, plaintiffs' counsel seeks only eight additional custodians, not the hundred plus referred to in the footnote.

diligence.  The Court further notes that it cautioned the parties at the April 24, 2018 conference to resolve electronic discovery matters early so as to not have to do the discovery "twice."[11]  Doc. No. 272 at 16.  As such, this request is DENIED.[12]

Second, the plaintiffs now argue that the defendants are required to produce documents from other related HP entities.  However, the plaintiffs elected not to name these entities as defendants and elected not to serve third-party discovery requests on these entities or to seek discovery by way of international treaties.  The plaintiffs initially requested that the defendants produce documents from other HP entities in the course of the parties' negotiation over discovery in 2018.  Compare Doc. No. 149-1 at 4 with Doc. No. 183-1 at 7–8.  The defendants refused to do so, but the plaintiffs never brought the dispute to the Court, except peripherally as it pertained to Kwok and Tao.  Ultimately, the plaintiffs dropped their request and joined the defendants in urging the Court to adopt the Final ESI Protocol that omitted any such requirement.  The plaintiffs could have pressed their request at any point during the discovery period.  They did not.  From well before filing this lawsuit, the plaintiffs were aware of the existence and involvement in some degree of other HP entities.  The plaintiffs' request to reopen discovery is too late.  There is simply

---

[11] Ironically, as far back as 2006, counsel for the plaintiffs, Dimitry Joffe, appreciated that the rise of electronic discovery along with the related rule changes "[a]s a practical matter . . . require advance planning in order to avoid the many potential pitfalls in the area of electronic discovery."  Warren R. Stern, Marc Wolinsky, Dimitry Joffe & Alison L. Plessman, *Electronic Discovery and the Proposed Amendments to the Federal Rules of Civil Procedure*, 6 SEC. LITIG. REP. 13 (2006).

[12] The plaintiffs argue in their memorandum that the defendants succeeded in excluding Schultz, Whitman, McCarthy, and Patterson as custodians based on the representation that they had no relevant information.  Doc. No. 249 at 11–12.  For authority, the plaintiffs cite the Original ESI Protocol.  Id.  At best, this reference paints an inaccurate picture.  While the plaintiffs accurately characterize the defendants' position back in April 2018, the Court made clear, at the status conference on April 24, 2018, despite the defendants' position, that the plaintiffs were "entitled" to certain discovery from McCarthy and that the plaintiffs could pursue certain focused discovery aimed at Whitman and Schultz.  Patterson was not then a person in dispute.  The plaintiffs additionally argue, citing the same Original ESI Protocol, that the defendants succeeded in excluding Kwok and Tao as custodians.  Doc. No. 249 at 12–13.  That is simply wrong.  At the conference, the parties reached an agreement as to these two custodians. Subsequently, months later, the parties proposed a Final ESI Protocol not listing Kwok and Tao as custodians.  The plaintiffs agreed to that list of custodians without objection or qualification.

no good cause to reopen discovery.  The Court also notes that the plaintiffs did not make either their request to compel the production of documents from other entities or their request to expand the number of custodians in their July 12, 2019 letter.  Thus, neither request is properly presented in the motion.  Like the plaintiffs' request to compel the production of documents from custodians not identified in the Final ESI Protocol, their request to compel the production of documents from other related HP entities is DENIED.

Third, the plaintiffs now recite numerous discovery requests in the form prescribed by Local Rule 37 followed by an argument that one or more documents that they seek must exist and ought to be produced.  They present no objection by the defendants for the Court to consider in evaluating the defendants' responses to those document requests (other than as noted above).  They have identified no deviation from the Final ESI Protocol committed by the defendants in the course of the defendants' search for documents.  In short, they have identified nothing to compel.  In addition, as noted above, the Court limited the scope of the plaintiffs' renewed motion to compel to the issues raised in their July 12, 2019 deficiency letter.  At least as to Interrogatory No. 5 and some of the document requests, the plaintiffs ignored that limitation but have established no basis for the Court to relax its requirement.  Thus, these requests are DENIED on that basis as well.

At best, the plaintiffs have suggested the possibility that reopening discovery by requiring the defendants to search the files of additional custodians or to search additional sources of ESI might reveal additional relevant documents.  The Court does not lightly reject their request.  It has considered the admonition of the first rule of civil procedure to construe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1; see also Fed. R. Civ. P. 26(b)(1) (requiring proportionality in discovery).  It is also mindful of the fact that the arrest and imprisonment in China of three persons for approximately seven months

13

underlies this lawsuit.  These are serious matters the plaintiffs bring to this Court.  The Court has

provided ample opportunity for the plaintiffs to develop their claims.  They filed or sought to file

five complaints between December 2015 and the present time, the last of which, partially allowed

by the Court, dramatically expanded the scope of the defendants and claims.  But the Court never

prevented the plaintiffs from naming any HP entity as a defendant.  The paper and electronic fact

discovery period itself has run from roughly December 2017 (not including an earlier period to

produce the seized equipment in the United States, which was resisted by the plaintiffs) without

interruption until the spring of 2019.[13]  The parties drafted and agreed to this schedule, which was

revised post-mediation as the parties jointly proposed.  The parties also jointly agreed to the

governing ESI protocol.  The plaintiffs lodged no objections to that protocol.  They never requested

the Court to require the defendants to search more locations and ultimately agreed to the number

and identities of the custodians to search.  The Court has never prevented the plaintiffs from taking

discovery from any custodian or entity.  The Court also cautioned the parties to resolve electronic

discovery issues in advance given the expense involved and the burden posed by doing such

discovery "twice."  Doc. No. 272 at 16.  Now, in the guise of a motion to compel, the plaintiffs

seek to reopen discovery.  After careful consideration under the totality of the circumstances, this

request is DENIED.

One final point is worth noting.  The plaintiffs have not pointed to any specific failure on

the part of the defendants to follow the Final ESI Protocol—indeed, they do not cite to the Final

ESI Protocol at all in their motion.  See generally Doc. No. 249.  But because of the seriousness

of the allegations at the heart of this action, the Court, sua sponte, required the defendants to

---

[13] The Court notes that this was a period for paper and electronic discovery only.  Pursuant to the phased schedule crafted by the parties, the parties contemplate depositions at a later point in the litigation process.

provide supplemental information detailing the sources of ESI they searched and the methods according to which they conducted their searches.  See Doc. No. 276.  Having reviewed the defendants' response (Doc. No. 279), the Court is satisfied that they have met their discovery obligations under the Final ESI Protocol.

Several privilege issues require brief discussion.  First, the plaintiffs urge the Court to reject virtually all the defendants' privilege designations on the ground that Chinese law applies, and it recognizes no such privilege.  The Court rejects this argument as a general matter.  In addition, that Massachusetts privilege law governs in this diversity case in which the substantive law of Massachusetts appears to govern (a point not presently disputed by the plaintiffs) is well explained by the defendants in their memorandum.  Doc. No. 257 at 23–25.  Second, the defendants did not waive the privilege by engaging in otherwise privileged communications with other entities when those entities shared common interests such as international protection of HP brands, trademarks, and good will.  On this record and showing, nothing more is required.  Third, the plaintiffs have failed to provide the Court with a sufficient basis to warrant in camera review of even a "selection" of the privileged documents to determine whether the crime-fraud exception applies.  Fourth, while the plaintiffs advance general complaints about the defendants' privilege designations, they have failed to identify nonprivileged documents that defendants designated as privileged, or to identify any documents requiring in camera review.  Fifth, that many documents are designated as privileged and that much of the response to the arrest involved discussions seeking legal advice is unsurprising.  The plaintiffs' case focuses on a single sale transaction and the subsequent arrest and detention of three of the plaintiffs.  One would expect that the defendants' response to the arrest and detention arising from the sale of alleged counterfeit goods involved a substantial

amount of legal advice.  That the plaintiffs named in-house counsel as a defendant likely contributed to this phenomenon.[14]

Accordingly, the plaintiffs' Motion to Compel, Doc. No. 249, is DENIED.  Pursuant to the previously established schedule, Doc. No. 262 at 54, the plaintiffs have thirty days from the date of this Order to produce their expert report(s) regarding whether the goods at issue in this case were counterfeit.  The defendants have thirty days after service of the plaintiffs' report(s) to produce their expert report(s).  The parties then have thirty days for expert depositions.  In addition, at some point during this ninety-day period, the defendants may take a Rule 30(b)(6) deposition regarding their spoliation argument.  See id.  No other depositions are permitted without filing a motion and obtaining an authorization ruling from the Court.  Thirty days after the above expert discovery schedule, the defendants shall file their motion for summary judgment (if any).  The plaintiffs have thirty days to oppose the motion, and the defendants have ten days to reply.  In addition, within fourteen days of this Order, the parties shall file a joint status report setting forth their joint or separate positions for a schedule to govern the remainder of the litigation and whether any of that may occur prior to the Court's ruling on summary judgment.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[14] Nothing in the record before the Court suggests anything improper in the defendants' production of a copy of a "verification report" submitted to the Chinese police, while designating the drafts exchanged with counsel as privileged.  No privilege attaches to what was shared with the Chinese police.  The log indicates that the lawyers provided legal advice on the document as it developed.  These communications are privileged.  Whether a draft on an HP China server, for example, is privileged is not now before the Court.