**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL<br><br>                    Defendants. | Civil Action No. 1:16-CV-10386 (LTS) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE
COURT'S ORDER DENYING THEIR MOTION TO COMPEL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... i

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 3

ARGUMENT .................................................................................................................................. 6

I.      The Motion For Reconsideration Presents No Newly Discovered Evidence ......... 7

         A.      The "Missing" Emails .................................................................................. 7

         B.      Defendants' Share Drive ............................................................................. 9

II.     Plaintiffs' Supposed "New" Evidence Should Not Cause The Court To
Alter the MTC Order ........................................................................................... 10

         A.      Plaintiffs' "New" Evidence Is Inconsequential ....................................... 11

               1.      The "Missing" Emails .................................................................. 11

               2.      The Share Drive ........................................................................... 12

         B.      The Discovery Plaintiffs Seek Is Unconnected To Plaintiffs' "New"
Evidence .................................................................................................... 14

               1.      The Executive Group .................................................................. 14

                2.      H3C's Verification Reports ......................................................... 15

                3.      H3C's Cover Letter ...................................................................... 17

III.    The MTC Order Is Not "Clearly Unjust" ........................................................... 18

CONCLUSION ............................................................................................................................. 20

2766949.3 108164-84842

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Davis v. Lehane*,
  89 F.Supp.2d 142 (D. Mass. 2000) ........................................................................6

*Johnson v. J. Walter Thompson U.S.A., LLC*,
  2017 U.S. Dist. LEXIS 176815 (S.D.N.Y. Oct. 25, 2017) .....................................13

*Jones v. Bremen High Sch. Dist. 228*,
  No. 08 C 3548, 2010 WL 2106640 (N.D. Ill. May 25, 2010) ................................13

*Matya v. Dexter Corp.*,
  No. 97-cv-763C, 2006 WL 931870 (W.D.N.Y. Apr. 11, 2006) ............................12

*Mirmina v. Genpact LLC*,
  3:16CV00614, 2017 WL 3189027 (D. Conn. July 27, 2017)................................13

*Palmer v. Champion Mortg.*,
  465 F.3d 24 (1st Cir. 2006) ....................................................................................6

*Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
  685 F. Supp. 2d 456 (S.D.N.Y. 2010) ..................................................................13

*United States v. Allen*,
  573 F.3d 42 (1st Cir. 2009) ..................................................................................6, 8

*United States v. Sampson*,
  No. CR 01-10384-MLW, 2015 WL 13333677 (D. Mass. Nov. 13, 2015).........................6, 10

**Other Authorities**

*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles or Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018) ..........................................................................................................13

**Treatises**

11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995) .................................................................................................................6

Defendants submit this memorandum of law and Declaration of Paul A. Saso, dated December 10, 2019 ("Saso Decl."), in opposition to Plaintiffs' Motion for Reconsideration of the Court's Order Denying Their Renewed Motion to Compel [ECF 283] (the "Motion for Reconsideration" or "Motion").[1]

## PRELIMINARY STATEMENT

In order to succeed on this motion for reconsideration, Plaintiffs must, at a minimum, establish three things: (a) that there is new evidence, (b) that they could not have previously discovered the new evidence through due diligence, and (c) that this new evidence would compel the Court to come to a different conclusion than it did previously. Plaintiffs do none of the above. Instead, they go back and dust off old positions and arguments that have already been addressed and discredited—not least their knowing conflation of Defendants and H3C, a non-party to this dispute, in a clear attempt at misdirection for which they have already been cautioned by the Court.

The Motion for Reconsideration is directed only to (1) H3C verification reports, (2) the Executive Group, and (3) an H3C cover letter.[2] Plaintiffs' argument is limited to the contention that there is newly discovered evidence and that the MTC Order was clearly unjust. They do *not* argue that there has been an intervening change in the law or that the MTC Order was based on a manifest error of law or misapprehension of any material fact. Based on the facts and the applicable standard, the Motion for Reconsideration should be denied in its entirety.

In a comprehensive opinion, the Court denied Plaintiffs' Renewed MTC in its entirety, holding, among other things, that the Renewed MTC was not so much a motion to compel as it

---

[1]     The memorandum of law in support of Plaintiffs' underlying Renewed Motion to Compel [ECF 249] is referred to herein as "Renewed MTC"; Defendants' opposition thereto [ECF 257] as "MTC Opp."; Plaintiffs' reply [ECF 266] as "MTC Reply," and the Court's order denying the Renewed MTC [ECF 280] as the "MTC Order."

[2]     Plaintiffs do not ask the Court to reconsider the remainder of the MTC Order, including but not limited to any specific Document Request, or Interrogatory, or the Court's denial of Plaintiffs' challenges to Defendants' privilege designations.

was a "motion to reopen electronic discovery or to extend expired deadlines for such discovery."

(MTC Order at 11.)  The MTC Order largely rests upon Plaintiffs':

- agreement to the "parameters of electronic discovery,"
- "elect[ion] not to name [other HP] entities as defendants and elect[ion] not to serve third-party discovery requests on these entities,"
- failure to "present [any] objection by the defendants for the Court to consider in evaluating the defendants' responses,"
- failure to identify any "deviation from the Final ESI Protocol committed by the defendants", and
- "their general lack of diligence."

(*Id.* at 11-13.)

Not happy with that result, Plaintiffs declare that they have uncovered "new evidence" that justifies a motion for reconsideration of their Renewed MTC (filed on October 8, 2019).  That "new" evidence comprises nothing more than (1) Defendants' document production, which was largely completed in April 2019 with a final production of just nine documents a week prior to the Renewed MTC and (2) the parties' obligation to search additional sources of ESI, including share drives, which obligation dates back to April 2018.

Tacitly acknowledging that this evidence was in their possession all along, Plaintiffs argue alternatively that Defendants "hid" the "new" evidence in what Plaintiffs have previously described as Defendants' "miniscule" document production.  As yet a further concession that their position is belied by their months-long complaints about the size of Defendants' document production, Plaintiffs suggest that they were under no obligation to even review the production until they were put on "inquiry notice" that there might be something missing.  That admission— that they performed no diligence—when coupled with the Court's prior finding that Plaintiffs have exhibited a "general lack of diligence" (MTC Order at 11-12), is fatal to their Motion for Reconsideration.

The MTC Order rests, in large part, on Plaintiffs' agreement to the Final ESI Protocol, list of custodians and scope of ESI discovery.  Nothing about the "new" evidence undoes these prior agreements by Plaintiffs.   There is also nothing about the supposedly "missing" emails or Defendants' search of their share drive that raises any concerns about Defendants' compliance with their discovery obligations.  Defendants implemented and enforced an appropriate litigation hold notice, complied with the Final ESI Protocol by applying dozens of search terms to their email accounts, and interviewed and provided guidance about the existence of, and how to collect, any non-email data.  Moreover, Plaintiffs fail to explain how the "missing" emails or share drive are even connected to the discovery requests they now ask the Court to reconsider.

The circumstances about which Plaintiffs now complain are due to their own actions, decisions, and lack of diligence.  Plaintiffs ignored Defendants' pre-filing warnings not to waste the Court and the parties' resources with a baseless motion for reconsideration.  Plaintiffs filed their motion anyway and failed to establish any of the "limited number of circumstances" that must be present to justify the "extraordinary remedy" of a motion for reconsideration.  The Court should deny the Motion.[3]

## STATEMENT OF FACTS[4]

Defendants began their document productions on January 30, 2019 and largely completed them on April 15, 2019, pursuant to the case schedule.  (Saso Decl. ¶ 3.)  Just in advance of a status conference with the Court, Plaintiffs filed a Status Report on June 4, 2019, stating that there was

---

[3]    If Plaintiffs find themselves now "holding the bag after [being put] through the wringer," it is of their own doing; not the result of any decision of the Court, or act or representation by Defendants.

[4]    Defendants provided a full description of the history of Plaintiffs' discovery requests and Defendants' objections and responses thereto in the MTC Opp., which is incorporated herein.  Defendants supplement that statement here only with those facts further relevant to the Motion for Reconsideration.

3

a deficiency in Defendants' document production.   (*Id*. ¶ 4.)   Shortly following the June conference, Defendants produced documents that addressed Plaintiffs' concern.   (*Id*. ¶ 6.)

Just hours before the July 12, 2019 status conference with the Court, Plaintiffs sent a letter to Defendants regarding alleged deficiencies in Defendants' document productions.   (*Id.* Ex. B.) Defendants took the position that Plaintiffs had not requested a meet and confer conference in advance of the then-applicable July 22, 2019 deadline for the parties' motions to compel.   (*Id*. ¶ 9.) Plaintiffs filed a tardy motion to compel on August 23, 2019 (the "First MTC"), which the Court denied with leave to renew, but "limit[ed any renewed motion to compel] to the issues in the [July 12, 2019] letter."   [ECF 234 & 239.]

The parties met and conferred on September 23, 2019 (Saso Decl. ¶ 10) (the "2019 Meet & Confer") and Defendants sent Plaintiffs a letter memorializing that conference on September 27, 2019.   (Saso Decl. Ex. C.)   Defendants sent a further letter and produced nine additional documents on October 1, 2019.   (Saso Decl. ¶ 12; Joffe Decl. Ex. C.)   Plaintiffs filed their Renewed MTC a week later on October 8, 2019.

During the pendency of the Renewed MTC, the Court, *sua sponte*, issued an Order for Supplemental Information on November 7, 2019 [ECF 276], requiring that Defendants, *inter alia*, provide supplemental information detailing the sources of ESI that Defendants searched and the methods according to which they conducted their searches.   Defendants complied with that Order and filed a Report Concerning Supplemental Discovery Information on November 13, 2019 (ECF 279; Saso Decl. Ex. D) ("Defs' Supp. Report").   Defs' Supp. Report detailed their efforts to investigate and identify reasonably accessible sources of ESI that there was reason to believe might contain responsive data pursuant to the Final ESI Protocol [ECF 183].   Specifically, Defendants stated that they:

2766949.3 108164-84842

> required employees to upload all responsive non-email files (e.g., Word, pdfs, spreadsheets), as well as key correspondence, to a share drive both prior to and during Defendants' efforts to collect responsive ESI pursuant to the Final ESI Protocol. … The entirety of the contents of the share drive were reviewed in connection with Defendants' production of documents in this action. … All of the responsive, non-privileged documents in the share drive were reproduced to Plaintiffs.

(ECF 279; Saso Decl. Ex. D at 2.)  Crucially, it was the Court alone that inquired into Defendants' collection and production methods.  (Saso Decl. ¶ 15.)  Unlike Defendants, Plaintiffs chose not to serve any discovery requests concerning ESI-related issues or Defendants' compliance with the Final ESI Protocol.  (*Id.* ¶ 16.)

Separately, on November 12, 2019, after the MTC Opp. and MTC Reply had been filed, Plaintiffs contacted Defendants for the very first time about 17 email communications between Plaintiffs and Defendants that were purportedly not produced by Defendants.  (Joffe Decl. Ex. R.) On November 20, 2019, Defendants responded that (a) Plaintiffs' were barred from raising these discovery issues after the deadline for motions to compel had expired, (b) Plaintiffs were previously limited to the discovery issues raised in their July 12, 2019 letter and these communications were not the subject of that letter, (c) Plaintiffs' November 12 letter inappropriately inflates the number of emails in question from 12 to 17 by counting each email in a single email chain separately, (d) Defendants produced portions of 4 of the remaining 12 email chains, and (e) after conducting a renewed investigation, Defendants could not locate the remaining 8 non-substantive and inconsequential email chains.  (*Id.* Ex. U.)

On November 15, 2019, the Court issued an order denying Plaintiffs' Renewed MTC in its entirety [ECF 280].[5]

---

[5]     Plaintiffs decry their inability to bring the "new" evidence to the Court's attention prior to the MTC Order by suggesting that Defendants "resisted" their introduction of evidence concerning the share drive.  Not so. Defendants merely declined to consent to raising issues not presented in the Renewed MTC and not yet addressed by

## ARGUMENT

"When faced with a motion for reconsideration, a district court must balance the need for finality against the duty to render just decisions."  *Davis v. Lehane*, 89 F.Supp.2d 142, 147 (D. Mass. 2000) (citation omitted).  "[M]otions for reconsideration are appropriate only in a limited number of circumstances: [1] if the moving party presents newly discovered evidence, [2] if there has been an intervening change in the law, or [3] if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'"  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)).  "Unless the court has misapprehended some material fact or point of law, [a motion for reconsideration] is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected."  *Palmer*, 465 F.3d at 30 (citation omitted).  A motion for reconsideration should also "not [] be used as 'a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment.'"  *Allen*, 573 F.3d at 53 (quotation omitted).  Further, "[a] court will deny a motion for reconsideration based on the 'new evidence' exception if that evidence 'in the exercise of due diligence[ ] could have been presented earlier.'"  *Id.* (quotation omitted).  "In addition, to warrant reconsideration, any new evidence must be capable of causing the court to alter its original

---

way of a meet and confer.  (Joffe Ex. T) (which reads: "Defendants take no position as to your filing a 'response,' but caution that ECF 279 was submitted pursuant to an Order in which the Court made no reference to any need or justification for a response from Plaintiffs.").  In any event, Plaintiffs did not file a "response."

6

decision." *United States v. Sampson*, No. CR 01-10384-MLW, 2015 WL 13333677, at *3 (D. Mass. Nov. 13, 2015) (citation omitted).

## I.   <u>The Motion For Reconsideration Presents No Newly Discovered Evidence</u>

### A.   The "Missing" Emails

Plaintiffs argue that the Court should reconsider the MTC Order because "[s]ignificant new evidence has come to light that was not before the Court when it issued the Order … showing that there are numerous identifiable responsive emails and non-email files missing from Defendants' production…" (Motion at 1.)   In fact, there is no "new" evidence that has been uncovered subsequent to the filing or adjudication of the Renewed MTC.

In order to manufacture the required "new" evidence, Plaintiffs claim that the absence of 17 emails was not "readily available" and was somehow "hidden in Defendants' production." (Motion at 3.)   Plaintiffs argue that this was "hidden in Defendants' production" *on the very same page* of the Motion that they complain about the supposed "paucity" of documents produced by Defendants.   (*Id*.)   Indeed, throughout the Motion, Plaintiffs gripe that Defendants produced only 580 documents (*id*. at 2, 4, 5 n.3, 20) from "only four" custodians.   (*Id.* at 2 (twice), 4, 5, 8 (twice), 12 (twice), 16, 19 n.17, 20.)   It is simply not plausible to suggest that Defendants "hid" anything in this document production that Plaintiffs have, for months, denounced as "meager," "dismal" and "miniscule."   (*See* Saso Decl. Ex. G at 3, Ex. H at 1 and 2).[6]   The sheer fact that Plaintiffs sent Defendants a deficiency notice on July 12, 2019 (setting forth alleged deficiencies identified with precision—such as that certain emails did not include attachments) (*id*. Ex. B) undermines any

---

[6]      In July, August, October and November, Plaintiffs complained about the size and manageable nature of Defendants' document production.   (See ECF 219-3 at 1 & 3 ("paucity of internal documents," "meager production"); ECF 209 at 3 ("meager document production"); ECF 217 at 2, 4 (same); ECF 219 at 1, 2 ("dismal numbers," "miniscule production"); ECF 223 at 1 ("paucity," "miniscule production"); ECF 242-1 at 14 n.13 ("paucity"); ECF 266 at 4 n.6 ("small universe")).

claim that Plaintiffs were unable to review the totality of Defendants' production by the applicable deadlines.

And yet, Plaintiffs argue exactly that.  They claim that they were prevented from detecting the absence of these inconsequential emails from Defendants' production because Defendants did not produce their last document until October 1, 2019 (Motion at 10)—creating the false impression that Plaintiffs somehow were inundated with documents at the eleventh hour and were unable to timely discern the need to include this omission in the Renewed MTC one week later. In truth, Defendants had produced their documents by April 15, 2019 (nearly half a year prior) in accordance with the case schedule, and only produced additional documents thereafter in response to Plaintiffs' claimed deficiencies in those productions, including a final production of just *nine documents* on October 1.  (Saso Decl. ¶¶ 3, 12, 24.)

In a motion that requires them to establish that they exercised "due diligence" and that such diligence simply was not sufficient to uncover the relevant evidence (*see Allen, supra*, 573 F.3d at 53), Plaintiffs instead reveal that they performed *no diligence*, on the assumption that they were under no such obligation.[7]  Plaintiffs maintain that they were not obligated to review Defendants' document productions to detect and rectify any deficiencies until they were put on "inquiry notice" (Motion at 3, 10)—a position for which they provide no legal authority.  Plaintiffs' newly-minted "inquiry notice" requirement would effectively render deadlines for motions to compel meaningless (which may very well be the goal, given that two such deadlines have expired for Plaintiffs).

---

[7]     Had Plaintiffs taken the time and effort to review Defendants' production, surely the absence of an email that Plaintiffs deemed important enough to cite and quote in their Second Amended Complaint would have been immediately evident.  (Second Amended Complaint ("SAC") ¶ 86 and Joffe Decl. Ex. R ¶ 3.)

Thus, Plaintiffs have now taken the position in this action that they were neither under an obligation to review their *own* production prior to burying Defendants in 800,000 pages of mostly spam, nor apparently under any obligation to review *Defendants'* production, even half a year after receiving it.  Thus, it is not that Defendants "hid" or concealed the absence of certain emails that is noteworthy here; but rather that Plaintiffs neglected, or actively shirked and disclaimed, their responsibility to review Defendants' production prior to the deadline for filing their Renewed MTC.[8]  In the face of the requirement that they establish they exercised due diligence, Plaintiffs actually admit their position that they (1) were under no obligation to review the documents and (2) could not have discovered the absence of these emails from a 580-document production for half a year.  Neither is true.

### B.    Defendants' Share Drive

Plaintiffs also claim as "new" evidence that the Corporate Defendants' share drive was first "reveal[ed]" in Defs' Supp. Report on November 13, 2019.  (Motion at 2.)  But the fact that Defendants were obligated to determine whether any "shared network drives" might contain responsive ESI is not new:  that has been true since the parties negotiated and submitted the Final ESI Protocol on December 21, 2018, nearly a year ago.[9]  Moreover, the agreement to investigate and produce responsive ESI from "shared network drives" existed as long ago as April 2018, when the parties first negotiated the original ESI Protocol, which was later superseded (ECF 149; Saso Decl. Ex. F § II.A) (the "Original ESI Protocol").

Plaintiffs had every opportunity to meet and confer with Defendants about their sources of ESI and how the searches were conducted, but chose not to.  Plaintiffs never served a discovery

---

[8]     Even after Plaintiffs' counsel first discovered an email communication that was not included in Defendants' production only on October 25 (Motion at 4), Plaintiffs sat idly by for 18 more days, while the Renewed MTC was pending, before first contacting Defendants about this issue on November 12.  (Joffe Decl. Ex. R.)

[9]     This obligation applies equally to Plaintiffs.  (Saso Decl. Ex. E § II.A.)

request with respect to ESI issues generally, or concerning Defendants' share drive or compliance with Final ESI Protocol § II.A specifically.  (Saso Decl. ⁋ 16.)  It was not the subject of Plaintiffs' June 4 Status Report to the Court complaining of other alleged deficiencies, nor of their July 12 letter to Defendants.  (ECF 195 & 219-3; Saso Decl. Exs. A & B.)  Plaintiffs did not raise it during the 2019 Meet & Confer, and it was not the subject of either their First or Renewed MTC.  (Saso Decl. ⁋ 19.)  Although they addressed other discovery concerns at status conferences with the Court, this was never raised at any conference since the discovery phase of this action commenced. (*Id*. ⁋ 20.)  Plaintiffs exercised no diligence; they asked no questions; but yet, they now ask the Court to reopen discovery after two deadlines for their motion to compel have passed.

Finally, this is not "new" evidence because the MTC Order already took account of the existence of the share drive.  As the Court noted,

> plaintiffs hav[ing] not pointed to any specific failure on the part of the defendants to follow the Final ESI Protocol—indeed, they do not cite to the Final ESI Protocol at all in their motion. … [B]ecause of the seriousness of the allegations at the heart of this action, the Court, *sua sponte*, required the defendants to provide supplemental information detailing the sources of ESI they searched and the methods according to which they conducted their searches.

(MTC Order at 15.)  Thus, the MTC Order expressly considered, and was based in part upon, the disclosure of the share drive and the description of the methods by which Defendants searched it. By definition, that is not "new" evidence that was uncovered after the Court issued its order.

## II.   Plaintiffs' Supposed "New" Evidence Should Not Cause The Court To Alter the MTC Order

Plaintiffs must establish not only that there exists newly discovered evidence, but also that that evidence would have altered the Court's prior decision.  *Sampson*, 2015 WL 13333677, at *3. Plaintiffs make virtually no effort to connect the supposedly "new" evidence to the discovery items they would like this Court to reconsider.

Plaintiffs urge the Court to reconsider only two parts of the Renewed MTC: (1) discovery from Defendants' employees West, Gold, Fowlis, Olson and Cozzolina (the "Executive Group") and (2) documents concerning the "verification reports." (Motion at II.B.2 & 3.) In addition, Plaintiffs ask the Court to "reconsider" discovery concerning a cover letter sent by H3C to the Chinese authorities, despite not having requested anything related to that cover letter in the Renewed MTC, and only raising it for the first time in this Motion. (*Id*. at II.B.1.)

However, for all three categories of information that Plaintiffs ask the Court to "reconsider," not only is Plaintiffs' "newly discovered evidence" not new at all; it is also wholly unconnected to the discovery that Plaintiffs ask the Court to reconsider.

A.      **Plaintiffs' "New" Evidence Is Inconsequential**

1.      **The "Missing" Emails**

Plaintiffs do little to explain the significance of the 17 (actually 8) missing email chains other than to claim that they "undermine any confidence in the overall integrity of Defendants' email production." (Motion at 8.)

Not surprisingly, Plaintiffs spend little time discussing the contents of these email chains. Although Plaintiffs rarely miss the chance to accuse Defendants of pursuing "selfish interests," and having "outrageous indifference" and a "callous disregard" for the Individual Plaintiffs' detention (*see, e.g.,* SAC ¶¶ 73, 148, 229), these "missing" emails mostly reveal *plaintiff Styller's* over-riding preoccupation with obtaining an equipment refund at the same time Defendants and others were focused on securing the Individual Plaintiffs' release. Styller relentlessly inquires about when his refund will be processed (on March 13, 19 and 20, April 18 and 29, and June 5, 10, 12, 13 and 17, 2013 (Joffe Decl. Exs. D, E, F, G, H, I, J, K, L, M, N, O, P)), all while the Individual Plaintiffs remain in Chinese custody. Styller did not receive a response to several of

11

his emails (*id*. Exs. D, E, F, G, J, K, O), and even when he did, such responses were largely non-substantive (*id*. Exs. L, M, N), meaning that they are evidence of absolutely nothing.

To the extent Plaintiffs suggest that Defendants did not properly preserve their emails, that is also untrue. Subsequent to the issuance and acknowledgment of a litigation hold notice, all relevant ESI was properly preserved.[10] Prior to the issuance of a hold notice, however, there is nothing improper about custodians' deletion of ESI "as part of [their] regular business practices." *Matya v. Dexter Corp.*, No. 97-cv-763C, 2006 WL 931870, at *11 (W.D.N.Y. Apr. 11, 2006). Therefore, it can be assumed that custodians may have deleted some non-substantive, inconsequential emails in "real time" before the issuance of the litigation hold.

### 2. The Share Drive

Plaintiffs insist that the mere existence of a share drive means that there are "missing potentially smoking gun documents" and complain that Defendants engaged in "self-collection." (Motion at 2-3.)

First, the existence of the share drive does not mean that there are "smoking gun" documents not produced. If anything, Defendants merely confirmed in Defs' Supp. Report that they complied with the Final ESI Protocol and investigated, reviewed and produced non-privileged

---

[10] The issuance or date of a litigation hold notice was not the subject of the Renewed MTC, nor of any discovery request prior to one oral inquiry on November 25, 2019. In fact, even the current motion does not seek any information regarding litigation hold notices, written or oral. Specifically, Plaintiffs never inquired about Defendants' litigation hold notice until after the MTC Order, and did not even raise it in their November 12 letter concerning the "missing" emails. (Saso Decl. ¶ 25.) Plaintiffs posed one question about the timing of Defendants' litigation hold notice for the very first time during a call on November 25, 2019. (Saso Decl. ¶ 26.) Plaintiffs are simply attempting to give credence to and enhance the notion that emails missing from a six-month-old production constitute "new" evidence.

Plaintiffs also cite to an August 8, 2013 letter by Plaintiffs' counsel as evidence that Defendants should have preserved the 17 "missing" emails (Motion at 9-10), but all of those emails pre-date August 2013. (Saso Decl. ¶ 27.)

Plaintiffs also did not issue their own litigation hold notice until March *2016* (according to their own discovery responses)—over two years after Defendants did, and at least three months after they themselves commenced this litigation. (Saso Decl. ¶ 28.)

documents from the one additional potential source of ESI that they identified they had reason to believe contained responsive data.  (Saso Decl. Ex. D at 1-3.)  Far from "suppressing" evidence, Defs' Supp. Report disclosed that Defendants had found an *additional* source of ESI that Plaintiffs had not previously inquired about, and that Defendants produced all responsive, non-privileged documents from that source.  (*Id.*)[11]

Second, as the Sedona Principles set out, "Parties and courts must exercise judgment, made upon reasonable inquiry and in good faith, about the potential sources of discoverable information subject to preservation and production obligations."  *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles or Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 136 (2018). Indeed, "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."  *Id.* at 118.

Further, document custodians may assist counsel in identifying and collecting responsive ESI where counsel provides instructions to the custodians and explains a thorough search. *Mirmina v. Genpact LLC*, 3:16CV00614, 2017 WL 3189027, at *2 (D. Conn. July 27, 2017).  The cases on which Plaintiffs rely hold similarly and only found self-collection methods inappropriate where the collection was "without any supervision from Counsel," *see Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d 456, 473 (S.D.N.Y.

---

[11]     Plaintiffs also suggest that there is something necessarily faulty with Defendants' production because no person was listed as a custodian of any documents in Defendants' document production other than the six agreed-to ESI custodians.  Plaintiffs argue that, because Defendants did not restrict production of documents from the share drive to only those documents contributed by the agreed-to custodians, documents from other employees must unquestionably require production. (Motion at 12.) Plaintiffs are mistaken.  Those employees (beyond the agreed-to ESI custodians) who contributed to the share drive only contributed emails.  (Saso Decl. ¶ 29.)  None of them contributed non-email files.  (*Id.*)  Those employees' contributed emails were then de-duplicated and threaded against the ESI custodians and such emails were either produced or listed on Defendants' privilege log. (*Id.* ¶ 30.)  Once de-duplicating and threading is completed, one is often predominantly left with those emails of the core group of individuals with the most knowledge and involvement in relevant events.

13

2010), or was "without help from counsel." *Johnson v. J. Walter Thompson U.S.A., LLC*, 2017 U.S. Dist. LEXIS 176815, at *9 (S.D.N.Y. Oct. 25, 2017) (quoting *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *7 (N.D. Ill. May 25, 2010)) (cited by Plaintiffs' Motion at 3, 17, 18).  Here, Defs' Supp. Report revealed that counsel was actively involved in interviewing the ESI custodians, requiring that they upload responsive materials, and then reviewing those materials.  (Saso Decl. Ex. D.)

Importantly, "the primary source of Defendants' ESI is email communications, including any attachments thereto" (*id.* at 1) and Defendants applied all of the agreed-to search terms to their custodians' email accounts.  (Saso Decl. ⁋ 31.)  Although it was the "best, most comprehensive source of information for counsel *prior* to the discovery phase of this action" (Saso Decl. Ex. D at 3, emphasis added), the share drive itself is merely supplemental to the now-more-comprehensive email searches.  As previously discussed, the only non-duplicative data (as compared to email accounts) that Defendants would expect to find in the share drive are documents that the custodians did not share with anyone.  (*Id.* at 1-2.)  This unlikely and insignificant potential data set was appropriately investigated and collected through interviews and mutual cooperation between the custodians and counsel.  (Saso Decl. ⁋ 32.)

**B.      The Discovery Plaintiffs Seek Is Unconnected To Plaintiffs' "New" Evidence**

**1.      The Executive Group[12]**

The supposed "missing" emails have nothing to do with the Executive Group and, therefore, are not a basis to reconsider the MTC Order.  The Executive Group did not send or receive any of the "missing" emails.

---

[12]      Plaintiffs refer to the Executive Group as the "key decisionmakers," despite providing no evidence either on this Motion or the Renewed MTC, that any of these five individuals were, in fact, that.  To the contrary, Defendants established in the MTC Opp. that these individuals were generally only carbon copied on emails by Defendants' ESI custodians and that they had only tangential knowledge and peripheral involvement in the underlying events.  Plaintiffs do point out that Defendants inaccurately stated that Cozzolina did not author either the one produced email or the

Likewise, the share drive is unconnected to the Executive Group.  None of the members of the Executive Group contributed documents into the share drive for the same reason they were not included as ESI custodians—they were only peripherally involved and there is no reason to believe they have documents that would be non-duplicative of Defendants' ESI custodians.  (Saso Decl. ¶ 33.)

Further, the MTC Order was largely based on Plaintiffs' *agreement* to Defendants' ESI custodians:  Plaintiffs "agreed to the search of the files of the six employees identified by defendants in the Final ESI Protocol.  They did not seek to add more custodians despite ample opportunity to do so both at the time and subsequently.  Indeed, they did not even seek discovery from all seven of the persons the defendants initially identified as persons with knowledge." (MTC Order at 11.)  Neither the "missing" emails nor Defendants' share drive change the fact that Plaintiffs agreed to the identity and scope of Defendants' ESI custodians.

### 2.    H3C's Verification Reports

As an initial matter, Plaintiffs repeatedly mischaracterize the verification reports as being "Defendants' verification reports."  (Motion at Table of Contents, 10 n.7, 12, 13, 13 n.12, 14.)  In fact, the verification reports were created by H3C—not Defendants.  (Saso Decl. ¶ 36.)  One verification report is a document submitted by H3C to the Chinese authorities apparently explaining its position concerning the counterfeiting allegations, and the other verification report is a document created by H3C relating to sample devices that were sent by TT Global to H3C.  (*Id.* ¶ 37.) Plaintiffs' mischaracterizations are puzzling because they were already warned by this Court

---

one withheld email with his name on it.  (Motion at 16 n.15.)  Upon further review of the one produced email, it appears that Defendants based their prior statement on the most recent email in an email chain and that, in fact, Cozzolina did respond to an earlier email in the same chain.  (Saso Decl. ¶ 34.)  However, it is still true that Cozzolina appears on only two email chains (one produced and one withheld) and he sent only one email.  (*Id.* ¶ 35.)  This hardly establishes that Cozzolina has substantive knowledge or ESI that would be non-duplicative of the agreed-upon custodians.

2766949.3 108164-84842

not to conflate H3C with Defendants.  At the January 11, 2019 status conference, Plaintiffs' counsel incorrectly stated that "Defendants themselves, in 2013, inspected the equipment…." (Tr. at 34.)  But the Court was quick to correct counsel that H3C is "not—you didn't sue H3C, so they're not a defendant." (*Id.* at 35.)  Plaintiffs' attempt to attribute H3C's verification report to the Chinese authorities to the Defendants is, at best, reckless.

Plaintiffs do not explain how the so-called "missing" emails are connected to the verification reports.  None of the identified 17 emails relate to the verification reports. (Joffe Decl. Exs. A-Q.)  Those emails give the Court no basis on which to reconsider its prior decision.

At most, Plaintiffs mischaracterize Defs' Supp. Report and claim that the share drive "should have contained multiple copies of the draft and final versions of the verification reports." (Motion at 15.)  To the extent the share drive contained copies of H3C's verification report to the Chinese police, they were produced; to the extent the share drive contained communications about that verification report, they were either produced or withheld as privileged, depending on the email.  (Saso Decl. ¶ 38.)[13]  To the extent the share drive contained H3C's verification report concerning the two sample devices received from TT Global, it was withheld as privileged because it was generated at the instruction of counsel, as previously described in the MTC Opp. (at 17 n.16).  In other words, the existence of a share drive did not alter Defendants' approach to producing documents concerning the verification reports.  Whether located in Defendants' emails or the share drive, Defendants already produced all responsive, non-privileged documents concerning the verification reports.  (Saso Decl. ¶ 39.)

---

[13]    The MTC Order expressly considered and approved of this.  *Id.* at 16 n.14.  Plaintiffs do not request reconsideration of that ruling.

Plaintiffs also make the specious argument that Defendants "did not designate any drafts of either of the two verification reports as privileged on their log…" and waived the privilege as a result.  (Motion at 15-16.)  This argument is contradicted by the privilege log itself.  Most plainly, Defendants' Privilege Log Entry 410 discloses an "[e]mail containing the legal advice of Jessica Liu enclosing verification report and draft letter."  (Saso Decl. ¶ 40.)  This entry refers to the verification report concerning the two sample devices sent by TT Global to H3C at the direction of counsel and clearly designates it as privileged.  (*Id.* ¶ 41.)  The privilege log was served on Plaintiffs on June 24, 2019, months before the Renewed MTC deadline.  (*Id.* ¶ 42.)

With respect to the other H3C verification report concerning the counterfeiting allegations, Defendants produced the document that was submitted to the Chinese police.  (DEF 2807-17.)  This was disclosed in the MTC Opp. (at 17 n.16) and Plaintiffs noted that it was produced in the Renewed MTC (at 17-18).  No prior *drafts* of this verification report were logged as privileged because none were withheld as privileged.  (Saso Decl. ¶ 43.)  However, privileged communications *about* this verification report were withheld and were all logged.  (*Id.* ¶ 44.)

### 3.   H3C's Cover Letter[14]

Plaintiffs ask the Court to "reconsider" something that was never a part of their Renewed MTC.  That alone is reason to deny the request.

With regard to a cover letter submitted by H3C in conjunction with HPFS India's April 2013 letter to the Chinese authorities, Plaintiffs claim that "Defendants suppress this key nonprivileged letter from their production" and that "Defendants never before disclosed the existence of their 'cover letter to the PSB concerning verification report."  (Motion at 14, 12.)

---

[14]   Again, Plaintiffs repeatedly refer to H3C's cover letter to the Chinese authorities as being "Defendants' cover letter." (Motion at Table of Contents, 2, 12, 19.)

2766949.3 108164-84842

What Plaintiffs fail to acknowledge is that *Plaintiffs have long had in their possession and, in fact, produced H3C's cover letter themselves*.  (*See, e.g*., ICT 2094, ICT 259193, ICT 734766, and ICT 791783.)  Plaintiffs have had that letter since at least July 2018, when they first produced it to Defendants in advance of the mediation with Magistrate Judge Dein.  (Saso Decl. ¶ 45.)[15]

In connection with the Motion for Reconsideration, Defendants have also confirmed that, although Defendants' legal personnel discussed with H3C whether it would submit a cover letter to HPFS India's April 2013 letter to the Chinese authorities, and later confirmed that it was submitted, there is no record of H3C ever providing Defendants with a final copy of the actual cover letter that was eventually submitted.  (Saso Decl. ¶ 47.)  Thus, although Plaintiffs claim that the cover letter "is certainly in Defendants' possession" (Motion at 14), it is not.  Defendants cannot produce what they do not have.  The reality, however, is that H3C's cover letter was in *Plaintiffs'* possession all along.[16]

III.     **The MTC Order Is Not "Clearly Unjust"**

Plaintiffs argue that the MTC Order is unjust because (1) there is "newly discovered evidence," (2) Plaintiffs are "without the discovery necessary to oppose" a partial motion for summary judgment concerning the issue of whether the Seized Equipment is counterfeit, and (3) Defendants made "false" representations in Defs' Supp. Report.  (Motion at 18-20.)

First, as discussed more fully above, the Motion does not rely on any "newly discovered evidence."  Defendants made their document production in April and produced some additional

---

[15]      Plaintiffs also seem to be confused about the cover letter, mistakenly suggesting that it was the cover letter to one of the H3C verification reports (Motion at 12.)  However, the H3C cover letter did not accompany its own verification report; it accompanied HPFS India's April 2013 letter to the Chinese authorities.  (Saso Decl. ¶ 46.)

[16]      Even if the above were not true, H3C's cover letter would not be grounds for a motion for reconsideration.  It is not "new" evidence.  Discussion of that document was disclosed in Defendants' privilege log, served on June 24, 2019, long before the deadline for Plaintiffs' Renewed MTC.  (Saso Decl. ¶ 48.)

documents thereafter to address claimed deficiencies, but all were produced in advance of the Renewed MTC.  (Saso Decl. ¶ 24.)

Second, that Plaintiffs are without evidence necessary to oppose a partial motion for summary judgment concerning the counterfeiting issue is largely because such evidence does not exist, or has been invented or imagined by Plaintiffs' counsel.  Plaintiffs have provided no reason to believe that searching the Executive Group's ESI would reveal non-duplicative evidence relating to the counterfeiting issue.  The Executive Group members are not on the "missing" emails and there is no reason to believe they ever saw either of H3C's verification reports or H3C's cover letter.  Much like the underlying Renewed MTC, this Motion insists that "smoking gun documents" would be found if the Court would order Defendants to reopen electronic discovery, presumably for several more months.  (Motion at 2, 12.)  However, in those instances—such as here—where a party has looked everywhere the parties agreed should be searched, the lack of a "smoking gun" is actually an indication that a "smoking gun" does not exist.  The Court's decision not to "reopen electronic discovery or to extend expired deadlines … especially at this late date, in the face of [Plaintiffs'] agreements to the parameters of electronic discovery governing this case and in light of their general lack of diligence" (MTC Order at 11-12) was entirely justified and not an "injustice."

Finally, Plaintiffs do not identify any false statements in Defs' Supp. Report.  Defendants produced all responsive, non-privileged documents in their possession, custody or control that were yielded according to the Final ESI Protocol.  They preserved evidence as they were required to do.  They searched their email files pursuant to the agreed-upon search terms and made thorough and diligent efforts to identify what additional, reasonably-accessible, potential sources of non-email ESI might likely contain responsive data and then appropriately searched those sources.

None of the above constitutes an "injustice." None of the above warrants reconsideration of the MTC Order.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion for Reconsideration be denied in its entirety.[17]

Dated: New York, New York
December 10, 2019

GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York 10119
(212) 613-2000

CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000
*Attorneys for Defendants*

By: _____/s/ Paul A. Saso_____
        Paul A. Saso

---

[17]    Defendants reserve the right to move to have their costs and fees associated with opposing this motion shifted.

2766949.3 108164-84842

## <u>CERTIFICATE OF SERVICE</u>

I, Christina T. Lau, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration of the Court's Order Denying Their Motion to Compel was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on December 10, 2019.

/s/Christina T. Lau
Christina T. Lau

21