UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC. et al., | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil No. 16-10386-LTS |
| HEWLETT-PACKARD FINANCIAL SERVICES COMPANY et al., | ) ) ) ) |  |
| Defendants. | ) ) |  |

ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION (DOC. NO. 283)

January 9, 2020

SOROKIN, J.

Pending before the Court is the Plaintiffs' motion for reconsideration of the Court's Order denying their motion to compel. Doc. No. 283.[1] For the reasons that follow, Plaintiffs' motion is DENIED.

I.  LEGAL STANDARD

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009). Such motions "are not to be used as a vehicle for a party to undo its own procedural failures or allow a party to advance arguments that could and should have been presented to the district court prior to

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

judgment." Id. (internal quotation marks, modification and citation omitted). "When faced with a motion for reconsideration, a district court must balance the need for finality against the duty to render just decisions." Davis v. Lehane, 89 F.Supp.2d 142, 147 (D. Mass. 2000) (Young, J.) (citation omitted).

II. DISCUSSION

The Court addresses the various points raised by Plaintiffs.

1. Plaintiffs identify "seventeen" emails they allege are missing from Defendants' production of electronically stored information (ESI) and argue that the existence of these missing emails calls into question the integrity of Defendants' production of ESI. Doc. No. 283 at 4-5; id. at 10-13.

As a threshold matter, Plaintiffs' argument does not warrant reconsideration of the Court's Order because the argument arises not from newly discovered evidence but from Plaintiffs' failure to exercise reasonable diligence. For months, counsel for the Plaintiffs has complained that Defendants produced a paucity of documents. The record reflects Defendants produced 436 unique documents in April 2019, 135 more in total in early June and early September, and another 9 documents on October 1, 2019. Doc. No. 283-1 (Joffe Decl.) ¶ 31; Doc. No. 292 (Saso Decl.) ¶ 12. Unlike Plaintiffs, Defendants did not produce 800,000 pages of documents including all of their spam email. See Doc. No. 232 (Court's Order appointing special discovery expert to help parties deal with Plaintiffs' document production). With the exercise of reasonable diligence, Plaintiffs' counsel easily could have discovered the "missing" emails earlier simply by comparing Defendants' email production against the emails in the possession of the Plaintiffs—which is how counsel eventually discovered the "missing" emails. That Plaintiffs' counsel waited to undertake this type of review until long after the close of discovery speaks for itself.

Plaintiffs' argument also fails on the merits. Putting aside that the seventeen emails are more fairly counted as twelve, see Doc. No. 291 at 8, they were all sent or received between February and June 2013. Doc. 283-1 ¶¶ 6-23. Defendants' litigation hold did not go into place until January 2014.[2] Doc. No. 283 at 12. In the absence of a litigation hold, as was the case here, Defendants' internal email system imposes volume limitations on each user, which means that users' emails are automatically deleted after a certain lapse of time. Doc. No. 291 at 15; Doc. No. 183 (Final ESI Protocol) at 5. The existence of the missing emails sent or received months before the litigation hold was put into place therefore fails to undermine the integrity of Defendant's ESI production in any way, let alone to a level sufficient to warrant reconsideration. There is also no evidence of misconduct on Defendants' part in their failure to produce these emails, nor of prejudice since Plaintiffs already and at all times had these emails.

2. Plaintiffs complain that Defendants produced insufficient ESI from a group of so-called Executive Employees. Doc. No. 283 at 5; id. at 13-15. The Court previously rejected Plaintiffs' effort on this point. See Doc. No. 280 at 11 n.9. The "missing" emails referenced above are not new and not of any particular relevance to this issue. The facts Plaintiffs cite relating to Defendants' alleged insufficient search and production of the ESI in question, Doc. No. 283 at 13-15, are also not new; they derive from information Plaintiffs either possessed from the start or received months ago from Defendants in discovery. For all of the reasons previously stated, Plaintiffs have not demonstrated a basis for reconsidering the Court's denial of their request to compel production of these documents.

---

[2]     By contrast, Plaintiffs did not impose a litigation hold until January 2016.

3.      Plaintiffs complain that Defendants failed to produce a "cover letter" sent by H3C to the Beijing Police regarding a verification report H3C provided to the Beijing Police.[3] Doc. No. 238 at 15-16.  As they confirmed in response to the Motion for Reconsideration, Defendants do not possess this "cover letter," though they were plainly aware of the letter for they withheld communications containing their legal advice about it.  Doc. No. 292 (Saso Decl.) ¶ 47. In any event, the letter is a red herring.  Plaintiffs have had this letter for well over a year.  They gave it to Defendants in July 2018, in advance of the parties' attempted mediation before Judge Dein.  Id. ¶ 45.  Defendants' failure to produce a letter they do not (and did not) possess, which Plaintiffs do possess (and have possessed since before the Final ESI Order was approved or the parties made their ESI disclosures), is not a basis for the Court to reconsider its Order denying Plaintiffs' motion to compel.

4.      Plaintiffs seek the TT Global Verification Report.  They assert Defendants' waived any privilege as to that report by failing to log it on their privilege log.  Defendants demonstrate that they did log the report as privileged, however.  Doc. No. 292 (Saso Decl.) ¶¶ 40-42.  Whatever its possible utility to them, if any, Plaintiffs have not even attempted to make the requisite showing to warrant disclosure of work product and they advance no other basis to disregard the Court's prior determination that this document, including the drafts, is privileged.  Doc. No. 280 at 16 n.14.

5.      Plaintiffs seek the drafts of the H3C Verification Report. (The final report as delivered to the Beijing Police was disclosed in discovery.)  This request is denied.  Plaintiffs offer no basis to conclude that any such documents were improperly withheld as privileged or within the scope of discoverable information but not produced.

---

[3]     Apparently, this letter was not sent with the verification report, but with a separate communication to the Beijing Police from HPFS India.  Doc. No. 292 ¶ 46.

Having considered all the issues raised by Plaintiffs and finding none a basis for reconsideration for the reasons stated, the Court DENIES Plaintiffs' motion for reconsideration of the Court's order denying Plaintiffs' motion to compel (Doc. No. 283). Nonetheless, several issues not directly raised by Plaintiffs bear mention.

Defendants openly and transparently took a narrower approach to discovery in three respects. First, in their view, Defendants were not obligated to search or produce documents from HP China, H3C or other HP-related entities not before the Court. They were forthright, upfront and candid about this position in open court and in communications with counsel for Plaintiffs throughout this case. Plaintiffs failed to challenge Defendants' position before the Court despite ample notice from Defendants and ample opportunities to do so.

Second, in Defendants' view, a search of the ESI of six custodians struck the proper proportionality balance between fulsome discovery and parsimonious expenditure of resources. Plaintiffs reasonably could have sought a different balance—one encompassing a broader view with more custodians. Plaintiffs did not. To the contrary, they urged the Court to approve the Final ESI Protocol limiting the ESI search to the six custodians. And then, despite ample opportunity, never took discovery regarding relevant custodians or request—before the close of discovery—that other custodians be added. This is of particular significance given the nature of electronic discovery. See Doc. No. 280 at 12.

Third, in response to the Court's sua sponte inquiry reflecting its careful consideration of the issues raised by Plaintiffs in their motion to compel—an inquiry Plaintiffs could themselves have undertaken during discovery but did not—Defendants have made clear that they discharged their obligations to search for both emails and documents by interviewing various employees,

searching the emails and documents from the six designated custodians, and searching a share drive onto which emails from various employees along with documents from the custodians had been placed. Apparently, Plaintiffs never bothered to take discovery from or even discuss with Defendants what ESI sources Defendants would search. Nor did they otherwise investigate how Defendants proposed to conduct their search for responsive ESI—or how they did conduct their search. Mindful of the importance of discovery, while the reconsideration motion was pending the Court sought clarification of an apparent inconsistency in the filings made by Defendants describing their document disclosure process. Doc. No. 297 (electronic order requiring parties to attend status conference to address apparent inconsistency; the Court held the status conference on January 7, 2018). The clarification provided by defense counsel at the conference resolved the apparent inconsistency.

Plaintiffs are unhappy with the facts they have learned in discovery and remain convinced that more discovery will reveal "smoking gun documents" existing somewhere on some HP-related computer. Doc. No. 283 at 5, 15. But the paucity of discovery they have received results from Plaintiffs and Defendants jointly urging a narrower approach to discovery from Plaintiffs, Plaintiffs' voluntary decisions not to seek data held on computers other than those of Defendants, not to press for ESI from additional custodians, not to investigate which of Defendants' custodians Defendants would search—an obvious issue in light of the disclosure in the agreed-upon ESI Protocol that Defendants maintained no central document system, which indicates that responsive documents would likely reside only in emails and in individual local or virtual drives—and then to blame the paucity of discovery on Defendants.

In light of this history and the history forming the basis for the underlying Order that Plaintiffs challenge (Doc. No. 280), the Court declines at this stage to order what Plaintiffs seek,

albeit in the guise of a motion to reconsider denial of a motion to compel, namely that the Court reopen discovery to require Defendants to conduct new electronic searches of the email or files of other custodians.  Plaintiffs' motion for reconsideration of the Court's Order denying their motion to compel (Doc. No. 283) is DENIED.

The Court will hold a status conference on March 5, 2020 at 2:30 p.m.  Counsel should be prepared to identify their respective arguments for establishing that the components at issue were (or were not) counterfeit when sold, and possible means to streamline presentation of that issue to the Court.  In addition, one week prior to the status conference, the parties shall file a joint report listing the depositions each side wishes to take, whether there are objections to exceeding the presumptive limit of ten depositions or to a specific deposition, and a general schedule for the depositions including an identification of which of these depositions can occur in advance of a ruling on the counterfeit issue.  The parties' joint report may reflect joint or separate positions or both on the foregoing issues.  The Court will also address these issues with counsel at the status conference.

With their status report, the parties shall each submit a copy of their expert report concerning whether the parts were counterfeit or not.  At the status conference, the parties should be prepared to address why the Court cannot resolve the counterfeit issue based upon (1) the expert reports augmented by other relevant documents, if any, and (2) a briefing schedule providing for simultaneous five-page briefs followed by simultaneous 3-page replies.

                                                      SO ORDERED.

                                                      /s/ Leo T. Sorokin
                                                      Leo T. Sorokin
                                                      United States District Judge