# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ALEXANDER STYLLER, INTEGRATED
COMMUNICATIONS & TECHNOLOGIES,
INC., JADE CHENG, JASON YUYI, CATHY
YU, CAROLINE MARAFAO CHENG,
PUSHUN CHENG, CHANGZHEN NI,
JUNFANG YU, MEIXIANG CHENG,
FANGSHOU YU, and CHANGHUA NI,

Civil Action No. 1:16-CV-10386 (LTS)

               Plaintiffs,

vs.

HEWLETT-PACKARD FINANCIAL
SERVICES COMPANY, HEWLETT-
PACKARD FINANCIAL SERVICES (INDIA)
PRIVATE LIMITED, HP INC., HEWLETT
PACKARD ENTERPRISE COMPANY, and
DAVID GILL,

               Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' COUNTERFEITING CLAIMS (COUNTS I-VI)

## <u>TABLE OF CONTENTS</u>

RELEVANT UNDISPUTED FACTS ........................................................................... 1

ARGUMENT ........................................................................................................... 4

I.      APPLICABLE LAW ...................................................................................... 4

II.     PLAINTIFFS CANNOT RELY ON INADMISSIBLE H3C HEARSAY TO
MEET THEIR BURDEN ............................................................................... 5

      A.     The H3C Verification Report is Inadmissible and Unreliable Hearsay................. 5

      B.     The H3C Security Bulletin is Inadmissible and Unreliable Hearsay..................... 7

      C.     Dr. Fang's Report Is a Mere Conduit for H3C's Hearsay, and Is Irrelevant
in Any Event ........................................................................................... 7

III.    PARTICULARLY IN LIGHT OF DEFENDANTS' AFFIRMATIVE
SHOWING, PLAINTIFFS' NON-HEARSAY EVIDENCE CANNOT CREATE
A GENUINE ISSUE OF MATERIAL FACT ................................................ 8

CONCLUSION....................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................5, 10

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
    832 F.3d 1 (1st Cir. 2016)..................................................................................................6

*Flovac, Inc. v. Airvac, Inc.*,
    817 F.3d 849 (1st Cir. 2016)..............................................................................................4

*Geshke v. Crocs, Inc.*,
    740 F.3d 74 (1st Cir. 2014)................................................................................................4

*Hannon v. Beard*,
    645 F.3d 45 (1st Cir. 2011)......................................................................................4, 5, 6, 8

*Hasan v. Navient Health Solutions*,
    U.S. Dist. LEXIS 32508 (D. Mass. Mar. 11, 2016)..........................................................6

*Irobe v. United States Dep't of Agric.*,
    890 F.3d 371 (1st Cir. 2018)..............................................................................................5

*LeBaron v. Mass. P'ship for Corr. Healthcare*,
    U.S. Dist. LEXIS 213577 (D. Mass. Dec. 1, 2017).........................................................9

*Milward v. Acuity Specialty Prods. Group*,
    639 F. Supp. 11 (1st Cir. 2011).........................................................................................9

*National Amusements v. Town of Dedham*,
    43 F.3d 731 (1st Cir. 1995)...........................................................................................5, 10

*People v. Stamps*
    3 Cal. App. 5th 988 (Cal. App. 2016)...............................................................................7

*United States v. Kantengwa*,
    481 F.3d 545 (1st Cir. 2015)..............................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56..................................................................................................................4, 5, 8

Fed. R. Evid. 703.........................................................................................................................8

Fed. R. Evid. 801.........................................................................................................................6

Fed. R. Evid. 803.........................................................................................................................6

Since Plaintiffs filed their first Complaint in 2015, their core allegation has been that Defendant HPFS India sold counterfeit H3C transceivers to ICT.  But, after years of fact and expert discovery, Plaintiffs still have no admissible evidence that would enable a reasonable jury to find that the transceivers were *in fact* counterfeit.  Plaintiffs' counterfeiting claims rest entirely on inadmissible third-party H3C hearsay, on an expert in an unrelated field who rehashes that hearsay but offers no relevant opinion of his own, and on circumstantial and speculative evidence that is equally consistent with the opposite conclusion.  Defendants, by contrast, retained a qualified expert who conducted a detailed examination of the Seized Equipment (including its electronic memory) and determined that all of the transceivers HPFS India sold to ICT were in fact *authentic*.

Because there is no genuine dispute of material fact on the counterfeit issue, the Court should grant partial summary judgment dismissing Counts I-VI of the Second Amended Complaint and narrowing the remainder of the case accordingly.

## RELEVANT UNDISPUTED FACTS

In 2011, HPFS India and ICT entered into a resale contract regarding computer networking equipment ("Equipment") that HPFS India previously leased to another company for use at the 2010 Commonwealth Games in Delhi, India.  Dkt. No. 341 (SOF) ¶ 1.  The Equipment included H3C-branded transceiver devices.  Dkt. No. 341 ¶ 2.

ICT's broker, Shinto, took possession of the first installment of Equipment and shipped the same to ICT in China in or after December 2011.  Dkt. No. 341 ¶ 3.  The inventory list attached to the relevant purchase order identified over 3,000 transceivers by serial number (the "Shinto Inventory List").  Dkt. No. 341 ¶ 4.

Plaintiffs affirm that ICT employees began marketing the Equipment in China in 2012.  Dkt. No. 341 ¶ 5.  Plaintiffs admit that ICT was also reselling H3C-branded transceivers in China that ICT had acquired from sources other than HPFS India.  Dkt. No. 341 ¶ 6.

On December 9, 2012, Chinese police conducted a raid and arrested Plaintiffs Cathy Yu and Jason Yuyi based on allegations that they were selling counterfeit H3C equipment.  Dkt. No. 341 ¶ 7.  Their supervisor, Plaintiff Jade Cheng, was arrested several days later (collectively, with Yu and Yuyi, the "Individual Plaintiffs").  Dkt. No. 341 ¶ 8.  The Chinese police also seized 781 transceivers in connection with their investigation of ICT (the "Seized Equipment").  Dkt. No. 341 ¶ 9.  Plaintiffs allege that the raid and arrests were precipitated by a report to the Chinese police alleging that ICT was selling counterfeit H3C equipment.  Dkt. No. 341 ¶ 10.

The Individual Plaintiffs were released on bail in July 2013, and Chinese authorities later issued "no criminal record" letters.  Dkt. No. 341 ¶ 11.   The Chinese authorities also returned the 781 units of Seized Equipment to Jade Cheng.  Dkt. No. 341 ¶ 12.  Thereafter, Jade Cheng stored the Seized Equipment in a home in China.  Dkt. No. 341 ¶ 13.

Plaintiffs filed this lawsuit in December 2015 in Massachusetts Superior Court; it was then removed to this Court.  Dkt. No. 341 ¶ 14.  The first six claims of the now-operative Second Amended Complaint are premised on the allegation that HPFS India sold counterfeit H3C equipment to ICT.[1]  Dkt. No. 341 ¶ 15.  Plaintiffs did not sue H3C itself, and have not sought any third-party discovery from H3C.  Dkt. No. 341 ¶¶ 16-17.

At Defendants' request, the Court ordered Plaintiffs to ship the Seized Equipment to the United States.  Dkt. No. 341 ¶ 18.  And in 2019, the Court ordered the parties to retain experts to inspect the Seized Equipment to determine whether some or all of it was *in fact* counterfeit.  Dkt. No. 341 ¶ 19.  The parties agreed that the issue of whether HPFS India sold ICT counterfeit goods was ripe for dispositive adjudication, and the Court set a schedule for the filing of summary judgment motions directed to the counterfeit issue.  Dkt. No. 341 ¶¶ 20-21.

---

[1] Fraudulent Misappropriation (Count I); Negligent Misrepresentation (Count II); Breach of Contract (Count III); Fraudulent Inducement (Count IV); Breach of Warranty (Count V); Breach of M.G.L. 93A (Count VI).

Plaintiffs did not retain a counterfeiting expert and made no effort to conduct an inspection of the Seized Equipment to determine whether it is genuine or counterfeit.  Dkt. No. 341 ¶ 22. Instead, Plaintiffs retained an MIT professor of nanophotonics, Nicholas Xuanlai Fang, Ph.D., to examine the Seized Equipment.  Dkt. No. 341 ¶ 23.  Dr. Fang did not offer any opinion regarding whether the Seized Equipment was, in fact, counterfeit.  Dkt. No. 341 ¶ 24.  Rather, Dr. Fang was instructed by Plaintiffs' counsel to compare his observations of holographic labels present on certain of the transceivers with alleged "indicators of counterfeiting" set forth in two documents furnished to him by Plaintiffs' counsel:  (1) a "Security Bulletin" purportedly printed from H3C's website; and (2) a document presumed to be H3C's report to the Chinese police regarding the Seized Equipment (the "Verification Report").  Dkt. No. 341 ¶ 25.  Dr. Fang has no opinion about the accuracy or authenticity of those documents, made no effort to determine whether the statements therein were true and accurate, does not know whether the "indicators" of counterfeiting contained in the Security Bulletin and/or H3C Verification Report are in fact true and accurate indicators of counterfeiting applicable to the transceivers at issue, and has no prior experience with documents of this type.  Dkt. No. 341 ¶¶ 26-28.

Conversely, and consistent with the Court's order, Defendants retained Shelley Raina, an expert in counterfeiting with nearly twenty years of experience in brand security and counterfeit prevention.  Dkt. No. 341 ¶ 29.  Mr. Raina devised a reliable testing methodology based on his extensive training and experience with identifying counterfeit transceivers.  Dkt. No. 341 ¶ 30. His methodology is a holistic analysis that focuses primarily on the presence or absence of anomalies in the unique identifying data — especially serial numbers — associated with each transceiver.   The results of his testing are as follows:

- Of the 781 units of Seized Equipment provided for inspection, 647 bear serial numbers that appeared on the Shinto Inventory List. He determined that 646 units

of Seized Equipment acquired from HPFS India by ICT were authentic, and one device was too damaged to inspect and reach a conclusive determination.

- Of the remaining 134 units of Seized Equipment not on the Shinto Inventory List – and therefore presumptively not acquired from HPFS India by ICT – at least 31 units of Seized Equipment were counterfeit.

Dkt. No. 341 ¶ 31.[2]

## ARGUMENT

## I.    APPLICABLE LAW

Summary judgment shall enter where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Upon a proper motion, "the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor."  *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).

The nonmovant's showing "'requires more than the frenzied brandishing of a cardboard sword.'"  *Geshke v. Crocs, Inc.*, 740 F.3d 74, 77 (1st Cir. 2014) (quoting *Calvi v. Knox Cty.*, 470 F.3d 422, 426 (1st Cir. 2006)).  A genuine issue of material fact "can be created only by materials of evidentiary quality."  *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011).  Thus, "'***[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment***'** for the truth of the matter asserted."  *Id.* (quoting *Dávila v. Corporación de P.R. para la Difusión Pública*, 498 F.3d 9, 17 (1st Cir. 2007)); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in

---

[2] In later attorney correspondence, Plaintiffs took the position that the relevant inventory list is not the Shinto Inventory List attached to ICT's purchase order and used by Mr. Raina, but instead a larger "Master List" of equipment returned to HPFS India's agent after the Commonwealth Games.  Dkt. No. 341 ¶ 32.  Plaintiffs determined that 750 (rather than 647) out of the 781 pieces of Seized Equipment originated with HPFS India.  Dkt. No. 341 ¶ 33.  Regardless, Plaintiffs agree that the 31 devices identified as counterfeit by Mr. Raina are not listed on *any* inventory of equipment sold to ICT by HPFS India.  Dkt. No. 341 ¶ 34.

evidence."); *id.*, Advisory Note ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

While the court draws reasonable inferences in the nonmovant's favor, "[t]rialworthiness necessitates 'more than simply showing that there is some metaphysical doubt as to the material facts.'" *National Amusements v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). The admissible evidence must frame an issue of fact that is more than "merely colorable," and "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 256 (1986). Said differently, "summary judgment is warranted if a nonmovant who bears the burden on a dispositive issue fails to identify 'significantly probative' evidence favoring his position." *Irobe v. United States Dep't of Agric.*, 890 F.3d 371, 377 (1st Cir. 2018) (quoting *Anderson*, 477 U.S. at 249-50).

## II.   PLAINTIFFS CANNOT RELY ON INADMISSIBLE H3C HEARSAY TO MEET THEIR BURDEN

To survive summary judgment, Plaintiffs bear the burden of producing admissible evidence that HPFS India sold counterfeit equipment to ICT. While agreeing that the question is now ripe for adjudication as a matter of law, Plaintiffs' promised support for their allegation boils down to: "*H3C said it was counterfeit*." But H3C's hearsay is not admissible evidence, and cannot sustain Plaintiffs' burden at summary judgment. *See* FRCP 56(c)(2); *Hannon*, 645 F.3d at 49 ("It is black-letter law that hearsay evidence cannot be considered at summary judgment.").

### A.   The H3C Verification Report is Inadmissible and Unreliable Hearsay.

To support their claim that the equipment sold by HP to ICT was counterfeit, Plaintiffs rely on the "Verification Report" — a document that purports to contain H3C's statements to the

Chinese police regarding the Seized Equipment.  The Verification Report has not been, and will not be, authenticated by any witness from H3C or the Chinese police.  The Verification Report is not even intelligible — it is written in Mandarin, and Plaintiffs have not obtained a certified English translation (choosing instead to use a garbled, poorly-formatted document titled "Plaintiffs' Office Translation").  The Verification Report is textbook inadmissible hearsay. Plaintiffs seek to use that report for the truth of the out-of-court statements allegedly therein — *i.e.*, H3C's allegations that the Seized Equipment is counterfeit.  *See* Fed. R. Evid. 801(c).  Plaintiffs' effort to use the report for this purpose implicates the core concerns underlying the hearsay rule, including Defendants' inability to examine H3C as to the reliability of the methodology and conclusions described in the Verification Report.[3]  Plaintiffs have not identified any evidentiary exception that would allow the Verification Report to be admitted in evidence, and none applies. *See* Fed. R. Evid. 803.  Nor could Plaintiffs admit the Verification Report through H3C itself — because Plaintiffs chose not to sue H3C, and chose not to seek any discovery from H3C.

The Verification Report will not be admitted at trial, and it cannot be considered at summary judgment.  *See, Hannon*, 645 F.3d at 49; *see also, e.g., Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 832 F.3d 1, 12 (1st Cir. 2016) (acknowledging third-party statement would have been probative of conspiracy claim, but excluding it as hearsay and affirming dismissal on summary judgment); *Hasan v. Navient Health Solutions*, No. 14-14196, 2016 U.S. Dist. LEXIS 32508, at *6 n.4 (D. Mass. Mar. 11, 2016) (Sorokin, J.) (quoting *Hannon* and disregarding hearsay raised by plaintiff in effort to survive summary judgment).  The same goes for any other H3C hearsay statements to the Chinese police (or any other party) that Plaintiffs might offer to prove that the Seized Equipment sold by HPFS India is counterfeit.

---

[3]  Among other things, the Verification Report's conclusions of counterfeiting appear to be based in large part on mistaken assumptions about the origin of the Seized Equipment, which was not in its original packaging.

**B.**     **The H3C Security Bulletin is Inadmissible and Unreliable Hearsay**

Plaintiffs also rely on the "Security Bulletin" — a printout of statements purportedly translated from H3C's Mandarin website in 2014. Dkt. No. 341 ¶ 35. The Security Bulletin, too, is inauthenticable hearsay. Plaintiffs seek to use it for the truth of the statements asserted therein (*i.e.,* the alleged "indicators" of counterfeiting), and no evidentiary exception applies. Indeed, the Security Bulletin is a particularly unreliable and unhelpful document that would prejudice a fact-finder without the benefit of cross-examination. "The Internet provides no way of verifying the authenticity of its contents and is inherently untrustworthy." *People v. Stamps* 3 Cal. App. 5th 988, 996 (Cal. App. 2016) (internal quotations and citation omitted) (describing "common judicial skepticism of evidence found on the Internet"). Plaintiffs' attempt to have Dr. Fang apply the Security Bulletin to the Seized Equipment only highlighted that document's uselessness. As explained in Defendants' *Daubert* motion, Dr. Fang has no idea whether the guidelines in the Security Bulletin in fact apply to the Seized Equipment, and the evidence confirmed his assumptions were mistaken.[4] There is no evidentiary basis, nor any practical reason, for the Court to consider the Security Bulletin hearsay at summary judgment.

**C.**     **Dr. Fang's Report Is a Mere Conduit for H3C's Hearsay, and Is Irrelevant in Any Event.**

In part because of the readily-apparent admissibility and credibility issues with Plaintiffs' planned use of H3C hearsay, the Court urged Plaintiffs to retain a qualified expert to examine the Seized Equipment and opine on whether it was counterfeit. Instead of heeding the Court's

---

[4]   For example, Plaintiffs' translation of the Security Bulletin purports on its face to apply only to H3C devices manufactured after May 10, 2010. Dr. Fang assumed that any label similar to the one pictured in the Security Bulletin was in fact manufactured after May 10, 2010. Dkt. No. 341 ¶ 36. But data captured from the transceivers' electronic memory, recorded in Appendix A to Defendants' expert report, confirms that dozens of the transceivers with labels Dr. Fang assumes are subject to the Security Bulletin were, in fact, manufactured prior to May 10, 2010. Dkt. No. 341 ¶ 37.

suggestion, as detailed in Defendants' accompanying *Daubert* motion, Plaintiffs retained an MIT professor for the sole purpose of serving as a mouthpiece for that same H3C hearsay. Dr. Fang has no expertise in counterfeiting and offers no opinion as to whether the Seized Equipment is in fact counterfeit. He simply took pictures of the Seized Equipment and — without applying any needed expertise — compared those pictures to supposed "indicators of counterfeiting" that he gleaned from the Verification Report and the Security Bulletin.[5] Under Federal Rule of Evidence 703 and settled case law, a party cannot use expert testimony "simply as a conduit for introducing hearsay." *United States v. Kantengwa*, 481 F.3d 545, 561 (1st Cir. 2015). For that reason, and for the other reasons detailed in Defendants' *Daubert* motion, Dr. Fang's testimony should be excluded. His report, like the H3C hearsay it rests upon, should be disregarded at summary judgment. Fed. R. Civ. P. 56(c)(2).

Even if Dr. Fang's report were of "evidentiary quality," *Hannon*, 645 F.3d at 49, it evidences nothing of relevance. By Dr. Fang's own admission, he is not a counterfeiting expert and does not (and cannot) have any opinion as to whether the Seized Equipment is *in fact* counterfeit. Dkt. No. 341 ¶¶ 22, 24. Dr. Fang's report is not probative of the factual issue before the Court at summary judgment. For that reason, too, the Court should disregard it.

### III. PARTICULARLY IN LIGHT OF DEFENDANTS' AFFIRMATIVE SHOWING, PLAINTIFFS' NON-HEARSAY EVIDENCE CANNOT CREATE A GENUINE ISSUE OF MATERIAL FACT

With the exclusion of H3C's hearsay and Dr. Fang's "opinions," the only admissible evidence probative of the authenticity of the Seized Equipment is Mr. Raina's expert opinion. Mr. Raina devised a comprehensive testing methodology (based on his nearly twenty years of

---

[5] Indeed, Dr. Fang testified that every observation he made could be made by a layperson with a naked eye (or, at most, a cell phone camera and a ruler). Dkt. No. 341 ¶ 38.

experience in the field of brand security and counterfeit prevention) to determine whether the Seized Equipment was counterfeit.  After conducting his testing, Mr. Raina concluded:

- All units of Seized Equipment that were sold by HPFS India to ICT (with the exception of one that was too damaged to completely analyze) were ***authentic***.

- 31 units of Seized Equipment that were *not* sold by HPFS India to ICT were ***counterfeit***.

Dkt. No. 341 ¶ 31.  Mr. Raina's conclusions were only reinforced when Plaintiffs subsequently revealed that, under their own analysis, 31 out of the 781 units of Seized Equipment did not appear on any inventory of equipment sold to ICT by HPFS India.  Dkt. No. 341 ¶ 33.  Those 31 devices correspond ***exactly*** with the 31 devices Mr. Raina determined to be counterfeit.  Dkt. No. 341 ¶ 34.  That is, based on Mr. Raina's expert analysis, it appears that ICT was indeed attempting to sell counterfeit transceivers when its employees were arrested by Chinese authorities — but that counterfeit equipment came from ICT's other sources — not from HPFS India.  The Seized Equipment sold to ICT by HPFS India was authentic.

Mr. Raina's expert testimony on the counterfeit question is unrebutted.  (And unrebuttable — Dr. Fang admitted that he is not qualified to render any opinion on it.  Dkt. No. 341 ¶ 39.)  Any effort by Plaintiffs to poke holes in Mr. Raina's analysis or to suggest bias go only to Mr. Raina's credibility — not to Plaintiffs' own burden to produce substantial evidence supporting their claims.  *See Milward v. Acuity Specialty Prods. Group*, 639 F. Supp. 11, 22 (1st Cir. 2011) ("weight and credibility" of expert testimony are factual matters for the jury).

Moreover, Mr. Raina's testimony raises the bar for any other non-hearsay, non-expert evidence Plaintiffs may attempt to adduce in their effort to defeat summary judgment.  That is, Plaintiffs must show not just that a reasonable jury could find that such evidence, in a vacuum, proves that the Seized Equipment sold by HPFS India is counterfeit — but that such evidence could ***overcome*** Mr. Raina's affirmative conclusion that the same equipment was authentic.  *See LeBaron*

9

*v. Mass. P'ship for Corr. Healthcare*, C.A. No. 14-14138-LTS, 2017 U.S. Dist. LEXIS 213577, at *28 (D. Mass. Dec. 1, 2017) (granting defendants summary judgment where plaintiff offered "no evidence" to support his claim and where defendant's "expert opinion [stood] unrebutted").

Plaintiffs suggested at the most recent status conference that they may point to the ICT employees' arrest and detention on counterfeiting charges as evidence that they were *in fact* selling counterfeit equipment. Putting aside its unconventional twist on the presumption of innocence, this argument falls apart because Defendants' evidence shows (and Plaintiffs appear to agree) that the ICT employees were also selling H3C transceivers that ICT had acquired from sources other than HPFS India — transceivers that Mr. Raina determined were counterfeit.

At bottom, such ancillary bits of evidence cannot come close to meeting Plaintiffs' burden of showing that a reasonable jury could actually find in their favor. *Anderson*, 477 U.S. at 252, 256 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"); *see also Nat'l Amusements*, 43 F.3d at 735 (nonmovant must show more than "some metaphysical doubt as to the material facts").

## CONCLUSION

Stripped of inadmissible hearsay and irrelevant and unreliable expert testimony, and faced with Defendants' compelling evidence to the contrary, Plaintiffs cannot sustain their burden of proving that the Seized Equipment sold by HPFS India is counterfeit. The only admissible evidence before the Court regarding the issue of whether the Seized Equipment is counterfeit is Mr. Raina's expert opinion and supporting documents proffered by Defendants. That evidence demonstrates — even with the appropriate inferences in Plaintiffs' favor — that there is no genuine issue of material fact that Defendant HPFS India sold genuine transceivers to ICT. Because that proof is a necessary element of Counts I-VI of the Second Amended Complaint, the Court should

grant partial summary judgment dismissing those claims and narrowing Plaintiffs' remaining claims accordingly. No longer should Plaintiffs be able to advance various, conflicting, and confusing theories premised on the Seized Equipment being both counterfeit and authentic. The issue is ripe for resolution now.


Dated: March 16, 2020                    Respectfully submitted,

                                         /s/ *Michael H. Bunis*
                                         Michael H. Bunis (BBO No. 566839)
                                         G. Mark Edgarton (BBO No. 657593)
                                         Kevin C. Quigley (BBO No. 685015)
                                         **CHOATE HALL & STEWART LLP**
                                         Two International Place
                                         Boston, Massachusetts  02110
                                         (617) 248-5000
                                         mbunis@choate.com
                                         medgarton@choate.com
                                         kquigley@choate.com

                                         Anthony P. Callaghan
                                         Paul A. Saso
                                         **GIBBONS P.C.**
                                         One Pennsylvania Plaza, 37th Floor
                                         New York, New York, 10119
                                         (212) 613-2000


                                         *Counsel for Defendants*

11

## <u>CERTIFICATE OF SERVICE</u>

I, Christina T. Lau, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing document was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on March 16, 2020.

/s/*Christina T. Lau*
Christina T. Lau

9654913