UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI,<br><br>    Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL,<br><br>    Defendants. | Civil Action No. 1:16-CV-10386 (LTS) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION
TO EXCLUDE THE TESTIMONY OF NICHOLAS XUANLAI FANG, PH.D.**

# TABLE OF CONTENTS

Page(s)

ARGUMENT ........................................................................................................................... 2

    I.    APPLICABLE LAW ....................................................................................... 2

    II.    DR. FANG IS NOT A COUNTERFEITING EXPERT AND PROVIDES NO RELEVANT OPINION .................................................................................. 2

    III.    DR. FANG'S REPORT IS A MERE IMPROPER CONDUIT FOR INADMISSIBLE HEARSAY ............................................................................ 4

    IV.    DR. FANG'S REPORT CONTAINS ONLY OBSERVATIONS, NOT EXPERT OPINIONS ......................................................................................... 7

CONCLUSION ........................................................................................................................ 9

# **TABLE OF AUTHORITIES**

                                                                                                           **Page(s)**

**Cases**

*Bogosian v. Mercedes-Benz of N. Am.*,
   104 F.3d 472 (1st Cir. 1996) ................................................................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ......................................................................................................... 1, 2

*Gilmore v. Palestinian Interim Self-Government Auth.*,
   843 F.3d 958 (D.C. Cir. 2016) ............................................................................................. 5

*Louis Vuitton Malletier v. Dooney & Burke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................................................................. 6

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) ................................................................................................ 5

*Pelster v. Ray*,
   987 F. 2d 514 (8th Cir. 1993) .............................................................................................. 6

*Trs. of Boston Univ. v. Everlight Elecs. Co.*,
   141 F. Supp. 3d 147 (D. Mass. 2015) ................................................................................. 5

*United States v. Brewer*,
   783 F.2d 841 (9th Cir. 1986) .............................................................................................. 8

*United States v. Kantengwa*,
   481 F.3d 545 (1st Cir. 2015) ............................................................................................... 5

*United States v. Mejia*,
   545 F.3d 179 (2d Cir. 2008) ................................................................................................ 7

*United States v. Montas*,
   41 F.3d 775 (1st Cir. 1994) ................................................................................................. 9

*United States v. Silva*,
   794 F.3d 173 (1st Cir. 2015) ............................................................................................... 8

*University of R.I. v. A. W. Chesterton Co.*,
   2 F.3d 1200 (1st Cir. 1993) ................................................................................................. 6

*Wai Feng Trading Co. v. Quick Fitting, Inc.*,
   No. 13-33WES, 2018 U.S. Dist. LEXIS 215311 (D.R.I. Dec. 21, 2018) ............................ 6

*Williams v. Illinois*,
  567 US 50 (2012) ............................................................................................................. 7

*Wilson v. Bradlees of New Eng., Inc.*,
  250 F.3d 10 (1st Cir. 2001) ............................................................................................. 4

**Other Authorities**

FED. R. EVID. 702 ..................................................................................................... *passim*

FED. R. EVID. 703 ..................................................................................................... *passim*

2 MCCORMICK ON EVIDENCE (6th ed. 2006) ................................................................... 7

The Court ordered the parties to retain experts to help determine whether the Seized Equipment at issue in this case is, as alleged by Plaintiffs, counterfeit. Plaintiffs retained an MIT professor, Nicholas Xuanlai Fang, Ph.D. But Dr. Fang is not (and does not claim to be) an expert in counterfeiting or any other field that is relevant to determining whether the Seized Equipment is counterfeit. Indeed, he did not provide (and does not claim to hold) any opinion regarding whether any of the Seized Equipment is *in fact* counterfeit. Instead, Dr. Fang merely made basic observations of holographic labels on certain units of Seized Equipment, and then compared them to supposed "indicators" of counterfeiting gleaned from purported translations of third-party H3C's police report and a "security bulletin" on H3C's website. By his own admission, Dr. Fang did not need to use any expertise to make these observations or comparisons.

Dr. Fang's report amounts to nothing more than Plaintiffs' backdoor effort to introduce inadmissible — and fundamentally unhelpful — unauthenticated hearsay. For years, the Court cautioned Plaintiffs about relying on H3C's statements to meet their burden of proof that the Seized Equipment is counterfeit (including because Plaintiffs chose not to sue H3C and chose not to seek discovery from H3C). Now, as the Plaintiffs confirmed in the recently filed Joint Status Report, nothing has changed:

> … Plaintiffs intend to show that the transceivers that Defendants admitted were sold by them to ICT bear holographic H3C labels that H3C determined to be counterfeit in its verification report submitted to the [Chinese police], as confirmed by Dr. Fang's inspection.

[Dkt. No. 308](Dkt. No. 308), pp. 4-5. But the jury does not need to be improperly influenced by the testimony of an MIT professor in order to compare pictures of labels on a transceiver to statements in a document. Nor should the jury be prejudiced by Dr. Fang's apparent endorsement of H3C's unreliable and inadmissible hearsay statements. Dr. Fang's testimony is unhelpful to the trier of fact, and the Court should exclude it under *Daubert* — and disregard it at summary judgment.

1

# ARGUMENT

## I.  Applicable Law

Courts permit expert testimony only where: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.  Accordingly, the district court serves as a "gatekeeper" to protect the jury from unreliable, confusing, or unduly prejudicial evidence.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-591 (1993).

Rule 703 permits an expert's reliance on inadmissible evidence only where it is of a type on which experts in the same field would reasonably rely, and where the court determines that its probative value in helping the factfinder evaluate the expert's opinion substantially outweighs its prejudicial effect.  FED. R. EVID. 703.

## II.  Dr. Fang is Not a Counterfeiting Expert and Provides No Relevant Opinion

Dr. Fang is a professor specializing in nanophotonics.  Dr. Fang is an expert in his field — but his field has nothing at all to do with the counterfeit issue in this case.  He has no expertise, and no experience, in counterfeiting analysis, supply chain security, or transceivers.  Dkt. No. 317-6 (Fang Dep.), 18:17-20:7.[1]  And, though he has studied holograms, Dr. Fang does not claim to be an expert in holographic security labels like the ones he examined here.  *Id.*, 21:3-8.

Dr. Fang was merely instructed by Plaintiffs' counsel to compare his observations of the holographic labels present on certain of the transceivers with supposed "indicators of counterfeiting" set forth in two third-party documents provided to him by Plaintiffs' counsel:  (i)

---

[1]  All cites to Dkt. No. 317 herein are to the accompanying Declaration of Kevin C. Quigley.

a "Security Bulletin" apparently printed from H3C's website; and (ii) H3C's initial report to the Chinese police (the "Verification Report"). Dkt. No. 317-4 (Fang Report), p. 2. Dr. Fang acknowledged that he does "not have any opinion about [the] accuracy or authenticity of those" documents, and made no effort (including any effort to speak with H3C) to determine whether the statements therein were true and accurate. Dkt. No. 317-6, 23:12-24:8; 27:2-5. That is, he does not know (because he has no independent expertise) whether the "indicators" of counterfeiting in those third-party, unauthenticated hearsay documents are in fact true indicators of counterfeiting that are even applicable to the transceivers at issue in this case. *Id.*, 18:17-23. With respect to the Security Bulletin, for example, Dr. Fang acknowledged in his deposition that its guidelines only apply to transceivers manufactured after a certain date, but he has "no idea" when the transceivers he examined were actually manufactured.[2] *Id.*, 64:15-65:1.

Thus, the observations set forth in Dr. Fang's report are not helpful to answer the core question at this stage: Are the transceivers in fact counterfeit? Dr. Fang readily admitted in his deposition that his "opinions" are not relevant to this issue:

> Q:    [Y]ou are not offering an opinion regarding whether the transceivers are, in fact, counterfeit, correct?
>
> A:    Correct.

Dkt. No. 317-6, 23:7-11. Nor does he have any basis to dispute Mr. Raina's conclusions. *Id.*, 15:1-5; 77:9-22. Dr. Fang does not — and cannot — provide any relevant expert opinion, and that alone is a sufficient reason to exclude his testimony. *See* FED. R. EVID. 702 (the "expert's …

---

[2] Based on Plaintiffs' translation of the Security Bulletin, that document appears to apply only to H3C devices manufactured after May 10, 2010. Dr. Fang assumed that any label similar to the one pictured in the Security Bulletin was in fact manufactured after May 10, 2010. Dkt. No. 317-4, pp. 3, 16. But data captured from the transceivers' electronic memory, recorded in Appendix A to Defendants' expert report, confirms that dozens of the transceivers with labels Dr. Fang assumes are subject to the Security Bulletin were, in fact, manufactured prior to May 10, 2010. *Compare* Dkt. No. 317-5 (Raina Report) Appendix A, "Date Code in EEPROM" columns, *with* Dkt. No. 317-4, at Fang Ex. 5. This is but one example of Dr. Fang's failure to apply reliable principles and methods to the facts of the case. *See also infra* n. 4.

specialized knowledge [must] help the trier of fact to understand the evidence or to determine a fact in issue"); *Bogosian v. Mercedes-Benz of N. Am.*, 104 F.3d 472, 476–77 (1st Cir. 1996) (affirming exclusion under Rule 702 where proposed expert was "a very well qualified master mechanic," but his "expertise did not extend to the design defect issue at hand"); *Wilson v. Bradlees of New Eng., Inc.*, 250 F.3d 10, 22 (1st Cir. 2001) ("There can be no error in excluding the opinion of an expert witness that he candidly admits is beyond his competence.").

## III.   Dr. Fang's Report is a Mere Improper Conduit for Inadmissible Hearsay

The Security Bulletin and the Verification Report are purportedly (though unauthenticated) out-of-court statements of a third party — H3C. Both documents are written in Mandarin, and Plaintiffs have yet to provide any certified English translation of either. Plaintiffs seek to offer them for the truth of the statements allegedly therein, *i.e.*, the "indicators" of counterfeiting and their application to the Seized Equipment. *See* Joint Status Report, Dkt. No. 308, pp. 4-5. But Plaintiffs have not identified any evidentiary exception permitting the admissibility of either the Security Bulletin or the Verification Report. Nor could Plaintiffs admit those documents through H3C itself — because Plaintiffs chose not to sue H3C, and chose not to seek any discovery from H3C. The Security Bulletin and Verification Report are inadmissible hearsay. Indeed, the Court has repeatedly warned Plaintiffs' counsel of this evidentiary obstacle.[3]

Rule 703 permits an expert's reliance on inadmissible evidence only where it is of a type on which experts in the same field would reasonably rely, and where the Court determines that its probative value in helping the jury evaluate the expert's opinion substantially outweighs its

---

[3] *See, e.g.,* Dkt. No. 129 at, *e.g.*, 29-30 (Tr. of Oct. 20, 2017 Status Conference) (questioning how Plaintiffs intend to carry their burden of proving that the Seized Equipment is counterfeit); Dkt. No. 189 at p. 37-47 (transcript of Jan. 11, 2019 status conference) (noting admissibility issues with H3C Verification Report); Dkt. No. 280, Dkt. No. 300 (denying Plaintiffs' motions to compel and for reconsideration and noting Plaintiffs' failure to seek discovery from H3C).

prejudicial effect. FED. R. EVID. 703. Any leeway available under that stringent balancing test, however, does not extend to the use of expert testimony "simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *United States v. Kantengwa*, 481 F.3d 545, 561 (1st Cir. 2015).

Plaintiffs' proffer of Dr. Fang's report is a textbook example of such an improper attempt to use expert testimony as a mere conduit for unauthenticated, inadmissible, and unreliable hearsay. Rule 703 "was never intended to allow oblique evasions of the hearsay rule," or to:

> Allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.

*Trs. of Boston Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 149 (D. Mass. 2015) (quoting *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013)). In *Everlight*, the court excluded expert testimony that merely "parrot[ed]" hearsay statements that the expert himself obtained by interviewing the defendants' executives. *Id.* (noting that such testimony would render the expert "a ventriloquist's dummy"). Here, the out-of-court statements are even more remote – and improper – because Dr. Fang did not obtain them (in fact he has no idea who even authored them), and because H3C is a non-party to the case. Courts routinely exclude such "mouthpiece" testimony. *See also, e.g., Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) (affirming exclusion of expert witnesses purporting to offer historical perspective concerning the relationship between Marvel and comic book artists where the experts' reports were "by and large undergirded by hearsay statements," and noting that "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony"); *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 972 (D.C. Cir. 2016) ("The expert must form his own opinions by applying his extensive experience and a reliable

methodology to the inadmissible materials. Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows the [proponent] to circumvent the rules prohibiting hearsay.") (internal quotations omitted); *Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) (excluding testimony of expert who merely served as a "mouthpiece" for another's conclusions on a topic proffered expert was not qualified to address); *Pelster v. Ray*, 987 F. 2d 514, 527 (8th Cir. 1993) (parties may not "bring inadmissible hearsay and documents before the jury in the guise of expert testimony to prove subsidiary facts" in the case).

The two-part Rule 703 framework itself confirms the impropriety of Dr. Fang's reliance on the third-party H3C hearsay. First, Plaintiffs cannot show that experts in Dr. Fang's particular field (nanophotonics) would typically rely on documents like the Security Bulletin and the Verification Report. Indeed, Dr. Fang testified that he himself had never before used any document similar to the Security Bulletin or the Verification Report in any of his work. [Dkt. No. 317-6](Dkt. No. 317-6), 31:10-17. That alone cuts off the Rule 703 analysis. *See, e.g., Wai Feng Trading Co. v. Quick Fitting, Inc.*, No. 13-33WES, 2018 U.S. Dist. LEXIS 215311 (D.R.I. Dec. 21, 2018) (excluding expert opinion in part because expert's "two foundational documents are both inadmissible hearsay" and expert did not show that an expert in "the particular field would reasonably rely on those kind of facts or data in forming an opinion on the subject"); *University of R.I. v. A. W. Chesterton Co.*, 2 F.3d 1200 (1st Cir. 1993) (plaintiff's controller not permitted to testify as expert on damages because plaintiff did not demonstrate that the facts the controller relied upon – derived from interviews with undisclosed employees and outside vendors – were those "of a type reasonably relied on by experts in damages assessments").

Even if Plaintiffs could meet the first requirement of the Rule 703 exception, they could not meet the second. The prejudicial effect of permitting Plaintiffs to introduce inadmissible hearsay through Dr. Fang as their sole evidence that the Seized Equipment is counterfeit would vastly outweigh any benefit to the jury in evaluating Dr. Fang's opinion. FED. R. EVID. 703. Plaintiffs intend for the jury to learn about H3C's alleged statements to the Chinese police, and to accept them as true (though Dr. Fang admitted he has no idea whether they are true or not and made no effort to authenticate them, or to verify their truth).[4] Dr. Fang's report would have no value to Plaintiffs otherwise. Indeed, without Exhibits 3 and 4, he would have no "opinion" at all. Dkt. No. 317-6, 18:24-19:4. No jury instruction could remedy this unfair prejudice. *See United States v. Mejia*, 545 F.3d 179, 191 (2d Cir. 2008) (vacating murder conviction where expert's reliance on internet research and other hearsay to describe structure of criminal gang prejudiced jury); *see also Williams v. Illinois*, 567 US 50, 81 (2012) ("if the [proponent] cannot muster any independent admissible evidence to prove the foundational facts that are essential to the relevance of the expert's testimony, then the expert's testimony cannot be given any weight by the trier of fact"); 2 *McCormick on Evidence* § 324.3 (6th ed. 2006) (safeguards of Rule 703 exist, among other reasons, to protect against "Rule 703 improperly becoming a 'backdoor' hearsay exception").

## IV. Dr. Fang's Report Contains Only Observations, Not Expert Opinions

The Court should exclude Dr. Fang's report for the additional reason that the jury itself would be perfectly capable of undertaking the comparison he performed. Expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). As the

---

[4] Dr. Fang also acknowledged that the "indicators" of counterfeiting in the H3C documents were, on their face, inconsistent with his own findings. For example, Figure 7 in the Verification Report purports to be an image of a *genuine* holographic label, but the H3C logo is plainly off-center (*i.e.,* it had one of Dr. Fang's "indicators" of counterfeiting). *See* Dkt. No. 317-4, at Fang Ex. 3. Dr. Fang confirmed the discrepancy but had no explanation for it. Dkt. No. 317-6, 62:15-63:8. This provides further evidence of the unreliable and unhelpful nature of Dr. Fang's "opinions" in this case.

Advisory Committee notes: "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Id.*

Dr. Fang's expertise in nanophotonics adds no value here. He admitted in his deposition that every observation he made — *e.g.*, whether certain holographic labels were damaged, or whether the H3C logo shifted off-center in one direction or another — could be made by a layperson with a naked eye (or, at most, a cell phone camera and a ruler). *See* Dkt. No. 317-6, 50:16-77:8 (walking through each of Dr. Fang's nine "findings" and establishing that they could be made by a layperson (or at minimum that Dr. Fang had no basis to disagree with that statement), and that there is no indication H3C itself used special equipment or took measurements in making the observations described in the Verification Report). Even Dr. Fang's use of a "wedge of fixed inclination angle (27.6º with respect to the horizontal plane)," Dkt. No. 317-4 at 8, had no particular relevance to examination of the transceivers – it was just the standard setup of his lab equipment used for work unrelated to this case. Dkt. No. 317-6, 71:23-72:7. Dr. Fang's testimony should be excluded for this reason, too. *See, e.g.*, *United States v. Silva*, 794 F.3d 173 (1st Cir. 2015) (affirming exclusion of expert testimony by English professor that settings of films were not sexually suggestive where the jurors could reach their own conclusions regarding the contents of the films from their own viewing); *United States v. Brewer*, 783 F.2d 841 (9th Cir. 1986) (affirming exclusion of forensic anthropology expert witness where "[t]he trial court believed that the untrained jury could compare the photographs of the robber with those of [the defendant] without the special assistance of an expert").

At bottom, Plaintiffs seek the benefit not only of otherwise-inadmissible and unreliable hearsay, but also of an MIT professor's apparent endorsement of that hearsay. But such testimony "on a subject that is well within the bounds of a jury's ordinary experience … has little probative value. On the other hand, the risk of unfair prejudice is real. By appearing to put the expert's stamp of approval on [Plaintiffs'] theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged." *United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994). Dr. Fang's testimony should be excluded.

## **CONCLUSION**

Plaintiffs had the opportunity to retain a qualified counterfeiting expert to analyze the Seized Equipment and testify under oath that the Seized Equipment sold by HPFS India is counterfeit. Perhaps they tried, and failed (because such equipment is genuine). Whatever the reason, Plaintiffs cannot use Dr. Fang's report to sidestep the question posed by the Court – is the Seized Equipment *in fact* counterfeit? — in trying to escape (or obtain) summary judgment. Dr. Fang's report should be excluded.

Dated: March 16, 2020

        Respectfully submitted,

        /s/ *Michael H. Bunis*
        Michael H. Bunis (BBO No. 566839)
        G. Mark Edgarton (BBO No. 657593)
        Kevin C. Quigley (BBO No. 685015)
        **CHOATE HALL & STEWART LLP**
        Two International Place
        Boston, Massachusetts  02110
        (617) 248-5000
        mbunis@choate.com
        medgarton@choate.com
        kquigley@choate.com

        Anthony P. Callaghan
        Paul A. Saso
        **GIBBONS P.C.**
        One Pennsylvania Plaza, 37th Floor
        New York, New York, 10119
        (212) 613-2000


        *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Christina T. Lau, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing document was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on March 16, 2020.

/s/*Christina T. Lau*
Christina T. Lau