[HP Logo] Case 1:16-cv-10386-LTS   Document 691-4   Filed 04/16/20   Page 1 of 4

Hewlett-Packard Financial Services (India) Private Limited
An HP Company

| Registered Office: | Head Office: |
|---|---|
| 3rd Floor | 24, Salapuria Arena |
| Calcot House | Hosur, Main Road |
| 8/10 M P Shetty Marg | Adugodi, Bangalore, |
| Tamarind Street | 560 030 |
| Fort, Mumbai | |
| India | |

Tel: +91-80-504-1878
Fax: +91-80-520-3561

22 April 2013

To: Beijing City Haidian District Public Security Bureau

**RE: Explanation on Equipment Sold by HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED ("HPFS INDIA") to ICT COMPANY ("ICT")**

HPFS India hopes hereby to provide a written explanation as follows:

HPFS India became aware that certain employees of ICT have been incarcerated by Public Security Bureau in China due to allegedly selling counterfeit products.

In order to collaborate with the company's department investigation, HPFS India would like to explain the detailed circumstances of the transaction entered into between HPFS India and ICT.

**Background to HPFS India**

HPFS India and HangZhou Huasan Communications Technology, Ltd. ("**H3C China**") are both directly or indirectly wholly-owned subsidiaries of Hewlett-Packard Company.

The objective of HPFS India is to provide financing and asset management solutions to HP's customers in India. HPFS India achieves this objective by the following methods:

- Leasing or financing information technology equipment to HP customers; and
- Providing additional "value added services" to HP customers (e.g. data destruction, logistics, environmentally sound recycling, sale of used equipment etc.).

**Transaction between HPFS India and ICT**

Background to the HPFS India/ICT Transaction

The Commonwealth Games were held in Delhi, India in 2010. As a part of the preparation for the Games, the Organizing Committee for the Games retained Tata Consultancy Services Limited ("**Tata Consultancy**") for the provision of certain services connected to the Games.

For that reason, Tata Consultancy needed to acquire certain information technology equipment to provide those services. Tata Consultancy ordered the required equipment from Inspira Enterprise Private Limited ("**Inspira**"), a distributor of information technology equipment in India.

Due to financial considerations, Tata Consultancy decided to acquire that equipment by leasing it from HPFS India. Consequently, in accordance with the contract stipulations, HPFS India, being a lessor, directly purchased the equipment from Inspira; Inspira issued an invoice for the equipment in HPFS India's name. Simultaneously, HPFS India leased the equipment to Tata Consultancy. In accordance with all conventional practices within an IT leasing industry, a leasing company only plays a "passive financing source" role in the transaction process; the lessee is responsible for purchasing, inspecting, installing the equipment, etc. work and arrangements. HPFS India did not

{Signature}

CONFIDENTIAL                                                                                                                          ICT0001562

Hewlett-Packard Financial Services (India) Private Limited
An HP Company

| Registered Office: | Head Office: |
|---|---|
| 3rd Floor | 24, Salapuria Arena |
| Calcot House | Hosur, Main Road |
| 8/10 M P Shetty Marg | Adugodi, Bangalore, |
| Tamarind Street | 560 030 |
| Fort, Mumbai | |
| India | |

Tel: +91-80-504-1878
Fax: +91-80-520-3561

participate in any selecting equipment activities in this transaction; nor did it inspect the equipment prior to or during the lease.

In total, HPFS India and Tata Consultancy entered into 4 lease transactions (the "**Leases**") as follows:

- Lease Schedule #2751012690/IND/SVA/S/1/A/1 commencing on 28 July 2010
- Lease Schedule #2751012690/IND/SVA/S/1/A/2 commencing on 17 August 2010
- Lease Schedule #2751012690/IND/SVA/S/1/A/3 commencing on 14 September 2010
- Lease Schedule #2751012690/IND/SVA/S/1/A/4 commencing on 12 October 2010.

The terms of the Leases provided that, upon expiration of the lease period, Tata Consultancy could choose to extend the lease period or return the equipment. Tata Consultancy chose to return the equipment.

The HPFS India/ICT Transaction

After the expiration of the equipment lease, ICT indicated to HPFS India that it would be interested in purchasing all or a part of the leased equipment. ICT and HPFS India ultimately agreed to the following arrangement:

- ICT (or its designated broker) would purchase all or part of the leased equipment from HPFS India for a specified purchase price;
- ICT would then re-sell the equipment in the secondary market for used information technology equipment; and
- In the event ICT was able to generate revenue from such remarketing activities of the equipment, over and above certain designated quota, it would be responsible to share a portion of such "upside" with HPFS India.

This transaction arrangement was documented under a Referral and Revenue Share Agreement (the "**Revenue Share Agreement**") signed by HPFS India and ICT on 6 December 2011. A copy of the Revenue Share Agreement is attached to this letter as Annex A. Under the Revenue Share Agreement, ICT was authorized to sell the equipment acquired by it under the arrangement according to the terms/conditions set out in it.

Exercising its rights under the Revenue Share Agreement, ICT instructed HPFS India to sell the first batch of equipment to its nominee in India, Shinto Creative Elements Private Limited ("**Shinto**"). HPFS India sold certain equipment to Shinto under a Wholesale Sale Agreement (the "**Shinto Sale Agreement**") signed on 6 December 2011. A copy of the Shinto Sale Agreement is attached as Annex B. A detailed inventory of the covered equipment (the "**Sold Equipment**") subject to the Shinto Sale Agreement is attached as Annex C. Shinto Sale Agreement was signed by HPFS India on 6 December 2011. The date next to HPSF India signature space (that is 6 December 2012) was printed incorrectly. The person, who signed the agreement (Kevan Bartley), has already confirmed that the agreement was in fact signed on 6 December 2011. The stamp-duty on the Shinto Sale Agreement also clearly indicates December 2011.

{Signature}

CONFIDENTIAL

ICT0001563

**Hewlett-Packard Financial Services (India) Private Limited**
An HP Company

| Registered Office: | Head Office: |
|---|---|
| 3rd Floor | 24, Salapuria Arena |
| Calcot House | Hosur, Main Road |
| 8/10 M P Shetty Marg | Adugodi, Bangalore, |
| Tamarind Street | 560 030 |
| Fort, Mumbai | |
| India | |

Tel: +91-80-504-1878
Fax: +91-80-520-3561

**ICT CHINA**

It is reported that ICT arranged for the Sold Equipment to be imported into China; certain employees of ICT have been incarcerated by Public Security Bureau in China due to allegedly selling counterfeit H3C products. Furthermore, the relevant equipment was seized. After the equipment had been seized, H3C inspected this equipment and, based on the logos found on the equipment, believed that this equipment was counterfeit products.

On 1 February 2013, ICT informed HPFS India about the above incident; ICT believed that the seized equipment was the Sold Equipment.

HPFS India immediately started the investigation of this matter. H3C inspected the seized equipment on behalf of HPFS India and also obtained a partial list of the seized equipment from the Beijing City Haidian District Public Security Bureau. HPFS India compared this data against its data for the Sold Equipment. Based on the available evidence, HPFS India suspects that the part of the seized equipment, the information on which was obtained from the police, might be the same equipment that HPFS (through Shinto) sold to ICT.

Furthermore, HPFS India has also checked photos of the Sold Equipment taken prior to its import into China. These photos were provided by ICT office in the United States. According to these photos, the logos attached to the Sold Equipment were similar to the logos attached to the part of the seized equipment. Copies of the relevant photos are attached as Annex D.

In view of the fact that ICT purchased the Sold Equipment from HPFS India, and taking into consideration that HPFS India and H3C ultimately are both wholly owned subsidiaries of HP, there is nothing wrong with ICT assuming that Sold Equipment is original H3C equipment. (Please refer to the Sold Equipment description being H3C equipment in A Shinto Sale Agreement in the attachment)

Based on the current evidence and HPFS India further investigation, part of the Sold Equipment supplied by Inspira did not come from HP Company. In order to clarify, HPFS India hopes to quickly confirm the relationship between the seized equipment and Sold Equipment. With regards to this, HP China has already submitted a request to Beijing City Haidian District Public Security Bureau to investigate all of the seized equipment as well as to verify and confirm detailed product characteristics of the related products.

As a special note, HPFS India was informed about the alleged accusations against ICT employees only after 1 February 2013 and did not know anything about the allegedly counterfeited equipment it handled.

Hereby submit this letter.

**For and on behalf of Hewlett-Packard Financial Services (India) Private Limited**

{Signature}

[HP Logo] **Hewlett-Packard Financial Services (India) Private Limited**
An HP Company

| Registered Office: | Head Office: |
|---|---|
| 3rd Floor | 24, Salapuria Arena |
| Calcot House | Hosur, Main Road |
| 8/10 M P Shetty Marg | Adugodi, Bangalore, |
| Tamarind Street | 560 030 |
| Fort, Mumbai | |
| India | |

Tel: +91-80-504-1878
Fax: +91-80-520-3561

{Signature}

**David Gill**
**Director – HPFS India**

PS: As request by ICT Company, HPFS India sent a copy of this letter to ICT.

---

I am, Marina Vasilyeva, Chinese interpreter, certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing is a true and correct translation of the copy of the original document.

Signature _MVuc/_     Date _04/14/2016_

Commonwealth of Massachusetts
County of _MIDDLESEX_

On this _14TH_ day of _APRIL_, 20_16_, before me, the undersigned notary public, personally appeared _MARINA VASILYEVA_ (name of document signer), proved to me through satisfactory evidence of identification, which were _MASS. DL_____, to be the person whose name is signed on the preceding or attached document in my presence.

(seal)   JOSEPH A. CAIRA
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 24, 2022

_____
Notary Public Signature

CONFIDENTIAL                                                                                  ICT0001565