## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ALEXANDER STYLLER, INTEGRATED )
COMMUNICATIONS & TECHNOLOGIES, )
INC., JADE CHENG, JASON YUYI, CATHY YU, )
CAROLINE MARAFAO CHENG, PUSHUN )
CHENG, CHANGZHEN NI, JUNFANG YU, )
MEIXIANG CHENG, FANGSHOU YU, and )
CHANGHUA NI, )
                                                     )
                               Plaintiffs, )
                 v. )
                                      )    **Civil Action No. 1:16-CV-10386 (LTS)**
HEWLETT-PACKARD FINANCIAL )
SERVICES COMPANY, HEWLETT-PACKARD )
FINANCIAL SERVICES (INDIA) PRIVATE )
LIMITED, HP INC., HEWLETT PACKARD )
ENTERPRISE COMPANY, and DAVID GILL, )
                                             )
                               Defendants )

## AFFIDAVIT OF ALEXANDER STYLLER

I, Alexander Styller, hereby depose and state as follows:

1.      I am a plaintiff in this Action and the President, Chief Executive Officer and owner of plaintiff Integrated Communications & Technologies, Inc. ("ICT"). I make this affidavit based on my first-hand knowledge and submit it in opposition to Defendants' motions for partial summary judgment and to exclude Plaintiffs' expert witness Dr. Fang and in support of Plaintiffs' cross-motion for partial summary judgment.

2.      The purchase order attached as Exhibit 2 to Kevin Quigley's Declaration dated March 16, 2020 is not a true and correct copy of the purchase order because it combines unrelated documents. The purchase order itself appears as the first three pages of the Exhibit bates-numbered DEF0001138-40 and identifies 2500 transceivers by their part numbers only

(H3C-0231A563 for 2200 SFP transceivers and H3C-0231A438 for 300 FPSs), not by their individual serial numbers.

3.    The Exhibit also includes what Mr. Quigley describes as the "Shinto Inventory List" (DEF0001141-74), which is not part of the purchase order. There is in fact no "Shinto Inventory List" because Shinto did not create any inventory lists for the equipment, did not have the equipment's serial numbers necessary to do it, and was never in physical possession of the Equipment.

4.    There was no inventory list with the equipment's serial numbers accompanying the purchase order. ICT never received an inventory list with the serial numbers of the Equipment it purchased from HPFS India and shipped to China until Defendants produced it in discovery in this Action (in native format as DEF0001174, the "Inventory List").

5.    Prior to the sale and in the course of negotiations, HPFS India only provided ICT a master list with over 12,000 items of the equipment returned by Tata after the Commonwealth Games upon expiration of the leases (the "Master List," DEF0000546) – not the 3370 items actually sold to ICT and shipped to China. The Master List itself was never a part of any contract between ICT and HPFS India, any purchase order or invoice.

6.    The Inventory List produced by Defendants does not accurately reflect the equipment sold to ICT, in two relevant respects.

7.    First, some of the seized transceivers not on the Inventory List (lines 33-127 and 133-35 of Mr. Raina's spreadsheet titled "Units Not on the Inventory List"), appear on the Master List of all Commonwealth Games equipment (DEF0000546). I have determined that by using Excel's VLOOKUP function to compare the serial numbers of the seized transceivers with the Master List.

8.      Second, the Inventory List of the equipment presumably sold to ICT includes 299

transceivers that also appear on the TT Global's list of the equipment remaining in India in 2012

after the ICT sale. I have determined that by using Excel's VLOOKUP function to compare the

Inventory List of the equipment purportedly sold to ICT (DEF0001174) and the list of the

equipment remaining in India in TT Global possession after the ICT sale (DEF0002386). A true

and correct copy of the spreadsheet with the 299 overlapping serial numbers is attached as

Exhibit A hereto.

9.      Accordingly, the equipment sold by HPFS India to ICT and delivered to China

included at least 299 transceivers with unknown serial numbers not on the Inventory List instead

of those 299 that appeared on the Inventory List but actually remained in India.

10.     At the time of ICT's sales of the Equipment in China in 2012, ICT also had a

batch of H3C-branded equipment previously acquired from 3COM, which it was in the process

of marketing. However, the 3COM equipment we had left in 2012 did not contain H3C

transceivers with the same part numbers, H3C-0231A563 and H3C-0231A438, that ICT

purchased from HPFS India. ICT's only source of these H3C transceivers marketed or sold in

China in 2012 was the Equipment acquired from HPFS India.

11.     I personally reviewed the Security Bulletin dated September 9, 2013 on H3C's

official website at http://www.h3c.com.cn/Service/Service_Notice/201005/675683_30005_0.htm

on or about August 7, 2014, as shown in my emails produced to Defendants (ICT00246756), and

saved it on my computer along with its English translation by Google Translate (ICT0259254-

61). (The above link now directs the user to the current version 1.2 of the Security Bulletin, also

in Mandarin).

12.     English-language version of the Security Bulletin, dated December 31, 2019 and titled "Statement on Anti-counterfeiting for H3C Hosts and Optical Modules V1.1," is currently available on H3C's website at http://www.h3c.com/en/Support/Online_Help/Home/201905/1189908_294551_0.htm. A true and correct copy of the Statement on Anti-Counterfeiting is attached as Exhibit B hereto.

13.     All versions of the Security Bulletin contain identical photographic illustrations of the transceivers' holographic H3C logos and their variable optical patterns, except that the 2013 version also contains a comparative illustration of the old anti-counterfeit labels used by H3C prior to May 2010 and of the new labels used afterwards, which illustration is absent from the current versions of the bulletin.

14.     Plaintiffs produced the Security Bulletin in discovery in this action as ICT0686827-33, and provided a true and correct copy of it to Dr. Fang. The Security Bulletin is in Mandarin but it contains self-explanatory images of the H3C trademark holographic logos and their optical patterns. Dr. Fang's native tongue is Mandarin, and he was able to review the Security Bulletin in Mandarin. For convenience, Plaintiffs also provided their English translation of the Security Bulletin to Dr. Fang to accompany the original Security Bulletin.

15.     A true and correct copy of a certified translation of the Verification Report is attached as Exhibit C hereto.

I confirm under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Alexander Styller

Signed this 16th day of April, 2020
Boston, Massachusetts

Theresa M. Milewski

4



THERESA M MILEWSKI
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 21, 2023