UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI, <br><br>　　　　　　　　Plaintiffs, <br><br>　　vs. <br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL, <br><br>　　　　　　　　Defendants. | Civil Action No. 1:16-CV-10386 (LTS) |

**REPLY IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION
TO EXCLUDE THE TESTIMONY OF NICHOLAS XUANLAI FANG, PH.D.**

**TABLE OF CONTENTS**

I. PLAINTIFFS ADMIT THAT DR. FANG IS NOT A COUNTERFEITING EXPERT.  HE PROVIDES NO RELEVANT OPINION. ................................................. 1

II. DR. FANG'S REPORT IS A MERE CONDUIT FOR INADMISSIBLE HEARSAY. ........................................................................................................ 2

    A.      The Verification Report and Security Bulletin are Hearsay. .............................. 2

    B.      Rule 703 Bars Dr. Fang's Testimony. ................................................................ 4

III. DR. FANG'S REPORT CONTAINS ONLY OBSERVATIONS, NOT EXPERT OPINIONS. .......................................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aletia Moon & James Zachary Carrier v. Advanced Med. Optics, Inc.*,
  No. 4:08-CV-0021-HLM, 2010 U.S. Dist. LEXIS 149685 (N.D. Ga. Dec. 29, 2010) ................................................................................................................................3

*Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*,
  669 F. Supp. 2d 514 (M.D. Pa. 2009) ......................................................................................4

*Hernandez v. Smith*,
  No. 1:09-cv-00828, 2015 U.S. Dist. LEXIS 90740 (E.D. Cal. July 12, 2015) .........................3

*People v. Stamps*,
  3 Cal. App. 5th 988 (Cal. App. 2016) ......................................................................................3

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) .........................................................................3

*Ross v. Rothstein*,
  92 F. Supp. 3d 1041 (D. Kan. 2015) ........................................................................................3

*Trs. of Boston Univ. v. Everlight Elecs. Co.*,
  141 F. Supp. 3d 147 (D. Mass. 2015) ......................................................................................5

*United States v. Mest*,
  789 F.2d 1069 (4th Cir. 1986) .................................................................................................4

*United States v. Montas*,
  41 F.3d 775 (1st Cir. 1994) ......................................................................................................5

**Other Authorities**

Fed. R. Evid. 703 ..................................................................................................................2, 4, 5

Fed. R. Evid. 801(d)(2) ...............................................................................................................2, 3

i

Plaintiffs chose not to retain a counterfeiting expert to evaluate whether the Seized Equipment is counterfeit. Their chosen expert, Dr. Fang, has no relevant expertise and offers no helpful opinion. He does not opine that the Seized Equipment is counterfeit, or even that the holographic labels on the equipment are counterfeit. Plaintiffs have no admissible evidence to satisfy their burden of proof on their counterfeiting claims. Dr. Fang's report exists solely as a conduit for introducing to the factfinder inadmissible hearsay in the third-party H3C Verification Report and Security Bulletin. The Court should exclude Dr. Fang's testimony, and disregard it at summary judgment.

I. **PLAINTIFFS ADMIT THAT DR. FANG IS NOT A COUNTERFEITING EXPERT. HE PROVIDES NO RELEVANT OPINION.**

Dr. Fang admitted (and Plaintiffs concede) that he has no expertise or experience in counterfeiting analysis or transceivers. Dkt. No. 317-6, 18:17-20:7; Dkt. No. 341 (SOF) ¶ 22. Dr. Fang also readily admitted that he offers no opinion as to whether the transceivers he examined are actually counterfeit:

> Q: [Y]ou are not offering any opinion regarding whether the transceivers are, in fact, counterfeit, correct?
>
> A: Correct.

Dkt. No. 317-6, 23:7-11.

Plaintiffs try to rescue that critical admission by drawing a distinction between the "transceivers themselves" and the "trademarks attached to them" on the holographic labels. Dkt. No. 332 at 6-8. But Dr. Fang drew no such distinction in his testimony, and in any event it would be meaningless. Dr. Fang offers no opinion on whether the holographic labels are actually counterfeit, either. He simply compared his observations of the labels to supposed "indicators of counterfeiting" set forth in the H3C Verification Report and the Security Bulletin, but admitted that he does "not have any opinion about [the] accuracy or authenticity of those" documents and

made no effort to determine whether the statements therein were true and accurate. Dkt. No. 317-6, 23:12-24:8; 27:2-5; Dkt. No. 341 ¶ 26. That is, Dr. Fang does not know (because he has no independent expertise) whether the "indicators" of counterfeiting in those third-party documents are in fact true indicators of counterfeiting that are even applicable to the holographic labels he examined. Dkt. No. 317-6, 18:17-23, 21:3-8.[1] Under any construct of counterfeiting — "transceivers themselves" or labels thereon — Dr. Fang has no relevant expertise, and offers no relevant opinion.

## II.  DR. FANG'S REPORT IS A MERE CONDUIT FOR INADMISSIBLE HEARSAY.

Dr. Fang's entire report rests on the truth of the matters asserted in the Verification Report and the Security Bulletin, *i.e.*, the validity of the supposed "indicators of counterfeiting." Without those documents, he would have no opinion at all. Dkt. No. 317-6, 18:24-19:4. But the Verification Report and the Security Bulletin are textbook hearsay, and the case law and Rule 703 prohibit Plaintiffs' use of Dr. Fang as a "mouthpiece" for the third-party H3C statements on which he purports to base his opinion. *See* Dkt. No. 319 at 4-7 and cases cited therein.

### A.  The Verification Report and Security Bulletin are Hearsay.

Plaintiffs attempt to characterize the Verification Report as a party-opponent admission under Rule 801(d)(2). Dkt. No. 332 at 10-12. As detailed in Defendants' summary judgment brief filed herewith, however, Plaintiffs have *zero* factual or legal basis to avail themselves of those hearsay exceptions. Dkt. No. 342 at 6-8. The record contains no evidence that Defendants were even aware of the Verification Report before it was submitted to the Chinese authorities, much less

---

[1] Defendants explained in their opening brief that Dr. Fang incorrectly assumed that any label similar to the example "authentic" label provided in the Security Bulletin was manufactured after the May 10, 2010 date recited in that document. Dkt. No. 319, n. 2. Plaintiffs' lengthy rebuttal (pp.18-19) regarding "old Chinese-character logos" misses the point — the date code data captured by Mr. Raina shows that dozens of transceivers with labels similar to the *new* logos were, in fact, manufactured prior to May 10, 2010. This is just one example where Dr. Fang's lack of relevant knowledge or expertise renders his opinion unreliable and not helpful to the jury.

2

that they authorized, requested, or "jointly drafted" the document. *Id.* The Verification Report is H3C's statement alone.

The Security Bulletin, too, is hearsay. Plaintiffs invoke the hearsay exception for photographic evidence, and suggest that Dr. Fang merely relied on illustrations in the Security Bulletin showing sample labels. Dkt. No. 332 at 12. But even assuming that those images could qualify as "photographs," Dr. Fang plainly also relied on the Security Bulletin's written statements to ascribe meaning to the images — *i.e.*, in deciding that they contain "indicators" of counterfeiting. *See*, *e.g.*, Dkt. No. 317-4 (Fang Report) at 2 ("I have reviewed the **H3C security bulletin explaining the security features of its trademark logos** on the transceivers manufactured after May 10, 2010 (in Mandarin, which is my first language).") (emphasis added); Dkt. No. 317-6 (Fang Dep.), 25:5-8 ("My understanding is that **[the Security Bulletin] provides the guidelines of the label**, in particular the hologram label, as a method of authentication or anticounterfeiting."). Without assuming the truth of the written third-party statements in the Security Bulletin, Dr. Fang would have no basis to use the document or the photographs at all. That is the very definition of inadmissible hearsay.[2]

---

[2] Courts routinely exclude third-party website printouts containing written assertions offered for their truth. *See, e.g., See Ross v. Rothstein*, 92 F. Supp. 3d 1041, 1054-55 (D. Kan. 2015) (screen prints inadmissible on summary judgment because they were hearsay and plaintiff identified no exception that would allow consideration of the evidence); *Hernandez v. Smith*, No. 1:09-cv-00828, 2015 U.S. Dist. LEXIS 90740, at *12-13 (E.D. Cal. July 12, 2015) (striking website printouts as inadmissible hearsay, lacking foundation, and unauthenticated); *Aletia Moon & James Zachary Carrier v. Advanced Med. Optics, Inc.*, C.A. No. 4:08-CV-0021-HLM, 2010 U.S. Dist. LEXIS 149685, at *22-24 (N.D. Ga. Dec. 29, 2010) ("material from internet websites constitutes inadmissible hearsay if offered to prove the truth of the material"). In *Perfect 10, Inc. v. Cybernet Ventures, Inc.* (cited by Plaintiffs), by contrast, website printout was introduced merely to show that images and text appeared on a website, not for the truth of the matters asserted. 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002).

Elsewhere, Plaintiffs note that the legal framework in *People v. Stamps*, 3 Cal. App. 5th 988 (Cal. App. 2016) was later overruled. Dkt. No. 332 at 14. Defendants cited that case in their summary judgment brief simply for the "common judicial skepticism of evidence found on the Internet," Dkt. No. 316 at 7 (quoting *Stamps*). Defendants did not rely on the California doctrine of "case-specific hearsay" at issue in *Stamps* because it does not apply here. Plaintiffs' long discussion of *Stamps* is therefore irrelevant to the issues raised by Defendants' *Daubert* Motion.

### B. Rule 703 Bars Dr. Fang's Testimony.

Plaintiffs argue that even if the Verification Report and Security Bulletin are hearsay (and they are), Rule 703 permits Dr. Fang to rely on them nonetheless. To the contrary, the two-part Rule 703 analysis confirms that such testimony is improper. *See* F.R.E. 703.

Plaintiffs' attempt to use Dr. Fang as a conduit for unreliable hearsay fails at the threshold: they cannot show that experts in Dr. Fang's particular field (nanophotonics) would typically rely on documents like the Security Bulletin and the Verification Report. "While Federal Rule of Evidence 703 permits experts to rely on hearsay, it must be the kind of hearsay that is reasonably relied upon in ***their*** field." *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 669 F. Supp. 2d 514, 527-28 (M.D. Pa. 2009) (emphasis added) (excluding testimony of industrial hygienist relying on anecdotal hearsay evidence where there was no showing that it was practice in hygienist's field to rely on such hearsay statements); *see also United States v. Mest*, 789 F.2d 1069, 1073 (4th Cir. 1986) (evidence of hypnotic sessions excluded where appellant did not show whether experts in the "particular field ***practiced by [appellant's expert]***" reasonably rely on such facts or data) (emphasis added). Plaintiffs' argument inadvertently proves the point: "It would be a common and valid practice for any ***expert in inspecting trademarks for counterfeiting*** to rely on the trademark holder's criteria of counterfeiting." Dkt. No. 332 at 14. Dr. Fang is not such an expert. He admitted that he had never used documents like the Verification Report or the Security Bulletin in any of his work. Dkt. No. 317-6, 31:10-17. And Plaintiffs cite no legal authority that would permit Dr. Fang to rely on such hearsay in this case. That alone is fatal to their Rule 703 argument, and dispositive of this motion.

Nor do Plaintiffs offer any compelling argument on the second prong of Rule 703 — that the probative value of the expert's opinion outweighs its prejudice. Dkt. No. 332 at 15-16. Plaintiffs' only apparent argument is circular: there is no prejudice because the Verification Report and the Security Bulletin are not hearsay. As established above, the statements in those documents

4

*are* hearsay.  Without them, Dr. Fang would have no opinion at all, and no value to Plaintiffs. Plaintiffs seek to inform the jury that H3C stated to the Chinese police that the Seized Equipment was counterfeit, and then — with the imprimatur of an MIT professor, and without Defendants' opportunity to cross-examine H3C — have the jury accept those H3C statements as true.  The safeguards of Rule 703 exist to prevent exactly this type of unfair prejudice.  *See Trs. of Boston Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 149 (D. Mass. 2015) (Rule 703 "was never intended to allow oblique evasions of the hearsay rule," or to "[a]llow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion").

### III.    DR. FANG'S REPORT CONTAINS ONLY OBSERVATIONS, NOT EXPERT OPINIONS.

As explained in Defendants' opening brief, Dr. Fang's testimony would not be helpful to the factfinder because he merely made basic observations of the transceiver labels and drew conclusions that did not require any of his expertise.  Plaintiffs' efforts to bolster the scientific rigor of Dr. Fang's "not very challenging yet quite demanding task" (Dkt. No. 332 at 1) by tallying up data points and describing his laboratory equipment cannot mask the reality that a layperson jury could make the same fundamental observations and comparisons.[3]  Such testimony — "well within the bounds of a jury's ordinary experience" — has little probative value.  *United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994).  But it would prejudice Defendants by "appearing to put [Dr. Fang's] stamp of approval on [Plaintiffs'] theory, [and] might unduly influence the jury's own assessment of the inference that is being urged" — namely, the truth of the inadmissible H3C hearsay.  *Id.*

---

[3] Indeed, as Dr. Fang admitted in his deposition, he cited to a resource which states that "the main reason for using a hologram as an optical protective element is to take advantage of the fact that it enables a ***nonspecialist*** to visually (i.e. with the unaided eye) recognize a number of protective marks."  Dkt. No. 317-6, 91:9-92:1 (emphasis added).

5

## **CONCLUSION**

For the reasons set forth above and in Defendants' opening brief, Dr. Fang's unhelpful report and opinions should be excluded.

Dated: April 30, 2020        Respectfully submitted,

/s/ *Michael H. Bunis*
Michael H. Bunis (BBO No. 566839)
G. Mark Edgarton (BBO No. 657593)
Kevin C. Quigley (BBO No. 685015)
**CHOATE HALL & STEWART LLP**
Two International Place
Boston, Massachusetts  02110
(617) 248-5000
mbunis@choate.com
medgarton@choate.com
kquigley@choate.com

Anthony P. Callaghan
Paul A. Saso
**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York, 10119
(212) 613-2000

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

    I, Christina T. Lau, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing document was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on April 30, 2020.

                                               /s/*Christina T. Lau*
                                               Christina T. Lau

9708309