UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI,<br><br>                Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL<br><br>                Defendants. | Civil Action No. 1:16-CV-10386 (LTS) |

## DEFENDANTS' STATUS REPORT

WHEREAS, the Court entered an order on March 10, 2020, [ECF 312] requiring that the parties submit a joint status report concerning objections to proposed deponents; and

WHEREAS, the Court entered an order on August 13, 2020 [ECF 369, (collectively with ECF 312, the "Orders")] requiring that the parties "file a status report within 14 days presenting their respective positions as to the further discovery and motion practice required in advance of the trial scheduled in this case"; and

WHEREAS, the parties have met and conferred concerning the requirements of the Orders;

2849220.1 108164-84842

DEFENDANTS HEREBY submit their reports concerning their discovery positions:

On August 26, 2020, the parties met and conferred concerning this Status Report. At that time, Plaintiffs' counsel notified Defendants' counsel that he anticipated that Plaintiffs may engage additional, but not replacement counsel, in this action. Plaintiffs' counsel declined to take a position on behalf of Plaintiffs on the substance of this Status Report during the telephone conference. On August 27, 2020, Defendants' counsel circulated a template form for this Status Report and requested Plaintiffs' positions for inclusion. In response, Plaintiffs' counsel replied via email:

> Paul -- as I mentioned during our meet and confer yesterday, we are in discussion with a big law firm looking to join the case. Our contacts there are on vacation this week (as am I), and we were not able to discuss your proposal in the 4 hours your gave us to respond. Plaintiffs would like to have the opportunity to have their views on this matter, and we would like to reserve our position on the deponents and submit it when the remote deposition protocol is submitted after Labor Day.
> Regards,
> Dimitry

Notwithstanding Plaintiffs' failure to provide their positions, in compliance with the Orders, Defendants submit their positions with respect to further discovery.

**I.     Depositions**

    **A.     Proposed Deponents**

        **1.     Plaintiffs' Proposed Deponents**

Plaintiffs propose to take the same ten depositions as were proposed in the Joint Status Report filed on February 27, 2020. [ECF 308 at 14.]

Consistent with Defendants' position in the February 27, 2020 Joint Status Report, Defendants do not object to Plaintiffs' proposed deponents, but reserve their right to object to any topic listed in a formal Notice of Deposition pursuant to Rule 30(b)(6) once properly served.

Likewise, Defendants do not object to Plaintiffs naming Ross West and/or Jessica Liu as potential deponents, but note that neither individual is an employee of any Defendant as of this date.

    **2.    Defendants' Proposed Deponents**

    a.    Alexander Styller
    b.    Jade Cheng
    c.    Jason Yuyi
    d.    Cathy Yu
    e.    Caroline Marafao Cheng
    f.    Ryan Quinn
    g.    Alexander Pekar
    h.    One Shinto representative (identity to be determined)
    i.    One to Two iHub Solutions representative(s) (identities to be determined)
    j.    Val Faybush
    k.    Anatoly Grabkovksy (aka Tony Grabo)
    l.    Marina Vasilyeva

Due to the Court's severance of the Family Plaintiffs from an initial trial scheduled to begin in May 2021, Defendants have withdrawn the proposal to currently depose the Family Plaintiffs who are Chinese residents. Defendants will seek the depositions of those Family Plaintiffs when, and if, a second trial is required. Also, in recognition of the Court's August 13, 2020 order concerning spoliation sanctions [ECF 368], Defendants have withdrawn the proposal to depose Yevgeny Sadovnikov and Nick Makarovsky because their testimony was expected to relate to ESI issues.

Defendants continue to request the depositions of Val Faybush and Anatoly Grabkovsky, and since the February 27, 2020 Status Report, wish to add Marina Vasilyeva as an additional deponent. On August 26, 2020, the parties met and conferred concerning any objections to Defendants' proposed deponents by telephone conference with Dimitry Joffe, Anthony Callaghan and Paul Saso participating. Unfortunately, Plaintiffs' counsel was unable to state with any clarity

whether Plaintiffs are objecting to any of the Defendants' proposed deponents. Although Plaintiffs' counsel noted that Plaintiffs did not previously object to all but Faybush and Grabkovsky in the February 27, 2020 Status Report, he was unable to confirm either that Plaintiffs (1) continue to object to those two witnesses or (2) do not raise any new objections to any of the other proposed deponents that are not Plaintiffs in this action (*i.e.*, Ryan Quinn, Alexander Pekar, and representatives from Shinto and iHub Solutions, Inc.). Plaintiffs' counsel declined to take a position with respect to whether Plaintiffs raise any objections to any deponents other than the Plaintiffs themselves because, he noted, Plaintiffs may engage new counsel and they may wish to take a position with respect to deponents. Defense counsel informed Plaintiffs' counsel that they would be submitting their list of proposed deponents, in compliance with the Court's March 10, 2020 Order [ECF 312] and Plaintiffs could respond in today's Joint Status Report as they wish.

**Val Faybush**: Mr. Faybush was employed by ICT during the relevant time period and has direct knowledge of relevant events, including, but not limited to: (1) ICT possibly acquiring H3C equipment from a source other than Defendants in January 2012 (*i.e.*, only a month before receiving the equipment relevant to this matter in February 2012) that ICT suspected "might be fakes" [ECF 354-11], (2) an email exchange between Styller and Faybush concerning ICT's proposal to "re-print" and "duplicate" holographic labels. (ICT 37656).

**Anatoly Grabkovksy**: Mr. Grabkovsky was employed by ICT during the relevant time period and has direct knowledge of relevant events, including but not limited to: (1) Mr. Grabkovsky's review of ICT's stock of H3C transceivers and his ability to "check the counterfeit request on the software side" (ICT 246863) and (2) ICT's investigation and review of Yu and Yuyi's email when they could not be found in December 2012 and prior to ICT learning of their arrests.

**Marina Vasilyeva**: Ms. Vasilyeva was employed by ICT during the relevant time period and provided a translation of a letter purportedly submitted by HPFS India to the Chinese authorities in April 2013. The Court directly relied upon Ms. Vasilyeva's translation of such letter in its decision on Defendants' motion for partial summary judgment on the counterfeiting issue, and determined that the letter Ms. Vasilyeva translated "permits the conclusion that H3C served as an agent of HP India for the purposes of inspecting the seized goods." [ECF 369, quoting Ms. Vasilyeva's translation [ECF 331-4 at 3]: "<u>H3C inspected the seized equipment on behalf of HPFS India</u> …" (emphasis in the Court's order)]. Defendants have translated the April 2013 letter that was *actually* submitted to the Chinese authorities, and notably, the above phrase does not appear in that letter, nor does any statement concerning H3C acting "on behalf of" or in any agency capacity for Defendants. Defendants require the deposition of Ms. Vasilyeva to determine what document she translated from Chinese to English and, if it corresponds (or not) with the version of the April 2013 letter that was submitted to the Chinese authorities, and question her concerning her translation.

Testimony by defense witnesses is expected to elicit the actual language used in the letter filed by HPFS India with the PSB. Testimony will establish that H3C did not inspect the seized equipment on behalf of HPFS India, did not act as Defendants' agent in submitting the Verification Report upon which Plaintiffs rely; nor did H3C consult with Defendants, seek their input, obtain any advice concerning, share any comments or edits, or even notify Defendants of its intention to submit the Verification Report to the Chinese authorities prior to doing so. Ms. Vasilyeva's translation of the April 2013 HPFS India letter was critical to the Court's decision on Defendants' motion for partial summary judgment on the counterfeiting issue and, because of its questionable accuracy, Defendants require specific discovery into it prior to trial. Ms. Vasilyeva's deposition,

taken together with the testimony from defense witnesses, will help clarify this issue, and will help correct and complete the record for an *in limine* determination as to the admissibility of the controversial Verification Report at trial.

Because Plaintiffs' counsel refused to discuss objections to Defendants' proposed deponents during the meet and confer telephone conference yesterday, Defendants are unable to identify what, if any, objections Plaintiffs may have to these obviously relevant witnesses and appropriately respond thereto. In the absence of any filing by Plaintiffs, Defendants respectfully request that the Court permit Defendants to take all of the proposed depositions or notify the parties if any more formal motion practice is required.[1]

## II.     Logistics of Depositions

The parties are actively negotiating a protocol to govern the taking of remote depositions, to the extent that the same shall be necessary in the evolving circumstances concerning COVID-19. The parties are discussing the methods and means of taking remote depositions, including, among other things, the proper video software, security, the presentation of deposition exhibits, etc. The parties anticipate submitting a formal protocol concerning the same to the Court shortly after Labor Day.

### Yu and Yuyi's Travel to the United States

Assuming no material change in the global pandemic in the near term, Defendants do not object to Plaintiffs Yu and Yuyi sitting for their depositions remotely. However, Yu and Yuyi (along with Styller, Jade and Caroline Cheng) all allege that they have and continue to suffer

---

[1] Defendants are not in a position to state with certainty what additional motion practice may be required prior to trial, but anticipate the possibility of motions relating to, among other things: (1) partial summary judgment concerning Plaintiffs' second half of claims relating to an alleged conspiracy among Defendants, (2) spoliation sanctions relating to Caroline Marafao Cheng's disposal of her computer during the relevant time period, (3) compel discovery concerning Jade and Caroline Marafao Cheng's green card applications, and (4) other pre-trial *in limine* and *Daubert* motions.

medical, physical and/or psychological damages.  Defendants demand that Yu and Yuyi, as well as Styller and Jade and Caroline Cheng, submit themselves to appropriate medical and psychological examinations that must be conducted in-person.  Because of this further requirement, Defendants require Yu and Yuyi to travel to the United States for their examinations.  Current U.S. travel restrictions only apply to persons "physically present within the People's Republic of China … **during the 14-day period preceding their entry into the United States**."  (White House Proclamation on Suspension of Entry as Immigrants and Non-immigrants of Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus, dated January 31, 2020, emphasis added).  Thus, Yu and Yuyi are permitted to travel to the United States if they first travel to another interim location for fourteen days, from which they may then travel directly to the United States.  Once here, and once their examinations have been completed, the parties agree that they may attend their depositions remotely via videoconferencing software like the other deponents.

Ordinarily, plaintiffs are required to make themselves available for examination in the district in which suit was brought.  *See Stammler v. JetBlue Airways Corporation*, No. 16-CV-11713-IT, 2017 WL 3131985, at *1 (D. Mass. Apr. 21, 2017).  The prejudice arising from failure to appear for examination is greater where, as here, plaintiffs must also submit to a medical and/or psychological examination by a qualified medical professional.  *See Warren v. Weber & Heidenthaler, Inc.*, 134 F. Supp. 524, 525 (D. Mass. 1955) (requiring plaintiff to appear in Massachusetts for both his deposition and physical examination and noting "[a] Maine physician as a future witness would constitute a real handicap to the defendant"); *see also Daly v. Delta Airlines, Inc.*, No. 90 CIV. 5700 (MEL), 1991 WL 33392, at *2 (S.D.N.Y. Mar. 7, 1991) (requiring Irish plaintiff to appear in New York for his deposition, noting that plaintiff would likely have to travel to New York for a physical examination

7

anyway). Defendants are cognizant that the Coronavirus poses unique challenges, but the above general rule is equally applicable in these uncertain times.

Where, as here, Plaintiffs Yu and Yuyi have made several allegations regarding their physical and mental health and have produced a dearth of medical records (a few pages only), it is even more crucial that their medical and psychological examinations be held in-person. Specifically, Yuyi alleges that he suffered pain in his back and legs, joint pains in his feet, back, and knees, suffered from beriberi, weight loss, sleep deprivation, heartache, *shenjingbing*, stress, fear, and suffered from respiratory problems. Yuyi also alleges that he feels anxious and depressed.

Yu alleges that she suffered from beriberi, from pain in her back and legs. In addition, she alleges that she suffers weight loss, sleep deprivation, heartache, *shenjingbing*, stress, fear, and feels anxious and depressed. She alleges joint pains in her feet, back, and knees and suffered from respiratory problems.

Defendants' expert physician and/or psychiatrist will not have the benefit -- as one would normally expect in a case involving medical, physical and psychological damages -- of being able to examine years of medical, pharmaceutical and insurance records to compare those with the symptoms that the plaintiff currently exhibits. Here, due to the near absence of any such records, an in-person examination will be of the utmost importance. The expert(s) must be able to physically examine the Plaintiffs (including Yu and Yuyi) to determine whether they actually exhibit any of the conditions of which they complain. Likewise, a psychological examination must be conducted in-person so as to allow the expert to examine the Plaintiffs' body language and other physical responses and characteristics. Failure to provide Defendants' expert(s) these critical data points would deprive them, and Defendants, of the ability to effectively and accurately observe,

diagnose and analyze Plaintiffs' damages allegations. Moreover, Plaintiffs Yu and Yuyi will require a Chinese-English translator which further complicates their medical examinations if not completed in-person. Thus, not proceeding with these examinations in-person would severely diminish Defendants' ability to effectively prepare for trial.

## **CONCLUSION**

Defendants respectfully submit the above Status Report for the Court's consideration.

Dated: August 27, 2020                                Respectfully submitted,

/s/ *Paul A Saso*
Michael H. Bunis (BBO No. 566839)
G. Mark Edgarton (BBO No. 657593)
Kevin C. Quigley (BBO No. 685015)
**CHOATE HALL & STEWART LLP**
Two International Place
Boston, Massachusetts  02110
(617) 248-5000
mbunis@choate.com
medgarton@choate.com
kquigley@choate.com

Anthony P. Callaghan
Paul A. Saso
**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York, 10119
(212) 613-2000

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Kevin C. Quigley, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing document was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on August 27, 2020.

/s/*Kevin C. Quigley*
Kevin C. Quigley