UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI,<br><br>                      Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL<br><br>                      Defendants. | Civil Action No. 1:16-CV-10386 (LTS) |

## DEFENDANTS' STATUS REPORT

Defendants submit this status report with the goal of efficiently resolving an attorney-client privilege issue regarding an important document in this case.

As Defendants recently brought to the Court's attention, they recently discovered that a key document relied upon by the Court in resolving the parties' competing motions for partial summary judgment — the April 2013 letter submitted by HPFS India to the Chinese police — was not, in fact, the final version of that document.[1]  *See* ECF 371.

Following the Court's summary judgment decision, Defendants had cause to conduct an investigation into whether the Chinese-language version of the letter that was actually submitted

---

[1] The final version, as translated, does not contain language that the Court found significant in denying Defendants' summary judgment motion:  namely, it does not say that "H3C inspected the seized equipment on behalf of HPFS India."

to the Chinese authorities in April 2013 (the "Final April 2013 Letter") was produced in this litigation by either Defendants or Plaintiffs and, if not, why.  Defendants learned that they had not previously produced the Final April 2013 Letter because it had been inadvertently designated as non-responsive by contract attorneys who conducted the first-level document review prior to the uploading of documents for review by outside defense counsel, Gibbons P.C.

Defendants produced the Final April 2013 Letter to Plaintiffs on October 2, 2020 as DEF 2899-2901.  Plaintiffs have since raised repeated questions about the authenticity of that document, and suggested that Defendants fabricated it after the Court's summary judgment ruling.  The parties met and conferred via several telephone meet and confer conferences and exchanges of correspondence.  In an effort to address Plaintiffs' concerns, Defendants produced metadata showing it was, in fact, created in April 2013.  Plaintiffs were not satisfied, and threatened to move to compel production of otherwise privileged materials if Defendants did not agree to enter into a proposed Rule 502 Order that would purportedly permit Defendants to disclose to Plaintiffs certain documents without waiver of privilege as to the subject matter of that document, its provenance, and communications surrounding it.

The privilege questions raised by this dispute are particularly pressing in light of the upcoming deposition of Defendant David Gill, an HPE attorney in Australia who signed and authorized submission of the Final April 2013 Letter.

Defendants proposed to Plaintiffs, and now respectfully propose to the Court, the following resolution, detailed more fully below:  that the Court conduct an *in camera* review of two privileged documents to satisfy itself of the authenticity of the Final April 2013 Letter and, if necessary, enter a Rule 502 order regarding a limited waiver.

**I.      The Final April 2013 Letter**

As noted above, Defendants began an investigation into whether the letter that was actually submitted to the Chinese authorities in April 2013 had been previously produced by the parties. During the course of that investigation, Defendants learned that the privileged email communication that transmitted the Final April 2013 Letter had been inadvertently designated as non-responsive by contract attorneys -- retained by Defendants' outside E-Discovery vendor -- who conducted a first-level review prior to uploading documents for review by outside defense counsel. As a result, outside defense counsel did not get to see that email or the attached Final April 2013 Letter in their review of the documents for production (or to be withheld under a privilege designation) and, thus, did not log it as privileged. However, several responses to that email *were* appropriately marked as responsive by the contract attorneys and were later reviewed and logged as privileged by outside counsel. (Ex. A., Defs' Privilege Log at Entries 471-74 and 480-83.)

After this inadvertent mis-designation/oversight was discovered, Defendants produced the Final April 2013 Letter at DEF 2899-2901. Defendants also produced a revised privilege log with an added entry for the previously-undiscovered, underlying privileged email to which the Final April 2013 Letter was attached. (*Id*. at Entry 834.)

Plaintiffs subsequently raised questions concerning the authenticity of the Final April 2013 Letter and, in telephone conferences with Messrs. Callaghan and Saso, suggested that Defendants and/or defense counsel had recently created the Final April 2013 Letter for litigation purposes and "in response to" this Court's decision on the motions for partial summary judgment. In Plaintiffs' more recent letter, they less obliquely suggest that Defendants "concealed or falsified key

3

documentary evidence….." (Ex. B, October 28, 2020 Letter.)[2]  In an effort to assuage any legitimate concerns about the authenticity of the April 2013 Letter, Defendants have subsequently also produced metadata for the Final April 2013 Letter which confirms that the document was created in April 2013—not 2020.  Defendants also assured Plaintiffs that Defendant David Gill, whose deposition has not yet been taken, is prepared to testify as to the authenticity of the Final April 2013 Letter.

Defendants' production of the Final April 2013 Letter in native format (*i.e.*, pdf format) and its underlying metadata did not, however, satisfy Plaintiffs.  Plaintiffs instead changed their demand and insisted that Defendants also produce the Final April 2013 Letter in Word format, in addition to the metadata associated with that document, with the privileged emails contemporaneously transmitting the Final April 2013 Letter in both pdf and Word format thrown in for good measure.[3]

## II.     The Authenticity Documents

As noted, Defendants have already produced the pdf of the Final April 2013 Letter itself, as well as its underlying metadata, that illustrate that it was created in April of 2013.  There are additional documents that would confirm the authenticity of the Final April 2013 Letter, including: (a) the Final April 2013 Letter in Word format, (b) the metadata for the Final April 2013 Letter in Word format, and (c) the transmitting emails for the Final April 2013 Letter in addition to

---

[2]     Of course, it is nonsensical to claim that Defendants "concealed" the Final April 2013 Letter because it is *more* favorable to Defendants than the version that the Court relied upon in deciding the motions for partial summary judgment.  The claim that Defendants recently "falsified" the Final April 2013 Letter is without basis in fact and flatly contradicted by the metadata already produced (as discussed further above) which establishes that the pdf of the Final April 2013 Letter was created in 2013.

[3]     Defendants had previously logged on their original privilege log the email that attaches two Word versions of the Final April 2013 Letter (both in clean and redline version) as privileged and they appear on Defendants' privilege log at Entries 461-63.

contemporaneous email communication confirming the evolution of that document in the final stages of its completion (the "Authenticity Documents").

Defendants wish to authenticate the Final April 2013 Letter to the satisfaction of the Court, but the Authenticity Documents are all privileged.

### III.     The Parties' Proposals Concerning the Authenticity Documents

Plaintiffs demanded that Defendants agree to a limited waiver of the attorney-client privilege and work product doctrine with respect to certain documents related to the Final April 2013 Letter on threat that, if Defendants refused, Plaintiffs would move to compel their production based on an argument that the privilege had been waived due to Defendants' alleged failure to log them on their original privilege log.[4]  Although Defendants remain interested in providing sufficient proof of the authenticity of the Final April 2013 Letter, Defendants raised concerns that, based on case law Defendants already provided to Plaintiffs, this Court may not have the authority to limit any voluntary waiver of the privilege to only a limited set of documents as opposed to the broader subject matter. *See, e.g.,* Addendum to the Advisory Committee's Notes entitled "Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence" (Rule 502 "does not alter the law regarding waiver of privilege resulting from having acquiesced in the use of otherwise privileged information" and "does not provide a basis for the court to enable the parties to agree to a selective waiver of the privilege, such as to a federal agency conducting an investigation, while preserving the privilege as against other parties seeking the information"); *Xy v. Trans Ova Genetics*, 17-cv-944, 2018 U.S. Dist. LEXIS 239539 at *13 (D. Colo. May 14, 2018);

---

[4]     Defendants understand that Plaintiffs may seek to concurrently file a motion to compel production of the Authenticity Documents.  Plaintiffs' expected motion will fail for several reasons, not least of which is the fact that all but one email included within the Authenticity Documents *were* included on Defendants' privilege log and are, therefore, not subject to any argument concerning waiver.  The single email that was not logged is directly due to the inadvertent designation made by contract attorneys, as discussed above.  In other words, Plaintiffs seek not only the one email that was inadvertently omitted from Defendants' privilege log, but also indisputably privileged material.

*Ringelberg v. Vanguard Integrity Professionals-Nev., Inc.*, 2:17-cv-1788, 2018 U.S. Dist. LEXIS 11643, at *12-13 (D. Nev. Jan. 24, 2018); *Smith v. Best Buy Stores, L.P.*, 4:16-cv-296, 2017 U.S. Dist. LEXIS 130010, at *9-13 (D. Idaho Aug. 14, 2017); *Potomac Elec. Power Co. v. United States*, 107 Fed. Cl. 725, 727 (2012).[5]

Plaintiffs circulated to Defendants a proposed draft Rule 502 Order that did not, in many respects, conform to the proposal that the parties had discussed in their telephone conferences. (Ex. C.) Defendants provided a counterproposal (Ex. D)[6] which allowed: first, for an *in camera* review of the documents that confirm the authenticity of the Final April 2013 Letter; second, Defendants could produce the Authenticity Documents to Plaintiffs if the Court determined both that (a) it was necessary, after the Court's *in camera* review, for Defendants to share the Authenticity Documents with Plaintiffs, and (b) Rule 502 can apply to voluntary, and not just to inadvertent, waivers of attorney-client privilege and the work product doctrine, and (c) that the Court is thus authorized to enter a Rule 502(d) order that would limit the waiver of the privilege to only the Authenticity Documents. Defendants proposed an initial *in camera* review because the Court has effectively used this tool in the past in response to Defendants' motion to compel information concerning Plaintiffs' use of third-party litigation funding sources. The sole portion of Defendants' counterproposal to which Plaintiffs objected in their response letter dated October 28, 2020 (Ex. B) was the proposal that the Court review, *in camera*, the Authenticity Documents -- claiming that the Court is not equipped to confirm the authenticity of the Final April 2013 Letter because the Court is not a "specialist in document forensics." Respectfully, no such expertise is required. The creation dates for both the pdf and Word versions of the Final April 2013 Letter

---

[5]   Despite Defendants' request, Plaintiffs have not provided to Defendants any authority to support that Rule 502(d) orders may apply to voluntary, and not just to inadvertent, production of privileged material.

[6]   Defendants provided a redline comparison to Plaintiffs of the two draft proposed Rule 502 Orders and Defendants submit the same redline comparison for the Court. (Ex. E.)

plainly indicate that the documents were created in April 2013.  No reasonable lay person would conclude otherwise.

## **CONCLUSION**

Defendants respectfully submit the above Status Report for the Court's consideration, and ask that the Court enter the proposed order attached hereto as Ex. C.


Dated: October 30, 2020                                    Respectfully submitted,

/s/ *Paul A. Saso*
Michael H. Bunis (BBO No. 566839)
G. Mark Edgarton (BBO No. 657593)
Kevin C. Quigley (BBO No. 685015)
**CHOATE HALL & STEWART LLP**
Two International Place
Boston, Massachusetts  02110
(617) 248-5000
mbunis@choate.com
medgarton@choate.com
kquigley@choate.com

Anthony P. Callaghan
Paul A. Saso
**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York, 10119
(212) 613-2000


*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I, Kevin C. Quigley, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing document was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on October 30, 2020.

                                          */s/ Kevin C. Quigley*
                                          Kevin C. Quigley

2784122.1 108164-84842