# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ALEXANDER STYLLER, INTEGRATED
COMMUNICATIONS & TECHNOLOGIES,
INC., JADE CHENG, JASON YUYI, CATHY
YU, CAROLINE MARAFAO CHENG,
PUSHUN CHENG, CHANGZHEN NI,
JUNFANG YU, MEIXIANG CHENG,
FANGSHOU YU, and CHANGHUA NI,

                Plaintiffs,

    vs.

HEWLETT-PACKARD FINANCIAL
SERVICES COMPANY, HEWLETT-
PACKARD FINANCIAL SERVICES (INDIA)
PRIVATE LIMITED, HP INC., HEWLETT
PACKARD ENTERPRISE COMPANY, and
DAVID GILL,

                Defendants.

Civil Action No. 1:16-CV-10386 (LTS)

## MEMORANDUM IN SUPPORT OF MOTION TO
## REFER ATTORNEY JOFFE'S MISCONDUCT TO THE PRESIDING JUDGE, AND
## FOR OTHER SANCTIONS

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

SUMMARY OF MR. JOFFE'S MISCONDUCT ......................................................... 3

    I.      Mr. Joffe Threatened a Deposition Witness with Criminal Prosecution to Obtain an Advantage in This Civil Case. ...................................................... 3

    II.     Mr. Joffe Has Flouted Court Rules and Engaged in Improper Conduct Throughout This Litigation................................................................................. 7

          A.   Mr. Joffe's Second Amended Complaint Violated Rule 11 ...................... 7

          B.   Mr. Joffe's Continued Disregard of Local Rules and Court Orders ........... 8

          C.   Mr. Joffe's Failure to Observe Decorum ................................................. 10

          D.   Mr. Joffe's Baseless Accusations Against Defendants & Counsel........... 12

ARGUMENT ............................................................................................................. 12

    I.      Procedural Framework for Attorney Discipline ............................................... 12

    II.     The Court Should Refer This Matter to the Presiding Judge Because Mr. Joffe's Misconduct Warrants Revocation of His *Pro Hac Vice* Admission ........................................................................................................ 14

          A.   Mr. Joffe Violated the Rules of Professional Conduct ............................ 14

                (i)      Mr. Joffe Threatened a Witness in Violation of Rule 3.4(h) ........ 14

                (ii)     Mr. Joffe Advanced Frivolous Positions in Violation of Rule 3.1 ............................................................................................... 16

          B.   Mr. Joffe's "Willful, Recurrent, or Egregious Violation of Local Rules and Court Orders"........................................................................ 17

          C.   Revoking Mr. Joffe's *Pro Hac Vice* Admission Will Not Prejudice Plaintiffs............................................................................................... 19

    III.    The Court Should Award Additional Sanctions ............................................... 20

CONCLUSION......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A1 Procurement, LLC v. Thermcor, Inc.*,
   2015 U.S. Dist. LEXIS 174898 (E.D. Va. Nov. 18, 2015) .....................................................18

*Belue v. Aegon USA, Inc.*,
   2010 U.S. Dist. LEXIS 15895 (D.S.C. Feb. 23, 2010) ...........................................................18

*Horton v. Maersk Line*,
   294 F.R.D. 690 (S.D. Ga. 2013) .............................................................................................15

*Johnson v. Trueblood*,
   629 F.2d 302 (3d Cir. 1980)...................................................................................................14

*Martinez v. Hubbard*,
   172 F. Supp. 3d 378 (D. Mass. 2016) ....................................................................................18

*Realuyo v. Diaz*,
   2006 U.S. Dist. LEXIS 11420 (S.D.N.Y. Mar. 17, 2006) ......................................................15

*In re Rimsat, Ltd.*,
   212 F.3d 1039 (7th Cir. 2000) ...............................................................................................16

*Ryan v. Astra Tech., Inc.*,
   772 F.3d 50 (1st Cir. 2014)....................................................................................................19

*Siupa v. Astra Tech, Inc.*,
   No. 10-10525-LTS, 2012 U.S. Dist. LEXIS 178789 (D. Mass. Dec. 18, 2012) ...........1, 13, 14

*United States v. Collins*,
   920 F.2d 619 (10th Cir. 1990) ...............................................................................................17

*United States v. Gomez-Rosario*,
   418 F.3d 90 (1st Cir. 2005).....................................................................................................17

*Youngblood-West v. Aflac Inc.*,
   2018 U.S. Dist. LEXIS 177825 (M.D. Ga. Oct. 16, 2018)......................................................12

*Youngblood-West v. Aflac Inc.*,
   2019 U.S. Dist. LEXIS 64125 (M.D. Ga. Apr. 12, 2019) .......................................................12

*Youngblood-West v. Aflac Inc. et al*,
   S. Ct. No. 19-1455 .................................................................................................................16

**Other Authorities**

FRCP 1 ................................................................................................................................20

FRCP 11 ....................................................................................................................1, 17, 20

FRCP 30(d)(2) ....................................................................................................................20

LR 37.1(b) ............................................................................................................................8

LR 83.6.1 .............................................................................................................................13

LR 83.6.3 ..............................................................................................................2, 13, 14, 18

LR 83.6.4 ............................................................................................................... *passim*

LR 83.6.5(b) ........................................................................................................................13

LR 83.6.5(c) ........................................................................................................................13

LR 83.6.5(d) ..................................................................................................................13, 14

MRPC 3.1 .....................................................................................................................14, 17

MRPC 3.4(h)..........................................................................................................1, 6, 14, 15

## INTRODUCTION

*Pro hac vice* admission to this Court is a "privilege and not a right." *Siupa v. Astra Tech, Inc.*, 2012 U.S. Dist. LEXIS 178789, at *8 (D. Mass. Dec. 18, 2012) (Sorokin, C.M.J.). Plaintiffs' lead counsel, Dimitry Joffe, abused that privilege. In the years since filing serial Complaints that prompted Rule 11 warnings from the Court, Mr. Joffe has ignored Court deadlines; scoffed at meet-and-confer rules; doubled-down on frivolous arguments; bullied deposition witnesses; cursed at and insulted opposing counsel; disrupted Court hearings; and accused Defendants and their counsel of fraud on the Court, suborning perjury, and falsifying evidence — serious accusations with no good-faith basis in fact or law.

Defendants endured this pattern of behavior in an effort to conserve Court and client resources and avoid unnecessary distractions from litigating the merits of Plaintiffs' claims. But Mr. Joffe's misconduct recently has escalated to such a degree that he should finally be held accountable for his failure to comply with procedural and ethical rules, and his lack of respect for the judicial process.

The final straw was a deposition on November 10, 2020, where Mr. Joffe's conduct was so egregious that it — alone or in view of all his conduct to date — warrants the severe sanction of revoking his *pro hac vice* privileges. In just over an hour of questioning before the deposition was suspended, Mr. Joffe shouted at the witness, harassed him about side-show topics, purported to instruct the witness on his Fifth Amendment rights — and then repeatedly threatened him with federal criminal prosecution if he did not provide testimony favorable to Mr. Joffe's preferred theory of the case. Mr. Joffe's conduct was improper, unprofessional, and a clear violation of Massachusetts Rule of Professional Conduct 3.4(h): "*A lawyer shall not . . . threaten to present criminal or disciplinary charges solely to obtain an advantage in a private civil matter*."

Under the Local Rules (as revised in 2015), any single violation of the Rules of Professional Conduct, or any "willful, recurrent, or egregious violation of [the Local Rules] or any order of the court," may subject an attorney to revocation of *pro hac vice* admission.  LR 83.6.3; 83.6.4.  This brief and its exhibits identify ample evidence of such violations.  Indeed, the Court's own orders contain many examples — and warnings to Mr. Joffe.  Because Mr. Joffe's misconduct is (at least) "reasonably plausible and potentially serious," the Court should refer this matter to the Presiding Judge for de novo review and adjudication in accordance with Local Rule 83.6.5.

As this case moves closer to trial, it will require greater cooperation among all counsel — but Mr. Joffe's behavior makes that impossible.  Indeed, revoking Mr. Joffe's *pro hac vice* admission is necessary not only to protect the legitimacy of the District's legal and ethical standards, but (practically) to allow this five-year-old case to go to trial.  And revocation will not unfairly prejudice Mr. Joffe's clients.  Mr. Joffe's long-promised "cavalry" of lawyers has finally arrived, with the noticed appearance of several attorneys from Quinn Emanuel.  They will join Plaintiffs' able local counsel (Josh McGuire and Lester Riordan) who already are deeply knowledgeable about this case.  With Mr. Joffe's removal, Plaintiffs will be free to pursue (and resolve) their claims on the merits.  And, critically, the Court and all participants will be spared from Mr. Joffe's conduct that has undermined the efficient administration of this case, not to mention harmed the dignity and integrity of the judicial process and the professionalism of legal practice in this District.

Finally, beyond professional discipline matters (which must be referred to the Presiding Judge), this Court retains the authority "to impose any other sanctions otherwise permitted by law."  LR 83.6.4.  The Court appropriately ordered all future depositions to be supervised at Plaintiffs' (or Mr. Joffe's) expense.  Defendants now request narrow additional relief directed to Mr. Joffe, and regarding James O'Grady, the witness Mr. Joffe threatened on November 10th.

## SUMMARY OF MR. JOFFE'S MISCONDUCT

The Court is familiar with Plaintiffs' allegations and the posture of this case.  Defendants focus below on Mr. Joffe's misconduct — some, but not nearly all, of which the Court has experienced firsthand.

**I.**      **Mr. Joffe Threatened a Deposition Witness with Criminal Prosecution to Obtain an Advantage in this Civil Case.**

The Court, upon its sua sponte request, has already viewed the entire 67-minute video of Mr. O'Grady's abbreviated Zoom deposition.  The final video and transcript are provided here as Exhibits A and B.[1]  Mr. Joffe's inappropriate behavior runs throughout the deposition, but the excerpts below highlight Mr. Joffe's worst misconduct:  threatening the witness with criminal prosecution in an attempt to elicit favorable testimony.

During the deposition, Mr. Joffe did not show Mr. O'Grady any documents, or ask him any substantive questions about the facts of this case.  Instead, after covering some standard introductory material, Mr. Joffe unduly badgered Mr. O'Grady on (1) his knowledge of Defendants' counsel's designation of Rule 30(b)(6) representatives; (2) his memory of document collection efforts undertaken years ago; and (3) whether he was "surprised" by Mr. Joffe's (misleading) descriptions of metadata associated with Defendants' document production.[2]  As the video reflects, Mr. O'Grady tried in good faith to understand and answer Mr. Joffe's questions on those topics, even though they were unrelated to Mr. O'Grady's job responsibilities or his knowledge of relevant facts.  But for some reason, apparently unprompted by any of Mr. O'Grady's specific testimony, Mr. Joffe became increasingly agitated and combative.

---

[1]  Exhibit cites (Ex. __) throughout are to the Declaration of Kevin C. Quigley, filed herewith.

[2]  In several depositions, Mr. Joffe misleadingly used ESI metadata (which witnesses unsurprisingly testified they had no understanding of) to suggest impropriety in Defendants' document collection and production.  In reality, Defendants searched every term and custodian in the parties' agreed-upon ESI Protocol.  The more limited "custodian" metadata assumed by Mr. Joffe to be nefarious merely reflects de-duplication of emails and other standard ESI processing.

Only fifteen minutes into the deposition, Mr. Joffe announced:

> Q.  You are on the video.  I'm not kidding today, Mr. O'Grady.  I'm telling you that you are in much worse position that your prior witnesses, because I know so much now.  If you continue the coverup, I will catch you.  And I will catch you lying. The consequences will be so severe.  I will get to them in a second.  Okay?  I haven't gotten there yet.  (Ex. B, O'Grady Tr. at 19:6–13.)

Defense counsel immediately objected and cautioned Mr. Joffe that his conduct appeared

to be an effort to intimidate the witness, as Mr. Joffe had done in previous depositions:

> MR. BUNIS:  Okay.  I'm just going to object to this line of questioning, Dimitry, that this seems to me to be an effort to try to intimidate this witness from the very beginning of the deposition.

> MR. JOFFE:  Yes.

> MR. BUNIS:  And I'm going to caution you that you should not engage in that kind of line of questioning.  And if you do, I really think it is time that we are going to take some action, because you know that it is improper.  And I'm just going to make it clear what you are doing.  (*Id.* at 19:14–20:3.)

As Mr. Joffe continued to question the witness about document collection and metadata,

his tone of voice and demeanor (*e.g.*, shouting, leaning into the Zoom camera and jabbing his

finger toward the witness) again became increasingly aggressive, combative, and threatening.

When defense counsel again cautioned Mr. Joffe about his demeanor, Mr. Joffe invited the witness

to say whether he was intimidated.  Mr. O'Grady confirmed that he was "very concern[ed]":

> Q.  Mr. O'Grady, are you threatened by me?  By my demeanor? You are under oath, Mr. O'Grady.  Are you threatened by my demeanor?

> A.  Not physically, but when someone says they are going to come at you, then it is very concerning.

> Q.  They are going to do what?  What did I say?

> A.  Very concerning.  It is very concerning to me.

> Q.  No, no, no, but what is concerning?  I just didn't hear the word.

> A.  I said when you asked about your demeanor, I said it would be very -- it's very concerning to me.  (*Id.* at 44:15–45:6.)

After hearing that his conduct made the witness uncomfortable, Mr. Joffe escalated his intimidation tactics even further.  Over nine pages of the transcript are filled with instances of Mr. Joffe, over counsel's repeated objections, threatening criminal action — first, against Mr. O'Grady's employer, and then against Mr. O'Grady personally:

> Q.  Mr. O'Grady, I want to hear your honest answer.  Are you going to give me your truthful answers today, even if they will expose HP to criminal liability?  Yes or no?
>
> MR. BUNIS:  Objection:  calls for a legal conclusion.  You can answer.
>
> Q.  I'm not kidding here.  I'm dead serious.   Are you prepared to give me a truthful answer, if they expose HP to criminal liability?
>
> MR. BUNIS:  I'm going to object again.  And, Dimitry, language like, I'm dead serious, and the manner in which you are asking that question, is exactly the type of demeanor that I just described to you just before that the witness testified that he is uncomfortable with.  And we're not going to do this over and over again.
>
> MR. JOFFE:  You just wait where I'm going.  You just wait.  We're just getting started.  Okay?  Save your breath for later.
>
> Q.  Mr. O'Grady, are you prepared to testify truthfully today even if your testimony exposes HP to criminal liability?
>
> MR BUNIS:  Objection.  Calls for a legal conclusion.  You can answer.
>
> A.  I believe I, upfront, indicated I would testify truthfully.
>
> * * * * *
>
> Q.  Let me tell you this, Mr. O'Grady.  If you lie today, I will catch you lying.  If I catch you lying, you are a part of this coverup.
>
> MR. EDGARTON:  Let's take a break.  Let's take a break while Dimitry calms down.
>
> Q.  And nobody will protect you.  So --
>
> MR. EDGARTON:  Let's take a break.  You need to compose yourself, Dimitry. You need to compose yourself.
>
> Q.  -- Fifth Amendment.  Because if you testify today, you waive it.  You waive your Fifth Amendment rights.  And if you are a part of this coverup, if you lie, if you destroy documents, if you did anything of that, and you lie today in this deposition --
>
> MR. BUNIS:  Stop.  We're going to --

Q. -- you waive your Fifth Amendment and you are done.  We are going to take a break as your counsel asked for.  After the break you come back, and I ask you whether you are going to be part of this coverup or whether you are going to give me a truthful answer.

And you can do two things.  You can claim:  I refuse to answer this on Fifth Amendment grounds.  Or you can give me the truthful answer.  There is no other choice, Mr. O'Grady.

* * * * *

Q. Mr. O'Grady, I want to make sure that you understand this is a real fair warning --

MR. BUNIS:  Let's take a break.

Q. We have a reference to ask the US Attorney's office to have a federal prosecutor look at HP's conduct of this litigation because a number of federal felonies have been committed.  I'm not kidding.  When I say that you are under oath on the video, what I mean is, yes, I will take it to the court and I will demand that federal prosecutors start looking into this case, and if you have a choice today, Mr. O'Grady, it is your choice, it is you sitting in this chair.  You will be answering my questions.  If you lie to me today, as other witnesses did --

MR. BUNIS:  Stop.  Stop.  We are going off the record.  This is enough.  You are just yelling at the witness.  (*Id.* at 48:3–49:9, 52:6–53:9, 54:21–55:15.)

Thus, Mr. Joffe did not merely tell the witness that he would refer him to federal prosecutors if he lied and that no one could protect him — which itself would violate Rule 3.4(h).  *See infra* at Section II.a.i.  Mr. Joffe also made clear that he had predetermined what constituted a "truthful answer":  testimony admitting to the supposed criminal "coverup" Mr. Joffe hoped to prove.  *See, e.g.*, Ex. B, O'Grady Tr. at 53:5–9 ("[Y]ou can do two things.  You can claim:  I refuse to answer this on Fifth Amendment grounds.  Or you can give me the truthful answer.  ***There is no other choice, Mr. O'Grady***.").  Under Mr. Joffe's stated paradigm, Mr. O'Grady needed to provide the (false) testimony Mr. Joffe wanted, or Mr. Joffe would urge federal prosecutors to charge both Mr. O'Grady and his employer with federal crimes.

Because of Mr. Joffe's conduct, defense counsel did something he had never done in 27 years of practicing law:  he ended the deposition and brought this matter to the Court's attention

at a previously scheduled hearing later that day.  When the stenographer was asked when she could

provide the transcript, she said on the video record that she was not sure because it was "beyond

almost anything [she had seen] in 40 years" of experience.  Ex. A, at 1:06:46–1:07:03.

## II.   Mr. Joffe Has Flouted Court Rules and Engaged in Improper Conduct Throughout This Litigation.

As the Court observed, Mr. Joffe's misconduct at the O'Grady deposition "doesn't stand

alone in this case."  Ex. C, Nov. 12, 2020 Tr. at 10:14; *see also id.* at 17:9–11 ("I've been very

unhappy with you for a long time, Mr. Joffe, because of repeated misconduct that I've enumerated

in numerous orders.").

### A.   Mr. Joffe's Second Amended Complaint Violated Rule 11

From the outset of this case, Mr. Joffe violated the Local Rules and the Rules of

Professional Conduct.  In January 2017, he sought leave to file a 119-page, 424-paragraph Second

Amended Complaint ("SAC") naming as defendants HP's then-CEO, General Counsel, outside

counsel (the law firm of Gibbons, P.C.), and others.  The proposed SAC alleged a vast global

conspiracy against ICT and the Individual Plaintiffs.  ECF 64.  The Court denied that motion for

failure to justify the amendment, and because Mr. Joffe did not file a supporting memorandum in

violation of Local Rule 7.1(b)(1).  ECF 67.  The Court continued:

> [O]n preliminary review of the proposed SAC, the Court has concerns about, inter alia, its compliance with FRCP 8 and the viability of fraud claims against certain individual defendants who have just been added. The Court warns that any party bringing fraud claims that patently fail to comply with FRCP 9(b) risks being sanctioned pursuant to FRCP 11.

*Id.*   Then, in denying Plaintiffs' motion for reconsideration, the Court reiterated its warning to

comply with pleading standards.  ECF 69 at 16 n.8.

Despite those warnings, Mr. Joffe again sought leave to file *exactly the same document*.

ECF 79.  "Plaintiffs failed to make any effort whatsoever to cure any, let alone all, of the violations

of Rule 8.  The [proposed SAC] also contain[ed] the same typographical errors and the same missing citations to earlier paragraphs of the SAC." ECF 95 at 14.  The Court rejected many of the proposed new claims, but permitted the case to proceed "considering the preference expressed in the Federal Rules of Civil Procedure . . .  for resolving disputes on their merits." *Id.*  As the Court recently reminded Mr. Joffe, its decision not to sanction him at the time was not an endorsement of his conduct:

> I thought you violated local rules and I thought some of the allegations violated Rule 11 and I gave you another chance to file an amended complaint, and you filed the exact same document . . . [INTERRUPTION BY MR. JOFFE] . . . I did not sanction you at that time because I thought, in fairness, given the seriousness of the allegations and the other circumstances, I wasn't prepared to do that, but I don't say that it was right what you did.

Ex. D, Nov. 10, 2020 Tr. at 24:8–25:1.

## B.      Mr. Joffe's Continued Disregard of Local Rules and Court Orders

The docket reflects many instances of Mr. Joffe's recurring failure (and often knowing refusal) to comply with Local Rules and Court orders.  For example:

In September 2019, the Court considered a motion to compel that Mr. Joffe filed weeks after a July 2019 deadline set by the Court, without following the discovery motion format specifically requested by the Court and prescribed by Local Rule 37.1(b).  ECF 223.  The Court denied the belated motion because it failed to comply "with the Court's specific instructions that all such discovery motions comply with [] local rules."  ECF 234.  The Court also noted that this was "not the first time counsel for the Plaintiffs has disregarded the Court."  *Id.*

At the hearing on that motion, the Court reminded Mr. Joffe that:  "The deadlines, so we're all clear, are established by the Court and they're not for you to just do whatever you feel like with. They're not aspirational. . . . [Y]ou certified when you became a member *pro hac vice* that you had reviewed and were familiar with all of the rules of this [C]ourt."  ECF 262 at 14:8–10, 17:14–

16.  The Court denied the motion without prejudice, but explained:  "You have one more chance, but you do it following the rules or you're done.  Are you clear?"  *Id.* at 21:6–9.[3]

Just two weeks later, in his very first filings after receiving the Court's admonition to follow local rules, Mr. Joffe failed to include Local Rule 7.1(a)(2) meet-and-confer certifications.  ECF 242, ECF 243.  The Court ordered him to file those certifications.  ECF 244, ECF 245.

At a March 10, 2020 status conference, the Court established a briefing schedule for summary judgment and *Daubert* motions.  Following a discussion of whether Plaintiffs had a good-faith basis for cross-moving for summary judgment, the Court directed the parties to follow the meet-and-confer requirements set forth in Local Rule 7.1 to see if they could "focus the issues." ECF 337 at 21:15–23.

Faced with an April 16, 2020 summary judgment and *Daubert* motion deadline, Mr. Joffe filed and served motions, memoranda, and exhibits hours and days after the deadline.  *See* ECF 330, ECF 331, ECF 332, ECF 334.  Mr. Joffe did not request deadline extensions from either Defendants or the Court.  Despite the Court's express direction at the March 10 conference, he failed to meet and confer with Defendants' counsel prior to filing his cross-motion for summary judgment or his *Daubert* motion.  As a result, he filed those motions without the required Rule 7.1(a)(2) certifications.  When Defendants sought to confer by phone with Mr. Joffe on their related motion to strike, he flatly refused to do so.  ECF 340 (memorandum in support of motion to strike, summarizing Mr. Joffe's various belated filings and failure to meet and confer).

Mr. Joffe *still* did not learn his lesson.  When the Court ordered the parties to meet and confer and submit a joint status report proposing a deposition schedule by August 27, 2020, the

---

[3]  At the hearing, the Court also admonished Mr. Joffe for needlessly opposing Defendants' request to submit a reply brief, and ordered him not to charge his clients for time spent on the opposition.  ECF 262 at 3:25–14:4.  He also cautioned Mr. Joffe about "all the invective that [he] put in the motion" to compel.  *Id.* at 19:6–7.

Court found that "Plaintiffs failed to state their own positions in the joint status report, failed to file their own separate status report, failed to seek a continuance of the deadline established by the Court and failed to make any other filings in response to or after the Court's August 13, 2020 Order." ECF 372. Mr. Joffe evidently believed that he could disregard the Court's order, refuse to meet and confer with Defendants' counsel, and decline to submit Plaintiffs' portion of the status report because (he said) he was "in discussion with another law firm looking to join the case." ECF 373.

### C.   Mr. Joffe's Failure to Observe Decorum

Mr. Joffe's behavior at the O'Grady deposition, described above, was no outlier. In every deposition to date, he has assumed an aggressive, combative, and rude demeanor with witnesses and with opposing counsel. On and off the record, he has gone on long, unprofessional tirades about his personal dislike of defense counsel — often peppered with profanity. *See, e.g.:*

> In response to defense counsel's request to tone down his aggressive demeanor, Mr. Joffe stated, "[g]o ahead and fucking pull the witness." Ex. E, Gill Tr. at 141:4–24;
>
> "I am only rude to you because you incessantly interrupt my deposition, and take my time with your idiotic comments, and interruptions." *Id.* at 139:18–22;
>
> During an after-midnight remote deposition of Australian witness: "Why are you tired, Michael? It's a regular seven-hour deposition. You are not loading, you know, bricks. Why you so tired? … You want to break, take a break. Jesus Christ." *Id.* at 238:5–14;
>
> "[The witness] is a trained lawyer, probably better than you. He understands what 'yes' or 'no' is." *Id.* at 58:22–24;
>
> In response to defense counsel's technical difficulties loading exhibit, calling him "idiotic" and saying "You're not trying to help, Michael. Don't bullshit me. You're trying to steal my time." Ex. F, Bartley Tr. at 158:24–159:11, 159:19–20;
>
> In response to defense counsel's request for question to be re-read by court reporter, "Are you deaf or what?" Ex. G, Harris Tr. at 154:23–155:2; and
>
> In response to request to tone down aggressive demeanor, "Your idiotic objections and interruptions are the only thing that actually piss me off and get me off here." Ex. H, Patterson Tr. at 33:19–34:5.

Mr. Joffe has wasted much of his deposition time questioning witnesses about topics that have nothing at all to do with the merits of Plaintiffs' claims. *See, e.g., id.* at 48:16–20 (asking witness

whether he was related to "one of my ex-wives"). In several depositions, he permitted his client, ICT president Alex Styller, to disrupt the proceedings and intimidate witnesses. *See, e.g.*, ECF 331-1 (Raina Deposition Transcript) at 18:19–20, 20:11–19, 70:10–23, 71:8–13; Ex. I (follow-up letter to Mr. Joffe) (reflecting that Mr. Styller spoke loudly in Russian during the deposition; in a non-sequitur outburst, asked defense counsel if he was on drugs; confronted the witness and defense counsel in the restroom; and stared aggressively at the witness in an apparent attempt to intimidate him).

Moreover, in hearings throughout this case, Mr. Joffe has been unable to restrain himself from disrupting the Court. By way of only recent example, during status conferences on November 10, 2020 and November 12, 2020 — the latter convened expressly to address Mr. Joffe's deposition misconduct — the Court repeatedly admonished Mr. Joffe for interrupting and speaking over the Court. *See, e.g.*, Ex D, Nov. 10, 2020 Tr. at 24:15–18, 35:3–4, 41:12–21; Ex. C, Nov. 12, 2020 Tr. at 18:10–23 ("I reminded you last time. There's a way in which court works. And the way in which court works is that I'm the judge, in case you forgot. And what that means is when I'm speaking, you don't interrupt me. When I'm finished, you will have an opportunity to make whatever points you make. . . . It is not only improper conduct of a lawyer, it is also rude.").

Finally, Mr. Joffe's written communications with opposing counsel and on social media are often rude and unprofessional, and at times downright bizarre.[4]

---

[4]    By way of only limited and recent example, on the evening of November 18, 2020, after Quinn Emanuel filed notices of appearance, Mr. Joffe sent a series of strange emails to defense counsel, beginning with "Made an honest woman out of myself. Regards, Dimitry." Ex. J.

In that same email chain, Mr. Joffe encouraged defense counsel to view his LinkedIn posts. A selection of Mr. Joffe's recent posts referring to Defendants, their counsel, and the Court (including one post publicly sharing his email correspondence with the Court's clerk) is provided as Exhibit K.

**D.      Mr. Joffe's Baseless Accusations Against Defendants & Counsel**

In recent depositions and Court proceedings, Mr. Joffe has made serious accusations against Defendants and their counsel, including that counsel fabricated evidence and "falsified [] metadata"; "lied in sworn statements"; "suborned perjury"; "obstruct[ed] justice"; "destroyed material evidence in pending criminal investigation"; and are now "running this coverup."  Ex. D, Nov. 10, 2020 Tr. at 21:15–25.  His recklessness in attacking fellow members of the bar, as the Court commented, is more like what one might "ordinarily hear from a *pro se* litigant."  Ex. C, Nov. 12, 2020 Tr. at 19:2–6.  More importantly, those accusations are false, and Mr. Joffe has no good-faith basis to make them.[5]

## ARGUMENT

## I.      Procedural Framework for Attorney Discipline

When Mr. Joffe applied for *pro hac vice* admission in 2016, he certified that, among other things, he understood and would comply with the Local Rules of this Court.  ECF 10.  The Local Rules, in turn, require compliance with the Massachusetts Rules of Professional Conduct.  LR 83.6.1.

Upon a finding of a single act of misconduct under the Local Rules, an attorney faces a variety of penalties including the revocation of *pro hac vice* admission.  LR 83.6.3; 83.6.4.  At least two forms of misconduct are relevant here:  "(1) violation of the rules of professional conduct of

---

[5]  Mr. Joffe's conduct of this litigation does not appear to be out of character.  A federal judge in Georgia recently noted Mr. Joffe's "lack of restraint in avoiding the assertion of frivolous positions," and described his arguments as "the product of creative brain-storming sessions unrestrained by Rule 11."  *Youngblood-West v. Aflac Inc.*, 2019 U.S. Dist. LEXIS 64125, at *22–24 (M.D. Ga. Apr. 12, 2019); *see also id.* at *22 ("Because it is important to inform [Mr. Joffe] when his conduct crosses the line, the Court takes the time to address these frivolous arguments.").

In that Georgia case, Mr. Joffe also sought to recuse the presiding judge on the grounds that rulings adverse to Mr. Joffe's client evidenced "actual personal bias," and that the judge's relatives, including a deceased great-uncle and a previously-unknown fourth cousin once removed, disqualified him from rendering an impartial judgment.  *Youngblood-West v. Aflac Inc.*, 2018 U.S. Dist. LEXIS 177825, at *24–29, 33 (M.D. Ga. Oct. 16, 2018).  The court held that those theories, too, were "frivolous," and that "had Mr. Joffe exercised slight diligence before having his client execute a misleading affidavit" in support of the recusal motion, "he would have reached the same conclusion."  *Id.* at *28, *33, *35.  The court added, "members of the bar like Mr. Joffe are held to a higher standard.  Lashing out with reckless and frivolous accusations of judicial bias does not meet that standard."  *Id.* at *39.

this court; [and/or] (2) willful, recurrent, or egregious violation of these local rules or any order of the court."  LR 83.6.3.

Local Rule 83.6.5 sets out detailed procedures which "shall be employed in matters of alleged attorney misconduct."  (These procedures were substantially revised as of 2015, and therefore postdate this Court's *Astra Tech* decision regarding *pro hac vice* revocation and the First Circuit opinion affirming the same.)  In particular, the rules now require that the Court merely "screen" alleged misconduct, and then refer it to the Presiding Judge[6] for adjudication.  LR 83.6.5(b).  While the Court is empowered to "refer any matter of potential misconduct" without making predicate findings, the Court "*should*" refer the matter to the Presiding Judge if it finds that allegations of attorney misconduct are "reasonably plausible and potentially serious."  *Id.* (emphasis added).[7]

After screening and referral, the Presiding Judge reviews the matter de novo.  LR 83.6.5(d).  Upon completing his or her review, the Presiding Judge may take various steps, including requesting an explanation, resolving the matter by settlement or consent, appointing special counsel to conduct an investigation, temporarily suspending the attorney, referring the matter to other authorities, or commencing formal proceedings by issuing a show-cause order.  *Id.*

Importantly, however, the Local Rules provide that nothing in the disciplinary procedures "shall limit the authority of [this Court] to impose any other sanctions otherwise permitted by law, including without limitation sanctions for contempt of court or for litigation misconduct."  LR 83.6.4.

---

[6] For cases in this Division, "the Miscellaneous Business Docket Judge shall be the presiding judge."  LR 83.6.5(c).

[7] *See also* Code of Conduct for United States Judges, Canon 3(B)(5) (requiring federal judges to "take appropriate action upon learning of reliable evidence indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct").

II.   **The Court Should Refer This Matter to the Presiding Judge Because Mr. Joffe's Misconduct Warrants Revocation of His Pro Hac Vice Admission**

The Court should refer this disciplinary matter to the Presiding Judge.  Mr. Joffe's misconduct, as described in this motion, is not merely "reasonably plausible and potentially serious" — it is extensive and well-documented, and an ongoing impediment to the orderly progress of this litigation.  Deposition witnesses, counsel, the Court, and other participants should not have to endure Mr. Joffe's inappropriate behavior any longer.  It is exactly the sort of misconduct that warrants revocation of the *pro hac vice* privilege.

A.   **Mr. Joffe Violated the Rules of Professional Conduct**

Any violation of the Massachusetts Rules of Professional Conduct may justify revocation of *pro hac vice* admission or other disciplinary action.  LR 83.6.3; 83.6.4; *see also Astra Tech*, 2012 U.S. Dist. LEXIS 178789, at *16 (revoking *pro hac vice* based on violations of Rules 3.3, 3.4, and 4.1).  Mr. Joffe violated at least two core Rules of Professional Conduct:  he used threats of prosecution in an effort to obtain advantages in this civil case (Rule 3.4(h)); and he repeatedly advanced arguments and accusations he knew to be baseless (Rule 3.1).  His conduct would not be tolerated in any Massachusetts lawyer, and it should not be condoned here.  *See Astra Tech*, 2012 U.S. Dist. LEXIS 178789, at *10 ("a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of *pro hac vice* status") (quoting *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980)).

(i)   *Mr. Joffe Threatened a Witness in Violation of Rule 3.4(h)*

Rule 3.4(h) bars an attorney from "threaten[ing] to present criminal or disciplinary charges solely to obtain an advantage in a private civil matter."[8]

---

[8] The rationale underlying this rule is clear:  the "civil adjudicative process is primarily designed for the settlement of disputes between parties, while the criminal process is designed for the protection of society as a whole.  Threatening to use, or using, the criminal process to coerce the adjustment of private civil claims or controversies is a subversion of that process."  *Realuyo v. Diaz*, 2006 U.S. Dist. LEXIS 11420, at *28 n.8 (S.D.N.Y. Mar. 17, 2006).

Mr. Joffe's conduct at the O'Grady deposition, as described above, violated that rule.  Mr. Joffe saturated the deposition with references to being under oath, "lying," perjury, and criminal law.[9]  Over and over, he mentioned criminal charges, promised to contact federal prosecutors, and alleged (without any basis in fact) that Mr. O'Grady's employer had committed felonies.  He purported to (wrongly) explain Mr. O'Grady's Fifth Amendment rights against self-incrimination, and instructed Mr. O'Grady that the substance of his testimony would implicate those rights (it would not).[10]  And Mr. Joffe made his intentions crystal clear.  He gave Mr. O'Grady a "choice": either provide (false) testimony confirming the existence of supposedly criminal conduct, or provide contrary (truthful) testimony that Mr. Joffe had predetermined would subject Mr. O'Grady to criminal charges of perjury, from which "nobody will protect [him]."  Ex. B, O'Grady Tr. at 52:12, 53:5–9, 55:8–10.  All of this improper conduct was compounded by Mr. Joffe's hostile and aggressive demeanor, which the witness himself testified made him uncomfortable.  *Id.* at 44:19– 25.  The record leaves no room for any conclusion but one — that Mr. Joffe intended to intimidate Mr. O'Grady, and to leverage threats of criminal prosecution to extract an advantage in this private civil matter.

Nor was this a heat-of-the-moment mistake by Mr. Joffe.  Even before he lost his temper altogether, Mr. Joffe was repeatedly cautioned by defense counsel to tone down his aggressive demeanor, and to move on from the improper line of questioning.  In prior depositions, Mr. Joffe (at a minimum) came close to intimidating witnesses by referencing criminal charges, and was

---

[9]  *Cf. Horton v. Maersk Line*, 294 F.R.D. 690, 697 (S.D. Ga. 2013) (in finding that attorney violated equivalent Georgia rule of professional conduct by threatening witness with contempt or criminal prosecution, noting that "one reminder that the laws of perjury apply is quite enough").

[10]  As the Court admonished Mr. Joffe, his personal legal advice to Mr. O'Grady, besides being inappropriate, was inaccurate:  testimony in a civil deposition does not automatically waive a witness's Fifth Amendment rights.  Ex. C, Nov. 12, 2020 Tr. at 27:11–24.

warned by defense counsel.[11]  Indeed, the fact that Mr. Joffe launched into this conduct at the start of Mr. O'Grady's deposition, before addressing any substantive matters, confirms that it was a premeditated strategy.[12]

The record of Mr. O'Grady's deposition speaks for itself.  The Court should refer the matter of Mr. Joffe's conduct to the Presiding Judge for review and discipline, including revocation of *pro hac vice* admission.  *See, e.g., In re Rimsat, Ltd.,* 212 F.3d 1039 (7th Cir. 2000) (upholding revocation of *pro hac vice* admission where attorney abused deposition process and conducted it in an "unproductive and harassing manner").

### (ii)    *Mr. Joffe Advanced Frivolous Positions in Violation of Rule 3.1*

Rule 3.1 provides that a lawyer "shall not bring, continue, or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous[.]"

Mr. Joffe's repeated attempts to submit the Second Amended Complaint violated Rule 3.1 as well as Rule 11.  As detailed above, Mr. Joffe knew — certainly after the Court warned him several times — that many of its allegations and counts were frivolous, particularly as addressed to certain individually named potential defendants.

---

[11]  Mr. Joffe's deposition of HPFS witness Kevan Bartley was a prime example:

"It's on a critical subject of your -- you destroying incriminating and exonerating evidence.  You think we're going to leave it like that, when you destroy the evidence that would set our guys free a long time ago?  Do you think we're going to let it go?  No, we won't."  Ex. F, Bartley Tr. at 194:1–6.

"Mr. Bartley, as part of H3C or a part of HPFS at the time, I accuse you as part of the company of destroying exonerating evidence, material exonerating evidence.  And you know what, and paying third party to destroy evidence. You pay for the evidence destruction.  Yes, that's my charge, but that's not here or there."  *Id.* at 195:3–9.

"Mr. Bartley, would you just agree with me in general that if somebody tells another person to destroy evidence in a pending criminal case, that would be a crime; no?"  *Id.* at 200:11–14.

[12]  Nor can Mr. Joffe plead ignorance to this Massachusetts rule.  His home state, New York, has a substantially identical rule, *see* N.Y. R. Prof. C. 3.4(e), and just this year Mr. Joffe argued in a Supreme Court certiorari petition that his adversary had violated the same rule in Georgia.  *See Youngblood-West v. Aflac Inc. et al.,* S. Ct. No. 19-1455, Petition at 9 n.1 (June 19, 2020) (certiorari denied).

More recently, Mr. Joffe represented to the Court that Defendants' counsel falsified evidence, lied in sworn statements to the Court, suborned deposition witnesses' perjury, obstructed justice, and "covered up" destruction of evidence.  Ex. D, Nov. 10, 2020 Tr. at 21:15–25.  As the Court recognized, Mr. Joffe was making "extremely serious allegations."  *Id.* at 23:15–16.  The Court, after reminding Mr. Joffe of the Rule 11 violations associated with the Second Amended Complaint, invited Mr. Joffe to submit a motion with evidentiary support.  *Id.* at 24:2–6, 25:4–7.  Defendants will respond to any such motion at the appropriate time, and show that Mr. Joffe has no good-faith basis to advance those allegations.  Upon completion of that motion practice, the Rule 3.1 argument here will be ripe for the Presiding Judge.

Mr. Joffe may (or may not) sincerely believe in the various conspiracy theories he espouses, but without a good-faith basis in *fact*, he cannot ethically advance them in this litigation, as he has with increasing frequency.  This, too, is actionable misconduct that may support the Presiding Judge's revocation of Mr. Joffe's *pro hac vice* admission.  *See United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990) ("an attorney may be dismissed for pursuing frivolous theories"), *cited with approval in United States v. Gomez-Rosario*, 418 F.3d 90, 102 (1st Cir. 2005).

### B.    Mr. Joffe's "Willful, Recurrent, or Egregious Violation of Local Rules and Court Orders"

Local Rule 83.6.3 provides that, separate from violation of the Rules of Professional Conduct, any "willful, recurrent, or egregious violation of [the Local Rules] or any order of the court" constitutes misconduct, which in turn may subject an attorney to revocation of *pro hac vice* admission under Local Rule 83.6.4.  That rule accords with common sense and the case law:  "even if there is not one bold ground to revoke an attorney's *pro hac vice* admission, the Court has the discretion to revoke an attorney's *pro hac vice* status based on the combined effect of an attorney's

misconduct and disregard for the Local Rules." *A1 Procurement, LLC v. Thermcor, Inc.*, 2015 U.S. Dist. LEXIS 174898, at *16 (E.D. Va. Nov. 18, 2015); *see also Belue v. Aegon USA, Inc.*, 2010 U.S. Dist. LEXIS 15895, at *12 (D.S.C. Feb. 23, 2010) (attorneys "fail to understand that no single violation or no single act of bad conduct prompted the district court to revoke the Attorneys' *pro hac vice* status . . . it was the combined effect of the Attorneys' improper conduct and disregard for the Local Rules").

As reflected above and throughout the docket, Mr. Joffe has habitually violated the Local Rules, even after being specifically ordered by the Court to comply with them.  His failures (and knowing refusals) to meet deadlines, to structure his pleadings properly, and to participate in the meet and confer process are not merely harmless lapses in formalities.  Rather, they waste resources of the Court and the parties and inhibit the efficient progress of this case and the administration of justice.  *See, e.g.*, *Martinez v. Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass. 2016) ("A Local Rule 7.1 certification is not an empty exercise.  Local Rule 7.1 serves a meaningful dual role:  it fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources.  Failure on the part of a litigant to comply with the rule not only affects the other parties, but it impedes the court's process as well.").

The Court and the Presiding Judge may (and should) also consider Mr. Joffe's other misbehavior even if it is not specifically proscribed by a particular Local Rule.  *See Ryan v. Astra Tech., Inc.*, 772 F.3d 50, 63 (1st Cir. 2014) (affirming revocation of *pro hac vice* admission) ("In exercising its discretion to issue or not issue a sanction for misbehavior by counsel, the court may certainly consider the extent to which counsel's misconduct is aberrational.  That [attorney] Ryan had already staked out a position at the corner-cutting end of the spectrum weighed in the discretionary selection of an appropriate sanction.").

Collectively, Mr. Joffe's disobedience of the Local Rules and court orders constitutes actionable misconduct under Local 83.6.3, both independently and combined with (a) his violations of the Rules of Professional Conduct, and/or (b) his other improper and unprofessional conduct.  The Court should refer the matter to the Presiding Judge, and Mr. Joffe's *pro hac vice* privileges should be revoked.

**C.**    **Revoking Mr. Joffe's *Pro Hac Vice* Admission Will Not Prejudice Plaintiffs.**

If the Court or the Presiding Judge were to consider the effects of *pro hac vice* revocation on Mr. Joffe's clients, that consideration should not change the result.

Plaintiffs will be in capable hands.  Trial lawyers from Quinn Emanuel recently entered appearances in the case.  Those lawyers will join Plaintiffs' capable local counsel, Josh McGuire and Lester Riordan.  Both are already knowledgeable about the case — Mr. McGuire has been local counsel since 2017, and Mr. Riordan served as counsel to the Plaintiffs during relevant events in 2013 and through 2017.[13]

Even if some or all of the Plaintiffs would prefer Mr. Joffe to remain, that is no unfair prejudice.  As the Court noted, "clients pick lawyers, and clients own their lawyers . . . there is some inevitable consequence of that."  Ex. C, Nov. 12, 2020 Tr. at 17:14–18.  (And lead plaintiff Mr. Styller is no victim of Mr. Joffe's misconduct, but a willing co-participant.  *See supra* at Section II.C, describing Mr. Styller's attempts to intimidate deposition witnesses.)

Ultimately, removing Mr. Joffe from this case — and preventing his further misconduct — will not prejudice any other participant.  It will instead help to the secure the just and efficient resolution of this action on the merits.  *See* FRCP 1.

---

[13] Mr. Riordan withdrew as counsel in October 2017 when Mr. McGuire entered the case.  But Mr. Riordan has been defending Plaintiffs' depositions in recent weeks.  If Mr. Riordan is going to participate in the case, Defendants believe he should re-enter his appearance.

**III.      The Court Should Award Additional Sanctions**

Finally, this Court retains the authority "to impose any other sanctions otherwise permitted by law." LR 83.6.4. As relevant here, along with Rule 11 and its inherent power to sanction, the Court has authority to impose sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." FRCP 30(d)(2).

Mr. Joffe's extreme misconduct at the O'Grady deposition warrants such sanctions. The Court appropriately ordered all future depositions to be supervised at Plaintiffs' (or Mr. Joffe's) expense. But Mr. O'Grady — who travelled to Boston and gave up several days of work to prepare for and attend the deposition, only to be harassed and threatened by Mr. Joffe — should not have to sit through another deposition. Defendants request: (i) that Mr. O'Grady not be required to appear for another deposition; and (ii) if Mr. O'Grady is deposed again, that Plaintiffs (or Mr. Joffe) pay Defendants' attorney fees in connection with the six hours remaining in that deposition and one more prep session that, without Mr. Joffe's misconduct, would have been unnecessary.

Moreover, if the Presiding Judge does not revoke Mr. Joffe's *pro hac vice* admission, the Court should order that Mr. Joffe be barred: (i) from serving as trial counsel to Plaintiffs; and (ii) from participating in any future meet-and-confer or mediation efforts between the parties. As the record reflects, Mr. Joffe repeatedly disregards procedural meet-and-confer requirements. And his injection of personal animus and irrational conspiracy theories into nearly every disagreement with opposing counsel makes productive dialogue practically impossible.

Finally, the Court should order monetary sanctions to be paid by Mr. Joffe personally, in an amount the Court believes commensurate to Mr. Joffe's misconduct.

Enough is enough.

**CONCLUSION**

The Court should refer this disciplinary matter to the Presiding Judge and sanction Mr. Joffe.

- 20 -

Dated: November 20, 2020                    Respectfully submitted,

                                            /s/ *Michael H. Bunis*
                                            Michael H. Bunis (BBO No. 566839)
                                            G. Mark Edgarton (BBO No. 657593)
                                            Kevin C. Quigley (BBO No. 685015)
                                            **CHOATE HALL & STEWART LLP**
                                            Two International Place
                                            Boston, Massachusetts  02110
                                            (617) 248-5000
                                            mbunis@choate.com
                                            medgarton@choate.com
                                            kquigley@choate.com

                                            Anthony P. Callaghan
                                            Paul A. Saso
                                            **GIBBONS P.C.**
                                            One Pennsylvania Plaza, 37th Floor
                                            New York, New York, 10119
                                            (212) 613-2000

                                            *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin C. Quigley, Attorney for Defendants Hewlett-Packard Financial Services Company, Hewlett-Packard Financial Services (India) Private Limited, HP Inc., Hewlett Packard Enterprise Company, and David Gill, hereby certify that the foregoing document was filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF) on November 20, 2020.

<u>*/s/ Kevin C. Quigley*</u>
Kevin C. Quigley