# **<u>EXHIBIT B</u>**

O'Grady Final

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
----------------------------------x
ALEXANDER STYLLER, INTEGRATED
COMMUNICATIONS & TECHNOLOGIES, INC.,
JADE CHENG, JASON YUYI, CATHY YU,
CAROLINE MARAFAO CHENG, PUSHUN CHENG,
CHANGZHEN NI, JUNFANG YU, MEIXIANG
CHENG, FANGSHOU YU, and CHANGHUA NI,

                    Plaintiffs,
                                   Civ. No.
        -against-                1:16-CV-10386(LTS)

HEWLETT-PACKARD FINANCIAL SERVICES
COMPANY, HEWLETT-PACKARD FINANCIAL
SERVICES (INDIA) PRIVATE LIMITED,
HP INC., HEWLETT PACKARD ENTERPRISE
COMPANY, and DAVID GILL,

                    Defendants.
----------------------------------x

                    November 10, 2020
                    9:03 a.m.


Remote video deposition of JAMES O'GRADY, taken

by Plaintiffs via video teleconference, pursuant

to Notice, at the offices of Choate Hall &

Stewart, LLP, Two International Place, Boston,

Massachusetts 02110, before Anneliese R. Tursi, a

Registered Professional Reporter and Notary

Public within and for the State of New York.

Page 1

O'Grady Final

2

A P P E A R A N C E S

JOFFE LAW, P.C.
Attorneys for Plaintiffs
        765 Amsterdam Avenue, 2C
        New York, New York 10025
BY:  DIMITRY JOFFE, ESQ.
        212-309-8711
        dimitry@joffe.law

CHOATE, HALL & STEWART, LLP
Attorneys for Defendants and deponent
        Two International Place
        Boston, Massachusetts 02110
BY:  MICHAEL H. BUNIS, ESQ.
        G. MARK EDGARTON, ESQ.
        617-248-4030
        mbunis@choate.com

                -and-

GIBBONS P.C.
Attorneys for Defendants and deponent
        One Gateway Center, 1145
        Raymond Plaza W.
        Newark, New Jersey 07102
BY:  ANTHONY P. CALLAGHAN, ESQ.
        973-596-4500
        acallaghan@gibbonslaw.com

ALSO PRESENT:

        ANKUR DESAI, ESQ.
        In-House Counsel
        Hewlett-Packard

O'Grady Final

ALEXANDER STYLLER

MARIO BARREDO, Videographer

♠                                                                    3

                    S T I P U L A T I O N S


        IT IS HEREBY STIPULATED AND AGREED

by and between the attorneys for the

respective parties herein that filing and sealing

be and the same are hereby waived.

        IT IS FURTHER STIPULATED AND

AGREED that all objections, except as to the form

of the question, shall be reserved to the time of

the trial.

        IT IS FURTHER STIPULATED AND

AGREED that the within deposition may be signed

and sworn to before any officer authorized to

administer an oath with the same force and effect

as if signed and sworn to before the Court.

        IT IS FURTHER STIPULATED AND AGREED

that there is no objection to the court reporter

administering a binding oath to the deponent

O'Grady Final

remotely.

4

```
 1                    J. O'GRADY
 2           THE VIDEOGRAPHER:  Good morning.  We
 3      are now on the record.  The time is now
 4      9:03 a.m. on Tuesday, November 10th, 2020.
 5           This begins the videotaped deposition
 6      of James O'Grady, taken in the matter of
 7      Alexander Styller, et al., versus Hewlett
 8      Packard Financial Services Company, et al.,
 9      filed in the United States District Court,
10      District of Massachusetts, case number of
11      which is 1:16-CV-10386 (LTS).
12           My name is Mario Barredo.  I'm the
13      remote videographer today.  The court
14      reporter is Anneliese Tursi.  We are
15      representing Esquire Deposition Solutions.
16           As a courtesy, will everyone not
17      speaking, please mute your audio, and
18      remember to unmute when you are ready to
19      speak.
20           Counsel, will you please state your
21      name and whom you represent, after which
```

O'Grady Final

22        the court reporter will swear in the

23        witness.

24              MR. JOFFE:  Dimitry Joffe, Joffe Law

25        P.C., 765 Amsterdam Avenue, 2C, New York,

♠

                                          5

1                     J. O'GRADY

2        New York, 10025.  I represent plaintiffs.

3              MR. BUNIS:  Michael Bunis.  The firm

4           is Choate, Hall & Stewart, and we represent

5           the defendants and the witness in this

6           case.

7     J A M E S   O ' G R A D Y

8           residing at 27 Denworth Bell Circle,

9           Haverhill, Massachusetts 01835, having been

10          first duly sworn/affirmed by the Notary

11          Public (Anneliese R. Tursi), was examined

12          and testified as follows:

13    EXAMINATION BY MR. JOFFE:

14          Q.    Good morning, Mr. O'Grady.

15          A.    Good morning.

16          Q.    My name is Dimitry Joffe. I represent

17    plaintiffs, as you heard.  I'll be asking you

18    some questions today.

O'Grady Final

19          If you could, please, just state your

20     name for the record, please.

21          A.   My name is James O'Grady.

22          Q.   Thank you.

23          Mr. O'Grady, were you prepared by your

24     attorneys for this deposition?

25          A.   I had a couple of meetings prior, to

                                                        6


1                    J. O'GRADY

2     prepare for the deposition, just the scheduling

3     of it.

4          Q.   Okay.  And you had one deposition

5     preparation session, then?

6          A.   I had a meeting last Wednesday which

7     was more of timing.  And then I had a meeting

8     yesterday for several hours.  And that's it.

9     That's the extent of it.

10          Q.   So I take it your lawyers explained to

11     you what deposition is.  Right?

12          A.   They did.

13          Q.   And have you been deposed before?

14          A.   I have not been deposed.  This will be

15     my first time.

O'Grady Final

16      Q.   Okay.  So I think the most important

17   part about deposition is that it is not a typical

18   conversation, you know.  Because you are

19   testifying under oath, which means that, you

20   know, if your answers are not truthful, they may

21   subject you to liability for perjury.  You

22   understand that.  Right?

23      A.   I understand.

24      Q.   And you are prepared to testify

25   truthfully today.  Correct?

7

1                    J. O'GRADY

2      A.   That is correct.

3      Q.   Okay.  And there is nothing that would

4   prevent you from doing so, any medication, maybe

5   drugs.  No?

6      A.   No.

7      Q.   If you don't understand my question,

8   please ask me, and I will try to rephrase it.  Or

9   maybe not.  But I will try to accommodate you if

10   you don't.  I want you to understand my question.

11           And I want you to answer my questions

12   audibly so the court reporter can take it down.

O'Grady Final

13    So you should say yes or no, rather than just,

14    you know, nodding saying, yeah, yup, something

15    like that.

16              What is your current position at the

17    company?

18         A.   Currently, my position is vice

19    president of global asset management.

20         Q.   And is it HPFS, or any other entity?

21    Which is -- vice president of which entity?

22         A.   Of HP Enterprise Financial Services.

23         Q.   And what was your position back in

24    2010/2013 period?

25         A.   That would have been director of asset

8

1                    J. O'GRADY

2    management.

3         Q.   A director you said?

4         A.   That's correct.

5         Q.   Can you explain me, because I'm

6    familiar with the terms director, meaning

7    somebody who sits on the board of directors.  Is

8    that what you have in mind, member of the board

9    of HPFS?

O'Grady Final

10      A.   No.

11      Q.   So I suspect that you use director

12   meaning something different.   Right?

13      A.   That's correct.

14      Q.   So it is a title.   And is it below the

15   vice president, the director, or is it above the

16   vice president?

17      A.   It is below a vice president.

18      Q.   So you then, you were promoted since

19   back 2010/2013.   Right?

20      A.   That's correct.

21      Q.   And when did you get your promotion to

22   a VP?

23      A.   I don't recall exactly when it was,

24   but I believe it to be within the last 2 to 2-1/2

25   years.

                                          9

1                  J. O'GRADY

2       Q.   Thank you.   When I ask you when, you

3    know, I ask you to give me the date to the degree

4    you remember.   So when I ask when, it doesn't

5    necessarily mean I'm looking for specific date.

6    If you don't remember the date, tell me the

O'Grady Final

7      month.  If you don't remember the month, tell me

8      the year.  Okay?  So I understand we don't

9      remember specific dates, but at least general

10     sense.

11              In 2010/2013, whom did you report to?

12         A.   I reported to a person named Gerri

13     Gold.

14         Q.   And that person was who?

15         A.   She was the vice president -- I

16     believe she was the vice president of global

17     marketing.

18         Q.   That's also at HPFS.  Right?

19         A.   She is also at HPFS.  Again, I have

20     to -- I'm not sure of her exact title back then.

21         Q.   All right.  But she was, what I'm

22     trying to here understand, she was not part of

23     legal department.  Right?  She was a business

24     person.

25         A.   That's correct.

                                                  10


1                    J. O'GRADY

2          Q.   You didn't report to anyone from the

3      legal department.  Correct?

O'Grady Final

4          A.   No.

5          Q.   So, but legal department, people like

6     David Gill, Brian Slattery, Stuart Patterson,

7     they were -- how were your interactions with

8     them?  Were you just parallel functions in the

9     same organization, or were they, you know, kind

10    of central function?  I want to understand what

11    your relationship with the legal was at the

12    company?

13          MR. BUNIS:  Objection:  vague.

14          If you understand the question, you

15      can answer.

16          A.   Yes, it is a bit vague for me.

17          Q.   It is vague.  Okay.  I understand it

18    is vague.  I'm not trying to trick you.  I'm

19    trying to understand the kind of the corporate

20    structure.  I've been asking everyone this

21    question.  I still couldn't quite figure out.

22    I'll explain why.  I used to work at the big

23    corporation as well.  In the legal department.

24    That was Philip Morris International.

25          We had the legal department, central

11

O'Grady Final

1                        J. O'GRADY

2     function.  We were sitting on the Lake Geneva in

3     Switzerland enjoying beautiful life.  And when we

4     had problems, we traveled to Egypt, or markets,

5     depending where the problem was.  If the problem

6     was in the market in the particular country, we

7     tried to fix it there.  If the problem is in the

8     region, like you have APJ we would go and fix it

9     there.

10                       But we were the bosses.  You know?  If

11    a lawyer comes from headquarters and tell them to

12    do something, they listen.

13                       Is that something that -- that's what

14    I'm trying to understand.  You have a central

15    legal function.  You have legal department.  And

16    then you have a different business entities in

17    Massachusetts, in India, in China.  You know,

18    everywhere.  And I'm trying to understand how you

19    guys work together.

20                       Is the legal department the central

21    function at HP that kind of works parallel with

22    regions and markets?

23                       Or how do they structure the

24    relationship between business and legal side of

O'Grady Final

25    it?

12

1              J. O'GRADY

2         I will explain why is it important in

3    this case later.

4         MR. BUNIS:  Objection:  vague.

5         You can answer it, if you understand.

6    A.    I don't understand how the legal

7    department is structured within HPE.

8    Q.    Did you report to David Gill?

9    A.    No.

10   Q.    Did he report to you?

11   A.    No.

12   Q.    Is it fair to say that legal

13   department has its own line of reporting

14   independent of, well, business side?

15        MR. BUNIS:  Objection.

16        You can answer if you know.

17   A.    I don't know exactly how it worked in

18   at that time.

19   Q.    Okay.  Back in 2010/2013, who reported

20   to you?  I guess it is a large group of people,

21   but, more specifically, did J.T. Silvestri report

O'Grady Final

22      to you?

23              A.   Back then J.T. worked for me directly.

24              Q.   And how about Kevan Bartley?

25              A.   Back at that time Kevan Bartley worked

                                                        13

1                       J. O'GRADY

2       for me directly as well.

3               Q.   And how about Tom Harris?

4               A.   Back in that time Tom did not work for

5       me directly.

6               Q.   He didn't.  Okay.  How about

7       indirectly?  Did he work for you indirectly?

8               A.   Tom at that time worked for J.T.

9       Silvestri directly.

10              Q.   Okay.  So he was in your reporting

11      chain just one step below?  It was you.  Then

12      Silvestri, then it would be Harris, and then I

13      guess Bartley, somebody else as well.  Right?

14              A.   That's right.

15              Q.   Okay.  Did you talk to Gill or Bartley

16      after their depositions last week?

17              MR. BUNIS:  You broke up a little bit,

18              Dimitry.  Can you just repeat that.

                        Page 14

O'Grady Final

19     Q.  Did you talk to Bartley or Gill after

20    their depositions last week?

21     A.  Yes.

22        I'm sorry.  I did not talk to David

23    Gill, but I did talk to Kevan Bartley in the

24    normal course of business.

25     Q.  Did you discuss his deposition with

                                               14

1               J. O'GRADY

2    him?

3     A.  I did not.

4     Q.  You were not curious about that?

5     A.  I'm curious about a lot of things, but

6    I did not talk to Kevan about the deposition.

7        The only thing I talked to him about

8    is the -- which building to go to.  That's it.

9    But no details of the deposition.

10     Q.  Do you know that you were scheduled to

11    testify as a corporate designee of defendants

12    until this morning?  Did you know that?

13        MR. BUNIS:  Objection.  Calls for a

14        legal conclusion.

15        You can answer if you understand.

O'Grady Final

16        A.   I didn't know what the status was.

17        Q.   Did you know that you were at some

18    point a designee to testify at deposition on

19    behalf of corporations, HP, HPI, HPFS India?

20             MR. BUNIS:  Objection.  Calls for a

21        legal conclusion.

22             You can answer if you understand.

23        A.   I'm not sure I understand.

24        Q.   I will explain to you.

25             Defendants' lawyers told me for a

                                                    15


1                   J. O'GRADY

2    couple of weeks that you, Mr. O'Grady, will be

3    representing corporate defendants, HPE, HPI, HPFS

4    India.  Did you know about this?

5             MR. BUNIS:  Objection.  Calls for a

6        legal conclusion.

7             You can answer if you understand.

8        A.   No.

9        Q.   You didn't know about this?  I'm

10    sorry --

11             MR. BUNIS:  Objection:  asked and

12        answered.

                       Page 16

O'Grady Final

13              MR. JOFFE:  Hold it.  Hold it.  Hold

14         it.

15         Q.   Your lawyers represented to me in

16    writing several times for the last few weeks that

17    you, Mr. O'Grady, will be the designated

18    representative on behalf of HPE, HPI, HPFS, and

19    you will answer my questions about criminal

20    investigation in China in 2013.  You didn't know

21    about that?

22              MR. BUNIS:  Objection.  Calls for a

23         legal conclusion.

24              You can answer if you understand.

25         A.   I think I heard two questions in

                                                    16


1                    J. O'GRADY

2    there.

3         Q.   Well, it doesn't matter how many you

4    heard.  I'm asking one.

5              Have you heard that you were

6    designated as a corporate representative to

7    testify last week and this week?  Did you know

8    that?

9              MR. BUNIS:  Objection.  Calls for a

O'Grady Final

10          legal conclusion.

11                  You can answer if you understand.

12          A.   No.

13          Q.   Did you know that Mr. Bartley is also

14   designated as a corporate representative, along

15   with yourself, to testify on behalf of

16   corporations?

17                  You didn't know that, too?

18                  MR. BUNIS:  I'm sorry, on behalf of

19          what?  I didn't hear what you said.

20                  MR. JOFFE:  Well, you designated

21          Bartley on behalf of corporations, HPE,

22          HPI, and HPFS India.

23          Q.   Defendants designated witnesses to

24   testify, not on just the individual capacity as

25   you are doing today, but also, in addition, as

                                                    17


 1                      J. O'GRADY

 2   corporate representatives.  For two weeks

 3   defendants have been assuring me that you will be

 4   testifying on the very key issue in this case,

 5   the 2013 counterfeit investigation.

 6                  They canceled the depositions, and

O'Grady Final

7      they undesignated you this morning.  Maybe last

8      night.  I don't remember the time.

9              So I was shocked.  And I was shocked

10     to hear that you haven't heard about it.

11             So, but that's your testimony.  You

12     haven't heard that you were supposed to testify

13     last week as a representative for corporate

14     defendants.  Correct?

15             MR. BUNIS:  Objection.  Calls for a

16         legal conclusion.

17             You can answer if you understand.

18         A.   I was not aware that I was planned to

19     be -- testimony last -- give

20         Q.   Are you surprised?  Are you surprised?

21             MR. BUNIS:  Let him finish.  Please

22         let him finish the answer.

23             Are you done with your answer?

24         Q.   Are you surprised by that, Mr.

25     O'Grady?  Are you surprised that your lawyers,

                                                    18


1                    J. O'GRADY

2      without your knowledge, designated, then

3      canceled, then undesignated you as their

O'Grady Final

4       corporate representative for depositions?

5                   MR. BUNIS:  Objection.  Objection.

6              Calls for a legal conclusion.

7                   You can answer if you understand.

8              A.   I'm not sure I understand.

9                   MR. BUNIS:  Let me just point out,

10             Dimitry.  I just want to explain to the

11             witness.  If you don't understand, you

12             should look at him.  He is asking the

13             questions.  Don't look at me.  He is the

14             one asking the questions.

15             Q.   -- you will look terrible on video,

16      but that's okay.  That's -- you know.

17                  THE VIDEOGRAPHER:  One at a time

18             please.

19             Q.   Mr. J.T. Silvestri almost had a heart

20      attack and ran out of the room when he learned

21      that he is being videotaped.  He didn't want to

22      come back.  Until he made his ultimatum to me

23      that he will not testify unless I assure him that

24      his video will not show up on social media

25      somewhere, or in public.  So.

                                                    19

O'Grady Final

1                     J. O'GRADY

2          MR. BUNIS:  Is there a question in

3       there?

4          MR. JOFFE:  No.  It is about your

5       comments whom to look at.

6          Q.   You are on the video.  I'm not kidding

7    today, Mr. O'Grady.  I'm telling you that you are

8    in much worse position than your prior witnesses,

9    because I know so much now.  If you continue the

10   coverup, I will catch you.  And I will catch you

11   lying.  The consequences will be so severe.  I

12   will get to them in a second.  Okay?  I haven't

13   gotten there yet.

14          MR. BUNIS:  Okay.  I'm just going to

15       object to this line of questioning,

16       Dimitry, that this seems to me to be an

17       effort to try to intimidate this witness

18       from the very beginning of the deposition.

19          MR. JOFFE:  Yes.

20          MR. BUNIS:  And I'm going to caution

21       you that you should not engage in that kind

22       of line of questioning.

23          And if you do, I really think it is

24       time that we are going to take some action,

Page 21

O'Grady Final

25          because you know that it is improper.  And

20

1                    J. O'GRADY

2          I'm just going to make it clear what you

3          are doing.

4               THE VIDEOGRAPHER:  Gentlemen --

5               MR. BUNIS:  It is critical that you

6          wait for me and that you allow the witness

7          to finish his answer before you cut him

8          off, as you have been doing repeatedly to

9          the questioning in these depositions.

10          Q.   Mr. O'Grady, did there ever come a

11   time where you were asked to collect responsive

12   documents for this litigation?

13          A.   To collect documents?

14          Q.   Yes.

15          A.   Yes -- yes.

16          Q.   I think you said yes, no, yes.  Which

17   one is it?

18          A.   No, no.  I only said yes.

19          Q.   Okay.  So you have been asked to

20   collect documents for this litigation.  Yes?

21          A.   I have been asked -- I have been asked

Page 22

O'Grady Final

22    to preserve documents.

23         Q.    That's -- no.  Hold on.  Preserve is

24    good.

25              Were you asked to collect documents?

21

1                        J. O'GRADY

2         A.    I was.

3         Q.    Let's just separate the two.

4    Preserving documents is one thing.  Actually

5    collecting, and, you know, forwarding or giving

6    to somebody is different thing.  You agree?

7         A.    Yes.

8         Q.    So when you said you were asked to

9    preserve documents, you probably refer to

10   something known as a litigation hold notice.

11   Correct?

12        A.    I'm not familiar with that name.  I

13   think it was a preservation notice, but --

14        Q.    Close enough.  I think we are talking

15   about the same thing because basically is memo or

16   a paper that tells you that certain documents in

17   certain relevant time period should be preserved

18   and not destroyed.  Electronic, hard copy,

Page 23

O'Grady Final

19    everything.  Correct?

20         A.   Right.

21         Q.   That's a hold litigation, or what I

22    call litigation hold.  All right?

23              Well, that's one thing.  But my

24    question was, actually, physically, to go through

25    your files, emails, texts, and select relevant

22

1                   J. O'GRADY

2    documents and give them to somebody, or upload

3    them to something.  That.  That.  Did you ever do

4    that?  The collection and the uploading.  Not

5    just preserving.

6         A.   I did.

7         Q.   Who asked you to do that?

8         A.   I don't recall the legal person that

9    asked me.  I don't recall the exact name.

10        Q.   Okay.  But that was somebody from

11    legal you said.  Right?  Legal person.

12        A.   Yes.

13        Q.   When was that, do you recall?

14        A.   I don't recall the exact date or

15    timeframe.

Page 24

O'Grady Final

16        Q.   Well, yeah, my comment's the same.  If

17   you don't recall the exact date, and I don't

18   expect you to recall the exact date.  Nobody

19   remembers the exact date.  But the ballpark at

20   least, you know.  The year at least.

21             MR. BUNIS:  If you recall.

22        A.   Yeah, I want to be precise.  I don't

23   recall the timeframe.

24        Q.   Okay.  Was it in 2013?

25        A.   Not that I recall.

                                          23


1                  J. O'GRADY

2        Q.   2014?

3        A.   Not that I recall.

4        Q.   2016, maybe?

5        A.   It may have been nearer to that

6   timeframe.

7        Q.   I already forgot which year we have

8   gotten to.  So not '13.  Not '14.

9             You said it was probably '15 or '16?

10        A.   I believe you mentioned '16, and I

11   believe it was closer to that period.

12        Q.   Okay.  And was that the only time you

O'Grady Final

13    were asked to collect documents, was a kind of a

14    one-time instruction, please, give us documents.

15    You collected, and then that's it?  Or was there

16    additional, maybe, call-up attempts to collect

17    something?

18         A.   As far as I can recollect, it was one

19    time.

20         Q.   And were you asked to collect

21    documents yourself?  So, basically, give us your

22    responsive documents.

23              Or were you asked to give everything

24    that falls within certain criteria?  What was --

25              MR. BUNIS:  Objection.

                                                    24


1                   J. O'GRADY

2         Q.   -- the judgment which document is

3    responsive and which is not?

4              MR. BUNIS:  I'm going to instruct the

5              witness not to answer.  You are asking for

6              an attorney-client communication.

7         Q.   I'm asking you when you were asked to

8    select documents, your responsive documents --

9    right -- were you given some instructions what to

O'Grady Final

10    do?

11              Or you were just told exercise your

12    judgment.  Give us your responsive documents.

13              Do you understand the question?

14              MR. BUNIS:  That's a compound

15         question.

16              You can't answer that question.  It is

17         too important.

18              Can you break it down, please.

19         Q.   Were you given instructions what and

20    how to collect, or were you just told, please

21    assemble the responsive documents?

22              MR. BUNIS:  No.  That's the same

23         compound question.  Break it down.  You are

24         going to have to ask him two different

25         questions.  It is too close to privileged

                                                    25


1                    J. O'GRADY

2         information.

3         Q.   What did you do with those documents

4    that you collected?  How did you physically, or

5    electronically, transmit them to the person

6    asking?

                        Page 27

O'Grady Final

7          A.   I believe I put them on a shared

8     drive.

9          Q.   You are the first person who mentioned

10    share drive of all your reports, J.T. Silvestri,

11    Harris and others.  Nobody remembered any share

12    drive.  And you said it was in 2016 to the best

13    of your recollection?

14         A.   To the best of my recollection I said

15    that that period sounded closer than any other

16    period that you mentioned.

17         Q.   That was after we filed the lawsuit

18    already.  That's the difference.

19              2014, '15, '14, '13, there was no

20    lawsuit.  '16 there was already a lawsuit.  So

21    there is an important threshold there.

22              And you have been asked to collect

23    documents on share drive.  Where have you heard

24    about share drive, Mr. O'Grady?

25              MR. BUNIS:  I'm sorry, what was the

                                                26


1                    J. O'GRADY

2     question?

3          Q.   You are sitting here today.  You

                    Page 28

O'Grady Final

4    remember specifically the term share drive, that

5    somebody asked you in 2016 to upload your

6    documents on?

7            MR. BUNIS:  Objection.  Misstates his

8            prior testimony.

9        Q.   Okay.  Please explain what was that

10   share drive.

11           MR. BUNIS:  If you understand.

12       A.   I understand.

13       Q.   You said share drive.  I didn't put

14   the words in your mouth.  I'm asking you what is

15   this share drive you mentioned?

16       A.   Again, it was a while back, and I

17   believe -- I believe I had them on a thumb drive,

18   and then was asked to upload it to a share drive

19   online.  That's the best of my recollection.

20       Q.   Well, let's unpack it.  What was the

21   thumb drive?  Whose thumb drive was that?

22       A.   My thumb drive.

23       Q.   So you took your thumb drive.  You

24   uploaded documents on the thumb drive.  Right?

25   And then you said share drive.  That's why I'm

                                             27

O'Grady Final

1                              J. O'GRADY

2       not sure.  How did the documents get from your

3       thumb drive to the share drive?

4              A.   They were copied from the thumb drive

5       to the share drive.

6              Q.   By whom?

7              A.   By myself.

8              Q.   So you collected your responsive

9       documents.  You put them on a share drive.  You

10      took that share drive, and what?  You plugged it

11      in share -- I mean, the documents from thumb

12      drive were copied by you onto a share drive.  Is

13      that your testimony?

14             A.   I don't exactly remember how I

15      provided them.  That's the best of my

16      recollection that I have.

17             Q.   Well, yes, Mr. O'Grady.  You see my

18      problem is?  That you just mentioned the share

19      drive, and it doesn't really fit into this whole

20      picture of your document collection.  What share

21      drive?  Is it the box that you plug in your thumb

22      drive?

23                  Please explain to me what is share

24      drive.

Page 30

O'Grady Final

25          MR. BUNIS:  If you understand.

28

1                    J. O'GRADY

2          Q.   Well, you mentioned it, Mr. O'Grady.

3    I didn't bring it up.  You said in '16 you

4    uploaded your documents on the share drive.  Then

5    thumb drive came in.  Now I want to understand

6    what is it that you are talking about.

7               Nobody else mentioned share drive

8    except defendants in their sworn papers, and you

9    today.  And I want to explore that.

10          MR. BUNIS:  Well, what's the question?

11          Q.   I just told the question.  What was

12    the share drive?  And how did you get the

13    documents from your thumb drive into the share

14    drive?  Please.  You are under oath on the video.

15          A.   Again, to get a file from a thumb

16    drive to another drive, whether it is an online

17    drive or a hard disk drive that is on the machine

18    that you are working on, it is just a matter of

19    copying that file to it.

20          Q.   Yes.  Mr. O'Grady, I know what copying

21    files -- we can copy, how we call it copy files.

O'Grady Final

22      Right?

23              What struck me is you mentioned

24      unsolicited of share drive.  And it is not a

25      thing that -- you know, what thumb drive, I can

                                          29


1                   J. O'GRADY

2       imagine how it looks like.  I have a thumb drive

3       right here.  Okay?

4               You agree with me, this is a thumb

5       drive.  Right?  Right?

6               I put it in my computer.  I put my

7       documents on it, I put, I can save my emails, my

8       work files, my PDF.  I know what it is.  I can

9       plug it in computer.  I can do something else.

10              What did you do with your thumb drive?

11              I don't know what share drive is.  Is

12      it a big box?  A computer box?  What is it?  You

13      said you plugged it in share drive.

14              I want to understand, please explain

15      to me what is a share drive.  A machine?  A

16      cloud?  A website?  What is it?

17              MR. BUNIS:  Objection.  Vague.

18              You can answer it --

O'Grady Final

19          Q.    Mr. O'Grady, simple question.   You

20    said here ten minutes ago, you took your

21    documents, downloaded them in share drive.

22    Please tell me what that is.   If you know.

23          A.    I don't have the exact technical term

24    for share drive, but it is a location, a virtual

25    location in a public or private cloud.

30

1                        J. O'GRADY

2          Q.    And how did you download the thumb

3    drive files into this public, whatever, location

4    you described?   How did you do it?   What did you

5    plug them into?

6          A.    It would be just plugging the thumb

7    drive in a computer.   Pulling, dragging the file

8    from one drive location to an online drive

9    location.

10          Q.    Okay.   How many files do you think you

11    copied that way?

12                MR. BUNIS:   If you know.

13          A.    I don't know.

14          Q.    Ten?   Hundred?   Thousand?   Or 10,000?

15    Just give me a ballpark then.

Page 33

O'Grady Final

16          A.   I can't recall the exact number.

17          Q.   More than 10, or less than 10?  Fewer

18   than 10?

19          A.   I would -- I recall more than ten.

20          Q.   Would it be more than hundred, or less

21   than hundred?

22               And when I say document, I mean email

23   is a document.  You know, file is a document.

24   PDF is a document.  PowerPoint is a document.

25   Word document is a document.  Text is a document.

                                                  31


1                    J. O'GRADY

2    Skype conversation is a document.  Microsoft Lync

3    conversation is a document.  Microsoft Teams

4    conversation is a document.  Those are all

5    documents.

6                So how many of those, you, Mr.

7    O'Grady, uploaded on this share drive?

8                A ballpark.  I understand precise

9    number is impossible.  But I want to get the

10   sense of the volume.  You know, it is simple.

11   What's the volume?

12          A.   I would be just gross estimating.

                        Page 34

O'Grady Final

13    Less than a hundred.

14         Q.   Okay.  And that collection of yours

15    included just emails, or perhaps other documents,

16    like Word, PDF, PowerPoint, things like that?

17         A.   It would include documents like

18    emails, PowerPoint, and PDF files.

19         Q.   And which files?  I'm sorry, I didn't

20    hear the last word.

21         A.   PDF.

22         Q.   Like, Word document?  Would it include

23    Word or PDF document as well?

24         A.   It would.

25         Q.   Okay.  Did you use smartphone for

                                                    32

1                    J. O'GRADY

2    business communications in 2010/2013?

3              Smartphone or BlackBerry was at the

4    time, I think it was a time when we were changing

5    to smartphones.  But you know what I mean.  Like,

6    well, BlackBerry or smartphone.  Did you?

7         A.   I did.

8         Q.   And did you have company-issued phone,

9    or you had your personal phone?  I mean, for

O'Grady Final

10      business communication, did you use a

11      company-issued or personal phone?

12              A.   I don't recall at the time.  The

13      company changed its position?  For example,

14      today, I have to fund the phone myself.

15                  I don't recall at that time whether I

16      personally owned the phone, or the company issued

17      the phone.

18          Q.   Okay.  But I guess, either way, the

19      company would pay for your business usage of the

20      phone.  Right?

21                  My bills were horrendous on my cell

22      phone, but, thankfully, Uncle Phil, we call

23      Philip Morris, paid for it.

24                  So was your business phone usage paid

25      by HP?

                                                    33


1                      J. O'GRADY

2           A.   Yes.

3           Q.   And did you use that phone just for

4       phone calls, also for other type of electronic

5       communications, like emails, texts, messages,

6       things like that?

Page 36

O'Grady Final

 7          MR. BUNIS:  Objection.  Compound

 8      question.

 9          You can answer it if you understand

10      it.

11      A.   Could you repeat the list.

12      Q.   Yes.  Well, the list is electronic

13  communications that we generally use the

14  smartphone for.  I use my phone to call, but also

15  to send emails, personal and business, and also

16  to send texts.  You know, I send texts mostly for

17  personal use, but sometimes for business, too.

18  So I don't find them convenient for me.

19          But I want to ask you whether you used

20  your phone for not just calls, but also emails or

21  texts or messaging.  Like that.

22          MR. BUNIS:  And this is 2010/2013.

23          MR. JOFFE:  Yes.

24      Q.   Yes.  Mr. O'Grady, just to make sure,

25  not tricking you.  Okay?

                                        34

 1              J. O'GRADY

 2          My focus here is on 2010/2013, unless

 3  I specifically ask you, like you downloaded the

                 Page 37

O'Grady Final

4      documents on share drive in 2016.  I will ask you

5      about '16.  But, generally, my questions are

6      about the relevant period.  You understand that?

7              A.   Yes.

8              Q.   Okay.  I'm not trying to trick you.

9      All right?  So, yes, it is in 2013.

10                  How did you use your phone for

11     business communications?  That's my question.

12             A.   I used my phone in a business

13     capacity, and occasionally in a personal

14     capacity.

15             Q.   But in a business capacity you used it

16     to send texts, emails or messages.  Correct?

17             A.   Yes.

18             Q.   And I have also heard that you guys

19     have this Microsoft Lync or Microsoft Teams

20     application on your work stations.

21                  Did you use Microsoft Lync or

22     Microsoft Teams or Skype for business

23     communications?  Again, during that period.

24             MR. BUNIS:  Objection.  Compound

25             question.

                                                    35

O'Grady Final

1                    J. O'GRADY

2              You can answer if you understand.

3         A.   I believe I understand the question.

4              I'm not sure the name of the software

5    in 2013/'14.  It could have been Lync.  It could

6    have been Skype.  I don't know the name of it,

7    but it was one of those.

8         Q.   Okay.  The names I'm using is what we

9    have heard from other witnesses.

10             Again, I'm not making up.  Somebody

11   said I used Microsoft Lync.  That's why I'm

12   asking you.  No tricks.  But, okay.

13             So when you collected, I take it you

14   first collected everything on a thumb drive like

15   this.  Right?  On a thumb drive.

16             Did you put your text messages from

17   your phone on a thumb drive, for example?

18        A.   I put any document that was related,

19   that I was asked to collect onto the thumb drive.

20   I don't --

21        Q.   All right.  My question was

22   specifically about text messages.

23        A.   Like you mentioned, I'm not a text

24   person.  So I don't use texting in business a

O'Grady Final

25    lot.  I don't recall any texts that were related

36


1                        J. O'GRADY

2    to the collection request.

3        Q.   Well, Mr. O'Grady, that's not exactly

4    answering my question.  You know.  And you would

5    agree with me, there are two ways you can kind of

6    think about it.

7            One way is, you want to collect the

8    documents.  You actually go and look for.  Like,

9    let me see if I have texts.  You know.  Few or

10   many, I don't -- well, at that point I don't

11   care.  I just understand what I'm going to

12   search.  Am I going to search my texts?  Am I

13   going to search my Skype conversations?  For

14   relevant stuff.  Right?  Whether you find it or

15   not, or how many, that's the second question.

16           But did you even search your texts or

17   your messages, like those we mentioned, Lyncs or

18   Teams or Skype?  Did you even search them for

19   relevant documents?

20           MR. BUNIS:  If you recall.

21       A.   The way my -- at the time I don't

                        Page 40

O'Grady Final

22    know, again, if it was Lyncs or Skype, is, I do

23    not have it set up to store history.

24              So once I Lync or Skype, as soon as I

25    exit the application, that history is gone.  But

                                                    37


1                    J. O'GRADY

2    I did search it, but --

3         Q.   Well, I want to know --

4              MR. BUNIS:  Let him finish.  He is

5         finishing his answer.

6              Finish your answer.

7         A.   I did search it, but, as I mentioned,

8    there is no history there.

9         Q.   I'm sorry, did you say you did search

10   it, or you didn't search it?

11        A.   I did search it.

12        Q.   Okay.

13        A.   But there is no history to search.

14        Q.   And you searched that application that

15   we don't quite remember the name, but it falls

16   into this Microsoft Lync, Team or Skype.  Right?

17   So we have that application.

18              You said that you delete all the

                         Page 41

O'Grady Final

19    messages instantaneously upon concluding, or

20    close enough upon concluding, so you don't have a

21    history of conversations in that application.

22    Correct?

23              MR. BUNIS:  Objection.  Misstates his

24              prior testimony.  The witness never said he

25              deleted anything.  That's very important.

38

1              J. O'GRADY

2              MR. JOFFE:  Wait second.  Okay.

3         Q.   Mr. O'Grady, what did you say?  What

4    happens with your Lync, Skype or Teams

5    conversations?

6         A.   There is a feature in the application

7    where you can set it so that it retains the

8    history, or it deletes -- not deletes.  It

9    eliminates -- it doesn't store the history.

10             So as soon as I exit out of the

11    conversation, that history is not available to

12    me.

13        Q.   Well, Mr. O'Grady, what we have heard

14    is that you've received litigation hold notice.

15    I think we have heard from other witnesses

O'Grady Final

16   sometimes early 2014, or maybe even late 2013.

17   Do you recall receiving litigation hold or

18   preservation, as you said, notice?

19          MR. BUNIS:  Objection:  asked and

20       answered.

21          You can answer.

22   Q.   You did.  I think you testified.

23   A.   Yes.

24   Q.   So once you received that preservation

25   notice, did you change the settings on your Lync,

                                              39


 1                  J. O'GRADY

 2   Skype, dash, Teams messaging application?  Did

 3   you change the settings to save the conversations

 4   perhaps?

 5   A.   No.

 6   Q.   Did the company change the settings

 7   for people who were subject to the litigation

 8   hold notice?

 9          MR. BUNIS:  If you know.

10   A.   I don't know.

11   Q.   If you know.

12          Okay.  So then that thumb drive we

O'Grady Final

13    would not expect to see text messages in the

14    thumb drive.  Correct?  Your collection of

15    documents in the thumb drive.

16          MR. BUNIS:  Objection.  Calls for

17       speculation.

18          You can answer, if you can.

19    Q.   I mean, if you didn't collect them, or

20    if you didn't preserve them, then we wouldn't

21    expect to find them there.  Right?  Correct?

22    Right?

23          MR. BUNIS:  Objection.  Misstates his

24       prior testimony.

25          You can answer, if you understand.

                                          40


1               J. O'GRADY

2    A.   As I said previously, I searched my

3    Lync, I believe, or Skype, Teams that you

4    mentioned.  In very recent updates to Skype,

5    whatever it was, I did search it, but it

6    virtually would only be any open conversation

7    that I had at the time that I had that

8    application open.

9    Q.   Okay.  I understand.  Now I

O'Grady Final

10    understand.  Thank you.

11            All right.  So but as far as emails,

12    emails you would upload it to the thumb drive.

13    Right?

14        A.    Yes.

15        Q.    I mean, you did use emails for

16    business communication.  Correct?  Your reports

17    were sitting from Malaysia to London, and you in

18    Massachusetts, you had to have electronic

19    communications with them.  Correct?

20        A.    Correct.

21        Q.    And the events in question were

22    happening in India and in China, and you in

23    Massachusetts.  So there must be that flow of

24    electronic communications just for you to do your

25    job.  Correct?

                                              41


 1                    J. O'GRADY

 2        A.    That is correct.

 3        Q.    So I presume there were a number of

 4    emails responsive to this litigation that you

 5    saved from your thumb drives.  Correct?

 6            One.  Thumb drive.  Sorry.

O'Grady Final

7               Correct?

8        A.   I recall emails, yes.

9        Q.   Do you recall any Word files or PDF

10   files or PowerPoint files?  Non-email files.

11               I can go one by one, but you know what

12   non-email files mean.  Any of them.

13               MR. BUNIS:  Objection.

14        Q.   Have you downloaded any of those files

15   to the thumb drive?

16               MR. BUNIS:  Objection.  Asked and

17          answered.

18               You can answer.

19        A.   I downloaded all the emails.  If they

20   had attachments, I wouldn't know what type of an

21   attachment it was, but I would have downloaded

22   the full emails with attachments.

23        Q.   Well, attachments are usually files.

24   Right?  They could be Word files.  PDF files.

25   Whatever different electronic documents.

                                              42


1                    J. O'GRADY

2   Correct?

3        A.   They could be anything.  Even another
                    Page 46

O'Grady Final

4    email can be attached.

5         Q.   Yes.  You mentioned before, but that's

6    right.  But you would download your attachments

7    to your emails into your thumb drive.  Right?

8    And then from that thumb drive, into the share

9    drive.  Correct?

10        A.   That is correct.

11        Q.   Okay.  So whatever documents

12   responsive to this litigation you have in your

13   possession on your computer or in your emails or

14   files attachments, Word, PDF, you would download

15   on the thumb drive, and that would go to the

16   share drive.  Correct?

17        A.   That is correct.

18        Q.   Mr. O'Grady, how many documents do you

19   think defendants produced on your behalf?

20             MR. BUNIS:  Objection.  Calls for a

21        legal conclusion.

22             You can answer if you know.

23        A.   I don't know.

24        Q.   How many would you expect them to

25   produce?

43

O'Grady Final

1                     J. O'GRADY

2               MR. BUNIS:  Objection.  Calls for a

3          legal conclusion.

4               You can answer if you know.

5          A.   I wouldn't know.

6          Q.   Yeah.  Well, Mr. O'Grady, would it

7     surprise you if I tell you that they produced

8     exactly zero documents from you?

9               MR. BUNIS:  Objection.  Calls for

10          legal conclusion.

11          Q.   Not a single email.  Not a single

12     file.  Not a single PowerPoint.  Not a single

13     PDF.  Not a single Word document.  Not a single

14     text, email.  Nothing.  Zero.

15               Would that surprise you, Mr. O'Grady?

16               MR. BUNIS:  Objection.  Calls for a

17          legal conclusion.

18               You can answer if you understand.

19          A.   I don't know how to answer that

20     question.

21          Q.   Well, you can tell me if you are

22     surprised right now.  When you sit here right

23     now, and I ask you, Mr. O'Grady, are you

24     surprised, I'm not kidding here.  I need you to

                    Page 48

O'Grady Final

25    answer my questions.

                                            44


1                        J. O'GRADY

2                  Are you surprised that Bunis and

3    others, told us zero, gave us zero documents from

4    you, zero, you listed as a custodian who produced

5    zero documents?

6                  Aren't you surprised after you've

7    collected a hundred of documents or more on your

8    thumb drive and downloaded on the share drive?

9    Are you not surprised?

10                 MR. BUNIS:  I'm going to just caution

11              you, Dimitry, because, again, your

12              questioning and your demeanor is

13              threatening to the witness, and it is just

14              inappropriate, and I want you to stop.

15                 Q.   Mr. O'Grady, are you threatened by me?

16    By my demeanor?

17                 You are under oath, Mr. O'Grady.  Are

18    you threatened by my demeanor?

19                 A.   Not physically, but when someone says

20    they are going to come at you, then it is very

21    concerning.

O'Grady Final

22          Q.   They are going to do what?  What did I

23     say?

24          A.   Very concerning.  It is very

25     concerning to me.

                                                    45


1                    J. O'GRADY

2          Q.   No, no, no, but what is concerning?  I

3     just didn't hear the word.

4          A.   I said when you asked about your

5     demeanor, I said it would be very -- it's very

6     concerning to me.

7          Q.   But what exactly is concerning?

8     That's what I'm trying to figure out.

9               If there is anything in my demeanor

10     that is threatening, or concerning, I want to

11     know.  I want to avoid that.  I don't want to be

12     threatening.

13          A.   Got it.

14          Q.   You tell me what is in my demeanor

15     that is threatening.  I mean, I ask very sharp

16     questions, and I will go deeper and deeper and

17     deeper until I get there.  That may be

18     threatening, but that's not my demeanor.  That's

O'Grady Final

19    my manner of cross-examination, Mr. O'Grady.

20              And I tell you, I will get to the

21    bottom of it.  I will tell you something more,

22    but for now I just want, you know, for us to

23    understand this.  If you tell me that I'm

24    threatening, something is threatening in my

25    demeanor, I will work to fix it.  If it is just

                                        46


 1                    J. O'GRADY

 2    the nature of my questioning, that's nothing I

 3    can do about it.

 4              So please tell me.  And, if not, then

 5    let's move on.

 6              MR. BUNIS:  Is there a question?

 7              MR. JOFFE:  Yes.  I'm asking whether

 8         Mr. O'Grady finds anything threatening in

 9         my demeanor.

10              MR. BUNIS:  Mr. O'Grady has already

11         answered that question.  And he has a

12         lawyer here sitting next to him that is

13         going to make sure that your behavior,

14         including your demeanor, is appropriate for

15         a deposition in a civil case.

                    Page 51

O'Grady Final

16     Q.   Mr. O'Grady --

17          MR. BUNIS:   And so I suggest that you

18     would move on and ask questions about the

19     substance of what you want to know about in

20     this case.  Because on a number of

21     occasions, Dimitry, you seemed to suggest

22     that I have been wasting, somehow, your

23     time.

24          MR. JOFFE:   No, no, that's --

25          MR. BUNIS:   And I suggest here your

                                             47

1               J. O'GRADY

2     conversation with this witness about what

3     your demeanor is has nothing to do with the

4     facts and circumstances of this case.  So I

5     encourage you to use your time

6     appropriately.

7          Q.   Before I get to the facts of this

8     case, Mr. O'Grady, I want to ask you, very

9     important two questions:

10          Are you prepared to tell me the truth

11     today?

12          MR. BUNIS:   Objection:  asked and

O'Grady Final

13          answered.

14                  He has already -- you've asked him.

15                  The first questions you asked him in this

16                  case, in this deposition, was almost

17                  verbatim what you just asked him.

18          Q.   Okay, Mr. O'Grady.  I will ask it

19      slightly differently.

20                  Are you prepared to tell me the truth

21      today, even if that truth exposes your employer,

22      HP, to criminal liability?  Are you prepared to

23      do that, Mr. O'Grady?

24                  MR. BUNIS:  Objection.  Calls for a

25                  legal conclusion.  This witness is not here

                                                            48


1                       J. O'GRADY

2           to testify about criminal proceedings.

3           Q.   Mr. O'Grady, I want to hear your

4       honest answer.  Are you going to give me your

5       truthful answers today, even if they will expose

6       HP to criminal liability?  Yes or no?

7                   MR. BUNIS:  Objection:  calls for a

8                   legal conclusion.

9                   You can answer.

O'Grady Final

10        Q.   I'm not kidding here.  I'm dead

11   serious.

12             Are you prepared to give me a truthful

13   answer, if they expose HP to criminal liability?

14             MR. BUNIS:  I'm going to object again.

15             And, Dimitry, language like, I'm dead

16        serious, and the manner in which you are

17        asking that question, is exactly the type

18        of demeanor that I just described to you

19        just before that the witness testified that

20        he is uncomfortable with.  And we're not

21        going to do this over and over again.

22             MR. JOFFE:  You just wait where I'm

23        going.  You just wait.  We're just getting

24        started.  Just getting started.  Okay?

25        Save your breath for later.

                                              49


1                      J. O'GRADY

2        Q.   Mr. O'Grady, are you prepared to

3   testify truthfully today even if your testimony

4   exposes HP to criminal liability?

5             MR. BUNIS:  Objection.  Calls for a

6        legal conclusion.

                      Page 54

O'Grady Final

7             You can answer.

8        A.   I believe I, upfront, indicated I

9    would testify truthfully.

10       Q.   I will put it bluntly to you.  Where

11   we sit here today, after two weeks of depositions

12   and what went on.  Okay?  Let me just put it

13   bluntly.  It is a serious matter.  And you

14   should --

15            MR. BUNIS:  Hold on.  I'm just going

16            to caution you, Dimitry.  Before you use

17            blunt terms, I'm going to tell you that

18            we're not, if you are in any way going to

19            threaten this witness, we are going to end

20            the deposition.  So be very careful.

21            MR. JOFFE:  You should.  Maybe you

22            will.  Maybe you will.

23       Q.   But I want to be fair with you, Mr.

24   O'Grady.  So I want to give you a fair warning.

25   This is a fair warning.  It is not a threat.  I

                                                    50


1                      J. O'GRADY

2    think I will share it with you.

3            We believe strongly that what the

Page 55

O'Grady Final

4      evidence today that we have assembled shows, is

5      that HP has been involved and still is, in a

6      coverup that includes perjury, suborning perjury

7      from witnesses, falsifying records in the court,

8      submitting false and fraudulent sworn

9      declarations, and making witnesses lie.  Okay?

10              This is going far, far, far, beyond

11     whatever the labels on the transceivers were.

12     Okay?  This is a case of a fractional justice in

13     federal proceedings.  I have your attorneys with

14     false sworn declarations.  I have falsified ESI,

15     electronic storage information data, and I'm

16     going to lay it out and break that coverup, Mr.

17     O'Grady, and HP will be exposed to criminal

18     liability.  It is just the nature of its

19     misconduct.

20              And my question to you, Mr. O'Grady,

21     is whether you want to be a part of that coverup.

22              How long have you been with HP, Mr.

23     O'Grady?

24              MR. BUNIS:  What is the question:  How

25          long have you been with HP?

                                                    51

O'Grady Final

1                    J. O'GRADY

2          Q.   How long have you been with HP, Mr.

3     O'Grady?

4               MR. BUNIS:  You can answer that

5          question.

6          A.   I started in, if I count the

7     acquisitions, so HP bought Compaq --

8          Q.   How long have you been with HP?  I

9     don't want to hear when they --

10              MR. BUNIS:  Let the witness answer the

11         question.

12         Q.   Just tell me number of years.

13              MR. BUNIS:  Let the witness answer the

14         question.

15         Q.   How long have you been with HP?

16              MR. BUNIS:  Dimitry, you are not going

17         to cut the witness off.

18         Q.   How long have you been with HP?

19              MR. BUNIS:  Let the witness answer the

20         question.

21         Q.   How long have you been with HP?

22              MR. BUNIS:  Do you understand the

23         question?

24              If you do, you can answer it.

O'Grady Final

25          A.   Yes.   I believe my start date was in

                                                      52

1                        J. O'GRADY

2      July 1983.

3          Q.   That's 27 years if I'm correct.   Okay.

4               Listen, that's a long time.   I

5      understand that.

6               Let me tell you this, Mr. O'Grady.   If

7      you lie today, I will catch you lying.   If I

8      catch you lying, you are a part of this coverup.

9               MR. EDGARTON:   Let's take a break.

10              Let's take a break while Dimitry calms

11              down.

12         Q.   And nobody will protect you.   So --

13              MR. EDGARTON:   Let's take a break.

14              You need to compose yourself, Dimitry.   You

15              need to compose yourself.

16         Q.   -- Fifth Amendment.   Because if you

17      testify today, you waive it.   You waive your

18      Fifth Amendment rights.   And if you are part of

19      this coverup, if you lie, if you destroy

20      documents, if you did anything of that, and you

21      lie today in this deposition --

                    Page 58

O'Grady Final

22            MR. BUNIS:  Stop.  We're going to --

23       Q.   -- you waive your Fifth Amendment and

24  you are done.  We are going to take a break as

25  your counsel asked for.  After the break you come

                                             53

1                 J. O'GRADY

2  back, and I ask you whether you are going to be

3  part of this coverup or whether you are going to

4  give me a truthful answer.

5            And you can do two things.  You can

6  claim:  I refuse to answer this on Fifth

7  Amendment grounds.  Or you can give me the

8  truthful answer.

9            There is no other choice, Mr. O'Grady.

10            I know all.  I have documents.  I will

11  lay it out for you after you come back from the

12  break.  And I will ask you hard questions.

13            It is not my demeanor.  It is my

14  clients who spent time in jail because you

15  fob-off counterfeit equipment to them.  Okay?

16            MR. BUNIS:  Stop.  Stop.  Stop.

17            Enough with the diatribe.  We are done with

18            this.  We are not going to have this any

O'Grady Final

19          more.  Let's go off the record.

20               THE VIDEOGRAPHER:  Any --

21               MR. BUNIS:  We don't need this

22          diatribe any more.  We are going off the

23          record.

24               THE VIDEOGRAPHER:  Any objections to

25          going off the record?

                                                    54

1                    J. O'GRADY

2               MR. BUNIS:  Let's go off the record.

3               THE VIDEOGRAPHER:  Any objections to

4          going off the record?

5               MR. JOFFE:  Yes, I want to know how

6          long they need to have a break.  Five

7          minutes, ten minutes, 15 minutes?

8               MR. BUNIS:  The answer is entirely how

9          long you need to compose yourself, because

10          we are not going to do this anymore.  If

11          you --

12               MR. JOFFE:  If you are going to go on

13          break, I have --

14               MR. BUNIS:  If you continue with the

15          manner in which you are asking these

O'Grady Final

16          questions, and the demeanor, we are going

17          to end the deposition.

18               MR. JOFFE:  -- it is very important

19          for you, for you, my friend.  Not for me.

20          It is very important for you, too.

21          Q.   Mr. O'Grady, I want to make sure that

22     you understand this is a real fair warning --

23               MR. BUNIS:  Let's take a break.

24          Q.   We have a reference to ask the US

25     Attorney's office to have a federal prosecutor

                                             55

1                    J. O'GRADY

2     look at HP's conduct of this litigation because a

3     number of federal felonies have been committed.

4     I'm not kidding.

5               When I say that you are under oath on

6     the video, what I mean is, yes, I will take it to

7     the court and I will demand that federal

8     prosecutors start looking into this case.  And if

9     you have a choice today, Mr. O'Grady, it is your

10     choice, it is you sitting in this chair.  You

11     will be answering my questions.  If you lie to me

12     today, as other witnesses did --

O'Grady Final

13          MR. BUNIS:  Stop.  Stop.  We are going

14      off the record.  This is enough.  You are

15      just yelling at the witness.  There are no

16      questions.

17          THE VIDEOGRAPHER:  Mr. Joffe --

18          MR. BUNIS:  Let's go off the record.

19      This is absolutely ridiculous.  Stop.  We

20      are going off the record.

21          THE VIDEOGRAPHER:  We need to go off

22      the record.

23          MR. BUNIS:  Stop.

24          THE VIDEOGRAPHER:  We are going off

25      the record at 10:05 a.m.  We're off.

                                            56

1               J. O'GRADY

2          (Recess:  10:05 - 10:25 a.m.)

3          THE VIDEOGRAPHER:  We're back on video

4      record at 10:25 a.m.   Please continue.

5          MR. BUNIS:  Dimitry, before you

6      continue, I just want to put something on

7      the record, and I'd ask that you allow me

8      to finish before you interrupt.  Okay?

9          MR. JOFFE:  Go ahead.

                  Page 62

O'Grady Final

10          MR. BUNIS:  Based on your conduct,

11     Dimitry, so far in this deposition,

12     specifically, threatening the witness, your

13     unnecessary and counterproductive attitude,

14     and your intimidating questioning and

15     demeanor, behavior that the witness has

16     already articulated concerns about, and,

17     frankly, concerns that I also have, and

18     finally -- by the way, this is behavior

19     that I have asked you repeatedly to change,

20     both today and in prior depositions, and

21     you have refused.  And then, finally, based

22     on your most recent attempts to threaten

23     the witness with criminal prosecution to

24     obtain or elicit favorable testimony and

25     gain an advantage in this civil proceeding,

                                             57

1                    J. O'GRADY

2     based on all of that, I am going to do

3     something that I have not done in 27 years

4     of practice.  And I am going to end this

5     deposition.

6          And I would ask that the court

                    Page 63

O'Grady Final

7       reporter and the videographer do their

8       level best to secure the testimony and the

9       comments of counsel from the totality of

10      what's been on the record so far, as

11      quickly and as efficiently as possible, and

12      if at all possible, in whatever rough form

13      we can have either of those two mediums, we

14      would really appreciate it because we

15      expect that the Court will be interested in

16      this.

17          And so with that, we are going to end

18      the deposition.

19          MR. JOFFE:  Okay.  I will put

20      something on the record as well.

21          That after the witness testified that

22      he collected documents, gave them for

23      production and none of them were produced,

24      and after I warned the witness that his

25      truthful answers may expose the company to

                                        58

1               J. O'GRADY

2       criminal liability, for all the charges

3       that I mentioned, and when I made a

O'Grady Final

4          warning, fair warning that we will seek

5          Mr. -- we will seek the Court, a referral

6          to federal prosecutors for that.  You

7          refused to answer my question.  Not that --

8          you didn't refuse to answer my questions.

9              I gave you a fair warning that you

10         should consider a Fifth Amendment waiver in

11         answering my questions.  Then you went for

12         a break.  You came back.  And your lawyer

13         said that the deposition is canceled.

14         That's for the record.

15             Also, for the record, your deposition

16         as a 30(b)(6) witness was canceled by

17         defendants as well, unilaterally.  It was

18         first scheduled for last week.  Then it was

19         scheduled for this week, and in both

20         occasions defendants unilaterally canceled

21         all those depositions.

22             So, Mr. O'Grady, we will obviously

23         bring it up with the Court, all of it, and

24         we will, hopefully, see you again.  I will

25         request the Court to supervise your

59

O'Grady Final

1                   J. O'GRADY

2       deposition.  Okay?  And we will do it that

3       way, next day.

4            MR. BUNIS:  Okay.  I think we are off

5       the record.

6            MR. JOFFE:  That's it.

7            THE VIDEOGRAPHER:  Wait a minute.  We

8       are not off the record yet.  All parties

9       agree to end this deposition?

10           MR. JOFFE:  Well, no --

11           THE VIDEOGRAPHER:  Any objections in

12      ending this deposition?

13           MR. JOFFE:  We are told in this

14      matter.  We are told.  We don't agree to

15      end the deposition, quite obviously.  We

16      would love to continue with the deposition,

17      but defendants unilaterally canceled that.

18      So we agreed to go off the record.  That's

19      true.  We don't agree to cancel this

20      deposition.  This deposition will continue.

21           So thank you.

22           THE VIDEOGRAPHER:  I am about to end

23      the video record.  Are there any

24      objections?

Page 66

O'Grady Final

25          MR. BUNIS:  No.

                                        60

1                    J. O'GRADY

2          MR. JOFFE:  No objections to ending

3      the record.

4          THE VIDEOGRAPHER:  This concludes --

5          MR. JOFFE:  I reserve my right to

6      continue this deposition at a later time.

7          THE VIDEOGRAPHER:  This concludes the

8      video conference deposition of James

9      O'Grady.  We ask all participants stay

10     connected for your transcript and video

11     orders.

12         Mr. Joffe, you are going to take an

13     order which would sync.  Correct?

14         MR. JOFFE:  Yes, absolutely.

15         THE VIDEOGRAPHER:  Mr. Bunis, do you

16     need a copy of the video with sync?

17         MR. BUNIS:  I need a copy with sync.

18     And I just would ask how quickly do you

19     think we can get it?

20         THE VIDEOGRAPHER:  Mr. Joffe, one

21     moment, please.

Page 67

O'Grady Final

22          We need it expedited then.  Because

23      normally it is two weeks.

24          MR. BUNIS:  Yes.  Expedited as soon as

25      possible.

                                        61

1                    J. O'GRADY

2           THE VIDEOGRAPHER:  Mr. Joffe, do you

3       need yours expedited?

4           MR. JOFFE:  Yes, please.

5           THE VIDEOGRAPHER:  Mr. Callaghan, do

6       you need a copy?  I know you are on there.

7           MR. CALLAGHAN:   I do not.

8           THE VIDEOGRAPHER:  Mr. Desai?  Is he

9       still there?

10          MR. BUNIS:  No.  One is fine as for

11      the defendants.  Thank you.

12          THE VIDEOGRAPHER:  Does the court

13      reporter have anything left for the record?

14          (Off written record.)

15          MR. BUNIS:  Can I just ask the court

16      reporter how quick do you think you might

17      be able to get a rough of what we have done

18      today.

O'Grady Final

19          (Off written record.)

20          THE VIDEOGRAPHER:  We are still on.

21      We are reporting transcript and video

22      orders.

23          We are going off the record, November

24      10, 2020 at 10:31 a.m.

25          (Time noted:  10:31 a.m.)

♠                                                          62


1

2            C E R T I F I C A T E

3

4    STATE OF NEW YORK   )
                          : ss.
5    COUNTY OF NEW YORK  )

6

7          I, ANNELIESE R. TURSI, a Registered

8    Professional Reporter and Notary Public within

9    and for the State of New York, do hereby certify:

10          That the witness whose remote video

11    deposition taken via teleconference is

12    hereinbefore set forth, was duly sworn by me and

13    that such deposition is a true record of the

14    testimony given by the witness, and that the

15    witness has not requested to review the

Page 69

O'Grady Final

16    transcript pursuant to Rule 30(e)(2).

17          I further certify that I am not

18    related to any of the parties to this action by

19    blood or marriage, and that I am in no way

20    interested in the outcome of this matter.

21          IN WITNESS WHEREOF, I have hereunto

22    set my hand this 11th day of November, 2020.

23

24          _____

25          ANNELIESE R. TURSI, RPR

                                          63


 1

 2          DEPOSITION ERRATA SHEET

 3

 4    Job No. J6185348

 5    Case Caption:  Styller v. Hewlett-Packard

 6

 7          DECLARATION UNDER PENALTY OF PERJURY

 8          I declare under penalty of perjury that I

 9    have read the entire transcript of my deposition

10    taken in the captioned matter or the same has

11    been read to me, and the same is true and

12    accurate, save and except for changes and/or

O'Grady Final

13    corrections, if any, as indicated by me on the

14    DEPOSITION ERRATA SHEET hereof, with the

15    understanding that I offer these changes as if

16    still under oath.

17         Signed on the_____day of

18    _____,20____

19    _____

      JAMES O'GRADY

20

21

22

23

24

25

↟

64

1

2              DEPOSITION ERRATA SHEET

3    Page No. _____  Line No._____  Change to:_____

4    _____

5    Reason for change:_____

6    Page No. _____  Line No._____  Change to:_____

7    _____

8    Reason for change:_____

9    Page No. _____  Line No._____  Change to:_____

O'Grady Final

10  _____

11  Reason for change:_____

12  Page No. _____  Line No._____ Change to:_____

13  _____

14  Reason for change:_____

15  Page No. _____  Line No._____ Change to:_____

16  _____

17  Reason for change:_____

18  Page No. _____  Line No._____ Change to:_____

19  _____

20  Reason for change:_____

21  Page No. _____  Line No._____ Change to:_____

22  _____

23  Reason for change:_____

24
    SIGNATURE:_____DATE:_____
25            JAMES O'GRADY

⬆

                                                    65


1

2             DEPOSITION ERRATA SHEET

3   Page No. _____  Line No._____ Change to:_____

4   _____

5   Reason for change:_____

6   Page No. _____  Line No._____ Change to:_____

O'Grady Final

```
 7   _____

 8   Reason for change:_____

 9   Page No. _____  Line No._____  Change to:_____

10   _____

11   Reason for change:_____

12   Page No. _____  Line No._____  Change to:_____

13   _____

14   Reason for change:_____

15   Page No. _____  Line No._____  Change to:_____

16   _____

17   Reason for change:_____

18   Page No. _____  Line No._____  Change to:_____

19   _____

20   Reason for change:_____

21   Page No. _____  Line No._____  Change to:_____

22   _____

23   Reason for change:_____

24
     SIGNATURE:_____DATE:_____
25            JAMES O'GRADY
```

᠅

66

```
 1

 2   November 10, 2020

 3
```

O'Grady Final

4

5                    I N D E X

6   EXAM BY                        PAGE

7   Mr. Joffe                       5

8

9                  E X H I B I T S

10  FOR IDENTIFICATION             PAGE

11  (None marked.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25