# **EXHIBIT C**

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2

 3    - - - - - - - - - - - - - - - - - - x

 4    INTEGRATED COMMUNICATIONS &        :
      TECHNOLOGIES, INC., et al.,
 5                                       :   Civil Action No.
              Plaintiffs,                    1:16-cv-10386-LTS
 6                                       :

 7        v.                             :

 8    HEWLETT-PACKARD FINANCIAL SERVICES :
      COMPANY, et al.,
 9                                       :

10            Defendants.                :

      - - - - - - - - - - - - - - - - - - x

11

12       BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

13

14               VIDEO STATUS CONFERENCE

15

16            Thursday, November 12, 2020
                      3:59 p.m.

17

18

19       John J. Moakley United States Courthouse
                One Courthouse Way
20               Boston, Massachusetts

21

22            Rachel M. Lopez, CRR
                Official Court Reporter
23           One Courthouse Way, Suite 5209
              Boston, Massachusetts  02210
24                 raeufp@gmail.com

25
```

1                    **A P P E A R A N C E S**

2

     On behalf of the Plaintiffs:

3

          LAW OFFICE OF DIMITRY JOFFE
4         BY:  DIMITRY JOFFE
          230 Park Avenue
5         10th Floor
          New York, New York  10169
6         (212) 309-8711
          dimitry@joffe.law

7

8         LAW OFFICE OF JOSH MCGUIRE
          BY:  JOSHUA A. MCGUIRE
9         51 Winchester Street
          Suite 205
10        Newton, Massachusetts  02461
          (617) 461-6400
11        josh@joshmcguirelaw.com

12

13   On behalf of the Defendants:

14        GIBBONS, P.C.
          BY:  ANTHONY P. CALLAGHAN AND PAUL A. SASO
15        One Pennsylvania Plaza
          37th Floor
16        New York, New York  10119
          (212) 613-2015
17        acallaghan@gibbonslaw.com

18

          CHOATE HALL & STEWART LLP
19        BY:  MICHAEL H. BUNIS, KEVIN C. QUIGLEY,
          AND G. MARK EDGARTON
20        Two International Place
          100-150 International Place
21        Boston, Massachusetts  02110
          (617) 248-4030
22        mbunis@choate.com
          kquigley@choate.com
23        medgarton@choate.com

24

25

**P R O C E E D I N G S**

1

2          (In open court.)

3          THE DEPUTY CLERK:  The United States District Court

4     for the District of Massachusetts is now in session, the

5     Honorable Leo T. Sorokin presiding.

6          Today is November 12th, the case of Integrated

7     Communication Technology, vs. Hewlett-Packard Financial

8     Services Company, Civil Action 16-10386 will now appear

9     before this court.

10          Counsel, please identify themselves for the record.

11          MR. JOFFE:  Dimitry Joffe of Joffe Law PC, for

12     plaintiffs.

13          MR. BUNIS:  Michael Bunis, Choate, Hall, and

14     Stewart on behalf of the defendants.

15          MR. MCGUIRE:  Josh McGuire on behalf of plaintiffs.

16          MR. BUNIS:  I'm sorry, Josh.

17          MR. EDGARTON:  Good afternoon, Your Honor, Mark

18     Edgarton, Choat, Hall, and Stewart on behalf of the

19     defendants.

20          MR. QUIGLEY:  Good afternoon, Your Honor.  Kevin

21     Quigley, Choate, on behalf of the defendants, as well.

22          MR. CALLAGHAN:  Good afternoon, Your Honor, Anthony

23     Callaghan from Gibbons PC, also on behalf of defendant.

24          MR. SASO:  And good afternoon, Your Honor, Paul

25     Saso from Gibbons PC, on behalf of defendants.

1    THE COURT:  Good afternoon.  So first of all, thank

2  you to all of you for making yourselves available so quickly

3  in response to the short notice that I gave you of this

4  hearing.

5    I have watched the video of the deposition that

6  Mr. Bunis provided and copied to all of you.  This is why I

7  scheduled the hearing.  I have one practical question first.

8    How many -- putting aside -- not including experts,

9  just the nonexpert depositions, how many depositions are left

10  for plaintiffs to take and how many are left for defendants?

11    MR. JOFFE:  The plaintiffs are currently taking the

12  deposition of Stewart Patterson, which is going on today.  We

13  will have two -- well, a day and a half of 30(b)(6)

14  depositions.  I believe, Your Honor, that's all that's

15  scheduled left for plaintiffs to take.

16    THE COURT:  So a day and a half of the 30(b)(6).

17  Mr. Patterson -- this interrupts Mr. Patterson's deposition.

18    MR. JOFFE:  Right.  And I think that's -- let me

19  just make sure at my schedule here, but I believe that's it,

20  Your Honor.  I have the schedule.

21    THE COURT:  And then what about -- and then there's

22  Mr. O'Grady.

23    MR. JOFFE:  Well, Mr. O'Grady, we don't have a --

24  we have one hour of Mr. O'Grady.

25    THE COURT:  I mean, do you want Mr. O'Grady's

1    deposition or not?

2                MR. JOFFE:  We do, of course.

3                THE COURT:  Yeah.

4                MR. JOFFE:  And Your Honor, and one other, we have

5    a Barclay deposition, Kevin Barclay, the day before

6    Mr. O'Grady.  And then that deposition, I believe Mr. Bunis

7    instructed Mr. Barclay not to answer my questions on very

8    many occasions that did not call for those instructions and

9    we would like to move to upend those instructions and maybe

10   have him for another half a day deposition.

11               THE COURT:  You can -- I don't know anything about

12   that, either way.

13               MR. JOFFE:  Right.

14               THE COURT:  But you can certainly file a motion

15   saying that you want Mr. Barclay to come back because, and

16   give me the transcript and explain to me what happened.  And

17   then I'll look at it and I'll give the defendants a chance to

18   oppose that, and then I'll see.

19               And obviously, it goes without saying that if I

20   think a witness didn't testify to things, in response to

21   proper questions, that they should have testified about, then

22   I'll probably order that they give -- they answer those

23   questions.  I'm not saying that the questions were proper and

24   I'm not saying that the instructions were improper, I'm

25   simply saying that's a -- but you have to bring it to me and

1  file a motion.

2          MR. JOFFE:  Of course.

3          With that in mind, then, we have 30(b)(6) for one

4  and a half days, we have about five hours left with

5  Mr. Patterson and, tentatively, we have a few extra hours

6  with Mr. Barclay, then, and that's it.

7          THE COURT:  All right.  So a day and a half

8  30(b)(6), five hours Mr. Patterson.  Mr. O'Grady, depending

9  on what happens with that.  And then you -- at the moment,

10  the only other motion you'd have for more depositions --

11          MR. JOFFE:  Barclay.

12          THE COURT:  -- would be with respect to -- -- was

13  it Barclay?

14          MR. JOFFE:  Yes, the witness is Kevin Barclay.

15          THE COURT:  And that would be, sounds like from

16  what you're saying, if you won that, 30 minute to half a day?

17          MR. JOFFE:  Yes.

18          THE COURT:  Okay.  And then how many do the

19  defendants have left to take?

20          MR. SASO:  Your Honor, there are five witnesses

21  that have not yet completed their depositions.  They would

22  include Jade Cheng, who we've only been able to get through

23  about two hours with, so we expect two more days with

24  Mr. Cheng, Caroline Cheng, Jason Yuyi, and Cathy Yu.  And

25  then, of course, we have the issue, as well, with Alexander

1    Pekar, and his subpoena.  He has not -- that issue has to be

2    resolved, as well, before taking his deposition.

3            THE COURT:  So if you had everybody, six deponents,

4    and --

5            MR. SASO:  No, five deponents.

6            THE COURT:  And one of those are two-day

7    depositions, some are one day.

8            MR. SASO:  Five witnesses, but, yes, some of them

9    will be more than one day.

10           THE COURT:  Okay.  Okay.  All right.  So let me --

11           And do you have any update on the timing of a

12   transcript of the O'Grady deposition?

13           MR. BUNIS:  I think we have it, Your Honor.

14           MR. JOFFE:  You mean O'Grady, the one that you have

15   the video?

16           THE COURT:  Yes.

17           MR. JOFFE:  I think we have rough.  Do we have

18   rough, Michael?

19           MR. BUNIS:  I believe so.  I believe so.

20           MR. JOFFE:  We have rough, yes.

21           THE COURT:  So let me -- well, Mr. Bunis, you

22   raised that you're unhappy with what transpired at the

23   deposition.  Were there specific things that you wanted -- I

24   mean, I've watched it and I -- I don't have -- I have my own

25   thoughts, but I don't have a specific -- I didn't know if

1    there were specific things you wanted in response to --

2            MR. BUNIS:  Your Honor, I think I alluded to the

3    fact that at the time -- I think I'm getting my days

4    confused, Judge.  When we were before you and that was the

5    same day of the O'Grady deposition, I think I had mentioned

6    to you that we hadn't had an opportunity to caucus amongst

7    the defendants, clients, et cetera, to figure out what kind

8    of relief we would be seeking as a result.

9            THE COURT:  Yes, I understand.

10           MR. BUNIS:  And we've still -- we've talked

11   generally about it, but I don't think we've reached a

12   conclusion.

13           I will say that my concerns that are articulated to

14   you, in part, when we were together last are that the

15   behavior of opposing counsel during the course of the

16   deposition was improper, and I did not want to subject the

17   witness to it.  I think it was inappropriate and I don't want

18   to subject further witnesses to it.

19           THE COURT:  Okay.  So then let me just tell you all

20   some tentative thoughts.

21           I watched the entirety of the video.  I think that,

22   Mr. Joffe, that there was conduct -- my tentative view -- and

23   I say tentative, because you haven't had the chance to

24   address this in any great way.  Mr. Bunis brought it up the

25   day it happened.  I didn't -- other than him telling me that

1    he thought there was various improper conduct, I didn't get

2    into it with him.  And you -- other than you telling me

3    you've had a very different of it, which is fair, I didn't

4    get into it with you.  I wanted to watch the video.

5           This is a case in which I'm very familiar with the

6    case, much more familiar than most cases, because there's

7    been -- it's been around for a long time, because it's been

8    heavily litigated from the moment it was filed.  So I'm quite

9    familiar with the allegations and I'm quite familiar with all

10   of you, because I've interacted with all of you at numerous

11   hearings over the course of this case and I've read and

12   resolved numerous motions.

13          So, but nonetheless -- so that is why I am inclined

14   to give you a tentative view of what I think is a response to

15   this, but it is only a tentative view and I am going to give

16   you both the chance to respond in writing to what I'm laying

17   out.

18          The short version is, I don't think your behavior,

19   Mr. Joffe, was proper in the deposition.  There were various

20   things that you said in the deposition that I think were not

21   proper and appropriate.  The thought -- as my tentative

22   thought for a response to this is that the depositions should

23   be supervised going forward and that they should be

24   supervised at your expense.  And the reason I think it --

25   when I say "your expense," it's you or your plaintiffs, but

1    the reason I think it's your expense is because prior to

2    Tuesday, it hadn't occurred to me that the depositions would

3    need to be supervised by a third person, but after watching

4    the deposition, I think that they do.

5              And I think that the reason that they need to be

6    supervised is not because Mr. Bunis terminated the

7    deposition, but because of what led to Mr. Bunis's decision

8    to terminate the deposition.  And so that's my tentative

9    view, that they should be supervised and that they should be

10   supervised at the expense of either you, Mr. Joffe, or

11   plaintiffs.  The reason my tentative view is for that, is

12   that the reason for supervision is because of that conduct at

13   the deposition and coming out of not -- that deposition, in

14   my view, doesn't stand alone in this case, and it comes out

15   of a history of what I've observed in court and in the course

16   of the case.

17             But that said, I think that you and your clients

18   are entitled to weigh in on that and that's why I say it's

19   only a tentative view.  And so my thought is to give you the

20   chance to weigh in on that.  You can tell me why I -- I don't

21   know if you want that or don't want that or any part of that.

22   You tell me what -- tell me in writing -- I'm not expecting

23   you to, like, conclusively respond right now.  I'll give you

24   an opportunity to tell me why I shouldn't do that, or I

25   should do something else instead of, or something -- whatever

1    it is that you think -- you wish me to respond to that.

2    Whatever way you wish to respond to that.

3              And then the defendants, you can respond, as well,

4    if you wish, after Mr. Joffe responds.

5              MR. JOFFE:  Your Honor, I'm prepared to respond

6    right now, if you'll let me, please.

7              THE COURT:  And you don't wish to have an

8    opportunity to respond --

9              MR. JOFFE:  I would like to have an opportunity to

10   talk to the clients with respect to payments for this.

11             THE COURT:  Okay.

12             MR. JOFFE:  But the matter of supervised

13   depositions, I wholeheartedly welcome your suggestion.

14             THE COURT:  Okay.

15             MR. JOFFE:  I wanted to ask you for a supervised

16   deposition, but since you offered it, I will talk to them

17   about payment, but I think I'll convince them that that's the

18   right thing to do.

19             THE COURT:  Okay.

20             MR. JOFFE:  And that was my intention, frankly, to

21   ask you for supervised depositions and I -- I told opposing

22   counsel, on one of those depositions, that I would like to

23   ask the Court for supervised --

24             THE COURT:  All right.  So let me tell you, then --

25             MR. JOFFE:  I will quickly consult with my clients

1   as to expense, but other than that -- and I think we will be

2   able to --

3           THE COURT:  So let me tell you, then, what I was

4   thinking about.  I was thinking that -- I was thinking that,

5   if they are supervised and if you agree, then that certainly

6   simplifies the matter.  The person that I had in mind was

7   Retired Chief Magistrate Judge Charles Swartwood.

8           MR. JOFFE:  Charles -- I'm sorry, Your Honor.  I

9   didn't get the name.

10          THE COURT:  Charles, last name is Swartwood,

11  S-w-a-r-t-w-o-o-d.  Swartwood.  Judge Swartwood was the --

12  was a magistrate judge on this court, in the Worcester

13  division, for many years.  I don't remember how many years.

14  He's now -- he left -- when he retired, he went to JAMS, so

15  he's at JAMS.

16          MR. JOFFE:  Okay, Your Honor, if I may, do you

17  know, what is his rate?  What does he charge?

18          THE COURT:  I don't.  I have no idea.

19          MR. JOFFE:  Okay.  So we should contact with him

20  directly to figure out the rate?

21          THE COURT:  You could call JAMS to find out what

22  his ordinary and customary rate is.

23          MR. JOFFE:  Okay.  I only have this question about

24  the rates and the charges, but you know, I don't know

25  Mr. Swartwood, but I think a retired magistrate judge will do

1   just fine, Your Honor.

2          THE COURT:  Okay.  So my thought in watching it,

3   whether -- so whether there should be additional, different,

4   other, or not that consequence, I hear Mr. Joffe saying

5   supervision is fine.  Payment is a question.  He'd like to

6   find out how much it costs.  My tentative view was plaintiff

7   should pay, or Mr. Joffe.

8          So I don't know you, Mr. Bunis, are thinking about

9   what you wish and so you can do that.  And you can ponder

10  this and think about whether you want this or don't want

11  this, or you want something different.

12         MR. BUNIS:  Your Honor -- I don't want to

13  interrupt, I'm sorry.

14         THE COURT:  No, there's nothing else.

15         MR. BUNIS:  I -- again, we do need to talk to the

16  client about it and figure it out, but I do want to raise an

17  issue, something that Your Honor raised, and actually when I

18  first brought the matter up when we were together last.  And

19  that is Your Honor's ruling with respect to a prior issue of

20  attorney conduct during a deposition and the decision to

21  revoke pro hac status.  And as Your Honor said today, that

22  you are giving a tentative ruling, not based on only the

23  video, but based upon your familiarity with the entire case.

24  And I would just like to say, Judge, that I did not end the

25  deposition lightly.  The decision to do that was because I

1    felt that there was --

2           THE COURT:  I didn't think that anything,

3    Mr. Bunis, in the deposition that you did, that was anything

4    other than professional conduct, or a reasonable judgment.

5           MR. BUNIS:  I appreciate that, but what I'm saying

6    is I thought there was extreme behavior on the other side.

7    And when you consider other behavior by -- my reference to

8    Mr. Joffe by name is not meant to call names.  I'm simply

9    referring to conduct, so please understand that I'm --

10          THE COURT:  I do.

11          MR. BUNIS:  I'm not meaning to -- but, for example,

12   there's been repeated sort of ignoring of local rules, like

13   failure to meet and confer, just blowing off, frankly, Judge,

14   dates and deadlines that are important in this district.  And

15   I'll say another thing, Judge, which is there has been just

16   complete disengagement on the part of local counsel here.

17   Mr. McGuire, again, I am not naming names, I'm just pointing

18   out simple facts.  For example, Mr. McGuire, notwithstanding

19   that we have a busy deposition schedule, has not defended a

20   single deposition at all.  And yet another lawyer has been

21   brought in, who I don't think has entered an appearance in

22   this case and has defended depositions in this case, which

23   I'm not sure is proper.  Certainly we'd agree to it, because

24   we want to get things moving and be efficient, et cetera.

25          But the simple fact is this is not the way pro hac

1    relationships are supposed to work in this district.  And so

2    while I appreciate that the remedy that your tentative ruling

3    is offering deals with the immediate question of deposition

4    and conduct.  This is a broader thing going on, Judge, and I

5    think we are certainly considering a motion to revoke the pro

6    hac status.  I can't tell you now, because I haven't spoken

7    to the client, but I think --

8              THE COURT:  So let me say this.  You are free to

9    ask for whatever you want and I will entertain it.

10             You should understand, Mr. Joffe, that I have never

11   ordered a supervised -- well, that's not true.  Once -- no,

12   I've never ordered a regular deposition to be supervised by

13   anybody, in all of the time that I've been a judge, and this

14   stands out in that circumstance.

15             The -- whether a larger or more -- there are --

16   look, I'll just say a couple things about that, Mr. Bunis.

17   One, you can -- I'm not saying -- I'm not foreclosing that

18   possibility, in addition to this.  I guess my perspective is

19   this:

20             One, when are the other depositions?  Are there

21   depositions scheduled tomorrow?

22             MR. JOFFE:  Well, Your Honor, one is scheduled for

23   right after this.

24             THE COURT:  You're in the middle of Patterson?

25             MR. JOFFE:  Yes.

```
1              THE COURT:  I guess my thought is that I would look

2    to defendants on this.  If you think that you can complete --

3    Mr. Patterson is your witness?

4              MR. BUNIS:  He's a defense witness.

5              THE COURT:  He's a defense witness, yeah.

6              MR. BUNIS:  Correct.

7              THE COURT:  If you think you can complete the

8    deposition of that, without supervision, then fine.

9              MR. JOFFE:  Your Honor, but we would like to have

10   that deposition supervised.  I want to have supervision of

11   that deposition.

12             THE COURT:  If you want Judge Swartwood to watch

13   it, you can call JAMS and you can hire Judge Swartwood today

14   to be there as an observer.  He wouldn't be my designee, but

15   he would be an observer.  You can do that, if you wish, but

16   there's a videographer.

17             MR. JOFFE:  Well, I want to have it as you ordered,

18   to have supervision, a court-appointed supervision, so on

19   that authority --

20             THE COURT:  Well, you're not prepared to pay for

21   it.  You're not agreeing right now to my order that you would

22   have to pay for it.

23             MR. JOFFE:  Right.  But if we have it, I would like

24   to have Patterson, the remainder five hours to be supervised,

25   as well.  Your Honor, if you ordered it, I think it's fair
```

1    for us to ask that Patterson be --

2              THE COURT:  I haven't -- just so we're clear, I

3    haven't ordered it yet.

4              MR. JOFFE:  Okay.

5              THE COURT:  But my thought would be, if I order it,

6    it's going to apply to all the depositions going forward.

7              MR. JOFFE:  Okay.

8              THE COURT:  The -- with respect to the revoking pro

9    hac vice, you should know a couple things.  One, I've been

10   very unhappy with you for a long time, Mr. Joffe, because of

11   repeated misconduct that I've enumerated in numerous orders.

12   And I have -- the focus, my focus, has been and remains on

13   the admonition in Rule 1 that -- to resolve cases on the

14   merits.  And but you should understand that clients pick

15   lawyers, and clients own their lawyers.  And I'm -- I prefer

16   not to punish clients directly or indirectly for the

17   misconduct of their lawyers, but there is some inevitable

18   consequence of that.

19              So you should think about that.

20              With respect to revoking the pro hac vice, you can

21   ask for that.  I brought it up, because misconduct at a

22   deposition, especially in the context of this case, is the

23   kind of thing that, at least it came to my mind, and I

24   thought I should raise it with you.

25              I will say that in the case that I revoked the pro

1    hac vice of a lawyer, he -- if my recollection is accurate,

2    both stood in front of me and lied to me, expressly, about a

3    very specific fact or transaction, event in the deposition,

4    and destroyed a piece of evidence with respect to that, which

5    had to do with a note that he passed to a witness.

6            MR. JOFFE:  Your Honor, Mr. Bunis just lied to you

7    five minutes ago.  He said that Josh McGuire did not defend a

8    single deposition and Mr. McGuire defended the first witness.

9    The first witness was defended by Mr. McGuire.

10           THE COURT:  So Mr. Joffe, several things.  One, I

11   reminded you last time.  There's a way in which court works.

12   And the way in which court works is that I'm the judge, in

13   case you forgot.  And what that means is when I'm speaking,

14   you don't interrupt me.  When I'm finished, you will have an

15   opportunity to make whatever points you make.  In the course

16   of this four and a half years, I've never prevented you at a

17   hearing from making whatever statements or objections you

18   wish to make and I'm not about to start now.  So -- but I

19   specifically reminded you on Tuesday that don't interrupt.

20   It is not --

21           MR. JOFFE:  I'm sorry.

22           THE COURT:  It is not only improper conduct of a

23   lawyer, it is also rude.  Yes, do you understand that?

24           MR. JOFFE:  Yes.  Yes, Your Honor.

25           THE COURT:  Okay.  So don't do it.  All right?

1           MR. JOFFE:  I'm sorry, Your Honor.

2           THE COURT:  Second, there is -- you need to

3    understand, when you make a statement like that, that

4    Mr. Bunis lied, you need to understand what it means to be a

5    lawyer.  Okay?  That is the kind statement that I ordinarily

6    hear from a pro se litigant.  You should understand that

7    it's -- there are three -- from my -- from what I've heard in

8    the course of this little Zoom about whether Mr. McGuire

9    defended a deposition or not, I heard a statement by

10   Mr. Bunis, I believe what he said was that Mr. McGuire hadn't

11   defended a deposition.  One question, then, would be whether

12   that is factually correct.  It may be possible -- I don't

13   know the answer -- that Mr. McGuire has defended a

14   deposition.  If that's so, that would suggest to me that

15   Mr. Bunis made a mistake.  That is, he said something that

16   was not accurate, but you didn't say that what Mr. Bunis said

17   was inaccurate.  You said what Mr. Bunis did was he, quote,

18   lied.

19           MR. JOFFE:  Correct.

20           THE COURT:  That is a very, very serious accusation

21   to make about any person and most especially another lawyer.

22           So what basis, right now, you tell me, do you have,

23   in your possession to tell you that Mr. Bunis lied as opposed

24   to made a mistake?

25           MR. JOFFE:  That deposition happened about two

1   weeks ago, and Choate Hall, the lawyer of Mr. Bunis were

2   present on that deposition.  I don't recall if Mr. Bunis

3   himself was present, but definitely lawyers from --

4           THE COURT:  So in the last two weeks -- you've

5   taken some depositions, you told me, at 3:00 a.m., yes?

6           MR. JOFFE:  Well, yes.

7           THE COURT:  Yes or no?

8           MR. JOFFE:  Yes, Your Honor.

9           THE COURT:  And some at 5:00 a.m., yes?

10          MR. JOFFE:  Yes, Your Honor.

11          THE COURT:  And it's been a busy time of taking

12  depositions, yes?

13          MR. JOFFE:  Yes, Your Honor.

14          THE COURT:  And you don't know, as you sit here

15  now, whether Mr. Bunis was actually personally present at the

16  deposition that Mr. McGuire defended?

17          MR. JOFFE:  I don't recall.  That's easy to find

18  out.

19          THE COURT:  No, no.  I'm asking you what you knew

20  when you said he lied.

21          MR. JOFFE:  Okay.

22          THE COURT:  Did you know then -- did you have

23  personal knowledge then that Mr. Bunis was present?

24          MR. JOFFE:  No, Your Honor.  I have a firm,

25  personal memory that lawyers from Choate Hall were present.

```
 1              THE COURT:  Yes, but you didn't know if Mr. Bunis
 2    was present?
 3              MR. JOFFE:  Yes, but he's the head of the team, so
 4    he would know who deposed Mr. De Silva --
 5              THE COURT:  And you have no idea, whether, in the
 6    course of all the things that happened, other than the fact
 7    that Choate Hall defended it and he's head of the team at
 8    Choate Hall, and that, therefore, there was a reasonable
 9    inference that he would have been told --
10              MR. JOFFE:  And they received videos.
11              THE COURT:  You have no idea if whether what he did
12    was made a mistake, or whether he lied?
13              MR. JOFFE:  Well, Your Honor, I think he lied.
14    That's what I said.
15              THE COURT:  I understand you think he lied.  I'm
16    not asking you what you thought.  I'm asking you what is the
17    factual basis for your belief that he lied?
18              MR. JOFFE:  I have a number of facts that I just
19    stated to you that Choate Hall was a participant in that
20    deposition, that they participated in the Zoom deposition,
21    that they took transcripts and videos and rough transcripts
22    of that deposition.  That was the first plaintiffs' witness,
23    deposed during the day, Marina da Silva, that was defended by
24    Josh McGuire.  It happened -- I will tell you exactly when --
25              THE COURT:  I don't need to know when it happened,
```

1    Mr. Joffe, because that's not answering my question.  That is

2    telling me -- Mr. Joffe, that is telling me that there is

3    reason to believe that Mr. Bunis would know he was present.

4    That isn't telling me that he would -- that he lied.  There's

5    a difference.  It doesn't mean when he's sitting here right

6    now he remembered every person who was present.  So what

7    you're telling me is other than the fact that Choate Hall

8    certainly knows who was there and he's head of the team, and

9    at one point in time, he probably learned and you're

10   representing to me that Mr. McGuire did defend that

11   deposition, yes?

12            MR. JOFFE:  Yes.

13            THE COURT:  Then you have no other basis to know

14   whether he lied, or he made a mistake when he said that.

15            MR. JOFFE:  Your Honor, the inferences from the

16   facts that I know tells me that he deliberately made a false

17   statement, or that he made that statement with reckless

18   disregard for the truth, or he made that false statement with

19   gross negligence for the truth.

20            THE COURT:  Would you like me to apply that

21   standard to you, Mr. Joffe.

22            MR. JOFFE:  It's not necessarily his direct

23   knowledge.  He --

24            THE COURT:  Would you like me to apply that

25   standard to you, Mr. Joffe?

1          MR. JOFFE:  Yes, Your Honor, if I lied to you or

2    made false statements, yes.  I --

3          THE COURT:  No, no.  Would you like me to apply the

4    standard that if you -- if I had reason to believe you know

5    things and say something different, that I should come to the

6    conclusion you lied to me?

7          MR. JOFFE:  Yes, Your Honor.

8          THE COURT:  You want me to apply that standard to

9    you?

10         MR. JOFFE:  If I was grossly negligent and I made

11   false statements to you and if I was disregarding the truth

12   deliberately or recklessly and making false statements to

13   you, you should accuse me in lying, yes.

14         THE COURT:  And if I find that you were reckless

15   and the recklessness is established by the fact that you had

16   knowledge of the underlying facts and you made a statement

17   different than what the underlying facts were.

18         MR. JOFFE:  Yes, Your Honor.  If I made a false

19   statement to you as Mr. Bunis just did and if I did it with

20   disregard for the truth, or negligent -- grossly negligent

21   disregard for the truth, you should accuse me of lying.  Yes.

22   Okay.  I agree with that.

23         THE COURT:  I appreciate that.  Thank you.

24         MR. JOFFE:  If there is a false statement that I

25   made to the Court, let's start with that.  There isn't and

1    Michael Bunis just did and the question for you, Your Honor,

2    is --

3              THE COURT:  Mr. Joffe, I don't have time to go

4    through all of your statements to the Court right now.  I'm

5    not going to do that.  I think I have memorialized my views

6    on the statement -- not all, but on many of the things you

7    have said to the Court previously.  Okay.  And I'm not -- I

8    appreciate your invitation to go over them, but I'm not going

9    to, but if you'd like to start -- I'm not going to do it, but

10   I would suggest you start with the docket and you start in

11   January of -- I believe it was 2017, when you filed a motion

12   for leave to amend the complaint and my order and then your

13   response to that order, with the complaint you did file.

14   Statements in the order on the motion for leave to file when

15   I allowed the amended complaint, in part, and what I said to

16   you then.  That would be the beginning in this case, if we

17   were reviewing statements by you, but we're not at the

18   moment.

19              So turning back, Mr. Bunis, to what you said --

20              MR. BUNIS:  Judge, before you -- I apologize.  I

21   first want to apologize to Mr. McGuire.  I absolutely did not

22   know that he defended the deposition and I just would point

23   out one other thing.  I don't believe that anyone from Choate

24   Hall and Stewart was present at all during that deposition,

25   at all.  So forgive --

1          I apologize, Mr. McGuire.  What I meant to say was,

2    we've had a lot of deposition and I wasn't aware that he had

3    defended anyway, but certainly no one from Choate Hall was

4    present.

5          Sorry to interrupt, Judge.

6          THE COURT:  That's all right, thank you.  So what

7    you're saying, Mr. Bunis, is that based on what information

8    you've received while this conversation is occurring, there

9    was a deposition, Mr. McGuire did defend the depositions, is

10   your understanding, although you weren't there personally,

11   but there was no lawyer from Choate Hall there at that

12   deposition.

13         MR. BUNIS:  That's what I understand, Your Honor,

14   correct.

15         THE COURT:  That's what you believe.

16         MR. BUNIS:  Absolutely.

17         THE COURT:  So for Mr. Joffe, I would just point

18   out -- okay.  I will just point out, Mr. Joffe, that I'm not

19   about to have a hearing to determine whether or not, in fact,

20   there was a Choate Hall lawyer present at that deposition,

21   but if I determine that, in fact, there was no Choate Hall

22   lawyer at that deposition, if I did what you told me to do,

23   which was to apply your standard to statements, I would find

24   that you just lied to me.

25         MR. JOFFE:  No need, Your Honor.

1          THE COURT:  And when you said that Choate Hall was
2     at the deposition, because you told me Choate Hall was at the
3     deposition.  I'm not going to find that, because that
4     standard is not the standard that applies, because my
5     understanding is that people make mistakes and what I assume
6     that was, when you told me that Choate Hall was there if, in
7     fact, they weren't there, which I don't really care at the
8     moment, I would think you made a mistake, not that you lied
9     to me.  Which is what I thought with respect to Mr. Bunis and
10    I pointed it out to you, because when you make incendiary
11    charges like "lying," they are very serious, and lawyers --
12    and you are a lawyer -- need to take -- need to think about
13    their words before they utter them and that is a charge that
14    you need to take seriously.
15          So turning back to what we were talking about,
16    Mr. Bunis, which is you may -- there is, in some ways,
17    certain differences and even if, on Mr. Joffe's standard, he
18    lied to me about whether or not Choate Hall was at the
19    deposition of that person that Mr. McGuire defended, lied on
20    his version of what constitutes lying, which is not my
21    version of what constitutes lying.  I think at best he made a
22    mistake there, but I understand apparently Mr. Joffe is, at
23    least today, arguing for a different standard.
24          There's some potentially material differences
25    between Mr. Ryan, who was that lawyer that I revoked, and

1    this case.  I'm not saying that it's off the table.  I'm not

2    saying anything is off the table, but if you want that or

3    anything else, you need to ask for it in a motion.  -- and

4    I'm not -- I'm open to the supervision and I'm confident that

5    what I saw on the video would not occur for very long in

6    front of Judge Swartwood and threats of criminal --

7              I would also tell you, Mr. Joffe, do you practice

8    criminal law?

9              MR. JOFFE:  I practice white collar defense, Your

10   Honor.

11             THE COURT:  I think you should brush up on your

12   Fifth Amendment law, would be my suggestion.  I don't think

13   your explication of the Fifth Amendment to Mr. O'Grady was an

14   accurate statement of the law.

15             MR. JOFFE:  Well, Your Honor, if I may.  If I may.

16             THE COURT:  No, not at the moment, because I don't

17   think it's material.  I'm just pointing that out.  That is

18   not -- what the Fifth Amendment is is not material -- how the

19   Fifth Amendment would apply to Mr. O'Grady is not a material

20   issue for today, or for the resolution of any response, but I

21   simply point out to you that I don't believe that your

22   assertion that if he testified at this civil deposition, he

23   would have waived his Fifth Amendment right with respect to

24   future criminal proceeding is accurate, but in any event.

25             So if you want something else, Mr. Bunis, you need

1    to ask for it in a motion.

2             With respect to the supervision of the deposition,

3    if you -- either of you object either, (a), to supervision,

4    (b), having Judge Swartwood opposed as to anybody else being

5    the supervisor, or (c), having the plaintiffs pay for it,

6    then you should -- you don't have to tell me right now.  You

7    get a chance to think about it.  But you need to tell me, and

8    I was thinking rather quickly, but, you know, I was thinking

9    about some time next week, but we could talk about that.  And

10   if your view is -- my sense is that plaintiffs want that, but

11   they don't -- but they might not want to pay for it.

12            MR. JOFFE:  I didn't say that, Your Honor.

13            THE COURT:  You said -- you're not agreeing to pay

14   for it right now?

15            MR. JOFFE:  I didn't say they don't.  They don't

16   know about it.

17            THE COURT:  Yes.  They might not want to pay for it

18   and they might.  They haven't agreed.

19            MR. JOFFE:  I think they wouldn't want to pay for

20   it.  My strong assumption is they would.

21            THE COURT:  You can tell me, Mr. Bunis, if you want

22   that, even under those terms, or you want something else in

23   addition, or separate.  And I'm open --

24            MR. JOFFE:  One thought -- sorry, Michael.  Go

25   ahead.

1          MR. BUNIS:  One thought I had, judge, and again,

2     this is happening in realtime, but I'm -- one consideration

3     is the relationship between all of these various different

4     things and, in particular, you know, if we are inclined to

5     move for revocation of the pro hac, that -- and Your Honor

6     grants that, that will necessarily -- or may, I should say,

7     impact who takes the depositions that are remaining.  And if

8     the person who takes the depositions is a different person,

9     then the need for supervision might not be necessary.

10          THE COURT:  Sure.

11          MR. BUNIS:  I think it's possible that we could

12    make the decision about the motion for revocation of pro hac

13    quickly, and I think it's also possible that we could

14    assemble the materials to get in front of you to do that,

15    quickly.

16          THE COURT:  Let me ask you this question.  Do you

17    want the depositions delayed until the resolution of whatever

18    motion you make and whatever Mr. Joffe finds out about paying

19    for it?

20          MR. BUNIS:  Yeah.  I mean, again, it's the client's

21    call, but my inclination -- I don't want to -- the clients

22    are on the line now, Judge, and they'll probably fire me if I

23    don't make some call that they need to weigh in on, but my

24    inclination is yes, but I obviously need to confirm with

25    them.

1          MR. JOFFE:  If Your Honor allows me to give a call

2     to my clients, I can confirm that in five minutes, with

3     respect to payment, because I'm sure they will agree to

4     supervision.

5          THE COURT:  You don't want to know how much Judge

6     Swartwood charges?

7          MR. JOFFE:  I just want to tell them that we're

8     going to pay for -- I want to know his rate, that's what I

9     ask for, and I just want to tell them --

10         THE COURT:  I did not ask his rate.

11         MR. JOFFE:  Right, but that's important for us, so

12    I want to know the rate.  I want to tell my clients, but in

13    theory, I can assure you that, unless it's an exorbitant and

14    unaffordable fees, we will agree to that.  As a pro forma, I

15    want to check the rate and tell my client this.

16         THE COURT:  Well, what is exorbitant to one person

17    is cheap to somebody else and I don't mean that facetiously,

18    but you know, it just depends.  I have no idea.

19         MR. JOFFE:  That's okay.  We'll figure it out and I

20    will tell them, but that won't take me long.  I mean, we

21    100 percent support supervision of my depositions.  I mean,

22    we don't need to supervise defendants taking depositions.  We

23    have no complaints about that.  They don't need to be

24    supervised and I don't think they need their depositions to

25    be supervised, but my remaining defendants, witnesses.

1          THE COURT:  If there were supervision, Mr. Bunis,

2   would you want -- do you feel it's only necessary for the

3   ones that plaintiff takes, or all of them?

4          MR. JOFFE:  Well, then they should pay for their

5   own depositions.  Why should we pay for their depositions,

6   supervision, if we don't --

7          THE COURT:  Well, first of all, you just said they

8   don't need to be supervised, so they --

9          MR. JOFFE:  Well, they don't need --

10          THE COURT:  I'm just asking him what his opinion

11   is, Mr. Joffe.

12          MR. BUNIS:  My view, Judge, is that the whole need

13   for supervision is the result of the conduct of the

14   plaintiffs' lawyer.

15          THE COURT:  I understand that, but suppose

16   Mr. Joffe were in the case and there were supervision of what

17   the depositions that plaintiff takes, would you also want the

18   depositions that you take supervised, or do you feel that's

19   unnecessary?

20          MR. BUNIS:  I think if he's going to participate in

21   the depositions, they should be supervised, because it's his

22   conduct that we're concerned about.

23          THE COURT:  Okay.  So you feel that there were

24   problems even in the ones you took?

25          MR. BUNIS:  I did not take those depositions.

1   Counsel --

2         THE COURT:  I mean, you, the defendants.

3         MR. BUNIS:  Yeah, I would defer to Mr. Saso and I

4   think he would tell you yes, but he's on the line.

5         MR. SASO:  Your Honor, yes, I think that if we were

6   considering supervised depositions, I think that we have had

7   problems.  Again, I -- just like Mr. Bunis, don't want to

8   point fingers, but there have --

9         THE COURT:  You would want them all supervised.

10         MR. SASO:  But there would be a marked difference

11   that we've experienced between those that have been defended

12   by Mr. Joffe and by other counsel, so I think that it would

13   depend upon the plaintiffs' counsel who would be defending

14   those depositions as to whether or not supervision would be

15   necessary.

16         MR. JOFFE:  And Your Honor, I don't mind

17   supervision of whatever I defend.  I didn't defend many

18   depositions.  Josh McGuire and Mr. Lester Reardon, if you

19   remember the first local counsel.

20         THE COURT:  I remember Mr. Reardon.

21         MR. JOFFE:  They were mostly defending.  I think I

22   defended two, yeah, and that's it.  So I don't mind having

23   all supervisions -- all depositions supervised.  I just think

24   that, in all fairness, when I take deposition and have

25   supervisor, we should pay for it, but when defendants take

1   deposition, maybe for that time, maybe they can afford to

2   pay.

3          THE COURT:  So we're clear, the reason I'm thinking

4   about ordering supervision, Mr. Joffe, is because of you.

5          MR. JOFFE:  Right.

6          THE COURT:  So if I ordered supervision, whatever

7   supervision I ordered, I would order that it seems to me that

8   I would be inclined to think the plaintiffs should pay for

9   it, or you should pay for it, because it was because of you.

10   The default is the depositions proceed without supervision

11   that lawyers are able to manage the depositions themselves.

12   Having watched the video and -- standing alone and in context

13   with this case, it came to my mind that supervision is

14   required.  If supervision is required, then I would --

15   whatever level of supervision, whether it's just the ones

16   you're involved in or all of them, then I would -- my

17   tentative view is the plaintiffs or you would have to pay for

18   it.

19          And the question of fairness that you raise is --

20   if you all came to me at the beginning of the case and said,

21   Judge, we just think it would be a good idea to have somebody

22   supervise, I'd be like, well, that's fine.  You can have

23   someone supervise it and you guys can split the cost and

24   figure it out yourselves.  That would be much the way you

25   would figure out who's going to take the court reporting.

1   But this is court ordered, if it is, and we turn out to do

2   that, so that's why I would be inclined.  But you can address

3   it.

4            So it seems that you need a little bit of time,

5   each, to talk to your clients.

6            MR. BUNIS:  Your Honor, I just heard from the

7   client through the magic of -- I've just heard from the

8   client, they've given me -- if Your Honor will order it, we

9   will move for the revocation of the pro hac of Mr. Joffe, and

10  we would agree to putting off the continued depositions until

11  that's resolved.

12           THE COURT:  Okay.  So that's what you want to do?

13           MR. BUNIS:  That's right.

14           THE COURT:  All right.  And realistically when --

15           And from you, Mr. Joffe, you need, it sounds like,

16  a day to figure out Mr. -- Judge Swartwood's rate and talk to

17  your clients?

18           MR. JOFFE:  Yes, Your Honor, but it's really more

19  like a pro forma.  I cannot commit without talking to them

20  about it.

21           THE COURT:  Right.  I understand.

22           MR. JOFFE:  But I'm sure, I can give you my strong

23  assurances that they will agree to that.

24           So because it involves an expense, I make sure that

25  I will check with them first.

 1          THE COURT:  Right.  The prudent thing to do would

 2   be to --

 3          MR. JOFFE:  I will advise them to strongly agree to

 4   that.  And I have all reasons to believe that they will

 5   follow my advice.

 6          THE COURT:  So my suggestion, then, is this:  By

 7   close of business tomorrow, Mr. Joffe, you file something

 8   that simply says you either -- the plaintiffs agree to

 9   supervision, agree to supervision by Judge Swartwood and

10   agree to pay for it, or they don't.  And if they don't, you

11   just tell me they don't, and then my thought would be you

12   could have a week -- but you tell me if that's reasonable --

13   to tell me, if you don't agree, you know, which party you

14   don't agree and why.  And if you do agree, I don't need

15   anymore from you.  Okay?

16          MR. JOFFE:  Yeah.

17          THE COURT:  And if for some reason you're having

18   trouble getting in touch with your clients and you need

19   another day --

20          MR. JOFFE:  No, that's -- no.  I will get in touch

21   with them right away.

22          THE COURT:  Okay.

23          And then, Mr. Bunis, you want to file a motion

24   seeking revocation of pro hac vice.  Realistically, about how

25   long to do that?

```
 1              MR. BUNIS:  I think we could do it in a week,
 2    Judge.
 3              THE COURT:  Okay.  So you'll file a motion for pro
 4    hac vice, whatever -- whatever you want, whether it's pro hac
 5    vice or anything else by next Friday.  And then, Mr. Joffe,
 6    probably -- I would ordinarily want to resolve that in
 7    less -- would hope you could respond in less than two weeks,
 8    but I think I'm inclined to give you the two weeks, because
 9    Thanksgiving would be the week -- you get it next Thursday or
10    Friday, and the following week is Thanksgiving.
11              MR. JOFFE:  Okay.
12              THE COURT:  I don't really want to make -- it just
13    seems a little unfair to make it due on Friday, the day after
14    Thanksgiving.
15              If they -- are you going to get it in next Thursday
16    or next Friday, Mr. Bunis?
17              MR. BUNIS:  I think we -- I think we -- we'd like
18    the Friday, Judge.
19              THE COURT:  Right.  Okay.  So just thinking about
20    this, Mr. Joffe, would you be able -- would you want the two
21    weeks, or do you think you could respond by a week and a
22    half, the Wednesday after Thanksgiving.
23              MR. JOFFE:  I can respond after -- a week after
24    they file.
25              THE COURT:  One week?
```

```
 1              MR. JOFFE:  Yes.
 2              THE COURT:  That will be the Friday, the day after
 3   Thanksgiving.
 4              MR. JOFFE:  Well -- well, that's okay.  I want this
 5   to move forward and we're now breaking for like two, three
 6   weeks, and there's four depositions.
 7              THE COURT:  All right.
 8              So you file that motion by next Friday, Mr. Bunis.
 9              The following Friday, the day after Thanksgiving,
10   Mr. Joffe, you will respond -- you file your opposition.
11              If you wish to file a reply, Mr. Bunis, you can,
12   without filing a motion, by Tuesday or Wednesday, Mr. Bunis?
13              MR. BUNIS:  Wednesday, Judge.
14              THE COURT:  Wednesday.  Okay.  All right.  I think
15   that -- and in your motion, in addition to addressing
16   whatever you want in your motion, you should address either
17   whether you want -- what your view is -- sort of your -- to
18   the extent you have a -- I understand if your position would
19   be -- if Mr. Joffe is gone from the case, your view is you
20   don't think supervision is necessary.  But if there's
21   anything else you wish to say about the supervision issue,
22   you could say it in there and that would give Mr. Joffe the
23   chance to respond to it when he responds.
24              MR. JOFFE:  Your Honor, and maybe I just comment on
25   this last.  I think the plaintiffs' position would be that
```

1  whether I am in the case or not in the case, they would like

2  to have supervision.

3          THE COURT:  Okay.  You can clarify that in the

4  filing tomorrow.  You'll tell me about that.  So it's just

5  all I need to know -- it sounds like, from what you say, what

6  you anticipate saying is that the plaintiffs agree to

7  supervision and they agree to pay for it, and they agree to

8  Judge Swartwood, there isn't -- it isn't like somebody knows

9  Judge Swartwood or anything like that.

10          MR. JOFFE:  Regardless of who takes them from

11  plaintiffs' side.

12          THE COURT:  Regardless of who takes them.

13          MR. JOFFE:  Yes.

14          THE COURT:  Okay.  Fine.

15          And then you can respond to that, Mr. Bunis, in the

16  filing next Friday, to the extent you wish.

17          I think in the meantime the -- other than

18  Mr. Patterson, I think you should wait on depositions.  And

19  if -- as to Mr. Patterson, I guess the question is do you

20  want to wait on it, or that's the one you're in the middle

21  of.

22          MR. JOFFE:  If you're asking me, Your Honor, I

23  would love to wait.

24          THE COURT:  I'm asking both of you.

25          MR. JOFFE:  Oh, okay.  I would love to suspend it

1    until we have, well, either supervision or --

2           THE COURT:  Until we resolve these issues.

3           MR. JOFFE:  Yes, I don't want to continue with him,

4    if we could have a chance to do that supervised.

5           THE COURT:  Do you agree with that, Mr. Bunis?

6           MR. BUNIS:  Yes.  Yes, Your Honor, we agree.

7           THE COURT:  Okay.  Okay.  Fine.  So the depositions

8    are on hold, pending the resolution of this issue.  You get

9    the filing tomorrow and next Friday.

10          MR. JOFFE:  Yes.

11          THE COURT:  Now, there was one other -- oh, I

12   have --

13          Is there anything else you wish to bring up,

14   Mr. Joffe?

15          MR. JOFFE:  Yes, Your Honor.  I think we have the

16   hearing yesterday, or maybe I'm just -- the day before, and

17   we established a lot -- lots of deadlines for this continuing

18   deposition process and beyond.  So do we push those deadlines

19   until after the resolution?  Because they don't make sense to

20   follow if we're suspending.

21          THE COURT:  I think what I'd like -- if I remember

22   right, the deadlines we set was one deadline of filing by

23   next Friday of the depositions that remain to be done.

24          MR. JOFFE:  You know, frankly, I don't remember.

25          THE COURT:  Maria, do you have a list right there?

1          MR. JOFFE:  I have it somewhere.

2          THE COURT:  I think Maria has it.

3          MR. JOFFE:  I think we have several deadlines.

4          THE DEPUTY CLERK:  Hold on.  I'm just looking at my

5     notes.  I just haven't done the notes yet.

6          MR. JOFFE:  We have status report by Tuesday.  I

7     have my actual letter submission, I think, within two weeks.

8          THE COURT:  Your letter submission about what?

9          THE DEPUTY CLERK:  By next Tuesday, Mr. Joffe, is

10    to submit, as to the service of --

11         THE COURT:  Oh, so you need to respond about

12    Mr. Pekar by Tuesday, because we still need to resolve that.

13         MR. JOFFE:  Yeah, I will --

14         THE COURT:  So that remains, the deadline of

15    Mr. Pekar.

16              What's the next one, Maria?

17         THE DEPUTY CLERK:  And they were supposed to work

18    out the schedule by next Friday as to all the depos and

19    whether or not they were authorized.

20         THE COURT:  So all you need to do for that is just,

21    by next Friday, give me the list -- just file a list of who's

22    left to do and that will be helpful to know.  You sort of

23    reported it today, but who's left and like are they one day,

24    two days, whatever they are.

25              And what else?

```
 1              THE DEPUTY CLERK:  And then they have to file a
 2    joint status report as to what's agreed on regarding each of
 3    the five by January 11th.
 4              MR. JOFFE:  There is also December 23rd date, I
 5    see.
 6              THE DEPUTY CLERK:  December 23rd, notify them, each
 7    of them, as to whom they plan to examine and --
 8              THE COURT:  So for now, those deadlines stand, the
 9    December 23rd and January deadlines, because those relate to
10    the examinations of the five.
11              MR. JOFFE:  Okay.
12              THE COURT:  And if they need to be adjusted after
13    the depositions, we can adjust them at a later time.
14              MR. JOFFE:  Okay.  Your Honor, so just to be clear,
15    how we proceed with this -- we don't do anything about
16    supervision.  So you don't except me, then, to go back to you
17    with my response until --
18              THE COURT:  I expect you tomorrow to tell me -- it
19    could be a one-page filing -- that, like, your clients do or
20    do not agree --
21              MR. JOFFE:  Okay.  I understand.  Confirmation from
22    clients.  Okay.  Tomorrow.
23              THE COURT:  Right.
24              MR. JOFFE:  Yup.
25              THE COURT:  I think that the question you raised,
```

1    Mr. Joffe, about directions not to answer questions in the

2    Barclay deposition, we should resolve, first, these issues.

3    Or do you want to raise those issues?  You could raise them

4    now.  You could file a motion by next Friday.

5             MR. JOFFE:  Well, I would rather do it by motion,

6    Your Honor.

7             THE COURT:  Yes, that's what I mean, by motion.

8             MR. JOFFE:  I need to quote portions of

9    transcripts, so of course I want to file a motion.  It's

10   just --

11            THE COURT:  Yes, that's what I'm saying.  So how

12   about by next Friday?

13            MR. JOFFE:  -- for next Friday?  Yes.  That will

14   do.

15            THE COURT:  And your motion is essentially what

16   you're saying is that there were directions not to answer

17   questions that you think the witness should have answered.

18            MR. JOFFE:  Absolutely, Your Honor.  And next

19   Friday will be, then, the 20th?  So Friday, the 20th.

20            THE COURT:  Yes.

21            THE DEPUTY CLERK:  I'm sorry, Judge, what is he

22   filing by the 20th?

23            MR. JOFFE:  I'm filing a motion to overturn

24   Mr. Bunis's instructions to the witness not to answer my

25   questions.

```
1                 THE DEPUTY CLERK:  Thank you.
2                 MR. JOFFE:  And if that motion succeeds, then as a
3       remedy, I will ask additional deposition time of those
4       witnesses who have been so improperly instructed.
5                 THE COURT:  All right.  I think two weeks for that,
6       Mr. Bunis?
7                 MR. BUNIS:  I do, too.
8                 THE COURT:  Okay.  Anything else from you,
9       Mr. Joffe?
10                MR. JOFFE:  No, Your Honor.  No.  I think
11      everything is understood.  Next Tuesday I'm telling you about
12      Pekar.  And Your Honor, I contacted -- well, I attempted to
13      contact him after our hearing on Tuesday.  I told him your
14      instructions.  I need to tell him whether I accept subpoena
15      on his behalf or not.  I have not heard back from him.  My
16      communication with him was one way, when he calls me.  So I
17      will -- I hope he will, you know, reach out and let me know
18      by Tuesday, pretty much.
19                THE COURT:  Okay.
20                MR. JOFFE:  So -- but other than that, I understand
21      we're suspending Patterson for today and we're pushing all
22      the other depositions.
23                THE COURT:  Right.
24                MR. JOFFE:  My client is on transit to Macao.  They
25      booked the tickets, booked the hotel, and they're there for
```

1    depositions.  They will be there on Friday, tomorrow.  And

2    they will stay there for a few days, until their medical --

3    they have like five days before they should leave.  So

4    perhaps for them, Your Honor, and just because of expense,

5    perhaps their depositions could be taken while they're there,

6    because it's just -- the tickets are nonrefundable, the hotel

7    booking is nonrefundable.  They are actually on the way there

8    already.

9              THE COURT:  I want to think about that after I see

10   your filing tomorrow, but I remind you that they brought the

11   case.

12             MR. JOFFE:  I know and they're there for

13   depositions.  I'm just saying that they could be deposed.

14   I'm not going to defend them.  Okay?  Mr. Reardon will defend

15   them, so the other side should have no objections to taking

16   their depositions.  They're there.  They spent money, you

17   know, they --

18             THE COURT:  So Mr. Bunis, after you see the filing

19   from Mr. Joffe tomorrow, if it is Mr. Reardon, you can let me

20   know and just either you want those to go forward on a time

21   agreed upon between you, Mr. Reardon, while they're in Macao,

22   or you wish them to be suspended for resolution of all these

23   issues.

24             MR. BUNIS:  Thank you.

25             MR. JOFFE:  And Your Honor, we proposed the dates

```
 1    for November 13th and we proposed --

 2              THE COURT:  Well, it's not going to be November

 3    13th, because I haven't got the notice yet from you about the

 4    supervision, but you can both let me know that tomorrow,

 5    probably.  And then I can respond to it pretty quickly and

 6    then you can figure that out while they're still in Macao, if

 7    they go forward.

 8              All right.  Is there anything else from you,

 9    Mr. Bunis?

10              MR. BUNIS:  No, sir.

11              THE COURT:  I have one other question for you,

12    Mr. Joffe.

13              MR. JOFFE:  Yes, Your Honor?

14              THE COURT:  I told me -- you told me the calvary,

15    whoever that is, is coming.

16              MR. JOFFE:  Yes, Your Honor.

17              THE COURT:  Are they coming, and if so --

18              MR. JOFFE:  Yes, Your Honor.  They're coming down

19    the hills as we speak.

20              THE COURT:  I see, and who is it who's coming?  If

21    you can say, or when are they -- I guess my question is, this

22    calvary, will they be filing notices of appearance in the

23    case?

24              MR. JOFFE:  Absolutely, Your Honor.

25              THE COURT:  And when do you anticipate that will
```

1    occur?

2          MR. JOFFE:  Any day now.

3          THE COURT:  Because I think you filed something in

4    August --

5          MR. JOFFE:  Yes, I brought it up at the end of

6    August.  It took a long process to accomplish and when you

7    see the calvary, you'll understand why, but they're almost

8    there.  I'm just holding the fort.

9          THE COURT:  I see.  Okay.  All right.  Well, thank

10   you all very much.  I'll wait for the filings.  You have a

11   good day.

12         MR. JOFFE:  And I would be happy to reveal the

13   names, I'm just not at liberty yet.

14         THE COURT:  Are they going to be appearing before

15   the end of the year?

16         MR. JOFFE:  They will be appearing, I understand, a

17   week or two maximum.

18         THE COURT:  Okay.  Thank you very much.  Have a

19   good day.

20         THE DEPUTY CLERK:  This matter is adjourned.

21         (Court in recess at 4:56 p.m.)

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4          I, Rachel M. Lopez, Certified Realtime Reporter, in

5   and for the United States District Court for the District of

6   Massachusetts, do hereby certify that pursuant to Section

7   753, Title 28, United States Code, the foregoing pages

8   are a true and correct transcript of the stenographically

9   reported proceedings held in the above-entitled matter and

10  that the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12

13                  Dated this 17th day of November, 2020.

14

15

16

17              /s/ RACHEL M. LOPEZ

18

19

20          _____
            Rachel M. Lopez, CRR
21          Official Court Reporter

22

23

24

25