# **EXHIBIT D**

<pre>
 1                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2

 3     - - - - - - - - - - - - - - - - - - x

 4     INTEGRATED COMMUNICATIONS &            :
       TECHNOLOGIES, INC., et al.,
 5                                            :   Civil Action No.
              Plaintiffs,                         1:16-cv-10386-LTS
 6                                            :

           v.
 7                                            :

       HEWLETT-PACKARD FINANCIAL SERVICES
 8     COMPANY, et al.,                       :

 9            Defendants.                     :

10     - - - - - - - - - - - - - - - - - - x

11


12        BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

13

                          VIDEO STATUS CONFERENCE
14

15

                      Tuesday, November 10, 2020
16                             3:03 p.m.

17


18

              John J. Moakley United States Courthouse
19                       One Courthouse Way
                        Boston, Massachusetts
20

21


22                       Rachel M. Lopez, CRR
                         Official Court Reporter
23               One Courthouse Way, Suite 5209
                 Boston, Massachusetts  02210
24                      raeufp@gmail.com

25
</pre>

1                    **A P P E A R A N C E S**

2

   On behalf of the Plaintiffs:

3

       LAW OFFICE OF DIMITRY JOFFE
4      BY:  DIMITRY JOFFE
       230 Park Avenue
5      10th Floor
       New York, New York  10169
6      (212) 309-8711
       dimitry@joffe.law

7

8      LAW OFFICE OF JOSH MCGUIRE
       BY:  JOSHUA A. MCGUIRE
9      51 Winchester Street
       Suite 205
10     Newton, Massachusetts  02461
       (617) 461-6400
11     josh@joshmcguirelaw.com

12

13   On behalf of the Defendants:

14     GIBBONS, P.C.
       BY:  ANTHONY P. CALLAGHAN AND PAUL A. SASO
15     One Pennsylvania Plaza
       37th Floor
16     New York, New York  10119
       (212) 613-2015
17     acallaghan@gibbonslaw.com

18

       CHOATE HALL & STEWART LLP
19     BY:  MICHAEL H. BUNIS AND G. MARK EDGARTON
       Two International Place
20     100-150 International Place
       Boston, Massachusetts  02110
21     (617) 248-4030
       mbunis@choate.com
22     medgarton@choate.com

23

24

25

1              **P R O C E E D I N G S**

2              (In open court.)

3              THE DEPUTY CLERK:  The United States District Court

4    for the District of Massachusetts is now in session, the

5    Honorable Leo T. Sorokin presiding.

6              Today is November 10th, the case of Integrated

7    Communication Technologies, vs. Hewlett-Packard Financial

8    Services, Civil Action 16-10386, will now appear before this

9    Court.

10             Counsel please identify themselves for the record.

11             MR. JOFFE:  Dimitry Joffe of Joffe Law PC for

12   plaintiff.

13             MR. MCGUIRE:  Joshua McGuire -- good afternoon,

14   Joshua McGuire, also on behalf of the plaintiffs.

15             THE COURT:  Good afternoon, Mr. McGuire.

16             MR. SASO:  Paul Saso from Gibbons PC on behalf of

17   the defendants.

18             MR. CALLAGHAN:  Anthony Callaghan from Gibbons PC,

19   on behalf of defendants.

20             THE COURT:  I can't hear you, Mr. Bunis.  I don't

21   have you listed as muted, but I didn't hear what you said.

22             MR. BUNIS:  How is that, Judge?

23             THE COURT:  Better.

24             MR. BUNIS:  Okay.  Michael Bunis, Choate, Hall, and

25   Stewart on behalf of the defendants, Your Honor.

1          MR. EDGARTON:  Good afternoon.  Mark Edgarton,

2     Choate, Hall, and Stewart on behalf of the defendants.

3          THE COURT:  Good afternoon.

4          MR. BUNIS:  Judge, if I may, before we begin, I

5     just would like to start with just a quick update of

6     something that I think is rather important and I apologize.

7     It won't take very long at all, but I think it's important

8     that I point this out to the Court.

9          THE COURT REPORTER:  I'm sorry.  Is this Mr. Bunis?

10          MR. BUNIS:  I apologize.  Yes, Michael Bunis, again

11     Choate, Hall, and Stewart on behalf of the defendants, Your

12     Honor, and Madam Court Reporter.  So Your Honor, today,

13     during the deposition of an HP witness, James O'Grady,

14     something happened that I just need to bring to the attention

15     of the Court.  And specifically, Mr. Joffe engaged in some

16     conduct that was, frankly, really beyond the pale, Judge.  It

17     was entirely inappropriate and it included behavior that was

18     threatening the witness --

19          THE COURT:  Why don't you tell me what the conduct

20     was.

21          MR. BUNIS:  The conduct -- I didn't hear you.

22          THE COURT:  Just tell me what it was.

23          MR. BUNIS:  Okay.  He specifically threatened the

24     witness with criminal prosecution, personally.  And in

25     addition to that, or in doing so, acted in a manner just

1    incredibly vocal and intimidating and aggressive,

2    notwithstanding my repeated efforts to try to ask him to

3    simply calm down and to take a breath.  And frankly, Your

4    Honor, not only can you take my word for it, but on the

5    record, the witness, in response to Mr. Joffe's questions

6    about intimidation, stated, on the record, that he, in fact,

7    was intimidated, frankly, I think were his exact words, about

8    what Mr. Joffe had said to him and about the way he was

9    acting, and that he was concerned.

10          And Your Honor, I don't want to intend to argue the

11    merits of this, I don't want to be a sideshow to what the

12    Court has on schedule for today, but in 27 years of doing

13    this, I have never had to stop a deposition, and as a result

14    of what Mr. Joffe did today, I ended the deposition, and I'm

15    sure we'll have an opportunity to discuss this further.

16    Frankly, I'm not sure what we're going to do, but we have two

17    other depositions coming up, one on Thursday, and I thought

18    it was important to at least make the Court aware of it.

19          THE COURT:  All right.  So my suggestion is this:

20    I assume, but I don't know whether -- I assume, Mr. Joffe,

21    without getting into the merits of it, I assume -- am I

22    correct that you have a different view of what transpired?

23          MR. JOFFE:  You're correct, Your Honor.

24          THE COURT:  All right.

25          Was this, Mr. Bunis, deposition merely transcribed,

1    or was it also videotaped?

2              MR. JOFFE:  Videotaped, Your Honor.

3              MR. BUNIS:  Your Honor, it was videotaped and we

4    actually have, right now, a rough of the videotape itself.

5    The transcript hasn't come through yet, but we're able to

6    get, right now, a copy of that videotape.

7              THE COURT:  So why don't the two of you do this:

8    Why don't you -- however -- and I confess, I don't know the

9    answer to this, but why don't you provide for me -- I take it

10   the interchange which led you to end the deposition was -- I

11   don't know if that was one minute or 30 seconds or two

12   minutes or five minutes, so give me, you know, a couple

13   minutes before whatever it is that you thought was untoward

14   occurred and give me up through -- I assume that after you

15   ended the deposition, that ended the videotaping and -- or --

16   give me that portion, with the -- if there is a transcript of

17   it, fine.  If there isn't a transcript, I can listen to it,

18   is fine.

19              And Mr. Joffe, if you think there's something else

20   earlier that is important for me to review in it, you know,

21   whether -- then tell Mr. Bunis, without anything else,

22   simply, like, he's giving me something, I'm guessing in the

23   neighborhood of two to ten minutes.

24              Would that be fair, Mr. Bunis, roughly?

25              MR. BUNIS:  Your Honor, I was just going to mention

1    for the Court, the entire deposition lasted about 40 minutes,

2    tops.

3            THE COURT:  So why don't you give me the whole

4    thing.

5            MR. BUNIS:  That whole thing.  Very good.

6            THE COURT:  All right.  That makes Mr. Joffe --

7    he's giving me the thumbs-up.

8            MR. JOFFE:  I'm giving Mr. Bunis the thumbs-up,

9    Your Honor.

10            THE COURT:  All right.  Fine.  So give me the

11    whole -- figure out how to provide me the whole thing.  And

12    you can talk to Ms. Simeone about it and then I can watch it,

13    and then we'll see.

14            And in the meantime, what I -- what you can do --

15    I'll watch it and that's the evidence, the first piece of

16    evidence about what transpired.  And then you -- none of

17    that, submitting that, you are free to seek whatever you want

18    to seek.

19            And Mr. Joffe, you're free to oppose to whatever

20    they seek, or you can seek whatever you want to seek.  And

21    the fact that you're free to seek things doesn't mean you

22    have to.  I'm not telling you to do it or not do it, but I

23    will review it.

24            MR. JOFFE:  Thank you.

25            THE COURT:  But I will say one thing with respect

1    to that, not with -- not as to the truthfulness or accuracy

2    of what you describe, Mr. Bunis, because I don't -- I don't

3    know.  I have two lawyers before me with differing views of

4    what transpired.  But I will say that, as a general

5    proposition, if it hasn't been obvious to all of you in the

6    four years -- however long it's been.

7                MR. JOFFE:  Five, Your Honor.

8                THE COURT:  Five.  Five years -- time flies when

9    you're having fun -- that we've been together, that I

10   believe, in the legal process, and I believe in the craft of

11   lawyering.  So I'm not -- I don't -- on the one hand, I will

12   tell you I don't like sanctioning lawyers.  On the other

13   hand, I will tell you that I revoked the pro hac vice of a

14   lawyer from out of state once, because of his conduct in a

15   deposition.  He didn't like what I did and he went to the

16   First Circuit.  You can read the First Circuit's opinion

17   about it, as to what they thought.

18               So that's neither here nor there as to what you did

19   or didn't do, Mr. Joffe.

20               Or what you did or didn't do, Mr. Bunis.

21               And one -- just to circle back, with respect to

22   this deposition, I know that there's a November 20th deadline

23   for concluding fact discovery, so I will just say, as to this

24   deposition, since it's obviously not being concluded today,

25   and I assume you both think this issue needs to be resolved

1    before it could possibly resume.

2             Would that be fair?

3             MR. JOFFE:  Yes, Your Honor.  And if I may just add

4    something to that, because it's not the only issue.  This is

5    not the only the deposition that the defendants canceled,

6    Your Honor.  They unilaterally canceled two 30(b)(6)

7    depositions scheduled for last week and last night they

8    canceled two 30(b)(6) depositions scheduled for this week.

9    They also undesignated Mr. O'Grady as a 30(b)(6) deponent,

10   without providing any substitution.  So we don't have any

11   dates and we have a series of  depositions, unilateral, by

12   the defendants, and that is in addition to terminating

13   today's deposition.  So this is a -- issue --

14             THE COURT:  One thing at a time.

15             MR. JOFFE:  And plus -- yeah.

16             THE COURT:  With respect to this deposition of

17   Mr. O'Grady, unless I'm wrong, I'm assuming that you, Mr.

18   Joffe, wish to think that it isn't done.

19             And I think, you, Mr. Bunis, think his conduct

20   justifies terminating it and it should go forth no longer or

21   something of that nature.  And so I will -- I presume that

22   I'll need to resolve whatever that dispute is and I -- it's

23   possible that dispute will resolve before November 20th, but

24   it's quite possible that it won't be, or even if it is, and

25   even if the resolution of that leads to further deposition of

1    Mr. O'Grady, that you won't get it done by the 20th.  And I

2    will -- that deadline -- if my resolution of that issue leads

3    to further deposition of Mr. O'Grady -- and I'm not saying it

4    does, but if it does, it will occur notwithstanding the

5    November 20th.  It isn't going to be like the deposition, now

6    we're past the deadline, so it can't be.

7         So as to the issues that you raise, Mr. Joffe, with

8    respect to 30(b)(6) depositions, so I will say this:  The

9    fact that they've -- that they are making unilateral

10   decisions as to who is or isn't designated, I find

11   uninteresting.

12        MR. JOFFE:  No, no, no.  Not that.

13        THE COURT:  They're making unilateral depositions

14   to cancel things.

15        MR. JOFFE:  That's what the thing.

16        THE COURT:  Right.  So I don't know what to make of

17   that, without more.  We'll circle back to that.

18        MR. JOFFE:  Yeah.

19        THE COURT:  It could be an issue, it could be not,

20   but I'll certainly hear you about it, in one form or another.

21   But I think, first, I want to address the things that have

22   been raised in writing and then we can circle back to that

23   and other issues that you all wish to raise.

24        So let me sort of summarize what issues that I knew

25   about before the hearing started, and what I think about them

1    and --

2              So the first is, there's one issue about which you

3    both have submitted papers.  And so let me tell you some

4    tentative thoughts about it and then I'm happy to hear you,

5    first, just on that issue, without bleeding into other

6    issues, and then we can circle back.  And that is this

7    question about the discovery by the defendants of what I'll

8    call the -- using their language, the actual, final letter

9    sent to the Beijing police.

10             So as I understand it, so we're all talking about

11   the same thing, there was a draft letter from March of

12   2013 -- there was a letter in draft form from March of 2013,

13   that I've seen referenced in the pleadings.  The plaintiffs

14   allege it in their complaint and they allege that that letter

15   was provided to them, at some point, by the -- some of the

16   defendants.  That's one version of the letter.  Then there's

17   a discussion, at least in the amended complaint, of some

18   edits to that letter.  Then there's an allegation in the

19   amended complaint that a version of the letter, a revised

20   version of the letter was shown or discussed with the

21   defendant -- the plaintiffs or at least some version that

22   was -- the March version, with whatever edits have been

23   discussed, and that the plaintiffs allege in the complaint,

24   that that version, what they call the April 22nd version, was

25   sent to the Beijing police.

1          Then there's a Chinese -- a letter in Chinese

2     that -- for which the plaintiffs have submitted a

3     translation.  And that letter, according to the translation,

4     is dated April 22nd, and that's what the plaintiffs have been

5     referring to throughout the case as the letter actually sent

6     to the Beijing police.

7          Now, more recently, in the last couple weeks, or

8     whatever it is, the defendants say they have discovered a

9     letter, also, from April 22nd, that's a slightly modified

10    version of what the plaintiffs had been referring to as the

11    final version.  And that, in fact, the one that they've

12    recently discovered as they've explained in the status

13    report, is the actual letter sent to the Beijing police in

14    the final version.

15         So am I correct, first of all, that those are the

16    various versions of the letter that have been described in

17    the pleadings?  And by saying yes, Mr. Joffe, you're not

18    agreeing that the letter that they most recently produced is

19    a true letter, or is a letter sent to the Beijing police; you

20    are admitting that that's what they've said.  Okay?  And

21    you're admitting that this is the universe of versions of

22    this various letter that we've been talking about, because I

23    just want to make sure that we're all talking about the same

24    thing.

25         MR. JOFFE:  Right.  No, Your Honor, there's one

1    more.

2              THE COURT:  Okay.

3              MR. JOFFE:  In your chronology of letters, all is

4    correct, but one more version is missing.  There was an

5    intermediate version in English, sent by Gill on or around

6    April 1st, and that version incorporated comments that were

7    provided to the March draft by --

8              THE COURT:  So that's what's alleged.  So in your

9    view, there's the March letter.  Your client provided

10   comments, which you described in the complaint.  You don't

11   have any -- then there's an April 1st letter, sent to your

12   clients from Gill, you say.

13             MR. JOFFE:  We do.

14             THE COURT:  And you don't have that?

15             MR. JOFFE:  We have it in the discovery we

16   produced.

17             THE COURT:  Oh, if you have it in discovery.  Okay.

18   So it exists, I just haven't seen it.

19             MR. JOFFE:  No, no, no there's a March draft in

20   English that you referred to and you described in detail.

21   And then there was -- in April, there was that draft in

22   English, with some additional comments that was sent by Gill

23   to my clients.  And then on April 22nd -- and we attach it as

24   Exhibit A to our papers.  On Exhibit A, on April 22nd, David

25   Gill is now sending a final version, in Mandarin, executed,

1       initialled, dated April 20th.

2               THE COURT:  So that's what your client said they

3       got in April 22nd was the Mandarin version.

4               MR. JOFFE:  That's the letter we got in April 22nd.

5               THE COURT:  Right.  And the translation from 2016

6       that you produced is a translation of that letter?

7               MR. JOFFE:  Yes, correct, Your Honor.  We produced

8       that letter with a certified translation, docket number 22-4,

9       provided on April 2016.

10              THE COURT:  Okay.

11              MR. JOFFE:  And that is exactly the letter that

12      defendants produced as their document.

13              THE COURT:  Yeah, yeah, yeah, no, I understand.

14      It's not my question.  Okay.  I understand.

15              So I don't know if it's for you, Mr. Callaghan,

16      you, Mr. Saso, or you, Mr. Bunis, but whichever one of you,

17      just in terms of the universe of letters, is that what we're

18      talking about?

19              MR. SASO:  I guess this falls on me today, Your

20      Honor, and yes, I think that is the universe of letters that

21      we're talking about.

22              THE COURT:  Okay.  So then what I -- I don't want

23      to get ahead of myself, but I don't -- let me explain to you,

24      you want to submit to me, Mr. Saso, on behalf of the

25      defendants, what you -- the recently discovered April 22nd

1    letter and something else.  And you would like me to

2    determine whether it's the real letter or not.  And I

3    understand, Mr. Joffe, what you want me to do is get a

4    forensic expert to examine those two documents and perhaps a

5    few more, and give a forensic interpretation of what's the

6    true or real, or what have you.  And I guess -- I don't see

7    why I should do either of those things.  Okay.  And let me

8    explain.

9            The -- I rendered summary judgment decision and my

10   summary judgment decision depended, in a meaningful way, on

11   part of the English translation of the April -- I'm going to

12   call plaintiffs' final -- plaintiffs' view of what the final

13   letter is, which is the April -- the Mandarin letter, the

14   English version that they translated in 2016 of a Mandarin

15   letter.  Okay?  That's what plaintiffs have been viewing as

16   the final letter sent to the Beijing police.  My summary

17   judgment turned, in part, on a piece, some of what was said

18   in there.  Okay?

19           Let's suppose that the -- let's suppose I had a

20   hearing and a forensic examination, what have you, and I

21   determined that, in fact, assuming that it would be proper

22   for me to do all of this, but let's say I determined, in

23   fact, that the letter that you've recently discovered is, in

24   fact, the letter that was sent to the Beijing police, and was

25   the final letter.  All right.  I don't think that that

1    changes the summary judgment decision and let me tell you

2    why.

3             I don't think it changes it for two reasons.  The

4    significance, to me, of the -- of the April 22nd plaintiffs'

5    final version letter was a statement in there.  If -- if that

6    letter wasn't actually sent to the Beijing police, it becomes

7    a draft of a form, and -- but for purposes of which I was

8    looking at it, which was an evidentiary purpose, I think it

9    would be -- it would have some of the same significance,

10   especially when, although the letter -- the version of the

11   letter you submit is different and doesn't have, if I recall

12   correctly, the particular phrase upon which I relied, but it

13   does have, in the last paragraph, a very similar point.

14            And I think, based on those -- if I accept for the

15   moment that, on your best case, Mr. Saso, that the

16   plaintiffs' version is a draft and what you've recently found

17   is the final version, I think it doesn't, for an evidentiary

18   purpose, and drawing all inferences on your motion for

19   summary judgment is in favor of Mr. Joffe's client, as I

20   must, I don't think it changes summary judgment.  I think --

21   so I don't see why I need to look at it.  I don't see why I

22   need to do the determination you suggest or the determination

23   Mr. Joffe suggests.

24            What seems to me is then we go forward to trial.

25   And putting aside whatever else happens in the case.  And at

1    trial, you all can argue about the agency issue that I found.

2    And that will either transform itself into an issue for my

3    consideration on motion for a judgment at the end of the

4    plaintiffs' case and/or a jury issue and all the other ways

5    that might percolate.  But in terms of what I would be doing

6    at trial, it may -- I think that those pieces of evidence are

7    enough for, essentially, a 104 -- I think it's a 104(b)

8    determination of preliminary admissibility, which is, I

9    think, essentially what I'd have to make at summary judgment,

10   that I think it's admissible.  Whether, when it's all said

11   and done, this letter -- I don't see this letter changing the

12   104(b) analysis, but if it did, that would be an argument and

13   a consideration in a motion in limine.  Not now.

14           So given all that, I don't see why I need to look

15   at what you propose I look at or make -- I don't have any

16   doubt that if I read the documents they'll say what you say

17   they say when I read them.  I don't really think Mr. Joffe

18   doubts they say what they say.  In other words, I think he

19   thinks if he reads them, the words on the piece of paper will

20   read what they say they read.  He might not give it the same

21   meaning or truthfulness, or what have you, but I don't know

22   what I would do, and I don't see why I need to do the

23   forensic evaluation you suggest, because I don't know for

24   what purpose I would be doing that.

25           MR. JOFFE:  One purpose is the defendants falsified

1    the method of their document and gave you full statements

2    about it.  That's the reason.

3            THE COURT:  So I guess I would say that as to this,

4    Mr. Joffe.  Reading the document won't prove to me -- reading

5    what Mr. Saso suggests I should read, I think there's no way

6    it's going to prove what you say.  I'm not saying that it's

7    not true what you're saying, but reading those two documents

8    won't prove it, because they say what -- I'm sure they say

9    what Mr. Saso says they say.  And so --

10           MR. JOFFE:  If I may direct your attention to one

11   phrase that I can show you now is false, Your Honor.  May I?

12           THE COURT:  You can, but I have just -- just to

13   remind you, I have just said that, (a), I'm not doing what

14   Mr. Saso proposes, and (b), I'm not revisiting the summary

15   judgment, because even if he's right, it doesn't change the

16   summary judgment.  If you want me to further inquire into

17   this and keep the issue open, you're welcome to do that, but

18   I remind you that, at the moment, my tentative view is that

19   their summary judgement motion, which I previously denied,

20   I'm not reopening, because I don't see how this reopens it.

21   If you wish to probe further --

22           MR. JOFFE:  I'm not asking you to reopen summary

23   judgment decision, obviously.  I'm asking you to look, that

24   defendant -- Your Honor, there were new developments, since

25   we filed --

1          THE COURT:  Let me say one more thing, Mr. Joffe,

2     and then I'll give you your chance.

3          MR. JOFFE:  Okay.

4          THE COURT:  So it seems to me there's one other

5     issue that the document raises, which hasn't been squarely

6     addressed, which is you've come forth, candidly, Mr. Saso,

7     with a document and you say, look, we discovered this

8     document at the end -- well after the end of discovery.  You

9     provided an explanation of it.  I assume it's a document you

10    wish to use in the case.  And so what I would say, Mr. Joffe,

11    is what I have -- if what you -- so if you want something,

12    then -- because of that, you should tell me what it is.  What

13    I hear you saying you want me to do --

14         MR. JOFFE:  I would like to, Your Honor, if I may.

15         THE COURT:  All right.  So tell me what you want,

16    because --

17         MR. JOFFE:  If I may.  If I may.

18         Since the status report, we have Gill deposition,

19    Your Honor, so when they say that Gill will testify this and

20    Gill will testify that, we had Gill testify.  And that's not

21    what he said, Your Honor, not at all.  We have his rough

22    transcript.  It just happened last week.  I can show you

23    rough transcript, but what Gill said -- and let me just show

24    you what I mean by falsifying metadata.  In the footnote two

25    of their declaration, the defendants say, "The claim that

1    defendants recently falsified the final April 13th letter,

2    even without basis and fact, and flatly contradicted by the

3    metadata already produced."

4              That's one statement.

5              The metadata that they produced, Your Honor, is

6    found on -- in my exhibit.  It's Exhibit K to my declaration,

7    document number 392-12.  This is an e-mail exchange and one

8    of the -- if you have that, Your Honor, in front of you, this

9    is a grave matter and I want to point it out.  It goes beyond

10   just the inadvertency of the nonproduction of the letter.

11   The -- if you --

12             THE COURT:  Which document is this, Mr. Joffe?

13             MR. JOFFE:  It is document number 392-12 and it is

14   Exhibit K to our status report.

15             THE COURT:  Okay.  Go ahead.

16             MR. JOFFE:  If you look at page 405, using the

17   headers up top, you will see in the middle and that's what

18   I'll -- discovery they then provided, and I believe

19   defendants' assistant confirmed, that the metadata that they

20   provided had two dates, April 22nd and 23rd, and David Gill

21   as a custodian of those documents.  That's one.

22             Then they say that Mr. Gill will testify that this

23   is the actual version of the letter that was revised as

24   submitted to the police.  And in the last sentence of their

25   declaration -- not making up the last -- yeah, I think it is.

In the last sentence, they say that the creation date of both the PDF and one version of the final letter, plainly indicate that the documents were created in April of 2013, and no reasonable person would conclude otherwise.

So we have Gill testify about these revisions last week, Your Honor, and he said that it wasn't me.  It wasn't Gill who made the last revision.  And after further prompting, he said that it was done by a person from China, Meng Tao, who was an employee of HP China, who made that revision in Mandarin version, Your Honor, and they made that revision in late April, early May.  The metadata provided by defendants and the whole story about this is false.  David Gill testified to that.

THE COURT:  How do we know --

MR. JOFFE:  One more important point.  We have Barclay testify on Friday.  He said that his metadata, the custodian data for his files is false.  I have him say that the lawyers who provided the metadata of his documents to us made false statements.  They falsified his metadata and they now falsified the metadata of this document, Your Honor.  This is a very serious matter.  I will show you, after we've done with depositions, that they lied in sworn statements.  They lied.  The witnesses lied.  They suborned perjury, they obstruct justice, they destroyed material evidence in pending criminal investigation, and they're running this coverup

```
 1    until now --
 2              THE COURT:  What's the pending criminal
 3    investigation?
 4              MR. JOFFE:  There was a pending criminal
 5    investigation in China and defendants deliberately destroyed
 6    all the remaining transceivers from the same Commonwealth
 7    batch that was arrested in China.  They paid TT Global
 8    $200,000, specific instructions to destroy those
 9    transceivers, after, after they asked TT Global to send
10    samples, photos, information, all of those receivers to H3C.
11    After H3C tested those transceivers and we don't know what
12    the results are, because we're not shown, but defendants were
13    told that the transceivers are questionable in nature and
14    origination and they decided to destroy and pay TT Global
15    $200,000 to destroy them.
16              THE COURT:  And now, Mr. Joffe, is this case -- are
17    you bringing this case on behalf of the Beijing police for
18    obstruction of justice against HP for impeding a criminal
19    investigation?
20              MR. JOFFE:  No.  My witnesses against HP, who's
21    been running a fraudulent coverup in this court and I will
22    show you now, in depositions and documents that we have.
23    They destroyed -- there were about probably 5,000 of those
24    transceivers in the packs.
25              THE COURT:  I'll tell you what we're going to do.
```

```
 1    With respect to the document, I've given you both my
 2    tentative thoughts about what I've been thinking about.  If
 3    HP --
 4              Defendants, if you want me to do something --
 5    either you want me to do something different than you
 6    proposed, or if you think I should do what you suggested,
 7    notwithstanding what I've said, you can file something and
 8    tell me to do that and why and I'll read it and think about
 9    it.  And otherwise, I'm -- nobody has filed a motion, so
10    otherwise, with respect to your request, I'll just leave it
11    as it is and the record will be what it is.  I'm not going to
12    do it unless you propose to me -- you come back to me with
13    something else as to why I should.
14              As to you, Mr. Joffe, given what you are
15    suggesting, I think what you need to do, because you're
16    making extremely serious allegations.
17              MR. JOFFE:  Yes, Your Honor, and I don't do it
18    lightly, Your Honor.
19              THE COURT:  I understand that.
20              MR. JOFFE:  I haven't done anything like that in
21    six years.
22              THE COURT:  And so --
23              MR. JOFFE:  Yes.
24              THE COURT:  Well, I think in the six years, just to
25    be clear, just so the record is accurate, I think, but I
```

1    can't recall exactly now, because it has been five years, but

2    I do think in the last five years, at the beginning of this

3    case, you made some pretty serious allegations against some

4    people who I dismissed in the case, because I thought you

5    were treading on Rule 11, in terms of making allegations that

6    I though violated the rule.

7           And if I recall, just so we're clear, correctly, I

8    denied your first amended complaint, because I thought you

9    violated local rules and I thought some of the allegations

10   violated Rule 11 and I gave you another chance to file an

11   amended complaint, and you filed the exact same document,

12   typos, blanks, and included the same people who I said

13   violate -- who I thought -- I gave you a warning that I

14   thought they --

15          MR. JOFFE:  Your Honor, I took them out.

16          THE COURT:  I'm not finished, Mr. Joffe.  The way

17   this works is you can speak.  I'll give you a full and fair

18   opportunity, but not until I'm done.  So we're clear, when

19   you say "never before," it's not -- I'm going to decide this

20   one, not based on that one.  I'm going to decide this one

21   based on the evidence in this case, but I can't let that

22   pass, when I don't think that's an accurate reflection of the

23   record in this case.  I did not sanction you at that time,

24   because I thought, in fairness, given the seriousness of the

25   allegations and the other circumstances, I wasn't prepared to

1    do that, but I don't say that it was right what you did.  And

2    certainly it wasn't the highest -- the best that lawyers can

3    produce.

4         So in any event, what -- out of this, if you want

5    me to do something, what you should do is file a motion.  And

6    you should explain to me the basis for your belief, just as

7    you did now, but citing the documents and what it is -- what

8    relief that you want, because I'm unlikely, unless you can

9    assume that nothing more is coming out of this document, in

10   terms of summary judgment or anything else, unless they come

11   back at me, in which case you'll have a chance to respond to

12   that.  All right.

13        MR. JOFFE:  Understood, Your Honor.  Yes.

14        THE COURT:  Fair enough.  And then I'll look at

15   that, and defendants, you'll get a chance to respond to

16   whatever he files and that will be -- and you can ask for

17   whatever you want to ask for out of this.

18        MR. JOFFE:  Yes, Your Honor.

19        THE COURT:  The new letter.

20        MR. JOFFE:  Thank you, Your Honor.  We intend to do

21   that.  And if we can do it after we finish all the

22   depositions and I have time to put it all together, because I

23   have a long list of grievances, but this one is very serious

24   and grave and I don't do it lightly again.

25        THE COURT:  Fine.

1          MR. JOFFE:  Thank you, Your Honor.

2          THE COURT:  How about -- would two weeks from today

3  be enough time?

4          MR. JOFFE:  Yes, yes, Your Honor.  It will be

5  enough time.  I'll get transcripts and I'll get everything

6  ready and, yes.  Two weeks is fine.

7          THE COURT:  And Mr. Saso, is there anything else

8  about the new document that you want to address today?

9          MR. SASO:  We don't disagree at all with your

10  conclusion.  The only thing that I think that I would add in

11  terms of just clarifying for Your Honor is that we have

12  produced what we view as the final April 2013 letter to the

13  plaintiffs and we have also produced the metadata for that

14  PDF version of that document.  That is already in the hands

15  of the plaintiffs.  The issue, in terms of what documents we

16  were proposing for an in-camera review were privileged --

17          THE COURT:  Privilege log documents.

18          MR. SASO:  But those two types of documents are

19  already in the hands of the plaintiffs.  The letter,

20  itself --

21          THE COURT:  Yes.  To the extent that I suggested

22  otherwise, I understood that.  It's what you really wanted me

23  to review is not so much those two, but 470 to 80, or

24  thereabouts, the six or seven privilege documents around that

25  time, which you say would then confirm and -- but the reason

1    that I just don't see the need is I don't see how, even if I,

2    quote, confirmed it, how -- I see as it playing out, it

3    doesn't change summary judgment, why do I need to do it.

4         MR. SASO:  And we understand that, I think, Your

5    Honor.  I think that what we wanted to do is come forward and

6    say, look, we think there are legitimate questions about why

7    this document was not produced earlier.  We have provided

8    that explanation.  And plaintiffs are making what we view as

9    fairly wild accusations about either the defendants or myself

10   manufacturing evidence.  And to the extent that Your Honor

11   felt like you needed to confirm that information, that was

12   sort of a road we were going down.  I feel --

13        THE COURT:  Sure.  I feel like the proper way to go

14   here would be Mr. Joffe has the -- you know, you guys

15   discovered a letter that hadn't been produced that you feel

16   like should have been produced in discovery earlier.  You

17   turned it over.  Mr. Joffe thinks that that gives rise to

18   evidence of various forms of misconduct.  He can ask for

19   relief that he seeks as a result of late disclosure, new

20   documents.  He could ask for sanctions, whatever he wants to

21   ask for, he'll ask for.

22        You'll get a full chance to respond, and then

23   I'll -- this is his -- then he'll figure out what he wants

24   and he'll propose it, or what he's asking for, and then I'll

25   rule on it.

```
1              MR. SASO:  Thank you, Your Honor.

2              THE COURT:  And then we'll see.

3              All right.  The second issue is, with respect to

4    service of Mr. Pekar -- if I'm saying his name correctly.

5    Pekar.  Is there any further developments on that?

6              MR. SASO:  No, Your Honor.

7              MR. JOFFE:  Your Honor --

8              THE COURT:  Do you represent him, Mr. Joffe?

9              MR. JOFFE:  Sorry.  Pardon me?

10             THE COURT:  Do you represent him?

11             MR. JOFFE:  I can represent and --

12             THE COURT:  I'm not asking if you can.  I'm asking

13   if you do.

14             MR. JOFFE:  If I do.

15             THE COURT:  Do you represent him with respect to

16   the deposition --

17             MR. JOFFE:  I'm not, with respect to depositions, I

18   will.  I'm not his attorney.  He didn't retain me.  I told

19   him, as I told every one of the former employees, we'll

20   represent them and defend them on depositions.  I'm not his

21   attorney.  He didn't authorize me to accept service of the

22   subpoena.

23             THE COURT:  Are you authorized to speak for him

24   here, with respect to the depositions?

25             MR. JOFFE:  Well, no.  I'm not speaking for him
```

1    here.  No, I'm not speaking for him here.  Why am I -- I
2    haven't talked to him.  I have no contact with him.
3              THE COURT:  I'm just asking the question,
4    Mr. Joffe.
5              MR. JOFFE:  No, I'm not representing Mr. Pekar as
6    a -- well, as a client in this proceeding.  I have suggested
7    to plaintiffs that I will defend -- we will defend all the
8    former employees and they served subpoenas on all the former
9    and we have to do --
10             THE COURT:  So the record is clear, Mr. Joffe, you
11   do not represent Mr. Pekar, as we sit here today, yes or no?
12             MR. JOFFE:  Your Honor, I'm --
13             THE COURT:  In other words, I know you're not his
14   lawyer for all --
15             MR. JOFFE:  I don't know how to answer this.
16             THE COURT:  This is why I'm asking the question,
17   Mr. Joffe.  It's really very simple.  I'm not asking you
18   whether you represent him as his general counsel.
19             MR. JOFFE:  Okay.
20             THE COURT:  Or whether you represent him in other
21   matters, and I understand he's not a party in this case.
22             MR. JOFFE:  Right.
23             THE COURT:  The defendants want to depose him.
24   Either they get to arrange that directly with him, unless
25   he's represented by counsel.  There is nothing that indicates

1    to me, in the record before me, that he's represented by any

2    human being on the face of the earth, except -- for the

3    purpose of this deposition, except, possibly, you.

4           Either you accept that they still need to serve

5    him, or you don't represent him, in which case they don't

6    have to go through you.  It doesn't change that you might not

7    represent him and you could end up representing him at the

8    deposition.  I want to know if right now, today, you

9    represent him or not.

10          MR. JOFFE:  Well, I will have to say I represent

11   him, but Your Honor, I gave you the -- what transpired.  I

12   told plaintiffs that I will defend all the third party,

13   former employees --

14          THE COURT:  Okay.  So you represent him so --

15          MR. JOFFE:  -- they will serve him and they haven't

16   served him.  And I didn't really discuss anything with him

17   about that.  I told him I will and that was it.

18          THE COURT:  So here's the thing, you represent him

19   for purposes of this deposition and as we sit here today,

20   correct?

21          MR. JOFFE:  Yes, okay.  Yes, Your Honor.

22          THE COURT:  It's not "okay."  I'm asking you.

23          MR. JOFFE:  No, correct.  I suppose.

24          THE COURT:  Okay.  Well, it's not really I suppose,

25   either you do or you don't.

```
 1                MR. JOFFE:  Well, I do, Your Honor.

 2                THE COURT:  Okay.  Fine.  So then the question is,

 3    Mr. Joffe -- and so far, in your view, service has not been

 4    perfected.  Yes or no?

 5                MR. JOFFE:  Yes, Your Honor, it wasn't.  It was

 6    mailed.

 7                THE COURT:  He's not been properly served.

 8                MR. JOFFE:  And it wasn't valid service.

 9                THE COURT:  All right.  And are you going to accept

10    service for him, or waive service?

11                MR. JOFFE:  No, I haven't spoken with him.  I need

12    to talk to him about that, because --

13                THE COURT:  At the moment, you're not agreeing to

14    waive service and you're not agreeing to --

15                MR. JOFFE:  I will not -- no, I'm not agreeing

16    without consulting with Mr. Pekar to waive service on his

17    behalf, I'm not.  I can't.

18                THE COURT:  All right.  And you haven't, so far,

19    been authorized.

20                MR. JOFFE:  I haven't been authorized, but --

21                THE COURT:  So this is what we're going to do.

22    You're going to talk to Mr. Pekar and you're going to find

23    out whether he wishes to waive service or not.

24                MR. JOFFE:  Okay.  Yes, Your Honor.

25                THE COURT:  The deadline for his deposition is
```

1    extended past November 20th.  All right.  Whether or not he's

2    served.  It's clear to me on the record that the defendants

3    have made more than diligent efforts to attempt to serve

4    Mr. Pekar, and Mr. Pekar doesn't wish to be served.  That's

5    his right, if he doesn't wish to be served.

6         MR. JOFFE:  No, that's not true.  Your Honor, he's

7    been traveling and he's never in the place where they try to

8    serve.  I understand they've been told that he's traveling.

9    They served his mother -- I don't know where they found his

10   mother -- and they put the nail, the thing on the gated

11   community door where he doesn't live currently, he's

12   traveling.  So he doesn't try to avoid the service.  I

13   proposed dates.  I proposed dates to plaintiff when he's

14   going to appear for deposition.  He had the --

15        THE COURT:  What days did you propose and where's

16   the letter?

17        MR. JOFFE:  I have the letter.  I have everything.

18        THE COURT:  What dates?

19        MR. JOFFE:  I proposed for Mr. Pekar to start

20   deposition on Monday, November 9th, for three and a half

21   hours -- or three hours that he had that day and then I said

22   he will be available on subsequent days like this, for three

23   hours.  Let's schedule them, except for the rest of --

24        THE COURT:  So Mr. Joffe, can I ask you a question?

25        MR. JOFFE:  Yes.

1          THE COURT:  If that's true, why did you waste my

2     time and all of the time of all of these people here after

3     you got the status report?  Why didn't you file one page that

4     said, Judge, you don't need to bother with this, because I've

5     already told them that they don't need to serve him, he'll

6     sit for depositions on the 9th, instead of these other dates?

7          MR. JOFFE:  Your Honor -- Your Honor, they filed

8     the paper on Friday evening, after I was just doing,

9     finishing deposition.  That was two days ago.  I had no

10    time -- they filed five or three motions.  I just had no time

11    to respond to all of these motions.  I'm taking and defending

12    depositions every day.  I have all week of depositions last

13    night -- last week.  On Friday, when I was finishing --

14          THE COURT:  What's Mr. McGuire doing?

15          MR. JOFFE:  -- Mr. Saso was filing those motions.

16    I just have no time for it and --

17          THE COURT:  But you're telling me that you're not

18    waiving service, but you --

19          MR. JOFFE:  I'm not waiving service.

20          THE COURT:  And he would have appeared for

21    deposition without service on Monday, November 9th?

22          MR. JOFFE:  Yeah.  That was my proposal.

23          THE COURT:  Even though he hadn't been served and

24    even though you're not waiving service?

25          MR. JOFFE:  It may be in my papers that I filed --

1          THE COURT:  Mr. Joffe, I'm just trying to

2    understand.  On the one hand, you won't waive service, which

3    is fine.  I don't have a problem with that.  But on the other

4    hand, you say you already agreed to have him deposed on

5    November 9th, even though he hadn't been served.  That makes

6    no sense.

7          MR. JOFFE:  I haven't agreed.  I told them -- I

8    told the defendants and I have it in writing, I will find it.

9    It was several times, I told them that I've heard from

10   Mr. Pekar.  He called me like for five minutes --

11         THE COURT:  This is what we're going to do,

12   Mr. Joffe.  I'm not going to waste more time on this.

13         MR. JOFFE:  That's it.  That's it.

14         THE COURT:  This is what we're going to do.  You

15   can talk to your client, Mr. Pekar.  I stand by what I said,

16   that he doesn't want to be served.  I base that conclusion on

17   the fact that it's obvious that the defendants have provided

18   notice, in various ways, to him, and he hasn't reached out to

19   suggest that he would agree to some deposition date.  He

20   doesn't have to.  If it turns out that -- I'm not

21   adjudicating now whether the efforts that the defendants made

22   are sufficient service or not, but I draw the conclusion from

23   that that he doesn't want to be served.  People have to want

24   to be served.  I disagree with Mr. Joffe's characterization

25   of the record, that it's merely he's been traveling.  I don't

1   have any evidence, at all, that he's been traveling.  I just

2   have your representation of that, Mr. Joffe.

3           MR. JOFFE:  Which I have from --

4           THE COURT:  Don't interrupt me.

5           MR. JOFFE:  Sorry.

6           THE COURT:  But I do have the facts in evidence put

7   before me by the defendants.  But all I want to do,

8   Mr. Joffe, it's very -- it's not a complicated thing.  I just

9   want to solve this problem.  Either Mr. Pekar is willing to

10  appear for a deposition and you and the defendants can work

11  out the date, or he doesn't want to appear for deposition,

12  unless he's legally required to do so.  That is also his

13  right.  In which case, as his lawyer, you're going to tell me

14  that he doesn't agree to waive service and then I will

15  adjudicate whether there's been service or not.

16          And I'm simply telling all of you that the deadline

17  of November 20th is not going to apply to Mr. Pekar's

18  deposition, because based on the record before me, I think

19  it's fair to see if you can work it out, and if you can't

20  work it out, I'll adjudicate whether service has been done.

21  If it has, he'll have to show up, and if there has to be a

22  Rule 45 subpoena, or if it has to be enforced in the District

23  of Connecticut, so be it.  And if he hasn't been properly

24  served, then I'm going to give the defendants more time to

25  serve him.

```
 1                    And I assume his residence is more than
 2     100 miles -- he's not within this court.
 3                    MR. JOFFE:  I think he -- the residence, I think,
 4     within, but whether he's there now, I don't know.
 5                    THE COURT:  I understand.
 6                    MR. JOFFE:  I spoke with him twice and --
 7                    THE COURT:  The rule is he has to be within the
 8     jurisdiction, or within 100 miles of the state border, or the
 9     courthouse.
10                    MR. JOFFE:  Probably from the courthouse -- well, I
11     think defendants know where he lives, because they serve.  I
12     don't even know where he lives.
13                    THE COURT:  Mr. Saso?
14                    MR. SASO:  I am looking right now.  I thought he
15     lived in Massachusetts, but I can --
16                    MR. JOFFE:  Maybe, yes.
17                    THE COURT:  Oh, he lives in Massachusetts?
18                    MR. JOFFE:  Probably, yes.
19                    MR. SASO:  I believe he does.
20                    THE COURT:  Then there's no Rule 45 subpoena issue.
21     Then you serve him.  And if you haven't -- if you don't
22     succeed, then -- if you have only what you have, if he
23     agrees, fine.  If he doesn't agree, then I will adjudicate
24     whether the service you've done is sufficient and then I
25     will -- if it is -- if I determine it's sufficient, then I'll
```

1    do what is my standard practice in such a circumstance.  I'll

2    issue an order and I'll explain why I think it's sufficient.

3    I'll order him to appear at a specific date and time.  And if

4    he fails to appear, then I'll proceed with contempt

5    proceedings.  And so in one way or another, we won't be bound

6    by the -- you won't be bound by the November 20th date on

7    that one.

8              MR. SASO:  Thank you.

9              THE COURT:  And anything else on that?

10             And Mr. Joffe, what you have to do is file a report

11   back to me by close of business on Tuesday and simply telling

12   me that he either waives service -- he can waive service, he

13   can concede to service that they've done as being sufficient,

14   in which case -- and that you and Saso have worked out a date

15   and place for his deposition, or he contests service, in

16   which case that's fine.  That's also fine and then I'll

17   adjudicate what's before me.  They've given me what they've

18   said, and if you tell me that, then I'll just wait the

19   14 days, the end of next week, and then the next Friday,

20   which will be the 14 days.  You can submit your opposition to

21   their motion, explain to me why their service was no good and

22   then I'll adjudicate it.

23             MR. JOFFE:  Okay, Your Honor, thank you.  I just

24   need to get in touch with him for all that, which I'll do --

25   I'll endeavor to do right away.

1          THE COURT:  All right.  That takes care of the

2   service issue and --

3          MR. JOFFE:  Your Honor, may I just one -- one

4   thing, because we're on this topic of the scheduling.  We

5   actually have depositions scheduled to end this Friday.

6   November 13th is our last deposition date.

7          THE COURT:  I think it's November 20th is the

8   deadline on the schedule.

9          MR. JOFFE:  We were -- I think Paul will agree that

10  the parties labored under the impression that the

11  November 13th is the cutoff date.

12          THE COURT:  Oh, you're right.  I stand corrected.

13  It's November 13th.

14          MR. JOFFE:  So November 13th.  So all the dates up

15  until November 13th are correct and we don't have any

16  30(b)(6) --

17          THE COURT:  So let me just correct something that I

18  said, then.

19          MR. JOFFE:  We don't have any 30(b)(6).

20          THE COURT:  With respect to Mr. Pekar and with

21  respect to the person that you raised, Mr. Bunis, I referred

22  to November 20th.  That was a mistake, an error.  It's

23  November 13th, you're -- Mr. Joffe is correct, that's the

24  deadline for depositions.  And so what I mean is that the

25  November 13th date doesn't apply to those two.  We'll resolve

1    the issues and then we'll take care of it, if doesn't get

2    done, so I apologize for any confusion arising from that.

3              MR. JOFFE:  And then there's an issue of 30(b)(6)s.

4              THE COURT:  Yeah.  We're going to get to that,

5    Mr. Joffe, but not yet.

6              MR. JOFFE:  Okay.  Thank you.

7              THE COURT:  So you filed a motion, Mr. Saso,

8    another motion, with respect to a couple things.  One of the

9    issues in it was dismissal, one was timing, and one was an

10   extension.  And so briefly, the -- taking them in a different

11   order, one was there's several deponents who require

12   translators.  And under the prior orders submitted by you and

13   approved by me -- by "you" I mean the parties -- the -- those

14   depositions are presumptively two days, without any special

15   permission.  And you don't have enough days between now and

16   November 13th to make those two days.  Is that essentially

17   the issue for those -- I think, it was three or four

18   deponents?

19             MR. SASO:  It's that issue, combined with -- look,

20   I think we would have worked this out with plaintiffs'

21   counsel.  If they said that they would sit for a second day

22   next week, we would have proposed to Your Honor that we

23   extend that, but we haven't even gotten that far, because the

24   plaintiffs won't agree to sit for that second day.  I think

25   that they're taking a wait-and-see approach and say let's see

1   if you first use your first day and your seven hours and

2   we'll only consider scheduling a second day after the first

3   day has concluded.  And given the schedule, given that we're

4   supposed to be done by this Friday, there is just simply no

5   more time --

6              THE COURT:  So Mr. Joffe, what's your position on

7   the second day?

8              MR. JOFFE:  Our position is it's not what Mr. Saso

9   said.

10             THE COURT:  What is your position?

11             MR. JOFFE:  Well, our position was that if you have

12  translator, you're entitled to extra time, second day, for

13  seven hours.  That's true.  Under the protocol, the witness

14  itself has a choice of sitting longer on day one, beyond

15  seven hours, and continuing that day.  Our position was Jade

16  Cheng is obviously a witness with knowledge on all areas and

17  two days for Jade Cheng, with translator, fine.  But for

18  people like his wife, Caroline, or people who, in Chinese, we

19  agree to sit longer on the first day.  If they need a second

20  day after that, they can schedule it.  We don't oppose that.

21  But our witnesses would like to sit, you know, the first day

22  for nine hours, instead of seven, rather than come back for

23  the second day.

24             So we didn't oppose.  Jade Cheng is testifying

25  today, for the first day and he will appear for the second

1    day.  We have no opposition to that.  The problem is that,

2    Your Honor, our depositions have been canceled all the time.

3    All our witnesses, we haven't canceled a single deposition.

4              THE COURT:  So the way we're doing this, Mr. Joffe,

5    we're not -- there's no trying of issues.  We're going to go

6    through them one by one and resolve everything.

7              MR. JOFFE:  Okay.

8              THE COURT:  So if they canceled -- even if they've

9    outrageously, and in violation of every rule, they have

10   canceled every deposition that you've sought, that is

11   irrelevant, in my view, to the second day.  We're going to

12   resolve the second day for what it is and then -- don't

13   interrupt me.  It's especially difficult, Mr. Joffe, under

14   Zoom, when you do that.  Okay.  Just wait.  I will give you

15   the chance, as I've always give given you the chance, to say

16   everything you wish to say.  When you do that, you obstruct

17   the entire proceeding, and you make the record -- you make it

18   difficult for me to understand what you said, you make it

19   difficult for everybody else, and you make the record

20   difficult to report as to what transpired.  So, please, don't

21   do that.

22             So we will get to all of the depositions you say

23   they canceled and, if they did it improperly, I will remedy

24   it, and so -- but it's one thing at a time.

25             All right.  So this is what you do.  With respect

1    to the second day, I -- with all due respect, Mr. Joffe, I

2    don't think that approach is reasonable.  I think that

3    it's -- it's difficult scheduling, in the present times, it's

4    difficult to schedule interpreters.  The Court, itself, has

5    difficulty scheduling interpreter.  And so I think what you

6    ought to be doing is for all the people, you assume it's two

7    days, you schedule two days.  If you all agree to go past

8    seven hours and do nine hours and if at the end of nine

9    hours, they're done, then you cancel the second day.  That is

10   easier and better than at the end of the nine hours, trying

11   to figure out, among all you people, when is the second day

12   that the witness and the court reporter and the videographer

13   and the interpreter are available, especially when you're on

14   a tight schedule.  So you're going to go forth and schedule

15   the second day for all of the witnesses to the extent you

16   haven't, so it's in place.

17          Have those depositions yet transpired, Mr. Saso?

18          MR. SASO:  We actually are taking a break from one

19   of those depositions right now.  Jade Cheng started this

20   morning, but the others, Caroline Cheng is scheduled for this

21   Thursday.  Jason Yuyi and Cathy Yu have not yet been

22   scheduled their first day --

23          THE COURT:  All right.  So this is what you're

24   going to do --

25          MR. JOFFE:  The 13th.  November 13th date.

1              THE COURT:  You're going to work out the second day

2    with all those people.  With respect to extending the time

3    for depositions, I'm not going to do that now, but what I am

4    going to tell you to do is there's a defined list of people

5    who have been authorized for depositions.  You can submit to

6    me the list of, like, once you work out dates.  If you work

7    out dates, I will reasonably allow them to happen past

8    November 13th, certainly with respect to the two lawyers

9    identified and certainly with respect to these three people,

10   because their position was not reasonable and so -- or

11   practical.

12             And so you give me a list of all the people and you

13   tell me depositions, you know, and it's done, it already

14   occurred, it's over.  Fine.  Or it's scheduled for whatever

15   date you reasonably worked out, and if you reasonably work

16   out dates in a reasonable period of time.  It doesn't have to

17   be next week, but promptly, because the trial date is not

18   changing for this.  And so then you give that to me and then

19   I will approve that.  And if you can't work it out, agree,

20   then we'll have another hearing as soon as we need to have

21   another hearing, and then I will decide when that will occur.

22             But I think you will all be happier if you

23   cooperate with each other reasonably and practically, rather

24   than have me decide when you're going to show up for

25   depositions.  Because I won't -- if I'm deciding, I'm just

1    going to decide based on the schedule and I'm not going to be

2    that interested in other things.  And you'll be able to think

3    about lots more things in your scheduling than me.

4          And so that's why it's wiser, Mr. Joffe, to be

5    practical and schedule the second day yourself, rather than

6    let me schedule the second day.

7          Okay.  So that takes care of the two-day

8    depositions, right.  Mr. Saso?

9          MR. SASO:  Yes, Your Honor.

10          THE COURT:  And it takes care of the -- the

11   extension issue really relates to all of the different

12   depositions, right?

13          MR. SASO:  That's correct.

14          THE COURT:  That's you.  And that will resolve it

15   from your perspective.

16          And then the third issue you wanted was dismissal

17   of two of the plaintiffs with respect to identifying where

18   and when they would submit for their -- essentially their

19   IMEs and changing the timing of their IME?

20          MR. SASO:  That's right.  We -- the larger issue is

21   scheduling their IMEs.  And we are sort of between a rock and

22   a hard place when it comes to the two Chinese residents.

23   Again, Jason Yuyi and Cathy Yu.  At the very beginning of the

24   deposition schedule, we tried to get information about when

25   they might be here, so we could schedule their medical exams,

1    but never received any information about their travel.  And

2    so we then proposed that we reschedule all of the medical

3    exams for these five plaintiffs during the expert phase and

4    the plaintiffs declined.  So with respect to the two Chinese

5    residents, we feel as if we have no options left, that they

6    are refusing to show up by this Friday and they are refusing

7    to reschedule their deposition -- I'm sorry, their medical

8    exams during the expert phase of this case.

9         THE COURT:  So they have not yet told you when

10   they're available, between now and Friday, for their IME?

11        MR. SASO:  They, in fact, should be in the United

12   States right now, given US travel restrictions for -- based

13   on COVID, they would have to be here and quarantining for

14   14 days, and they should be in the United States if they're

15   going to appear for that medical exam by Friday.

16        THE COURT:  Are they in the United States?

17        MR. JOFFE:  They're traveling to Macao, which is a

18   third-party country that they can take --

19        THE COURT:  I've heard of it.

20        MR. JOFFE:  -- for depositions.

21        And Your Honor, we've had this discussion with

22   defendants, I think, for several months now.  They always

23   pushed to have medical exams at the same time as depositions

24   and now the issue is not with two Chinese.  We have three

25   plaintiffs here who was also examined medically and they're

1    present, physically, here, and defendants have nothing.  They

2    don't have experts, they don't have protocol.  They don't

3    have stipulation under Rule 35, I believe, that tells you the

4    manner of exam, who is the expert, and all of that.  They

5    just simply don't have -- they're not ready.

6            They told me that.  Mr. Callaghan told me on the

7    phone and they wrote it in the e-mail.  They want extension,

8    because they don't know what experts to use and what to ask.

9    The logistics of it is not an issue.  Alex Styller is here,

10   Caroline Cheng is here, and Jade Cheng are here.  Jade

11   Cheng --

12           THE COURT:  Are those three people going to take

13   the medical exam for the other two?

14           MR. JOFFE:  For the other two, we discussed it with

15   Mr. Callaghan, as well, and we proposed to do tele-exam,

16   telemedicine exam.  Like we do depositions by Zoom, you can

17   do medical exam by video and I told them they will be

18   available in Macao.  They're specifically getting passports,

19   visas, they're traveling right now to sit for depositions.

20   They're not rich people, Your Honor.  And I offered him --

21   and we discussed this before, that if you do deposition by

22   Zoom, in a country that allows that, why can't you do medical

23   exam by Zoom.  They will be available.  They cannot travel to

24   the United States right now, Your Honor, but that's not their

25   fault.  It's really not that their --

1          THE COURT:  Why can't they travel right now?

2          MR. JOFFE:  Because they don't have visas.  They're

3    hoping while in Macao, in the third-party, in the third

4    country, they will apply for US visa there, through

5    consulate, because it's faster.  In China to get visa now for

6    them, it's very difficult, you -- I don't know all of the

7    details, but I've been in endless communications, that you

8    need to get this, and they tell me this office is closed.

9    They went there, that's closed, and we're trying to find a

10   way to do it.

11          And we found -- we went through many countries to

12   figure out which one allowed deposition, which one allowed

13   visas, and which one are not closed for Zoom.  It was a

14   process, Your Honor.  We went through Pakistan, Vietnam,

15   Macao, everything.  We found Macao close by.  They can get

16   visa in three days, they can have the test, and they will be

17   there.  They will be there this Friday for deposition.  They

18   can do remote medical exam.  We discussed it with Anthony

19   Callaghan, and Mr. Callaghan said it's on the table.  They

20   didn't rule it out.  But I was always telling them that in

21   order to do medical exam you have to do either Rule 35 motion

22   that it says that --

23          THE COURT:  I already authorized the medical exam.

24          MR. JOFFE:  No, but you didn't provide all the

25   details that the rule says, Your Honor.  And I'm opening

1    Rule 35.  I think that's examination of people and things.

2              THE COURT:  You actually want to get to trial,

3    Mr. Joffe?

4              MR. JOFFE:  I think I'll win before trial even,

5    Your Honor, honestly, but, yes, I want to do -- win this case

6    and I'm not moving the date.  The date is set.  You said it

7    many times, so let's not move the date.

8              THE COURT:  I'm not moving the date.  I'm just

9    asking if you actually want to move the ball forward.

10   Sometimes you make me feel like you don't really want to move

11   the case forward.

12             MR. JOFFE:  Your Honor, Your Honor, let me just

13   read the rule.  And the rule says that if you want to do

14   medical examination, then, content of the order, the order

15   must specify the time, place, manner, condition, scope of the

16   examination, personnel and personnels who will perform it.

17   Your order doesn't do anything like that, Your Honor.  Your

18   order is not a proper order for Rule 35 examination and we --

19             THE COURT:  Fine, would you like me to issue an

20   order that has all of the details required by Rule 35?

21             MR. JOFFE:  Yes, I would, I would.  And I ask them,

22   let's do this --

23             THE COURT:  And that should happen before

24   November 13th.

25             MR. JOFFE:  You will issue the order before the --

1          THE COURT:  No, the examination should happen

2     before November 13th.

3          MR. MALLARD:  Okay.  They're ready.

4          THE COURT:  No, no, I'm asking you.  Not "okay."

5     In other words, Mr. Joffe, you think the order is

6     insufficient.  Fine.  If the order -- my original view of the

7     order was they wanted it.  If I recall correctly, you didn't.

8     I said they were entitled to it.  I thought you would all

9     work out the date, time, and place, and the details.

10         MR. JOFFE:  I thought so, too.

11         THE COURT:  But you all have not worked out the

12    date, time, and place and the details.  They've requested for

13    me, I'm perfectly happy to decide where, when, and under what

14    circumstances that it will happen.  But what I will likely

15    say is that it has to happen in person, that's how I --

16    nobody has persuaded me why it should happen by Zoom.  And I

17    would say, well, why shouldn't it happen by November 13th, in

18    person, because that's when the end of fact discovery is,

19    and --

20         MR. JOFFE:  Okay.  But then everybody else who's in

21    the United States should, but they're not -- they cannot do

22    it, Your Honor.  You can order that and they will have no

23    experts.  They have no experts to -- fine.  It's their

24    problem.  Let's have them.

25         THE COURT:  It's not going to be their problem for

1    those two plaintiffs?

2           MR. JOFFE:  All five.  All five plaintiffs are in

3    the same boat.

4           THE COURT:  No, you're telling me, then, that those

5    two plaintiffs, they're not going to be in the United States.

6    And then if I issue that order, then I'm going to have to

7    show -- you're going to have to show cause why I shouldn't

8    dismiss their case.  Then you're going to be in a position of

9    arguing to me for an order that is adverse to the interests

10   of two of your five clients, while beneficial possibly to

11   three of your five clients and you'll need to think about

12   whether you're in a conflict.

13          MR. JOFFE:  Your Honor, how can we have an exam

14   when we don't know who the -- the defendants don't tell us

15   who their experts are, what they want -- what --

16          THE COURT:  Does the rule provide you're entitled

17   to advance notice of the name of the doctor?

18          MR. JOFFE:  Of course.  Under the rule, yes.  Under

19   Rule 35, yes.  The order may be made only on motion for good

20   cause and it must specify the time, place, manner, conditions

21   and scope of designation.  And I don't understand how that

22   order can do so, if they don't know who their experts, what

23   are they going to examine, and they don't.  I have them on

24   the record, with an e-mail saying that, that they don't have

25   experts to examine, and this whole issue of dismissing

1    Chinese because of that is a little bit incongruous, because

2    we have three Americans here and none of them are being

3    medically examined.  Jade Cheng is sitting for her deposition

4    today, Your Honor, and will sit for another day.  There are

5    no arrangements for any examination.  He's here in Boston.

6    Who is examining him?  And who is examining Caroline?  Nobody

7    asked for her examination.  Defendants didn't.  She's here --

8         THE COURT:  I'll tell you what.  Mr. Saso, it's

9    clear to me that this is not going to be worked out the way I

10   thought it would be worked out, which is practically,

11   sensibly, efficiently, and without undue burden on the

12   parties, which is when I allowed your order or your request,

13   I thought you would all work out the details.  Mr. Joffe is

14   electing to -- as is his right, to stand on the requirements

15   of the Rules of Civil Procedure and certainly the rule

16   requires, among other things, that the order identify the

17   person or persons who must perform it, time, place, manner

18   and conditions.

19         So I think this is what I'm going to do.  I'm

20   prepared to issue such an order.  You will need to propose to

21   me where, when, and whom.  I'm not going to hold you to the

22   November 13th date.  I thought -- originally, I made the

23   judgment that those should occur during fact discovery, but

24   now, given that Mr. Joffe has been standing on that, but it

25   hasn't come to my attention by either of you until now, and I

1    think it was reasonable to try to work it out among

2    yourselves, given the big issue to be decided, ordinarily,

3    under Rule 35, is whether a Rule 35 examination occurs.  In

4    my experience, usually the fight is over whether a party is

5    entitled to a Rule 35 examination and sometimes there's a

6    dispute over the particular conditions that govern it, have

7    not before, in all the years that I've been a magistrate

8    judge or a district judge, have a dispute over the location

9    or the time or the name of the person performing it, but

10   apparently there's a first for everything.

11          So you should make a motion to me with respect to

12   each of the five -- it could be the same motion -- it's one

13   motion, but it could have differences for different people.

14   And as to the specifics of 35(a)(2).  You don't need to

15   address whether you have a good cause, which is (a)(2)(A),

16   because I've decided by my order that there is good cause.

17   But you do need to -- my order needs to address (a)(2)(b).

18   And so you propose to me what (a)(2)(b) is and then I'll

19   address it.

20          MR. SASO:  And Your Honor, two things.  First, I do

21   want to clarify that we -- as you know, some of the things

22   that are required by Rule 35 include things like the day and

23   time and that is what I tried to meet and confer with

24   Mr. Joffe about --

25          THE COURT:  I understand.  You tried to meet and

confer over it.  So what you're going to do instead is --

that was a sensible way to proceed, Mr. Saso, but Mr. Joffe

doesn't want that.  He wants an order from the Court

specifying the date, time, and place.

So you are to arrange your expert and you can

secure an expert and you will propose a time, and you will

need to confer, under the local rules, so you need to tell

him when it is, but if you don't -- and you can reach

agreement as to that, but if you don't reach agreement, you

just propose it.  And if it seems reasonable to me, then I

will allow it, and then they will have to show up at that

time.

I think it's a more efficient way, the way you

proceeded, because you would negotiate over it and then you

could consider your schedule and the doctor's schedule, and

the witness's schedule and Mr. Joffe's, but that procedure

has been rejected, so we're not going to do it that way.

MR. JOFFE:  Your Honor, I apologize, Your Honor.  I

was proposing to have a stipulation.  I was proposing to have

doctors and date and time arranged.  They didn't.  You're

saying that they were pursuing that and I refused.  I was the

one pushing for it.

THE COURT:  You're the one who's just told me that

the order I issued is no good, Mr. Joffe.  You told me that

the order was no good and they didn't have to sit without a

1    proper order.  Right?

2          MR. JOFFE:  Yes.  No, but the discussions of to

3    have it stipulated.  I asked which witnesses, what -- I mean,

4    which experts, what dates we need.  We can do it by order.

5    We can do it by stipulation.  I was the one pushing, let's

6    agree on these details.  Let's have a stipulation so ordered

7    by the Court.  We're on the record on that, Your Honor.  A

8    year ago we filed the papers, status report, saying that's

9    what our requirements are.

10          THE COURT:  Yes, Mr. Callaghan?

11          MR. JOFFE:  Or by motion.  And they refused my

12   proposals.  Not me, I didn't refuse anything.  I was trying

13   to work out for two people with the pandemic world with visa

14   restriction for depositions and for medical exams.  And I was

15   pushing for that.  I said you want to have it before the

16   deposition and you have nobody.  Tell me the dates, tell me

17   the topics.  So I was not resisting that.  I just want the

18   record to be clear.  And if necessary, I'll pull the e-mails

19   and show.  They were resisting it.  They -- they actually

20   backloaded the schedule, so we have all the depositions

21   happening in two weeks.

22          Your Honor, I was pushing to get the deposition

23   scheduled back in August.  And we've got -- I proposed

24   deposition dates in September.  I had them scheduled in

25   October.  You know what happened?  All the depositions now in

1    the last two weeks.  I take depositions at 5:00 a.m. in the

2    morning and next day at 3 a.m. at night.

3            MR. CALLAGHAN:  Your Honor --

4            MR. JOFFE:  Two weeks we have depositions

5    scheduled, two depositions this week, all week, and last week

6    was all deposition, because they were all backloaded by

7    defendants.  And now they come with this medical exam, which

8    they haven't done anything for, haven't got any experts,

9    haven't resolved any outstanding.  We have this issue of

10   telemedical exam, telling it was on the table.  Anthony said

11   they would come back to me, they never did.

12           MR. CALLAGHAN:  Your Honor, can I --

13           MR. JOFFE:  So they want to say that I rejected the

14   procedure.  That's unfair and that's untrue.  They did.

15           THE COURT:  Are you done, Mr. Joffe, or anything

16   else you want to say?

17           MR. JOFFE:  That's it.  Sorry.  Thank you, Your

18   Honor.

19           THE COURT:  You're welcome.

20           Go ahead, Mr. Callaghan.

21           MR. CALLAGHAN:  Your Honor, the burden is on the

22   plaintiffs to bring forward expert reports on, I believe,

23   it's the 13th of December.  We have very little information,

24   zero information, with regard to the two Chinese nationals

25   who currently reside in China, very little information with

1    regard to the two Chinese nationals who reside in the US, and

2    quite a substantial body of information with regard to

3    Mr. Styller.  But we don't know what medical conditions they

4    are alleging.  We don't know, Your Honor, as we sit here

5    today, what battery of tests to impose on these individuals.

6          Now, Mr. Joffe has used that, in his discussions

7    with us about telemedicine, et cetera, et cetera.  When we

8    proposed that we defer the medical exams until such time as

9    we have a clue as to what it is we're looking for, looking to

10   verify, looking to test, et cetera, he began using that as a

11   cudgel and he suggested that we should have to take a remote

12   exam of the two Chinese nationals living in China.  We

13   considered that and the discussion, frankly, never re-ensued,

14   because we're waiting for him to get back to us on whether or

15   not we would agree to ask the Court together to defer our

16   medical exams on the individual plaintiffs until we know what

17   the conditions they're alleging are.  We don't have that as

18   yet.  It's hard to schedule medical exams of a blank slate.

19             THE COURT:  Mr. Joffe, I have a question for you.

20             MR. JOFFE:  Yes.

21             THE COURT:  Do you plan to have experts in this

22   case?

23             MR. JOFFE:  Yes, we do, Your Honor.  And --

24             THE COURT:  And what type?

25             MR. JOFFE:  And our report is due December 13th,

1    under the schedule.

2              THE COURT:  Right.  What type of experts are you

3    anticipating?

4              MR. JOFFE:  Damages experts.

5              THE COURT:  When you say damages experts, do you

6    mean with respect to the individual?

7              MR. JOFFE:  We haven't formulated the strategy for

8    the experts, but there will be expert testifying as to the

9    false imprisonment and the --

10             THE COURT:  So experts opining on --

11             MR. JOFFE:  Emotional -- emotional distress and

12   medical injuries.

13             THE COURT:  And medical injuries.

14             MR. JOFFE:  Yes.

15             THE COURT:  Okay.  As to each of the five

16   individual plaintiffs?

17             MR. JOFFE:  We have emotional distress claims, Your

18   Honor --

19             THE COURT:  No, I know you have the claims.  My

20   question is will you have experts with respect to each of the

21   five?

22             MR. JOFFE:  We will -- no, probably not for each.

23             THE COURT:  Which ones?

24             MR. JOFFE:  For the ones who were sitting in jail.

25             THE COURT:  So the -- are you going to -- other

1    than the three people who were in jail, will you have any

2    experts, other than a damage expert as to the medical or

3    emotional condition of the -- and effect on the three people

4    who sat in jail in China?

5            MR. JOFFE:  Yes.  We will also have damages experts

6    that -- economic damages, as well, but as far as medical

7    experts, we were not planning any medical experts.

8            THE COURT:  So you're going to have one or more

9    experts with respect to economic damages of Integrated.

10           MR. JOFFE:  Just business damages kind of experts

11   who calculates everything.

12           THE COURT:  With respect to Integrated, or anything

13   else other than Integrated?

14           MR. JOFFE:  Integrated -- yeah, Integrated, yes.

15           THE COURT:  But not with respect to any of the

16   individual plaintiffs.

17           MR. JOFFE:  Economic damages expert, no.  We were

18   thinking about business damages for ACT.

19           THE COURT:  Okay.

20           MR. JOFFE:  As a company business loss.  And for

21   individual plaintiffs, we'll have an expert who will testify

22   as to the, you know, mental and emotional distress from

23   prolonged and tortuous imprisonment.

24           THE COURT:  And that expert will be testifying

25   only --

1          MR. JOFFE:  Yes.

2          THE COURT:  -- only with respect to the three?

3          MR. JOFFE:  Yes, well, we need to think whether

4    Alex Styller, who was not in jail, but he claims emotional,

5    whether he needs his own expert, but at least with respect to

6    three, we'll -- surely, we'll have an expert.

7          THE COURT:  And as to the fifth is the spouse,

8    correct?

9          MR. JOFFE:  Yeah.

10          THE COURT:  And will the expert be --

11          MR. JOFFE:  So Styller and Caroline, they are in

12    separate category from the imprisoned one.  Well, let's -- I

13    don't want to commit, but we'll probably have an expert for

14    them, because they're in a slightly different position, yes.

15    So then the total will be one economic, one imprisonment, and

16    one emotional distress for --

17          THE COURT:  Why shouldn't their examinations occur

18    after your expert medical disclosures?

19          MR. JOFFE:  No reason why they shouldn't, except

20    for defendants insisted to have it done during our

21    depositions.

22          THE COURT:  Okay.

23          MR. JOFFE:  It was their insistence, not ours.

24    Your Honor, we don't have any issues.

25          THE COURT:  Okay.  That solves the problem.  How

1    long -- that makes it easy.

2            How long, Mr. Saso, after you receive -- or

3    Mr. Callaghan, after you receive the expert disclosures on

4    December 13th do you need to provide a letter to Mr. Joffe,

5    stating what kind -- like what doctor you want to have --

6    doctor, whatever examinations you want and roughly where?  I

7    understand it still leaves a potential dispute between the

8    two of you over whether it's in person or telemedicine, but

9    then you should be able to know, well, we want, you know, a

10   psychiatrist, or we want an orthopedist, or whatever it is

11   that you want, or both.  How long after you receive the

12   expert reports?

13           MR. CALLAGHAN:  Your Honor, we would anticipate a

14   week to ten days should be sufficient, but this is one of the

15   reasons we've discussed it with Mr. Joffe.  He doesn't want

16   to commit, he said it himself, but this is the reason that we

17   want to discuss this issue, because --

18           THE COURT:  So this is what we'll do.  He doesn't

19   want -- so how about we'll say by the 23rd, or the -- of

20   December, you notify him of whom you -- as to each of the

21   five, whom you wish that person to be examined by and

22   whatever conditions you propose about the examination and the

23   like.  And then, Mr. Joffe, I'll come back to how long, but

24   you confer with them over -- you know, and either you'll

25   reach --

1          MR. JOFFE:  Sure.

2          THE COURT:  And what I anticipate is one of two

3     things.  You'll either reach an agreement, which is fine, and

4     then you can submit it to me and I will order it.  Or you

5     might reach agreement on some things, like maybe Mr. Joffe

6     says I don't object to the doctor, but I want it -- he says

7     he wants a telemedicine evaluation and you want an in-person,

8     or there's a dispute about the conditions.  So you'll submit

9     to me either a status report reflecting your -- what you've

10    agreed and what the things you disagree on and why, or you

11    could do it by a motion, but I think it's faster with a

12    status report.  So you say like we've agreed on this for each

13    of the five and here's our disputes.  For examination number

14    one, you know, we want this and they want that.  Examination

15    number two, we're all agreed.  Examination number three,

16    whatever.  And you give me a brief paragraph on what you want

17    and then I'll resolve it, and perhaps with a hearing.  And

18    then I'll order it on a date like -- I'll order it.  Then

19    you'll have to work out a date, or if you can't, I'll pick a

20    date.

21          You can assume -- so does that process sound

22    reasonable and practical to you, Mr. Callaghan and Mr. Saso?

23          MR. CALLAGHAN:  Yes, Your Honor, and part of the

24    reason that we were discussing this was to give lead time, to

25    the extent that it's being considered, to give lead time to

1    Cathy and Jason to make their arrangements, put their affairs

2    in order, so they could be here during a window of time where

3    all of this can be arranged.

4             THE COURT:  Well, I'll circle back to that in a

5    moment.

6             Mr. Joffe, does that sound like a reasonable way to

7    proceed with this?

8             MR. JOFFE:  Yes, Your Honor.  Yes, Your Honor.

9             THE COURT:  Great.  So that leads to one issue that

10   Mr. Callaghan alludes to with respect to that, which is the

11   in-person nature which the defendants seek.  You know, the

12   presumption, ordinarily, is in person.  Obviously, the world

13   is different now, under COVID.  I will say, that in-person --

14   I have been persuaded by my Zoom experiences that in-person

15   is better than Zoom.  It's better for court hearings, it's

16   better -- we don't need to do this court hearing in person

17   and on balance it makes sense to do this by Zoom.  But court

18   hearings are better in person, even this kind of hearing,

19   than by Zoom.

20            And so I'm not resolving now this apparent dispute

21   over in-person or Zoom, but I will say that I can

22   understand -- I'm not -- there's a number of different

23   factors to balance, but there's a couple of things to keep in

24   mind.  One, I think in-person is better, including with

25   respect to medical examinations.  Two, the plaintiffs brought

1    the case in Massachusetts, and three, they're going to have

2    to come here for trial.  And it's not altogether clear,

3    notwithstanding Pfizer's announcing yesterday, maybe it's all

4    going to be gone by our May trial date.  That will be a

5    beautiful thing, but it may not be, and they're going to have

6    to come for trial.

7           MR. JOFFE:  And Your Honor, Your Honor, I just want

8    to comment on that.  They're fully prepared and they're

9    working on coming for trial.  The issue here is now --

10   there's two -- they have, also, to come for deposition by

11   traveling to third country, with all the visas, and all that.

12   And now, according to defendant, they will have separately,

13   now, to come to medical exam, in addition to trial.  This is

14   very burdensome.  It was just -- you know, we've been taking

15   depositions of witnesses by defendants in Australia or London

16   or England by Zoom, and our guys will have to travel three

17   times now.  One to another country to just sit for

18   depositions, then, according to defendants, travel here --

19          THE COURT:  But that -- I don't see the travel --

20   the travel for deposition is not on the defendants.  The

21   travel on the depositions -- your clients, it's nothing wrong

22   with it, but they made a choice to sue in the United States.

23   And by definition, as a matter of law, that required them to

24   leave China for depositions.  You told me that you can't do a

25   deposition in China.

```
 1              MR. JOFFE:  Yes.

 2              THE COURT:  So that's not -- that's just the way

 3    the cookie crumbles.

 4              MR. JOFFE:  That is true, and trial is the same

 5    thing, but the medical exam as an extra trip.  We don't mind

 6    to deposition -- we didn't object, of course.  The trial is

 7    fine, the deposition is fine, but this extra trip, in

 8    circumstances where such trips and nowadays, are difficult.

 9    They're just physically difficult.

10              THE COURT:  I understand.  I'm not saying I'm

11    ordering it.  I'm not saying, Mr. Joffe, I'm ordering it, but

12    all I'm saying is I'm seriously considering it.

13              MR. JOFFE:  Okay.  Thank you, Your Honor.  That's

14    all I can ask for.

15              THE COURT:  And so when you submit the status

16    report to me, then I'll see, and you'll each explain to me

17    why.

18              MR. JOFFE:  Why.

19              THE COURT:  And then, Mr. Callaghan, if it's going

20    to be in person, and the date will be sufficiently far out to

21    give them time to do the 14 days of quarantine beforehand.

22    Of and I would -- I don't see how, in the end, the timing of

23    this, even if it's delayed another month because of the

24    travel and quarantine is going to make any difference, given

25    the schedule that we've set.
```

1              So the only question, Mr. Joffe, is when do you
2     want to respond to the December 23rd letter?  So if you all
3     gave me a status report by something like January 10th, would
4     that give you enough time?
5              MR. JOFFE:  Yes, that's plenty of time.
6              THE COURT:  So that's not for you to respond,
7     Mr. Joffe.
8              MR. JOFFE:  -- arrangement with the other side and
9     we'll have a joint status report on that.
10             THE COURT:  So January 10th, a joint status report.
11     And you'll just work out among yourselves when you respond
12     to --
13             MR. JOFFE:  Yes, Your Honor, of course.
14             THE COURT:  January 11th, because that's a Monday.
15             MR. JOFFE:  January 11th.  Okay.
16             THE COURT:  Fine.  Okay.  That takes care of
17     everything in all of your filings, does it not, Mr. Saso?
18             MR. SASO:  I believe that's the case, Your Honor.
19             THE COURT:  All right.  So just to summarize --
20             Maria, this, you should get down for the clerk's
21     notes.
22             By January 11th -- the Rule 35 examinations will
23     occur at a later point in time and by January 11th, the
24     parties will submit a joint status report with respect to
25     that.  Two, with respect to Mr. Pekar's deposition, by next

1    Tuesday, Mr. Joffe will submit something that tells me

2    whether he's waiving service or not.  And if he's not waiving

3    service, then he'll oppose the motion -- the service motion

4    filed by the defendants by next Friday.

5            With respect to depositions, you all will work out

6    the schedule for the people -- we're going to come in a

7    minute to Mr. Joffe's complaints -- but the second day for

8    the people who need a second day, you work out a schedule,

9    and you'll submit something to me.  Did we set a date by when

10   you'd submit that?

11           MR. SASO:  I don't think so, Your Honor.

12           THE COURT:  How about by next Friday, you'll submit

13   a schedule -- all the depositions that have been authorized

14   and you'll tell me they've either occurred or when they're

15   going to occur, to the extent you need beyond this Friday.

16           MR. JOFFE:  So by Friday, this Friday, we need

17   to --

18           THE COURT:  Next Friday.

19           MR. JOFFE:  Next Friday.  November 20th, right?

20   Okay.

21           THE COURT:  Yes.  And Mr. Pekar's obviously, if

22   it's up in the air, I'll work it out, and then we'll see.

23           MR. JOFFE:  Yes.

24           THE COURT:  All right.  That -- and that resolves

25   the motion to dismiss with respect to the two Chinese

1    defendants I'll terminate as moot, because they're Rule 35 is

2    going to come later.

3              So Maria, you can terminate as moot the motion to

4    dismiss of those two.

5              All right.  So that leaves -- are there any other

6    issues the defendants want to raise?

7              Oh, and with respect to Mr. Bunis, that issue you

8    raised, you'll just submit to me, as soon as reasonably

9    practical, the video.  I'll watch it, and then I'll -- both

10   of you can file whatever motions you want to file sometime in

11   the next two weeks.

12             MR. BUNIS:  Yes, that's fine, Your Honor.  I would

13   just say with respect to these upcoming 30(b)(6) motions, or

14   excuse me, depositions to be scheduled, we were hoping to

15   schedule them -- given the deadline was Friday, we couldn't

16   prepare the appropriate witness and get a date selected, so

17   we proposed to the other side that we push it into the

18   following week.  And it wouldn't affect the schedule and we

19   would just sort of hold hands and agree to extend together

20   the deadline for conducting depositions, and that's what we

21   were hoping to do.

22             The issue -- and we still were proposing to do that

23   next week.  The issue that remains with respect to a 30(b)(6)

24   deposition is the following, Your Honor.  The plaintiffs have

25   noticed three 30(b)(6) depositions for the following

1    entities, HPE, HPI, and HPFS.  They have indicated the same

2    seven topics that they want to inquire about for those three,

3    separate corporate entities.  We will designate -- have

4    designated the same individual to testify on behalf of all

5    three entities and we've stipulated that his testimony, in

6    one deposition, on behalf of one individual will bind the

7    other two entities and we've offered that in addition to the

8    seven hours.  If they need a few more hours to clean that up,

9    we would be amenable to that.

10            The problem is, I think, that the plaintiff wants

11    the same guy, on the same topics, for the seven hours, three

12    days and -- two days.  Excuse me.  Two days.  And we think

13    that that's too much.  So that's, I think, the issue.

14            The scheduling issue is we are not saying they

15    can't take a 30(b)(6) deposition.  Absolutely not.  We --

16    with respect to extending it, we'll come up with a day, we

17    hope next weekend, we can do it and it works for them, and

18    works for the witness.  The remaining issue is what I've just

19    set forth.

20            THE COURT:  Okay.

21            Mr. Joffe?

22            MR. JOFFE:  Well, Your Honor, we have -- we noticed

23    two 30(b)(6) depositions.  We agreed with plaintiffs that we

24    will combine HPE and HPI, which are different defendants, in

25    one.  So we will take one 30(b)(6) of HPE/HPI, which is the

1    former HP, the main company, that didn't produce any

2    documents.  So we wanted to have one deposition of HPE/HPI

3    combined seven hours.  And Mr. Bunis stated, we asked another

4    deposition of HPFS India.  That's a defendant that produced

5    zero documents, too.  We wanted to have the whole story.  So

6    we noticed two depositions for India and for combined

7    HPE/HPI.  They gave us the dates.  They told us you can take

8    HPE/HPI deponent Barclay.  He's noticed to testify in his

9    individual capacity on such a date.  You can depose him in

10   his 30(b)(6) capacity in that seven hours on the same date.

11   And I said, no, I have here an individual, I have four or

12   five individual witnesses, but I also have corporate

13   designees for which I need my seven hours.  I need my seven

14   hours for HPFS India, and I need my seven hours for one

15   combined HPE/HPI 30(b)(6) witness.

16         They canceled both witnesses last week unilaterally

17   and this week we have Barclay as one of the witnesses and

18   O'Grady as another.  And Sunday night, they canceled all

19   30(b)(6) depositions again.

20         THE COURT:  So let me see if I understand,

21   Mr. Joffe.

22         MR. JOFFE:  They don't give me a single hour to

23   take the --

24         THE COURT:  Hold on.  Hold on.  So you agreed that

25   one 30(b)(6) witness for one day could appear for HPE and

1    HPI, correct?

2              MR. JOFFE:  Yes, Your Honor.  Yes, Your Honor.

3              THE COURT:  And you want a separate --

4              MR. JOFFE:  HPFS India, Your Honor.

5              THE COURT:  I'm just looking for where you went.

6    You disappeared.  Oh, there you are.

7              So then you wanted a second 30(b)(6) deponent for

8    HP India.

9              MR. JOFFE:  Correct.

10             THE COURT:  They designated Mr. Barclay as the

11   person who would be the 30(b)(6) deponent for all three of

12   those entities, correct?

13             MR. JOFFE:  Yes.  And also O'Grady, who will also

14   be for all three, but with respect to a specific topic, out

15   of my 30(b)(6).

16             THE COURT:  And --

17             MR. BUNIS:  No, Your Honor.  Incorrect, Your Honor.

18   The single witness, Mr. Barclay, will be the deponent for all

19   three entities.

20             THE COURT:  He's the only person you've designated

21   as a 30(b)(6) witness?

22             MR. BUNIS:  That's correct.

23             MR. JOFFE:  As of last night, because before that,

24   it was for Barclay and O'Grady, but the dates that they were

25   giving us to take those 30(b)(6) depositions were the dates

1    when this Barclay and O'Grady was scheduled to --

2          THE COURT:  So do you also want to depose -- you

3    also want to depose Mr. Barclay individually?

4          MR. JOFFE:  I did, already.

5          THE COURT:  You already took his individual

6    deposition?

7          MR. JOFFE:  He was with -- yes, Friday, Your Honor.

8          THE COURT:  So Mr. Bunis, he's coming back, in your

9    view, as a 30(b)(6) separate.  So he sat for a day as his

10    personal deposition; is that correct?

11         MR. BUNIS:  That's correct, Your Honor.

12         THE COURT:  And then you're saying -- now,

13    Mr. Joffe -- so you got your personal deposition with

14    Mr. Barclay, right?

15         MR. JOFFE:  Yes, Your Honor.

16         THE COURT:  All right.  And now, the defendants

17    want to say he's the 30(b)(6) deponent for all three

18    companies and you say you should get two days for that and

19    they say you should get a day or a day and a half.

20         Is that the dispute?

21         MR. JOFFE:  Well, so far they didn't give me any

22    days.  They just cancel.  They keep cancelling those days.

23    So we have November 13th and, as of today, before we

24    extended, we have November 13th ending the depositions and

25    all my 30(b)(6) being canceled, every week.  We have no --

 1     they don't propose the dates that we can really take them,

 2     because the 13th is the deadline.

 3                THE COURT:  What do you want?  Do you want one day

 4     or two days?

 5                MR. JOFFE:  I want seven hours of HPFS -- sorry.

 6                THE COURT:  So you want two days.

 7                MR. JOFFE:  I want one 30(b)(6) witness for HPFS

 8     India, one.  And I want one combined for HP and HPI.

 9                THE COURT:  So you want two days for those three

10     entities?

11                MR. JOFFE:  I want two days of depositions as you

12     authorized by your order, Your Honor.

13                THE COURT:  Okay and --

14                MR. JOFFE:  Not substituting anyone, or combining

15     anyone two in one, but I want seven hours a day for them.

16                THE COURT:  And are the topics the same for all

17     three entities?

18                MR. JOFFE:  The topics are slightly different, but

19     some entity like HPFS India was more involved in the India

20     part and the HPE and HPI were more involved in the

21     counterfeit investigation.  There's not one, there were

22     actually three going on in China at the time, involving the

23     same type of equipment.

24                THE COURT:  So Mr. Bunis, is the entire dispute,

25     (a) whether it's two days or a day, day and a half.  And (b),

1    it was originally scheduled for some day this week and then

2    you said no, because the witness isn't ready and you need

3    more time to prepare, and you proposed this to do it next

4    week.

5         MR. JOFFE:  They didn't propose -- that's not

6    correct, Your Honor.  The witness was not even being

7    prepared.  I asked Mr. Gill -- or Mr. O'Grady whether he was

8    prepared for his 30(b)(6) this week, and this is the first

9    time that he heard he was a 30(b)(6) deponent.  He never

10   heard about it until this morning.  How was it he was

11   supposed to testify last week, or this week, if they didn't

12   even tell him that he was a designee?  They undesignated him

13   last night and I broke the news to him today.

14        THE COURT:  Well, I guess they're not as prepared

15   as you've been.

16        MR. JOFFE:  I guess they're not, Your Honor.  With

17   everything, with medical exam, with witnesses, with anything.

18   They're pushing hard for five years and now they're hitting

19   the brick wall.  They're done.  I will show it to you soon,

20   Your Honor.  I don't think we're going to have a May trial.

21   I think we'll finish this case very soon.

22        THE COURT:  You know, we built a courthouse for the

23   courtroom for trials.  I'm happy for a trial.  If you all

24   want to settle your case before trial, you're welcome to do

25   that.

1          All right.  So with respect to the scheduling, I
2     don't really think we need, one, two, three, four, five, six
3     lawyers, plus whoever is not in the video at Mr. Bunis's
4     office, and -- to resolve the question of when the 30(b)(6)
5     deposition occurs.  I think that whether you're agreed,
6     Mr. --
7          I understand why you might be annoyed, Mr. Joffe,
8     that you had it scheduled for a certain day and then they
9     said that it's not going to go forward on that day.
10          MR. JOFFE:  With no excuses or explanations.  Not
11     that their witness was not ready, not whether they need time
12     to prepare, no excuses.  Just we cancel it.  How could it be,
13     Your Honor?  Unilaterally cancel deposition after deposition.
14     He said that he never seen anything in 27 years.  I haven't
15     seen anything like that in my 23 years.  That somebody will
16     cancel deposition unilaterally.
17          THE COURT:  Really?
18          MR. JOFFE:  Day after day, unbelievable.
19          THE COURT:  Okay.  So what do you want for that,
20     Mr. Joffe?
21          MR. JOFFE:  I just want to have two depositions.
22     And Your Honor, I will come back with a further request.
23     What I -- well, I'll come back.  I just need two days of
24     depositions of their 30(b)(6) witnesses that we're entitled
25     to.  You ordered them to produce --

1          THE COURT:  If you want two days, the best thing to

2    do would be quiet.  Okay.  If you want to fight about the

3    schedule and you want to seek sanctions for the fact that, in

4    your view, they canceled the deposition the day of, then you

5    can seek sanctions for that, okay?  And you go ahead and file

6    that motion and I'll resolve it, but with respect to the

7    schedule, you can work that out with them.

8          MR. JOFFE:  Yes.

9          THE COURT:  You ought to be able to work it out.

10   If you can't work it out with them, then I'll decide when it

11   occurs.  Okay?

12         MR. JOFFE:  Thank you, Your Honor.

13         THE COURT:  But really, I think it's ridiculous

14   that, Mr. Joffe, to be here arguing about, they changed it,

15   it's annoying.  I understand why you might be annoyed, but

16   like is this is the most -- you're a New York lawyer.  If

17   this is the most difficult thing that happened to you in the

18   course of your years of practice in the City of New York, I'm

19   stunned.  I'm not unfamiliar with New York.  I went to law

20   school in New York.  I briefly, very briefly, worked at some

21   law firms in New York in the summers.  I spent a lot of hours

22   in the course of law school sitting in the state and federal

23   courts in New York watching proceedings.  I have some

24   understanding of how the practice of law occurs in New York.

25   If this is what blew through your skin, I find that stunning.

```
 1              MR. JOFFE:  Your Honor, Your Honor, I would like to
 2      disabuse you of that notion.
 3              THE COURT:  Yes.
 4              MR. JOFFE:  It didn't touch me in any way.
 5              THE COURT:  Right.  So just work out the date with
 6      them and get over it.  Okay.  So the real issue is two days
 7      not one day.  That's the dispute.
 8              Mr. Bunis, briefly.  Why should it be one day or
 9      one and a half, or whatever you're proposing, rather than
10      two?
11              MR. BUNIS:  Your Honor, the similarity of the
12      subject matter, the fact that it would be the same witness
13      and the fact that he's already taken that same witness's
14      deposition already for seven hours means, to us, that 14 --
15      21 hours in total with the same guy is too much.
16              THE COURT:  Day and a half.  All right?  Seven
17      hours and three and a half hours, for that witness.  So for
18      the --
19              Maria, for the memorialization in the clerk's
20      notes, the 30(b)(6) deposition of the defendant entities will
21      be 1.5 days with the same witness.
22              Is there anything else you wanted to raise,
23      Mr. Joffe?
24              MR. JOFFE:  No, Your Honor.  Thank you.
25              THE COURT:  Okay.  Maria --
```

1               And did that cover everything that you had,

2      Mr. Bunis, Mr. Saso, and Mr. Callaghan?

3               MR. BUNIS:  Yes, Your Honor.

4               MR. CALLAGHAN:  Yes, Your Honor.

5               THE COURT:  Do you know how they can submit the

6      video to me?

7               THE DEPUTY CLERK:  Yes.  They can file it on -- you

8      know, send it in on a disc --

9               THE COURT:  Is that what they're going to have to

10     do, send it in on a disc?

11              THE DEPUTY CLERK:  Well, that or -- they can

12     probably -- I don't know if they can e-mail it to me and I

13     don't know if I can download it.

14              THE COURT:  This is what you can do, Mr. Bunis.

15     You can either send us a disc or a flash drive.  If you do

16     that, we'll have to load it into our network drive and once

17     you do that, then I can get it wherever I am.

18              Alternatively, you can -- if you have some sort of

19     cloud site that has it on it, you can e-mail whatever

20     information is required to Ms. Simeone, the link and whatever

21     information is needed to access it.  Obviously, whatever way

22     you do it, copying Mr. Joffe.  And then she can forward that

23     on to me and I can access it that way.  I only ask if you do

24     that, that is a link to a cloud site, that it would be better

25     if it was not a cloud site that has all your discovery on it,

1    like for the shared discovery, or whatever, cloud sites using

2    for that.  Something separate like virtually separate.  I

3    don't want to be poking around in other things that are

4    submitted.  And I think that would be a faster way to get it

5    to me.  And then you could -- I think for the purposes of the

6    record, it would probably still be good to send in the flash

7    drive --

8                    THE DEPUTY CLERK:  Judge.

9                    THE COURT:  -- that would in the Court's file.

10                   THE DEPUTY CLERK:  I've just been advised, we don't

11   allow flash drive.  I guess it has to be a disc.

12                   THE COURT:  All right.  There we go.  It has to be

13   a disc.  So if you provide a link, I can look at it

14   potentially today or tomorrow, which might move this -- that

15   issue along.  But if -- and then you can file the disc a

16   little later for the purposes of the record.

17                   MR. BUNIS:  Your Honor, I will take care of it, and

18   most importantly, the person who's in the room is Mr. Quigley

19   and he's the person who I'm sure will figure all of this out

20   and make it happen.

21                   THE COURT:  I knew there was somebody whispering in

22   your ear, Mr. Bunis, telling you what to say.  All right.

23                   So I think that's everything.  Everybody know what

24   dates things need to be done on?

25                   MR. JOFFE:  Yes, Your Honor.

```
 1                 THE COURT:  All right.
 2                 Mr. McGuire, you've been so quiet, anything that
 3     you want to add?
 4                 MR. JOFFE:  No.
 5                 MR. MCGUIRE:  As soon as I find the unmute button,
 6     I can report to you.
 7                 No, there's nothing that I need to add.
 8                 THE COURT:  Okay.  All right.  Well, as always, a
 9     pleasure to see all of you -- well, I do have another
10     question with respect to the trial.
11                 So how many people -- there are two possibilities
12     for this trial, one is that the restrictions that are imposed
13     on our conducting trials have evaporated by May, or relaxed,
14     and fine, then we'll just proceed in the ordinary way.  We
15     are proceeding with jury trials, criminal and civil, but
16     obviously more slowly and under certain limitations, social
17     distancing, masks and the like.
18                 So on the plaintiffs' side, who would be present,
19     from your perspective, for the trial, in the courtroom?
20                 MR. JOFFE:  Well, me.  I hope I'll be present, Your
21     Honor, and we have another law firm that is coming in any day
22     now.
23                 THE COURT:  Okay.  And how many lawyers?
24                 MR. JOFFE:  It's a big law firm.  I don't know, but
25     it's a big law firm.
```

```
 1              THE COURT:  So you'd anticipate a fair number of
 2     lawyers?
 3              MR. JOFFE:  I anticipate a calvary going down.
 4     Now, eight.
 5              THE COURT:  Okay.  All right.  And so -- and how
 6     many of your clients would there be?  There would be
 7     Mr. Styller, he would be there for himself, and he would be
 8     there for Integrated.
 9              MR. JOFFE:  Your Honor, are you going to be asking
10     who is going to be witnesses?
11              THE COURT:  No.  Literally sitting in the
12     courtroom.
13              MR. JOFFE:  Okay.  Well, we have three plaintiffs
14     who live here and they will be present.
15              THE COURT:  That's Mr. Styller.
16              MR. JOFFE:  Styller, he calls himself, Jade Cheng,
17     and Caroline.  They're all here.  They will be present
18     physically.  And by that time, when is it?  May?  Hopefully
19     the Chinese will get here with their visas and passports.
20              THE COURT:  So that will be two more.
21              MR. JOFFE:  Right.  Jason and Cathy.
22              THE COURT:  Five.
23              MR. JOFFE:  Five plaintiffs.  Yes.
24              THE COURT:  Didn't I sever the family plaintiffs?
25     Caroline's case is not derivative?
```

1          MR. JOFFE:  Well, it is.  I mean, she is part of

2    family, plaintiff, but she was in the United States.  So when

3    we --

4          THE COURT:  Her case isn't going to trial in May,

5    is it?

6          MR. SASO:  That's our understanding, Your Honor.

7    She is a witness, even in this case, for --

8          THE COURT:  Yeah, sure.

9          MR. SASO:  Right.

10         THE COURT:  Okay.  So you'd have the three people

11   who were imprisoned in China, plus -- he says Styller?

12         MR. JOFFE:  Yes.  He calls himself Styller.

13         THE COURT:  That's four.  You'd have four people,

14   plus you is five, plus the calvary.

15         MR. JOFFE:  And the calvary, yes.  Yes.

16         THE COURT:  Okay.  And on the defendants' side,

17   there would be -- hold on.

18         MR. JOFFE:  Sorry, Your Honor, also two teams of

19   translators.  We'll need probably three.  We need Russian,

20   we'll need Chinese, Mandarin, and we'll need Portuguese.

21         THE COURT:  Who will you need for the parties?

22   Never mind the witnesses.  For the parties.

23         MR. JOFFE:  Oh, okay.

24         THE COURT:  Any of them need a translator to

25   understand the proceedings?

1          MR. JOFFE:  Well, no.  I think for the parties we
2     won't need the translators.  I think they'll be okay, but for
3     testimony --
4          THE COURT:  Some witnesses will require a
5     translator.
6          MR. JOFFE:  Yes, Your Honor.
7          THE COURT:  All right.  So fine.
8          So for the defendants, how many parties you'd
9     have -- assuming it stands the way it does now, the
10    individual defendants are whom?  Remind me.
11         MR. CALLAGHAN:  David Gill, Your Honor, is an
12    individual defendant, and then it's the corporations, HPI,
13    HPE, HPFS, and HPFS India.
14         THE COURT:  So four corporate entities, would each
15    corporate entity have its own representative, or one person?
16         MR. CALLAGHAN:  We could probably reduce that to
17    one to two people, Your Honor, as representatives present in
18    the courtroom.
19         THE COURT:  And would Mr. Gill be attending the
20    entire trial, you'd anticipate?
21         MR. CALLAGHAN:  That would be our hope.  Yes, Your
22    Honor.
23         THE COURT:  All right.  So you'd have Mr. Gill and
24    call it two, one to two, corporate representatives, and then
25    how many lawyers -- never mind how many would be if we were

1    preCOVID, but how many do you think, just sort of ballpark,

2    you could do the case with people in the courtroom between

3    lawyers and paralegals?

4              MR. CALLAGHAN:  I'd say five, Your Honor, we could

5    manage.  It's not quite the calvary.

6              THE COURT:  All right.  Okay.  I just want to

7    figure these numbers out for planning purposes, because there

8    are limits to the number of people, presently, we can have in

9    the courtroom during a trial.

10             So you should know that, just for your own planning

11   purposes, it's ordinarily my practice for a trial, in a civil

12   case, to impanel a jury of 12.  However, in COVID, that's not

13   likely, for two reasons.  One is, given the number of people,

14   we just can't get everybody in a courtroom with a jury of 12.

15   And two, given just sort of minimizing risk, if we're not

16   required to have a larger number of people, it's more prudent

17   to have a smaller number of people.  So more likely, I

18   would -- in a short civil case, I would impanel seven or

19   eight, so we have one or two extras, because six is the

20   minimum.

21             So as we get closer, we'll see what the COVID

22   restrictions are.  Hopefully by then we'll be loosening up,

23   or have loosened all of the COVID restrictions and this will

24   all be irrelevant, but if it isn't -- and then we'll talk

25   about how long the trial will be and then the numbers of

1    people we need and we'll figure it out.

2              There are, obviously, other people who might want

3    to -- so for example, who might want to observe, family

4    members and whatever, and that they'll -- if we're in the

5    present world, they'll be able to do that by Zoom, or in an

6    overflow courtroom, so it won't be that they're utterly

7    excluded, but just physical presence.

8              Okay.  Anything about that, or anything else before

9    we adjourn?

10             Hearing nothing, thank you very much, you have a

11   good day, and we are adjourned.

12             THE DEPUTY CLERK:  This matter is adjourned.

13             (Court in recess at 4:48 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4          I, Rachel M. Lopez, Certified Realtime Reporter, in

5    and for the United States District Court for the District of

6    Massachusetts, do hereby certify that pursuant to Section

7    753, Title 28, United States Code, the foregoing pages

8    are a true and correct transcript of the stenographically

9    reported proceedings held in the above-entitled matter and

10   that the transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

12

13                    Dated this 17th day of November, 2020

14

15

16

17              /s/ RACHEL M. LOPEZ

18

19

20    _____

      Rachel M. Lopez, CRR
21    Official Court Reporter

22

23

24

25