# **EXHIBIT F**

Page 157

1  Q. Mr. Bartley, could you turn to Page 1221 of
2  this exhibit?
3  A. I'm sorry. The air mouse is not gripping
4  very well. 1221.
5          MR. BUNIS: Drag it out. Hold on
6  one second, Dimitry. I just got to make the window
7  a little bigger.
8  Q. Okay.
9  A. I can see it. I can see it.
10  Q. One question, did you see the top of that
11  e-mail?
12  A. Yes, I believe I do.
13  Q. Okay. And you see that you are forwarding
14  the whole e-mail exchange below to Mr. Ric Javed of
15  TT Global? Do you see that? Your e-mail says,
16  "Please see below," and then below is the exchange
17  of e-mails for the rest of this document. Do you
18  see that?
19          MR. BUNIS: You mean the very top
20  of the e-mail, Dimitry? You were pointing us to a
21  different page, I think. The very, very top of the
22  exhibit?
23          MR. JOFFE: Mr. Bunis, I was
24  paging to the exact correct page. It's DEF1221. I

Page 158

1  told you it's on the top of the e-mail. Your
2  questions right now betray either your complete
3  comprehension of the subject matter or your
4  deliberate attempt to delay my deposition and the
5  witness answering questions.
6       These only questions on your part. I
7  specifically identified the page number. I
8  specifically identified what e-mail. And I read it
9  out, and I told the dates and the people involved.
10      Are you so blind not to see it on the page?
11  Q. Mr. Bartley, my question is to you: Do you
12  see that you forwarded the whole e-mail exchange to
13  Mr. Ric Javed of TT Global on March 25th?
14          MR. BUNIS: Before you answer the
15  question, I just want to say, Dimitry, that --
16          MR. JOFFE: I don't want you to
17  say anything --
18          MR. BUNIS: I object personally --
19          MR. JOFFE: -- don't say anything.
20          (Unreportable crosstalk.)
21          MR. BUNIS: And that I'm idiotic
22  and that I'm incompetent.
23          MR. JOFFE: Yeah, yeah, yeah.
24          MR. BUNIS: I assure you that I'm

Page 159

1  trying very hard to deal with the technology that
2  you and that we're all dealing with, and my efforts
3  are solely to make sure that we're able to
4  accurately review the exhibits that you have put in
5  front of the witness, and that's it. And I really
6  have to say that it's rude that you would describe
7  my efforts to help as idiotic. And I don't think
8  that that's called for or any way that I would treat
9  you, and I would ask that you to refrain from
10  that --
11          MR. JOFFE: Idiotic colloquy with
12  you, but this exhibit was shared with you before the
13  break. You had 45 minutes for the break. The
14  witness reviewed the exhibits in full. You reviewed
15  the exhibits in full because you put it in front of
16  him. I've been asking you about this exhibit for
17  15 minutes now, and you don't understand what page
18  I'm referring to when I specifically direct you.
19      You're not trying to help, Michael. Don't
20  bullshit me. You're trying to steal my time.
21  That's what you're trying to do. You're trying to
22  put answers in witness mouth and stop him from
23  answering my questions. That's the sole thing that
24  you're trying to do.

Page 160

1      You're also trying to get me off, which
2  you're succeeding sometimes, but I'm going back to
3  calm, cool, and collected, and I will ask
4  Mr. Bartley to tell me whether he forwarded the
5  whole e-mail exchange we've been looking at in this
6  exhibit to Mr. Ric Javed of TT Global on March 25th,
7  2013.
8  A. Based on what I'm seeing in this e-mail,
9  that appears to be correct.
10  Q. Okay. So having forwarded this e-mail
11  exchange to a third party, TT Global, there is no
12  privilege in anything that's in this exchange;
13  correct, Mr. Bartley? If you want to clarify --
14          MR. BUNIS: Objection.
15  Q. -- with your attorney, you might -- we take
16  a break. But I represent to you that by forwarding
17  this e-mail chain to third party, TT Global,
18  whatever is below that, privilege is waived.
19      You want to take a break and discuss this
20  matter with your counsel, or you will take my word
21  that by forwarding it to third party, the whole
22  communication is no longer privileged? Do you want
23  to take a break and discuss it with your lawyer,
24  Mr. Bartley, because if you don't, I will --

Page 193

1       MR. BUNIS: Objection. Calls for
2 speculation. Calls for a hypothetical.
3     You can answer.
4   A. I'd like to answer. I'm uncomfortable with
5 answering a question that starts with "hypothetical"
6 or "hypothetically." If you could restate or
7 reframe the question, I might be able to answer.
8   Q. Did TT Global send its transceivers photos
9 and information to H3C in 2013?
10       MR. BUNIS: Objection. Asked and
11 answered.
12   A. I'm sorry. That seems to be a different
13 question to what you were initially asking.
14   Q. No. Mr. Kevan Bartley, you are not
15 answering any of my questions, so I have to go
16 around and try to ask you a question that you will
17 be able to answer, and you haven't been. We have on
18 record -- I'll go through it. I will show how many
19 questions you answered and how many questions you
20 evaded answering.
21     Then I will show how many questions
22 Mr. Bunis objected to, so don't tell me that, that
23 I'm not -- you know, trying to confuse or something.
24 I'm trying to get an answer to a simple question.

Page 194

1 It's your e-mail. It's on a critical subject of
2 your -- you destroying incriminating and exonerating
3 evidence. You think we're going to leave it like
4 that, when you destroy the evidence that would set
5 our guys free a long time ago? Do you think we're
6 going to let it go? No, we won't.
7       MR. BUNIS: Dimitry, entirely
8 improper. You're badgering the witness.
9       MR. JOFFE: I'm not badgering the
10 witness.
11       MR. BUNIS: Stop.
12       MR. JOFFE: I'm trying to ask
13 him --
14       MR. BUNIS: You are badgering the
15 witness. You have accused the witness of destroying
16 evidence.
17       MR. JOFFE: You --
18       MR. BUNIS: You are
19 misrepresenting --
20       MR. JOFFE: Yes, I do. Michael, I
21 do --
22     (Unreportable crosstalk.)
23       MR. JOFFE: As part of HP --
24       MR. BUNIS: Different question

Page 195

1 that you --
2       MR. JOFFE: Yes, I do.
3   Q. Mr. Bartley, as part of H3C or a part of
4 HPFS at the time, I accuse you as part of the
5 company of destroying exonerating evidence, material
6 exonerating evidence. And you know what, and paying
7 third party to destroy evidence. You pay for the
8 evidence destruction. Yes, that's my charge, but
9 that's not here or there. I want to ask you
10 questions about your e-mail. My attitude doesn't
11 matter. What matters is my simple question.
12     Did TT Global send its transceivers,
13 photos, and information to H3C, did H3C inspected
14 the transceivers, and did H3C then told you that the
15 origination is questionable? That's my question.
16       MR. CALLAGHAN: Dimitry --
17       MR. BUNIS: That's three
18 questions. I'm going to instruct the witness not to
19 answer. It calls for attorney/client communication.
20   Q. Okay, then. Do you know Mr. Bartley
21 whether the equipment was destroyed in Dubai?
22   A. To the best of my knowledge, the direction
23 that we provided TT-G to destroy the product was
24 carried out.

Page 196

1   Q. How did you provide those instructions,
2 Mr. Bartley?
3       MR. BUNIS: Just be careful in
4 answering the question not to reveal any
5 attorney/client communication.
6   Q. How? Meaning by e-mail? By letter? How?
7 What is the mode of communication for those
8 instructions to TT Global to destroy its
9 transceivers?
10   A. As I sit here today, to the best of my
11 recollection, it would have been via an e-mail.
12   Q. By e-mail?
13   A. That's correct.
14   Q. By e-mail to TT Global; correct?
15   A. That would be correct, to the best of my
16 knowledge as I sit here today.
17       MR. BUNIS: Let him finish.
18   Q. Who send that e-mail to TT Global with
19 instructions to destroy transceivers?
20       MR. BUNIS: If you know.
21   A. I don't recall specifically.
22   Q. Give me your best guess, best shot.
23       MR. BUNIS: Don't guess. You're
24 under oath.

Page 197
1  Q.  Was it you, Mr. Bartley?
2      MR. BUNIS:  He testified he didn't
3  recall who sent it.
4  Q.  He doesn't recall.  I'm trying to refresh
5  his recollection.  We'll go one by one.  No problem.
6      Was it you, Mr. Bartley?  This is an
7  incredibly critical e-mail in this case.  This
8  e-mail that was not produced -- I gave it to you.
9  It was not produced.  It is not privileged because
10 it went to TT Global.  It's not listed on any
11 privilege log.  It's in an e-mail instructing TT
12 Global to destroy exonerating evidence and to pay TT
13 Global for its instruction, correct, Mr. Bartley?
14     MR. BUNIS:  This e-mail was
15 produced.
16 Q.  You have to tell me who sent that e-mail.
17     MR. BUNIS:  What e-mail are you
18 talking about?
19     MR. JOFFE:  Mr. Bartley just
20 testified that there was e-mail sent to TT Global
21 with instructions to destroy transceivers.  You
22 missed that part, Michael.  It's on the record.
23 That's for you, but it's on the record now.
24 Mr. Bartley testified that there was an e-mail

Page 198
1  communication to TT Global with instruction to
2  destroy those transceivers.
3  Q.  And I'm asking you, who send those
4  instructions, Mr. Bartley?
5      MR. BUNIS:  Objection.  Misstates
6  his prior testimony.
7      You can answer.
8  Q.  I'm waiting for your answer, Mr. Bartley.
9  To that question, I will wait forever.
10 A.  I believe I answered the question.  I don't
11 recall who sent the communication to Mr. Ric to
12 destroy the transceivers.
13 Q.  Were you copied on that communication?
14     MR. BUNIS:  Objection.  Misstates
15 his prior testimony.
16     You can answer if you can.
17 A.  I don't recall.
18 Q.  Was Mr. Gill the author of that
19 communication or the sender -- let me strike that.
20     I'm asking you who send that communication,
21 so we'll go -- you don't recall if it was you;
22 correct?
23 A.  I don't recall at this point if it was me.
24 Q.  Could it have been you?

Page 199
1      MR. BUNIS:  Objection.  Misstates
2  his prior testimony.
3      You can answer.  Don't speculate.
4  A.  I can't speculate.  I don't recall.
5  Q.  Okay.  Well, who was in touch with Mr. Ric
6  Javed about this inspection?  Was it you,
7  Mr. Bartley?
8      MR. BUNIS:  Objection.  About this
9  inspection?
10 Q.  Mr. Bartley, we saw e-mail where you
11 communicate with Mr. Javed of TT Global about this
12 sample, photos, and information about the
13 transceivers; right?  That was you.  It wasn't
14 Mr. Gill --
15 A.  Yes.
16 Q.  -- it wasn't Mr. Ching Chua.  It wasn't
17 Ms. Jessica Liu.  It was you; true?
18 A.  Yes, that's correct.
19 Q.  So, Mr. Bartley, could you tell me -- and
20 maybe that will refresh your recollection that you
21 were the contact person.  Maybe you were the one who
22 sent the instructions to TT Global to destroy the
23 transceivers in Dubai.  Could it be that it was you?
24     MR. BUNIS:  Objection.  Asked and

Page 200
1  answered.
2      You can answer if you recall.  Don't
3  speculate.
4  A.  I don't recall.
5  Q.  All right.  Could it been -- I ask you
6  about -- oh, you didn't tell me.
7      Could it be David Gill?
8      MR. BUNIS:  Objection.
9      You can answer the question.
10 A.  I don't recall.
11 Q.  Mr. Bartley, would you just agree with me
12 in general that if somebody tells another person to
13 destroy evidence in a pending criminal case, that
14 would be a crime; no?
15     MR. BUNIS:  Objection.  Calls for
16 a legal conclusion.  The witness is not competent to
17 testify about what constitutes a crime or not.
18 Q.  As a layman -- as a layman -- as a layman,
19 would you agree with me that deliberately destroying
20 material evidence in a criminal investigation is
21 itself a crime?  Do you agree with me?
22     MR. BUNIS:  Objection.  Calls for
23 a legal conclusion.  The witness is not competent to
24 testify about that.

