# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, AND CHANGHUA NI<br><br>            Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, AND DAVID GILL,<br><br>            Defendants. | Civil Action No. 1:16-CV-10386 (LTS) |

## MEMORANDUM OF LAW IN SUPPORT OF OVERSEAS PLAINTIFFS' MOTION FOR REMOTE RULE 35 MEDICAL EXAMINATIONS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ........................................................................................ 2

      A.     The Court's Order for In-Person Examinations......................................2

      B.     The State of Telemedicine Before and During the Pandemic................8

LEGAL STANDARD ............................................................................... 9

ARGUMENT ............................................................................................ 9

I.     This Court Should Exercise its Discretion to Amend the Portion of its Opinion Requiring In-Person Rule 35 Medical Examinations. ........................................ 9

      A.     Plaintiffs Have Shown Good Cause For Why They May Not Be Able Travel to the United States.......................................................................9

      B.     Defendants Will Suffer No Prejudice if Required to Examine the Overseas Plaintiffs' Remotely. .................................................................12

CONCLUSION.......................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Burress v. G&G Trucking, LLC*,
2020 WL 5849861 (W.D. Wis. Oct. 1, 2020) ............................................................. 10, 11, 14

*Cook v. Berryhill, Civil Action*,
No. 17-cv-11764-IT, 2020 U.S. Dist. LEXIS 213209 (D. Mass. Nov. 16, 2020) ................... 10

*Daly v. Delta Airlines Inc.*,
1991 U.S. Dist. LEXIS 2762 (S.D.N.Y. Mar. 7, 1991) ........................................................... 14

*Doe v. Karadzic*,
1997 WL 45515 (S.D.N.Y. Feb. 4, 1997) ................................................................................ 10

*Jahr v. IU Intern Corp.*,
109 F.R.D. 429 (M.D.N.C. 1986) ............................................................................................ 13

*O'Connell v. Hyatt Hotels of Puerto Rico*,
357 F.3d 152 (1st Cir. 2004) .............................................................................................. 9, 11

*Pedersen v. Fairpoint Communs., Inc.*,
No. 2:17-cv-00389-GZS, 2018 U.S. Dist. LEXIS 38751 (D. Me. Mar. 9, 2018) ................... 12

*Pub. Works Supply Co. v. Soleno, Inc.*,
No. 07-11973-MBB, 2008 U.S. Dist. LEXIS 138224 (D. Mass. May 22, 2008) ................... 10

*Rehau, Inc. v. Colortech*,
145 F.R.D. 444 (W.D.Mich. 1993) .......................................................................................... 13

*Stammler v. Jetblue Airways Corp.*,
2017 U.S. Dist. 168054 (D. Mass. Apr. 21, 2017) ................................................................. 14

*Stockfood Am., Inc. v. Pearson Educ., Inc.*,
No. 2:12-cv-124-JAW, 2012 U.S. Dist. LEXIS 169503 (D. Me. Nov. 29, 2012) .................. 13

*Swenson v. Geico Cas. Co.*,
336 F.R.D. 206 (D. Nev. 2020) ............................................................................................... 10

## **Rules / Statutes**

42 CFR 71.20 ........................................................................................................................... 7

42 CFR 71.31(b) ...................................................................................................................... 7

42 U.S.C. § 264, *et seq.* .......................................................................................................... 7

Fed. R. Civ. P. 16 ................................................................................................................ 12

Fed. R. Civ. P. 16(b) .......................................................................................................... 11

Fed. R. Civ. P. 16(b)(4) ....................................................................................................... 1

Fed. R. Civ. Proc. 1 ........................................................................................................... 10

Section 361 of the Public Health Service Act 42 U.S.C. § 264, *et seq.*, and 42 CFR 71.20
& 71.31(b) ........................................................................................................................ 7

## <u>Other Authorities</u>

"Requirement for Negative Pre-Departure COVID-19 Test or Documentation of
Recovery from COVID-19 for All Airline or Other Aircraft Passengers Arriving into
the United States from Any Foreign Country," available at
https://www.cdc.gov/quarantine/pdf/Global-Airline-Testing-Order-RPWSigned-
Encrypted-p.pdf ............................................................................................................... 7

White House Proclamation on Suspension of Entry as Immigrants and Non-immigrants
of Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus, dated January
31, 2020 ............................................................................................................................ 4

Pursuant to Federal Rule of Civil Procedure 16(b)(4), Plaintiffs Jason Yuyi and Cathy Yu (the "Overseas Plaintiffs"), through their undersigned counsel, respectfully ask the Court to exercise its discretion to eliminate the provision in the Amended Scheduling Order requiring them to appear in the United States for their Rule 35 medical examinations..

## PRELIMINARY STATEMENT

The Overseas Plaintiffs applied for visas to travel to the United States to attend their Rule 35 medical examinations months ago, but to no avail.  Global COVID travel restrictions and processing delays have prevented Mr. Yuyi and Ms. Yu from traveling to and appearing in this District for in-person examinations.  As a matter of law, at this time, they are not permitted to travel to this district for their examinations.  As a result, they asked Defendants to consent to remote medical examinations.  Defendants refused to consent.  The Overseas Plaintiffs therefore seek permission to participate in their medical examinations remotely.  The Court should amend its scheduling order and permit remote Rule 35 examinations because the Overseas Plaintiffs have diligently attempted to gain entry to the United States, they are willing to submit to in-person medical examinations as soon as the law allows them to do so, and Plaintiffs will suffer severe prejudice if their case is compromised simply because they are complying with existing law.

*First*, the Overseas Plaintiffs have good cause to request remote examinations, because their inability to appear in this District is no fault of their own.  The Amended Scheduling Order requires them to obtain an entry visa from a U.S. Embassy and an exit visa from the Chinese authorities (neither of which they have been able to secure despite filing their application months ago) and then make the journey through China, stopping in a layover country for 14 days, all without testing positive for COVID-19.  The first part of this requirement ends the inquiry, because, as a matter of law, the Overseas Plaintiffs are not currently allowed to travel to the United States. The last part of the above travel requirements is also important, because testing positive for

1

COVID-19 on the last leg of their trip to the United States would force the Overseas Plaintiffs to return home and start the process all over again.  With more contagious strains of the virus currently circulating the globe and new restrictions being implemented on a daily and weekly basis, there is no way to be certain that Overseas Plaintiffs will be able to reach the United States for examination by April 1, 2020, as mandated by the Amended Scheduling Order.

*Second*, if the Overseas Plaintiffs are unable to travel to the United States for their examinations, both sides will be in the same exact position.  Plaintiffs' medical expert disclosures will be based on remote examinations, and so will the Defendants' disclosures.  Thus, there is no risk of prejudice to the Defendants.  Moreover, remote medical examinations, which have become the norm in the pandemic for litigants and everyone else, have proven to be as diagnostically effective as in-person examinations.  Defendants can cite no law, scientific journal, or medical authority to justify forcing the Overseas Plaintiffs to violate the law and risk their lives when remote examinations are capable of serving the purposes of Rule 35.  This is especially so when the Overseas Plaintiffs are willing to travel to in-person examinations as soon as the law allows them to do so, which will almost certainly occur before the trial in this case.

Plaintiffs Yuyi and Yu therefore respectfully ask this Court to grant them relief from the Court's Amended Scheduling Order, and to permit the Rule 35 examinations to proceed remotely.

## BACKGROUND

### A.    The Court's Order for In-Person Examinations.

The Overseas Plaintiffs seek compensation for physical pain, illness, emotional distress and psychological injuries, each caused by the Defendants' failure to clear their names and secure their release from the harsh conditions of the Haidian Detention Center.  Specifically,  Mr. Yuyi alleges that he suffered and continues to suffer from, *inter alia*, pain in his back and legs, joint pains in his feet, back, and knees, beriberi, weight loss, sleep deprivation, anxiety and depression.

(*See* Ex. A, J. Yuyi's Responses to Defendants' First Set of Interrogatories at 2.)[1]  Ms. Yu alleges many of the same conditions, and also that she experienced "pelvic inflammatory disease . . . due to the fact that I stayed at a cold and damp place for too long, and because of this, I actually had to go through [gynecological] surgery." (Ex. B,  C. Yu Tr. at 108:12-109:1.)

      To test the credibility of these claims, on August 27, 2020, Defendants requested in-person Rule 35 medical examinations of the Overseas Plaintiffs.  (*See* Dkt. No. 371, the "Status Report.") Even while agreeing to depose Mr. Yuyi and Ms. Yu remotely due to the pandemic, Defendants insisted that these residents of mainland China travel to the United States to "submit themselves to appropriate medical and psychological examinations that must be conducted in-person." (*Id.* at 6–7.)   According to the Status Report, the Court's failure to order face-to-face medical examinations would deprive the Defendants' experts "of the ability to effectively and accurately observe diagnose and analyze Plaintiffs' damages allegations."  (*Id.* at 8–9.)  Without citing any authority dealing with telemedicine or the extenuating circumstances of the pandemic, Defendants claimed that an expert in physical injuries conducting video examinations would not be able "to determine whether [Mr. Yuyi and Ms. Yu] actually exhibit any of the conditions of which they complain." (*Id.* at 8.)  Likewise, Defendants took the position that any psychological examinations would have to "be conducted in-person so as to allow the expert to examine the Plaintiffs' body language and other physical responses and characteristics."  (*Id.*)

      Defendants' Status Report further assured the Court that in-person exams would not impose a significant burden on the Overseas Plaintiffs; nor would an order requiring travel to the United States risk forfeiture of Mr. Yuyi's and Ms. Yu's claims.  (*Id.* at 7 ("Yu and Yuyi are

---

     [1]   All exhibits referenced herein are those appended to the Declaration of Luke Nikas, filed alongside this motion.

permitted to travel to the United States . . . .").)  While acknowledging that as of August 27, 2020, there was an Executive Order in place barring Chinese citizens from travelling to the United States from China, Defendants explained that "[c]urrent U.S. travel restrictions only apply to persons 'physically present within the People's Republic of China ... during the 14-day period preceding their entry into the United States.'"  (*Id.* at 7 (quoting Ex. C, White House Proclamation on Suspension of Entry as Immigrants and Non-immigrants of Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus, dated January 31, 2020) (the "No Entry Order")). Therefore, Defendants reasoned, the Overseas Plaintiffs were free "to travel to the United States if they first travel to another interim location for fourteen days, from which they may then travel directly to the United States."  (Status Report, at 7.)

On August 28, 2020, the Court entered a scheduling order permitting remote depositions, but took no position as to the location of the Rule 35 examinations, or whether such examinations were necessary.  (Dkt. No. 372.)  Nonetheless, the Overseas Plaintiffs prepared for the possibility that they would have to travel to the United States and submitted applications for visas to the U.S. Embassy in China in November of 2020.  (*See* Ex. D, Visa Application Confirmations for J. Yuyi and C. Yu, dated November 6, 2020).  More than two months later, the U.S. Embassy reports "no appointment[s] scheduled" for the Overseas Plaintiffs' visa interviews.  (Ex. E, Visa Application Status Pages for J. Yuyi and C. Yu (last visited Jan. 23, 2021).)

Four months after the Defendants' request for in-person examinations, on December 28, 2020, the Court granted the parties' Joint and Unopposed Motion to Amend the Scheduling Order. (Dkt. No. 447, Amended Scheduling Order.)  The new, agreed-upon schedule states that Rule 35 medical examinations must be completed by April 1, 2021, but does not state where and how such examinations must take place.  (*See* Dkt. No 439, Proposed Order, at 1.)  Nonetheless, relying on

4

the representations made in the Defendants' August 27, 2020 Status Report—the only arguments put forward to date for why Mr. Yuyi and Ms. Yu must travel during a pandemic to maintain their claims against the Defendants—the Court ruled that "the Rule 35 examinations will occur in the United States." (Amended Scheduling Order at 5.) The Court reasoned that "Plaintiffs brought this case; they bear responsibility for making the necessary arrangements, including complying with all Coronavirus-related restrictions to come to the United States for these examinations." (*Id.*) Accordingly, as of the date of the Amended Scheduling Order, the Court did not "anticipate viewing the pandemic as a basis for extending or excusing Rule 35 compliance, as Plaintiffs have had months already to make the necessary arrangements and the revised schedule provides ample time even given the pandemic." (*Id.*)

### A. Mr. Yuyi and Ms. Yu Cannot Guarantee Passage to the United States Under Current Travel Restrictions.

When combined with the operation of state, federal, Chinese, and other international travel restrictions enacted in response to the ongoing COVID-19 pandemic—to say nothing of new restrictions that may be enacted after this writing—the Amended Scheduling Order significantly increases the chances that the Overseas Plaintiffs will be stripped of their right to be heard in this case. Critically, the core assumption of the Court's order—that Plaintiffs would be able to make the necessary legal arrangements to travel to the United States—has, so far, turned out to be mistaken.

*First*, the No Entry Order severely reduces the chances that the Overseas Plaintiffs will obtain the visa from the U.S. Embassy to travel from China to the United States. Visa interviews are not readily available, and processing times are extremely delayed, as evidenced by the lack of progress on the Overseas' Plaintiffs pending applications. Even if Mr. Yuyi and Ms. Yu were to abandon their current visa applications with the U.S. Embassy in China and instead travel to

another country to seek visas there, visa processing in layover countries that Chinese citizens can travel to is currently estimated to take anywhere from up 999 days, subject to change without notice, for both epidemiological and political reasons.[2]  To secure a visa in a layover country, Mr. Yuyi and Ms. Yu would have to fly there, quarantine there for two weeks, make an appointment at the local U.S. Embassy, be granted an interview, and have their visa applications  approved there.  If the entry visa process took as long in the layover country as it has so far in China, then the Overseas Plaintiffs would not reach the United States before the April 1, 2021 deadline.  The speed or success of the entry visa process is not only unpredictable; it is entirely out of Mr. Yuyi and Ms. Yu's control.

**Second**, the U.S. entry visa is not the only government document that the Overseas Plaintiffs need to make the trip; they must also obtain exit visas from the Chinese government. Since November 21, 2020, the National Immigration Administration of China ("NIA), has suspended or halted passport processing for Chinese citizens at 46 land ports and 66 border crossings in its efforts to stop the spread of the virus.[3]  Additionally, Chinese border officials are now instructed to strictly scrutinize their own citizens' applications for entry-exit documents in

---

[2] *See* Ex. F, *Visa Appointment Wait Times*, U.S. DEPARTMENT OF STATE BUREAU OF CONSULAR AFFAIRS (last visited Jan. 13, 2021), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/wait-times.html.  For example, the wait times for visa interviews for foreign nationals seeking to enter the United States in Mexico City and Istanbul are 999 days; in Dubai, Lisbon, Kinshasa, and Moscow, interviews are only granted on an Emergencies Only basis.  Emergencies are defined by the State Department as those reflecting medical need, travel for a funeral or death, educational students visas, or urgent business travel.  Urgent business travel is categorized as that which is unpredictable and which will negatively impact a U.S. based business.  *See* Ex. G *Apply for Expedited Visa Processing*, APPLY FOR A U.S. VISA IN CHINA (last visited Jan. 13, 2021), https://www.ustraveldocs.com/cn/cn-niv-expeditedappointment.asp.  Because Mr. Yuyi and Ms. Yu are Chinese individuals and not U.S.-based businesses, a potential trip in support of their legal claims would not constitute business travel.

[3] *See* Ex. H, *Strict Control of Port Passages and Strict Management of Border Areas,* NATIONAL IMMIGRATION ADMINISTRATION (Nov. 12, 2020).

order to limit non-essential travel, a category that ***includes*** foreign litigation proceedings.[4] Mr. Yuyi and Ms. Yu could very well begin this process only to be turned around at a Chinese border or airport and sent home.

    ***Finally***, on January 26, 2021, pursuant to its authority under Section 361 of the Public Health Service Act, 42 U.S.C. § 264, *et seq.*, and 42 CFR 71.20 & 71.31(b), the Center for Disease Control and Prevention entered an order prohibiting entry to the United States for any aircraft passenger "from any foreign country unless the passenger: (1) has a negative pre-departure test result for SARS-CoV-2, the virus that causes COVID-19 (Qualifying Test); or (2) written or electronic documentation of recovery from COVID-19."  (Ex. I, "Requirement for Negative Pre-Departure COVID-19 Test or Documentation of Recovery from COVID-19 for All Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign Country," available at [https://www.cdc.gov/quarantine/pdf/Global-Airline-Testing-Order-RPWSigned-Encrypted-p.pdf](https://www.cdc.gov/quarantine/pdf/Global-Airline-Testing-Order-RPWSigned-Encrypted-p.pdf) (last visited Jan. 29, 2021) (the "Negative Test Order").)  Because neither of the Overseas Plaintiffs has contracted COVID-19, each must present "documentation of a negative COVID-19 test taken within the 3 days preceding a flight's departure [to the United States]" (*Id.* at  3)— meaning they must pass a test taken some time after they have traveled internationally to the layover country, exposing themselves to countless risks of infection.  Failure to comply with the Negative Test Order could subject the Overseas Plaintiffs to criminal prosecution if they were finally able to reach the United States.  (*Id.* at 9.)

    Mr. Yuyi and Ms. Yu's travel prohibitions, compounded by the newly enacted Negative Test Order, are directly contrary to the circumstances Defendants represented in the August 27, 2020 Status Report and directly contrary to the assumptions underpinning the Court's December

---

[4] *See id.*

28, 2020 Order.  The Court's December 28 Amended Scheduling Order materially reduces the chance that Mr. Yuyi and Ms. Yu will be able to prosecute their case, through absolutely no fault of their own, solely as a result of their obligation to comply with United States and Chinese law. They should, therefore, be permitted to submit to Rule 35 medical examinations via videoconference.  Any other result would simply punish the Overseas Plaintiffs for following the law.

### B.   The State of Telemedicine Before and During the Pandemic.

Telemedicine was considered scientifically effective long before this crisis militated the need for remote evaluation,[5] and its use and effectiveness has rapidly progressed and proliferated since the COVID-19 pandemic began.  Doctors conduct thousands of telemedicine video conferences each day for diagnosing very serious physical conditions and conducting accurate psychological evaluation.  They are able to maintain eye contact and evaluate patient reactions by video.  They are able to remotely evaluate their patients' physical pain and muscular joint issues.[6] Their patients can use remote technology to confirm their vitals.  There are no studies that show statistically significant differences in telehealth's diagnostic effectiveness for the types of injuries

---

[5]   "A 2008 meta-analysis of 92 studies, for example, found that the differences between Internet-based therapy and face-to-face were not statistically significant." Ex. J, Novotney, Amy, *A New Emphasis on Telehealth*, 42 MONITOR ON PSYCHOLOGY 40 (2011), https://www.apa.org/monitor/2011/06/telehealth.

[6]   Ex. K, Laskowski E., Johnson, S Shelrud, R. et al., The Telemedicine Musculoskeletal Examination, 95 Mayo Clinc. Proc. 1559, (2020), https://ncbi.nlm.nih.gov/pmc/articles/PMC7395661/ (discussing the prevalence and how-tos for conducting virtual musculoskeletal examinations).

Mr. Yuyi and Ms. Yu suffer from.[7]  The COVID-19 pandemic has created a new heath care landscape characterized by telemedicine.[8]  Virtual medical care is the new normal.

## LEGAL STANDARD

The court may extend or amend a scheduling order deadline on a showing "of good cause if the [deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004).  The "good cause" standard focuses on the diligence of the party seeking the extension; therefore, "[p]rejudice to the opposing party remains relevant but is not the dominant criterion."  *Id.* at 154.

## ARGUMENT

I. **THIS COURT SHOULD EXERCISE ITS DISCRETION TO AMEND THE PORTION OF ITS OPINION REQUIRING IN-PERSON RULE 35 MEDICAL EXAMINATIONS.**

A. **Plaintiffs Have Shown Good Cause For Why They May Not Be Able Travel to the United States.**

The travel restrictions caused by COVID-19 constitute good cause to conduct independent medical examinations via video.  The Court should examine a broad range of considerations when evaluating plaintiffs' claims of undue hardship, and none can be more salient than the historic pandemic that continues to affect every aspect of daily life around the globe.  The indefinite travel delays imposed by law, which is entirely outside the control of the Overseas Plaintiffs, constitute

---

[7] "Telehealth is essentially just as effective as face-to-face psychotherapy."  Ex. L, Greenbaum, Zara, How Well is Telepsychology Working?, 51 MONITOR ON PSYCHOLOGY 46 (2020), https://www.apa.org/monitor/2020/07/cover-telepsychology.

[8] "A McKinsey & Co. report estimated that physicians saw between 50 and 175 times more patients via telehealth than they did prior to the pandemic."  Ex. M, Zarefsky, Marc, *5 Huge Ways the Pandemic Has Changed Telemedicine,* AMERICAN MEDICAL ASSOCIATION (Aug. 26, 2020), https://www.ama-assn.org/practice-management/digital/5-huge-ways-pandemic-has-changed-telemedicine.

good cause for this Court to amend its order to permit remote examinations under Rule 35. Plaintiffs are *not* asking for any changes to dates set forth in the Order.

Even before COVID-19, courts found that international barriers to travel, safety threats like those faced by Mr. Yuyi and Ms. Yu, and the inconvenience of travel justified remote proceedings. For example, the Southern District of New York considered the safety of the proposed venue and a party's potential ability to travel to that venue as grounds for moving the location of a deposition. *See Doe v. Karadzic*, 1997 WL 45515, at *4 (S.D.N.Y. Feb. 4, 1997) (changing the default location of depositions because of safety concerns about traveling to Yugoslavia yet recognizing that the court would reconsider the order if the plaintiff was unable to acquire a visa to travel to the United States from Yugoslavia). This Court has established that it "has the discretion to determine the appropriate location for a deposition" and can factor in a wide range of considerations, including whether "the time, expense, and inconvenience of travel present[] a special hardship for the deponent." *Pub. Works Supply Co. v. Soleno, Inc.,* No. 07-11973-MBB, 2008 U.S. Dist. LEXIS 138224, at *2 (D. Mass. May 22, 2008) (internal citations omitted) (allowing depositions to occur internationally rather than in Massachusetts because it posed hardship for those deposed to travel during a busy work season).

COVID-19 belongs among this range of considerations that may justify remote examinations, because the Federal Rules are to be construed in such a way that increases litigants' access to justice. *See, e.g., Swenson v. Geico Cas. Co.,* 336 F.R.D. 206 (D. Nev. 2020) (scheduling remote depositions because, "as with the Federal Rules of Civil Procedure more generally, courts are mindful to construe Rule 30(b)(4) in a manner that secures the just, speedy, and inexpensive determination of the case.") (citing Fed. R. Civ. Proc. 1); *see also Cook v. Berryhill*, Civil Action No. 17-cv-11764-IT, 2020 U.S. Dist. LEXIS 213209, at *7 (D. Mass. Nov. 16, 2020) ("the Federal

Rules should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). And courts have, in fact, held that the COVID-19 pandemic constitutes good cause for conducting Rule 35 medical examinations remotely, even where plaintiffs were already in the United States and thus did not need navigate an evolving web of international travel restrictions. For instance, in *Burress v. G&G Trucking, LLC*, 2020 WL 5849861, (W.D. Wis. Oct. 1, 2020), the defendants requested that the plaintiff submit to an in-person medical examination to verify his alleged shoulder injury. The plaintiff refused "because of his concerns over COVID-19," which the district court recognized as "good cause." *Id.* at *2. The court in *Burress* ruled that the risk posed by the pandemic outweighed the defendant's preference for an in-person medical examination. Even without the added legal restrictions of international travel, COVID-19 alone constituted good cause for remote medical examinations given the quality of today's technology. *See id*. It reached that conclusion in part because the requesting party had offered "no evidence that a remote examination would be inadequate" and relied "only [on] [its] attorney's unsworn assertion." *Id.*

The same logic applies here, and with greater force. Mr. Yuyi and Ms. Yu face a higher risk of contracting the virus, as well as unavoidable legal prohibitions on travel that were not applicable to the plaintiff in *Burress.* Good cause exists here under Fed. R. Civ. Pr. 16(b) because the hurdles, hardship, and outright barriers to traveling to the United States occurred through no fault of their own, and Mr. Yuyi and Ms. Yu should not be penalized for bringing their case in Massachusetts years before this pandemic or for U.S. and Chinese laws that currently prevent their travel. Indeed, even this forum, the United State District Court for the District of Massachusetts, has been closed indefinitely to non-emergency in-person hearings. *See* District Court Standing

Order 2-20: Court Operations Under the Exigent Circumstances Created by COVID-19 (March 17, 2020).[9]

The First Circuit has also recognized good cause where a condition of the Scheduling Order cannot "reasonably be met despite the diligence of the party seeking the extension."  *O'Connell v. Hyatt Hotels*, 357 F.3d at 153.  Mr. Yuyi and Ms. Yu have been diligent in attempting the immigration process, arranging for childcare for their daughter, and applying for visas from the U.S. Embassy in China.  (*See* Ex. C.)  And given the duration and legal burdens of the immigration process for Chinese citizens, it now appears likely that their efforts will prove fruitless.  There is simply no way to guarantee Mr. Yuyi and Ms. Yu's will be legally permitted to travel to the United States for an in-person examination before April 1, and neither Mr. Yuyi nor Ms. Yu's actions have contributed to the need to request relief from the Court in this motion.

### B.      Defendants Will Suffer No Prejudice if Required to Examine the Overseas Plaintiffs' Remotely.

Although prejudice to the non-moving party may weigh against amending the scheduling order under Rule 16, it is not a dispositive factor.  Moreover, whatever role prejudice may play in the analysis, the party claiming prejudice bears the burden of making a particularized, non-conclusory showing sufficient to overcome a showing of good cause for relief.  In *Pedersen v. Fairpoint Communs., Inc*., the District Court of Maine found that unsupported claims of prejudice were an insufficient basis to deny a motion to amend a complaint, outweighed by even a "relatively weak showing of diligence" or "marginal showing of good cause."  No. 2:17-cv-00389-GZS, 2018 U.S. Dist. LEXIS 38751, at *11-13 (D. Me. Mar. 9, 2018).  In that case, plaintiff filed to amend soon after the court-ordered deadline despite having years to do so, which the court characterized

---

[9]   Ex. L "Massachusetts courts will be closed to the public except to conduct emergency hearings that cannot be resolved through a videoconference or telephonic hearing."

as "weak diligence." *Id.* at 13.  Nonetheless, Defendants failed to provide a basis for their claim of prejudice; they still had plenty of time left in discovery, and any minor delays could be remedied by modest adjustments to remaining scheduling deadlines.

Here, the Overseas Plaintiffs have undertaken even greater efforts to comply with the scheduling order than the plaintiffs who obtained relief in *Pedersen*, and the Defendants here have shown even less in the way of prejudice.  The Overseas Plaintiffs made meaningful attempts to comply with the Amended Scheduling Order and have been thwarted by legal travel barriers outside their control.  They have not missed a deadline; rather, they ask for relief months before the Court's April 1 deadline to ensure this issue is addressed in a timely manner without prejudice to any party and without the need to extend the dates in the Amended Scheduling Order.

Conversely, Defendants have shown no meaningful prejudice, because they have provided no support for their claim that remote examinations are insufficient, that such examinations would meaningfully delay or harm their case, or that they alone are disadvantaged by remote examinations.  Unsupported claims of prejudice are outweighed by even marginal showings of good cause and due diligence.  *See id; See also Stockfood Am., Inc. v. Pearson Educ., Inc.,* No. 2:12-cv-124-JAW, 2012 U.S. Dist. LEXIS 169503, at *26 (D. Me. Nov. 29, 2012) (granting leave to amend a complaint because defendant summarily claimed prejudice without explaining its basis, failing to fulfill its "burden of showing prejudice"); *Jahr v. IU Intern Corp.*, 109 F.R.D. 429 (M.D.N.C. 1986) (placing the burden on the party opposing telephonic deposition after a showing of legitimate reasons for taking a deposition telephonically); *Rehau, Inc. v. Colortech,* 145 F.R.D. 444 (W.D.Mich. 1993) (approving of telephonic depositions and requiring the party opposing to come forward with a particularized showing why that party would be prejudiced thereby).

Defendants' contention that telemedicine is inferior or insufficient is conclusory, baseless, and contrary to the opinion of the medical community.  There is no support for Defendants' claim that employing an American doctor of their choosing to evaluate Mr. Yuyi and Ms. Yu would "handicap" Defendants in any way.  (Status Report, at 7.)   If the Court amends its order, Defendants can still use the medical examiner of their choice, employing the wealth of telemedical technology used by nearly half of physicians.[10]  Physicians *and* psychologists have definitively established the sufficiency of telemedicine.  Even before COVID-19, remote diagnostics were trusted for use in forensic psychology to establish criminal defendants' competency to stand trial, "providing essentially the same information gathered via a face-to-face interview."[11]  Accordingly, Defendants have no scientific or factual grounds for opposing Plaintiff's motion for remote medical examinations.  *See Burress* 2020 U.S. Dist. LEXIS 182019, at *6 (allowing tele-examination where Defendants failed to provide scientific evidence undermining the effectiveness of remote physical examinations).[12]

---

[10] *See* Ex. M, Landi, Heather, *Half of Physicians Now Using Telehealth as COVID-19 Changes Practice Operations*, FIERCE HEALTHCARE (Apr. 23, 2020), https://www.fiercehealthcare.com/practices/half-physicians-now-using-telehealth-as-covid-changes-practice-operations.

[11]  Ex N, Sales, Christian, *The Use of Telepsychiatry Within Forensic Practice: A Literature Review on the Use of Videolink - A Ten Year Follow Up*, 29 THE JOURNAL OF FORENSIC PSYCHIATRY & PSYCHOLOGY 387, 394 (Aug. 2017).

[12]  The cases Defendants cited in their Status Report further demonstrate that remote examinations need not be conducted in Massachusetts. (Dkt. No. 371, at 7–9.)  In *Stammler v. Jetblue Airways Corp.*, this Court did *not* order an in-person deposition*,* but instead ordered the parties to discuss remote depositions, recognizing the plaintiff's undue hardship if forced to travel to Massachusetts.  *See* 2017 U.S. Dist. 168054, at *2 (D. Mass. Apr. 21, 2017).  And in *Daly v. Delta Airlines Inc.*, 1991 U.S. Dist. LEXIS 2762 (S.D.N.Y. Mar. 7, 1991), plaintiff's motion for a remote deposition was denied, not on the merits, but because plaintiffs had failed to provide evidence that travel would be unduly burdensome.  *See id.* at *3 ("if the plaintiff demonstrated substantial hardship in having to travel to New York, the court would seriously entertain the prospect of a telephone deposition").  Defendants cited no cases where a party was asked to forfeit

12

Furthermore, Defendants' statement that telemedical evaluation would be complicated by the need for translation services is conclusory and wrong.  (*See* Status Report, at 9.)  There is no evidence that a translator would hinder a remotely conducted medical examination as compared to an in-person examination.  Plaintiffs would require translators even if they were to travel to the United States and submit to the examination in person.  And Defendants have agreed to conduct remote depositions even though Mr. Yuyi and Ms. Yu's depositions require translation services.

Finally, Defendants will not be prejudiced as a result of the Overseas Plaintiffs' raising this request now.  As an initial matter, there was no order requiring travel to the United States for the Rule 35 examinations until the end of last month, and neither the Court nor the Defendants raised the prospect of in-person medical examinations in the parties' conferences with the Court last month.  So the Overseas Plaintiffs have exceeded the diligence that could reasonably be required of them in these circumstances, yet they are legally prohibited from traveling to the district at this time.  Furthermore, because the deadline for these medical exams is still nearly two months away, Defendants have yet to disclose their proposed examiners and thus have yet to incur costs connected to in-person examinations.[13]  And when Defendants do conduct remote medical examinations, they will not be disadvantaged because Plaintiffs must do the same.

Unless the U.S. and Chinese travel laws change immediately, which we do not foresee, this Court's order would cause an inequitable result:  it would compromise or eliminate the Overseas Plaintiffs' claims simply because they are following the law.  Because, by contrast, the Defendants will suffer no prejudice if the Court modifies the Amended Scheduling Order, the Court should permit the medical exams of Mr. Yuyi and Miss Yu to occur remotely.

---

its claims for damages due to a party's demonstrated inability to travel or showing of compelling hardship if ordered to travel.

[13]  *See* Landi, *supra* note 12.

## **CONCLUSION**

Plaintiffs respectfully submit the above motion for the Court's consideration and request that the Court enter the attached proposed order allowing for remote Rule 35 Medical Examinations.

Dated:  New York, New York
        January 29, 2020

<div style="margin-left:40%">

QUINN EMANUEL URQUHART &
SULLIVAN LLP

By: */s/ Luke Nikas*_____

Luke Nikas
Alex Spiro
Alex S. Zuckerman
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

*Attorneys for Plaintiffs*

</div>

16

## **Local Rule 7.1(a)(2) Certification**

        I, Luke Nikas, Attorney for Plaintiffs Alexander Styller, Integrated Communications & Technologies, Inc., Jade Cheng, Jason Yuyi, Cathy Yu, Carolina Marafao Cheng, Pushun Cheng, Changzhein Ni, JunFang Yu, Meixiang Cheng, Fangshou Yu, and Changhua Ni hereby certify that on December 30, 2020, and January 28, 2021, I communicated Defendants' counsel in a good faith attempt to confer regarding the issues raised in this Motion.  On January 7, 2021 Defendants' counsel Paul Saso informed me that "Defendants are unwilling to stipulate to allowing [the Overseas Plaintiffs] to submit to remote medical examinations via Zoom, and will oppose any application in that regard."  On January 29, 2021, Mr. Saso affirmed that position.  The parties are thus at an impasse.

## **CERTIFICATE OF SERVICE**

I, Luke Nikas, hereby certify that on this 29th day of January 2021, I caused a copy of the Overseas Plaintiffs' Motion for Remote Rule 35 Medical Examinations to be served by ECF upon Defendants' counsel of record.

*/s/ Luke Nikas*

_____

Luke Nikas

18