UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER STYLLER, INTEGRATED COMMUNICATIONS & TECHNOLOGIES, INC., JADE CHENG, JASON YUYI, CATHY YU, CAROLINE MARAFAO CHENG, PUSHUN CHENG, CHANGZHEN NI, JUNFANG YU, MEIXIANG CHENG, FANGSHOU YU, and CHANGHUA NI,<br><br>Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD FINANCIAL SERVICES COMPANY, HEWLETT-PACKARD FINANCIAL SERVICES (INDIA) PRIVATE LIMITED, HP INC., HEWLETT PACKARD ENTERPRISE COMPANY, and DAVID GILL<br><br>Defendants. | Civil Action No. 1:16-CV-10386 (LTS) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE AND PRECLUDE PLAINTIFFS' UNTIMELY DOCUMENT PRODUCTIONS**

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ............................................................................................................................... 6

I.  PLAINTIFFS' UNTIMELY DOCUMENT PRODUCTIONS ARE UNJUSTIFIED ....... 7

II. DEFENDANTS WILL BE PREJUDICED IF THE DOCUMENTS ARE NOT PRECLUDED ................................................................................................................. 9

III. THE HISTORY OF THIS LITIGATION SUPPORTS PRECLUSION .......................... 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amoah v. McKinney*,
   No. CV 4:14-40181-TSH, 2016 WL 6134119 (D. Mass. Sept. 2, 2016),
   subsequently aff'd, 875 F.3d 60 (1st Cir. 2017) ...........................................................................6

*AVX Corp. v. Cabot Corp.*,
   251 F.R.D. 70 (D. Mass. 2008) ....................................................................................................7

*Cavanagh v. Taranto*,
   95 F. Supp. 3d 220 (D. Mass. 2015) ............................................................................................7

*Harriman v. Hancock Cnty.*,
   627 F.3d 22 (1st Cir. 2010) ................................................................................................7, 9, 10

*Macaulay v. Anas*,
   321 F.3d 45 (1st Cir. 2003) ..........................................................................................................7

*Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R.*,
   248 F.3d 29 (1st Cir. 2001) ..........................................................................................................6

*Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*,
   295 F.3d 108 (1st Cir. 2002) ........................................................................................................7

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................................6

Fed. R. Civ. P. 37(c)(1) .......................................................................................................................6

Defendants submit this memorandum of law and Declaration of Paul A. Saso ("Saso Decl."), dated September 14, 2021, in support of their motion to strike and preclude untimely produced evidence that Plaintiffs purported to rely on in their Opposition and Sur-reply to Defendants' Motion for Summary Judgment (the "Opposition" and "Sur-Reply," respectively).

## PRELIMINARY STATEMENT

Years after the close of document discovery, and without seeking leave of Court, Plaintiffs attempted to produce 655 pages of documents. Having ignored the Court's imposed (and the parties' agreed) scheduling deadlines, and having remained silent in response to Defendants' letter rejecting these belated productions, Plaintiffs proceed to rely heavily on several of these untimely produced documents in their Opposition, and again in their Sur-reply.

Specifically, Plaintiffs rely upon, *inter alia*, Chinese attorney Ma Li's Affidavit in an attempt to authenticate and admit into evidence what Ma Li claims to be photographs of some of the files created or maintained by the Chinese authorities during the time of the Individual Plaintiffs' arrest and detention. Plaintiffs should not be permitted to cite or rely upon such untimely produced materials, to invoke them in the face of summary judgment, to insinuate them into the record, or pretend that they are legitimate or credible evidence in a manner and at a time that would severely prejudice Defendants. Because of the schedule agreed to by Plaintiffs, and ordered by the Court (*i.e.*, the completion of documentary and deposition discovery), Defendants had no opportunity to depose Ma Li or anyone else to inquire about these documents. Indeed, when confronted with a formal rejection of their belated delivery, Plaintiffs' counsel made zero attempt to provide any justification for these unauthorized productions. Plaintiffs' disregard for

the Court's considered and deliberate deadlines warrant preclusion of these untimely produced documents, and Plaintiffs should not be permitted to rely on them in their Opposition or Sur-reply.[1]

## STATEMENT OF FACTS

This case has been litigated for over six years, and as the Court has previously stated, this action has a "tightly integrated schedule." [ECF 474 at 8.] The parties' agreed schedule provided for the close of document production on June 1, 2018. [ECF 144; ECF 145.][2] After the first round of summary judgment motions was resolved, "the Court twice confirmed that written discovery was over and that, in light of the history of the case, no further discovery could occur without Court authorization."[3] [ECF 369 at 1; ECF 372 at 3; ECF 474 at 2.]

---

[1] Plaintiffs suggest in their Sur-Reply that the Ma Li Affidavit should be considered on this motion because Defendants did not file a motion to strike it. [ECF 533 at fn. 6.] Previously, Defendants believed that such a motion would be unnecessary given that the Court has already explicitly indicated that it is disinclined to admit belatedly-produced documents and information into evidence at the summary judgment stage, and because it has previously required Plaintiffs to move to seek leave to supplement discovery. (Saso Decl., Ex. A at 11:6-13:20; 20:21-21:4). Nevertheless, out of an abundance of caution, because Plaintiffs have taken issue with the lack of a motion to strike (seeking a procedural advantage), Defendants are compelled to file such a motion.

[2] The parties did produce, and both sides accepted, certain late productions that were the result of, *inter alia*, a successful motion to compel and the late discovery of a document. (Saso Decl. ¶ 4.) For example, Plaintiffs produced additional documents as a result of Defendants' successful motion to compel [ECF 236], and Defendants produced an additional letter because it was discovered by counsel after resolution of the parties' initial motions for summary judgment. Although Plaintiffs originally filed, but later withdrew, a motion to compel production of metadata concerning that letter (the Final April 2013 Letter), they never rejected Defendants' production of that letter. (Saso Decl. ¶ 5.)

Unlike Plaintiffs' late productions, when Defendants made their supplemental and final production of the Final April 2013 Letter on September 30, 2020, they did so with full explanation and justification, and with zero prejudice to Plaintiffs. As previously attested, after resolution of the parties' prior motions for summary judgment, Defendants discovered that the final version of the letter had inadvertently not been produced. (Saso Decl. ¶ 6.) They disclosed this and produced the Final April 2013 Letter weeks in advance of the first deposition of a defense witness—J.T. Silvestri—on October 21, 2020. Plaintiffs had ample opportunity to question any defense witness about that document, and did. (*Id.* ¶ 7.)

[3] During the February 10, 2021 Status Conference, the Court reiterated that "paper discovery was over." (Saso Decl. Ex. A at 5:10-11.) Specifically, the Court stated that: "When we were done with paper discovery, there was going to be summary judgment…. That was the proposal. That was the plan. That was what was executed. That was what was memorialized unambiguously be me in writing, the orders that I issued in the summer of 2020 [ECF 372], which made clear that paper discovery was over, that all discovery was over, except discovery that the Court specifically authorized." (Saso Decl. Ex. A at 5:1-12.)

2

However, with new counsel appearing for Plaintiffs, on December 15, 2020, the parties filed a joint motion to amend the scheduling order (the "Joint Motion"). [ECF 439.] The parties jointly requested that the Court extend, *inter alia*, the close of deposition discovery to January 29, 2021. [*Id.*] On December 28, 2020, the Court allowed the Joint Motion and ordered that the schedule be revised as requested. [ECF 447.] In granting the Joint Motion, the Court stated that "[c]ounsel for the Plaintiffs represented that under no circumstances would the Plaintiffs seek a continuance in any of these deadlines. The Court accepts and relies specifically on that representation in this Order." [*Id.* at 4.]

Waiting until years after document discovery was closed, and 50 minutes after the completion of Jade Cheng's deposition on the last day set for fact witness depositions—January 29, 2021 [ECF 439-1 and 447]—Plaintiffs purported to supplement their Initial Disclosures, and identified Ma Li as a fact witness for the very first time. (Saso Decl. ¶ 8; ECF 457-4 at 2.) Long after that, Plaintiffs attempted to produce Exhibit 48[4] on March 2, 2021, and Exhibits 39, 46 and 98 on May 12, 2021. (Saso Decl. ¶ 9.)[5] On May 24, 2021, Defendants sent Plaintiffs a letter formally rejecting the entirety of the document productions that Plaintiffs had purported to make on or after January 29, 2021, with a few exceptions.[6] (Saso Decl. Ex. B.) Plaintiffs declined to respond to that rejection, and remained silent—they provided no justification whatsoever for the untimely productions, and sought neither leave of Court nor the consent of Defendants to make them. (Saso Decl. ¶ 12.)

---

[4] Exhibit numbers refer to the exhibits attached to the Declaration of Luke Nikas submitted in opposition to the Defendants' motion for summary judgment. [ECF 520.]

[5] Defendants file this motion to strike based on Plaintiffs' late production of these documents, but reserve all other objections, evidentiary or otherwise, to their being considered a part of the record or introduced at trial.

[6] The limited exceptions to Defendants' rejection of Plaintiffs' belated productions are set forth in Defendants' letter. (Saso Ex. B.) As an example, Defendants accepted documents concerning the cost of a medical procedure Cathy Yu had undergone because that document was specifically requested during her prior deposition. (Saso Decl. ¶ 11.)

3

Recently, in opposing Defendants' motion for summary judgment, Plaintiffs invoked some of their late and unauthorized productions. First, Plaintiffs referenced and relied upon Exhibit 39, which allegedly includes copies of H3C's Petition submitted to the PSB. [ECF 520 at 6; ECF 520-42.] Plaintiffs produced a copy of the purported H3C petition [ICT0802104-05] that makes up a portion of Exhibit 39 on *May 12, 2021*. (Saso Decl. ¶ 9.) In relying on this exhibit, Plaintiffs argued that H3C told the police that "[H3C] and its trademark are well known in the Chinese and the global market of network devices" and that all three versions of H3C's purported Petition to the PSB "contain identical text in the body of the document." [ECF 521 ¶¶ 168, 170.] Plaintiffs further rely on Exhibit 39 in their attempt to authenticate statements by Wang You (an H3C employee) because they claim "Defendants' Chinese law expert identified an identical stamp to the one on the Wang You transcript as the H3C stamp…." [ECF 519 at 15, n. 13.]

Second, Plaintiffs referenced and relied upon Exhibit 46—which they claim to be an "unredacted" letter from the Procuratorate of Haidian District Beijing to the PSB—dated January 16, 2013. [ECF 520 at 6; ECF 520-49.] Plaintiffs produced this document on *May 12, 2021*. (Saso Decl. ¶ 9.) In relying on this exhibit, Plaintiffs argued that the unredacted version of the Prosecutor's letter "would have helped to show that the Individual Plaintiffs should not be charged and detained for a serious economic crime." [ECF 521 ¶ 49.]

Third, Plaintiffs referenced and relied upon Exhibit 48, which includes excerpts from the package of documents Alexander Styller purportedly provided to the Chinese authorities in February 2013. [ECF 520-51; ECF 520 at 6.] Plaintiffs produced these documents on *March 2, 2021*. (Saso Decl. ¶ 9.) In relying on this exhibit, Plaintiffs argued that Alex Styller and ICT provided Ma Li with certain information, including agreements and information about ICT's workers, which Ma Li then allegedly submitted to the Procuratorate in June 2013. [ECF 521 ¶¶

4

59, 60; ECF 520-101 (Ma Li Affidavit).] Plaintiffs further posit that the Chinese authorities considered that information. [ECF 521 ¶ 60.]

Fourth, Plaintiffs referenced and relied upon Exhibit 98, an Affidavit by Ma Li and attached exhibits, dated and produced on *May 12, 2021*. [Saso Decl. ¶ 9; ECF 520-101; ECF 520 at 12.] Plaintiffs depend heavily on this affidavit in their attempt to (a) authenticate and admit as evidence "documents from the files of the Chinese authorities, including the Bail Letters," and (b) admit statements supposedly made by Wang You when interrogated by the PSB. [ECF 519 at 12, n.9 & 15, n. 13.]

This Court has explicitly indicated that it is disinclined to admit these belatedly-produced documents into evidence or consider them on summary judgment. The Court stated that:

> January 29th, which was the last day of fact discovery as the -- and that, too, the defendants have, in general, I think it would be fair to say, complained about, with respect to the fact that those supplemental disclosures identify certain people as people with knowledge who weren't previously identified by the plaintiffs in the case.
>
> I think that the defendants are correct that at this point they haven't offered these people as witnesses at trial; they haven't offered them -- affidavits from them in opposition to the motion for summary judgment; that you have an ongoing duty to supplement, and they feel that those are the people, after their careful review of the case, that they decided were people that they needed to disclose in ordered [sic] to discharge their duty under the rules to supplement. And that's fine.
>
> But what I do observe about this case is what all of the observations I made about the expert with respect to the schedule applies here equally. . . . But again, people who were disclosed at the end of the day, on the last day of fact discovery as new witnesses, in this context that I've described, I'm -- you know, I'm disinclined to think that it's fair to allow them to submit affidavits or testify at trial. I'm not precluding them. If a motion is made to –
>
> There was a reference to having them be deposed -- well, you could just depose them now. So no, that's not really correct for the following reasons. One, there are no depositions in this case without prior court permission. That was established and settled in this case in the summer of 2020, at least, if not earlier. It was reiterated then. The reason for that was because this case needs to come to resolution and go to trial, and so the Court is supervising the discovery to be sure that this case actually reaches trial. And it will reach trial. . . .

5

> I am disinclined to go back and redo anything, especially when this sort of structure of the case was, in my mind, set long ago, and then which was that we would do all the paper discovery and then sort of this bifurcated summary judgment process with depositions and so forth occurring in between. So that's my view on the new, if you will, people disclosed.

(Saso Decl. Ex. A at 11:6-13:20.)

At no time thereafter did Plaintiffs make a motion or otherwise seek leave to add Ma Li to their fact witness list, to submit a fact Affidavit from her, or have her produce and purport to identify or authenticate documents. (Saso Decl. ¶ 13.)

## ARGUMENT

Rule 26 requires a party, without awaiting a discovery request, to "provide to the other parties ... the name ... of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). This obligation is a continuing one as stated in Rule 26(e), which states that: "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: in a timely manner …." Fed. R. Civ. P. 26(e).

Pursuant to Rule 37(c)(1), failure to make timely evidentiary disclosures required by the Federal Rules results in a "self-executing sanction" of preclusion where "the offending parties were not 'substantially justified' in failing to disclose information required by Rule 26(a) or Rule 26(e)' and that the failure to disclose was not harmless." *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R.*, 248 F.3d 29, 33 (1st Cir. 2001); *see* Fed. R. Civ. P. 37(c)(1) (providing that if a party fails to disclose under Rule 26, that "party is not allowed to use that information or witness to supply evidence on a motion").

"A substantial justification is one that 'could satisfy a reasonable person.'" *Amoah v. McKinney*, No. CV 4:14-40181-TSH, 2016 WL 6134119, at *4 (D. Mass. Sept. 2, 2016),

6

subsequently aff'd, 875 F.3d 60 (1st Cir. 2017) (quoting *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002)).  An untimely disclosure is not harmless when it occurs "'after the close of discovery,' leaving the defendant 'without the means to explore and challenge the basis of' the late-disclosed evidence."  *Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 230 (D. Mass. 2015) (citation omitted).

In determining whether untimely evidentiary disclosures warrant sanctions, courts consider "'the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects.'" *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 79 (D. Mass. 2008) (quoting *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003) (considering those factors when reviewing a lower court's sanction)).

## I.  PLAINTIFFS' UNTIMELY DOCUMENT PRODUCTIONS ARE UNJUSTIFIED

To date, and in the face of formal rejection, Plaintiffs have offered no reason or justification for producing the documents at issue years after the close of document discovery and months after the close of the fact deposition deadline, with neither leave nor consent.  Plaintiffs have simply ignored the Court's strict deadlines (while having committed not to seek continuances), and now purport to rely on belated productions as bases for their opposition to Defendants' Motion for Summary Judgment.  *See Harriman v. Hancock Cnty.*, 627 F.3d 22, 30 (1st Cir. 2010) (affirming preclusion of affidavits of two witnesses from inclusion in summary judgment record, because plaintiff "knew very early on that [the two witnesses] could help his case" but "made no meaningful attempt to find [the witnesses] until after discovery closed").

Plaintiffs disclosed Ma Li as a potential fact witness for the first time late in the day on January 29, 2021—after the final deposition on the deadline for the close of depositions—and they then waited a further three and a half months, until May 12, before producing her Affidavit.  (Saso Decl Ex. C & ¶ 9.)  They offer no justification for this late production, yet they would have the

7

Court simply assume that material produced by this impermissible method is *of record*, and should be considered on a dispositive motion.

Plaintiffs were, of course, aware of the affiant's involvement as a lawyer since Cathy Yu's detention in 2012-2013 because Ma Li was her criminal defense attorney in China. [ECF 519 at 12, n. 9.] Indeed, Plaintiffs had previously submitted an affidavit from Ma Li (not relating to any facts in the matter, but responding to queries regarding Chinese criminal law, both in English and what appears to be Mandarin) as an exhibit to the Second Amended Complaint on August 4, 2017. [ECF 101-4.] And yet, it was not until years later that Plaintiffs disclosed this same Ma Li as a fact witness [Saso Decl. Ex. C]; and later still produced a fact Affidavit from her. [ECF 520-101.] Then, to conjure issues of fact on a dispositive motion, they invoke that Affidavit to identify, authenticate, and admit into evidence what they claim are official Chinese files and statements. Plaintiffs should be precluded from this end run, especially in light of their prior commitment to honor the agreed schedule, on which the Court and Defendants relied.

Plaintiffs could have avoided the need for any of this artifice. They have long been aware that it is possible to obtain certified copies of the Chinese police file. Their counsel represented to this Court over two and a half years ago that they were attempting "to secure certified copies of the Chinese police reports." (Saso Decl. Ex. D at 33:1-8.) Nonetheless, Plaintiffs never produced a certified copy of such documents in this litigation; nor apparently did Ma Li obtain a certified copy of the official files in the matter. (Saso Decl. ¶ 16.)[7] Instead, Plaintiffs produced "photos of **some** of the filed materials for filing purpose at the Procuratorate's office ...," with some pictures being "partially cropped," and with low resolution. [ECF 510-101 ¶ 8 (emphasis added).] Despite

---

[7] Defendants would likewise object to the late production of certified copies of the Chinese authorities' files even if produced at this late hour, for the same reason Defendants make this motion. Plaintiffs had years to properly obtain copies of these files, failed to do so, and instead chose to allow all discovery deadlines to lapse.

the nearly-nine-year availability of the police files, Plaintiffs now attempt to slip into the record their Chinese counsel's poor-quality, self-selected excerpts of what they claim to be those files, and to do so without subjecting that individual to examination.

Likewise, Plaintiffs offer no explanation for why Exhibits 39, 46 and 48 were produced after discovery closed. From their face, those documents appear to have been in the possession and control of Plaintiffs for years, and should have been produced in the normal course of document production; or, at a minimum, leave should have been sought for their later delivery.

## II.   DEFENDANTS WILL BE PREJUDICED IF THE DOCUMENTS ARE NOT PRECLUDED

Defendants will be prejudiced if Plaintiffs are not precluded from relying upon the untimely disclosed exhibits. Specifically, discovery would need to be reopened to permit Defendants to explore the documents in detail through, among other things, Ma Li's and other Plaintiffs' depositions. Defendants would be entitled to discovery concerning how and when such materials were obtained, which witnesses have personal knowledge of the documents, the credibility of such witnesses, and whether, for example, Ma Li accessed and produced the entirety of the Chinese police files or, as appears to be the case, only portions of it.[8] The window for such discovery closed a long time ago—as the Court has already explained:

> There was a reference to having them be deposed -- well, you could just depose them now. So no, that's not really correct for the following reasons. One, there are no depositions in this case without prior court permission. That was established and settled in this case in the summer of 2020, at least, if not earlier.

(Saso Decl. Ex. A at 12:7-12.)

---

[8]   *See Harriman*, 627 F.3d at 31 (preclusion of two witness affidavits warranted where defendants had no opportunity to depose the witnesses, and where plaintiff "took no steps to minimize the harm caused by the late disclosure"). As discussed *supra* at n.2, Defendants' production of a single letter on September 30, 2020 caused no prejudice to Plaintiffs and required no alteration to the case schedule.

9

Plaintiffs could have, but chose not to, disclose Ma Li as a fact witness or produce all of the subject documents years ago. Instead, by Plaintiffs' delay, Defendants were left unable to probe the authenticity or veracity of the productions, or to depose a late-disclosed fact witness (who fortuitously popped up not even an hour after the last pre-deadline deposition)—both of which Plaintiffs now so heavily rely on to escape summary judgment. The Court should not permit such an outcome.

### III. THE HISTORY OF THIS LITIGATION SUPPORTS PRECLUSION

The Court previously denied Plaintiffs' attempts to avoid case deadlines because they would "require a delay in the remaining deadlines in the tightly integrated schedule, resulting in a further delay of the trial in this long-pending case." [ECF 474 at 8.] Plaintiffs' obvious and repeated disregard for the Court's deadlines compels preclusion of Plaintiffs' untimely document productions. *Harriman*, 627 F.3d at 31 (finding the history of litigation cut against plaintiff's position where plaintiff had already missed court deadlines).

Moreover, as this Court will recall, Plaintiffs produced 802,222 pages of mostly irrelevant documents, which Plaintiffs themselves admit contained massive amounts of "spam." (Saso Decl. Ex. E at 29:18-30:12.) Even after somewhat ameliorating the document dump, with the assistance of the Court-appointed electronic discovery expert, Defendants were forced to spend significant time and money reviewing a trimmed, but still significantly irrelevant, set of documents. (Saso Decl. ¶ 18.) And yet, nowhere in that production did Plaintiffs deliver a timely fact affidavit from their attorney in China; nor any material that would allow Plaintiffs to identify or authenticate the documents that they now cite in opposition to summary judgment. (*Id.* ¶ 19.) Instead, after burying Defendants in spam, Plaintiffs lay in wait until after the deposition deadline before disclosing Ma Li as a fact witness, and then for an additional three-and-a-half months before producing her

affidavit and attachments. [*Id*. ¶¶ 9, 20 & Ex. C; ECF 457-4 at 2.] And now they seek the reward of summoning the late-produced materials to their defense on a summary judgment motion.

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion to strike Plaintiffs' late productions, and specifically preclude Exhibits 39, 46, 48 and 98 [ECF 520-42, ECF 520-49, ECF 520-51 and ECF 520-101] that Plaintiffs relied upon in their Opposition and Sur-Reply to Defendants' Motion for Summary Judgment.

Dated: September 14, 2021　　　　　　　Respectfully submitted,

/s/ *Paul A. Saso*

Michael H. Bunis (BBO No. 566839)
G. Mark Edgarton (BBO No. 657593)
Kevin C. Quigley (BBO No. 685015)
**CHOATE HALL & STEWART LLP**
Two International Place
Boston, Massachusetts  02110
(617) 248-5000
mbunis@choate.com
medgarton@choate.com
kquigley@choate.com

Anthony P. Callaghan
Paul A. Saso
**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York, 10119
(212) 613-2000

*Counsel for Defendants*