# **<u>EXHIBIT A</u>**

<pre>
 1                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2

 3      - - - - - - - - - - - - - - - - - - x

 4      INTEGRATED COMMUNICATIONS &            :
        TECHNOLOGIES, INC., et al.,
 5                                             :   Civil Action No.
               Plaintiffs,                         1:16-cv-10386-LTS
 6                                             :

 7          v.                                 :

        HEWLETT-PACKARD FINANCIAL SERVICES
 8      COMPANY, et al.,                       :

 9             Defendants.                      :

10      - - - - - - - - - - - - - - - - - - x

11


12        BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

13

                            MOTION HEARING
14

15


16                  Wednesday, February 10, 2021
                            3:33 p.m.
17

18


19           John J. Moakley United States Courthouse
                       One Courthouse Way
20                   Boston, Massachusetts

21


22
                        Rachel M. Lopez, CRR
23                     Official Court Reporter
                   One Courthouse Way, Suite 5209
24                   Boston, Massachusetts   02210
                          raeufp@gmail.com
25
</pre>

1                         **A P P E A R A N C E S**

2

    On behalf of the Plaintiffs:

3

        QUINN EMANUEL URQUHART & SULLIVAN
4        BY:  LUKE NIKAS AND ALEX S. ZUCKERMAN
        51 Madison Avenue
5        22nd Floor
        New York, New York  10010
6        (212) 849-7000
        lukenikas@quinnemanuel.com
7        alexzuckerman@quinnemanuel.com

8

9   On behalf of the Defendants:

10       GIBBONS, P.C.
        BY:  PAUL A. SASO AND ANTHONY P. CALLAGHAN
11       One Pennsylvania Plaza
        37th Floor
12       New York, New York  10119
        (212) 613-2015
13       acallaghan@gibbonslaw.com

14

        CHOATE HALL & STEWART LLP
15       BY:  MICHAEL H. BUNIS, KEVIN C. QUIGLEY,
        AND G. MARK EDGARTON
16       Two International Place
        100-150 International Place
17       Boston, Massachusetts  02110
        (617) 248-4030
18       mbunis@choate.com
        kquigley@choate.com
19       medgarton@choate.com

20

21

22

23

24

25

```
1                    P R O C E E D I N G S
2              (In open court.)
3              THE DEPUTY CLERK:  The United States District Court
4      for the District of Massachusetts is now in session, the
5      Honorable Leo T. Sorokin presiding.
6              Today is February 10th, the case of Integrated
7      Communications v. Hewlett Packard Financial Service, civil
8      action 16-10386, will now appear before this Court.
9              Counsel, please identify themselves for the record.
10             MR. NIKAS:  Good afternoon, Your Honor, Luke Nikas
11     from Quinn Emanuel.  And I'm here with my associated, Alex
12     Zuckerman, on behalf of the plaintiffs.
13             THE COURT:  Good afternoon.
14             MR. BUNIS:  Your Honor, Michael Bunis on behalf of
15     the defendants.  And with me are Mark Edgarton and Kevin
16     Quigley from Choate Hall.
17             MR. SASO:  And Your Honor, Paul Saso from Gibbons,
18     PC, on behalf of the defendants.  And also with me from
19     Gibbons is Anthony Callaghan.
20             THE COURT:  Okay.  Good afternoon.
21             MR. EDGARTON:  Good afternoon.
22             THE COURT:  So I thought I would -- I scheduled
23     this status conference.  I thought it would be useful to sort
24     of cut to the chase on certain issues that seemed to be
25     dividing the parties and to keep the case moving on track.
```

1      Because if one thing is not clear in this case, I think it's

2      clear to all of you, but is that I very much intend to keep

3      this case on track for the trial that I scheduled.

4              So I thought I'd just run through and make some

5      observations about each -- I think there are four issues that

6      are raised, touched upon in the parties' filings, and recent

7      filings, either the motion filed by the defendant -- by the

8      plaintiffs, rather, or the request for a status conference

9      and response by the parties.  So -- and ordering not

10     representing anything in particular, I'll address them first,

11     talking about the expert report.  So -- okay.

12             So just to summarize, the -- under the schedule

13     that we have, the plaintiffs were to make medical expert

14     disclosures on January 29th, and they made a medical expert

15     disclosure of a doctor's report.  I know I've read the

16     e-mails that you submitted back between the parties.  I know

17     there's some dissatisfaction by the defendants with that

18     report.  So let me sort of step back and make these general

19     observations of the case, and then I'll talk about that.

20             This is the lens through which I'm viewing the case

21     here as follows:  The case was brought in 2016.  It had a

22     phased process that was agreed upon -- proposed by the

23     parties, both parties, and agreed upon by the Court.  That

24     phased process involved paper discovery, once we are done

25     with the motion to dismiss practice, on all issues.

1          When we were done with paper discovery, there was
2     going to be summary judgment on the narrow question of
3     whether the goods sold were counterfeit or not when sold.
4     Then after that, there would be deposition discovery and then
5     experts, and then quite possibly another summary judgment
6     round on other issues, other than the counterfeit.

7          That was the proposal.  That was the plan.  That
8     was what was executed.  That was what was memorialized
9     unambiguously by me in writing, the orders that I issued in
10    the summer of 2020, which made clear that paper discovery was
11    over, that all discovery was over, except discovery that the
12    Court specifically authorized.  And so there were various
13    depositions, and there were depositions just for the
14    defendant because the plaintiff hadn't asked for any.  But
15    then the plaintiff, late, asked for them, and the Court
16    authorized, by and large, the depositions that the plaintiff
17    asked for.

18          So that schedule was going along.  We had a trial
19    date that the schedule was built around.  New counsel came
20    in, which was you, Mr. Nikas, and the other people from your
21    firm.

22          And after -- as I see it, after you were in the
23    case for a little while, the plaintiffs' counsel and defense
24    counsel came to the Court with a -- what seemed to be a
25    carefully thought-out proposal for revising the schedule.

1    The proposal provided -- did not provide for going back, for

2    redoing anything.  It provided for some additional time to

3    complete the depositions that were then in process, and it

4    provided for a carefully crafted schedule for experts,

5    medical experts, the Rule 35 examinations, the nonmedical

6    experts, summary judgment, and then trial.

7            Each of those things related to each other, among

8    other things, as I think I observed in one of the orders,

9    that the defendants wanted the expert reports for their

10   summary judgment motion.  This was the less common case where

11   even damage experts might reasonably bear on summary judgment

12   motions.

13           I spent a fair bit of time talking to counsel about

14   the schedule.  I had two status conferences before, and I

15   issued a written order in response to the joint request to

16   adopt this revised schedule.

17           I did adopt this schedule.  I adopted it exactly as

18   you proposed, with all the dates you proposed, adding only to

19   it a specific date for trial at the end, accounting for both

20   a prompt, but reasonable, period of time for me to resolve

21   the summary judgment motion, and some additional time after

22   that for you all to make all the necessary pretrial findings.

23           So I come to that with that tightly integrated and

24   crafted schedule that I very much intend to adhere to.  I

25   have no plans other than your trial, for the time that I

1    scheduled this case for trial in February 2022, and I do not

2    intend to schedule any other cases for trial at that time.

3    I'm not double-booking this case.  This is the only case on

4    for trial at that time and it's my intention to try the case

5    at that time, unless for some reason summary judgment

6    resolved it, or something else.  But I'm planning and

7    anticipating, and that's what we do.

8         So then that brings me back to the medical expert

9    report.  Defendants -- I'm sorry, plaintiffs, in their

10   e-mails, point out or contend that this is -- that the report

11   that they produced does comply with the requirements of

12   disclosure under the federal rules of civil procedure, and I

13   think facially I agree with that.  I know that's not fully

14   joined, but when I read the report, it's a report that

15   contains an opinion; the opinion, among others, that,

16   generally, incarceration, especially of an innocent person,

17   can cause physical and emotional harm to people.  That's an

18   opinion.  And it's an opinion that has an articulated basis

19   in it that there are reasons that the expert explained for

20   this opinion, and there are the reasons for it.

21        The expert explained his credentials -- and I think

22   it's a him.  And in any event, the expert explained the

23   credentials and the reasoning.  And I don't say that to mean

24   to say that if it were a challenge under *Daubert* or something

25   else, that I would necessarily reject it, but on first

1    glance, it doesn't seem like it facially meets the dots of

2    Rule 26.

3            That said, there are two other things that are

4    quite obvious about that report, both of which -- and credit

5    to the expert, he's quite candid about.  First, he doesn't

6    really render any opinions about the damages suffered by the

7    individual plaintiffs; that he says that he's going to

8    interview and examine them, and he's going to administer --

9    consider administering a range of evaluation -- of

10   psychological tests and measures on them, after which he's

11   likely -- what seems obvious, whether it's expressly stated

12   or not in the report, he's likely to render additional

13   opinions about these people and with additional reasons for

14   those opinions about those people.

15           So I'm not -- I guess the way I think about this is

16   this.  The doctor can do whatever the doctor wishes to do.

17   He can interview any people he wants to.  I'm not issuing an

18   injunction against this doctor, preventing him from doing

19   anything he wants to do.  He can interview people.  He can

20   render reports.  He can do this case.  He can work on -- he

21   can talk to the counsel for plaintiffs in this case about

22   whatever he wants.  He can talk to -- he can do other cases.

23   It's a free country.  He can do whatever he wants.

24           But from my perspective, the report that he issued

25   that the plaintiffs timely served on January 29th, that's the

1   report that's their expert report that triggers the next

2   things in the schedule.  This is a -- this is a carefully

3   crafted schedule that, with each piece of the schedule

4   integrated with all the other components, the components that

5   came before and the components that come after, it's a

6   schedule that reasonably provides sufficient time for

7   everyone to accomplish what they need to accomplish at each

8   stage.  That's determined -- all of you weighed in on that,

9   because it's the schedule that you proposed; and after

10   careful and searching examination, based upon my extensive

11   knowledge of the case and my experience, I concurred and I

12   adopted.

13           And so that's what is the schedule -- that is the

14   report I think, Mr. Bunis, to which triggers the next thing.

15           Now, there is another issue, which is that it seems

16   quite likely that this expert might choose to issue another

17   report.  Nothing stops him from writing whatever he wants to

18   write.  But I will tell you that I'm -- that that report is

19   not before me and that report is not in the case, because the

20   deadline was January 29th.  The report was served.  That's

21   the report that's in the case as the expert report for the

22   plaintiffs.  That deadline was clear.  That deadline was

23   established well after -- not a long time, but well after the

24   experienced plaintiffs' counsel came into the case,

25   presumably after having a sufficient time to evaluate the

case, consider.  They crafted a schedule after negotiation
with the defendants.  I infer that that schedule was -- what
was considered was all the things that needed to go into that
schedule, needed to be done.

Nobody came to me for a continuance beforehand.  No
one has asked me for a continuance now.  And -- or no
continuance was asked for in response to the status report
raising these things.  So that's the report.  That's the
report to which you respond.  That triggers each of the next
stages of things that we're going to do in the case, and we
move forward from there.

If the plaintiffs decide that they get a report
from their expert and they want that report to be the report
in this case, then you need to make a motion to the Court to
explain to me why that report should be the motion -- should
be the report in the case.  And you'll -- I'm confident, if
you think that such a motion is warranted, you'll make it.

But I have to tell you, I'm disinclined -- you told
me that there would be no continuances.  I took that to mean
that you carefully considered the case and the schedule, and
all that was entailed, and that we wouldn't need to do that.
And so I'm not precluding anything, because there's no motion
to preclude anything and there's nothing to preclude at the
moment.  I'm telling you my perspective about the case and
the schedule.

1          So I should say, related to that, I come to the

2     second point, which is supplement --

3          The plaintiffs made supplemental disclosures on --

4     was it on January 29th, I think.  Is that right?

5          MR. NIKAS:  Yes, Your Honor.

6          THE COURT:  January 29th, which was the last day of

7     fact discovery as the -- and that, too, the defendants have,

8     in general, I think it would be fair to say, complained

9     about, with respect to the fact that those supplemental

10    disclosures identify certain people as people with knowledge

11    who weren't previously identified by the plaintiffs in the

12    case.

13         I think that the defendants are correct that at

14    this point they haven't offered these people as witnesses at

15    trial; they haven't offered them -- affidavits from them in

16    opposition to the motion for summary judgment; that you have

17    an ongoing duty to supplement, and they feel that those are

18    the people, after their careful review of the case, that they

19    decided were people that they needed to disclose in ordered

20    to discharge their duty under the rules to supplement.  And

21    that's fine.

22         But what I do observe about this case is what all

23    of the observations I made about the expert with respect to

24    the schedule applies here equally.  And so I'm not barring

25    anybody from supplementing their disclosures, and I'm not

barring, at the moment, anybody.  But again, people who were
disclosed at the end of the day, on the last day of fact
discovery as new witnesses, in this context that I've
described, I'm -- you know, I'm disinclined to think that
it's fair to allow them to submit affidavits or testify at
trial.  I'm not precluding them.  If a motion is made to --

There was a reference to having them be deposed --
well, you could just depose them now.  So no, that's not
really correct for the following reasons.  One, there are no
depositions in this case without prior court permission.
That was established and settled in this case in the summer
of 2020, at least, if not earlier.  It was reiterated then.
The reason for that was because this case needs to come to
resolution and go to trial, and so the Court is supervising
the discovery to be sure that this case actually reaches
trial.  And it will reach trial.

And the reason I adjusted the schedule in response
to the appearance of new counsel was both counsel made
reasonable arguments to the Court that -- not that anything
that was done needed to be redone; no one suggested that.
The schedule didn't call for that and I did not authorize
that, but rather that the things that were left that remained
to be done would be better done and fairer to the plaintiffs
and fairer to the defendants if there was a little bit more
time allowed for each of those things, so that they could be

1    done well and right, especially -- and the parties persuaded

2    me that simultaneous, for example, summary judgment -- doing

3    summary judgment simultaneously with experts wasn't

4    appropriate in this case for reasons I've already referred

5    to.

6         So I'm -- so if a motion is filed to me, why those

7    were late and what should be authorized about them or not, am

8    I going to read it?  Of course.  Am I going to consider it

9    fairly and carefully?  Of course.  But I think you all need

10   to understand that this was a carefully crafted, integrated

11   schedule that no one asked me and -- to reopen anything that

12   happened.  It was a schedule to address only those things

13   that were left.  We're not going -- no one is asking me to go

14   back, and I am disinclined to go back and redo anything,

15   especially when this sort of structure of the case was, in my

16   mind, set long ago, and then which was that we would do all

17   the paper discovery and then sort of this bifurcated summary

18   judgment process with depositions and so forth occurring in

19   between.  So that's my view on the new, if you will, people

20   disclosed.

21        That leads to a third point, which is defendant

22   served written discovery at the end of -- the end of

23   December -- I'm sorry, I have that wrong.  The plaintiff

24   served additional written discovery the end of December, the

25   document requests, interrogatories, at least.  I'm not sure

1    if there was anything else.  As I understand the status of

2    that, the defendants objected to that, pointed to, among

3    other things, my orders, Docket No. 372, referring to no

4    further discovery, except as authorized by the Court, in a

5    prior order, which said the paper written discovery was done.

6    And that, as far as I know, nothing further has happened with

7    respect to that discovery at this point.

8            Defendants correctly point out that they haven't

9    moved to compel, and there's nothing before the Court with

10   respect to that.  And I think that's an accurate statement.

11   They have -- I have the complaint of the defendants, but

12   there's no -- there's -- they haven't come to me --

13           I'm sorry, I'm getting the plaintiffs and the

14   defendants mixed up.  Let me start over.

15           The plaintiffs are correct in pointing out that

16   there's no motion to compel pending before me, they haven't

17   filed one, and that all that's before me is defendants'

18   request for status conference, in which they worry or

19   anticipate that such a motion to compel might be filed.

20           And so I will tell you, even though it's not before

21   me in the sense of a joined motion with respect to the

22   discovery, the reason that I bring it up here is twofold.

23   One is, I don't think you can serve, in this case, written

24   discovery at this stage of the case, or at any point since

25   you've entered the case, the lawyers at Quinn Emanuel,

1    because I previously believe -- I believe I ordered that all

2    written discovery was over and no discovery could occur other

3    than that which I authorized, which is the deposition that we

4    talked about and the experts that are coming.

5         So I think that if -- so from my perspective, I

6    guess for the defendants, you don't need to respond to that

7    request, because that request was not a proper request in

8    this case.

9         If to you, Mr. Nikas, to the extent you think you

10   want to have written discovery, you think that written

11   discovery is appropriate in the case, then what you need to

12   do is file a motion with the Court for leave to serve the

13   written discovery, explaining to me what it is, the discovery

14   you want, why that, notwithstanding the schedule, and what

15   have you, you think that whatever it is that you're seeking

16   to be appropriate, and then I would look at that and I would

17   carefully consider it.

18        That leads me to the last issue, which is the

19   Rule 35, the location of the Rule 35 medical examinations.

20   So just to recap, that had been in the offing for a long

21   time.  At the moment, where it stood -- where it stands in

22   the most recent history is in the order that adjusted and

23   extended the schedule and set the trial in February of 2022,

24   I said that those Rule 35 examinations should happen in the

25   United States.  The case was brought here, and they should

1   happen in person.

2          So the plaintiffs have filed a motion seeking

3   permission to have that, those Rule 35 examinations, proceed

4   by telemedicine or, in any event, to waive the requirement of

5   being in person.  They point out, essentially, I think, three

6   issues with having them in the United States.

7          The first is that they say that in order to come to

8   the United States, obviously, the individuals who are in

9   China need a visa.  And they say that although they applied

10  for a visa, it looks like in November, that it is -- that the

11  wait time is listed as 999 days from the US Embassy and that

12  that suggests -- and that the information coming out of the

13  Embassy is that only emergencies are being authorized, and

14  they just may not get a visa in time to comply with the

15  Rule 35 examination.

16         The second issue they point out is that they have

17  to leave China.  There are exit requirements governing

18  leaving China.

19         The third issue is, then, of course, there's -- if

20  I have the rules right, that described by the plaintiffs,

21  there's a 14-day waiting period to come to the United States,

22  at the conclusion of which you need a negative PCR COVID test

23  within three days of flying here.  So there's a risk that

24  they could get a visa, do what they need to do, they would be

25  all on track, and they might contract COVID while they're

1       doing the 14-day waiting period outside of China because the

2       14-day period doesn't apply to them while they're in China.

3       They have to be somewhere else to engage in the 14-day

4       waiting period.

5               So I have these -- these comments with respect to

6       that.  One is, I think the defendants need to respond to that

7       motion.  I think that the plaintiffs have raised reasonable

8       and fair issues with respect to the requirement to be in the

9       United States.  Those -- I will note that -- well, so, yes, I

10      think those things, you need to respond to that motion

11      because I can't fully evaluate that without a response.

12      That's a pending motion before the Court.

13              While it's true that I said it had to happen in the

14      United States, they've raised for me facts that weren't --

15      some of those facts may have been swirling about or even in

16      some ways before me, but they've put them before me in a much

17      clearer way and I think that I need to consider those and I

18      want to hear from the defendants with respect to those.

19              I think particularly the question of getting a visa

20      is obviously a significant issue.  They can't come to the

21      United States without a visa.  And I'm not expecting them to

22      come to the United States in violation of the laws of the

23      United States, and so that's a significant thing.

24              I will tell you, just aside, it wasn't crystal

25      clear to me that the document you attached as the Chinese

1    exit requirements prohibits -- or treats foreign litigation

2    as a nonessential activity.  But even if they can leave

3    China, they still need a visa.

4           And there's the other issue.  So I do think that

5    there are two separate questions raised by the motion, one is

6    coming to the United States, and one is in-person

7    evaluations.  And you sought both, which is fine.  And I

8    highlight that, because I think about them, depending on what

9    defendants tell me, I might think about those things

10   differently.

11          I can see -- one thing, there are -- telemedicine

12   existed before COVID, and as you point out in the papers, has

13   become widespread since and has been used quite successfully

14   in a variety of ways.  And that, you know, certainly is facts

15   that you've put before the Court, the plaintiffs.  That said,

16   there are certain things that are -- that telemedicine isn't

17   as effective at as in-person examinations.

18          And so I separate those two, because I can see the

19   potential for in-person examinations, even if they didn't

20   happen in the United States.  But of course an in-person

21   examination outside of the United States involves all sorts

22   of expense issues and terms.  You have to send the expert to

23   wherever the sort of, quote, neutral country or the third

24   country is that you can do it, or you might have to find an

25   expert in that county.  That could be problematic.

1            So I think that what I would say about that motion

2    is this:  I think that there are -- notwithstanding the

3    statements I made, there are -- seem to be, at least facially

4    from reading just one side's papers, there seem to be real

5    questions about the ability of these plaintiffs to come to

6    the United States, and that's an issue.  And I'm not going

7    to -- if they -- if they are diligent in attempting to come

8    to the United States, I'm not going to dismiss their claims

9    or bar certain damages, because they didn't violate the --

10   they didn't -- they didn't hire someone from Massachusetts to

11   stuff them into a box, as has been alleged in another case,

12   and secret them inside a train and then on a private jet and

13   land them in the United States for an in-person examination,

14   in violation of all sorts of international and United States

15   laws.  I'm not expecting that the plaintiffs do that in order

16   to comply with my order.  In fact, I would be unhappy if they

17   did that to seemingly comply with my order.  So those are --

18   like that's an issue.

19           On the other hand, I think that it's -- the reason

20   that I said "in-person" was because I thought this was the

21   kind of case where in-person is important.  And you know,

22   what am I going to do when I see what the defendants say?  I

23   don't know.  I want to see what they say.  That's why we have

24   an adversary process, because I hear both sides and then I

25   might want to talk to you again.

1          What I'm really saying, I guess, counsel for the

2     defendants, is they raised a real issue with respect to

3     getting out of the -- China and into the United States, and I

4     need you to respond in order to evaluate that.

5          And one of the points I was trying to make in my

6     order about coming to the United States was that they did

7     bring the case here.  They are going to have to come here for

8     the trial, and I think they're going to have to be here for

9     the trial.

10          And another thing you should consider, while it's

11     true we have authority to have you all by Zoom now, I don't

12     believe I had authority, prior to the CARES Act, which was

13     enacted in the weeks following the onset of the COVID

14     pandemic back in March of 2020 -- I don't think I had

15     authority to conduct proceedings by Zoom.  So they -- it is a

16     civil case, not a criminal case.  We ought to think about

17     that.  That's why I said they will have to come to the United

18     States.  And so obviously Rule 35 is not the trial, but so

19     there are practical issues there.  I need a response from the

20     defendants with respect to that issue.

21          But to recap, from my perspective where we are, the

22     written discovery served by the plaintiffs in December 29th,

23     that's a nullity.  If you want to serve written discovery,

24     you need to file a motion for leave to serve written

25     discovery.  The only discovery -- at this point, there's no

1    discovery, except the Rule 35 process and the expert -- the

2    remaining expert disclosures and expert depositions.  I think

3    any other discovery, other than supplementing, as your duties

4    ordinarily require, requires permission.

5         The expert report that was served is the expert

6    report that defendant -- plaintiffs and their counsel served.

7    That's their expert report.  That's the one the defendants

8    respond to.  That's the one that's in the case.  If you want

9    to have another expert report and supplement, you're going to

10   have to come and file the motion and explain to me why you

11   should be allowed to file it late.  And I'll read that motion

12   and consider it.  But the one thing we're not going to do,

13   just so that there's no misunderstanding is, like --

14        Well, is it true that -- it doesn't really matter.

15   I won't ask that.

16        But the fact of the matter is that you came into

17   the case in November.  In December, you filed a motion, and

18   the motion was to change the remaining schedule.  I don't

19   view this as an opportunity -- you may like everything

20   Mr. Joffe did, or you may not like everything Mr. Joffe did;

21   you may like some of what he did, or some of what he didn't

22   do.  There are some cases where it might be appropriate to go

23   back and redo things.  But this is an old case with

24   substantial litigation; I didn't think it was appropriate at

25   the time to do it *sua sponte*.  You didn't ask for that.  You

1    asked for just changing what remained.  That's what we're

2    doing.

3            We have a definite trial date, which itself is a

4    substantial extension in an old case from what was a definite

5    trial date.  I intend to stick to that trial date.  I think

6    it makes sense.  I think there's a public interest in

7    resolving this case and that trial date.  No one has given me

8    any reason why I should continue it.  I can't -- I'm not

9    saying never, because one should never say never, but short

10   of that, I don't see any reason I'm changing the trial date.

11   We're going forward with this carefully, tightly integrated

12   schedule.  If you want to do something different, file a

13   motion.

14           Any questions about that?

15           MR. SASO:  Your Honor, this is Paul Saso for

16   Gibbons.  I have just one, I think, logistical question for

17   you.

18           With respect to the plaintiffs' motion to permit

19   remote medical exams, that was filed about a week and a half

20   ago, late, about 10:00 p.m. Friday afternoon, we want -- and

21   plaintiffs may very well assent to this, and I just have not

22   raised it with them yet.  Our opposition would be due this

23   Friday.  We wanted to hear from you first to see, since we

24   thought that this was already decided, whether you wanted

25   full briefing.  And I would just see if Your Honor or the

1    plaintiffs would be okay with extending that to just simply

2    next Tuesday or Wednesday.

3              MR. NIKAS:  Your Honor, we filed it two months in

4    advance, so we could get this all resolved in time, the issue

5    of remote.  So I have no objection to an extension.  This is,

6    of course, a question of whether Your Honor has enough time

7    to resolve these issues.

8              THE COURT:  Yes, I'll be able to resolve it

9    quickly.

10             Tuesday or Wednesday, which would you want?

11             MR. SASO:  I guess I'd always like Wednesday.

12             THE COURT:  Close of business Wednesday.

13             I'll tell you what I'm interested in most.  I'm

14   interested in like the questions -- I'm interested in the

15   practical questions.  Okay.  Can they get out of China and

16   come to the United States?  And is that -- is that reasonably

17   possible or not?  And if it's not reasonably possible and you

18   want me to hold them to coming to the United States when it's

19   not reasonably possible, you need to explain to me how that's

20   right.  Or if -- because I can't see how that would be right.

21   Or if they're incorrect, in fact, it is reasonably possible

22   for them to come to the United States, then explain how.  Or

23   you know, that's one question.

24             And the second is, like, what about the

25   telemedicine?  And I understand why it might not be as good,

1   but -- and if they can't come to the United States, but they

2   can go somewhere else, do you want that?  What about that?

3   And so the -- like in my mind, that's what I'm thinking of:

4   Can they come to the United States?  If they can't come to

5   the United States -- they certainly can leave China; they're

6   not under any order to remain in China.  Can they go

7   somewhere else and can you do your examination there?  I

8   understand that's not ideal; it involves a lot of expense

9   and -- but could you or would you want that?  Or can we do

10  telemedicine, or what do you think about that?  Or is there

11  some other alternative that I haven't thought about?

12          That's why I want a response.  Because they put an

13  issue in my mind, the question of whether they could really

14  get here.  And they had applied, from their exhibit, before I

15  even issued my order in December and so -- for a visa.  So

16  that's what I'm thinking about.  And if you want to say other

17  things or more things, or other things that are appropriate,

18  I tell you in particular that's what I'm wondering about.

19          MR. SASO:  No, Your Honor, I think that that's very

20  helpful in terms of guidance in terms of responding.  We're

21  happy to show Your Honor that in fact the plaintiffs are

22  capable of traveling here and obtaining a US visa.  The State

23  Department website that they cite to, if you simply look for

24  different cities where you can go in order to obtain or

25  schedule an interview, you can get that in far less than

1    999 days.  They seem to have randomly selected cities like

2    Moscow and Mexico City, where apparently it is difficult.

3    But you could go to places like Hong Kong or Vietnam and get

4    an interview with the US Embassy in less than a week.

5              And the only other thing in terms of preview, Your

6    Honor, is that this issue is one that is not one that is no

7    fault of their own; this is an issue that was addressed over

8    a year ago, when we began to ask their plaintiffs' prior

9    counsel, Mr. Joffe, what steps have the overseas plaintiffs

10   taken to start the process of obtaining a visa, back in

11   November of 2019.  We also brought the visa issue to Your

12   Honor's attention in February of 2020 and discussed it with

13   you at a conference on March 10th of 2020, where you

14   encouraged the plaintiffs to take all steps then necessary to

15   obtain those visas.

16             So it may be true that they first decided to do

17   that on November 6th of 2020, but that was when their -- the

18   then-current deadline to get to the United States for their

19   medical exams was November 13th.  And so they decided to, for

20   the very first time, apply for a Chinese visa one week prior

21   to the deadline for them to arrive here.  Now, we, you know,

22   sort of resurrected that possibility by adding

23   four-and-a-half additional months for them to get here,

24   through -- from November 13th to April 1st.

25             But I don't think that we should look at overseas

1    plaintiffs as having no fault in this process.  We've been

2    persuing this for at least a few months with the plaintiffs.

3    They knew that they needed to apply for these visas, and they

4    simply decided not to.

5            THE COURT:  I will look at all that.  I'm not

6    weighing in on it.  But that's why we have an adversary

7    process, and I will look at that and consider that and then

8    evaluate it.

9            What I would say -- since this might come up, I

10   will just short-circuit it.  It's possible, plaintiffs, you

11   might want to file a reply.  I don't know and -- but I could

12   imagine that you might want to.  So you don't have to file --

13   if you want to file a reply to that motion, you don't have to

14   file a motion for leave to file a reply, you can just file a

15   reply, as long as the reply is five pages or less.  If you

16   want more than five pages, then you need to come to me for

17   permission, because ordinarily a reply ought to be five pages

18   or less, especially on a motion like this.

19           And so I could -- do you think you're reasonably

20   likely, Mr. Nikas, to want to file a reply?

21           MR. NIKAS:  I do, Your Honor.  I think five pages

22   is certainly going to be enough, given what I just heard

23   Mr. Saso say.  So I think five page is fine, and I won't ask

24   for leave but I would appreciate the opportunity.

25           THE COURT:  So when -- why don't I set a deadline,

1    just so that then I won't decide the motion until I get the

2    reply, or once I --

3              How much time do you think you'll need to file a

4    reply?  He's going to file his by close of business next

5    Wednesday.

6              MR. NIKAS:  If I could file -- if he's going to

7    file the --

8              THE COURT:  6:00 p.m. Wednesday, he'll file.

9              MR. NIKAS:  6:00 p.m. on the 17th.

10             If I could have the 22nd, say by 6:00 p.m., as

11   well, Monday.

12             THE COURT:  Monday.  Okay.  Fine.  So reply by the

13   17th, and then Monday the --

14             MR. NIKAS:  22nd.

15             THE COURT:  -- 22nd.  Right.  Okay.  Monday the

16   22nd, close of business, for reply.

17             All right.  Anything else?

18             MR. NIKAS:  No.  Thank you, Your Honor.

19             THE COURT:  Okay.  All right.  Thank you very much.

20   Stay healthy.  Have a good day.  We're adjourned.

21             THE DEPUTY CLERK:  This matter is adjourned.

22             (Court in recess at 4:10 p.m.)

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4       I, Rachel M. Lopez, Certified Realtime Reporter, in

5  and for the United States District Court for the District of

6  Massachusetts, do hereby certify that pursuant to Section

7  753, Title 28, United States Code, the foregoing pages

8  are a true and correct transcript of the stenographically

9  reported proceedings held in the above-entitled matter and

10  that the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12

13              Dated this 18th day of February, 2021.

14

15

16

17          /s/ RACHEL M. LOPEZ

18

19

20       _____

         Rachel M. Lopez, CRR
21       Official Court Reporter

22

23

24

25